UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE GUZMAN

                                      Case No.: 1:16-cv-03499-GBD

                    **Plaintiff,**

    -against-

MEL S. HARRIS AND ASSOCIATES, LLC
LR CREDIT 13, LLC
MEL S. HARRIS
DAVID WALDMAN
KERRY H. LUTZ
TODD FABACHER
MICHAEL YOUNG
SAMSERV, INC
JOHN ANDINO
WILLIAM MLOTOK
                    **Defendants.**
-------------------------------------------------------------------X

**PLAINTIFF'S SECOND AMENDED RULE 26(a)(1) DISCLOSURES**

      Plaintiff hereby makes the following Rule 26(a)(1) disclosures.

**1. The name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

Plaintiff whose contact information is c/o Ahmad Keshavarz, The Law Offices of Ahmad Keshavarz, 16 Court St., 26th Floor, Brooklyn, NY 11241, phone (718) 522-7900. The subject of said person's discoverable information is disclosed in Plaintiff's live pleadings.

A corporate representative for each current and former corporate defendant.

The owners and corporate officers of each current and former corporate defendant.

Each Defendant personally.

Persons identified in the Complaint and the exhibits thereto, including the expert who made the "magic process server" report attached to the complaint.

Leucadia

The owners, employees and other agents of Defendants currently unknown to Plaintiff. This would also include persons who drafted and sent collections letters or pleadings regarding the

alleged debt; were involved in the garnishment of Plaintiff's bank account and the retention of moneys from the bank account; who were involved in the substitution of counsel in the underlying lawsuit. This would include persons, if any, who developed and implemented the policies and procedures regarding compliance with the FDCPA. This would include the persons who drafted the pleadings in the collections lawsuit and who made decisions as to how to proceed on the litigation. Persons unknown to plaintiff who have knowledge of net assets of Defendants.

Corporate representative of each of the servicers and subservicers of Plaintiff's putative account. The putative original creditor for the debt sought to be collected.

The marshal(s) who attempted to collect on the sewer service judgment.

Employees at Plaintiff's bank, unknown to Plaintiff at this time, involved with the garnishment of Plaintiff's bank account.

The persons whose names appear in the document production of any party.

Any person listed by Defendants.

Francisco Caballero. Co-worker of plaintiff. Home address not known. Work address Food Town Supermarket, 885 Gerard Ave., Bronx, NY 10452. The subject of said person's discoverable information is the emotional distress, anger and frustration of Mr. Guzman caused by the wrongful debt collection practices of defendants. This includes the anger and frustration Mr. Guzman feels when he thinks about what defendants did to him.

Eduardo Sanchez Sulsona, Co-worker of plaintiff. Home address not known. Work address Food Town Supermarket, 885 Gerard Ave., Bronx, NY 10452. The subject of said person's discoverable information is the emotional distress, anger and frustration of Mr. Guzman caused by the wrongful debt collection practices of defendants. This includes the anger and frustration Mr. Guzman feels when he thinks about what defendants did to him.

Lara Guzman, c/o counsel for Plaintiff. Spouse of Plaintiff. The subject of said person's discoverable information is the emotional distress, inability to sleep, anger and frustration of Mr. Guzman caused by the wrongful debt collection practices of defendants.

Carolyn Coffey, MFY Legal Services, Inc., 299 Broadway, 4th Floor, New York, NY 10007 Phone: 212-417-3701, as a potential expert witness on the practice of sewer service in New York City, particularly in debt collection cases involving Mel S. Harris and Associates, LLC., Samserv, Inc., and Leucadia.

**2. A copy — or a description by category and location — of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

Documents related to the underlying collections lawsuit, including the pleadings on file. Documents between the current and former parties, and with New York City Marshal Martin A.

Bienstock, regarding the state court collection suit, and the garnishment of Plaintiff's bank account. Bank statements.

Any document produced by defendants or by third-parties in response to subpoenas or depositions on written questions.

Documents related to the "magic process server" affidavit attached to the complaint.

Other collection lawsuits filed by Defendants.

Documents reflecting attempts of the Cohen Defendants to collect on judgments that were vacated, satisfied, based on sewer service, or otherwise invalid.

