285 F.R.D. 279
United States District Court,
S.D. New York.

Monique SYKES et al., Plaintiffs,

v.

MEL HARRIS AND ASSOCIATES, LLC, et al., Defendants.

No. 09 Civ. 8486 (DC).
|
Sept. 4, 2012.

**Synopsis**
**Background:** Debtors filed putative class action against debt-buying company, law firm, and process server alleging they had engaged in fraudulent scheme to obtain default judgments against debtors in civil court, in violation of Fair Debt Collection Practices Act (FDCPA), Racketeer Influenced and Corrupt Organizations Act (RICO), and New York law. Plaintiffs moved for class certification.

**Holdings:** The District Court, Chin, Circuit Judge, held that:

[1] putative class of hundreds, if not thousands of debtors, met numerosity requirement for certification;

[2] class met commonality requirement for certification;

[3] class met typicality requirement for certification;

[4] unique defenses did not defeat typicality;

[5] class representatives met adequacy requirements;

[6] putative class was ascertainable;

[7] FDCPA claims could not be certified under section of class action rule providing for relief where defendant has acted or refused to act on grounds that apply generally to the class;

[8] common issues of law and fact predominated; and

[9] class action was superior method of resolving claims.

Motion granted.

**Attorneys and Law Firms**

 ***282**  Emery, Celli, Brinckerhoff & Abady LLP by: Matthew D. Brinckerhoff, Esq., Eisha Jain, Esq., Neighborhood Economic Development Advocacy Project by: Claudia Wilner, Esq., Susan Shin, Esq., Josh Zinner, Esq., MFY Legal

Services, Inc. by: Carolyn E. Coffey, Esq., [Andrew Goldberg](#), Esq., Anamaria Segura, Esq., New York, NY, for Plaintiffs.

Kaufman, Dolowich, Voluck & Gonzo LLP by: [Brett A. Scher](#), Esq., [Yale Pollack](#), Esq., Woodbury, NY, for Mel Harris Defendants.

McElroy, Deutsch, Mulvaney & Carpenter, LLP by: [Lewis H. Goldfarb](#), Esq., [Ryan P. Mulvaney](#), Esq., [Philip W. Lamparello](#), Esq., New York, NY, for Leucadia Defendants.

Babchick & Young, LLP by: [Jordan Sklar](#), Esq., White Plains, NY, for Samserv Defendants.

*OPINION*

[CHIN](#), Circuit Judge.

In this case, four plaintiffs allege that a debt-buying company, a law firm, a process service company, and others engaged in a scheme to fraudulently obtain default judgments against them and more than 100,000 other consumers in state court. Defendants allegedly acted in concert to defraud these consumers in violation of the Fair Debt Collection Practices Act (the "FDCPA"), [15 U.S.C. § 1692 *et seq.*,](#) the Racketeer Influenced and Corrupt Organizations Act ("RICO"), [18 U.S.C. § 1961 *et seq.*,](#) [New York General Business Law ("GBL") § 349](#), and [New York Judiciary Law § 487](#). Plaintiffs seek injunctive relief, declaratory relief, and damages on behalf of themselves and other similarly situated individuals. They move for class certification.

The motion is granted. The record before the Court establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated *en masse* by sophisticated computer programs and signed by a law firm employee who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting. The record also shows that on hundreds of occasions the defendant process servers purported to serve process at two or more locations at the same time. As discussed more fully below, defendants' unitary course of conduct purportedly to obtain default **\*283** judgments in a fraudulent manner presents common questions of law and fact that can be resolved most efficiently on a class-wide basis.

*BACKGROUND*

A. *The Facts*

I make the following findings of fact based upon the depositions, declarations, and exhibits submitted by the parties in connection with this motion. I resolve factual disputes to the extent necessary to decide the class certification issue.[1] *See [In re Initial Pub. Offering ("IPO") Sec. Litig.,](#) 471 F.3d 24, 27, 41–42 (2d Cir.2006)* (when adjudicating motion for class certification, "all of the evidence must be assessed as with any other threshold issue"; "the judge [must] resolve factual disputes" relevant to class certification). Certain factual assertions relate to the merits; I do not resolve these factual issues now, but state them as the parties' assertions.

1. *The Parties*

Plaintiffs Monique Sykes, Rea Veerabadren, Kelvin Perez, and Clifton Armoogam are New York City residents who were each sued by various defendants in debt collection actions commenced in New York City Civil Court between 2006 and 2010. (*See* Jain Decl. Exs. A, E, I, M; Third Am. Compl. ¶¶ 10–13). Each denies being served with a summons and

complaint in their respective action. (*See* Third Am. Compl. ¶¶ 117, 138, 169, 201). Defendants, nevertheless, were able to obtain default judgments against them. (*See* Jain Decl. Exs. D, H, L, P).

Defendants are: (1) various subsidiaries of Leucadia National Corporation ("Leucadia") that purchase and collect consumer debt; (2) Mel S. Harris and Associates LLC ("Mel Harris"), a law firm specializing in debt collection litigation; (3) Samserv, Inc. ("Samserv"), a process service company; and (4) various affiliates and associates of each of the foregoing entities (the "Leucadia defendants," the "Mel Harris defendants," and the "Samserv defendants," respectively). [2] (*See* Third Am. Compl. ¶¶ 14–38).

### 2. *The Alleged Scheme*

Plaintiffs allege that the Leucadia and Mel Harris defendants entered into joint ventures to purchase debt portfolios, and then filed debt collection actions against the alleged debtors with the intent to collect millions of dollars through fraudulently-obtained default judgments. (Third Am. Compl. ¶¶ 1, 3–7, 91). The Leucadia and Mel Harris defendants regularly hired Samserv to serve process. (*Id.* ¶¶ 4, 92). According to plaintiffs, Samserv routinely engaged in "sewer service" whereby it would fail to serve the summons and complaint but still submit proof of service to the court. (*Id.* ¶¶ 4, 92–93). After a debtor failed to appear in court for lack of notice of the action, the Leucadia and Mel Harris defendants would then apply for a default judgment by providing the court with, *inter alia,* an "affidavit of merit" attesting to their personal knowledge regarding the defendant's debt and an affidavit of service as proof of service. (*Id.* ¶¶ 4, 6, 92–94). The Leucadia and Mel Harris defendants had limited proof to substantiate the claims made in their affidavits of merit because they typically did not possess documentation of the underlying debt, and moreover, because the affiant lacked "personal knowledge" of such claims, contrary to what is stated in the **\*284** affidavit. (*Id.* ¶¶ 104–10). Plaintiffs further allege that the affidavits of service were also false because defendants regularly engaged in sewer service. (*Id.* ¶¶ 93–94).

