UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE GUZMAN

                                                       Case No.: Case No.  1:16-cv-03499-GBD

                     Plaintiff,

      -against-

MEL S. HARRIS AND ASSOCIATES, LLC
LR CREDIT 13, LLC
MEL S. HARRIS
DAVID WALDMAN
KERRY H. LUTZ
TODD FABACHER
MICHAEL YOUNG
SAMSERV, INC
JOHN ANDINO
WILLIAM MLOTOK

                    Defendants.
-------------------------------------------------------------------X


**PLAINTIFF'S PARTIAL OBJECTION TO MAGISTRATE ORAL RULING DENYING
PLAINTIFF'S MOTION TO COMPEL [DE**

### A. SUMMARY OF RELIEF REQUESTED

Plaintiff respectfully objects in part to Magistrate Judge Ellis' November 9, 2016 oral ruling (the "Oral Ruling") which denied Plaintiff Jose Guzman's motion to compel [DE 76] the sealed pleadings and discovery from the *Sykes* class action litigation against these same Defendants involving the same factual allegations as the case at bar. See *Sykes v. Mel S. Harris, LLC*, et al, 1:09-cv-08486-DC (SDNY). For the reasons discussed below, Plaintiff requests that the Court modify or set aside Judge Ellis' Order and grant Plaintiff's motion to compel pursuant to Fed.R.Civ.P. 72(a).

In brief, this objection is limited to the denial of the motion to compel from SAMSERV the sealed *Sykes* class certification pleadings in its possession, custody, and control. In his order granting class certification in *Sykes*, Judge Chin held the class certifications pleadings provided "substantial support" for the allegations in the complaint, such as systematic sewer service. Mr. Guzman, a Sykes class member opt out makes many of the same factual allegations for which Judge Chin held the class certification pleadings provided "substantial support." Therefore, the most cost effective way to begin to establish the facts alleged in Mr. Guzman's complaint is the review the pleadings upon which the class certification order was based. Production would take 10 minutes to burn the documents onto a CD-ROM.  There is an agreed protective order here that will maintain the confidentiality of the documents. The alternative to this simple, costless production is for Plaintiff to establish the allegations in the complaint is to "start from scratch." Plaintiff would need to start taking depositions and propound document demands to establish systematic false affidavits of service, false affidavits of merits, and the other allegations for which evidence has already been gathered.

To deny a motion to compel relevant documents when the cost of production is literally

zero is, respectfully, "clearly erroneous or is contrary to law" justifying this partial objection under Fed.R.Civ.P. 72(a).

In the alternative, Your Honor could interpret the Oral Ruling as holding that the document production demands must be made with more specificity. At two points during oral argument it appeared that Magistrate Ellis interpreted the motion to compel as seeking all sealed pleadings in Sykes, as opposed to just the sealed class certification pleadings, and that a more specific request in the moving papers might have resulted in a different ruling. *See* Exh C to Keshavarz Decl., Transcript of November 9, 2016 hearing, ("Transcript") p. 11:15-12:10. In that event, Your Honor could "modify" the ruling to address whether the production of just sealed class certification.  Plaintiff is propounding new discovery demands to make clear the demands are seeking just those documents. We could for the 30 day deadline for SAMSERV to object to the demands – which they have indicated they do – and then file a second motion to compel, and wait for a hearing on the same. The more efficient approach would be for Your Honor to rule whether a document demand to SAMSERV clearly limited to the seal class action pleadings in its possession, custody, or control would be "relevant to any party's claim or defense and proportional to the needs of the case" considering several factors. Fed.R.Civ.P. 26(b)(1).

### B. SUMMARY OF CLAIMS AGAINST EXISTING DEFENDANTS

On May 16, 2016 Plaintiff Jose Guzman brought this action for Defendants' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, New York General Business Law § 349 *et seq.*, New York Judiciary Law § 487 *et seq.* and/or for conversion. The defendants in the Original Complaint are a debt collection law firm, the principals and an employee of the firm Mel S. Harris & Associates (collectively "MSH"), a putative assignee creditor LR Credit 13, LLC ("LRC"), and a process serving company and an individual process server (collectively

SAMSERV). MSH has been dismissed from this case pursuant to a voluntary order of dismissal. [DE 80]. To be clear, LRC, as the party in the collection lawsuit, is directly and vicariously liable for all of the misconduct MSH committed on its behalf.

