1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
JOSE GUZMAN,

                              PLAINTIFF,

        -against-          Case No.:
                           1:16-EV-03499

MEL S. HARRIS AND ASSOCIATES, LLC, LR
CREDIT 13, LLC, MEL S. HARRIS, DAVID
WALDMAN, KERRY H. LUTZ, TODD FABACHER
MICHAEL YOUNG, SAMSERV, INC, JOHN ANDINO,
and WILLIAM MLOTOK,

                              DEFENDANTS.
----------------------------------------X

                DATE:  March 10, 2017

                TIME:  12:40 P.M.


        EXAMINATION BEFORE TRIAL of the

Defendant, LR CREDIT, by a witness, ROCCO

NITTOLI, taken by the Plaintiff, pursuant

to a Court Order and to the Federal Rules

of Civil Procedure, held at the offices of

Herbert Smith Freehills, New York, LLP, 450

Lexington Avenue, 14th Floor, New York, New

York, before Tracy Anne Valenti, a Notary

Public of the State of New York.

---

2

A P P E A R A N C E S :

LAW OFFICE OF AHMAD KESHAVARZ
    Attorneys for the Plaintiff
    JOSE GUZMAN
    16 Court Street
    Brooklyn, New York 11241
    BY:  AHMAD KESHAVARZ


HERBERT SMITH FREEHILLS NY LLP
    Attorneys for the Defendant
    LR CREDIT 13, LLC
    450 Lexington Avenue
    New York, New York 10017
    BY:  SCOTT BALBER, ESQ.


O'HARE PARNAGIAN, LLP
    Attorneys for the Defendant
    SAMSERV, INC. and WILLIAM MLOTOK
    82 Wall Street
    New York, New York 10005
    BY:  JEFFREY S. LICHTMAN, ESQ.
         -and-
         ANDREW C. LEVITT, ESQ.


ALSO PRESENT:
    JESSICA MOODY

            *      *      *

---

3

        F E D E R A L   S T I P U L A T I O N S


        IT IS HEREBY STIPULATED AND AGREED by and

between the counsel for the respective

parties herein that the sealing, filing and

certification of the within deposition be

waived: that the original of the deposition

may be signed and sworn to by the witness

before anyone authorized to administer an

oath, with the same effect as if signed

before a Judge of the Court: that an

unsigned copy of the deposition may be used

with the same force and effect as if signed

by the witness, 30 days after service of

the original & 1 copy of same upon counsel

for the witness.


        IT IS FURTHER STIPULATED AND AGREED that

all objections except as to form, are

reserved to the time of trial.


                *    *    *    *

---

4

                    R. NITTOLI

        R O C C O   N I T T O L I, called as a

witness, having been first duly sworn by a

Notary Public of the State of New York, was

examined and testified as follows:

EXAMINATION BY

MR. KESHAVARZ:

        Q.     Please state your name for the

record.

        A.     Rocco Nittoli.

        Q.     What is your address?

        A.     12 Pemberton Drive, Matawan,

New Jersey 07747.

        Q.     Good afternoon, sir.

        A.     Good afternoon.

        Q.     Have you ever had your

deposition taken before?

        A.     Yes.

        Q.     In what type of matters?

        A.     Debtor or uncollected debt

case.

        Q.     Where do you work?

        A.     Leucadia National Corporation.

        Q.     What is your title there?

        A.     Vice president and treasurer.

5

R. NITTOLI

1
2      Q.   If you had your deposition
3   taken before, you probably know the rules,
4   but I am just going to go over them
5   briefly.  If I ask a question that you
6   don't understand, will you please ask me to
7   rephrase it?
8      A.   Yes.
9      Q.   If I ask a question and you
10  don't ask me to rephrase it, is it
11  reasonable for me to assume you understood
12  the question?
13     A.   Yes.
14     Q.   During the course of the
15  deposition, you may nod or shake your head
16  or something uh-huh, which is normal
17  conversation, but since the court reporter
18  is taking notes and she's very mean, will
19  you please try to verbalize your answer?
20     A.   Yes.
21     Q.   What steps did you take to
22  prepare for your deposition today?
23     A.   I met with Counsel.
24     Q.   By Counsel, you mean Scott
25  Balber?

6

R. NITTOLI

1
2      A.   Yes.
3      Q.   Did you meet anyone else in
4   preparation for your deposition today?
5      A.   Yes, I did.
6      Q.   With who else?
7      A.   In-house attorney.
8      Q.   In-house at Leucadia?
9      A.   At Leucadia, yes.
10     Q.   Who is that?
11     A.   Jennifer Kane.
12     Q.   Did you meet with anyone else
13  in preparation for our deposition today?
14     A.   No, sir.
15     Q.   How long was your meeting with
16  Miss Kane in preparation for your
17  deposition today?
18     A.   Approximately two hours.
19     Q.   When was that?
20     A.   Monday, this week.
21     Q.   How long was your meeting with
22  Mr. Balber in preparation for your
23  deposition today?
24     A.   They were in the same meeting.
25     Q.   Those are the only two

7

R. NITTOLI

1
2   meetings, either on the phone or in person,
3   in preparation for your testimony?
4      A.   One meeting.  They were both
5   present.
6      Q.   What documents did you review
7   in preparation for your testimony today, if
8   any?
9      A.   I reviewed the complaint and
10  the materials that were produced as part of
11  the discovery.  I think that was it.
12     Q.   When did you review those
13  documents?
14     A.   At the preparation meeting.
15     Q.   So let's go back to where we
16  started.  You indicated you are the vice
17  president and treasurer at Leucadia; is
18  that right, sir?
19     A.   Yes, sir.
20     Q.   How long had you been working
21  at Leucadia?
22     A.   At Leucadia, it's been
23  approximately eight-and-a-half years.
24     Q.   Can you just tell me briefly
25  what Leucadia is?

8

R. NITTOLI

1
2      A.   Leucadia National Corporation
3   is an investment holding company.  It
4   acquires and disposes of various
5   investments.
6      Q.   Generally speaking, what type
7   of investments?
8      A.   Could be financial investments,
9   could be operating assets.  We have
10  investments in a timber company, commercial
11  mortgage company, auto dealership.  In the
12  past we've had investments in wineries,
13  hotels, casinos, banks.
14     Q.   Quite a variety?
15     A.   Yes.
16     Q.   About how many people work at
17  Leucadia?  I am just trying to get a
18  ballpark background idea how many people,
19  if you know?
20     A.   Approximately 100.
21     Q.   Do you know, roughly speaking,
22  what the income is or the assets are for
23  Leucadia?
24          MR. BALBER:  Objection to the
25  form of the question.  You can answer

9

1          R. NITTOLI
2          if you can understand the question.
3          **A.     Approximately 40 billion**
4     **dollars in assets.**
5          **Q.**     40 billion dollars in assets?
6          **A.     Yes.**
7          **Q.**     Do you know what the annual
8     income of Leucadia is, roughly speaking?
9          **A.     It is north of five billion.**
10    **Annual income?**
11         **Q.**     Yes.
12         **A.     I do not know the annual**
13    **income.**
14              MR. BALBER:  You mean revenue?
15              THE WITNESS:  Revenue.
16         **Q.**     Over four billion dollars in
17    revenue a year?
18         **A.     Over five billion in revenue.**
19         **Q.**     Thank you.
20              When you say Leucadia is an
21    investment holding company, how much of
22    that holding company was holding defaulted
23    debts?
24              MR. BALBER:  Object to the form
25              of the question.  If you understand

11

1          R. NITTOLI
2          **Q.**     I believe you answered the
3     question, but I didn't write it down, so I
4     apologize, I am asking it again.  About how
5     much money did Leucadia invest for this
6     eight-year period in consumer credit
7     portfolios?
8              MR. BALBER:  Objection.  Asked
9              and answered.
10         **A.     Approximately 70 million.**
11         **Q.**     Was that investment part of the
12    investment with Rushmore and LR Credit, is
13    that that portfolio of debts or do you mean
14    something different?
15              MR. BALBER:  Object to the form
16              of the question.  You can answer.
17         **A.     It was with -- Rushmore was a**
18    **company investor and it was solely with**
19    **them.**
20              MR. BALBER:  For the record, I
21              want to designate the transcript
22              confidential as of the terms of the
23              protective order.
24              MR. KESHAVARZ:  I think the
25              terms were that you have to review

10

1          R. NITTOLI
2          the question, you can answer.
3          **A.     Can you repeat the question?**
4          **Q.**     Sure.  You talked about
5     investments and timber and wineries and
6     hotels.  I am just trying to get an idea
7     about how much of Leucadia is in the
8     investment for the purchase of defaulted
9     debts?
10              MR. BALBER:  Object to the form
11              of the question.  No foundation.
12         **A.     We, over approximately an**
13    **eight-year window period, we invested about**
14    **70 million dollars.**
15         **Q.**     In what?
16         **A.     In defaulted credit card debts.**
17         **Q.**     These are for portfolios of
18    defaulted consumer credit debts; is that
19    right?
20         **A.     Correct.**
21         **Q.**     And for what eight-year period
22    did Leucadia invest in portfolios of
23    defaulted consumer debts?
24         **A.     From approximately 2003 through**
25    **approximately 2011.**

12

1          R. NITTOLI
2          and designate page numbers.
3              MR. BALBER:  Designating all
4     the pages of the deposition
5     transcript confidential.
6              MR. LICHTMAN:  Can we also have
7     a stipulation that an objection by
8     one party is an objection by all, so
9     we don't clutter the transcript?  Is
10    that okay?
11              MR. KESHAVARZ:  Fine by me.
12              MR. BALBER:  Me, too.
13              MR. LICHTMAN:  Thank you.
14              MR. KESHAVARZ:  Mark this as
15    Exhibit 1 and 2.
16              (Whereupon, the aforementioned
17              documents were marked as Plaintiff's
18              Exhibits 1 and 2 for identification
19              as of this date by the Reporter.)
20         **Q.**     I'm showing you what's been
21    marked as Plaintiff's Exhibit 2, LR Credit
22    doc and production pages Bates stamped 91
23    through 114.  Can you identify what is that
24    document, sir?
25         **A.     This is the joint venture**

13

R. NITTOLI

1
2  general liability and limited liability
3  agreement of LR Credit LLC and it appears
4  that it includes attachments including a
5  legal collection agreement.
6      Q.  Is it your understanding that
7  those are the attachments that are part of
8  the agreement that's Exhibit B, Exhibit 2?
9          MR. BALBER:  Take a minute to
10     look at it.
11     Q.  Take your time.
12     A.  I don't know what Exhibit 2 is,
13  so -- other than it is marked Exhibit 2.
14         MR. BALBER:  I think the only
15     question is whether this is all, this
16     entire is one document.
17         THE WITNESS:  Right.
18         MR. BALBER:  If it belongs
19     together.
20     Q.  That's exactly right, because
21  if you look between the pages, it says
22  Exhibit 1 or Attachment 1 or Attachment 2.
23  Do you know if all of those pages are part
24  of the same agreement?
25     A.  I don't know if there is pages

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com

13

---

14

R. NITTOLI

1
2  missing or there is more.
3      Q.  So is that the original
4  agreement by which that govern this
5  investment that Leucadia had over an
6  eight-year period?  Is that Exhibit 2, the
7  original agreement for that?
8          MR. BALBER:  Object to the form
9      of the question.  I don't even see
10     Leucadia on the agreement, but answer
11     the question if you can answer it.
12     A.  Can you repeat it again?
13     Q.  Let me ask you more generally.
14  You told me about this eight-year period
15  about where Leucadia invested about 70
16  million dollars in charged off consumer
17  debt, right?
18     A.  Leucadia didn't.  LR Credit.
19     Q.  LR Credit did.  Excuse me.
20     A.  Okay.
21     Q.  Tell me about how that worked.
22         MR. BALBER:  Object to the form
23     of the question.
24     Q.  Generally speaking.
25         MR. BALBER:  Same objection.

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com

14

---

15

R. NITTOLI

1
2      A.  It is spelled out in the
3  operating agreement.  Rushmore, which is
4  our company investor, would present
5  portfolios of consumer debt for us to
6  review and if we decide that we wanted to
7  invest in that, we would make an investment
8  with our co-investor.
9      Q.  Roughly speaking, was LR to
10  invest 95 percent of the money for the
11  portfolio and Rushmore to invest
12  approximately 5 percent for the portfolio?
13     A.  LR Credit would invest 95,
14  Rushmore would invest 5 percent.
15     Q.  What is the relationship
16  between LR Credit and Leucadia?
17     A.  LR credit is a subsidiary of L
18  credit, which is a subsidiary of PLRC,
19  which is a wholly owned subsidiary of
20  Leucadia.
21     Q.  So each of these entities that
22  you talked about, LR Credit, L Credit,
23  PLRC, are these basically just investment
24  mechanisms?
25         MR. BALBER:  Object to the form

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com

15

---

16

R. NITTOLI

1
2  of the question.
3      A.  No.  They were companies that
4  were established to invest in the consumer
5  debt down at the LR Credit level.
6      Q.  Are there employees on these
7  entities that you went through?
8      A.  I'm not sure of that.  I don't
9  believe so.
10     Q.  Do you know what PLRC stands
11  for?
12     A.  I do not.
13     Q.  I am trying to do a venn
14  diagram of all the entities.
15         MR. BALBER:  It is not a venn
16     diagram, but keep going.
17     Q.  Let me make sure I get the
18  hierarchy correct.  There is an entity
19  known as LR Credit, correct?
20     A.  Yes.
21     Q.  And LR Credit is a joint
22  venture between L Credit and Rushmore
23  Recovery Management; is that correct?
24     A.  Correct.
25     Q.  And Rushmore recovery is

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com

16

17

R. NITTOLI

2 managed by the principals of Mel Harris &
3 Associates; is that right?
4             MR. BALBER:  Object to the form
5        of the question.
6        A.    I don't know that to be totally
7 accurate.
8        Q.    Rushmore is operated by Mel
9 Harris, Michael Young, David Waldman and
10 Kerry Lutz; is that right?
11       A.    I know those names.  I'm not
12 familiar with the management, how it
13 operates.
14       Q.    Now, in this hierarchy, I am
15 trying to find out where PLRC fits.
16       A.    PLRC is 100 percent owned
17 downstream subsidiary and it established L
18 Credit and it has a 90 percent interest in
19 L Credit and two individuals have a ten
20 percent interest in L Credit.
21       Q.    Who are those two individuals?
22       A.    Zalman Jacobs and Louis
23 Mederos.
24       Q.    And then PLRC is a wholly owned
25 subsidiary of Leucadia; is that right?

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com

17

---

19

R. NITTOLI

2             MR. BALBER:  Object to the form
3        of the question.
4        A.    I don't understand the
5 question.
6        Q.    Fair enough.
7             Why are there LC Credit
8 entities 1 through 23?  Why is the
9 arrangement between the companies
10 structured in that manner?
11            MR. BALBER:  Object to the form
12       of the question.
13       A.    I don't know.
14       Q.    You said you were the vice
15 president/treasurer at Leucadia for the
16 last eight years?
17       A.    Correct.
18       Q.    What are your major
19 responsibilities?
20       A.    I oversee the cash management
21 function of Leucadia National Corporation,
22 the parent company.  I am also the chief
23 compliance officer and I oversee the audit
24 department.
25       Q.    What do you mean by the chief

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com

19

---

18

R. NITTOLI

2        A.    Through downstream
3 subsidiaries.  It's not directly held.
4        Q.    But indirectly held?
5        A.    Indirectly, correct.
6        Q.    And LR Credit, LLC has I
7 believe what are called subcos, S-U-B-C-O;
8 is that right?
9             MR. BALBER:  Object to the form
10       of the question.
11       A.    LR Credit has set up a limited
12 liability company for purchase of consumer
13 debt.
14       Q.    Such as LR Credit 13, is that
15 one of the entities set up by LR Credit,
16 LLC?
17       A.    Correct.
18       Q.    There are a number of LR Credit
19 entities, something like 1 through 25 or
20 something along those lines; is that right?
21       A.    I believe it's 1 through 24 --
22 1 through 23.  Sorry.
23       Q.    Is each of these LR Credit
24 numbered entities a holding company for a
25 different set of portfolios?

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com

18

---

20

R. NITTOLI

2 compliance officer?
3        A.    We are a public company,
4 Leucadia National, and under the Dodd Frank
5 Act, it needs to have a compliance officer.
6 So any complaints that are received are
7 sent in through two private dedicated
8 lines.  One is for anonymous and one comes
9 directly to me.  And I open up an
10 investigation and determine whether there
11 is any merit to whatever the complaint is.
12       Q.    Would that include allegations
13 of violations of the Fair Debt Collection
14 Practices Act for debts that Mel Harris &
15 Associates were collecting on behalf of LR
16 Credit?
17            MR. BALBER:  Object to the form
18       of the question.
19            Read it back.
20            (Whereupon, the referred-to
21       question was read back by the
22       Reporter.)
23            MR. BALBER:  Object to the form
24       of the question.  Thank you for the
25       readback.

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com

20

21

1   R. NITTOLI
2   **A.   It could include that, yes.**
3   **Q.**   And did it include that?
4   **A.   No, sir.**
5   MR. BALBER:  So we are clear by
6   you asking "did it include that," did
7   you mean were there any such
8   complaints?
9   MR. KESHAVARZ:  I am just
10   wondering --
11   MR. BALBER:  Your question is
12   not a question.  I don't want to know
13   what you are wondering.  I want you
14   to ask the question in a way the
15   witness can answer.
16   **Q.**   As part of your duties at
17   Leucadia, did your duties involve
18   involvement in any way regarding claims of
19   violations of the Fair Debt Collection
20   Practices Act by Mel S. Harris and
21   Associates for collecting on debts owned by
22   LR Credit?
23   MR. BALBER:  Object to the form
24   of the question.
25   **A.   No, sir.**

22

1   R. NITTOLI
2   **Q.**   Do you know what the Sykes
3   litigation is?
4   **A.   Yes, sir.**
5   **Q.**   Were you involved in any way
6   regarding the Sykes litigation?
7   MR. BALBER:  Object to the form
8   of the question.
9   **A.   I was deposed in that matter.**
10   **Q.**   Were you involved in any other
11   way?
12   **A.   I don't understand the**
13   **question.**
14   **Q.**   In what capacity were you
15   deposed in the Sykes litigation?  Maybe
16   that would be the better way to go about
17   it.
18   **A.   In my role as treasurer, I was**
19   **responsible to oversee a weekly transfer of**
20   **money to collection fee component.  A**
21   **distribution to our co-investor and a**
22   **distribution to LR Credit.**
23   **Q.**   If I understand correctly,
24   Rushmore would bring potential portfolios
25   for LR Credit to consider investing in,

23

1   R. NITTOLI
2   correct?
3   **A.   That's my understanding.**
4   **Q.**   Those are portfolios for
5   charged off consumer debts; is that
6   correct?
7   **A.   That's my understanding, yes.**
8   **Q.**   Do you know what the face value
9   of the portfolios that LR Credit purchased
10   was?
11   **A.   No, sir.**
12   **Q.**   Do you know, roughly speaking,
13   was the amount purchased for these
14   portfolios five or ten cents on the dollar
15   or do you know?
16   MR. BALBER:  Objection to the
17   form of the question.
18   **A.   I don't know.**
19   **Q.**   Who would know?
20   **A.   A gentleman by the name of**
21   **Zalman Jacobs reviewed, I believe, the**
22   **first 20, 21 portfolios.**
23   **Q.**   And how many total portfolios
24   were reviewed?
25   MR. BALBER:  Object to the form

24

1   R. NITTOLI
2   of the question.
3   **A.   I do not know.**
4   **Q.**   The 23 LR Credit entities, I
5   was wondering if there was one portfolio
6   per LR Credit entity or do you know?
7   **A.   I don't know that.  I don't**
8   **know.**
9   **Q.**   Mr. Jacobs is the person who
10   owns ten percent ownership interest in LR
11   Credit; is that right?
12   MR. BALBER:  Objection.
13   Mischaracterizes the witness's prior
14   testimony.
15   **A.   He and his partner have a ten**
16   **percent investment in L Credit.**
17   **Q.**   Is Mr. Jacobs an employee at
18   Leucadia?
19   **A.   He left Leucadia sometime in**
20   **2008 or 2009.**
21   **Q.**   Was he an employee there?  Was
22   he an officer?
23   **A.   I don't know his compensation**
24   **structure.**
25   **Q.**   The other individual who also

25

R. NITTOLI

1 had the ten percent ownership, tell me that
2 person's name again.
3       A.    Louis Mederos.
4       Q.    Did Mr. Mederos work at
5 Leucadia?
6       A.    I do not know the structure of
7 their employment arrangement.
8       Q.    What was the relationship of
9 Mr. Mederos with Leucadia?
10      A.    Both Mr. Mederos and Mr.
11 Jacobs would evaluate investments and in
12 some instances bring those investments to
13 Leucadia for consideration.
14      Q.    So Rushmore would bring the
15 potential portfolios to Mr. Jacobs and
16 Mr. Mederos would make a decision about
17 whether to recommend Leucadia to invest in
18 those portfolios; is that right?
19      A.    I'm not aware if Mr. Mederos
20 was involved in any L Credit, LR Credit
21 numbered portfolio, but Mr. Jacobs was.
22      Q.    So Mr. Jacobs would be the
23 person who would act as the intermediary
24 between Rushmore and Leucadia about whether

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
25

26

R. NITTOLI

1 Leucadia should purchase consumer credit
2 portfolios that Rushmore recommended?
3             MR. BALBER:  Object to the form
4       of the question.  Mischaracterizes
5       the witness' prior testimony.  He may
6       answer.
7       A.    That is correct.
8       Q.    Do you know whose idea it was
9 to set up this arrangement for Leucadia to
10 fund purchases of consumer credit debts?
11            MR. BALBER:  Object to the form
12      of the question.
13      A.    Leucadia didn't fund them,
14 LR Credit funded them.  But I'm not -- I do
15 not know who set the structure up.
16      Q.    What is the relationship
17 between LR Credit 13 and LR Credit LLC?
18      A.    LR Credit 13 is a subco of LR
19 Credit, which is LR Credit is owned by L
20 Credit.
21      Q.    LR Credit I think was owned by
22 L Credit and Rushmore; is that right, or is
23 it only L Credit?
24      A.    LR Credit, LLC is owned by

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
26

27

R. NITTOLI

1 Rushmore and L Credit.  And L Credit is
2 owned by PLRC and Zalman Jacobs and Louis
3 Mederos.
4       Q.    PLRC is, through a bunch of
5 intermediaries, a fully owned subsidiary of
6 Leucadia?
7       A.    Correct.
8       Q.    Does LR Credit LLC have any
9 employees?
10      A.    No.
11      Q.    Did it ever have any employees
12 during this eight-year period?
13      A.    Not to my knowledge.
14      Q.    Did it have corporate officers?
15      A.    Yes.
16      Q.    Who are the corporate officers?
17      A.    The corporate officers were
18 Joseph Orlando, Philip Canella.
19      Q.    With a K or C?
20      A.    With a C.  Laura Ulbrandt,
21 U-L-B-R-A-N-D-T.  Myself, Rocco Nittoli,
22 and there may be one or two others I don't
23 know offhand.
24      Q.    What was your role as an

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
27

28

R. NITTOLI

1 officer at LR Credit, LLC?
2       A.    I was vice president.
3       Q.    You were vice president of LR
4 Credit, LLC at same time that you were a
5 vice president and treasurer at Leucadia;
6 is that right?
7       A.    Yes.
8       Q.    How did your role as a vice
9 president at LR Credit, LLC relate to your
10 role as a vice president and treasurer at
11 Leucadia?
12      A.    I was responsible for opening
13 bank accounts for LR Credit and the number
14 -- LR Credit 13 I believe we opened a bank
15 account for.
16      Q.    Other than opening the bank
17 account, did you have any involvement with
18 the financing of LR Credit 13?
19      A.    I don't understand what you
20 mean by financing.
21      Q.    You just said literally the
22 opening of bank accounts for LR Credit 13;
23 is that right?
24      A.    Correct.

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
28

R. NITTOLI

1  
2  **Q.** I apologize if you answered
3  this already. What other activities did
4  you take on as the vice president of LR
5  Credit, other than opening up the bank
6  accounts for LR Credit 13?
7  **A. If we made an investment, I**
8  **would wire money to purchase that**
9  **investment and each week as collections**
10 **came in, we were responsible to wire the**
11 **money to the collection agency, Mel Harris,**
12 **the co-investors share to Rushmore and the**
13 **portion of the collections that were**
14 **related to LR Credit.**
15 **Q.** Let me make sure I understand
16 then.
17     One of your jobs would be to
18 wire money from what?
19 **A. From LR Credit 13's bank**
20 **account to its investors and to the**
21 **collection agency.**
22 **Q.** The collection agency being Mel
23 S. Harris and associates?
24 **A. Correct.**
25 **Q.** And the investors being L

R. NITTOLI

1  
2  Credit, LLC and Rushmore?
3  **A. Correct.**
4  **Q.** And also Jacobs and Mederos or
5  no?
6  **A. They did not receive any**
7  **distributions. They had an equity**
8  **investment. If this investment was**
9  **profitable, they would be entitled to ten**
10 **percent of it.**
11 **Q.** During this eight-year
12 investment period, what were the revenues
13 generated during that time?
14     MR. BALBER: By anybody in
15     particular or --
16 **Q.** So Leucadia put in 70 million
17 dollars of investment over the eight-year
18 period to purchase defaulted consumer
19 credit loans, correct?
20 **A. Right.**
21 **Q.** Debts?
22 **A. Correct.**
23 **Q.** What type of return on the
24 investment would Leucadia get for that?
25 **A. I don't know the returns.**

R. NITTOLI

1  
2  **Q.** Roughly speaking, do you know
3  how much money Leucadia got for putting in
4  70 million dollars for investments?
5  **A. Well, that's for all the LR**
6  **numbered programs. Not just 13.**
7  **Q.** Right.
8  **A. The total was probably 120**
9  **million dollars, just over 120 million**
10 **dollars.**
11 **Q.** Over the eight years?
12 **A. Correct.**
13 **Q.** And that was the revenue
14 generated by the 70 million dollars
15 investment?
16 **A. Correct. One collection. It**
17 **wasn't over eight years. It was probably**
18 **over ten years, maybe eleven. Collections**
19 **came in even if we stopped being -- the**
20 **other questions dealt with when we were**
21 **buying portfolios.**
22 **Q.** How would you describe this
23 agency, LR Credit, L Credit LLC to
24 Rushmore? What term would you use to
25 describe that?