Documents received in response to third-party subpoenas.

**3. A computation of each category of damages claimed by the disclosing party — who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

Statutory damages of up to $1,000 under the FDCPA. The factors to be considered in determining the amount of statutory include, among other relevant factors, the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional. Plaintiff does not know the dollar amount of these damages, and leaves its determination to the jury.

Actual damages in an amount to be determined by the trier of fact. These actual damages are not liquidated and do not lend themselves to a statement of calculation but may be subject to an award of damages. See, Williams v. Trader Pub. Co., 218 F.3d 481, 486-487 (5th Cir. 2000); Morrison Knudsen Corp., v. Fireman'sFund Ins. Co., 175 F.3d 1221 (10th Cir. 1999); Burrell v. Crown Central Petroleum, Inc., 177 F.R.D. 376, 386 (E.D.Tex.1997). This includes damages for anger, frustration, anxiety, and other emotional distress. Defendants' conduct caused Mr. Guzman to endure significant emotional distress. When Mr. Guzman received the information subpoena and questionnaire from his employer he feared that he might lose his job. News of the default judgment made him feel sick with surprise. Mr. Guzman never had any account with an entity named "FIRST USA BANK" nor had he ever heard of (or from) any of the Defendants. Mr. Guzman did not know what to do about the garnishment attempt. He drives a truck for work and was distracted by Defendants' conduct, feeling like he could not think clearly, and almost got into an accident. For approximately three weeks, Mr. Guzman feared that his wages would be garnished and that he would not be able to pay his rent. Mr. Guzman had a new baby at the time and was particularly concerned about being able to provide for his growing family. During these weeks, Mr. Guzman felt like he had no peace of mind. He had trouble eating and sleeping. He was very tense and stressed at work, and even thought about quitting in order to avoid the garnishment. He was very tense and stressed at home, which affected his interactions with his family, so much so that even his toddler daughter noticed, asked for a hug to make him feel better.After approximately three weeks from receiving notice of the judgment, Mr. Guzman finally had an opportunity to: 1) travel to the Bronx County Civil Court (from Long Island where he lives and works), 2) look up some of the information about the collections lawsuit and 3)

discover that he did not owe the debt alleged. Mr. Guzman felt empowered when he realized that he did not owe the alleged debt, and had a potential defense to the sewer service default judgment. Mr. Guzman sought help defending the collections lawsuit from the CLARO legal aid clinic. However, Mr. Guzman had to make several trips from Long Island (where he lives and works) in order to go to the Bronx Civil Court and the CLARO clinic, in order to: 1) properly prepare for, 2) file, and 3) see through his application to vacate the sewer service default judgment and discontinue the collections lawsuit. Mr. Guzman was apprehensive about taking time off from work to successfully defend the lawsuit. His employer even asked him at least once when he was going to stop asking for days off to go to court. Needless to say this worried Mr. Guzman about his status at work.

Mr. Guzman suffered damages as a result of Defendants' conduct. Defendants' conduct caused Mr. Guzman to endure significant emotional distress. When Mr. Guzman received the information subpoena and questionnaire from his employer he feared that he might lose his job. News of the default judgment made him feel sick with surprise. Mr. Guzman never had any account with an entity named "FIRST USA BANK" nor had he ever heard of (or from) any of the Defendants. Mr. Guzman did not know what to do about the garnishment attempt. He drives a truck for work and was distracted by Defendants' conduct, feeling like he could not think clearly, and almost got into an accident. For approximately three weeks, Mr. Guzman feared that his wages would be garnished and that he would not be able to pay his rent. Mr. Guzman had a new baby at the time and was particularly concerned about being able to provide for his growing family. During these weeks, Mr. Guzman felt like he had no peace of mind. He had trouble eating and sleeping. He was very tense and stressed at work, and even thought about quitting in order to avoid the garnishment. He was very tense and stressed at home, which affected his interactions with his family, so much so that even his toddler daughter noticed, asked for a hug to make him feel better.