### 3. *Default Judgments* [3]

Between 2006 and 2009, various Leucadia entities filed 124,838 cases in New York City Civil Court. (De Jesus Decl. ¶¶ 3–4). In 99.63 percent of those cases, Mel Harris defendants acted as counsel. (*Id.*). The "vast majority" of such cases were adjudicated without appearance by the defendant debtors, indicating the likelihood that a default judgment was entered. (*Id.* ¶ 5). Between 2007 and 2010 various Leucadia entities obtained default judgments in 49,114 cases in New York City Civil Court. (Coffey Decl. ¶¶ 3–7).

### 4. *Service of Process*

Between January 2007 and January 2011, Samserv defendants performed service of process in 94,123 cases filed by Mel Harris in New York City Civil Court, 59,959 of which were filed on behalf of Leucadia defendants. (7/31/11 Egleson Decl. ¶¶ 2–4). Records maintained by defendants reveal hundreds of instances of the same process server executing service at two or more locations at the same time. (*Id.* ¶¶ 9–11, Ex. A). On 517 occasions, defendants Mosquera, Lamb, and Andino, alone, claimed to be have performed service in two or more places at the same time. (*Id.* ¶ 11, Ex. A). For example, Mosquera claimed to have performed service at four different locations at 1 p.m. on September 17, 2008. (*Id.* ¶ 10). Lamb claimed to have performed service at two different locations at 6:59 p.m. on November 28, 2007. (*Id.*). Andino claimed to have performed service at nine different locations at 4 p.m. on March 29, 2007. (*Id.*). There were also many other occasions where multiple services were purportedly made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed. (*Id.* ¶¶ 13–23, Ex. B).

These facts, together with the high number of default judgments obtained by defendants, provide substantial support for plaintiffs' assertion that defendants regularly engaged in sewer service.

### 5. *Affidavits of Merit*

The affidavits of merit submitted by the Mel Harris and Leucadia defendants in New York City Civil Court follow a uniform format. (*See* Jain Decl. Exs. C, G, K, O; Brinckerhoff Decl. Exs. E, F, G, H, I). Defendant Todd Fabacher, the director of information technology for Mel Harris (4/14/11 Egleson Decl. Ex. A, 8:10–12) ("3/1/11 Fabacher Dep."), serves as the affiant. (*See, e.g.,* Jain Decl. Ex. C). In each affidavit, he attests that he is "an authorized and designated custodian of records" for the plaintiff, one of many Leucadia debt collection entities. (*See, e.g., id.*). He further states that he "maintain [s] the daily records and accounts [for the collection entity] in the regular course of business, including records maintained by and obtained from [the collection entity's] assignor." [4] (*Id.*). Fabacher affirms that he is "thereby fully and personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to the [debt collection action]." (*Id.*). Each affidavit then provides information on the underlying debt, including the relevant account number, original creditor, and outstanding balance. (*See, e.g., id.*).

In preparing the affidavits of merit, Fabacher uses various database and software programs to import, sort, and check the completeness of "electronic data" received by the Leucadia defendants from the various creditors and debt sellers from whom they purchase **\*285** debt. (11/21/11 Fabacher Dep. at 23–26, 34). [5] Typically, Fabacher does not receive the original credit agreements between the account holders and the creditors. (*Id.* at 37). Instead, he receives a bill of sale for the portfolio of debts purchased that includes "sample" credit agreements and "warranties" made by the seller regarding the debts in the portfolio. (*Id.* at 37–38). In many instances, such agreements do not exist. (*Id.* at 125:18–21). If they do exist, Fabacher's "standard practice" does not entail reviewing them before endorsing an affidavit of merit. (*Id.* at 156:3–17; *see also id.* at 167:5–17). He instead relies on the warranties made by the original creditor and the information contained in the database programs. (*See id.* at 123–24, 156–58, 167, 169).

Fabacher uses the database and software programs to create "judgment packet [s]" that include an affidavit of merit and are ultimately used to obtain a default judgment in the debt collection action. (*Id.* at 103–07; *see, e.g.,* Jain Decl. Exs. C, D). The documents are generated using "templates" with an "open standard format." (11/21/11 Fabacher Dep. at 107:12–23). The template functions like a "mail merge" or a "fixed document with fields" into which the software program "plugs" the relevant information. (*Id.* at 107:12–108:11).

Fabacher produces the affidavits of merit for signature in batches of up to 50 at a time. (*Id.* at 159–60). He "quality check[s]" one affidavit in each batch and if it is accurate, he signs the remaining affidavits in the batch without reviewing them. (*Id.*). The quality check consists of ensuring that information printed on the affidavit matches the information stored in the Debt Master database. (*Id.* at 160–62). In any given week, Fabacher signs as many as 350 affidavits of merit. (*See id.* at 180).

Hence, Fabacher signs hundreds of affidavits a week, purportedly based on personal knowledge, purporting to certify that the action has merit, without actually having reviewed any credit agreements, promissory notes, or underlying documents, and, indeed, without even reading what he was signing.