MSH, LRC, and SAMSERV engaged in a joint venture to obtain default judgments against over 100,000 consumers by, *inter alia*, systematically using false affidavits of service and false affidavits of merit. Final Approval has been granted in a massive class action of nearly 200,000 consumers in *Sykes v. Mel S. Harris, LLC*, et al, 1:09-cv-08486-DC (SDNY), *see* www.SykesClassAction.com.

Plaintiff Jose Guzman is a *Sykes* class member who has opted-out of the class settlement. Mr. Guzman brings this individual action against MSH, LRC, and Samserv for the same claims brought directly in *Sykes*; procuring a default judgment against him in state court using a false affidavit of service and an affidavit of merit that falsely claimed personal knowledge that Mr. Guzman owed the putative debt.

Plaintiff's Original Complaint also brought non-*Sykes* claims for suing to collect a debt not owed by Mr. Guzman, for refusing to vacate the sewer service judgment, and for subsequently attempting to dupe Mr. Guzman into releasing all claims (including all *Sykes* claims) under the guise of agreeing to vacate the default judgment. Defendants also refused to discontinue the case for lack of service without a release of the abusive debt collection conduct that resulted in the sewer service judgment in the first instance despite knowing the judgment was based on a false affidavit of merit and a false affidavit of service, in further violation of the FDCPA.

### C.  PROCEDURAL HISTORY

Plaintiff's Original Complaint was filed on May 10, 2016; Defendants Mel S. Harris, Mel S. Harris and Associates, LLC, David Waldman, and Michael Young filed their Answer on July 18, 2016. [DE 38]. Defendants William Mlotok and Samserv, Inc. filed a separate Answer on the same day. [DE 40]. Defendant LR Credit 13, LLC filed its Answer on July 27, 2016. [DE 50]. Plaintiff filed his first set of discovery demands on August 1, 2016, with answers due thirty days later on August 31, 2016. Plaintiff notes that Defendants have yet to produce substantive answers to any of Plaintiff's discovery requests.

Plaintiff's counsel spoke with counsel for Defendants during two separate thirty-minute phone conversations on September 22, 2016 and September 27, 2016 in an attempt to resolve the discovery disputes. Though the parties were able to resolve several disputes during the September 22 and 27, 2016 phone conversations, the parties could not come to an agreement regarding several requests. Accordingly, Plaintiff filed a letter on October 4, 2016 seeking a pre-motion conference to compel production of the requested information from Samserv, Inc. In the October 4, 2016 letter, Plaintiff requested an order compelling the following: documents from *Sykes*, including sealed documents relating to the motion for class certification and the subsequent appeal; unredacted copies of pleadings that were filed in redacted form; depositions in *Sykes*; the database entitled "Process Service Management System" referenced in the Egleson Declaration in *Sykes*; discovery answers and documents produced by any defendant in *Sykes*, and the "full and complete" record in *Sykes* as referenced in Samserv's Answer.

Samserv filed a letter on October 11, 2016 opposing Plaintiff's request on the grounds that Plaintiff's requests were disproportional to the needs of the case. A In its October 11, 2016 letter, Samserv cites, in general terms, "the significant financial and logistical burden that such discovery will impose on Samserv." Despite its conclusory allegations, Samserv fails to explain

4

how it would be burdened by an order compelling it to produce pleadings from *Sykes,* which Samserv concedes formed the basis for Judge Chin's finding, in the context of a class certification motion, "that on hundreds of occasions the defendant process servers [including John Andino][1] purported the serve process at two or more locations at the same time."

An Interim Pretrial Conference was held before this Court on October 13, 2016, during which Your Honor inquired as to the progress of discovery. The undersigned explained that discovery was effectively stalled because Judge Ellis had yet to issue an order on Plaintiff's motion to compel. Your Honor instructed the parties to submit a letter to Judge Ellis if a response was not received within ten days. On October 26, 2016, Plaintiff submitted a letter to Judge Ellis respectfully inquiring as to the status of the October 4, 2016 letter.