R. NITTOLI

1  
2  MR. BALBER: I don't understand
3  that question even remotely.
4  **A. I don't either.**
5  **Q.** When you said Leucadia invested
6  70 million dollars over eight years, did
7  Leucadia continue to generate income even
8  after the eight-year investment?
9  MR. BALBER: Object to the form
10     of the question.
11 **A. We continued to collect money.**
12 **I wouldn't describe it as income.**
13 **Q.** Okay. So when did Leucadia
14 cease collecting money as part of its 70
15 million dollar investment?
16 **A. I believe it was in -- can you**
17 **repeat the question again?**
18 **Q.** Sure. At what point in time
19 did Leucadia cease obtaining money for its
20 70 million dollar investment?
21 **A. Roughly, January of 2016.**
22 **Q.** Why was that?
23 MR. BALBER: Why was what?
24 **Q.** Why did Leucadia cease to
25 continue to get money from its 70 million

53

35

R. NITTOLI

1               R. NITTOLI
2 dollar investment?
3               MR. BALBER:  Object to the form
4        of the question.
5        **A.**     **Why did it cease?**
6        **Q.**     Yes.
7        **A.**     **As part of our Sykes action, we**
8 **agreed with Plaintiff that we would no**
9 **longer accept collections and that date was**
10 **approximately January of 2016.**
11        **Q.**     That you would no longer accept
12 new collection, any collection?
13        **A.**     **Any collection.**
14        **Q.**     What happened to the investment
15 portfolios, the 70 million dollar
16 investment portfolios after January 2016?
17 What happened to those?
18               MR. BALBER:  Object to the form
19        of the question.
20        **A.**     **Monies were returned if cash**
21 **came in, the lock box was closed so cash**
22 **couldn't be accepted, and if any checks**
23 **came in, they were returned back to the**
24 **debtor.**
25        **Q.**     Were the LR Credit entities 1

1               R. NITTOLI
2 numbered programs had less of an investment
3 **by Rushmore than the latter programs.  As**
4 **the program went on, the rate, the**
5 **percentages changed.**
6        **Q.**     Rushmore increased its
7 investment from about 5 percent to about 10
8 percent over time; is that right?
9        **A.**     **I don't know the details.  I'm**
10 **not in the accounting department, but the**
11 **terms varied as the program matured.**
12        **Q.**     But the large majority of the
13 funding for LR Credit, LLC still came from
14 L Credit, correct?
15               MR. BALBER:  Object to the
16        form.
17        **A.**     **To the extent that our**
18 **investment, whatever our share was, yes.**
19        **Q.**     The investments, the funding
20 for the LR Credit venture, most of that
21 funding came from Leucadia; is that right?
22               MR. BALBER:  What is the LR
23        Credit venture?  You used ten
24        different terms.  You can answer the
25        question if you know what he's

34

1               R. NITTOLI
2 through 23 essentially a funding mechanism
3 for revenues generated from collection to
4 go to Leucadia?
5               MR. BALBER:  Object to the form
6        of the question.
7        **A.**     **I don't believe so, no.**
8        **Q.**     How would you describe that
9 relationship?
10        **A.**     **It was a typical corporate**
11 **structure to account for the multiple**
12 **programs that had different terms.**
13        **Q.**     What do you mean?
14               MR. BALBER:  Object to the form
15        of the question.  He means what he
16        said.  If you don't understand the
17        question, ask a better question, but
18        "what do you mean" is not a question.
19        You can answer.
20        **A.**     **I don't understand what you**
21 **mean.**
22        **Q.**     What are the multiple programs
23 that have different terms that you were
24 referring to?
25        **A.**     **The early -- the beginning LR**

36

1               R. NITTOLI
2 talking about.
3        **A.**     **The investment in the L Credit**
4 **programs came from LR Credit.**
5        **Q.**     What do you mean by the L
6 Credit programs?
7        **A.**     **The numbered portfolios.**
8        **Q.**     Approximately how many accounts
9 did LR Credit purchase?
10        **A.**     **I don't know that number.**
11        **Q.**     Is it over 10,000?
12        **A.**     **Based on what I have read, it**
13 **would appear that way.**
14        **Q.**     Because Mel Harris got over
15 100,000 judgments on behalf of the various
16 LR Credit numbered entities, right?
17               MR. BALBER:  That's question.
18        **Q.**     Is that correct?
19        **A.**     **I don't know.  I wasn't**
20 **involved in the operations of Mel Harris.**
21        **Q.**     Is it true that's part of the
22 Sykes settlement, that the Defendants were
23 going to vacate over 100,000 judgments that
24 were entered in the name of various LR
25 Credit numbered entities?

37

R. NITTOLI

1   R. NITTOLI
2       MR. LICHTMAN:  Objection.
3       MR. BALBER:  Objection.
4       **A.    Based on what I had seen from**
5   **the Sykes matter, that number seems**
6   **reasonable, but I have no knowledge of what**
7   **the number was.**
8       **Q.    What's your understanding of**
9   what the number was?
10      MR. BALBER:  He said he has no
11      knowledge.
12      MR. KESHAVARZ:  Thank you.
13      Objects to the form of the question.
14      MR. BALBER:  Move on.  He has
15      answered the question.
16      **Q.    It's your understanding that**
17  there are approximately 100,000 jobs that
18  were entered in the name of the various LR
19  Credit numbered entities that were vacated
20  as part of the Sykes settlement; is that
21  your understanding?
22      **A.    I do not know the details,**
23  **terms of the Sykes settlement.**
24      **Q.    You have no idea?**
25      **A.    I do not.**

38

1       R. NITTOLI
2       **Q.    Mel S. Harris was the attorney**
3   who filed the collection lawsuits under the
4   name of the various LR Credit numbered
5   entities; is that true?
6       **A.    That's my understanding.**
7       **Q.    The various LR Credit numbered**
8   entities had the right to control the
9   litigation of Mel Harris on behalf of the
10  LR Credit entities; is that true?
11      MR. BALBER:  Object to the form
12      of the question.  Calls for a legal
13      conclusion.
14      **A.    I don't know the answer to that**
15  **question.**
16      **Q.    Mel Harris is the attorney for**
17  the various LR Credit numbered entities for
18  the collection lawsuits that Mel Harris
19  filed in the name of the LR Credit numbered
20  entities, right?
21      **A.    That is correct.**
22      **Q.    And so the various LR Credit**
23  numbered entities is the client and Mel S.
24  Harris & Associates is the attorney for the
25  client, correct?

39

1       R. NITTOLI
2       **A.    I believe that to be correct,**
3   **yes.**
4       **Q.    The attorney has to do whatever**
5   the client tells it to do, correct?
6       MR. BALBER:  Object to the form
7       of the question.  Calls for legal
8       conclusion.  Come on.
9       **A.    I don't know the answer to**
10  **that.**
11      **Q.    Okay.**
12      MR. BALBER:  You should ask
13      Mr. Guzman that question.
14      **Q.    Let me show you Plaintiff's**
15  Exhibit Number 1.  Please review that and
16  let me know when you are done, please.
17  It's LR Credit document production 1
18  through 45.
19      **A.    I am through reviewing it.**
20      **Q.    Is that the only evidence that**
21  LR Credit 13 has that Mr. Guzman owed LR
22  Credit 13 the debt for which they sued him
23  on?
24      **A.    I don't have knowledge of that.**
25  **I don't have knowledge if it is the only.**

40

1       R. NITTOLI
2   **I don't know.**
3       **Q.    So generally speaking, when LR**
4   Credit purchased portfolios that have debts
5   arranged by Rushmore, those portfolios
6   generally were just the spreadsheet of
7   data; is that right?
8       MR. BALBER:  Object to the form
9       of the question.
10      **A.    That's my understanding and**
11  **there may be other documents as well.  I**
12  **don't know.**
13      **Q.    But generally speaking, it was**
14  just a spreadsheet of data; is that right?
15      **A.    I really don't know.**
16      **Q.    What evidence does LR Credit 13**
17  have that Mr. Guzman owed the debt that it
18  was sued upon?
19      **A.    I believe there is a contract**
20  **with the seller.  There is a data file as**
21  **you mentioned and there may be other**
22  **documents that go along with it.  I just**
23  **don't know.  I'll not involved -- not**
24  **involved in the analysis of a purchase.**
25      **Q.    Who was the seller for the debt**

41

1  R. NITTOLI
2  upon which LR Credit 13 sued Mr. Guzman?
3  **A.  I have no idea.**
4  **Q.**  Do you know if LR Credit 13 is
5  just one portfolio of debts that Leucadia
6  purchased or is it multiple portfolios or
7  do you have any idea?
8  **A.  I don't know.  I don't have any**
9  **idea.**
10  **Q.**  Other than the data file given
11  to Mel Harris as part of the portfolio
12  purchased, to your knowledge, is there any
13  other specific pieces of evidence that Mel
14  Harris is given that the debtors they are
15  suing owes the debt?
16  MR. BALBER:  Object to the form
17  of the question.  Assumes facts not
18  in evidence.
19  **A.  I have no knowledge of what**
20  **information Mel Harris has.**
21  **Q.**  That Mel Harris is given by LR
22  Credit?
23  MR. BALBER:  Objection.  No
24  foundation.  And mischaracterizes the
25  witnesses testimony.

42

1  R. NITTOLI
2  **Q.**  Go ahead.
3  **A.  I have no knowledge of what was**
4  **given in this particular transaction.**
5  **Q.**  Generally speaking, the
6  transactions upon which Mel Harris filed
7  suit on behalf of the LR Credit numbered
8  entities, generally speaking, other than
9  the spreadsheet, do you know of any other
10  specific evidence that is transferred?
11  MR. BALBER:  Object to the form
12  of the question.
13  **Q.**  Go ahead.
14  MR. BALBER:  Assumes facts not
15  in evidence, calls for speculation
16  and compound question.  Other than
17  that, it's great.
18  **A.  I have no idea.**
19  **Q.**  What steps, if any, does LR
20  Credit or LR Credit 13 take to verify that
21  the information in the portfolios it
22  purchases is correct?
23  MR. BALBER:  Object to the form
24  of the question.
25  **A.  I don't know what steps were**

43

1  R. NITTOLI
2  taken.
3  **Q.**  Do you know if there are any
4  steps that are taken by LR Credit or LR
5  Credit 13 to determine the validity of the
6  information for the accounts it purchases?
7  MR. BALBER:  Object to the form
8  of the question.
9  **A.  I do not know what steps are**
10  **taken.**
11  **Q.**  Do you know if the contracts
12  for the sale of portfolios upon which the
13  LR Credit numbered entities sued, do you
14  know if those contracts generally waive any
15  warranties as to the accuracy of the
16  information in the portfolios?
17  **A.  I have no knowledge of that.**
18  **Q.**  Do you know if generally there
19  are multiple sales of portfolios of debts
20  that LR Credit entities sue under?
21  MR. BALBER:  Object to the form
22  of the question.
23  **A.  I don't understand the**
24  **question.**
25  **Q.**  Fair enough.

44

1  R. NITTOLI
2  Rushmore finds portfolios of
3  debts for LR Credit to purchase, correct?
4  MR. BALBER:  Objection.  Asked
5  and answered.
6  **A.  Yes.**
7  **Q.**  Rushmore purchases those
8  portfolios from sellers that have generally
9  purchased those debts after they are in
10  default?
11  MR. BALBER:  Object to the form
12  of the question.
13  **A.  First of all, Rushmore to my**
14  **knowledge, didn't -- I don't know what they**
15  **purchased.  They brought proposed**
16  **transactions to us.**
17  **Q.**  Proposed transactions are the
18  proposed portfolios of debts for LR Credit
19  to purchase, right?
20  **A.  Okay.**
21  **Q.**  Is that true?
22  **A.  They brought proposals for us**
23  **to consider.**
24  **Q.**  Those portfolios of debts that
25  were proposals for LR Credit and Leucadia

45

R. NITTOLI

1                 R. NITTOLI
2 to purchase, were those generally
3 portfolios from the original creditor?
4           MR. BALBER: Object to the form
5       of the question.
6       **A.**   **I don't have knowledge of that.**
7       Q.   Does LR Credit 13 or LR Credit
8 LLC or Leucadia keep the documents that are
9 the sales, contracts for the portfolios
10 that they purchase?
11          MR. BALBER: Object to the form
12       of the question. Compound.
13       **A.**   **Leucadia should have or LR**
14 **Credit should have copies of the purchase**
15 **agreements.**
16       Q.   That's the next question I was
17 going to ask. Who is the depository for
18 the documents for the purchase of these
19 portfolios that we've been discussing?
20       **A.**   **It is my understanding that**
21 **they used outside counsel.**
22       Q.   Mel Harris?
23       **A.**   **No. LR Credit used outside**
24 **counsel to review, if we considered a**
25 **purchase, they used outside counsel to**

DIAMOND REPORTING (877) 624-3287 info@diamondreporting.com

45

---

46

R. NITTOLI

1                 R. NITTOLI
2 **review the agreements and they should have**
3 **copies of them.**
4       Q.   The outside counsel or LR
5 Credit?
6       **A.**   **LR Credit.**
7       Q.   So if I wanted to try to get
8 the contracts for the sale of the
9 portfolios that allegedly included
10 Mr. Guzman's account, I would be able to
11 get those documents from LR Credit; is that
12 right?
13       **A.**   **I believe that would be true,**
14 **yes.**
15       Q.   Would those documents also be
16 held by LR Credit 13?
17       **A.**   **Yes, they would.**
18       Q.   So LR Credit has the same right
19 to the documents related to the portfolios
20 of debts that LR Credit has?
21          MR. BALBER: Right meaning
22       legal right? The witness is not able
23       to answer that question.
24       Q.   LR Credit 13 could get any
25 document related to any of the portfolios

DIAMOND REPORTING (877) 624-3287 info@diamondreporting.com

46

---

47

R. NITTOLI

1                 R. NITTOLI
2 that it purchases, correct?
3          MR. BALBER: Object to the form
4       of the question.
5       **A.**   **Correct.**
6       Q.   Do you know how long the
7 contracts with the sellers of the
8 portfolios purchased by LR Credit 13, by LR
9 Credit and Leucadia, do you know how long
10 those contracts are retained for?
11          MR. BALBER: Object to the form
12       of the question.
13       **A.**   **I do not.**
14       Q.   Do you know if there is a
15 destruction policy for these types of
16 documents?
17          MR. BALBER: Also known as a
18       retention policy. You can answer if
19       you know what he's talking about.
20       **A.**   **I don't know.**
21       Q.   We talked about information
22 that LR Credit would obtain in the
23 portfolios that are purchased.
24       Does LR Credit generally obtain
25 the card member agreements for the alleged

DIAMOND REPORTING (877) 624-3287 info@diamondreporting.com

47

---

48

R. NITTOLI

1                 R. NITTOLI
2 consumer credit card debts?
3          MR. BALBER: Object to the form
4       of the question. I don't know the
5       answer to that question.
6       Q.   Same question for credit card
7 statements, do they generally get the
8 credit card statements as part of the
9 purchase of the portfolio?
10       **A.**   **I do not know the answer to**
11 **that question.**
12       Q.   Do you know, as part of the
13 purchase agreements for the portfolio,
14 whether LR Credit, LR Credit number 13 or
15 Mel Harris are prohibited from asking the
16 original creditor for card member
17 agreements, for credit card statements?
18          MR. BALBER: Object to the form
19       of the question.
20       **A.**   **I have no knowledge of their**
21 **process.**
22       Q.   Or the terms of the purchase
23 contracts, in terms of that issue?
24          MR. BALBER: Object to the form
25       of the question.

DIAMOND REPORTING (877) 624-3287 info@diamondreporting.com

48

49

R. NITTOLI

1
2    A.    I have no knowledge of the
3    purchase contracts.
4    Q.    When I was going through
5    Exhibit 1, and you can go through it in as
6    much detail as you'd like, I didn't see a
7    date of last payment as part of the data
8    fields.
9         Do you know one way or the
10   another whether portfolios of debts that LR
11   purchases includes the data field for date
12   last payment?
13   A.    I don't know that answer.
14   Q.    Who would know the answer to
15   that question?
16   A.    Someone at Rushmore.
17   Q.    Anyone else, to your knowledge?
18   A.    No one that I can think of, no.
19   Q.    Fair enough.
20        And same question as to the
21   charge-off date, do you know if LR Credit
22   obtained the data field for a charge-off
23   date for the portfolios of debts and
24   purchases?
25   A.    I have no knowledge of that.

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com
49

---

51

R. NITTOLI

1
2    7, it says "Defendants have defaulted in
3    payment under the terms of the agreement
4    has incurred thereby agreed upon reasonable
5    attorneys fees of 15 percent, to wit:
6    $1,130.35."  Did I read paragraph 7
7    correctly?
8         MR. BALBER:  Actually, you
9    didn't.
10   A.    No.
11   Q.    Would you read paragraph 7
12   Exhibit 3 into the record?
13        MR. BALBER:  You are going to
14   have him read a document into the
15   record?
16        MR. KESHAVARZ:  Yes.
17   A.    "Defendants having defaulted in
18   payment under the terms of the agreement
19   has incurred thereby agreed upon reasonable
20   attorney fees of 15 percent, to wit:
21   $1,130.35."
22   Q.    Does LR Credit 13 have any
23   evidence that Mr. Guzman had an agreement
24   by which he agreed to pay reasonable
25   attorneys fees of 15 percent?

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com
51

---

50

R. NITTOLI

1
2         MR. KESHAVARZ:  Mark this
3    Plaintiff's 3.
4         (Whereupon, the aforementioned
5         document was marked as Plaintiff's
6         Exhibit 3 for identification as of
7         this date by the Reporter.)
8    Q.    Given your answers to the
9    questions, I'm pretty sure I am going to
10   know the answer to the questions, but you
11   just go through them.
12        Sir, I am showing you what's
13   been marked as Plaintiff's Exhibit Number
14   3, Guzman document production number 3.  Do
15   you know if this is a copy of the
16   collections complaint by LR Credit against
17   Mr. Guzman?
18   A.    I do not know that.
19   Q.    Will you assume with me this
20   is, in fact, a copy of the collections
21   lawsuit filed by LR Credit against
22   Mr. Guzman?  Will you assume that that's
23   true?
24   A.    It appears to be that.
25   Q.    Okay.  Now, going down to item

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com
50

---

52

R. NITTOLI

1
2    A.    I have no knowledge of that.
3    Q.    Does LR 13 have any knowledge
4    that Mr. Guzman owed any money to First
5    U.S.A. Bank as alleged in paragraph 3 of
6    Exhibit 3?
7    A.    I don't have any knowledge of
8    that.
9         MR. KESHAVARZ:  Mark this
10   Plaintiff's Exhibit 4.
11        (Whereupon, the aforementioned
12        document was marked as Plaintiff's
13        Exhibit 4 for identification as of
14        this date by the Reporter.)
15   Q.    Plaintiff's Exhibit Number 4 is
16   affidavit of merit one-page document, Bates
17   stamped Guzman 6.  Please review and let me
18   know when you are done, sir.
19   A.    Okay.
20   Q.    Does LR Credit 13 have any
21   evidence that it is the assignee and
22   purchaser of a debt owed by Mr. Guzman to
23   First U.S.A. Bank?
24   A.    I don't have any knowledge of
25   that.

DIAMOND REPORTING  (877) 624-3287  info@diamondreporting.com
52

R. NITTOLI

1
2    **Q.** Does LR Credit 13 have any
3 evidence that Mr. Young is quote, "fully
4 and personally familiar with, and have
5 personal knowledge of the facts and
6 circumstances relating to the within
7 action"?
8    **A. I think you should ask**
9 **Mr. Young. I have no idea.**
10    **Q.** Does LR Credit 13 have any
11 evidence that that statement is true, that
12 Mr. Young has personal knowledge of the
13 facts in the Complaint?
14    MR. BALBER: Read the question
15 back.
16    (Whereupon, the referred-to
17 question was read back by the
18 Reporter.)
19    **A. I have no knowledge of that.**
20    **Q.** You are the corporate
21 representative of LR Credit 13 here,
22 correct?
23    **A. Yes.**
24    **Q.** One of the topics you are here
25 to testify to is the evidence that LR

R. NITTOLI

1
2 Credit 13 has that Mr. Guzman owes the debt
3 to LR Credit 13, right?
4    **A. To the best of my knowledge,**
5 **yes.**
6    **Q.** So that's why I am asking,
7 that's why I have been asking one at a
8 time. So the question is, does LR Credit
9 13 have any evidence that Mr. Young, in
10 fact, has personal knowledge that
11 Mr. Guzman owes LR Credit 13 the debt upon
12 which LR Credit 13 is suing him for?
13    **A. I don't understand the legal**
14 **definition of what personal knowledge**
15 **means.**
16    **Q.** Did LR Credit, Leucadia, or any
17 of the LR Credit entity numbers take any
18 steps to determine whether Mel Harris &
19 Associates violated the FDCPA prior to
20 retaining Mel S. Harris to file collection
21 lawsuits?
22    MR. BALBER: Object to the form
23 of the question. Hopelessly
24 compounded. You can answer if you
25 can.

R. NITTOLI

1
2    **A. Can you repeat again?**
3    **Q.** Sure. Did LR Credit or
4 Leucadia take any steps to determine
5 whether Mel Harris & Associates violated
6 the FDCPA prior to hiring Mel Harris?
7    **A. I don't know the answer to**
8 **that.**
9    **Q.** Did any of the LR Credit
10 entities, the numbered entities, or LR
11 Credit LLC or Leucadia take any steps to
12 monitor whether Mel Harris was complying
13 with the FDCPA in collecting on the
14 debts --
15    MR. BALBER: Object to the form
16 of the question.
17    **Q.** -- owned by the LR Credit
18 numbered entities?
19    MR. BALBER: Have you
20 established that the witness knows
21 what the FDCPA is? You can ask the
22 all questions you want.
23    MR. KESHAVARZ: This is one of
24 the topics he is here to testify to.
25 If he doesn't know --

R. NITTOLI

1
2    MR. BALBER: You know full well
3 he's not a lawyer.
4 Answer whatever you answer.
5    MR. KESHAVARZ: He's the
6 corporate representative for this.
7    **A. I have no knowledge.**
8    **Q.** It's fine you have no
9 knowledge, but when I go to trial, I don't
10 want LR Credit to suddenly have knowledge
11 about something he has no knowledge of.
12    MR. BALBER: LR Credit is not a
13 party to the case.
14    MR. KESHAVARZ: Does LR Credit
15 13 have knowledge that he is saying
16 now it doesn't have?
17 Let's take a short break.
18    (Whereupon, a short recess was
19 taken.)
20    **Q.** Do you know who the person was,
21 if any, that was the contact between LR
22 Credit and Mel Harris?
23    **A. LR Credit is Rushmore. It's**
24 **Rushmore and L Credit. So I'm not sure I**
25 **fully understand your question.**

57

```
1                    R. NITTOLI
2        Q.    Are there any employees at L
3    Credit?
4        A.    No.
5        Q.    There are only corporation
6    officers?
7        A.    Correct.
8        Q.    Are those the two corporate
9    officers that have a ten percent ownership
10   interest in LR Credit?
11             MR. BALBER:  Object to the form
12       of the question.  Mischaracterizes
13       the witness' testimony.
14       Q.    Go ahead.
15       A.    You're referring to Zalman
16   Jacobs and Louis Mederos, they weren't
17   officers.  They were investors in L Credit.
18       Q.    Jacobs and Mederos were
19   investors in LR Credit or L Credit?
20       A.    L Credit.
21       Q.    They had a ten percent
22   ownership in L Credit?
23       A.    Correct.
24       Q.    Did they have any ownership
25   interest in LR Credit?
```

58

```
1                    R. NITTOLI
2        A.    Not directly.
3        Q.    Just indirectly through L
4    credit?
5        A.    Correct.
6        Q.    Who are the other owners of L
7    Credit, LLC?
8             MR. BALBER:  Other than who?
9             MR. KESHAVARZ:  Other than
10       Jacobs and Mederos.
11       A.    We've been through this.  The
12   90 percent is owned by PLRC.
13       Q.    PLRC is a wholly owned
14   subsidiary indirectly of Leucadia?
15       A.    Correct.
16       Q.    LR Credit and LR Credit number
17   13 continued to use Mel Harris as their
18   attorney to collect debts all the way
19   through January 2016; is that right?
20       A.    This is not correct.
21       Q.    In what way is that not
22   correct?
23       A.    Mel Harris ceased operations
24   sometime in September of 2015.
25       Q.    When did LR Credit and LR
```

59

```
1                    R. NITTOLI
2    Credit 13 cease using Mel S. Harris &
3    Associates as their attorney to file
4    collection lawsuits?
5        A.    I don't know the exact date of
6    when that happened.
7        Q.    Do you know approximately?
8        A.    I do not.
9        Q.    Let me ask you a slightly
10   different phrased question.
11             Do you know approximately at
12   what point LR Credit and LR Credit number
13   13 stopped using Mel S. Harris to collect
14   debts on their behalf either by litigation
15   or in some other manner?
16             MR. BALBER:  Object to the form
17       of the question.
18       A.    Well, in September of 2015 they
19   closed their doors.
20       Q.    So LR Credit and LR Credit 13
21   continued to use Mel Harris as their
22   attorneys up until September 2015; is that
23   right?
24       A.    Correct.
25       Q.    LR Credit and LR Credit 13 did
```

60

```
1                    R. NITTOLI
2    not terminate their relationship with Mel
3    S. Harris & Associates prior to September
4    of 2015?
5        A.    LR credit had -- it was an
6    investment vehicle, had no ability to
7    collect consumer debt.  It had no access to
8    the files, to the detail records.  There
9    would be no way for LR Credit 13 to
10   continue to do any collecting activity or
11   accounting at a time when the Sykes matter
12   was coming to a conclusion and it was
13   important that monies were not by debtor
14   were continued to be accounted for as part
15   of that settlement.
16       Q.    I guess what I am wondering is,
17   why didn't LR Credit or LR Credit 13 not
18   fire Mel Harris prior to September 2015 and
19   just you have another debt collection law
20   firm do the work?
21             MR. BALBER:  Object to the form
22       of the question.
23       A.    Mel Harris had a significant
24   infrastructure, a database that we had no
25   way of getting.  We couldn't just go get a
```