The experience of being in court – and having the debt collection lawyer ignore him and talk down to him, treat him like 'a garbage man' – was very painful. It was also very hurtful that the judge didn't believe him but believed the lawyer for the debt collector, who was fluent in English and who was experienced and skilled in speaking in Court. Mr. Guzman always had to give more proof that he really did not live at the address where the debt collector claims he was served, for a debt he never even owed. After approximately three weeks from receiving notice of the judgment, Mr. Guzman finally had an opportunity to: 1) travel to the Bronx County Civil Court (from Long Island where he lives and works), 2) look up some of the information about the collections lawsuit and 3) discover that he did not owe the debt alleged. Mr. Guzman felt empowered when he realized that he did not owe the alleged debt, and had a potential defense to the sewer service default judgment. Mr. Guzman sought help defending the collections lawsuit from the CLARO legal aid clinic. However, Mr. Guzman had to make several trips from Long Island (where he lives and works) in order to go to the Bronx Civil Court and the CLARO clinic, in order to: 1) properly prepare for, 2) file, and 3) see through his application to vacate the sewer service default judgment and discontinue the collections lawsuit. Mr. Guzman was apprehensive about taking time off from work to successfully defend the lawsuit. His employer even asked him at least once when he was going to stop asking for days off to go to court. Needless to say this worried Mr. Guzman about his status at work.

It was only on the eve of the October 15, 2015 hearing of the traverse hearing that MSH – knowing it could not win at the traverse – agreed to unconditionally vacate the default judgment in order to avoid an adverse court ruling. Even then, MSH only did so at the insistence of the advocacy of non-profit Lincoln Square Legal Services, who became involved after Mr. Guzman

began the pro se order to show cause process.

Mr. Guzman's damages continued after the dismissal and continue to this day. From the day he learned of the sewer service judgment until today, he still thinks about it. During the day when he thinks about it he gets extremely, and intensely frustrated. There are different triggers during the day or the week that will bring out these intense feelings of frustration, such when people discuss the issue of people being in debt or hears something about debt will he is driving his truck for work. These triggers bring out these intense, raw feelings out again.

Every night or almost every night from when LRC and MSH attempted to garnish his wages until approximately April or May, 2016 Mr. Guzman could not sleep because he was thinking about what these debt collectors did to him. He would lay in bed and not be able to sleep. He gets up to watch television or a movie until he finally dozes off. His wife sometimes has to turn off the television because Mr. Guzman fell asleep in front of the television. This continues until today, about 2 or 3 times a week since approximately April or May 2016.

Mr. Guzman also incurred expenses and lost time in having to fight a sewer service default judgment, and collections attempts on the sewer service judgment.

Exemplary and punitive damages to be determined by the jury. Among the factors to be considered by the jury are the following: the degree to which Defendants acted intentionally, maliciously, wantonly, or oppressively done; the degree to which Defendants' actions were prompted or accompanied by ill will, or spite, or grudge, either toward the injured person individually, or toward all persons in one or more groups or categories of which the injured person is a member; the degree to which actions were done in reckless or callous disregard of, or indifference to, the rights of one or more persons, including the injured person; and/or the degree to which Defendants' actions were done in a way or manner that injures, or damages, or otherwise violates the rights of another person with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of another person. The income, assets, and financial worth of Defendants are also a factor.

Treble damages under the Judiciary Law and GBL 349. Declaratory and injunctive relief.

**4. For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Plaintiff has no such insurance policy.

On information and belief Defendants have such policies.

                Respectfully submitted,
                /s/
                Ahmad Keshavarz
                THE LAW OFFICES OF AHMAD KESHAVARZ
                16 Court St., 26th Floor

Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809 (toll-free)
Email: ahmad@NewYorkConsumerAttorney.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this day I served the above referenced document to the parties listed below via email to counsel for the SAMSERV Defendants Jeffrey S. Lichtman jlichtman@ohareparnagian.com; and counsel for the LR Credit Defendant, David Wayne Leimbach David.Leimbach@hsf.com, Scott Sonny Balber scott.balber@hsf.com

Date:  July 20, 2016
      Brooklyn, NY
/s/
Ahmad Keshavarz
Attorney for Plaintiff