### B. *Procedural History*

Plaintiff Monique Sykes commenced this action on October 6, 2009 against some of the Leucadia, Mel Harris, and Samserv defendants, alleging only FDCPA and New York GBL claims. On December 28, 2009, Rea Veerabadren and two others joined the action as plaintiffs, and class allegations and RICO claims were added. Plaintiffs filed a second amended complaint on March 31, 2010, adding Kelvin Perez and three additional plaintiffs and a New York Judiciary Law claim. On May 7, 2010, the defendants moved to dismiss the action, and I denied their motion in a decision dated December 29, 2010. *See [Sykes v. Mel Harris & Assocs., LLC,](...) 757 F.Supp.2d 413 (S.D.N.Y.2010)*. Plaintiffs moved for class certification and to amend their complaint once more on April 14, 2011. Five plaintiffs accepted settlements, and on April 18, 2011, I entered Rule 68 judgments in their favor. After I held a conference with the parties on April 26, 2011, the parties stipulated to plaintiffs' filing a Third Amended Complaint and adding Clifton Armoogam as a plaintiff and

LR Credit 21, LLC as a defendant. I heard oral argument on plaintiffs' class certification motion on October 11, 2011 and received additional submissions from the parties in December 2011.

**\*286 DISCUSSION**

**A.** *Applicable Law*

A plaintiff seeking class certification must meet the prerequisites of Rule 23(a) of the Federal Rules of Civil Procedure—numerosity, commonality, typicality, and adequacy of representation. *See* Fed.R.Civ.P. 23. If the prerequisites of Rule 23(a) are met, the court then must determine whether the putative class can be certified and maintained under any one of the three subsections of Rule 23(b). *See Brown v. Kelly,* 609 F.3d 467, 475–76 (2d Cir.2010). Here, plaintiffs seek class certification pursuant to subsections (b)(1)(A), (b)(2), and/or (b)(3) of Rule 23.

**[1]** The party seeking class certification bears the burden of showing, by a preponderance of the evidence, that the requirements of Rule 23 are met. *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.,* 546 F.3d 196, 201–04 (2d Cir.2008). The Second Circuit has clarified the standards governing adjudication of a motion for class certification:

> (1) a district judge may certify a class only after making determinations that each of the Rule 23 requirements has been met; (2) such determinations can be made only if the judge resolves factual disputes relevant to each Rule 23 requirement and finds that whatever underlying facts are relevant to a particular Rule 23 requirement have been established and is persuaded to rule, based on the relevant facts and the applicable legal standard, that the requirement is met; (3) the obligation to make such determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement; (4) in making such determinations, a district judge should not assess any aspect of the merits unrelated to a Rule 23 requirement; and (5) a district judge has ample discretion to circumscribe both the extent of discovery concerning Rule 23 requirements and the extent of a hearing to determine whether such requirements are met in order to assure that a class certification motion does not become a pretext for a partial trial of the merits.

*In re IPO Sec. Litig.,* 471 F.3d at 41; *accord Shahriar v. Smith & Wollensky Rest. Grp., Inc.,* 659 F.3d 234, 251 (2d Cir.2011).

**1.** *Rule 23(a) Prerequisites*

All four prerequisites of Rule 23(a) as well as an additional requirement that the class be "ascertainable" must be met. *Brown v. Kelly,* 609 F.3d 467, 475 (2d Cir.2010); *Casale v. Kelly,* 257 F.R.D. 396, 406 (S.D.N.Y.2009).

**a.** *Numerosity*

**[2]** Rule 23(a)(1) requires the putative class to be "so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Courts do not require "evidence of exact class size or identity of class members." *Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993). If there is any dispute as to the size of the proposed class, however, the court must resolve it and make a finding as to the approximate size. *See In re IPO Sec. Litig.,* 471 F.3d at 41.

**b.** *Commonality*

**[3]** **[4]** Rule 23(a)(2) requires that there be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The Rule does not require all questions of law or fact to be common. Indeed, even a single common question will suffice. *Wal–Mart Stores, Inc. v. Dukes,* ––– U.S. ––––, 131 S.Ct. 2541, 2556, 180 L.Ed.2d 374 (2011); *Marisol A. v. Giuliani,* 126 F.3d 372, 376 (2d Cir.1997) ("The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact."). The common question must lend itself to "classwide resolution" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart,* 131 S.Ct. at 2551. Therefore, what matters is " 'the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.' " *Id.* (emphasis in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof,* 84 N.Y.U. L.Rev. 97, 132 (2009)).

**[5]** Importantly, Rule 23(a)(2) does not require that the claims of the lead plaintiffs ***287** "be identical to those of all other plaintiffs." *Lapin v. Goldman Sachs & Co.,* 254 F.R.D. 168, 176 (S.D.N.Y.2008). Indeed, " 'factual differences in the claims of the class do not preclude a finding of commonality.' " *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y.2006) (quoting 5 *Moore's Federal Practice* § 23.23[2] ). Commonality may be found were the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system." *Marisol A.,* 126 F.3d at 377.

### c. *Typicality*

**[6]** **[7]** **[8]** The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites. *Wal–Mart,* 131 S.Ct. at 2551 n. 5; *Marisol A.,* 126 F.3d at 376. Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class." Fed.R.Civ.P. 23(a)(3). The typicality requirement " 'is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.' " *Robinson v. Metro–North Commuter R.R. Co.,* 267 F.3d 147, 155 (2d Cir.2001) (quoting *Marisol A.,* 126 F.3d at 376), *abrogated on other grounds by Wal–Mart,* 131 S.Ct. at 2541, *as recognized in Hecht v. United Collection Bureau, Inc.,* 691 F.3d 218, 222–24 (2d Cir.2012); *see In re Flag Telecom Holdings, Ltd. Sec. Litig.,* 574 F.3d 29, 35 (2d Cir.2009) (quoting *Robidoux,* 987 F.2d at 936). "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux,* 987 F.2d at 936–37. By contrast, "unique defenses" that "threaten to become the focus of the litigation" may preclude such a finding. *In re Flag Telecom,* 574 F.3d at 40 (citation and internal quotation marks omitted).

### d. *Adequacy of Representation*

Rule 23(a) requires that the class representatives will "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This question involves an inquiry as to whether: "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 60 (2d Cir.2000).