On November 9, 2016, three months after Plaintiff initially served his discovery requests, Judge Ellis issued an order denying Plaintiff's motion as to the requests for the pleadings and discovery from *Sykes* on the grounds that Plaintiff's requests were overbroad and not proportional to the needs of the case. Judge Ellis' order also set a discovery deadline of February 28, 2017. Attached as Exhibit C is a true and correct copy of the transcript from the hearing on the motion to compel. Judge Ellis's order was silent as to the remaining requests, including Plaintiff's request for the "Process Service Management System" database, which is known to contain evidence of repeated "sewer service" by John Andino, the process server who is alleged to have served Plaintiff in the underlying collection lawsuit in this case.

For the reasons set forth below, Plaintiff now respectfully objects to Judge Ellis' Oral Order in part and requests that this Court compel Samserv to produce unredacted copies of pleadings from *Sykes* relating to the motion for class certification. Given the considerable delay

---

[1] John Andino is the process server who executed a false affidavit of service against Plaintiff Jose Guzman.

in receiving discovery responses from Defendants, Plaintiff also requests a thirty day extension of the discovery deadline, to March 29, 2016.  Defendants are unopposed to this request.

### D.  STANDARD FOR Fed.R.Civ.P. 26(b)(1)

Rule 26(b)(1) recognizes that information is discoverable if it "relevant to any party's claim or defense and proportional to the needs of the case" considering several factors.

Courts are instructed to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed.R.Civ.P. 26(b)(1).

The requesting party "bears the initial burden of demonstrating any possibility of relevance sufficient to warrant discovery," but "once that showing is made, the party resisting discovery bears the burden of demonstrating that . . . the requests are irrelevant, or are overly broad, burdensome, or oppressive." *Royal Park Investments SA/NV v. Deutsche Bank Nat'l Trust Co.*, 14-cv-4394-AJN-BCM, 2016 WL 4613390, at *6-7 (S.D.N.Y. Aug. 31, 2016); *Alaska Electrical Pension Fund v. Bank of America Corporation*, 14-cv-7126-JMF, 2016 WL 6779901, at *2 (S.D.N.Y. Nov. 16, 2016).

### E.  STANDARD FOR Fed.R.Civ.P. 72(a)

Rule 72(a) provides that, where a Magistrate is referred to hear and decide a non-dispositive motion, "the district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed.R.Civ.P. 72(a). A Magistrate Judge's ruling is contrary to law if it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Thai Lao Lignite (Thailand) Co., Ltd. v. Government of Lao People's Democratic Republic*, 924 F.Supp.2d 508, 512-13 (S.D.N.Y. 2013). A

Magistrate Judge's ruling clearly erroneous where, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Highland Capital Management, L.P. v. Schnieder*, 551 F.Supp.2d 173 (S.D.N.Y. 2008).

### F. APPLYING TO THE FACTS TO Fed.R.Civ.P. 26(b)(1) and 72(a)

As previously noted, Plaintiff only objects to that part of the Oral Ruling that denied Plaintiff's request to compel from SAMSERV the sealed class certification pleadings in *Sykes* that are in SAMSERV's possession, custody, or control. Plaintiff respectfully contends a number of items in the ruling were error.

The Oral Order erred in not keeping the burden to challenge proportionality squarely on the party challenging discovery. Ex. A, Transcript, p. 7:21-8:4. Even after the 2015 amendment, the burden of challenging relevant discovery, for proportionality or for some other reason, remains with the party challenging discovery. *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14CIV9792WHPJCF, 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd,* No. 14CV9792, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016)(*citing to* commentary to 2015 amendment to Fed.R.Civ.P. 26(b)(1)). A party challenging proportionality based on an alleged undue burden or expense bears the burden of proving the same. *Id*. SAMSERV makes no argument whatsoever as to the expense of producing the class certification pleadings, nor does it specifically raise any of the proportionality factors outlined in Fed.R.Civ.P. 26(b)(1).