61

R. NITTOLI

1
2 **firm without having the computer records**
3 **that were in Mel Harris's possession.**
4     **Q.**   Just prior to the Sykes class
5 action settlement, there were thousands of
6 accounts that were owned by the various LR
7 Credit entities that were then transferred
8 to the Einstein Law Firm to collect upon;
9 is that correct?
10     **A.**   Can you repeat the question?
11     **Q.**   Sure.  Prior to the Sykes
12 settlement, actually approximately
13 September 2015, true that there were
14 thousands of accounts for the various LR
15 Credit entities that were transferred from
16 Mel Harris to Einstein & Associates to
17 collect upon; is that true?
18     **A.**   **Correct.**
19     **Q.**   If LR Credit and LR Credit
20 number 13 could have the files transferred
21 from Mel Harris to Einstein & Associates
22 around September 2015, why did they not
23 attempt to do so earlier, before September
24 2015?
25     **A.**   **Mike Young offered that he knew**

62

R. NITTOLI

1
2 **people at a different collection agency and**
3 **if we could come to financial terms with**
4 **them, he would introduce us so that we can**
5 **do a transition from what was left at Mel**
6 **Harris.  We really had no choice.  We**
7 **weren't given -- I can bring someone to you**
8 **if you pay them a fee.**
9     **Q.**   What do you mean by that
10 sentence?
11     **A.**   **I can bring you a collection**
12 **agency that will continue to service your**
13 **business if you are willing to come to fee**
14 **terms with them.**
15     **Q.**   And did you do that?
16     **A.**   **We did come to an agreement,**
17 **yes.**
18     **Q.**   What were the fee terms?
19     **A.**   **I don't know them offhand, but**
20 **they were significantly higher than what we**
21 **were paying Mel Harris.**
22     **Q.**   So you paid a larger collection
23 fee to Einstein to collect on the debts of
24 the various LR Credit numbered entities?
25     **A.**   **Yes.**

63

R. NITTOLI

1
2     **Q.**   I think higher than the rate to
3 Mel Harris?
4     **A.**   **Yes.  And at that point was**
5 **just accounting for money that was coming**
6 **in the door.  There was no active**
7 **collection.**
8     **Q.**   I guess what I am wondering is,
9 the Sykes lawsuits began around 2009,
10 right?
11     **A.**   **Correct.**
12     **Q.**   And then there is a ruling on
13 class certification in 2012, right?
14     **A.**   **Correct.**
15     MR. KESHAVARZ:  Mark this as
16     Plaintiff's Exhibit 5.
17     (Whereupon, the aforementioned
18     document was marked as Plaintiff's
19     Exhibit 5 for identification as of
20     this date by the Reporter.)
21     MR. LICHTMAN:  What is it that
22     you are marking?
23     **Q.**   I'm showing you what's been
24 marked as Plaintiff's Exhibit 5, Bates
25 stamped Guzman 199 to 240.  It's the Order

64

R. NITTOLI

1
2 granting class certification in the Sykes
3 case.
4     MR. LICHTMAN:  By Judge Chin.
5     **Q.**   If you could turn to the second
6 page.  If you turn to the second page, on
7 the first full paragraph where it says the
8 motion is granted.
9     **A.**   **Yes.**
10     **Q.**   Can you read that paragraph
11 into the record, please?
12     MR. BALBER:  No.  It's not
13     happening.  You are not reading it
14     into the record.
15     **Q.**   Go ahead.
16     MR. BALBER:  You have the
17     paragraph on the document.  He is not
18     reading it into the record.
19     **Q.**   I am going to ask him as we go
20 through it one at a time.  When I tried to
21 read it, you objected.
22     MR. BALBER:  I corrected your
23     -- I objected.  I corrected your
24     inability to read.  He's not reading
25     it into the record.  Ask whatever

```
1                    R. NITTOLI
2        question you want.  He's not reading
3        it.
4            Q.    Are you going to refuse to read
5        that paragraph into the record?
6            A.    Yes.
7            Q.    Read page 2 of the Order to
8        yourself and let me know when you are done,
9        sir.
10              MR. BALBER:  This is the
11           treasurer of a publicly traded
12           company.  You had him wait two hours
13           because you showed up late to the
14           deposition.
15              MR. KESHAVARZ:  That's not
16           true.
17              MR. BALBER:  Let me finish.
18              MR. KESHAVARZ:  Make an
19           objection to the form.
20              MR. BALBER:  I am making a
21           record for your disrespectful lowbrow
22           behavior.
23              MR. KESHAVARZ:  You are the one
24           who is yelling.
25              MR. BALBER:  A treasurer of a
```

```
1                    R. NITTOLI
2        vast majority of them and claimed to but
3        apparently did not have personal knowledge
4        of the facts to which he was attesting.
5        The record also shows that on hundreds of
6        occasions, the Defendant process servers
7        purported to serve process at two or more
8        locations at the same time.  As discussed
9        more fully below, Defendants unitary course
10       of conduct purportedly to obtain default
11       judgments in a fraudulent manner presents
12       common questions of law and fact that can
13       be resolved most efficiently on a class
14       wide basis."
15              Did I read that paragraph
16       correctly?
17           A.    Yes.
18           Q.    My question is:  Why did LR
19       Credit and LR Credit 13 continue to do
20       business and continue to have Mel Harris
21       collect on their debts after Judge Chin
22       ruled on September 14, 2014, that the
23       evidence before the court established the
24       facts that I just read into the record?
25              MR. BALBER:  Object to the form
```

```
1                    R. NITTOLI
2        publicly-traded company who waited
3        two hours for you to show up at the
4        deposition.  He is not reading things
5        to the record for your amusement.
6              MR. KESHAVARZ:  I was here.
7           There was an issue with the Court
8           Reporter not showing up until 12:30.
9              MR. BALBER:  And you were an
10          hour late.
11             MR. KESHAVARZ:  That's not
12          true.
13           Q.    In any case, have you had a
14       chance to read page two of Exhibit 5?
15           A.    Yes.
16           Q.    Tell me if I am reading this
17       paragraph correctly into the record.  "The
18       motion is granted.  The record before the
19       Court establishes that Defendant obtain
20       tens of thousands of default judgments in
21       consumer debt actions based on thousands of
22       affidavits attesting to the merits of the
23       action that were generated en masse by a
24       sophisticated computer program and signed
25       by a law firm employee who did not read the
```

```
1                    R. NITTOLI
2        of the question.
3            Q.    Why did you continue to use
4        them?
5              MR. LICHTMAN:  Objection.  What
6           was the date of the ruling?
7            Q.    If you go back one page, the
8        first page, it is stamped September 4,
9        2012.
10           A.    I'm not an attorney, so to
11       evaluate strength of that statement, I am
12       not qualified to.  But as I said earlier,
13       there was a belief that they possessed
14       significant computer information that put
15       them in a better position to continue to be
16       able to do the accounting for each of the
17       debts or accounts.
18           Q.    Better position than what?
19           A.    Than someone else.
20           Q.    Because someone else would
21       charge you a higher collection fee than Mel
22       Harris is what you are saying?
23           A.    No.  Didn't say that.
24           Q.    Then what do you mean by than
25       someone else?
```

69

1    R. NITTOLI
2        A.    Their data, there's risk in
3    transferring data to another processor
4    without their cooperation. They were --
5    this is what they did for a living. They
6    were licensed and they were experts at
7    this. We hired them with an expectation.
8    That's all there is to it.
9        Q.    You hired them with an
10   expectation of what?
11       A.    They were competent
12   professionals, knowledgeable. They had
13   sophisticated programs and there was
14   concern that we could not easily offer that
15   to another collection agency. When I say
16   off-load, I mean transfer successfully
17   without losing control of the debtor
18   records.
19       Q.    My understanding, correct me if
20   I'm wrong, I talked to you about the
21   repository for information. Is it true at
22   that time repository for the information
23   for the LR Credit account, and Credit 13
24   accounts, LR Credit is the repository for
25   that information: is that true or not?

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
69

71

1    R. NITTOLI
2    the judge's opinion in the class
3    certification Order among other
4    things.
5        MR. LICHTMAN:  Objection.
6        Q.    You may answer.
7        A.    As I said, I believe they had
8    capable IT systems to allow them to take
9    data from a purchaser, from a seller and
10   install it, load onto their system and
11   begin a collection process.
12       Q.    Did LR Credit or LR Credit 13
13   even look to see if another debt collection
14   law firm could do the collection for your
15   accounts before September 2015?
16       A.    I don't know what was done at
17   that time, back in 2005, 2003.
18       Q.    You are the corporate
19   representative for LR Credit 13 today,
20   correct?
21       A.    Correct.
22       Q.    Why didn't LR Credit 13 look
23   for a new collection lawyer?
24       MR. BALBER:  Object to the form
25   of the question.

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
71

70

1    R. NITTOLI
2        A.    I misunderstood your question.
3    The information I was referring to were the
4    documents to support the purchase agreement
5    that was provided in buying that portfolio.
6    You are referring to the underlying
7    documents relating to transactions, credit
8    card statements, things of that nature.
9    That is not what I meant.
10       Q.    What did you mean?
11       A.    I meant the purchase agreement
12   and whatever documentation was provided at
13   that time when we purchased that portfolio.
14       Q.    If you were able to come to
15   terms with Mel Harris & Associates in
16   September 2005, come to a financial
17   agreement to transfer the files from Mel S.
18   Harris & Associates to another debt
19   collection law firm, Einstein & Associates,
20   why could you not do that when Judge Chin
21   made the findings of systematic false
22   affidavits of serves and false affidavits
23   of merit?
24       MR. BALBER:  Object to the form
25   of the question. Mischaracterizes

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
70

72

1    R. NITTOLI
2        Q.    After Judge Chin said that the
3    record before the court establishes --
4        A.    I already answered it.
5        Q.    Tens of thousands of sewer
6    service judgments?
7        MR. BALBER:  Object.
8    Mischaracterizes the judge's opinion,
9    witness' testimony.
10       MR. LICHTMAN:  Objection.
11       A.    We believed there was
12   significant execution risk of moving a
13   portfolio to another debt collector.
14       Q.    Were you afraid you wouldn't
15   make as much money; is that accurate?
16       A.    It had nothing to do with it.
17   We lost money on this deal. We didn't make
18   money.
19       Q.    So were you afraid you would
20   lose more money if you transferred it to
21   another debt collector?
22       A.    We never looked at it that way.
23       Q.    How do you look at it?
24       A.    Optional risk.
25       Q.    Go ahead.

DIAMOND REPORTING (877) 624-3287  info@diamondreporting.com
72

73

R. NITTOLI

    **A.** We had a litigation going on
that was important that we maintained the
database of who paid what and who still had
a remaining balance.

    **Q.** In 2012, LR Credit 13 and LR
Credit knew that there was this ruling that
there were thousands of false affidavits of
service; is that true or no?

    MR. BALBER: I am going to
continue my objection because this is
complete absurd nonsense and I think
we should get the Magistrate Judge on
the phone.

    MR. LICHTMAN: Note my
objection as well. Totally
mischaracterizing what Judge Chin
said, among other things.

    MR. KESHAVARZ: Read back.

    (Whereupon, the referred-to
question was read back by the
Reporter.)

    **A.** I don't understand the
question.

    MR. KESHAVARZ: Read again,

74

R. NITTOLI

please.

    (Whereupon, the referred-to
question was read back by the
Reporter.)

    **A.** That would be true.

    MR. KESHAVARZ: Mark this
Plaintiff's Exhibit 6.

    (Whereupon, the aforementioned
document was marked as Plaintiff's
Exhibit 6 for identification as of
this date by the Reporter.)

    (Whereupon, a short recess was
taken.)

    **Q.** After the order and class
certification that's Exhibit 5, did LR
credit 13 or LR Credit take any steps to
determine whether the statements the judge
made about false affidavits, serving false
affidavits of merit, did they take any
steps to determine if those statements were
true?

    MR. LICHTMAN: Objection.

    MR. BALBER: Same objection.

    **A.** I'm not aware of any.

75

R. NITTOLI

    MR. KESHAVARZ: Mark
Plaintiff's Exhibit 7.

    (Whereupon, the aforementioned
document was marked as Plaintiff's
Exhibit 7 for identification as of
this date by the Reporter.)

    **Q.** I am showing you what's been
marked as Plaintiff's Exhibit 7 entitled
Declaration of Nicholas Egleson, stamped on
the top as Page 32 of 57 through 57 of 57.
Please review this document and let me know
when you are done, sir.

    MR. LICHTMAN: Do you have an
extra copy for me?

    MR. KESHAVARZ: No.

    MR. LICHTMAN: Did you know I
was going to be here?

    MR. BALBER: So you are not
marking the Complaint, just the
attachment to the Complaint?

    MR. KESHAVARZ: That's exactly
correct.

    Actually, here you go, sir.
There is an extra copy of the

76

R. NITTOLI

document.

    MR. LICHTMAN: Okay.

    **Q.** Have you had a chance to review
Exhibit 7?

    MR. BALBER: Do you want him to
read the 25 pages or --

    **Q.** Have you had a chance to review
Exhibit 7?

    **A.** Yes, sir.

    MR. BALBER: When you say
review, look and identify, because
this is has been clearly 30 seconds.

    **Q.** Take as much time as you like,
sir, and let me know when you are done
reviewing Exhibit 7.

    **A.** Okay.

    **Q.** Have you had a chance to review
the document?

    **A.** Yes.

    **Q.** If you go down to page 39 of
57.

    **A.** Yes.

    **Q.** The affirmation is signed July
31, 2011; is that correct?

R. NITTOLI

1
2     **A.   It would appear to be correct.**
3     **Q.**   And the declaration purports to
4  be an analysis of the Samserv database?
5     **A.   It would appear to be.**
6     **Q.**   And it contends that there's
7  been an analysis of the Samserv database
8  for affidavits of service used in obtaining
9  defaults against, on behalf of the various
10  LR Credit entities; is that right?
11        MR. LICHTMAN:  Objection.
12        MR. BALBER:  Same objection.
13     **A.   It would appear.**
14     **Q.**   And I will represent to you
15  this was one of the declarations that were
16  used to form the basis of Judge Chin's
17  Order.
18        MR. BALBER:  You are going to
19     make that representation?
20        MR. KESHAVARZ:  I just did.
21        MR. BALBER:  I'm assuming you
22     spoke to Judge Chin and got his input
23     on the issue?
24        MR. KESHAVARZ:  (Indicating).
25        MR. BALBER:  I am sure he would

R. NITTOLI

1
2  be surprised to hear that.
3     **Q.**   I represent to you these were
4  documents filed in support of class
5  certification upon which Exhibit 5's Order
6  is based.
7        Leucadia and LR Credit were
8  parties to the Sykes lawsuit, right?
9     **A.   Correct.**
10     **Q.**   Sir, if you go down to page 40
11  of 57?
12     **A.   Okay.**
13     **Q.**   If you go down one, two, three,
14  four, five lines where it says Andino, do
15  you see that?
16     **A.   Correct, yes.**
17     **Q.**   You may or may not know this,
18  but Mr. Andino is one of the Defendants in
19  Mr. Guzman's lawsuit and he is the process
20  server that we allege filed a false
21  Affidavit of Merit.
22        Let me ask you this, based on
23  the Egleson's database analysis of
24  Samserv's records, is it true that the
25  analysis alleges that there were 327

R. NITTOLI

1
2  instances when Mr. Andino claimed to be at
3  two or more locations at the same time
4  alleging service; is that true?
5        MR. BALBER:  Object to the form
6     of the question.
7        MR. LICHTMAN:  Objection.
8     **A.   I have no idea what the**
9  **database showed.**
10     **Q.**   But LR Credit knew, as of July
11  31, 2011, that there was this declaration
12  with the analysis of Samserv's database
13  showing multiple locations at the same time
14  where a process server claimed to be there;
15  is that right?
16        MR. BALBER:  Object to the form
17     of the question.
18     **A.   I don't know how to interpret**
19  **what it means.**
20     **Q.**   Well, that's what it says.
21        MR. BALBER:  Then why are you
22     asking him?  What are you doing?  You
23     are putting a document in front of
24     him and you have not established he
25     has ever seen the document before.

R. NITTOLI

1
2  You are putting it in front of him
3  and asking him what?  I don't
4  understand what the exercise is
5  about.
6     **Q.**   Me question is this:  If LR
7  Credit had this declaration on July 31,
8  2011, that documented multiple service
9  attempts at the same time, different
10  locations, why did LR Credit or LR Credit
11  13 not take any steps to determine whether
12  the allegation in the declaration were
13  true?
14        MR. BALBER:  Object to the form
15     of the question.
16     **A.   Did Mr. Egleson even interview**
17  **or talk to Mr. Andino?  I don't know how**
18  **you can interpret what the data is without**
19  **getting both sides of the data, talk to the**
20  **employees.  This just looks like it is**
21  **one-sided.  He looked at data, put a chart**
22  **together.**
23     **Q.**   Let's look at other side.
24        My question is this, did LR
25  Credit or LR Credit 13 take any steps after

81

R. NITTOLI

2  the July 31, 2011 Egleson affidavit to look
3  into whether the allegations in the
4  affirmation are true?
5          MR. BALBER:  By the way, if
6  anything you know is a result of --
7          MR. KESHAVARZ:  No.
8          MR. BALBER:  Excuse me, shush.
9          If anything that you know is as
10  a result of your communications with
11  Counsel in connection with the class
12  action or otherwise, you are
13  instructed not to answer.
14          Now you can speak.
15          MR. LICHTMAN:  Note my
16  objection to the question.
17      Q.   I am not asking about
18  communications with anyone.  My question is
19  this:  If LR Credit and LR Credit 13 knew
20  that on July 31, 2011, Mr. Egleson claims
21  he did an analysis of Samserv's database
22  and that database allegedly showed the same
23  process server alleged to be at more than
24  one location at the same time, my question
25  is:  What steps, if any, did LR Credit or

82

R. NITTOLI

2  LR Credit 13 take to determine whether the
3  facts in the Egleson affirmation were true?
4  What steps did you take, if any?
5          MR. BALBER:  Again, if steps
6  were taken at the direction of the LR
7  Credit entities' Counsel, and what
8  you know is a result of those
9  instructions, you are instructed not
10  to answer.
11          MR. LICHTMAN:  Objection.
12      A.   I have been instructed by my
13  Counsel, I'm not going to answer the
14  question.
15      Q.   I don't think that was the
16  instruction.  My question is, if you know
17  the facts and the allegations are made, did
18  you take any steps to determine whether the
19  allegations were true?
20      A.   I will say it louder.  I have
21  been instructed by my counsel not to answer
22  that question.
23      Q.   I don't think he actually
24  instructed you that.
25          MR. BALBER:  I did if what he

83

R. NITTOLI

2  knows -- this is really silly.  Why
3  don't you call the judge.  Let's call
4  the judge.  I am instructing him not
5  to answer unless you call the judge.
6          MR. KESHAVARZ:  Go ahead.
7          MR. BALBER:  You are instructed
8  not to answer.
9          MR. KESHAVARZ:  Call the judge.
10          MR. BALBER:  I am not calling
11  the judge.  You are wasting my time.
12          MR. KESHAVARZ:  Let's call.
13  Where is the phone?
14          MR. BALBER:  There is a phone
15  there.  There is a phone there.  You
16  have a phone.
17          (Whereupon a ruling is being
18  sought.)
19          MR. BALBER:  This is Scott
20  Balber, Counsel for Credit LR 13.
21  I'd like the court reporter to read
22  back the question to the clerk.
23          MR. KESHAVARZ:  Let me state
24  the record.
25          MR. BALBER:  No.  Let's have

84

R. NITTOLI

2  the Court Reporter read the question
3  that you just asked about because
4  that's the question we have dispute
5  about, not a different question.  And
6  the instruction.
7          THE CLERK:  Can you just hold?
8          MR. KESHAVARZ:  Yes.  Thank
9  you.
10          THE CLERK:  The Judge would
11  like for me to get the question and
12  see how urgent it is.
13          Go off the record.
14          (Whereupon, an off-the-record
15  discussion was held.)
16          THE COURT:  This is Judge
17  Ellis.  I hear you have an issue
18  that's come up in the deposition.
19  Who am I speaking with?
20          MR. KESHAVARZ:  Plaintiff's
21  Counsel, Ahmad Keshavarz.
22          THE COURT:  What is your
23  application?
24          MR. KESHAVARZ:  The application
25  is this.  The witness answered a

85

R. NITTOLI

1
2    question about why L Credit and LR
3    Credit 13 kept using Mel Harris as a
4    debt collector after there were
5    findings of sewer service and false
6    affidavits.  After an analysis of
7    Samserv's database, and list specific
8    facts, my question is:  After you got
9    the affidavit in 2011, why did you
10   continue to use Mel Harris as your
11   debt collector law firm?
12        MR. BALBER:  That's not the
13   question you asked.  Not even close.
14   I would suggest --
15        THE COURT:  I gather there is a
16   direction not to answer?
17        MR. BALBER:  Correct.
18        THE COURT:  You are asserting
19   attorney/client privilege?
20        MR. BALBER:  Right.
21        THE COURT:  That is one of
22   those two bases that is allowed to
23   direct the witness not to answer, so
24   I'm not sure why there is an
25   application to me because I have to

87

R. NITTOLI

1
2    assertion of the attorney/client
3    privilege, if you believe that it is
4    improper, you ask the other side to,
5    as best you can, give the basis for
6    it.  If you find that it is
7    inappropriate, you bring it to me.
8    If it turns out that I think the
9    privilege was asserted improperly,
10   then this can be remedied in terms of
11   having the witness respond to
12   questions that they should not have
13   been directed not to answer.
14        I am not sure what it is that
15   you think you can do in the middle of
16   a deposition, specifically on that
17   issue, because if the privilege is
18   asserted properly, then you can
19   direct the witness not to answer.
20        MR. KESHAVARZ:  This is
21   Plaintiff's Counsel.  My request was
22   that there be a ruling based on the
23   testimony now, but if the Court would
24   like a separate application, I guess
25   that's the approach Plaintiff's

86

R. NITTOLI

1
2    either direct to answer or not to
3    answer, but if it's an assertion of a
4    privilege, I'm not sure how to get
5    somebody to answer it.
6        MR. KESHAVARZ:  That is the
7    application from Plaintiff's Counsel.
8    I'm not sure how to proceed.
9        THE COURT:  If someone directs
10   the witness not to answer and the
11   party who is asking the question
12   believes that a privilege is asserted
13   improperly, then they can bring that
14   to the Court.  In the middle of a
15   deposition is a very difficult time
16   to decide whether something is
17   attorney/client privilege, but
18   sometimes trying to figure out the
19   attorney/client privilege, the person
20   asserting the privilege has to
21   communicate with the Court to explain
22   why it is attorney/client privilege.
23   So while your adversary may be
24   inappropriately doing it, first thing
25   that happens is that, like any

88

R. NITTOLI

1
2    Counsel would take.
3        THE COURT:  I would ask you to
4    make a separate application is my
5    point.  I'm not sure how you rule on
6    an assertion of attorney/client
7    privilege in the middle of a
8    deposition, because in order for
9    someone to show me assertion of
10   attorney/client privilege, to explain
11   to the court why it is
12   attorney/client privilege, how do you
13   do that without in front of the other
14   side?  If they are improperly doing
15   it and they are not able to show me
16   that it should have been asserted, it
17   is like any time someone asserts the
18   attorney/client privilege, whether it
19   is in a deposition, request to
20   produce or in some other context, the
21   Court has to examine that in a way
22   that does not cause the privilege to
23   be, I mean, you know, you can't give
24   up the privilege by asserting the
25   privilege.  But I think as a

89

R. NITTOLI

1
2 practical matter, procedurally.  If
3 you can't see how this could be
4 attorney/client privilege or any
5 other question that might be asked,
6 then you can bring that to me
7 afterwards and what will happen is,
8 regardless of what -- there are two
9 things.  Either the witness will be
10 brought back on terms the court
11 determines are appropriate or if it
12 turns out that it's not possible to
13 have the witness back, and have the
14 appropriate articles from the court
15 indicating that it is an
16 inappropriate assertion of the
17 privilege causes certain things need
18 to be deemed admitted or precluded,
19 whatever is an appropriate remedy
20 under the circumstances.  But if he
21 says the attorney/client privilege,
22 you two can talk about the assertion
23 of the privilege.  If you still
24 believe that under the circumstances
25 and under -- any time you assert

90

R. NITTOLI

1
2 attorney/client privilege, it is a
3 little bit hampered because the
4 lawyer may not be able to tell you
5 everything that makes it privileged,
6 but he's got to make the effort and
7 he's got to try to explore that.
8 This is not the kind of issue that is
9 going to be resolved by a call to the
10 Court in the middle of a deposition.
11 MR. KESHAVARZ:  Understood,
12 Your Honor.
13 THE COURT:  Okay.  But
14 everybody is advised that while the
15 rule does allow you to direct the
16 witness not to answer on the very
17 specific circumstances, if you are
18 wrong and you direct the witness not
19 to answer, you have to pay the
20 consequences of that.  So it will be
21 adjourned.  Thank you.
22 MR. KESHAVARZ:  Thank you.
23 MR. LICHTMAN:  Thank you.
24 MR. KESHAVARZ:  Mr. Balber, do
25 you want to state the basis for the

91

R. NITTOLI

1
2 instruction not to answer?
3 MR. BALBER:  I already have.
4 MR. KESHAVARZ:  Anything else?
5 MR. BALBER:  Sure.  So we can
6 respond to your frivolous motion, let
7 me make a record on this.
8 Counsel has shown the witness
9 the declaration of Nicholas Egleson
10 in the Sykes litigation.  I don't
11 believe it has been established the
12 witness has ever seen it before.  The
13 nature of the question is whether the
14 LR Credit 13 entity, which I know is
15 not a party to that case, it did
16 anything to verify or that the
17 factual statements made or analysis
18 done by Nicholas Egleson in the
19 declaration.  As I noted for Counsel,
20 the LR Credit related entities were
21 represented By Counsel in connection
22 with the Sykes litigation and my
23 instruction to the witness has
24 intended to avoid having the witness
25 testify about communications with

92

R. NITTOLI

1
2 Counsel in Sykes or otherwise about
3 evidence undertaken to determine what
4 Egleson says his declaration says,
5 which is part of the Sykes class
6 action litigation.
7 Q.  LR Credit 13 was not a party to
8 the Sykes lawsuit, correct?
9 A.  Correct.
10 Q.  However, after July 2011, LR
11 Credit 13 continued to use Mel Harris to
12 collect on punitive debts on behalf of LR
13 Credit 13, correct?
14 A.  Correct.
15 Q.  And, in fact, LR Credit 13
16 continued to use Mel Harris to collect on
17 alleged debt all the way through September
18 2015, correct?
19 MR. BALBER:  Objection.  Asked
20 and answered.
21 A.  Correct.
22 Q.  Let me ask you a question.  You
23 can say yes, no, whatever else you want to
24 say.
25 On July 31, 2011 or shortly

93

R. NITTOLI

1
2  thereafter, did LR Credit 13 know that
3  there was a declaration by Mr. Egleson
4  claiming to have done an analysis of the
5  Samserv database?
6      **A.    I don't know at what point we**
7  **received that notice.**
8      **Q.    But at some point, LR Credit 13**
9  received that notice?
10      **A.    Yes.**
11      **Q.    And that was sometime shortly**
12  after July 31, 2011, correct?
13      **A.    I would believe so.**
14      **Q.    And the allegations for**
15  Mr. Andino, for example, the Defendant, the
16  Defendant in this case, Mr. Guzman's case,
17  the allegation was that Mr. Andino claimed
18  to be in more than one place at the same
19  time serving process on 327 occasions; is
20  that correct?
21      MR. BALBER:  Object to the form
22      of the question.  I don't understand
23      what the question is.  I am sorry.
24      Can you read it back, please?
25      MR. LICHTMAN:  Objection.