**[9]** This inquiry "serves to uncover conflicts of interest between the parties and the class they seek to represent." *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). Not every conflict, however, precludes a finding of adequacy. "The conflict that will prevent a plaintiff from meeting the Rule 23(a)(4) prerequisite must be fundamental, and speculative conflict should be disregarded at the class certification stage." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124, 145 (2d Cir.2001) (citations and internal quotation marks omitted), *abrogated on other grounds by In re IPO Sec. Litig.,* 471 F.3d at 24.

### e. *Ascertainability*

**[10]**     Finally, courts have added an "implied requirement" that the class be ascertainable. *See [In re IPO Sec. Litig.,](...) 471 F.3d at 30; [In re Bank of Am. Corp. Secs., Derivative, and ERISA Litig.,](...) 281 F.R.D. 134, 140 (S.D.N.Y.2012); [Casale,](...) 257 F.R.D. at 406.* Under this requirement, the class must be "identifiable" such that "its members can be ascertained by reference to objective criteria." [In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 209 F.R.D. 323, 337 (S.D.N.Y.2002)](...) (citation and internal quotation marks omitted). Although the membership of the class must be ascertainable "at some point in the case," it does not necessarily have to be determined prior to class certification. [Id.](...) (citation and internal quotation marks omitted); *see also [In re IPO Sec. Litig.,](...) 471 F.3d at 45*.

### 2. [Rule 23(b)](...)

Certification must be appropriate under one of the three subsections of [Rule 23(b).](...) [Brown, 609 F.3d at 476.](...)

#### a. *Certification under 23(b)(2)*

A class may be certified under [Rule 23(b)(2)](...) if "the party opposing the class has **\*288** acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." [Fed.R.Civ.P. 23(b)(2).](...) "The key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.' " [Wal–Mart, 131 S.Ct. at 2557](...) (quoting [Nagareda, 84 N.Y.U. L. Rev, at 132).](...)

**[11]**     Where plaintiffs moves "for (b)(2) class certification of a claim seeking both injunctive relief and non-incidental monetary damages, the district court must ... assess whether (b)(2) certification is appropriate in light of the relative importance of the remedies sought, given all the facts and circumstances of the case." [Robinson, 267 F.3d at 164](...) (citation and internal quotation marks omitted), The district court may allow (b)(2) certification if it finds "that (1) the positive weight or value [to the plaintiffs] of the injunctive or declaratory relief sought is predominant even though compensatory or punitive damages are also claimed ... and (2) class treatment would be efficient and manageable, thereby achieving an appreciable measure of judicial economy." [Id.](...) (internal citation and quotation marks omitted). Certification under (b)(2) is not appropriate, however, where "the monetary relief is not incidental to the injunctive or declaratory relief." [Wal–Mart, 131 S.Ct. at 2557](...).

#### b. *Certification under 23(b)(3)*

A class action may be maintained under [Rule 23(b)(3)](...) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." [Fed.R.Civ.P. 23(b)(3).](...)

**[12]**     The predominance requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." [Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir.2010)](...) (quoting [Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir.2002))](...) (internal quotation marks omitted). [6] That an affirmative defense may arise that affects different class members differently "does not compel a finding that individual issues predominate over common ones." [In re Nassau Cnty. Strip Search Cases, 461 F.3d 219, 225 (2d Cir.2006)](...) (citation and internal quotation marks omitted).

Together with the "superiority" requirement, the predominance requirement "ensures that the class will be certified only when it would 'achieve economies of time, effort, and expense, and promote ... uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.' " *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 104 (2d Cir.2007) (quoting *Amchem Prods.,* 521 U.S. at 615, 117 S.Ct. 2231).

Considerations relevant to finding superiority include the following:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3)(A)–(D); *see also In re WorldCom, Inc. Sec. Litig.,* 219 F.R.D. 267, 304 (S.D.N.Y.2003).

[13] Further, where injunctive and declaratory relief is sought in addition to substantial monetary damages, "due process concerns militate strongly against maintaining a mandatory (b)(2) class action without the procedural safeguards of notice and the ***289** opportunity to opt-out that are provided to members of a(b)(3) damages class." *Charron v. Pinnacle Grp. N.Y. LLC,* 269 F.R.D. 221, 237 (S.D.N.Y.2010); *see also Robinson,* 267 F.3d at 165–67; *Casale,* 257 F.R.D. at 408 & n. 90. In such circumstances, the court may proceed in at least one of three ways: (1) certify the class under Rule 23(b)(3) for all proceedings; (2) certify separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively; or (3) certify the class under Rule 23(b)(2) for both equitable and monetary relief but provide all class members with notice and opportunity and opt-out pursuant to the court's authority under Rule 23(c)(2)(A) and (d)(1)(B). *See Charron,* 269 F.R.D. at 237–38; *Casale,* 257 F.R.D. at 408.

### B. *Application*

In this case, plaintiffs seek certification of two classes. [7] The first class, for certification under Rule 23(b)(1)(A) "and/or" 23(b)(2), is defined as "all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought." (*See* Third Am. Compl. ¶ 333). The second class, for certification under Rule 23(b)(3), is nearly identical to the first except that it is limited to only persons who "have been sued" by the foregoing entities and who have had, as a result, a default judgment entered against them. (*See id.* ¶ 337).

For the reasons stated below, I conclude that the named plaintiffs meet the prerequisites of Rule 23(a) for both proposed classes and certify two separate classes: the first seeking equitable relief under Rule 23(b)(2) and the second seeking damages under Rule 23(b)(3). [8] *See, e.g., Charron,* 269 F.R.D. at 238, 240–42 (certifying separate 23(b)(2) and (b)(3) classes); *Casale,* 257 F.R.D. at 415 (same).

#### 1. *The Rule 23(a) Requirements Are Satisfied*

##### a. *Numerosity*

There can be no dispute as to numerosity. Although the numbers discussed in Background Sections A(3)-(5), *supra,* do not indicate a definitive number of putative class members, they at the very least establish that the proposed classes will consist of hundreds, if not thousands, of members.