The Oral Ruling applied the wrong standard of relevance, even under the amended rules. The Oral Order erred in making a blanket assertion of a lack of proportionality without considering the factors listed in Fed.R.Civ.P. 26(b)(1) or, when it did consider the factors, incorrectly applied the standard. In sum, Plaintiff respectfully asserts, that the culmination of

7

these errors resulted in the "part of the order" denying the motion to compel from SAMSERV the sealed *Sykes* class certification pleadings to be "clearly erroneous or is contrary to law" under Fed.R.Civ.P. 72(a).

The cost for production is almost literally zero. SAMSERV, a Defendant in Sykes who has possession, custody, or control of the sealed documents, could burn the documents onto a CD-ROM in 10 minutes. The value to Plaintiff's case is enormous. Moreover, the cost of Plaintiff obtaining this information independently – e.g. taking the deposition of Fabacher, establishing that process server John Andino in fact has a pattern and practice of executing false affidavits of service – would be enormous.

Plaintiff's motion to compel sought to compel from SAMSERV seven categories of documents:

> Plaintiff requests [from SAMSERV] documents from Sykes, including sealed documents relating to the motion for class certification and the subsequent appeal; unredacted copies of pleading that were filed in redacted form; depositions in Sykes; the database entitled "Process Service Management System" referenced in the Egleson Declaration in Sykes; discovery answers or documents produced by any defendant in Sykes; and the "full and complete" record in Sykes, as referenced in Samserv's answer.

DE 49, Plaintiff's September 19, 2016 letter to compel, p. 1. Most important to this objection, the motion sought "the pleadings in the motion for class certification" because, Plaintiff argued, those pleadings "provided substantial support for the same allegations we [Mr. Guzman] are making in this case."

**1. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…."**

Prior to its amendment effective January, 2016, Fed.R.Civ.P. 26(b) established the relevancy standard "reasonably calculated to lead to the discovery of admissible evidence." The amended Fed.R.Civ.P. 26(b)(1) revised the scope of relevance to being relevant "to any party's claim or defense."  However, even under the amended rule, "Relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14–CV–9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (*quoting Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

Surprisingly, the Oral Ruling was based in part on a lack of relevance. Exh. C, Transcript, p. 12:3-6.  However, as described further in the final factor to be considered in deciding proportionality -- importance of the discovery in resolving the issues – the evidence cited to on the order granting certification in *Sykes* is the same factual and legal allegations in Mr. Guzman's complaint.

2.  "…and that and proportional to the needs of the case, considering…"

In addition to the relevance standard, discovery now is limited to the "proportional needs of the case," considering a list of six factors.  The Oral Order does little more than make a blanket assertion that the discovery sought to be compelled was not "proportional."  This is error because the Oral Order did not consider proportionality to one of the specific subset of documents to be compelled – the class certification pleadings -- or, to the degree it did, applied the incorrect standard.  At Oral Argument and in the moving papers Plaintiff was specific as to the need of the class certification pleadings.

a.  … the "importance of the issues at stake in the action."

Congress enacted the FDCPA after finding "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Polanco v. NCO Portfolio Mgmt., Inc*., 930 F. Supp. 2d 547, 550 (S.D.N.Y. 2013), *quoting* 15 U.S.C. § 1692(a). "Accordingly, the purpose of the FDCPA is to protect consumers from deceptive or harassing actions taken by debt collectors, with the purpose of limiting the suffering and anguish often inflicted by independent debt collectors. Id. (quotation marks omitted) *citing to Gabriele v. Am. Home Mortg. Serv., Inc*., 503 Fed.Appx. 89, 93 (2d Cir.2012).

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). *See also Hamilton v. United Healthcare of La., Inc*., 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); *and Jacobson v. Healthcare Fin. Servs*., 516 F.3d 85, 91 (2d Cir. N.Y. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [Plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

The importance of the public policy purposes undergirding the FDCPA should be a substantial factor in determining proportionality, even if the dollar amount in dispute were to be nominal. This point is recognized in the commentary to the 2015 amendment. ("Thus the rule recognizes that many cases in public policy spheres, such as employment practices, free speech, and other matters, may have importance far beyond the monetary amount involved.") This is also recognized in the caselaw. See *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012); *Chen-Oster v. Goldman, Sachs & Co.*, 285 F.R.D. 294, 306 (S.D.N.Y. 2012).