95

R. NITTOLI

1
2  accounted for.
3      **Q.    Is one reason that after LR**
4  Credit 13 saw the Egleson affirmation, is
5  one reason they continued to use Mel Harris
6  was that they were concerned that LR Credit
7  13 would not make as much money if it
8  attempted to transfer the accounts from Mel
9  Harris to another law firm?  Is that one of
10  the reasons?
11      **A.    To my knowledge, that was not a**
12  **reason.**
13      **Q.    After seeing the Egleson**
14  affirmation, why did LR Credit 13 continue
15  to have Mel Harris use Samserv as the
16  process server?
17      MR. LICHTMAN:  Objection.
18      **A.    I have no knowledge of that.**
19  **Rushmore managed the operation of Mel**
20  **Harris, the day-to-day.  Who they selected,**
21  **I just don't know.**
22      **Q.    LR Credit 13 had the Egleson**
23  affirmation shortly after July 2011; is
24  that correct?
25      MR. BALBER:  Object to the form

94

R. NITTOLI

1
2      MR. BALBER:  Same objection.
3      **A.    That's what Mr. Egleson's**
4  **report alleges.**
5      **Q.    So I am only asking as to LR**
6  Credit 13, who is not a party in Sykes.  My
7  question is this.
8      Why did LR Credit 13 continue
9  to use Mel Harris to collect debts after it
10  learned about the Egleson affirmation?
11      MR. BALBER:  Objection.  Asked
12      and answered.  Objection to the form
13      of the question.
14      **A.    As I said, we believed there**
15  **would be significant execution risk to**
16  **transfer the collection to someone else.**
17      **Q.    Tell me what you mean about**
18  execution risk.
19      **A.    Transferring data, getting all**
20  **the data fields properly loaded into**
21  **someone else's system.  They may have**
22  **different definitions on what data fields**
23  **mean versus what the Mel Harris database**
24  **was.  There could be a delay, money was**
25  **coming in every day and it needed to be**

96

R. NITTOLI

1
2  of the question.
3      **A.    It would appear correct.**
4      **Q.    My question is this:  If you**
5  look at item two on Exhibit 7, page one, it
6  says that "I understand that this database
7  is the record of all service of a process
8  performed by Samserv for Mel Harris from
9  January 2007 through January 2011."  Did I
10  read that correctly?
11      **A.    Yes.**
12      **Q.    So my question is:  Why did LR**
13  Credit 13 instruct Mel Harris to use a
14  process server other than Samserv after LR
15  Credit 13 had the Egleson affirmation?
16      MR. BALBER:  Objection.
17      Objection to the form of the
18      question.  No foundation.
19      MR. LEVITT:  Objection.
20      **A.    I already answered that.**
21      **Q.    As to using Samserv, I don't**
22  believe you have.  But anyway, what is your
23  answer?
24      **A.    Rushmore managed the day-to-day**
25  **operations of Mel Harris.  That is their**

97

R. NITTOLI

1  choice, their decision.  That was their
2  part of the operating agreement.  I have no
3  idea who they used and I'm not sure that
4  they continued to use them.
5      Q.    You knew shortly after July 31,
6  2011, that as of at least January 2011, Mel
7  Harris was continuing to use Samserv as the
8  process server for the LR Credit 13; is
9  that true?
10         MR. BALBER:  By "you," you mean
11      Rocco Nittoli?
12      Q.    You represent LR Credit 13, so
13  as a corporate representative of LR Credit
14  13?
15      A.    I don't have that information.
16  This is what Mr. Egleson is alleging.  That
17  data resides in Mel Harris' computer system
18  somewhere.
19      Q.    So then why didn't LR Credit 13
20  take any steps after it got the LR Credit
21  13 Egleson affirmation to determine whether
22  the allegation were true?
23         MR. BALBER:  Objection.
24      Mischaracterizes the witness' prior

---

98

R. NITTOLI

1      testimony.  You can answer.
2      A.    I had been advised by Counsel
3  not to answer that question.
4      Q.    No.  LR Credit 13.  LR Credit
5  13 wasn't a defendant in Sykes.
6         MR. BALBER:  It doesn't matter.
7      If he has knowledge because of advice
8      of Counsel, it doesn't matter whether
9      the entity was a Defendant or not.
10      Q.    When you say advice of Counsel,
11  what do you mean?
12      A.    I mean advice of Counsel.
13      Q.    Of who?
14      A.    Mr. Balber.
15      Q.    Okay.  Fine.  Understood.
16         Did LR Credit 13 even consider
17  looking into whether they should continue
18  to have Mel Harris use Samserv after LR
19  Credit 13 saw the Egleson affirmation, did
20  they even consider not using Samserv?
21         MR. LEVITT:  Objection.
22      A.    I don't know if he did continue
23  to use Samserv.
24      Q.    I am asking, did you even look

---

99

R. NITTOLI

1  into whether you continued to use Samserv
2  after the Egleson affirmation?
3         MR. BALBER:  Objection.  Asked
4      and answered.  Object to the form of
5      the question.
6         MR. LEVITT:  Objection.
7      A.    I think it is has been
8  answered.
9      Q.    You can answer.
10         MR. LEVITT:  It has been
11      answered since I came into the room.
12      Q.    You can answer.
13      A.    I have been advised by Counsel
14  not to answer.
15         MR. KESHAVARZ:  I don't know if
16      his advice is to this question.
17         Read the question, please.
18         (Whereupon, the referred-to
19      question was read back by the
20      Reporter.)
21      A.    At some point, that was
22  discussed and I believe a decision was made
23  not to use Samserv, but I don't know how
24  close it was done to July of 2011.  The

---

100

R. NITTOLI

1  Sykes matter was a five-year, six-year
2  window.  I don't believe we were using them
3  toward the end.
4      Q.    So you don't believe that you
5  were having Mel Harris use Samserv as a
6  process server close to the end, you mean
7  close to September 2015?
8      A.    I don't know the time.  This is
9  a six, seven-year case.  I don't know when
10  that decision was made.
11      Q.    The reason I ask is that you
12  said, "towards the end."  I am just
13  wondering what you had in your mind about
14  when you used the term --
15      A.    I don't recall.
16      Q.    So you don't know if it was
17  closer to 2015 or 2012?  You don't know?
18      A.    I don't recall.
19      Q.    Who made that decision?
20      A.    That was a decision that was
21  made by the LR 13, LR Credit Management.
22      Q.    Who specifically?
23      A.    General counsel, our CFO, there
24  were other attorneys in the room.

**101**

R. NITTOLI

2 **Q.** Anyone else?

3 **A. I don't recall.**

4 **Q.** Were you in the room?

5 **A. I was in the room when it was**

6 **discussed. I was not in the room when the**

7 **final decision was made.**

8 **Q.** The general counsel that you

9 referred to meaning general counsel at

10 Leucadia?

11 **A. At Leucadia.**

12 **Q.** Do you recall what the name of

13 that general counsel is?

14 **A. Steve Jacobs.**

15 **Q.** No relation to Zalman Jacobs?

16 **A. No relation to my knowledge.**

17 **Q.** When you said the CFO, do you

18 mean the CFO of Leucadia?

19 **A. Of LR Credit 13.**

20 **Q.** Who was that?

21 **A. Joseph Orlando.**

22 **Q.** Are the corporate officers for

23 all of the different numbered LR Credit

24 entities 1 through 23, they use all the

25 same corporate officers?

**102**

R. NITTOLI

2 **A. Perhaps. I don't have a list**

3 **of the 23 entities, but that is a general**

4 **-- they tend to be similar.**

5 **Q.** Generally, you think that LR

6 Credit 1 through 23 generally have the same

7 corporate officers?

8 **A. Perhaps over the years as new**

9 **people come and go, the newer ones -- the**

10 **later numbered ones may have a different**

11 **officer or two.**

12 **Q.** Other than that transition,

13 would they generally be the same?

14 MR. BALBER: Object to the form

15 of the question. Objection. Asked

16 and answered.

17 **A. It would generally be the same.**

18 **Q.** Would the corporate officer for

19 the LR Credit entities 1 through 23 be the

20 same corporate officers for LR Credit LLC?

21 **A. They may be. I don't know.**

22 **Q.** Will they be generally the same

23 as for L Credit?

24 **A. Again, they may be.**

25 **Q.** You talked about the possible

**103**

R. NITTOLI

2 change in the corporate officers for LR

3 Credit 1 through 23 change over time

4 because of the passage of time. My

5 question is, when you say they may be for L

6 Credit and LR Credit, do you mean it may be

7 because of the passage of time, come and go

8 or do you mean something else?

9 MR. BALBER: Object to the form

10 of the question. And

11 mischaracterizes the witness's prior

12 testimony. You can answer.

13 **A. It also depends on the purpose**

14 **of the entity. I may have been a treasurer**

15 **of LR 13. I may have been a vice president**

16 **at LR Credit, depending on the need of the**

17 **entity.**

18 **Q.** Regardless of if it is CFO of

19 one or the treasurer of one, whatever the

20 type of corporate officers, my question is

21 this: Generally speaking, other than the

22 fact that people change over time,

23 generally speaking are the corporate

24 officers of L Credit the same as LR Credit?

25 MR. BALBER: Objection. Asked

**104**

R. NITTOLI

2 and answered. And his answer is he

3 doesn't know.

4 **Q.** Don't instruct the client. You

5 can answer.

6 **A. I already said I don't know.**

7 **Q.** Thank you.

8 You are the corporate

9 representative for the claims and defense

10 necessary to this lawsuit, correct?

11 MR. BALBER: I don't understand

12 what that means.

13 **Q.** You're the corporate

14 representative to testify as to the basis

15 of the claims and defenses in this case,

16 correct?

17 MR. BALBER: Object to the form

18 of the question. He's the corporate

19 representative based upon the service

20 of the notice and our objections

21 thereto.

22 **Q.** You can answer the question.

23 One of your items to testify to on behalf

24 of LR Credit 13 are the basis of LR Credit

25 13's defenses in this case; is that

R. NITTOLI

2 correct?

3     **A.  I am representing LR 13.**

4     MR. KESHAVARZ:  Can you mark

5 this, please?

6     (Whereupon, the aforementioned

7 document was marked as Plaintiff's

8 Exhibit 8 for identification as of

9 this date by the Reporter.)

10     **Q.**  I'm showing you what's marked

11 as Plaintiff's Exhibit 8, the notice of

12 deposition for today.  Looking at page two,

13 item number 1, it indicates that the

14 corporate representative is to testify as

15 to the claims and defenses raised in the

16 Complaint and in the Answer in this action;

17 is that correct?

18     **A.  Yes.  This is correct.**

19     **Q.**  My question is going to Exhibit

20 6.

21     MR. LEVITT:  What was Exhibit

22 6.

23     MR. KESHAVARZ:  The Answer.

24     MR. LEVITT:  LR Credit Answer?

25     MR. KESHAVARZ:  Yes.

R. NITTOLI

2     **Q.**  I'm showing you Plaintiff's

3 Exhibit 6 docket entry 50, the answer of LR

4 Credit 13, and I turn your attention to

5 page 13.  If you can read page 13 through

6 16 to yourself, sir and let me know when

7 you are done.

8     **A.  Okay.**

9     **Q.**  Going back to page 13,

10 paragraph 98, the third affirmative

11 defense, my question is this:  What is the

12 basis for the LR Credit 13 affirmative

13 defense that Plaintiff's claims are barred

14 by the doctrines of laches, estoppel and

15 waiver?

16     MR. BALBER:  You are asking the

17 witness, who is not a lawyer, to give

18 you the base for the legal

19 affirmative defense?  Is that what

20 you are asking?

21     MR. KESHAVARZ:  Call it

22 anything you want.

23     MR. BALBER:  I will call it

24 what it is.  Idiotic.  Not unlike the

25 rest of your deposition.  I don't

R. NITTOLI

2 know how the witness can possibly

3 have any basis to answer that

4 question.

5     MR. KESHAVARZ:  He is the

6 corporate rep for it.

7     **Q.**  This is my question, what's the

8 basis if any for LR Credit's third

9 affirmative defense that Plaintiff's claims

10 are barred by the doctrines of laches,

11 estoppel and waiver?

12     MR. BALBER:  To the extent you

13 know any of that as a result of

14 communication with Counsel, you are

15 instructed not to answer.

16     **A.  I am not going to answer and I**

17 **would suggest we -- I told you I had a hard**

18 **stop at 4:00.**

19     **Q.**  I'm going one at a time.

20     **A.  An hour ago you said we'd be**

21 **done in 15 minutes and you were two hours**

22 **late.**

23     **Q.**  If you could just go through

24 this.

25     **A.  Don't start something we can't**

R. NITTOLI

2 **finish.  I have a hard stop at 4:00.**

3     **Q.**  What is the factual basis for

4 the third affirmative defense of the

5 doctrines of Plaintiff's claim is barred by

6 the doctrines of laches estoppel and

7 waiver, what's the factual basis for that?

8     MR. BALBER:  Same instruction.

9     **A.  I have been advised not to**

10 **answer.**

11     MR. BALBER:  It is a privileged

12 instruction.

13     **Q.**  Were you instructed by Counsel

14 as to the basis of the affirmative defenses

15 of laches, estoppel and waiver?

16     MR. BALBER:  My communications

17 with my clients are none of your

18 business.  You are instructed not to

19 answer.

20     MR. KESHAVARZ:  We will go

21 through them one at a time.

22     MR. BALBER:  Let me put this on

23 the record.  He's not answering any

24 questions regarding any of the

25 affirmative defenses with regard to

109

R. NITTOLI

1
2       the legal basis or his communications
3       with me or my work product, so that
4       may shortcut it.
5           Q.    Does LR Credit 13 have any
6       policies or procedures to avoid violations
7       of the Fair Debt Collection Practices Act?
8           A.    No.
9           Q.    Do you believe that Mr. Guzman
10      did not exercise reasonable care regarding
11      the allegation he makes in this Complaint?
12          A.    I have no idea.  I have never
13      met him.
14          Q.    Do you have any factual basis
15      for a belief that Mr. Guzman did not
16      exercise reasonable care and, therefore,
17      he's liable for some of the damages sought
18      by this case?
19          A.    I have no idea what these guys
20      did.
21          Q.    So the answer is no?
22          A.    No.
23          Q.    For affirmative defenses
24      three -- two, three, four, five six, seven,
25      nine, ten, and eleven, do you have any

110

R. NITTOLI

1
2       factual basis for those affirmative
3       defenses?
4           A.    I have been advised by my
5       attorney not answer that question.
6               MR. KESHAVARZ:  Is that true in
7       this case?
8               MR. BALBER:  The extent is if
9       you have factual knowledge in these
10      issues based on your communication
11      with Counsel, you are instructed not
12      to answer.
13          Q.    Do you have any actual
14      knowledge, other than communication you've
15      had with Counsel?  Do you want me repeat
16      the numbers again?
17          A.    Sure.
18          Q.    Sure.  From the affirmative
19      defense two through ten.
20          A.    I have no change to my answer.
21          Q.    You don't have any factual
22      basis, separate and apart from your
23      conversations you had with Counsel,
24      correct?
25          A.    Correct.

111

R. NITTOLI

1
2               MR. KESHAVARZ:  Thank you for
3       your time.  You are free to go unless
4       you have any.
5               MR. LEVITT:  No questions.
6               (Whereupon, at 4:02 P.M., the
7       Examination of this Witness was
8       concluded.)
9
10              o       o       o       o
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

112

R. NITTOLI

1
2       D E C L A R A T I O N
3
4           I hereby certify that having been
5       first duly sworn to testify to the truth, I
6       gave the above testimony.
7
8           I FURTHER CERTIFY that the foregoing
9       transcript is a true and correct transcript
10      of the testimony given by me at the time
11      and place specified herein before.
12
13
14
15      _____
                ROCCO NITTOLI
16
17
18      Subscribed and sworn to before me
19      this _____ day of _____ 20___.
20
21
22      _____
                NOTARY PUBLIC
23
24
25

113

```
 1              R. NITTOLI
 2            E X H I B I T S
 3
 4     PLAINTIFF'S EXHIBITS
 5
 6     EXHIBIT   EXHIBIT              PAGE
 7     NUMBER    DESCRIPTION
 8     1 and 2   LR Credit Documents      12
 9     3         Collection complaint    50
10     4         Document              52
11     5         Order by Judge Chin    63
12     6         Answer          74
13     7         Declaration        75
14     8         Notice          105
15
16            (Exhibits retained by Counsel.)
17
18              I N D E X
19
20     EXAMINATION BY              PAGE
21     MR. KESHAVARZ              4
22
23        INFORMATION AND/OR DOCUMENTS REQUESTED
24     INFORMATION AND/OR DOCUMENTS       PAGE
25     (None)
```

114

```
 1              R. NITTOLI
 2          C E R T I F I C A T E
 3
 4     STATE OF NEW YORK      )
                     :  SS.:
 5     COUNTY OF RICHMOND     )
 6
 7        I, TRACY ANNE VALENTI, a Notary
 8     Public for and within the State of New
 9     York, do hereby certify:
10        That the witness whose examination is
11     herein before set forth was duly sworn and
12     that such examination is a true record of
13     the testimony given by that witness.
14        I further certify that I am not
15     related to any of the parties to this
16     action by blood or by marriage and that I
17     am in no way interested in the outcome of
18     this matter.
19        IN WITNESS WHEREOF, I have hereunto
20     set my hand this 30th day of March 2017.
21
22
23     _____
              TRACY ANNE VALENTI
24
25
```

**$**

**$1,130.35** [2] - 51:6, 51:21

**0**

**07747** [1] - 4:13

**1**

**1** [16] - 3:17, 12:18, 13:22, 18:19, 18:21, 18:22, 19:8, 33:25, 39:15, 39:17, 101:24, 102:6, 102:19, 103:3, 105:13, 113:8
**10** [2] - 1:12, 35:7
**10,000** [1] - 36:11
**100** [2] - 8:20, 17:16
**100,000** [3] - 36:15, 36:23, 37:17
**10005** [1] - 2:15
**10017** [1] - 2:11
**105** [1] - 113:14
**11241** [1] - 2:6
**114** [1] - 12:23
**12** [2] - 4:12, 113:8
**120** [2] - 31:8, 31:9
**12:30** [1] - 66:8
**12:40** [1] - 1:13
**13** [90] - 1:7, 2:10, 18:14, 26:18, 26:19, 28:15, 28:19, 28:23, 29:6, 31:6, 39:21, 39:22, 40:16, 41:2, 41:4, 42:20, 43:5, 45:7, 46:16, 46:24, 47:8, 48:14, 51:22, 52:3, 52:20, 53:2, 53:10, 53:21, 54:2, 54:3, 54:9, 54:11, 54:12, 56:15, 58:17, 59:2, 59:13, 59:20, 59:25, 60:9, 60:17, 61:20, 67:19, 69:23, 71:12, 71:19, 71:22, 73:6, 74:17, 80:11, 80:25, 81:19, 82:2, 83:20, 85:3, 91:14, 92:7, 92:11, 92:13, 92:15, 93:2, 93:8, 94:6, 94:8, 95:4, 95:7, 95:14, 95:22, 96:13, 96:15, 97:9, 97:13, 97:15, 97:20, 97:22, 98:5, 98:6, 98:17, 98:20, 100:22, 101:19, 103:15, 104:24, 105:3, 106:4, 106:5, 106:9, 106:12, 109:5
**13's** [2] - 29:19, 104:25
**14** [1] - 67:22
**14th** [1] - 1:21

**15** [4] - 51:5, 51:20, 51:25, 107:21
**16** [2] - 2:5, 106:6
**199** [1] - 63:25
**1:16-EV-03499** [1] - 1:6

**2**

**2** [5] - 12:15, 12:18, 13:22, 65:7, 113:8
**20** [1] - 23:22
**2003** [2] - 10:24, 71:17
**2005** [2] - 70:16, 71:17
**2007** [1] - 96:9
**2008** [1] - 24:20
**2009** [2] - 24:20, 63:9
**2011** [15] - 10:25, 76:25, 79:11, 80:8, 81:2, 81:20, 85:9, 92:10, 92:25, 93:12, 95:23, 96:9, 97:7, 99:25
**2012** [3] - 63:13, 68:9, 73:6, 100:18
**2014** [1] - 67:22
**2015** [12] - 58:24, 59:18, 59:22, 60:4, 60:18, 61:13, 61:22, 61:24, 71:15, 92:18, 100:8, 100:18
**2016** [4] - 32:21, 33:10, 33:16, 58:19
**2017** [2] - 1:12, 114:20
**20____** [1] - 112:19
**21** [1] - 23:22
**23** [9] - 18:22, 19:8, 24:4, 34:2, 101:24, 102:3, 102:6, 102:19, 103:3
**24** [1] - 18:21
**240** [1] - 63:25
**25** [2] - 18:19, 76:7

**3**

**3** [5] - 50:3, 50:14, 52:5, 113:9
**30** [2] - 3:16, 76:13
**30th** [1] - 114:20
**31** [8] - 76:25, 79:11, 80:7, 81:2, 81:20, 92:25, 93:12, 97:6
**32** [1] - 75:11
**327** [2] - 78:25, 93:19
**39** [1] - 76:21

**4**

**4** [4] - 52:15, 68:8, 113:10, 113:21
**40** [3] - 9:3, 9:5, 78:10
**45** [1] - 39:18

**450** [2] - 1:20, 2:10
**4:00** [2] - 107:18, 108:2
**4:02** [1] - 111:6

**5**

**5** [4] - 15:12, 15:14, 35:7, 113:11
**5's** [1] - 78:5
**50** [2] - 106:3, 113:9
**52** [1] - 113:10
**57** [5] - 75:11, 76:22, 78:11

**6**

**6** [2] - 52:17, 113:12
**63** [1] - 113:11

**7**

**7** [4] - 51:2, 51:6, 51:11, 113:13
**70** [11] - 10:14, 11:10, 14:15, 30:16, 31:4, 31:14, 32:6, 32:14, 32:20, 32:25, 33:15
**74** [1] - 113:12
**75** [1] - 113:13

**8**

**8** [1] - 113:14
**82** [1] - 2:15

**9**

**90** [2] - 17:18, 58:12
**91** [1] - 12:22
**95** [2] - 15:10, 15:13
**98** [1] - 106:10

**A**

**ability** [1] - 60:6
**able** [6] - 46:10, 46:22, 68:16, 70:14, 88:15, 90:4
**above** [1] - 112:6
**absurd** [1] - 73:12
**accept** [2] - 33:9, 33:11
**accepted** [1] - 33:22
**access** [1] - 60:7
**account** [6] - 28:16, 28:18, 29:20, 34:11, 46:10, 69:23
**accounted** [2] - 60:14, 95:2
**accounting** [4] - 35:10, 60:11, 63:5, 68:16
**accounts** [11] - 28:14, 28:23, 29:6, 36:8, 43:6, 61:6, 61:14, 68:17,

69:24, 71:15, 95:8
**accuracy** [1] - 43:15
**accurate** [2] - 17:7, 72:15
**acquires** [1] - 8:4
**act** [1] - 25:24
**Act** [4] - 20:5, 20:14, 21:20, 109:7
**action** [8] - 33:7, 53:7, 61:5, 66:23, 81:12, 92:6, 105:16, 114:16
**actions** [1] - 66:21
**active** [1] - 63:6
**activities** [1] - 29:3
**activity** [1] - 60:10
**actual** [1] - 110:13
**address** [1] - 4:11
**adjourned** [1] - 90:21
**administer** [1] - 3:11
**admitted** [1] - 89:18
**adversary** [1] - 86:23
**advice** [4] - 98:8, 98:11, 98:13, 99:17
**advised** [5] - 90:14, 98:3, 99:14, 108:9, 110:4
**affidavit** [3] - 52:16, 81:2, 85:9
**Affidavit** [1] - 78:21
**affidavits** [4] - 66:22, 70:22, 73:8, 74:19, 74:20, 77:8, 85:6
**affirmation** [11] - 76:24, 81:4, 82:3, 94:10, 95:4, 95:14, 95:23, 96:15, 97:22, 98:20, 99:3
**affirmative** [10] - 106:10, 106:12, 106:19, 107:9, 108:4, 108:14, 108:25, 109:23, 110:2, 110:18
**aforementioned** [7] - 12:16, 50:4, 52:11, 63:17, 74:9, 75:4, 105:6
**afraid** [2] - 72:14, 72:19
**after** [22] - 3:16, 32:8, 33:16, 44:9, 67:21, 72:2, 74:15, 80:25, 85:4, 85:6, 85:8, 92:10, 93:12, 94:9, 95:3, 95:13, 95:23, 96:14, 97:6, 97:21, 98:19, 99:3
**afternoon** [2] - 4:14, 4:15
**afterwards** [1] - 89:7
**again** [9] - 11:4, 14:12, 25:3, 32:17, 55:2, 73:25, 82:5, 102:24, 110:16
**against** [4] - 1:5, 50:16, 50:21, 77:9
**agency** [2] - 29:11,