Defendants do not dispute the accuracy of these numbers. Rather, they contend that such numbers do not sufficiently demonstrate the precise number of default judgments obtained by defendants, much less the number of default judgments obtained through allegedly false affidavits of merit and/or service. (*See* Defs.' Sur–Reply Br. at 2–3; Leucadia Defs.' Br. at 10–12; Mel Harris Defs.' Br. at 6). I disagree.

 **[14]**   Contrary to what the Mel Harris defendants suggest (*see* Mel Harris Defs.' Br. 5), this is not an instance where numerosity rests on a single "bare and speculative allegation." *Huntley v. Law Office of Richard Clark, PLLC,* 262 F.R.D. 203, 205 (E.D.N.Y.2009) (finding plaintiff failed to establish numerosity based on plaintiff's contention that because defendant made a threatening phone call to him, defendant must have made similar phone calls to others); *see also Wilner v. OSI Collection Servs., Inc.,* 198 F.R.D. 393, 396–97 (S.D.N.Y.2001) (finding plaintiff failed to establish numerosity "[a]bsent one iota of evidence as to **\*290** the number of people" who may have received a debt collection letter from defendant). The tens of thousands of default judgments obtained by defendants coupled with the hundreds of instances of process servers appearing to serve process in two or more different locations at the same time support the conclusion that the proposed classes are sufficiently numerous.

Accordingly, I find by a preponderance of the evidence that the putative classes are comprised of hundreds, if not thousands, of members, and that it is sufficiently numerous such that joinder of all such parties would be impracticable. *See* Fed.R.Civ.P. 23(a)(1).

b. *Commonality*

 **[15]**   Plaintiffs meet the commonality requirement of Rule 23(a)(2). Their overarching claim is that defendants systematically filed false affidavits of merit and, in many instances, false affidavits of service to fraudulently procure default judgments in New York City Civil Court. Whether a false affidavit of merit or a false affidavit of service or both were employed in a particular instance, the fact remains that plaintiffs' injuries derive from defendants' alleged "unitary course of conduct," *see Marisol A.,* 126 F.3d at 377, that is, fraudulently procuring default judgments. Thus, "[p]laintiffs have identified a unifying thread that warrants class treatment." *Charron,* 269 F.R.D. at 231.

 **[16]**   Inherent in this alleged course of conduct are common questions of law and fact. For example, with respect to the affidavits of merit, there is a central issue as to the veracity of the affiant's uniform statement of "personal knowledge" of the underlying debt when, in fact, defendants' computer systems automatically generate the affidavits and the affiant signs as many as 50 at a time, performing a "quality check" on one and not reviewing the remaining 49. Further, there is a question of law as to whether making false representations in court, rather than to the debtor, violates the FDCPA.[9] There is also a question of whether such conduct is sufficient to establish a violation of New York's GBL or Judiciary Law. Addressing these questions on a classwide basis would provide common answers relevant to each putative class member's claim and would necessarily "drive the resolution of the litigation." *Wal–Mart,* 131 S.Ct. at 2551 (citation and internal quotation marks omitted).[10]

 **\*291** Defendants argue that significant factual differences exist as to whether each class member relied on the affidavits filed, whether defendants acted with intent to defraud each putative class member, and whether each member was, in fact, properly served. That may be true to some extent, but on balance I conclude that none of these issues preclude a finding of commonality.

 **[17]**   First, with respect to reliance, defendants primarily raise this argument in the context of RICO. (*See* Mel Harris Defs.' Br. at 8–10, 13). Reliance, however, is not required to establish a civil RICO claim based on mail fraud. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 653, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008). Second, to the extent that defendants contend that plaintiffs' RICO allegations require an individualized showing of specific intent to defraud with respect to each member of the putative class, I disagree. The alleged course of conduct is sufficiently uniform here such that generalized proof of scienter may be adequate. Third, for the purposes of Rule 23(a)(2), individualized proof of service or lack thereof is not fatal to the prerequisite of commonality. Here, defendants' uniform course of conduct was to file an allegedly false affidavit of merit and, at least in some instances, an allegedly false affidavit of service. The evidence offered by plaintiffs indicates that form affidavits of merit were used as part of a standard practice with respect to each

putative class member. Factual differences as to whether a particular class member was *also* properly served are not enough to overcome the common factual nexus of the affidavits of merit.

Accordingly, for the reasons set forth above, I find that plaintiffs have satisfied their burden with respect to Rule 23(a)(2)'s commonality requirement.

### c. *Typicality*

I find that plaintiffs meet the typicality requirement for many of the same reasons they meet the commonality requirement. Here, the named plaintiffs assert claims reflective of those of the members of the putative classes—specifically, that defendants fraudulently obtained default judgments against them by filing false affidavits of merit and, in many instances, false affidavits of service in New York City Civil Court. Defendants, having briefed commonality and typicality together, raise arguments already addressed in the above section. To the extent they assert additional points more germane to typicality, I address those here.

Defendants primarily argue that the following issues preclude a finding of typicality: (1) factual differences relating to the underlying debts of the named plaintiffs; (2) varying circumstances surrounding service of the named plaintiffs; and (3) unique defenses with respect to certain named plaintiffs, including, applicable statutes of limitations and bona fide error.

[18] With respect to factual differences surrounding the underlying debts of the named plaintiffs, defendants contend that various named plaintiffs' (1) admissions to incurring the debt on which the default judgment was obtained, (2) claims that the debt was incurred as a result of identity theft, or (3) assertions that there was mistaken identity as to the actual debtor render the named plaintiffs' claims atypical of those of the putative class. I disagree. Such issues amount to no more than "minor variations" in the facts underlying plaintiffs' individual claims and do not preclude a finding of typicality. *Robidoux,* 987 F.2d at 936–37. But more importantly, they are not relevant to the litigation at hand. At the crux of plaintiffs' claims is defendants' uniform action to fraudulently obtain default judgments by submission of false affidavits in New York City Civil *292 Court. The various claims of the named plaintiffs as to the validity or existence of the underlying debts are not at issue here. Liability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question. *See Fedotov v. Peter T. Roach & Assocs., P.C.,* 354 F.Supp.2d 471, 477 (S.D.N.Y.2005) ("[T]he [FDCPA] protects consumers from 'unscrupulous debt collectors, regardless of whether a valid debt actually exists.'" (quoting *Baker v. G.C. Servs. Corp.,* 677 F.2d 775, 777 (9th Cir.1982))).