Moreover, Plaintiff is a victim of a massive scheme by MSH, LRC, and SAMSERV engaged in a joint venture to obtain default judgments against over 100,000 consumers by, *inter alia*, systematically using false affidavits of service and false affidavit of merit. Final Approval has been granted in a massive class action of nearly 200,000 consumers in *Sykes v. Mel S. Harris, LLC*, et al, 1:09-cv-08486-DC (SDNY).

Given the enormous scope of the fraud by Defendants, the enormous profits they derived, and the importance Congress placed on the public policy undergirding the FDCPA demonstrate the "importance of the issues" factor strongly mitigates in favor of Plaintiff. The Oral Order erred in not even considering this factor.

  b. **… the "amount in controversy."**

Plaintiff has alleged facts in his First-Amended Initial Disclosures (Exh. D, p. 3) and in the damages section of his proposed amended complaint [DE 51-1, pp. 16-18] that could easily sustain a garden variety emotional distress award of $135,000. Plaintiff made this argument at oral argument, enunciating facts that supported the claim. Exh. C. Transcript p. 9:6-12. ("It's been emotional distress from the day they garnished until today. Until today, he can't sleep two

11

to three times a week. He's staying up until two in the morning, tossing and turning. For the first year, it was every night.") *See Abel v. Town Sports Int'l, LLC*, 09 CIV. 10388 DF, 2012 WL 6720919 at * 15, 16 (S.D.N.Y. Dec. 18, 2012)(collecting cases upholding garden variety emotional distress awards of up to $125,000, and noting the recent trend in upholding such awards). In FDCPA cases litigated by the undersigned, SDNY courts have noted to substantial potential recovery for the garden variety emotional distress claims sought. *See Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493(S.D.N.Y. Oct. 21, 2015)("He alleges he has become "fixated on the collections lawsuit and suffered anxiety, including an inability to sleep for months at a time." The Second Circuit has affirmed awards of over $100,000 for similar kinds of emotional distress.") *citing to Lore v. City of Syracuse*, 670 F.3d 127, 177–78 (2d Cir.2012); and *Gomez v. Resurgent Capital Servs., LP,* 129 F. Supp. 3d 147 (S.D.N.Y. 2015)(noting awards of $50,000-$85,000).

Plaintiff also argued that he has brought a claim for punitive damages under GBL 349. Exh. A, Transcript, p. 9. *See* Wilner v. Allstate Ins. Co., 71 A.D.3d 155, 167, 893 N.Y.S.2d 208, 218 (2010) (denying dismissal of Plaintiff's claim for punitive damages under GBL 349); Barkley v. Olympia Mortgage Co., 557 F. App'x 22, 26 (2d Cir. 2014), as amended (Jan. 30, 2014)("However, punitive damages may be awarded for a violation of GBL § 349."), *citing* to *Wilner*. Plaintiff argued that a punitive damage multiplier of 9 could make a $135,000 garden variety emotional distress award a "not insubstantial award." At oral argument, counsel for LRC – who was not a party to the motion to compel and thus whose standing to raise an oral objection is dubious – sought to argue that, despite some caselaw to the contrary, GBL 349 does not allow for the recovery of punitive damages. That argument is irrelevant for a discovery

matter as the punitive damage demand is one of the items of relief sought in the Original Complaint. Plaintiff will ultimately succeed on that claim at trial is not pertinent at this juncture.

It is not clear that the amount in controversy was a factor in the Magistrate Ruling. *See* Exh C, Transcript p. 6:8, 9.  However, to the degree that the ruling was based on the amount in controversy, Plaintiff respectfully submits is "clearly erroneous or is contrary to law" given the factual allegations for damages, the amounts upheld for garden variety emotional distress, and the claim for punitive damages, especially compared to the zero cost of production of the pleadings.

### c.   … the "parties' relative access to relevant information."

SAMSERV, as a Defendant in Sykes, has the class certification pleadings in its possession, custody, or control. Plaintiff does not.  It is true that the pleadings are subject to a confidentiality order. However, SAMSERV is a party to this action. It would need to comply with an order of this Court to produce the documents. The documents would continue to be confidential under the terms of the agreed protective order in this case, as the undersigned noted at oral argument. Exh. C, Transcript 18:7-22.