29:21, 29:22, 31:23,
62:2, 62:12, 69:15

**ago** [1] - 107:20

**AGREED** [2] - 3:5, 3:20

**agreed** [4] - 33:8, 51:4,
51:19, 51:24

**agreement** [16] - 13:3,
13:5, 13:8, 13:24, 14:4,
14:7, 14:10, 15:3, 51:3,
51:18, 51:23, 62:16,
70:4, 70:11, 70:17, 97:3

**agreements** [5] - 45:15,
46:2, 47:25, 48:13, 48:17

**ahead** [6] - 42:2, 42:13,
57:14, 64:15, 72:25, 83:6

**Ahmad** [1] - 84:21

**AHMAD** [2] - 2:4, 2:6

**allegation** [4] - 80:12,
93:17, 97:23, 109:11

**allegations** [5] - 20:12,
81:3, 82:17, 82:19, 93:14

**allege** [1] - 78:20

**alleged** [4] - 47:25,
52:5, 81:23, 92:17

**allegedly** [2] - 46:9,
81:22

**alleges** [2] - 78:25, 94:4

**alleging** [2] - 79:4,
97:17

**allow** [2] - 71:8, 90:15

**allowed** [1] - 85:22

**along** [2] - 18:20, 40:22

**ALSO** [1] - 2:19

**among** [2] - 71:3, 73:18

**amount** [1] - 23:13

**amusement** [1] - 66:5

**analysis** [10] - 40:24,
77:4, 77:7, 78:23, 78:25,
79:12, 81:21, 85:6,
91:17, 93:4

**AND** [3] - 1:7, 3:5, 3:20

**AND/OR** [2] - 113:23,
113:24

**Andino** [5] - 78:14,
79:2, 80:17, 93:15, 93:17

**ANDINO** [1] - 1:8

**andino** [1] - 78:18

**ANDREW** [1] - 2:17

**ANNE** [2] - 114:7,
114:23

**Anne** [1] - 1:22

**annual** [3] - 9:7, 9:10,
9:12

**anonymous** [1] - 20:8

**another** [9] - 49:10,
60:19, 69:3, 69:15,
70:18, 71:13, 72:13,
72:21, 95:9

**answer** [61] - 5:19, 8:25,
10:2, 11:16, 14:10,

14:11, 21:15, 26:7,
34:19, 35:24, 38:14,
39:9, 46:23, 47:18, 48:5,
48:10, 49:13, 49:14,
50:10, 54:24, 55:7, 56:4,
71:6, 81:13, 82:10,
82:13, 82:21, 83:5, 83:8,
85:16, 85:23, 86:2, 86:3,
86:5, 86:10, 87:13,
87:19, 90:16, 90:19,
91:2, 96:23, 98:2, 98:4,
99:10, 99:13, 99:15,
103:12, 104:2, 104:5,
104:22, 106:3, 107:3,
107:15, 107:16, 108:10,
108:19, 109:21, 110:5,
110:12, 110:20

**Answer** [4] - 105:16,
105:23, 105:24, 113:12

**answered** [15] - 11:2,
11:9, 29:2, 37:15, 44:5,
72:4, 84:25, 92:20,
94:12, 96:20, 99:5, 99:9,
99:12, 102:16, 104:2

**answering** [1] - 108:23

**answers** [1] - 50:8

**anybody** [1] - 30:14

**anyone** [6] - 3:11, 6:3,
6:12, 49:17, 81:18, 101:2

**anything** [5] - 81:6,
81:9, 91:4, 91:16, 106:22

**anyway** [1] - 96:22

**apart** [1] - 110:22

**apologize** [2] - 11:4,
29:2

**apparently** [1] - 67:3

**appear** [5] - 36:13, 77:2,
77:5, 77:13, 96:3

**appears** [2] - 13:3,
50:24

**application** [6] - 84:23,
84:24, 85:25, 86:7,
87:24, 88:4

**approach** [1] - 87:25

**appropriate** [3] - 89:11,
89:14, 89:19

**approximately** [15] -
6:18, 7:23, 8:20, 9:3,
10:12, 10:24, 10:25,
11:10, 15:12, 33:10,
36:8, 37:17, 59:7, 59:11,
61:12

**are there** [3] - 16:6,
19:7, 57:2

**around** [2] - 61:22, 63:9

**arranged** [1] - 40:5

**arrangement** [3] - 19:9,
25:8, 26:10

**articles** [1] - 89:14

**ask** [19] - 5:5, 5:6, 5:9,

5:10, 14:13, 21:14,
34:17, 39:12, 45:17,
53:8, 55:21, 59:9, 64:19,
64:25, 78:22, 87:4, 88:3,
92:22, 100:12

**Asked** [1] - 11:8

**asked** [9] - 44:4, 84:3,
85:13, 89:5, 92:19,
94:11, 99:4, 102:15,
103:25

**asking** [13] - 11:4, 21:6,
48:15, 54:6, 54:7, 79:22,
80:3, 81:17, 86:11, 94:5,
98:25, 106:16, 106:20

**assert** [1] - 89:25

**asserted** [4] - 86:12,
87:9, 87:18, 88:16

**asserting** [3] - 85:18,
86:20, 88:24

**assertion** [6] - 86:3,
87:2, 88:6, 88:9, 89:16,
89:22

**asserts** [1] - 88:17

**assets** [4] - 8:9, 8:22,
9:4, 9:5

**assignee** [1] - 52:21

**associates** [1] - 29:23

**ASSOCIATES** [1] - 1:7

**Associates** [13] - 17:3,
20:15, 21:21, 38:24,
54:19, 55:5, 59:3, 60:3,
61:16, 61:21, 70:15,
70:18, 70:19

**assume** [3] - 5:11,
50:19, 50:22

**assumes** [2] - 41:17,
42:14

**assuming** [1] - 77:21

**Attachment** [2] - 13:22

**attachment** [1] - 75:21

**attachments** [2] - 13:4,
13:7

**attempt** [1] - 61:23

**attempted** [1] - 95:8

**attempts** [1] - 80:9

**attention** [1] - 106:4

**attesting** [2] - 66:22,
67:4

**attorney** [10] - 6:7, 38:2,
38:16, 38:24, 39:4,
51:20, 58:18, 59:3,
68:10, 110:5

**attorney/client** [12] -
85:19, 86:17, 86:19,
86:22, 87:2, 88:6, 88:10,
88:12, 88:18, 89:4,
89:21, 90:2

**Attorneys** [3] - 2:4, 2:9,
2:14

**attorneys** [4] - 51:5,

51:25, 59:22, 100:25

**audit** [1] - 19:23

**authorized** [1] - 3:11

**auto** [1] - 8:11

**Avenue** [2] - 1:21, 2:10

**avoid** [2] - 91:24, 109:6

**aware** [2] - 25:20, 74:25

## B

**back** [17] - 7:15, 20:19,
20:21, 33:23, 53:15,
53:17, 68:7, 71:17,
73:19, 73:21, 74:4,
83:22, 89:10, 89:13,
93:24, 99:20, 106:9

**background** [1] - 8:18

**balance** [1] - 73:5

**Balber** [3] - 5:25, 6:22,
83:20

**BALBER** [143] - 2:11,
8:24, 9:14, 9:24, 10:10,
11:8, 11:15, 11:20, 12:3,
12:12, 13:9, 13:14,
13:18, 14:8, 14:22,
14:25, 15:25, 16:15,
17:4, 18:9, 19:2, 19:11,
20:17, 20:23, 21:5,
21:11, 21:23, 22:7,
23:16, 23:25, 24:12,
26:4, 26:12, 30:14, 32:2,
32:9, 32:23, 33:3, 33:18,
34:5, 34:14, 35:15,
35:22, 36:17, 37:3,
37:10, 37:14, 38:11,
39:6, 39:12, 40:8, 41:16,
41:23, 42:11, 42:14,
42:23, 43:7, 43:21, 44:4,
44:11, 45:4, 45:11,
46:21, 47:3, 47:11,
47:17, 48:3, 48:18,
48:24, 51:8, 51:13,
53:14, 54:22, 55:15,
55:19, 56:2, 56:12,
57:11, 58:8, 59:16,
60:21, 64:12, 64:16,
64:22, 65:10, 65:17,
65:20, 65:25, 66:9,
67:25, 70:24, 71:24,
72:7, 73:10, 74:24,
75:19, 76:6, 76:11,
77:12, 77:18, 77:21,
77:25, 79:5, 79:16,
79:21, 80:14, 81:5, 81:8,
82:5, 82:25, 83:7, 83:10,
83:14, 83:19, 83:25,
85:12, 85:17, 85:20,
91:3, 91:5, 92:19, 93:21,
94:2, 94:11, 95:25,
96:16, 97:11, 97:24,
98:7, 99:4, 102:14,

103:9, 103:25, 104:11,
104:17, 106:16, 106:23,
107:12, 108:8, 108:11,
108:16, 108:22, 110:8
  **balber** [2] - 90:24, 98:15
  **ballpark** [1] - 8:18
  **bank** [6] - 28:14, 28:15,
28:17, 28:23, 29:5, 29:19
  **Bank** [2] - 52:5, 52:23
  **banks** [1] - 8:13
  **barred** [3] - 106:13,
107:10, 108:5
  **base** [1] - 106:18
  **based** [8] - 36:12, 37:4,
66:21, 78:6, 78:22,
87:22, 104:19, 110:10
  **bases** [1] - 85:22
  **basically** [1] - 15:23
  **basis** [16] - 67:14,
77:16, 87:5, 90:25,
104:14, 104:24, 106:12,
107:3, 107:8, 108:3,
108:7, 108:14, 109:2,
109:14, 110:2, 110:22
  **Bates** [3] - 12:22, 52:16,
63:24
  **BEFORE** [1] - 1:15
  **before** [15] - 1:22, 3:11,
3:13, 4:17, 5:3, 61:23,
66:18, 67:23, 71:15,
72:3, 79:25, 91:12,
112:11, 112:18, 114:11
  **began** [1] - 63:9
  **begin** [1] - 71:11
  **beginning** [1] - 34:25
  **behalf** [8] - 20:15,
36:15, 38:9, 42:7, 59:14,
77:9, 92:12, 104:23
  **behavior** [1] - 65:22
  **belief** [2] - 68:13,
109:15
  **believe** [21] - 11:2, 16:9,
18:7, 18:21, 23:21,
28:15, 32:16, 34:7, 39:2,
40:19, 46:13, 71:7, 87:3,
89:24, 91:11, 93:13,
96:22, 99:23, 100:3,
100:5, 109:9
  **believed** [2] - 72:11,
94:14
  **believes** [1] - 86:12
  **belongs** [1] - 13:18
  **below** [1] - 67:9
  **best** [2] - 54:4, 87:5
  **better** [4] - 22:16, 34:17,
68:15, 68:18
  **between** [8] - 3:6,
13:21, 15:16, 16:22,
19:9, 25:25, 26:18, 56:21
  **billion** [5] - 9:3, 9:5, 9:9,

9:16, 9:18
  **bit** [1] - 90:3
  **blood** [1] - 114:16
  **both** [3] - 7:4, 25:11,
80:19
  **box** [1] - 33:21
  **break** [1] - 56:17
  **briefly** [2] - 5:5, 7:24
  **bring** [8] - 22:24, 25:13,
25:15, 62:7, 62:11,
86:13, 87:7, 89:6
  **Brooklyn** [1] - 2:6
  **brought** [3] - 44:15,
44:22, 89:10
  **bunch** [1] - 27:5
  **business** [3] - 62:13,
67:20, 108:18
  **buying** [2] - 31:21, 70:5
  **BY** [5] - 2:6, 2:11, 2:16,
4:6, 113:20

## C

  **call** [8] - 83:3, 83:5,
83:9, 83:12, 90:9,
106:21, 106:23
  **called** [2] - 4:2, 18:7
  **calling** [1] - 83:10
  **calls** [3] - 38:12, 39:7,
42:15
  **came** [8] - 29:10, 31:19,
33:21, 33:23, 35:13,
35:21, 36:4, 99:12
  **can you** [11] - 7:24,
10:3, 12:23, 14:12,
32:16, 55:2, 61:10,
64:10, 84:7, 93:24, 105:4
  **can't** [3] - 88:23, 89:3,
107:25
  **Canella** [1] - 27:19
  **capable** [1] - 71:8
  **capacity** [1] - 22:14
  **card** [8] - 10:16, 47:25,
48:2, 48:6, 48:8, 48:16,
48:17, 70:8
  **care** [2] - 109:10,
109:16
  **Case** [1] - 1:5
  **case** [12] - 4:21, 56:13,
64:3, 66:13, 91:15,
93:16, 100:10, 104:15,
104:25, 109:18, 110:7
  **cash** [3] - 19:20, 33:20,
33:21
  **casinos** [1] - 8:13
  **cause** [1] - 88:22
  **causes** [1] - 89:17
  **cease** [5] - 32:14, 32:19,
32:24, 33:5, 59:2
  **ceased** [1] - 58:23

  **cents** [1] - 23:14
  **certain** [1] - 89:17
  **certification** [6] - 3:8,
63:13, 64:2, 71:3, 74:16,
78:5
  **certify** [3] - 112:4,
114:9, 114:14
  **CERTIFY** [1] - 112:8
  **CFO** [4] - 100:24,
101:17, 101:18, 103:18
  **chance** [4] - 66:14,
76:4, 76:8, 76:18
  **change** [4] - 103:2,
103:3, 103:22, 110:20
  **changed** [1] - 35:5
  **charge** [3] - 49:21,
49:22, 68:21
  **charge-off** [2] - 49:21,
49:22
  **charged** [2] - 14:16,
23:5
  **chart** [1] - 80:21
  **checks** [1] - 33:22
  **chief** [2] - 19:22, 19:25
  **Chin** [7] - 64:4, 67:21,
70:20, 72:2, 73:17,
77:22, 113:11
  **Chin's** [1] - 77:16
  **choice** [2] - 62:6, 97:2
  **circumstances** [4] -
53:6, 89:20, 89:24, 90:17
  **Civil** [1] - 1:19
  **claim** [1] - 108:5
  **claimed** [4] - 67:2, 79:2,
79:14, 93:17
  **claiming** [1] - 93:4
  **claims** [7] - 21:18,
81:20, 104:9, 104:15,
105:15, 106:13, 107:9
  **class** [9] - 61:4, 63:13,
64:2, 67:13, 71:2, 74:15,
78:4, 81:11, 92:5
  **clear** [1] - 21:5
  **clearly** [1] - 76:13
  **clerk** [1] - 83:22
  **CLERK** [2] - 84:7, 84:10
  **client** [4] - 38:23, 38:25,
39:5, 104:4
  **clients** [1] - 108:17
  **close** [4] - 85:13, 99:25,
100:7, 100:8
  **closed** [2] - 33:21,
59:19
  **closer** [1] - 100:18
  **clutter** [1] - 12:9
  **co** [3] - 15:8, 22:21,
29:12
  **co-investor** [2] - 15:8,
22:21
  **co-investors** [1] - 29:12

  **collect** [11] - 32:11,
58:18, 59:13, 60:7, 61:8,
61:17, 62:23, 67:21,
92:12, 92:16, 94:9
  **collecting** [5] - 20:15,
21:21, 32:14, 55:13,
60:10
  **collection** [27] - 13:5,
22:20, 29:11, 29:21,
29:22, 31:16, 33:12,
33:13, 34:3, 38:3, 38:18,
54:20, 59:4, 60:19, 62:2,
62:11, 62:22, 63:7,
68:21, 69:15, 70:19,
71:11, 71:13, 71:14,
71:23, 94:16
  **Collection** [4] - 20:13,
21:19, 109:7, 113:9
  **collections** [6] - 29:9,
29:13, 31:18, 33:9,
50:16, 50:20
  **collector** [4] - 72:13,
72:21, 85:4, 85:11
  **coming** [2] - 60:12,
63:5, 94:25
  **commercial** [1] - 8:10
  **common** [1] - 67:12
  **communicate** [1] -
86:21
  **communication** [3] -
107:14, 110:10, 110:14
  **communications** [5] -
81:10, 81:18, 91:25,
108:16, 109:2
  **companies** [2] - 16:3,
19:9
  **company** [13] - 8:3,
8:10, 8:11, 9:21, 9:22,
11:18, 15:4, 18:12,
18:24, 19:22, 20:3,
65:12, 66:2
  **compensation** [1] -
24:23
  **competent** [1] - 69:11
  **complaint** [4] - 7:9,
20:11, 50:16, 113:9
  **Complaint** [5] - 53:13,
75:20, 75:21, 105:16,
109:11
  **complaints** [2] - 20:6,
21:8
  **complete** [1] - 73:12
  **compliance** [3] - 19:23,
20:2, 20:5
  **complying** [1] - 55:12
  **component** [1] - 22:20
  **compound** [2] - 42:16,
45:12
  **compounded** [1] -
54:24

**computer** [4] - 61:2, 66:24, 68:14, 97:18

**concern** [1] - 69:14

**concerned** [1] - 95:6

**concluded** [1] - 111:8

**conclusion** [3] - 38:13, 39:8, 60:12

**conduct** [1] - 67:10

**confidential** [2] - 11:22, 12:5

**connection** [2] - 81:11, 91:21

**consequences** [1] - 90:20

**consider** [4] - 22:25, 44:23, 98:17, 98:21

**consideration** [1] - 25:14

**considered** [1] - 45:24

**consumer** [14] - 10:18, 10:23, 11:6, 14:16, 15:5, 16:4, 18:12, 23:5, 26:2, 26:11, 30:18, 48:2, 60:7, 66:21

**contact** [1] - 56:21

**contends** [1] - 77:6

**context** [1] - 88:20

**continue** [14] - 32:7, 32:25, 60:10, 62:12, 67:19, 67:20, 68:3, 68:15, 73:11, 85:10, 94:8, 95:14, 98:18, 98:23

**continued** [9] - 32:11, 58:17, 59:21, 60:14, 92:11, 92:16, 95:5, 97:5, 99:2

**continuing** [1] - 97:8

**contract** [1] - 40:19

**contracts** [8] - 43:11, 43:14, 45:9, 46:8, 47:7, 47:10, 48:23, 49:3

**control** [2] - 38:8, 69:17

**conversation** [1] - 5:17

**conversations** [1] - 110:23

**cooperation** [1] - 69:4

**copies** [2] - 45:14, 46:3

**copy** [6] - 3:14, 3:17, 50:15, 50:20, 75:15, 75:25

**corporate** [22] - 27:15, 27:17, 27:18, 34:10, 53:20, 56:6, 57:8, 71:18, 97:14, 101:22, 101:25, 102:7, 102:18, 102:20, 103:2, 103:20, 103:23, 104:8, 104:13, 104:18, 105:14, 107:6

**corporation** [1] - 57:5

**Corporation** [3] - 4:23,

8:2, 19:21

**correct** [68] - 10:20, 16:18, 16:19, 16:23, 16:24, 18:5, 18:17, 19:17, 23:2, 23:6, 26:8, 27:8, 28:25, 29:24, 30:3, 30:19, 30:22, 31:12, 31:16, 35:14, 36:18, 38:21, 38:25, 39:2, 39:5, 42:22, 44:3, 47:2, 47:5, 53:22, 57:7, 57:23, 58:5, 58:15, 58:20, 58:22, 59:24, 61:9, 61:18, 63:11, 63:14, 69:19, 71:20, 71:21, 75:23, 76:25, 77:2, 78:9, 78:16, 85:17, 92:8, 92:9, 92:13, 92:14, 92:18, 92:21, 93:12, 93:20, 95:24, 96:3, 104:10, 104:16, 105:2, 105:17, 105:18, 110:24, 110:25, 112:9

**corrected** [2] - 64:22, 64:23

**correctly** [5] - 22:23, 51:7, 66:17, 67:16, 96:10

**Counsel** [24] - 5:23, 5:24, 81:11, 82:7, 82:13, 83:20, 84:21, 86:7, 87:21, 88:2, 91:19, 91:21, 92:2, 98:3, 98:9, 98:11, 98:13, 99:14, 107:14, 108:13, 110:11, 110:15, 110:23, 113:16

**counsel** [12] - 3:6, 3:17, 45:21, 45:24, 45:25, 46:4, 82:21, 91:8, 100:24, 101:8, 101:9, 101:13

**COUNTY** [1] - 114:5

**course** [2] - 5:14, 67:9

**COURT** [9] - 1:2, 84:16, 84:22, 85:15, 85:18, 85:21, 86:9, 88:3, 90:13

**court** [7] - 5:17, 67:23, 72:3, 83:21, 88:11, 89:10, 89:14

**Court** [11] - 1:18, 2:5, 3:13, 66:7, 66:19, 84:2, 86:14, 86:21, 87:23, 88:21, 90:10

**credit** [16] - 10:16, 10:18, 11:6, 15:17, 15:18, 26:2, 26:11, 30:19, 48:2, 48:6, 48:8, 48:17, 58:4, 60:5, 70:7, 74:17

**CREDIT** [3] - 1:7, 1:16, 2:10

**Credit** [240] - 11:12,

12:21, 13:3, 14:18, 14:19, 15:13, 15:16, 15:22, 16:5, 16:19, 16:21, 16:22, 17:18, 17:19, 17:20, 18:6, 18:11, 18:14, 18:15, 18:18, 18:23, 19:7, 20:16, 21:22, 22:22, 22:25, 23:9, 24:4, 24:6, 24:11, 24:16, 25:21, 26:15, 26:18, 26:19, 26:20, 26:21, 26:22, 26:23, 26:24, 26:25, 27:2, 27:9, 28:2, 28:5, 28:10, 28:14, 28:15, 28:19, 28:23, 29:5, 29:6, 29:14, 29:19, 30:2, 31:23, 33:25, 35:13, 35:14, 35:20, 35:23, 36:3, 36:4, 36:6, 36:9, 36:16, 36:25, 37:19, 38:4, 38:7, 38:10, 38:17, 38:19, 38:22, 39:17, 39:21, 39:22, 40:4, 40:16, 41:2, 41:4, 41:22, 42:7, 42:20, 43:4, 43:5, 43:13, 43:20, 44:3, 44:18, 44:25, 45:7, 45:14, 45:23, 46:5, 46:6, 46:11, 46:16, 46:18, 46:20, 46:24, 47:8, 47:9, 47:22, 47:24, 48:14, 49:21, 50:16, 50:21, 51:22, 52:20, 53:2, 53:10, 53:21, 54:2, 54:3, 54:8, 54:11, 54:12, 54:16, 54:17, 55:3, 55:9, 55:11, 55:17, 56:10, 56:12, 56:14, 56:22, 56:23, 56:24, 57:3, 57:10, 57:17, 57:19, 57:20, 57:22, 57:25, 58:7, 58:16, 58:25, 59:2, 59:12, 59:20, 59:25, 60:9, 60:17, 61:7, 61:15, 61:19, 62:24, 67:19, 69:23, 69:24, 71:12, 71:19, 71:22, 73:6, 73:7, 74:17, 77:10, 78:7, 79:10, 80:7, 80:10, 80:25, 81:19, 81:25, 82:2, 82:7, 83:20, 85:2, 85:3, 91:14, 91:20, 92:7, 92:11, 92:13, 92:15, 93:2, 93:8, 94:6, 94:8, 95:4, 95:6, 95:14, 95:22, 96:13, 96:15, 97:9, 97:13, 97:14, 97:20, 97:21, 98:5, 98:17, 98:20, 100:22, 101:19, 101:23, 102:6, 102:19,

102:20, 102:23, 103:3, 103:6, 103:16, 103:24, 104:24, 105:24, 106:4, 106:12, 109:5, 113:8

**Credit's** [1] - 107:8

**creditor** [2] - 45:3, 48:16

## D

**damages** [1] - 109:17

**data** [17] - 40:7, 40:14, 40:20, 41:10, 49:7, 49:11, 49:22, 69:2, 69:3, 71:9, 80:18, 80:19, 80:21, 94:19, 94:20, 94:22, 97:18

**database** [13] - 60:24, 73:4, 77:4, 77:7, 78:23, 79:9, 79:12, 81:21, 81:22, 85:7, 93:5, 94:23, 96:6

**DATE** [1] - 1:12

**date** [14] - 12:19, 33:9, 49:7, 49:11, 49:21, 49:23, 50:7, 52:14, 59:5, 63:20, 68:6, 74:12, 75:7, 105:9

**David** [1] - 17:9

**DAVID** [1] - 1:7

**day** [7] - 94:25, 95:20, 96:24, 112:19, 114:20

**day-to-day** [2] - 95:20, 96:24

**days** [1] - 3:16

**deal** [1] - 72:17

**dealership** [1] - 8:11

**dealt** [1] - 31:20

**debt** [22] - 4:20, 14:17, 15:5, 16:5, 18:13, 39:22, 40:17, 40:25, 41:15, 52:22, 54:2, 54:11, 60:7, 60:19, 66:21, 70:18, 71:13, 72:13, 72:21, 85:4, 85:11, 92:17

**Debt** [3] - 20:13, 21:19, 109:7

**debtor** [4] - 4:20, 33:24, 60:13, 69:17

**debtors** [1] - 41:14

**debts** [30] - 9:23, 10:9, 10:16, 10:18, 10:23, 11:13, 20:14, 21:21, 23:5, 26:11, 30:21, 40:4, 41:5, 43:19, 44:3, 44:9, 44:18, 44:24, 46:20, 48:2, 49:10, 49:23, 55:14, 58:18, 59:14, 62:23, 67:21, 68:17, 92:12, 94:9

decide [2] - 15:6, 86:16
decision [7] - 25:17, 97:2, 99:23, 100:11, 100:20, 100:21, 101:7
Declaration [2] - 75:10, 113:13
declaration [8] - 77:3, 79:11, 80:7, 80:12, 91:9, 91:19, 92:4, 93:3
declarations [1] - 77:15
dedicated [1] - 20:7
deemed [1] - 89:18
default [3] - 44:10, 66:20, 67:10
defaulted [8] - 9:22, 10:8, 10:16, 10:18, 10:23, 30:18, 51:2, 51:17
defaults [1] - 77:9
defendant [1] - 98:6
Defendant [8] - 1:16, 2:9, 2:14, 66:19, 67:6, 93:15, 93:16, 98:10
Defendants [5] - 36:22, 51:2, 51:17, 67:9, 78:18
DEFENDANTS [1] - 1:10
defense [7] - 104:9, 106:11, 106:13, 106:19, 107:9, 108:4, 110:19
defenses [7] - 104:15, 104:25, 105:15, 108:14, 108:25, 109:23, 110:3
definition [1] - 54:14
definitions [1] - 94:22
delay [1] - 94:24
department [2] - 19:24, 35:10
depending [1] - 103:16
depends [1] - 103:13
deposed [2] - 22:9, 22:15
deposition [22] - 3:8, 3:9, 3:14, 4:17, 5:2, 5:15, 5:22, 6:4, 6:13, 6:17, 6:23, 12:4, 65:14, 66:4, 84:18, 86:15, 87:16, 88:8, 88:19, 90:10, 105:12, 106:25
depository [1] - 45:17
describe [4] - 31:22, 31:25, 32:12, 34:8
DESCRIPTION [1] - 113:7
designate [2] - 11:21, 12:2
designating [1] - 12:3
destruction [1] - 47:15
detail [2] - 49:6, 60:8
details [2] - 35:9, 37:22
determine [11] - 20:10,