Regarding service of the named plaintiffs, evidence offered by defendants that some of the named plaintiffs may have been properly served does not defeat typicality. As previously discussed, *see* Discussion Section B(1)(b), *supra,* the alleged deception occurred by the filing of a purportedly false affidavit of merit *and,* in many instances, also a purportedly false affidavit of service. Therefore, any named plaintiff that appears to have been properly served still shares with the putative class the common fact of having fallen victim to an allegedly false affidavit of merit. For the purposes of satisfying the Rule 23(a)(3) prerequisite, that is sufficient. *See Robidoux,* 987 F.2d at 936–37.

[19] As to unique defenses, the Mel Harris defendants argue that some of the named plaintiffs' FDCPA and RICO claims may be time-barred by the applicable statutes of limitations, and further, whether those plaintiffs may invoke the equitable tolling doctrine presents unique issues atypical of the putative class members. (*See* Mel Harris Defs.' Br. at 7 n. 3, 16–17). In addition, the Leucadia defendants further argue that the bona fide error defense, which they only raise in connection with Armoogam, precludes a finding of typicality. (*See* Leucadia Defs.' Br. at 15–16). I conclude that such claims and defenses do not "threaten to become the focus of the litigation." *In re Flag Telecom,* 574 F.3d at 40 (citation and internal quotation marks omitted). Moreover, as I have previously noted, use of sewer service and false affidavits of service may warrant equitable tolling. *See Sykes,* 757 F.Supp.2d at 422. Even still, though, the Court can address such issues at later stages of the litigation if necessary. *See In re Visa Check,* 280 F.3d at 141.

Therefore, based on the foregoing, I find that plaintiffs have met the typicality requirement of Rule 23(a)(3).

#### d. *Adequacy of Representation*

**[20]** Here, the lead plaintiffs are adequate representatives of the putative class and class counsel is qualified to conduct the litigation. The class representatives present no "fundamental" conflict with, *In re Visa Check,* 280 F.3d at 145, or interest "antagonistic" to, *Baffa,* 222 F.3d at 60, the claims of the proposed classes. Moreover, I find the combined experience of class counsel in class action litigation and consumer advocacy to be more than sufficient to continue to act on behalf of the classes in this litigation.

Defendants' assertion that various class representatives demonstrated an insufficient understanding of the case—regardless of its truth—does not preclude a finding of adequacy. *See id.* at 61 (disapproving of "attacks on the adequacy of a class representative based on the representative's ignorance"). Moreover, the deficiencies defendants cite in that regard do not indicate that the class representatives " 'have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.' " *Id.* (quoting *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077–78 (2d Cir.1995)). Further, defendants' arguments with respect to factual variations in and unique defenses to the class representatives' underlying claims are not relevant to the inquiry of adequacy of representation. *See id.* at 60.

#### e. *Ascertainability*

**[21]** The proposed classes are sufficiently ascertainable. Class members are "identifiable" pursuant to "objective criteria," *see In re MTBE Prods. Liab. Litig.,* 209 F.R.D. at 337—specifically, whether each has been or will be sued in New York City Civil Court by the Mel Harris defendants acting as counsel for the Leucadia defendants and whether a default judgment was obtained or will be sought as a result. Class members can be readily identified using this criteria through **\*293** records maintained by defendants and filed in New York City Civil Court. *See Casale,* 257 F.R.D. at 413.

#### 2. The *Rule 23(b)(2) Class*

**[22]** Certification of a class under Rule 23(b)(1) to address the equitable relief sought by plaintiffs is appropriate. As neither injunctive nor declaratory relief is available under the FDCPA, however, *see Dunn v. Advanced Credit Recovery Inc.,* No. 11 Civ. 4023(PAE)(JLC), 2012 WL 676350, at \*2 n. 4 (S.D.N.Y. Mar. 1, 2012); *Sparkman v. Zwicker & Assocs., P.C.,* 374 F.Supp.2d 293, 299 (E.D.N.Y.2005), *In re Risk Mgmt. Alternatives, Inc.,* 208 F.R.D. at 503; *see also* 15 U.S.C. § 1692k, this class is limited to equitable relief sought for plaintiffs' GBL, Judiciary Law, and RICO claims.

Here, defendants are alleged to have acted "on grounds that apply generally to the class"—specifically, defendants' uniform filing of false affidavits in state court to fraudulently procure default judgments against the putative class members—such that injunctive and declaratory relief with respect to the class as a whole would be appropriate. *See* Fed.R.Civ.P. 23(b)(2). That plaintiffs are seeking substantial monetary damages is of no concern given the Court's certification of separate Rule 23(b)(2) and (b)(3) classes addressing equitable relief and damages, respectively. *See Charron,* 269 F.R.D. at 237–38; *Casale,* 257 F.R.D. at 408.

#### 3. The *Rule 23(b)(3) Class*

Finally, certification of a separate liability class under Rule 23(b)(3) is warranted because plaintiffs' proposed class satisfies the predominance and superiority requirements of Rule 23(b)(3).

#### a. *Predominance*

[23] The common issues of law and fact presented in this litigation predominate over any individual ones. In addition to what is discussed above with respect to commonality, *see* Discussion Section B(1)(b), *supra,* such common issues also include, without limitation: (1) whether defendants' practice of filing affidavits of merit and/or affidavits of service with respect to the plaintiff class members violates the FDCPA; (2) whether defendants collectively constitute a RICO enterprise within the meaning of 18 U.S.C. § 1961(4); (3) whether defendants have engaged in a pattern of racketeering activity in connection with the collection of debt in violation of 18 U.S.C. § 1962(c) and (d); (4) whether defendants have used deceptive acts and practices in the conduct of their businesses in violation of New York GBL § 349; and (5) whether the Mel Harris defendants have engaged in deceit and collusion with intent to deceive the courts and any a party therein in violation of New York Judiciary Law § 487.