### d.   … the "parties' resources."

This factor obviously weighs entirely in the favor of Plaintiff.  Mr. Guzman is a law-income working class individual. As SAMSERV noted in their opposition papers, SAMSERV had $500,000 on hand in order to pay a share of the Sykes settlement. LRC is a fully owned subsidiary of Luecadia, which paid $46 million towards the settlement.  The Magistrate Ruling broadly asserts "the burden outweighs the likely benefit in this case."  However, nowhere in the Magistrate Ruling was there a consideration of the "parties' resources" in considering whether

compliance really would be a "burden" to these Defendants.  Plaintiff respectfully suggests that the failure to consider the "parties' resources" in determining what would be burdensome is "clearly erroneous or is contrary to law."

More directly, SAMSERV does not dispute the undersigned's assertion in his moving papers and in oral argument that the "burden" of compliance would be zero because it would take all of 10 minutes

### e. … the "importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit."

The heart of Plaintiff's objection is the importance of the class action pleadings to prosecuting Plaintiff's claims compared with the literal cost of zero to produce. Just as important is the result of not obtaining the class action pleadings: Plaintiff would have to "start from scratch" and engage in the depositions and document production demands necessary to obtain the same evidence that is part of the class action pleadings.

The Oral Order held as follows:

> I concur, that is, that take into account what Rule 26 says about the broke proportionality between the discovery sought and the potential benefit for the discovery. Even without the things that were just indicated, it seems to me that the discovery, the broad discovery, sought on the Sykes class action, given the claims that Guzman has here, are disproportionate, particularly given the defendants that are left.
> And the likelihood that the proportion of responsibility would probably mirror what happened in the Sykes class action, opening up all the discovery in the Sykes class based upon statements that were made by Judge Chin, which I think don't support the broad idea that it would be necessary for the plaintiff in this case to have all of the discovery in the Sykes case in order to present the plaintiff's case.
> I find that the application to get the discovery in the Sykes case is not warranted…. Since the burden outweighs the likely benefit in this case, I find that the discovery sought by the -- the broad discovery, class discovery, sought by the plaintiff, and including the pleadings in the Sykes case is unwarranted, and that application is denied.

Exh. C, Transcript, pp. 7:2-8:9.

Limiting Plaintiff's objection to just the class action pleadings, this ruling is clear error for the following reasons.

The court holds the "burden" outweighs the likely benefit in this case and ignores the proportionality factor of the "burden or expense of the proposed discovery outweighs its likely benefit." Since the cost of production is zero, any relevance would outweigh the cost. The court erred because it paid no attention to the fact that the cost of production would be zero, despite having the issue pointed out in oral argument. Exh. C, Transcript, p. 10:8-12.

The assertion that "the likelihood that the proportion of responsibility would probably mirror what happened in the Sykes class action" should have no effect on the discovery ruling. As an initial matter, LRC, who the discovery would be helpful against, paid the vast majority of the Sykes settlement. Further, the dismissal of MSH has almost no bearing on the amount of discovery needed in the case at bar.  LRC's FDCPA liability is based on the misconduct MSH committed on its behalf.  *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 156 (S.D.N.Y. 2015)(debt buyer is liable for the misconduct of its debt collection attorney). Therefore, Plaintiff will need to prove all of the allegations against MSH in order to have LRC liable. If anything, the dismissal of MSH makes the need for the class certification documents more important because the only way to get discovery from MSH at this point is through non-party subpoenas.

For example, an FDCPA violation claims is that Fabacher, an employee of MSH, robo-signed false affidavits of merit claiming personal knowledge of the facts necessary to allow the entry of a default judgment.  Using such an affidavit falsely contending personal knowledge states a claim for violations of the FDCPA. *Sykes I* at 424.  Evidence of this robo-signing is already in the pleadings for class certification. Sykes III at 282-83 ("The record before the Court

establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated en masse by sophisticated computer programs and signed by a law firm employee [Fabacher] who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting.")  Mr. Guzman needs to prove the same robo-signing practice by Fabacher in order to prevail on this claim against LRC.  Therefore, the ruling that this discovery was of no value to plaintiff is error. This is especially true because the alternative would by for Plaintiff to subpoena non-party Fabacher to establish the facts for which there is already evidentiary support in the record.