43:5, 54:18, 55:4, 74:18, 74:21, 80:11, 82:2, 82:18, 92:3, 97:22
determines [1] - 89:11
diagram [2] - 16:14, 16:16
did it [5] - 21:3, 21:6, 27:12, 27:15, 33:5
did they [4] - 57:24, 61:22, 74:20, 98:20
did you [14] - 5:21, 6:3, 6:12, 7:6, 21:6, 28:18, 29:3, 62:15, 68:3, 75:17, 82:4, 82:17, 85:9, 98:25
different [12] - 11:14, 18:25, 34:12, 34:23, 35:24, 59:10, 62:2, 80:9, 84:5, 94:22, 101:23, 102:10
difficult [1] - 86:15
direct [5] - 85:23, 86:2, 87:19, 90:15, 90:18
directed [1] - 87:13
direction [2] - 82:6, 85:16
directly [3] - 18:3, 20:9, 58:2
directs [1] - 86:9
discovery [1] - 7:11
discussed [3] - 67:8, 99:23, 101:6
discussing [1] - 45:19
discussion [1] - 84:15
disposes [1] - 8:4
dispute [1] - 84:4
disrespectful [1] - 65:21
distribution [2] - 22:21, 22:22
distributions [1] - 30:7
DISTRICT [2] - 1:2, 1:2
do they [1] - 48:7
do you [50] - 4:22, 8:21, 9:7, 11:13, 13:23, 16:10, 19:25, 22:2, 23:8, 23:12, 23:15, 24:6, 26:9, 31:2, 34:13, 34:18, 36:5, 41:4, 41:7, 42:9, 43:3, 43:11, 43:13, 43:18, 47:6, 47:9, 47:14, 48:12, 49:9, 49:21, 50:14, 56:20, 59:7, 59:11, 62:9, 68:24, 75:14, 76:6, 78:14, 90:24, 98:12, 101:12, 101:17, 103:6, 103:8, 109:9, 109:14, 109:25, 110:13, 110:15
doc [1] - 12:22
docket [1] - 106:3
doctrines [4] - 106:14,

107:10, 108:5, 108:6
document [19] - 12:24, 13:16, 39:17, 46:25, 50:5, 50:14, 51:14, 52:12, 52:16, 63:18, 64:17, 74:10, 75:5, 75:12, 76:2, 76:19, 79:23, 79:25, 105:7
Document [1] - 113:10
documentation [1] - 70:12
documented [1] - 80:8
Documents [1] - 113:8
documents [14] - 7:6, 7:13, 12:17, 40:11, 40:22, 45:8, 45:18, 46:11, 46:15, 46:19, 47:16, 70:4, 70:7, 78:4
DOCUMENTS [2] - 113:23, 113:24
Dodd [1] - 20:4
doesn't [5] - 55:25, 56:16, 98:7, 98:9, 104:3
dollar [5] - 23:14, 32:15, 32:20, 33:2, 33:15
dollars [11] - 9:4, 9:5, 9:16, 10:14, 14:16, 30:17, 31:4, 31:9, 31:10, 31:14, 32:6
door [1] - 63:6
doors [1] - 59:19
down [6] - 11:3, 16:5, 50:25, 76:21, 78:10, 78:13
downstream [2] - 17:17, 18:2
Drive [1] - 4:12
duly [3] - 4:3, 112:5, 114:11
duties [2] - 21:16, 21:17

# E

earlier [2] - 61:23, 68:12
early [1] - 34:25
easily [1] - 69:14
effect [2] - 3:12, 3:15
efficiently [1] - 67:13
effort [1] - 90:6
Egleson [17] - 75:10, 80:16, 81:2, 81:20, 82:3, 91:9, 91:18, 92:4, 93:3, 94:10, 95:4, 95:13, 95:22, 96:15, 97:22, 98:20, 99:3
egleson [1] - 97:17
Egleson's [1] - 78:23
egleson's [1] - 94:3
eight [14] - 7:23, 10:13, 10:21, 11:6, 14:6, 14:14,

19:16, 27:13, 30:11, 30:17, 31:11, 31:17, 32:6, 32:8
eight-and-a-half [1] - 7:23
eight-year [9] - 10:13, 10:21, 11:6, 14:6, 14:14, 27:13, 30:11, 30:17, 32:8
Einstein [5] - 61:8, 61:16, 61:21, 62:23, 70:19
eleven [2] - 31:18, 109:25
Ellis [1] - 84:17
else's [1] - 94:21
employee [3] - 24:17, 24:21, 66:25
employees [5] - 16:6, 27:10, 27:12, 57:2, 80:20
employment [1] - 25:8
en [1] - 66:23
end [3] - 100:4, 100:7, 100:13
enough [3] - 19:6, 43:25, 49:19
entered [2] - 36:24, 37:18
entire [1] - 13:16
entities [32] - 15:21, 16:7, 16:14, 18:15, 18:19, 18:24, 19:8, 24:4, 33:25, 36:16, 36:25, 37:19, 38:5, 38:8, 38:10, 38:17, 38:20, 38:23, 42:8, 43:13, 43:20, 55:10, 55:18, 61:7, 61:15, 62:24, 77:10, 91:20, 101:24, 102:3, 102:19
entities' [1] - 82:7
entitled [2] - 30:9, 75:9
entity [7] - 16:18, 24:6, 54:17, 91:14, 98:10, 103:14, 103:17
entry [1] - 106:3
equity [1] - 30:7
ESQ [3] - 2:11, 2:16, 2:17
essentially [1] - 34:2
established [6] - 16:4, 17:17, 55:20, 67:23, 79:24, 91:11
establishes [2] - 66:19, 72:3
estoppel [4] - 106:14, 107:11, 108:6, 108:15
evaluate [2] - 25:12, 68:11
every [1] - 94:25
everybody [1] - 90:14

everything [1] - 90:5
evidence [14] - 39:20, 40:16, 41:13, 41:18, 42:10, 42:15, 51:23, 52:21, 53:3, 53:11, 53:25, 54:9, 67:23, 92:3
exact [1] - 59:5
exactly [2] - 13:20, 75:22
Examination [1] - 111:7
EXAMINATION [3] - 1:15, 4:6, 113:20
examination [2] - 114:10, 114:12
examine [1] - 88:21
examined [1] - 4:5
example [1] - 93:15
except [1] - 3:21
excuse [1] - 14:19, 81:8
execution [3] - 72:12, 94:15, 94:18
exercise [3] - 80:4, 109:10, 109:16
EXHIBIT [2] - 113:6
Exhibit [4] - 39:15, 50:13, 52:15, 78:5
Exhibit 1 [3] - 12:15, 13:22, 49:5
Exhibit 2 [5] - 12:21, 13:8, 13:12, 13:13, 14:6
Exhibit 3 [3] - 50:6, 51:12, 52:6
Exhibit 4 [2] - 52:10, 52:13
Exhibit 5 [5] - 63:16, 63:19, 63:24, 66:14, 74:16
Exhibit 6 [5] - 74:8, 74:11, 105:19, 105:21, 106:3
Exhibit 7 [7] - 75:3, 75:6, 75:9, 76:5, 76:9, 76:16, 96:5
Exhibit 8 [2] - 105:8, 105:11
Exhibit B [1] - 13:8
EXHIBITS [1] - 113:4
Exhibits [2] - 12:18, 113:16
expectation [2] - 69:7, 69:10
experts [1] - 69:6
explain [2] - 86:21, 88:10
explore [1] - 90:7
extent [3] - 35:17, 107:12, 110:8
extra [2] - 75:15, 75:25

## F

FABACHER [1] - 1:8
face [1] - 23:8
fact [5] - 50:20, 54:10, 67:12, 92:15, 103:22
facts [9] - 41:17, 42:14, 53:5, 53:13, 67:4, 67:24, 82:3, 82:17, 85:8
factual [7] - 91:17, 108:3, 108:7, 109:14, 110:2, 110:9, 110:21
Fair [3] - 20:13, 21:19, 109:7
fair [3] - 19:6, 43:25, 49:19
false [7] - 70:21, 70:22, 73:8, 74:19, 78:20, 85:5
familiar [2] - 17:12, 53:4
FDCPA [4] - 54:19, 55:6, 55:13, 55:21
Federal [1] - 1:18
fee [6] - 22:20, 62:8, 62:13, 62:18, 62:23, 68:21
fees [2] - 51:5, 51:20, 51:25
field [2] - 49:11, 49:22
fields [3] - 49:8, 94:20, 94:22
figure [1] - 86:18
file [4] - 40:20, 41:10, 54:20, 59:3
filed [6] - 38:3, 38:19, 42:6, 50:21, 78:4, 78:20
files [3] - 60:8, 61:20, 70:17
filing [1] - 3:7
final [1] - 101:7
financial [3] - 8:8, 62:3, 70:16
financing [2] - 28:19, 28:21
find [2] - 17:15, 87:6
findings [2] - 70:21, 85:5
finds [1] - 44:2
fine [3] - 12:11, 56:8, 98:16
finish [2] - 65:17, 108:2
fire [1] - 60:18
firm [7] - 60:20, 61:2, 66:25, 70:19, 71:14, 85:11, 95:9
Firm [1] - 61:8
first [7] - 4:3, 23:22, 44:13, 64:7, 68:8, 86:24, 112:5
First [2] - 52:4, 52:23
fits [1] - 17:15

five [6] - 9:9, 9:18, 23:14, 78:14, 100:2, 109:24
five-year [1] - 100:2
Floor [1] - 1:21
follows [1] - 4:5
force [1] - 3:15
foregoing [1] - 112:8
form [64] - 3:21, 8:25, 9:24, 10:10, 11:15, 14:8, 14:22, 15:25, 17:4, 18:9, 19:2, 19:11, 20:17, 20:23, 21:23, 22:7, 23:17, 23:25, 26:4, 26:12, 32:9, 33:3, 33:18, 34:5, 34:14, 35:16, 37:13, 38:11, 39:6, 40:8, 41:16, 42:11, 42:23, 43:7, 43:21, 44:11, 45:4, 45:11, 47:3, 47:11, 48:3, 48:18, 48:24, 54:22, 55:15, 57:11, 59:16, 60:21, 65:19, 67:25, 70:24, 71:24, 77:16, 79:5, 79:16, 80:14, 93:21, 94:12, 95:25, 96:17, 99:5, 102:14, 103:9, 104:17
forth [1] - 114:11
foundation [3] - 10:11, 41:24, 96:18
four [3] - 9:16, 78:14, 109:24
Frank [1] - 20:4
fraudulent [1] - 67:11
free [1] - 111:3
Freehills [1] - 1:20
FREEHILLS [1] - 2:9
frivolous [1] - 91:6
front [3] - 79:23, 80:2, 88:13
full [2] - 56:2, 64:7
fully [4] - 27:6, 53:3, 56:25, 67:9
function [1] - 19:21
fund [2] - 26:11, 26:14
funded [1] - 26:15
funding [4] - 34:2, 35:13, 35:19, 35:21
FURTHER [2] - 3:20, 112:8
further [1] - 114:14

## G

gather [1] - 85:15
gave [1] - 112:6
general [6] - 13:2, 100:24, 101:8, 101:9, 101:13, 102:3

generally [21] - 8:6, 14:13, 14:24, 40:3, 40:6, 40:13, 42:5, 42:8, 43:14, 43:18, 44:8, 45:2, 47:24, 48:7, 102:5, 102:6, 102:13, 102:17, 102:22, 103:21, 103:23
generate [1] - 32:7
generated [4] - 30:13, 31:14, 34:3, 66:23
gentleman [1] - 23:20
give [3] - 87:5, 88:23, 106:17
given [8] - 41:10, 41:14, 41:21, 42:4, 50:8, 62:7, 112:10, 114:13
good [2] - 4:14, 4:15
got [7] - 31:3, 36:14, 77:22, 85:8, 90:6, 90:7, 97:21
govern [1] - 14:4
granted [2] - 64:8, 66:18
granting [1] - 64:2
great [1] - 42:17
guess [3] - 60:16, 63:8, 87:24
guys [1] - 109:19
GUZMAN [2] - 1:3, 2:5
Guzman [16] - 39:13, 39:21, 40:17, 41:2, 50:14, 50:17, 50:22, 51:23, 52:4, 52:17, 52:22, 54:2, 54:11, 63:25, 109:9, 109:15
guzman's [3] - 46:10, 78:19, 93:16

## H

half [1] - 7:23
hampered [1] - 90:3
hand [1] - 114:20
happen [1] - 89:7
happened [3] - 33:14, 33:17, 59:6
happening [1] - 64:13
happens [1] - 86:25
hard [2] - 107:17, 108:2
Harris [59] - 17:2, 17:9, 20:14, 21:20, 29:11, 29:23, 36:14, 36:20, 38:2, 38:9, 38:16, 38:18, 38:24, 41:11, 41:14, 41:20, 41:21, 42:6, 45:22, 48:15, 54:18, 54:20, 55:5, 55:6, 55:12, 56:22, 58:17, 58:23, 59:2, 59:13, 59:21, 60:3, 60:18, 60:23, 61:16,

61:21, 62:6, 62:21, 63:3, 67:20, 68:22, 70:15, 70:18, 85:3, 85:10, 92:11, 92:16, 94:9, 94:23, 95:5, 95:9, 95:15, 95:20, 96:8, 96:13, 96:25, 97:8, 98:19, 100:6

**HARRIS** [2] - 1:7, 1:7

**Harris'** [1] - 97:18

**Harris's** [1] - 61:3

**have you** [6] - 4:16, 55:19, 66:13, 76:4, 76:8, 76:18

**he's** [11] - 35:25, 47:19, 56:3, 56:5, 64:24, 65:2, 90:6, 90:7, 104:18, 108:23, 109:17

**head** [1] - 5:15

**hear** [2] - 78:2, 84:17

**held** [5] - 1:19, 18:3, 18:4, 46:16, 84:15

**HERBERT** [1] - 2:9

**Herbert** [1] - 1:20

**hereby** [2] - 112:4, 114:9

**HEREBY** [1] - 3:5

**herein** [3] - 3:7, 112:11, 114:11

**hereunto** [1] - 114:19

**hierarchy** [2] - 16:18, 17:14

**higher** [3] - 62:20, 63:2, 68:21

**hired** [2] - 69:7, 69:9

**hiring** [1] - 55:6

**hold** [1] - 84:7

**holding** [5] - 8:3, 9:21, 9:22, 18:24

**Honor** [1] - 90:12

**hopelessly** [1] - 54:23

**hotels** [2] - 8:13, 10:6

**hour** [2] - 66:10, 107:20

**hours** [4] - 6:18, 65:12, 66:3, 107:21

**house** [2] - 6:7, 6:8

**how did** [1] - 28:9

**how do** [2] - 72:23, 88:12

**how many** [4] - 8:16, 8:18, 23:23, 36:8

**huh** [1] - 5:16

**hundreds** [1] - 67:5

## I

**I'd** [1] - 83:21

**idea** [13] - 8:18, 10:6, 26:9, 37:24, 41:3, 41:7, 41:9, 42:18, 53:9, 79:8, 97:4, 109:12, 109:19

**identification** [7] - 12:18, 50:6, 52:13, 63:19, 74:11, 75:6, 105:8

**identify** [2] - 12:23, 76:12

**idiotic** [1] - 106:24

**important** [2] - 60:13, 73:3

**improper** [1] - 87:4

**improperly** [3] - 86:13, 87:9, 88:14

**IN** [1] - 114:19

**in-house** [2] - 6:7, 6:8

**inability** [1] - 64:24

**inappropriate** [2] - 87:7, 89:16

**inappropriately** [1] - 86:24

**INC** [2] - 1:8, 2:14

**include** [4] - 20:12, 21:2, 21:3, 21:6

**included** [1] - 46:9

**includes** [2] - 13:4, 49:11

**including** [1] - 13:4

**income** [6] - 8:22, 9:8, 9:10, 9:13, 32:7, 32:12

**increased** [1] - 35:6

**incurred** [2] - 51:4, 51:19

**indicated** [1] - 7:16

**indicates** [1] - 105:13

**indicating** [1] - 89:15

**indicating)** [1] - 77:24

**indirectly** [4] - 18:4, 18:5, 58:3, 58:14

**individual** [1] - 24:25

**individuals** [2] - 17:19, 17:21

**INFORMATION** [2] - 113:23, 113:24

**information** [11] - 41:20, 42:21, 43:6, 43:16, 47:21, 68:14, 69:21, 69:22, 69:25, 70:3, 97:16

**infrastructure** [1] - 60:24

**input** [1] - 77:22

**install** [1] - 71:10

**instances** [2] - 25:13, 79:2

**instruct** [2] - 96:13, 104:4

**instructed** [10] - 81:13, 82:9, 82:12, 82:21, 82:24, 83:7, 107:15, 108:13, 108:18, 110:11

**instructing** [1] - 83:4

**instruction** [6] - 82:16,

84:6, 91:2, 91:23, 108:8, 108:12

**instructions** [1] - 82:9

**intended** [1] - 91:24

**interest** [5] - 17:18, 17:20, 24:10, 57:10, 57:25

**interested** [1] - 114:17

**intermediaries** [1] - 27:6

**intermediary** [1] - 25:24

**interpret** [2] - 79:18, 80:18

**interview** [1] - 80:16

**introduce** [1] - 62:4

**invest** [9] - 10:22, 11:5, 15:7, 15:10, 15:11, 15:13, 15:14, 16:4, 25:18

**invested** [3] - 10:13, 14:15, 32:5

**investigation** [1] - 20:10

**investing** [1] - 22:25

**investment** [28] - 8:3, 9:21, 10:8, 11:11, 11:12, 14:5, 15:7, 15:23, 24:16, 29:7, 29:9, 30:8, 30:12, 30:17, 30:24, 31:15, 32:8, 32:15, 32:20, 33:2, 33:14, 33:16, 35:2, 35:7, 35:18, 36:3, 60:6

**investments** [10] - 8:5, 8:7, 8:8, 8:10, 8:12, 10:5, 25:12, 25:13, 31:4, 35:19

**investor** [4] - 11:18, 15:4, 15:8, 22:21

**investors** [5] - 29:12, 29:20, 29:25, 57:17, 57:19

**involve** [1] - 21:17

**involved** [6] - 22:5, 22:10, 25:21, 36:20, 40:23, 40:24

**involvement** [2] - 21:18, 28:18

**IS** [2] - 3:5, 3:20

**is it your** [1] - 13:6

**is that** [53] - 7:17, 10:18, 11:12, 12:9, 14:3, 14:6, 16:23, 17:3, 17:10, 17:25, 18:8, 18:14, 18:20, 23:5, 24:11, 25:19, 26:23, 28:7, 28:24, 35:8, 35:21, 36:18, 37:20, 38:5, 38:10, 39:20, 40:7, 40:14, 44:21, 46:11, 58:19, 58:21, 59:22, 61:9, 61:17, 69:25, 72:15, 73:9, 76:25,

77:10, 79:4, 79:15, 86:25, 87:14, 93:19, 95:9, 95:23, 97:9, 100:12, 104:25, 105:17, 106:19, 110:6

**is there** [1] - 41:12

**is this** [8] - 80:6, 80:24, 81:18, 84:25, 94:7, 96:4, 103:20, 106:11

**issue** [6] - 48:23, 66:7, 77:23, 84:17, 87:17, 90:8

**issues** [1] - 110:10

**IT** [3] - 3:5, 3:20, 71:8

**item** [3] - 50:25, 96:5, 105:13

**items** [1] - 104:23

## J

**Jacobs** [15] - 17:22, 23:21, 24:9, 24:17, 25:12, 25:16, 25:22, 25:23, 27:3, 30:4, 57:16, 57:18, 58:10, 101:14, 101:15

**January** [7] - 32:21, 33:10, 33:16, 58:19, 96:9, 97:7

**JEFFREY** [1] - 2:16

**Jennifer** [1] - 6:11

**Jersey** [1] - 4:13

**JESSICA** [1] - 2:20

**jobs** [2] - 29:17, 37:17

**JOHN** [1] - 1:8

**joint** [2] - 12:25, 16:21

**jOSE** [1] - 2:5

**JOSE** [1] - 1:3

**Joseph** [2] - 27:19, 101:21

**Judge** [12] - 3:13, 64:4, 67:21, 70:20, 72:2, 73:13, 73:17, 77:16, 77:22, 84:10, 84:16, 113:11

**judge** [2] - 74:18, 83:3, 83:4, 83:5, 83:9, 83:11

**judge's** [2] - 71:2, 72:8

**judgments** [5] - 36:15, 36:23, 66:20, 67:11, 72:6

**July** [11] - 76:24, 79:10, 80:7, 81:2, 81:20, 92:10, 92:25, 93:12, 95:23, 97:6, 99:25

## K

**Kane** [2] - 6:11, 6:16

**keep** [2] - 16:16, 45:8

**kept** [1] - 85:3

**KERRY** [1] - 1:8

**Kerry** [1] - 17:10
**Keshavarz** [1] - 84:21
**KESHAVARZ** [53] - 2:4, 2:6, 4:7, 11:24, 12:11, 12:14, 21:9, 37:12, 50:2, 51:16, 52:9, 55:23, 56:5, 56:14, 58:9, 63:15, 65:15, 65:18, 65:23, 66:6, 66:11, 73:19, 73:25, 74:7, 75:2, 75:16, 75:22, 77:20, 77:24, 81:7, 83:6, 83:9, 83:12, 83:23, 84:8, 84:20, 84:24, 86:6, 87:20, 90:11, 90:22, 90:24, 91:4, 99:16, 105:4, 105:23, 105:25, 106:21, 107:5, 108:20, 110:6, 111:2, 113:21
**know** [106] - 5:3, 8:19, 8:21, 9:7, 9:12, 13:12, 13:23, 13:25, 16:10, 17:6, 17:11, 19:13, 21:12, 22:2, 23:8, 23:12, 23:15, 23:18, 23:19, 24:3, 24:6, 24:7, 24:8, 24:23, 25:7, 26:9, 26:16, 27:24, 30:25, 31:2, 35:9, 35:25, 36:10, 36:19, 37:22, 38:14, 39:9, 39:16, 40:2, 40:12, 40:15, 40:23, 41:4, 41:8, 42:9, 42:25, 43:3, 43:9, 43:11, 43:14, 43:18, 44:14, 47:6, 47:9, 47:14, 47:19, 47:20, 48:4, 48:10, 48:12, 49:9, 49:13, 49:14, 49:21, 50:10, 50:15, 50:18, 52:18, 55:7, 55:25, 56:2, 56:20, 59:5, 59:7, 59:11, 62:19, 65:8, 71:16, 75:12, 75:17, 76:15, 78:17, 79:18, 80:17, 81:6, 81:9, 82:8, 82:16, 88:23, 91:14, 93:2, 93:6, 95:21, 98:23, 99:16, 99:24, 100:9, 100:10, 100:17, 100:18, 102:21, 104:3, 104:6, 106:6, 107:2, 107:13
**knowledge** [37] - 27:14, 37:6, 37:11, 39:24, 39:25, 41:12, 41:19, 42:3, 43:17, 44:14, 45:6, 48:20, 49:2, 49:17, 49:25, 52:2, 52:3, 52:7, 52:24, 53:5, 53:12, 53:19, 54:4, 54:10, 54:14, 56:7, 56:9, 56:10,

56:11, 56:15, 67:3, 95:11, 95:18, 98:8, 101:16, 110:9, 110:14
**knowledgeable** [1] - 69:12

# L

**laches** [4] - 106:14, 107:10, 108:6, 108:15
**large** [1] - 35:12
**larger** [1] - 62:22
**last** [3] - 19:16, 49:7, 49:12
**late** [3] - 65:13, 66:10, 107:22
**later** [1] - 102:10
**latter** [1] - 35:3
**Laura** [1] - 27:21
**law** [7] - 60:19, 66:25, 67:12, 70:19, 71:14, 85:11, 95:9
**LAW** [1] - 2:4
**Law** [1] - 61:8
**lawsuit** [5] - 50:21, 78:8, 78:19, 92:8, 104:10
**lawsuits** [5] - 38:3, 38:18, 54:21, 59:4, 63:9
**lawyer** [4] - 56:3, 71:23, 90:4, 106:17
**LC** [1] - 19:7
**learned** [1] - 94:10
**least** [1] - 97:7
**left** [2] - 24:19, 62:5
**legal** [7] - 13:5, 38:12, 39:7, 46:22, 54:13, 106:18, 109:2
**let's** [5] - 7:15, 80:23, 83:3, 83:12, 83:25
**Let's** [1] - 56:17
**Leucadia** [62] - 4:23, 6:8, 6:9, 7:17, 7:21, 7:22, 7:25, 8:2, 8:17, 8:23, 9:8, 9:20, 10:7, 10:22, 11:5, 14:5, 14:10, 14:15, 14:18, 15:16, 15:20, 17:25, 19:15, 19:21, 20:4, 21:17, 24:18, 24:19, 25:6, 25:10, 25:14, 25:18, 25:25, 26:2, 26:10, 26:14, 27:7, 28:6, 28:12, 30:16, 30:24, 31:3, 32:5, 32:7, 32:13, 32:19, 32:24, 34:4, 35:21, 41:5, 44:25, 45:8, 45:13, 47:9, 54:16, 55:4, 55:11, 58:14, 78:7, 101:10, 101:11, 101:18
**level** [1] - 16:5
**LEVITT** [8] - 2:17,