Every potential class member's claim arises out of defendants' uniform, widespread practice of filing automatically-generated, form affidavits of merit based on "personal knowledge" and, in many instances, affidavits of service, to obtain default judgments against debtors in state court. Whether this practice violates the FDCPA, New York GBL § 349, New York Judiciary Law § 487, and/or constitutes a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and (d) does not depend on individualized considerations. *See, e.g., Labbate–D'Alauro,* 168 F.R.D. at 458 ("[C]ases regarding the legality of standardized documents and practices often result in the predomination of common questions of law or fact and are, therefore, generally appropriate for resolution by class action." (collecting FDCPA cases)).

The Court recognizes that should defendants be found liable on some or all of these claims, individual issues may exist as to causation and damages as well as to whether a class member's claim accrued within the applicable statute of limitations. This, however, does not preclude a finding of predominance under Rule 23(b)(3). *See Cordes,* 502 F.3d at 108 ("Even if the district court concludes that the issue of injury-in-fact presents individual questions, however, it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted."); *In re Visa Check,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there **\*294** are some individualized damage issues."). Indeed, the Court has "a number of management tools available ... to address any individualized damages issues that might arise in a class action," including, *inter alia,* "appointing a magistrate judge or special master to preside over individual damages proceedings," "decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages," "creating subclasses," or "altering or amending the class." *In re Visa Check,* 280 F.3d at 141.

#### b. *Superiority*

[24] A class action is also the superior method for resolving this litigation. *See In re Risk Mgmt. Alternatives, Inc.,* 208 F.R.D. at 507 ("Suits brought under the FDCPA such as this case [concerning the use of standardized documents] regularly satisfy the superiority requirement of Rule 23."). It is, without question, more efficient than requiring thousands of debtors to sue individually. Indeed, the class members' interests in litigating separate actions is likely minimal given their potentially limited means with which to do so and the prospect of relatively small recovery in individual actions. *See* Fed.R.Civ.P. 23(b)(3)(A); *Casale,* 257 F.R.D. at 415 (limited means of class members to litigate individually); *Petrolito,* 221 F.R.D. at 314 (prospect of small recovery). Moreover, as the alleged conduct occurred in New York City Civil Court, concentrating the litigation of these claims in this particular forum is desirable. *See* Fed.R.Civ.P. 23(b)(3)(C). Finally, as discussed above, any difficulties likely to arise in managing this class action, *see* Fed.R.Civ.P. 23(b)(3)(D), are not beyond the realm of the "management tools" the Court has at its disposal, *see In re Visa Check,* 280 F.3d at 141.

Therefore, certification of plaintiffs' proposed liability class is appropriate under Rule 23(b)(3).

## CONCLUSION

For the reasons stated above, plaintiffs' motion for class certification is granted. Accordingly, the Court certifies (1) the Rule 23(b)(2) injunctive and declaratory relief class-comprised of all persons who have been or will be sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been or will be sought—to resolve the equitable portion of plaintiffs' RICO, GBL and Judiciary Law claims; and (2) the Rule 23(b)(3) liability class—comprised of all person who have been sued by the Mel Harris defendants as counsel for the Leucadia defendants in actions commenced in New York City Civil Court and where a default judgment has been entered against them—to resolve the issues of whether defendants' actions violated the FDCPA, RICO, New York GBL § 349, and New York Judiciary Law § 487. Plaintiffs shall submit a proposed order on notice within fourteen days hereof.

SO ORDERED.

**All Citations**

285 F.R.D. 279

Footnotes

1   To the extent the Court has received depositions, declarations, and exhibits designated as confidential under the Protective Order entered into by the parties (*see* 2/1/11 Protective Order), it finds that some limited disclosure of the information contained therein is necessary to make findings and resolve factual disputes related to class certification. What is recited below is limited to information that is or otherwise would be public and/or does not reveal proprietary trade secrets, non-public financials, or sensitive personal information.

2   Specifically, the "Leucadia defendants" include Leucadia, L–Credit, LLC, LR Credit, LLC, LR Credit 10, LLC, LR Credit 12, LLC, LR Credit 14, LLC, LR Credit 18, LLC, and LR Credit 21, LLC, Joseph A. Orlando, Philip M. Cannella, and LR Credit John/Jane Does 1–20. (*See* Third Am. Compl. ¶¶ 22–31). The "Mel Harris defendants" include Mel Harris, Michael Young, David Waldman, Kerry Lutz, Todd Fabacher, and Mel Harris John/Jane Does 1–20. (*See id.* ¶¶ 14–21). The "Samserv defendants" include Samserv, William Mlotok, Benjamin Lamb, Michael Mosquera, John Andino, and Samserv John/Jane Does 1–20. (*See id.* ¶¶ 32–38).

3   Defendants do not dispute the accuracy of the figures cited in this section. (*See* Defs.' Sur–Reply Br. at 2–3; Leucadia Defs.' Br. at 10–12; Mel Harris Defs.' Br. at 6).

4   The Court takes note that in two affidavits of merit submitted as exhibits by plaintiffs, Fabacher identifies himself as the "authorized and designated custodian of records for the plaintiff's assignor." (*See* Jain Decl. Ex. G; Brinckerhoff Decl. Ex. I; *see also* 11/21/11 Fabacher Dep. at 113–17). In those two instances, the particular entities assigning the debt to the plaintiff Leucadia debt collection entities were Sears and Chase Manhattan Bank, entities at which Fabacher was apparently not employed. (*See* Jain Decl. Ex. G; Brinckerhoff Decl. Ex. I; *see also* 11/21/11 Fabacher Dep. at 113–17).