The court erred in not considering the "likely benefit" to Plaintiff in getting cost-free discovery that establish essential elements to his claim.

Another example: in its answer SAMSERV denies it is a debt collector. It invokes an exemption to the FDCPA definition of debt collector for process servers while serving process. 15 U.S.C. § 1692a(d)(D). However, the exemption does not apply if Plaintiff can prove by a preponderance of the evidence that SAMSERV does not actually serve process but rather files false affidavits of service. *Sykes I* at 423. The evidence attached to the class certification pleadings provided a record to document repeated sewer service. "The record also shows that on hundreds of occasions the defendant process servers [including John Andino] purported to serve process at two or more locations at the same time." Sykes III at 282-83.  Mr. Gomez needs to prove not only that SAMSERV did not serve him, he needs to prove that SAMSERV regularly fails to serve and instead files false affidavits of service in order to prevent SAMSERV from being able to claim the process server exemption in his case. It is therefore error to hold that a zero cost production outweighs the value of the discovery to Plaintiff, especially considering

16

that the alternative is to independently establish through discovery in this case the systematic use of false affidavits.

Plaintiff is not arguing that the class certification order has an issue preclusion effect on the items for which the Court found substantial support. Rather, Plaintiff's point is that there was evidence in the record that formed the basis of the ruling. Indeed, the class certification ruling points to some of that evidence, such as a deposition of Mr. Fabacher, but the evidence itself is sealed. It is inefficient and costly for Mr. Guzman to take Fabacher's deposition again (or taking it cold without the benefit of the full deposition transcript), than rather than at least having the full text of the transcript for the deposition already taken.

Further, Mr. Guzman needs to prove this pattern and practice evidence as a factor in obtaining statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B). Pattern and practice evidence and the degree the misconduct is intentional are also relevant for determining the amount of treble damages (up to $1,000) to award under GBL 349, as well as for punitive damages under the statute. Further, if Mr. Guzman is able to prove a pattern and practice of misrepresentations, then that would establish the "consumer oriented" element of his GBL 349 claim. *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, No. 15-CV-2741 JSR, 2015 WL 6437493, at *2-3 (S.D.N.Y. Oct. 21, 2015)(Consumer states a GBL 349 claim by asserting debt collector has repeatedly filed collection lawsuits demanding attorney's fees in the wherefore clause when fees were not allowed by law or contract.)

The denial of Plaintiff's motion to compel means that discovery is going to be extremely expensive for Plaintiff or Plaintiff will simply be precluded from being able to reasonably obtain the evidence necessary to support the factual allegations in the complaint or the elements necessary to prevail on his FDCPA or GBL 349 claims.

## G. CONCLUSION.

For these reasons, Plaintiff prays the Court sustains his objection to that part of the Oral Ruling denying his motion to compel the class certification pleadings in Sykes, and for all other relief to which he may be justly entitled.

> Respectfully submitted,
> **/s/**
> Ahmad Keshavarz
> Attorney for Plaintiff
>
> The Law Office of Ahmad Keshavarz
> 16 Court St., 26th Floor
> Brooklyn, NY 11241-1026
>
> Phone: (718) 522-7900
> Fax:   (877) 496-7809
>        Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Defendant LR Credit 13, LLC
> By and through its attorneys of record
> Scott Sonny Balber
> David Wayne Leimbach
> Herbert Smith Freehills NY LLP
> 450 Lexington Ave, 14th Floor
> New York, NY 10017
> (917) 542-7600
> Fax: (917) 542-7601
> Email: scott.balber@hsf.com
> Email: David.Leimbach@hsf.com
>
> Defendants Samserv, Inc. and William Mlotok
> By and through their attorneys of record
> Jeffrey S. Lichtman
> O'hare Parnagian LLP
> 82 Wall Street, Suite 300
> New York, NY 10005

(212)-425-1401  
Fax: (212)-425-1425  
Email: jlichtman@oharepanagian.com

Date: <u>November 23, 2016</u>  
Brooklyn, NY  
/s/  
Ahmad Keshavarz  
Attorney for Plaintiff