96:19, 98:22, 99:7, 99:11, 105:21, 105:24, 111:5
**Lexington** [2] - 1:21, 2:10
**liability** [3] - 13:2, 18:12
**liable** [1] - 109:17
**licensed** [1] - 69:6
**LICHTMAN** [21] - 2:16, 12:6, 12:13, 37:2, 63:21, 64:4, 68:5, 71:5, 72:10, 73:15, 74:23, 75:14, 75:17, 76:3, 77:11, 79:7, 81:15, 82:11, 90:23, 93:25, 95:17
**limited** [2] - 13:2, 18:11
**lines** [3] - 18:20, 20:8, 78:14
**list** [2] - 85:7, 102:2
**literally** [1] - 28:22
**litigation** [9] - 22:3, 22:6, 22:15, 38:9, 59:14, 73:2, 91:10, 91:22, 92:6
**little** [1] - 90:3
**living** [1] - 69:5
**LLC** [19] - 1:7, 1:7, 2:10, 13:3, 18:6, 18:16, 26:18, 26:25, 27:9, 28:2, 28:5, 28:10, 30:2, 31:23, 35:13, 45:8, 55:11, 58:7, 102:20
**LLP** [3] - 1:20, 2:9, 2:13
**load** [2] - 69:16, 71:10
**loaded** [1] - 94:20
**loans** [1] - 30:19
**location** [1] - 81:24
**locations** [4] - 67:8, 79:3, 79:13, 80:10
**lock** [1] - 33:21
**long** [5] - 6:15, 6:21, 7:20, 47:6, 47:9
**longer** [2] - 33:9, 33:11
**look** [10] - 13:10, 13:21, 71:13, 71:22, 72:23, 76:12, 80:23, 81:2, 96:5, 98:25
**looked** [2] - 72:22, 80:21
**looking** [2] - 98:18, 105:12
**looks** [1] - 80:20
**lose** [1] - 72:20
**losing** [1] - 69:17
**lost** [1] - 72:17
**louder** [1] - 82:20
**Louis** [4] - 17:22, 25:4, 27:3, 57:16
**lowbrow** [1] - 65:21
**LR** [225] - 1:7, 1:16, 2:10, 11:12, 12:21, 13:3,

14:18, 14:19, 15:9, 15:13, 15:16, 15:17, 15:22, 16:5, 16:19, 16:21, 18:6, 18:11, 18:14, 18:15, 18:18, 18:23, 20:15, 21:22, 22:22, 22:25, 23:9, 24:4, 24:6, 24:10, 25:21, 26:15, 26:18, 26:19, 26:20, 26:22, 26:25, 27:9, 28:2, 28:4, 28:10, 28:14, 28:15, 28:19, 28:23, 29:4, 29:6, 29:14, 29:19, 31:5, 31:23, 33:25, 34:25, 35:13, 35:20, 35:22, 36:4, 36:9, 36:16, 36:24, 37:18, 38:4, 38:7, 38:10, 38:17, 38:19, 38:22, 39:17, 39:21, 40:3, 40:16, 41:2, 41:4, 41:21, 42:7, 42:19, 42:20, 43:4, 43:13, 43:20, 44:3, 44:18, 44:25, 45:7, 45:13, 45:23, 46:4, 46:6, 46:11, 46:16, 46:18, 46:20, 46:24, 47:8, 47:22, 47:24, 48:14, 49:10, 49:21, 50:16, 50:21, 51:22, 52:3, 52:20, 53:2, 53:10, 53:21, 53:25, 54:3, 54:8, 54:11, 54:12, 54:16, 54:17, 55:3, 55:9, 55:10, 55:17, 56:10, 56:12, 56:14, 56:21, 56:23, 57:10, 57:19, 57:25, 58:16, 58:25, 59:12, 59:20, 59:25, 60:5, 60:9, 60:17, 61:6, 61:14, 61:19, 62:24, 67:18, 67:19, 69:23, 69:24, 71:12, 71:19, 71:22, 73:6, 74:16, 74:17, 77:10, 78:7, 79:10, 80:6, 80:10, 80:24, 80:25, 81:19, 81:25, 82:2, 82:6, 83:20, 85:2, 91:14, 91:20, 92:7, 92:10, 92:12, 92:15, 93:2, 93:8, 94:5, 94:8, 95:3, 95:6, 95:14, 95:22, 96:12, 96:14, 97:9, 97:13, 97:14, 97:20, 97:21, 98:5, 98:17, 98:19, 100:22, 101:19, 101:23, 102:5, 102:19, 102:20, 103:2, 103:6, 103:15, 103:16, 103:24, 104:24, 105:3, 105:24, 106:3, 106:12, 107:8, 109:5, 113:8

**Lutz** [1] - 17:10
**LUTZ** [1] - 1:8

## M

**Magistrate** [1] - 73:13
**maintained** [1] - 73:3
**major** [1] - 19:18
**majority** [2] - 35:12, 67:2
**managed** [3] - 17:2, 95:19, 96:24
**Management** [2] - 16:23, 100:22
**management** [2] - 17:12, 19:20
**manner** [3] - 19:10, 59:15, 67:11
**March** [2] - 1:12, 114:20
**mark** [7] - 12:14, 50:2, 52:9, 63:15, 74:7, 75:2, 105:4
**marked** [13] - 12:17, 12:21, 13:13, 50:5, 50:13, 52:12, 63:18, 63:24, 74:10, 75:5, 75:9, 105:7, 105:10
**marking** [2] - 63:22, 75:20
**marriage** [1] - 114:16
**masse** [1] - 66:23
**Matawan** [1] - 4:12
**materials** [1] - 7:10
**matter** [8] - 22:9, 37:5, 60:11, 89:2, 98:7, 98:9, 100:2, 114:18
**matters** [1] - 4:19
**matured** [1] - 35:11
**mean** [25] - 5:18, 5:24, 9:14, 11:13, 19:25, 21:7, 28:21, 34:13, 34:18, 34:21, 36:5, 62:9, 68:24, 69:16, 70:10, 88:23, 94:17, 94:23, 97:11, 98:12, 98:13, 100:7, 101:18, 103:6, 103:8
**meaning** [2] - 46:21, 101:9
**means** [4] - 34:15, 54:15, 79:19, 104:12
**meant** [2] - 70:9, 70:11
**mechanism** [1] - 34:2
**mechanisms** [1] - 15:24
**Mederos** [12] - 17:23, 25:4, 25:5, 25:10, 25:11, 25:17, 25:20, 27:4, 30:4, 57:16, 57:18, 58:10
**meet** [2] - 6:3, 6:12
**meeting** [5] - 6:15, 6:21, 6:24, 7:4, 7:14

**meetings** [1] - 7:2
**mel** [1] - 38:2
**Mel** [60] - 17:2, 17:8, 20:14, 21:20, 29:11, 29:22, 36:14, 36:20, 38:9, 38:16, 38:18, 38:23, 41:11, 41:13, 41:20, 41:21, 42:6, 45:22, 48:15, 54:18, 54:20, 55:5, 55:6, 55:12, 56:22, 58:17, 58:23, 59:2, 59:13, 59:21, 60:2, 60:18, 60:23, 61:3, 61:16, 61:21, 62:5, 62:21, 63:3, 67:20, 68:21, 70:15, 70:17, 85:3, 85:10, 92:11, 92:16, 94:9, 94:23, 95:5, 95:8, 95:15, 95:19, 96:8, 96:13, 96:25, 97:7, 97:18, 98:19, 100:6
**MEL** [2] - 1:7, 1:7
**member** [2] - 47:25, 48:16
**mentioned** [1] - 40:21
**Merit** [1] - 78:21
**merit** [4] - 20:11, 52:16, 70:23, 74:20
**merits** [1] - 66:22
**MICHAEL** [1] - 1:8
**Michael** [1] - 17:9
**middle** [4] - 86:14, 87:15, 88:7, 90:10
**Mike** [1] - 61:25
**million** [13] - 10:14, 11:10, 14:16, 30:16, 31:4, 31:9, 31:14, 32:6, 32:15, 32:20, 32:25, 33:15
**mind** [1] - 100:14
**minute** [1] - 13:9
**minutes** [1] - 107:21
**mischaracterizes** [8] - 24:13, 26:5, 41:24, 57:12, 70:25, 72:8, 97:25, 103:11
**mischaracterizing** [1] - 73:17
**Miss** [1] - 6:16
**missing** [1] - 14:2
**misunderstood** [1] - 70:2
**MLOTOK** [2] - 1:9, 2:14
**monday** [1] - 6:20
**money** [19] - 11:5, 15:10, 22:20, 29:8, 29:11, 29:18, 31:3, 32:11, 32:14, 32:19, 32:25, 52:4, 63:5, 72:15, 72:17, 72:18, 72:20,

94:24, 95:7
**monies** [2] - 33:20, 60:13
**monitor** [1] - 55:12
**MOODY** [1] - 2:20
**mortgage** [1] - 8:11
**motion** [3] - 64:8, 66:18, 91:6
**move** [1] - 37:14
**moving** [1] - 72:12
**Mr** [44] - 6:22, 24:9, 24:17, 25:5, 25:10, 25:11, 25:16, 25:17, 25:20, 25:22, 25:23, 39:13, 39:21, 40:17, 41:2, 46:10, 50:17, 50:22, 51:23, 52:4, 52:22, 53:3, 53:9, 53:12, 54:2, 54:9, 54:11, 78:18, 78:19, 79:2, 80:16, 80:17, 81:20, 90:24, 93:3, 93:15, 93:16, 93:17, 94:3, 97:17, 98:15, 109:9, 109:15
**MR** [215] - 4:7, 8:24, 9:14, 9:24, 10:10, 11:8, 11:15, 11:20, 11:24, 12:3, 12:6, 12:11, 12:12, 12:13, 12:14, 13:9, 13:14, 13:18, 14:8, 14:22, 14:25, 15:25, 16:15, 17:4, 18:9, 19:2, 19:11, 20:17, 20:23, 21:5, 21:9, 21:11, 21:23, 22:7, 23:16, 23:25, 24:12, 26:4, 26:12, 30:14, 32:2, 32:9, 32:23, 33:3, 33:18, 34:5, 34:14, 35:15, 35:22, 36:17, 37:2, 37:3, 37:10, 37:14, 38:11, 39:6, 39:12, 40:8, 41:16, 41:23, 42:11, 42:14, 42:23, 43:7, 43:21, 44:4, 44:11, 45:4, 45:11, 46:21, 47:3, 47:11, 47:17, 48:3, 48:18, 48:24, 50:2, 51:8, 51:13, 51:16, 52:9, 53:14, 54:22, 55:15, 55:19, 55:23, 56:2, 56:5, 56:12, 56:14, 57:11, 58:8, 58:9, 59:16, 60:21, 61:5, 63:21, 64:4, 64:12, 64:16, 64:22, 65:10, 65:15, 65:17, 65:18, 65:20, 65:23, 65:25, 66:6, 66:9, 66:11, 67:25, 68:5, 70:24, 71:5, 71:24, 72:7, 72:10, 73:10, 73:15, 73:19,

73:25, 74:7, 74:23, 74:24, 75:2, 75:14, 75:16, 75:17, 75:19, 75:22, 76:3, 76:6, 76:11, 77:11, 77:12, 77:18, 77:20, 77:21, 77:24, 77:25, 79:5, 79:7, 79:16, 79:21, 80:14, 81:5, 81:7, 81:8, 81:15, 82:5, 82:11, 82:25, 83:6, 83:7, 83:9, 83:10, 83:12, 83:14, 83:19, 83:23, 83:25, 84:8, 84:24, 85:12, 85:17, 87:20, 90:11, 90:22, 90:23, 90:24, 91:3, 91:4, 91:5, 92:19, 93:21, 93:25, 94:2, 94:11, 95:17, 95:25, 96:16, 96:19, 97:11, 97:24, 98:7, 98:22, 99:4, 99:7, 99:11, 99:16, 102:14, 103:9, 103:25, 104:11, 104:17, 105:4, 105:21, 105:23, 105:24, 105:25, 106:16, 106:21, 106:23, 107:5, 107:12, 108:8, 108:11, 108:16, 108:20, 108:22, 110:6, 110:8, 111:2, 111:5
**mR** [5] - 37:12, 84:20, 85:20, 86:6, 113:21
**multiple** [6] - 34:11, 34:22, 41:6, 43:19, 79:13, 80:8
**myself** [1] - 27:22

## N

**name** [8] - 4:8, 23:20, 25:3, 36:24, 37:18, 38:4, 38:19, 101:12
**names** [1] - 17:11
**National** [4] - 4:23, 8:2, 19:21, 20:4
**nature** [2] - 70:8, 91:13
**necessary** [1] - 104:10
**need** [2] - 89:17, 103:16
**needed** [1] - 94:25
**needs** [1] - 20:5
**never** [2] - 72:22, 109:12
**NEW** [1] - 1:2, 114:4
**newer** [1] - 102:9
**next** [1] - 45:16
**Nicholas** [3] - 75:10, 91:9, 91:18
**nine** [1] - 109:25
**NITTOLI** [2] - 1:17, 112:15
**Nittoli** [3] - 4:10, 27:22,

97:12
**nod** [1] - 5:15
**none** [1] - 108:17
**None** [1] - 113:25
**nonsense** [1] - 73:12
**normal** [1] - 5:16
**north** [1] - 9:9
**Notary** [3] - 1:22, 4:4, 114:7
**NOTARY** [1] - 112:22
**note** [2] - 73:15, 81:15
**noted** [1] - 91:19
**notes** [1] - 5:18
**nothing** [1] - 72:16
**Notice** [1] - 113:14
**notice** [4] - 93:7, 93:9, 104:20, 105:11
**Number** [3] - 39:15, 50:13, 52:15
**number** [12] - 18:18, 28:14, 36:10, 37:5, 37:7, 37:9, 48:14, 50:14, 58:16, 59:12, 61:20, 105:13
**NUMBER** [1] - 113:7
**numbered** [20] - 18:24, 25:22, 31:6, 35:2, 36:7, 36:16, 36:25, 37:19, 38:4, 38:7, 38:17, 38:19, 38:23, 42:7, 43:13, 55:10, 55:18, 62:24, 101:23, 102:10
**numbers** [3] - 12:2, 54:17, 110:16
**NY** [1] - 2:9

## O

**O'HARE** [1] - 2:13
**oath** [1] - 3:12
**object** [57] - 9:24, 10:10, 11:15, 14:8, 14:22, 15:25, 17:4, 18:9, 19:2, 19:11, 20:17, 20:23, 21:23, 22:7, 23:25, 26:4, 26:12, 32:9, 33:3, 33:18, 34:5, 34:14, 35:15, 38:11, 39:6, 40:8, 41:16, 42:11, 42:23, 43:7, 43:21, 44:11, 45:4, 45:11, 47:3, 47:11, 48:3, 48:18, 48:24, 54:22, 55:15, 57:11, 59:16, 60:21, 67:25, 70:24, 71:24, 72:7, 79:5, 79:16, 80:14, 93:21, 95:25, 99:5, 102:14, 103:9, 104:17
**objected** [2] - 64:21, 64:23

**objection** [39] - 8:24, 11:8, 12:7, 12:8, 14:25, 23:16, 24:12, 37:2, 37:3, 41:23, 44:4, 65:19, 68:5, 71:5, 72:10, 73:11, 73:16, 74:23, 74:24, 77:11, 77:12, 79:7, 81:16, 82:11, 92:19, 93:25, 94:2, 94:11, 94:12, 95:17, 96:16, 96:17, 96:19, 97:24, 98:22, 99:4, 99:7, 102:15, 103:25
**objections** [2] - 3:21, 104:20
**objects** [1] - 37:13
**obtain** [4] - 47:22, 47:24, 66:19, 67:10
**obtained** [1] - 49:22
**obtaining** [2] - 32:19, 77:8
**occasions** [2] - 67:6, 93:19
**OF** [4] - 1:2, 2:4, 114:4, 114:5
**off-load** [1] - 69:16
**off-the-record** [1] - 84:14
**offer** [1] - 69:14
**offered** [1] - 61:25
**offhand** [2] - 27:24, 62:19
**OFFICE** [1] - 2:4
**officer** [7] - 19:23, 20:2, 20:5, 24:22, 28:2, 102:11, 102:18
**officers** [13] - 27:15, 27:17, 27:18, 57:6, 57:9, 57:17, 101:22, 101:25, 102:7, 102:20, 103:2, 103:20, 103:24
**offices** [1] - 1:19
**okay** [13] - 12:10, 14:20, 32:13, 39:11, 44:20, 50:25, 52:19, 76:3, 76:17, 78:12, 90:13, 98:16, 106:8
**one-page** [1] - 52:16
**one-sided** [1] - 80:21
**ones** [2] - 102:9, 102:10
**open** [1] - 20:9
**opened** [1] - 28:15
**opening** [4] - 28:13, 28:17, 28:23, 29:5
**operated** [1] - 17:8
**operates** [1] - 17:13
**operating** [3] - 8:9, 15:3, 97:3
**operation** [1] - 95:19
**operations** [3] - 36:20,

58:23, 96:25
**opinion** [2] - 71:2, 72:8
**optional** [1] - 72:24
**order** [3] - 11:23, 74:15, 88:8
**Order** [7] - 1:18, 63:25, 65:7, 71:3, 77:17, 78:5, 113:11
**original** [6] - 3:9, 3:17, 14:3, 14:7, 45:3, 48:16
**Orlando** [2] - 27:19, 101:21
**others** [1] - 27:23
**otherwise** [2] - 81:12, 92:2
**outcome** [1] - 114:17
**outside** [4] - 45:21, 45:23, 45:25, 46:4
**oversee** [3] - 19:20, 19:23, 22:19
**owed** [4] - 39:21, 40:17, 52:4, 52:22
**owes** [3] - 41:15, 54:2, 54:11
**owned** [13] - 15:19, 17:16, 17:24, 21:21, 26:20, 26:22, 26:25, 27:3, 27:6, 55:17, 58:12, 58:13, 61:6
**owners** [1] - 58:6
**ownership** [5] - 24:10, 25:2, 57:9, 57:22, 57:24
**owns** [1] - 24:10

## P

**P.M** [2] - 1:13, 111:6
**Page** [1] - 75:11
**page** [15] - 12:2, 52:16, 64:6, 65:7, 66:14, 68:7, 68:8, 76:21, 78:10, 96:5, 105:12, 106:5, 106:9
**PAGE** [3] - 113:6, 113:20, 113:24
**pages** [6] - 12:4, 12:22, 13:21, 13:23, 13:25, 76:7
**paid** [2] - 62:22, 73:4
**paragraph** [10] - 51:6, 51:11, 52:5, 64:7, 64:10, 64:17, 65:5, 66:17, 67:15, 106:10
**parent** [1] - 19:22
**PARNAGIAN** [1] - 2:13
**part** [16] - 7:10, 11:11, 13:7, 13:23, 21:16, 32:14, 33:7, 36:21, 37:20, 41:11, 48:8, 48:12, 49:7, 60:14, 92:5, 97:3
**particular** [2] - 30:15,

42:4
**parties** [3] - 3:7, 78:8, 114:15
**partner** [1] - 24:15
**party** [6] - 12:8, 56:13, 86:11, 91:15, 92:7, 94:6
**passage** [2] - 103:4, 103:7
**past** [1] - 8:12
**pay** [3] - 51:24, 62:8, 90:19
**paying** [1] - 62:21
**payment** [4] - 49:7, 49:12, 51:3, 51:18
**Pemberton** [1] - 4:12
**people** [5] - 8:16, 8:18, 62:2, 102:9, 103:22
**percent** [18] - 15:10, 15:12, 15:14, 17:16, 17:18, 17:20, 24:10, 24:16, 25:2, 30:10, 35:7, 35:8, 51:5, 51:20, 51:25, 57:9, 57:21, 58:12
**percentages** [1] - 35:5
**performed** [1] - 96:8
**perhaps** [2] - 102:2, 102:8
**period** [8] - 10:13, 10:21, 11:6, 14:6, 14:14, 27:13, 30:12, 30:18
**person** [5] - 7:2, 24:9, 25:24, 56:20, 86:19
**person's** [1] - 25:3
**personal** [5] - 53:5, 53:12, 54:10, 54:14, 67:3
**personally** [1] - 53:4
**Philip** [1] - 27:19
**phone** [6] - 7:2, 73:14, 83:13, 83:14, 83:15, 83:16
**phrased** [1] - 59:10
**pieces** [1] - 41:13
**place** [2] - 93:18, 112:11
**PLAINTIFF** [1] - 1:4
**Plaintiff** [3] - 1:17, 2:4, 33:8
**Plaintiff's** [26] - 12:17, 12:21, 39:14, 50:3, 50:5, 50:13, 52:10, 52:12, 52:15, 63:16, 63:18, 63:24, 74:8, 74:10, 75:3, 75:5, 75:9, 86:7, 87:21, 87:25, 105:7, 105:11, 106:2, 106:13, 107:9, 108:5
**plaintiff's** [1] - 84:20
**PLAINTIFF'S** [1] - 113:4
**Please** [1] - 4:8
**please** [11] - 5:6, 5:19,

39:15, 39:16, 52:17,
64:11, 74:2, 75:12,
93:24, 99:18, 105:5
**PLRC** [10] - 15:18,
15:23, 16:10, 17:15,
17:16, 17:24, 27:3, 27:5,
58:12, 58:13
**point** [7] - 32:18, 59:12,
63:4, 88:5, 93:6, 93:8,
99:22
**policies** [1] - 109:6
**policy** [2] - 47:15, 47:18
**portfolio** [12] - 11:13,
15:11, 15:12, 24:5,
25:22, 41:5, 41:11, 48:9,
48:13, 70:5, 70:13, 72:13
**portfolios** [39] - 10:17,
10:22, 11:7, 15:5, 18:25,
22:24, 23:4, 23:9, 23:14,
23:22, 23:23, 25:16,
25:19, 26:3, 31:21,
33:15, 33:16, 36:7, 40:4,
40:5, 41:6, 42:21, 43:12,
43:16, 43:19, 44:2, 44:8,
44:18, 44:24, 45:3, 45:9,
45:19, 46:9, 46:19,
46:25, 47:8, 47:23,
49:10, 49:23
**portion** [1] - 29:13
**position** [2] - 68:15,
68:18
**possessed** [1] - 68:13
**possession** [1] - 61:3
**possible** [2] - 89:12,
102:25
**possibly** [1] - 107:2
**potential** [2] - 22:24,
25:16
**practical** [1] - 89:2
**Practices** [3] - 20:14,
21:20, 109:7
**precluded** [1] - 89:18
**preparation** [7] - 6:4,
6:13, 6:16, 6:22, 7:3, 7:7,
7:14
**prepare** [1] - 5:22
**PRESENT** [1] - 2:19
**present** [2] - 7:5, 15:4
**presents** [1] - 67:11
**president** [9] - 4:25,
7:17, 28:3, 28:4, 28:6,
28:10, 28:11, 29:4,
103:15
**president/treasurer** [1]
- 19:15
**pretty** [1] - 50:9
**principals** [1] - 17:2
**prior** [10] - 24:13, 26:6,
54:19, 55:6, 60:3, 60:18,
61:4, 61:11, 97:25,

103:11
**private** [1] - 20:7
**privilege** [22] - 85:19,
86:4, 86:12, 86:17,
86:19, 86:20, 86:22,
87:3, 87:9, 87:17, 88:7,
88:10, 88:12, 88:18,
88:22, 88:24, 88:25,
89:4, 89:17, 89:21,
89:23, 90:2
**privileged** [2] - 90:5,
108:11
**probably** [3] - 5:3, 31:8,
31:17
**procedurally** [1] - 89:2
**Procedure** [1] - 1:19
**procedures** [1] - 109:6
**proceed** [1] - 86:8
**process** [13] - 48:21,
67:6, 67:7, 71:11, 78:19,
79:14, 81:23, 93:19,
95:16, 96:7, 96:14, 97:9,
100:7
**processor** [1] - 69:3
**produce** [1] - 88:20
**produced** [1] - 7:10
**product** [1] - 109:3
**production** [3] - 12:22,
39:17, 50:14
**professionals** [1] -
69:12
**profitable** [1] - 30:9
**program** [3] - 35:4,
35:11, 66:24
**programs** [8] - 31:6,
34:12, 34:22, 35:2, 35:3,
36:4, 36:6, 69:13
**prohibited** [1] - 48:15
**properly** [2] - 87:18,
94:20
**proposals** [2] - 44:22,
44:25
**proposed** [3] - 44:15,
44:17, 44:18
**protective** [1] - 11:23
**provided** [2] - 70:5,
70:12
**Public** [3] - 1:23, 4:4,
114:8
**PUBLIC** [1] - 112:22
**public** [1] - 20:3
**publicly** [2] - 65:11,
66:2
**publicly-traded** [1] -
66:2
**punitive** [1] - 92:12
**purchase** [20] - 10:8,
18:12, 26:2, 29:8, 30:18,
36:9, 40:24, 44:3, 44:19,
45:2, 45:10, 45:14,

45:18, 45:25, 48:9,
48:13, 48:22, 49:3, 70:4,
70:11
**purchased** [10] - 23:9,
23:13, 40:4, 41:6, 41:12,
44:9, 44:15, 47:8, 47:23,
70:13
**purchaser** [2] - 52:22,
71:9
**purchases** [7] - 26:11,
42:22, 43:6, 44:7, 47:2,
49:11, 49:24
**purported** [1] - 67:7
**purportedly** [1] - 67:10
**purports** [1] - 77:3
**purpose** [1] - 103:13
**pursuant** [1] - 1:17
**putting** [3] - 31:3,
79:23, 80:2

## Q

**qualified** [1] - 68:12
**question** [142] - 5:5, 5:9,
5:12, 8:25, 9:2, 9:25,
10:2, 10:3, 10:11, 11:3,
11:16, 13:15, 14:9,
14:11, 14:23, 16:2, 17:5,
18:10, 19:3, 19:5, 19:12,
20:18, 20:21, 20:24,
21:11, 21:12, 21:14,
21:24, 22:8, 22:13,
23:17, 24:2, 26:5, 26:13,
32:3, 32:10, 32:17, 33:4,
33:19, 34:6, 34:15,
34:17, 34:18, 35:25,
36:17, 37:13, 37:15,
38:12, 38:15, 39:7,
39:13, 40:9, 41:17,
42:12, 42:16, 42:24,
43:8, 43:22, 43:24,
44:12, 45:5, 45:12,
45:16, 46:23, 47:4,
47:12, 48:4, 48:5, 48:6,
48:11, 48:19, 48:25,
49:15, 49:20, 53:14,
53:17, 54:8, 54:23,
55:16, 56:25, 57:12,
59:10, 59:17, 60:22,
61:10, 65:2, 67:18, 68:2,
70:2, 70:25, 71:25,
73:21, 73:24, 74:4, 79:6,
79:17, 80:6, 80:15,
80:24, 81:16, 81:18,
81:24, 82:14, 82:16,
82:22, 83:22, 84:2, 84:4,
84:5, 84:11, 85:2, 85:8,
85:13, 86:11, 89:5,
91:13, 92:22, 93:22,
93:23, 94:7, 94:13, 96:2,
96:4, 96:12, 96:18, 98:4,