5   To the extent defendants argue that the Court should not consider Fabacher's November 21, 2011 deposition because it was taken after briefing and oral argument on the class certification motion (*see* Mel Harris Defs.' 12/21/11 Ltr.; Leucadia Defs.' 12/19/11 Ltr.), I reject this argument. At oral argument, I raised a number of questions regarding Fabacher's practices in signing the affidavits of merit. (*See* 10/11/11 Hr'g Tr. at 48–49). Although the answers apparently were not in the record, I observed that the information "would be useful to me." (*Id.* at 49). Both the Leucadia and Mel Harris defendants responded to plaintiffs' submission of Fabacher's deposition transcript to the Court. (*See* Mel Harris Defs.' 12/21/11 Ltr.; Leucadia Defs.' 12/19/11 Ltr.). Indeed, the Mel Harris defendants' submission was substantial and included a nine-page declaration by Fabacher. I have read the parties' submissions, and I deem this discovery relevant to class certification and the resolution of related factual disputes. *Cf. In re IPO,* 471 F.3d at 41 (discussing, *inter alia,* district court's "ample discretion to circumscribe ... the extent of discovery concerning Rule 23 requirements").

6   "Rule 23(b)(3) requires that the district court determine what 'questions of law or fact [are] common to the members of the class.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 106 (2d Cir.2007) (quoting Fed.R.Civ.P. 23(b)(3)).

7   In their Notice of Motion for Class Certification, dated April 15, 2011, plaintiffs phrased their certification request in such a way that could be construed as seeking certification of only one class under any or all of the listed subsections of Rule 23(b). (*See* Notice of Mot. for Class Cert. at 2 (seeking certification of "a plaintiff class, pursuant to Fed.R.Civ.P. 23(b)(1)(A), 23(b)(2) and/or 23(b)(3), consisting of all persons who have been or will [sic] sued by the Mel Harris defendants, as counsel for the Leucadia defendants, in actions commenced in New York City Civil Court and where a default judgment has been obtained, or will be sought.")). In light of plaintiffs' more precise wording in their Third Amended Complaint, subsequently filed on May 16, 2011 (*see* Third Am. Compl. ¶¶ 333, 337), I read plaintiffs' request to seek certification of two separate classes.

8   As plaintiffs seek certification of the equitable relief class under Rule 23(b)(1)(A) "and/or" (b)(2) (*see* Third Am. Compl. ¶ 333), I decline to address certification under Rule 23(b)(1)(A).

9   The Mel Harris defendants' citation to *O'Rourke v. Palisades Acquisition XVI, LLC,* 635 F.3d 938, 944 (7th Cir.2011), *cert. denied,* ––– U.S. ––––, 132 S.Ct. 1141, 181 L.Ed.2d 1017 (2012), for the notion that communications in state court are not covered by the FDCPA (Mel Harris Defs.' Br. at 13 & n. 7) does not render this issue moot. First, their contention belies the fact that plaintiffs allege liability for defendants' in-court representations under several statutes, one of which is the FDCPA. Second, *O'Rourke* is not the settled law of this Circuit, and indeed, other circuit courts have conflicting views on "the extent to which a debt collection lawyer's representations to the consumer's attorney or in court filings during the course of debt collection litigation can violate [the FDCPA]." *Hemmingsen v. Messerli & Kramer, P.A.,* 674 F.3d 814, 818 (8th Cir.2012) (collecting cases and noting that "[t]hough rarely made 'directly' to the consumer debtor, such [in-court] representations routinely come to the consumer's attention and may affect his or her defense of a collection claim."); *see also Kuria v. Palisades Acquisition XVI, LLC,* 752 F.Supp.2d 1293, 1302–03 (N.D.Ga.2010) (finding actionable FDCPA claims where debt-buyer allegedly did not intend to take claims to trial to prove their merit, but instead intended only to obtain default judgment or pursue settlement); *Midland Funding LLC v. Brent,* 644 F.Supp.2d 961, 966–70 (N.D.Ohio 2009) (holding affidavit attesting to personal knowledge of outstanding debt to be false and misleading under the FDCPA where affiant signs automatically-generated form affidavits and only verifies the contents of a small percentage of them).

   Similarly, defendants' citation to the affidavit upheld in *Hasbrouck v. Arrow Fin. Servs. LLC,* No. 09–CV–748 (MAD/RFT), 2011 WL 1899250 (N.D.N.Y. May 19, 2011) (*see* Mel Harris Defs.' 10/10/11 Ltr.), is not dispositive on this point. There, the affiant asserted facts regarding the outstanding debt based on "information and belief" and not "personal knowledge" as alleged by the plaintiff. *Hasbrouck,* 2011 WL 1899250, at **1, 6 (internal quotation marks omitted). Indeed, as the court observed, "nowhere in the affidavit does [the affiant] make such an assertion [of personal knowledge]." *Id.* at *6. The point is that this is a legal issue—common to the proposed classes—that must be decided.

10  It is instructive that courts throughout this Circuit have routinely found that putative classes alleging debt collection schemes that employ false or misleading language in mailings sent to debtors satisfy the commonality requirement of Rule 23(a)(2) and warrant class certification under Rule 23(b). *See, e.g., Zimmerman v. Portfolio Recovery Assocs., LLC,* 276 F.R.D. 174 (S.D.N.Y.2011); *Ellis v. Gen. Revenue Corp.,* 274 F.R.D. 53 (D.Conn.2011); *Leone v. Ashwood Fin., Inc.,* 257 F.R.D. 343 (E.D.N.Y.2009); *Ayzelman v. Statewide Credit Servs. Corp.,* 238 F.R.D. 358 (E.D.N.Y.2006); *In re Risk Mgmt. Alternatives, Inc., Fair Debt Collection Practices Act Litig.,* 208 F.R.D. 493 (S.D.N.Y.2002); *Labbate–D'Alauro v. GC Servs. Ltd. P'ship,* 168 F.R.D. 451 (E.D.N.Y.1996). Here, the alleged course of conduct is similarly uniform such that a finding of commonality under Rule 23(a)(2) should be no different. *See Petrolito v. Arrow Fin. Servs., LLC,* 221 F.R.D. 303, 308 (D.Conn.2004) ("Most FDCPA classes involve some routine collection effort, like a form letter, the contents of which violate one of the specific provisions of the FDCPA.").

---

**End of Document**  © 2016 Thomson Reuters. No claim to original U.S. Government Works.