99:6, 99:17, 99:18,
99:20, 102:15, 103:5,
103:10, 103:20, 104:18,
104:22, 105:19, 106:11,
107:4, 107:7, 110:5
**questions** [8] - 31:20,
50:9, 50:10, 55:22,
67:12, 87:12, 108:24,
111:5
**quote** [1] - 53:3

## R

**raised** [1] - 105:15
**rate** [2] - 35:4, 63:2
**read** [29] - 20:19, 20:21,
36:12, 51:6, 51:11,
51:14, 53:14, 53:17,
64:10, 64:21, 64:24,
65:4, 65:7, 66:14, 66:25,
67:15, 67:24, 73:19,
73:21, 73:25, 74:4, 76:7,
83:21, 84:2, 93:24,
96:10, 99:18, 99:20,
106:5
**readback** [1] - 20:25
**reading** [6] - 64:13,
64:18, 64:24, 65:2, 66:4,
66:16
**reason** [4] - 95:3, 95:5,
95:12, 100:12
**reasonable** [7] - 5:11,
37:6, 51:4, 51:19, 51:24,
109:10, 109:16
**reasons** [1] - 95:10
**recall** [4] - 100:16,
100:19, 101:3, 101:12
**receive** [1] - 30:6
**received** [3] - 20:6,
93:7, 93:9
**recess** [2] - 56:18,
74:13
**recommend** [1] - 25:18
**recommended** [1] -
26:3
**record** [23] - 4:9, 11:20,
51:12, 51:15, 64:11,
64:14, 64:18, 64:25,
65:5, 65:21, 66:5, 66:7,
66:18, 67:5, 67:24, 72:3,
83:24, 84:13, 84:14,
91:7, 96:7, 108:23,
114:12
**records** [4] - 60:8, 61:2,
69:18, 78:24
**Recovery** [1] - 16:23
**recovery** [1] - 16:25
**referred** [6] - 20:20,
53:16, 73:20, 74:3,
99:19, 101:9

referred-to [5] - 20:20, 53:16, 73:20, 74:3, 99:19
referring [4] - 34:24, 57:15, 70:3, 70:6
refuse [1] - 65:4
regard [1] - 108:25
regarding [4] - 21:18, 22:6, 108:24, 109:10
regardless [2] - 89:8, 103:18
relate [1] - 28:10
related [5] - 29:14, 46:19, 46:25, 91:20, 114:15
relating [2] - 53:6, 70:7
relation [2] - 101:15, 101:16
relationship [5] - 15:15, 25:9, 26:17, 34:9, 60:2
remaining [1] - 73:5
remedied [1] - 87:10
remedy [1] - 89:19
remotely [1] - 32:3
rep [1] - 107:6
repeat [6] - 10:3, 14:12, 32:17, 55:2, 61:10, 110:15
rephrase [2] - 5:7, 5:10
report [1] - 94:4
Reporter [14] - 12:19, 20:22, 50:7, 52:14, 53:18, 63:20, 66:8, 73:22, 74:5, 74:12, 75:7, 84:2, 99:21, 105:9
reporter [2] - 5:17, 83:21
repository [3] - 69:21, 69:22, 69:24
represent [3] - 77:14, 78:3, 97:13
representation [1] - 77:19
representative [8] - 53:21, 56:6, 71:19, 97:14, 104:9, 104:14, 104:19, 105:14
represented [1] - 91:21
representing [1] - 105:3
request [2] - 87:21, 88:19
REQUESTED [1] - 113:23
reserved [1] - 3:22
resides [1] - 97:18
resolved [2] - 67:13, 90:9
respective [1] - 3:6
respond [2] - 87:11, 91:6
responsibilities [1] -

19:19
responsible [3] - 22:19, 28:13, 29:10
rest [1] - 106:25
result [4] - 81:6, 81:10, 82:8, 107:13
retained [1] - 47:10, 113:16
retaining [1] - 54:20
retention [1] - 47:18
return [1] - 30:23
returned [1] - 33:20, 33:23
returns [1] - 30:25
revenue [5] - 9:14, 9:15, 9:17, 9:18, 31:13
revenues [2] - 30:12, 34:3
review [13] - 7:6, 7:12, 11:25, 15:6, 39:15, 45:24, 46:2, 52:17, 75:12, 76:4, 76:8, 76:12, 76:18
reviewed [3] - 7:9, 23:21, 23:24
reviewing [2] - 39:19, 76:16
RICHMOND [1] - 114:5
right [38] - 7:18, 10:19, 13:17, 13:20, 14:17, 17:3, 17:10, 17:25, 18:8, 18:20, 24:11, 25:19, 26:23, 28:7, 28:24, 30:20, 31:7, 35:8, 35:21, 36:16, 38:8, 38:20, 40:7, 40:14, 44:19, 46:12, 46:18, 46:21, 46:22, 54:3, 58:19, 59:23, 63:10, 63:13, 77:10, 78:8, 79:15, 85:20
risk [5] - 69:2, 72:12, 72:24, 94:15, 94:18
ROCCO [2] - 1:16, 112:15
Rocco [3] - 4:10, 27:22, 97:12
role [4] - 22:18, 27:25, 28:9, 28:11
room [5] - 99:12, 100:25, 101:4, 101:5, 101:6
roughly [6] - 8:21, 9:8, 15:9, 23:12, 31:2, 32:21
rule [2] - 88:5, 90:15
ruled [1] - 67:22
Rules [1] - 1:18
rules [1] - 5:3
ruling [5] - 63:12, 68:6, 73:7, 83:17, 87:22
Rushmore [27] - 11:12,

11:17, 15:11, 15:14, 16:22, 16:25, 17:8, 22:24, 25:15, 25:25, 26:3, 26:23, 27:2, 29:12, 30:2, 31:24, 35:3, 35:6, 40:5, 44:2, 44:7, 44:13, 49:16, 56:23, 56:24, 95:19, 96:24
rushmore [1] - 15:3

## S

sale [2] - 43:12, 46:8
sales [2] - 43:19, 45:9
same [28] - 3:12, 3:15, 3:17, 6:24, 13:24, 14:25, 28:5, 46:18, 48:6, 49:20, 67:8, 74:24, 77:12, 79:3, 79:13, 80:9, 81:22, 101:25, 102:6, 102:13, 102:17, 102:20, 102:22, 103:24, 108:8
SAMSERV [2] - 1:8, 2:14
Samserv [14] - 77:4, 77:7, 93:5, 95:15, 96:8, 96:14, 96:21, 97:8, 98:19, 98:21, 98:24, 99:2, 99:24, 100:6
Samserv's [4] - 78:24, 79:12, 81:21, 85:7
saw [2] - 95:4, 98:20
saying [2] - 56:15, 68:22
Scott [2] - 5:24, 83:19
SCOTT [1] - 2:11
sealing [1] - 3:7
second [2] - 64:5, 64:6
seconds [1] - 76:13
seeing [1] - 95:13
seems [1] - 37:5
seen [3] - 37:4, 79:25, 91:12
selected [1] - 95:20
seller [3] - 40:20, 40:25, 71:9
sellers [2] - 44:8, 47:7
sent [1] - 20:7
sentence [1] - 62:10
separate [3] - 87:24, 88:4, 110:22
September [14] - 58:24, 59:18, 59:22, 60:3, 60:18, 61:13, 61:22, 61:23, 67:22, 68:8, 70:16, 71:15, 92:17, 100:8
serve [1] - 67:7
server [7] - 78:20,

79:14, 81:23, 95:16, 96:14, 97:9, 100:7
servers [1] - 67:6
serves [1] - 70:22
service [10] - 3:16, 62:12, 72:6, 73:9, 77:8, 79:4, 80:8, 85:5, 96:7, 104:19
serving [2] - 74:19, 93:19
settlement [6] - 36:22, 37:20, 37:23, 60:15, 61:5, 61:12
seven [2] - 100:10, 109:24
seven-year [1] - 100:10
sewer [2] - 72:5, 85:5
shake [1] - 5:15
share [2] - 29:12, 35:18
she's [1] - 5:18
short [2] - 56:17, 56:18, 74:13
shortcut [1] - 109:4
show [4] - 39:14, 66:3, 88:9, 88:15
showed [3] - 65:13, 79:9, 81:22
showing [8] - 12:20, 50:12, 63:23, 66:8, 75:8, 79:13, 105:10, 106:2
shown [1] - 91:8
shows [1] - 67:5
shush [1] - 81:8
side [3] - 80:23, 87:4, 88:14
sided [1] - 80:21
sides [1] - 80:19
signed [5] - 3:10, 3:12, 3:15, 66:24, 76:24
significant [4] - 60:23, 68:14, 72:12, 94:15
significantly [1] - 62:20
silly [1] - 83:2
similar [1] - 102:4
sir [18] - 4:14, 6:14, 7:18, 7:19, 12:24, 21:4, 21:25, 22:4, 23:11, 50:12, 52:18, 65:9, 75:13, 75:24, 76:10, 76:15, 78:10, 106:6
six [3] - 100:2, 100:10, 109:24
six-year [1] - 100:2
slightly [1] - 59:9
SMITH [1] - 2:9
Smith [1] - 1:20
solely [1] - 11:18
somebody [1] - 86:5
someone [10] - 49:16, 62:7, 68:19, 68:20,

68:25, 86:9, 88:9, 88:17, 94:16, 94:21
**something** [8] - 5:16, 11:14, 18:19, 18:20, 56:11, 86:16, 103:8, 107:25
**sometime** [3] - 24:19, 58:24, 93:11
**sometimes** [1] - 86:18
**somewhere** [1] - 97:19
**sophisticated** [2] - 66:24, 69:13
**sorry** [2] - 18:22, 93:23
**sought** [2] - 83:18, 109:17
**SOUTHERN** [1] - 1:2
**speak** [1] - 81:14
**speaking** [14] - 8:6, 8:21, 9:8, 14:24, 15:9, 23:12, 31:2, 40:3, 40:13, 42:5, 42:8, 84:19, 103:21, 103:23
**specific** [4] - 41:13, 42:10, 85:7, 90:17
**specifically** [2] - 87:16, 100:23
**specified** [1] - 112:11
**speculation** [1] - 42:15
**spelled** [1] - 15:2
**spoke** [1] - 77:22
**spreadsheet** [3] - 40:6, 40:14, 42:9
**SS** [1] - 114:4
**stamped** [5] - 12:22, 52:17, 63:25, 68:8, 75:10
**stands** [1] - 16:10
**start** [1] - 107:25
**started** [1] - 7:16
**state** [3] - 4:8, 83:23, 90:25
**STATE** [1] - 114:4
**State** [3] - 1:23, 4:4, 114:8
**statement** [2] - 53:11, 68:11
**statements** [7] - 48:7, 48:8, 48:17, 70:8, 74:18, 74:21, 91:17
**STATES** [1] - 1:2
**steps** [17] - 5:21, 42:19, 42:25, 43:4, 43:9, 54:18, 55:4, 55:11, 74:17, 74:21, 80:11, 80:25, 81:25, 82:4, 82:5, 82:18, 97:21
**Steve** [1] - 101:14
**STIPULATED** [2] - 3:5, 3:20
**stipulation** [1] - 12:7
**stop** [2] - 107:18, 108:2

**stopped** [2] - 31:19, 59:13
**Street** [2] - 2:5, 2:15
**strength** [1] - 68:11
**structure** [4] - 24:24, 25:7, 26:16, 34:11
**structured** [1] - 19:10
**subco** [1] - 26:19
**SUBCO** [1] - 18:7
**subcos** [1] - 18:7
**Subscribed** [1] - 112:18
**subsidiaries** [1] - 18:3
**subsidiary** [7] - 15:17, 15:18, 15:19, 17:17, 17:25, 27:6, 58:14
**successfully** [1] - 69:16
**suddenly** [1] - 56:10
**sue** [1] - 43:20
**sued** [4] - 39:22, 40:18, 41:2, 43:13
**suggest** [2] - 85:14, 107:17
**suing** [2] - 41:15, 54:12
**suit** [1] - 42:7
**support** [2] - 70:4, 78:4
**sure** [19] - 10:4, 16:8, 16:17, 29:15, 32:18, 50:9, 55:3, 56:24, 61:11, 77:25, 85:24, 86:4, 86:8, 87:14, 88:5, 91:5, 97:4, 110:17, 110:18
**surprised** [1] - 78:2
**sworn** [5] - 3:10, 4:3, 112:5, 112:18, 114:11
**Sykes** [22] - 22:2, 22:6, 22:15, 33:7, 36:22, 37:5, 37:20, 37:23, 60:11, 61:4, 61:11, 63:9, 64:2, 78:8, 91:10, 91:22, 92:2, 92:5, 92:8, 94:6, 98:6, 100:2
**system** [3] - 71:10, 94:21, 97:18
**systematic** [1] - 70:21
**systems** [1] - 71:8

## T

**take** [20] - 5:21, 13:9, 13:11, 29:4, 42:20, 54:17, 55:4, 55:11, 56:17, 71:8, 74:17, 74:20, 76:14, 80:11, 80:25, 82:2, 82:4, 82:18, 88:2, 97:21
**taken** [9] - 1:17, 4:17, 5:3, 43:2, 43:4, 43:10, 56:19, 74:14, 82:6
**taking** [1] - 5:18
**talk** [3] - 80:17, 80:19,

89:22
**talked** [5] - 10:4, 15:22, 47:21, 69:20, 102:25
**talking** [2] - 36:2, 47:19
**tell** [6] - 7:24, 14:21, 25:2, 66:16, 90:4, 94:17
**tells** [1] - 39:5
**ten** [12] - 17:19, 23:14, 24:10, 24:15, 25:2, 30:9, 31:18, 35:23, 57:9, 57:21, 109:25, 110:19
**tend** [1] - 102:4
**tens** [2] - 66:20, 72:5
**term** [2] - 31:24, 100:15
**terminate** [1] - 60:2
**terms** [17] - 11:22, 11:25, 34:12, 34:23, 35:11, 35:24, 37:23, 48:22, 48:23, 51:3, 51:18, 62:3, 62:14, 62:18, 70:15, 87:10, 89:10
**testified** [1] - 4:5
**testify** [7] - 53:25, 55:24, 91:25, 104:14, 104:23, 105:14, 112:5
**testimony** [13] - 7:3, 7:7, 24:14, 26:6, 41:25, 57:13, 72:9, 87:23, 98:2, 103:12, 112:6, 112:10, 114:13
**Thank** [3] - 37:12, 90:22, 111:2
**thank** [7] - 9:19, 12:13, 20:24, 84:8, 90:21, 90:23, 104:7
**THE** [9] - 9:15, 13:17, 84:16, 84:22, 85:18, 85:21, 86:9, 88:3, 90:13
**there's** [2] - 69:2, 77:6
**thereafter** [1] - 93:2
**thereby** [2] - 51:4, 51:19
**thereto** [1] - 104:21
**thing** [1] - 86:24
**things** [6] - 66:4, 70:8, 71:4, 73:18, 89:9, 89:17
**think** [15] - 7:11, 11:24, 13:14, 26:22, 49:18, 53:8, 63:2, 73:12, 82:15, 82:23, 87:8, 87:15, 88:25, 99:8, 102:5
**third** [3] - 106:10, 107:8, 108:4
**thousands** [6] - 61:5, 61:14, 66:20, 66:21, 72:5, 73:8
**three** [3] - 78:13, 109:24
**through** [31] - 10:24, 12:23, 16:7, 18:2, 18:19, 18:21, 18:22, 19:8, 20:7,

27:5, 34:2, 39:18, 39:19, 49:4, 49:5, 50:11, 58:3, 58:11, 58:19, 64:20, 75:11, 92:17, 96:9, 101:24, 102:6, 102:19, 103:3, 106:5, 107:23, 108:21, 110:19
**timber** [2] - 8:10, 10:5
**TIME** [1] - 1:13
**time** [32] - 3:22, 13:11, 28:5, 30:13, 32:18, 35:8, 54:8, 60:11, 64:20, 67:8, 69:22, 70:13, 71:17, 76:14, 79:3, 79:13, 80:9, 81:24, 83:11, 86:15, 88:17, 89:25, 93:19, 100:9, 103:3, 103:4, 103:7, 103:22, 107:19, 108:21, 111:3, 112:10
**title** [1] - 4:24
**today** [8] - 5:22, 6:4, 6:13, 6:17, 6:23, 7:7, 71:19, 105:12
**TODD** [1] - 1:8
**together** [2] - 13:19, 80:22
**topics** [2] - 53:24, 55:24
**total** [2] - 23:23, 31:8
**totally** [2] - 17:6, 73:16
**toward** [1] - 100:4
**towards** [1] - 100:13
**TRACY** [2] - 114:7, 114:23
**Tracy** [1] - 1:22
**traded** [2] - 65:11, 66:2
**transaction** [1] - 42:4
**transactions** [4] - 42:6, 44:16, 44:17, 70:7
**transcript** [5] - 11:21, 12:5, 12:9, 112:9
**transfer** [5] - 22:19, 69:16, 70:17, 94:16, 95:8
**transferred** [5] - 42:10, 61:7, 61:15, 61:20, 72:20
**transferring** [2] - 69:3, 94:19
**transition** [2] - 62:5, 102:12
**treasurer** [6] - 4:25, 7:17, 22:18, 28:6, 28:11, 65:11, 65:25, 103:14, 103:19
**trial** [2] - 3:22, 56:9
**TRIAL** [1] - 1:15
**tried** [1] - 64:20
**true** [27] - 36:21, 38:5, 38:10, 44:21, 46:13, 50:23, 53:11, 61:13, 61:17, 65:16, 66:12, 69:21, 69:25, 73:9, 74:6,

74:22, 78:24, 79:4, 80:13, 81:4, 82:3, 82:19, 97:10, 97:23, 110:6, 112:9, 114:12
**truth** [1] - 112:5
**try** [3] - 5:19, 46:7, 90:7
**trying** [5] - 8:17, 10:6, 16:13, 17:15, 86:18
**turn** [3] - 64:5, 64:6, 106:4
**turns** [2] - 87:8, 89:12
**type** [4] - 4:19, 8:6, 30:23, 103:20
**types** [1] - 47:15
**typical** [1] - 34:10

## U

**U-L-B-R-A-N-D-T** [1] - 27:22
**U.S.A** [2] - 52:5, 52:23
**uh** [1] - 5:16
**uh-huh** [1] - 5:16
**Ulbrandt** [1] - 27:21
**uncollected** [1] - 4:20
**under** [8] - 20:4, 38:3, 43:20, 51:3, 51:18, 89:20, 89:24, 89:25
**underlying** [1] - 70:6
**understand** [19] - 5:6, 9:2, 9:25, 19:4, 22:12, 22:23, 28:20, 29:15, 32:2, 34:16, 34:20, 43:23, 54:13, 56:25, 73:23, 80:4, 93:22, 96:6, 104:11
**understanding** [10] - 13:6, 23:3, 23:7, 37:8, 37:16, 37:21, 38:6, 40:10, 45:20, 69:19
**understood** [3] - 5:11, 90:11, 98:16
**undertaken** [1] - 92:3
**unitary** [1] - 67:9
**UNITED** [1] - 1:2
**unlike** [1] - 106:24
**unsigned** [1] - 3:14
**urgent** [1] - 84:12

## V

**vacate** [1] - 36:23
**vacated** [1] - 37:19
**Valenti** [1] - 1:22
**VALENTI** [2] - 114:7, 114:23
**validity** [1] - 43:5
**value** [1] - 23:8
**varied** [1] - 35:11
**variety** [1] - 8:14

**various** [12] - 8:4, 36:15, 36:24, 37:18, 38:4, 38:7, 38:17, 38:22, 61:6, 61:14, 62:24, 77:9
**vast** [1] - 67:2
**vehicle** [1] - 60:6
**venn** [2] - 16:13, 16:15
**venture** [4] - 12:25, 16:22, 35:20, 35:23
**verbalize** [1] - 5:19
**verify** [2] - 42:20, 91:16
**versus** [1] - 94:23
**vice** [10] - 4:25, 7:16, 19:14, 28:3, 28:4, 28:6, 28:9, 28:11, 29:4, 103:15
**violated** [2] - 54:19, 55:5
**violations** [3] - 20:13, 21:19, 109:6

## W

**wait** [1] - 65:12
**waited** [1] - 66:2
**waive** [1] - 43:14
**waived** [1] - 3:9
**waiver** [4] - 106:15, 107:11, 108:7, 108:15
**WALDMAN** [1] - 1:8
**Waldman** [1] - 17:9
**Wall** [1] - 2:15
**want** [11] - 11:21, 21:12, 21:13, 55:22, 56:10, 56:2, 76:6, 90:25, 92:23, 106:22, 110:15
**wanted** [2] - 15:6, 46:7
**warranties** [1] - 43:15
**was he** [2] - 24:21
**was it** [1] - 7:11
**was that** [6] - 6:19, 11:11, 32:22, 87:21, 93:17, 95:6
**wasting** [1] - 83:11
**we'd** [1] - 107:20
**we've** [3] - 8:12, 45:19, 58:11
**week** [2] - 6:20, 29:9
**weekly** [1] - 22:19
**were you** [7] - 22:5, 22:10, 22:14, 72:14, 72:19, 101:4, 108:13
**weren't** [2] - 57:16, 62:7
**what are** [4] - 18:7, 19:18, 34:22, 79:22
**what did** [1] - 70:10
**What is** [11] - 4:11, 4:24, 12:23, 15:15, 26:17, 35:22, 63:21, 84:22, 96:22, 106:11, 108:3

**what was** [7] - 25:9, 27:25, 42:3, 62:5, 68:5, 71:16, 105:21
**what were** [2] - 30:12, 62:18
**what's** [8] - 12:20, 37:8, 50:12, 63:23, 75:8, 105:10, 107:7, 108:7
**when did** [3] - 7:12, 32:13, 58:25
**when you** [13] - 9:20, 32:5, 39:16, 52:18, 65:8, 75:13, 76:11, 76:15, 98:11, 100:15, 101:17, 103:5, 106:6
**where is** [1] - 83:13
**WHEREOF** [1] - 114:19
**Whereupon** [16] - 12:16, 20:20, 50:4, 52:11, 53:16, 56:18, 63:17, 73:20, 74:3, 74:9, 74:13, 75:4, 84:14, 99:19, 105:6, 111:6
**whereupon** [1] - 83:17
**who are** [3] - 17:21, 27:17, 58:6
**who is** [6] - 6:10, 45:17, 65:24, 86:11, 94:6, 106:17
**who was** [2] - 40:25, 101:20
**wholly** [3] - 15:19, 17:24, 58:13
**why** [26] - 19:7, 19:8, 32:22, 32:23, 32:24, 33:5, 54:6, 54:7, 60:17, 61:22, 67:18, 68:3, 70:20, 71:22, 79:21, 80:10, 83:2, 85:2, 85:9, 85:24, 86:22, 88:11, 94:8, 95:14, 96:12, 97:20
**wide** [1] - 67:14
**WILLIAM** [2] - 1:9, 2:14
**willing** [1] - 62:13
**window** [2] - 10:13, 100:3
**wineries** [2] - 8:12, 10:5
**wire** [3] - 29:8, 29:10, 29:18
**wit** [2] - 51:5, 51:20
**within** [3] - 3:8, 53:6, 114:8
**without** [5] - 61:2, 69:4, 69:17, 80:18, 88:13
**Witness** [1] - 111:7
**witness** [25] - 1:16, 3:10, 3:16, 3:18, 4:3, 21:15, 46:22, 55:20, 84:25, 85:23, 86:10, 87:11, 87:19, 89:9,

89:13, 90:16, 90:18, 91:8, 91:12, 91:23, 91:24, 106:17, 107:2, 114:10, 114:13
**WITNESS** [3] - 9:15, 13:17, 114:19
**witness'** [4] - 26:6, 57:13, 72:9, 97:25
**witness's** [2] - 24:13, 103:11
**witnesses** [1] - 41:25
**wondering** [6] - 21:10, 21:13, 24:5, 60:16, 63:8, 100:14
**work** [5] - 4:22, 8:16, 25:5, 60:20, 109:3
**worked** [1] - 14:21
**working** [1] - 7:20
**wouldn't** [2] - 32:12, 72:14
**write** [1] - 11:3
**wrong** [2] - 69:20, 90:18

## Y

**year** [13] - 9:17, 10:13, 10:21, 11:6, 14:6, 14:14, 27:13, 30:11, 30:17, 32:8, 100:2, 100:10
**years** [7] - 7:23, 19:16, 31:11, 31:17, 31:18, 32:6, 102:8
**yelling** [1] - 65:24
**yes** [43] - 4:18, 5:8, 5:13, 5:20, 6:2, 6:5, 6:9, 7:19, 8:15, 9:6, 9:11, 16:20, 21:2, 22:4, 23:7, 27:16, 28:8, 33:6, 35:18, 39:3, 44:6, 46:14, 46:17, 51:16, 53:23, 54:5, 62:17, 62:25, 63:4, 64:9, 65:6, 66:15, 67:17, 76:10, 76:20, 76:23, 78:16, 84:8, 92:23, 93:10, 96:11, 105:18, 105:25
**YORK** [2] - 1:2, 114:4
**York** [11] - 1:20, 1:21, 1:22, 1:23, 2:6, 2:11, 2:15, 4:4, 114:9
**you'd** [1] - 49:6
**you've** [1] - 110:14
**Young** [2] - 17:9, 61:25
**young** [4] - 53:3, 53:9, 53:12, 54:9
**YOUNG** [1] - 1:8
**yourself** [2] - 65:8, 106:6

| Z |
|---|
| **Zalman** [5] - 17:22, 23:21, 27:3, 57:15, 101:15 |
| ° |
| ° [4] - 111:10 |