JOINT VENTURE AND
LIMITED LIABILITY COMPANY AGREEMENT

OF

LR CREDIT, LLC

Limited Liability Company Agreement of LR CREDIT, LLC (the "**LLC**") dated as of November 12, 2003 among L-Credit, LLC ("LUK") and Rushmore Recovery Management, LLC ("**Rushmore**" or the "**Portfolio Manager**," and collectively, the "**Members**").

WITNESSETH:

WHEREAS, the Members desire to form a limited liability company under the Delaware Limited Liability Company Law (6 Del.C. § 18-101, et seq.), as it may be amended from time to time (the "**LLCL**");

WHEREAS, the LLC is being formed for the purpose of serving as a holding company for investments in portfolios (the "**Portfolios**" and individually a "**Portfolio**") consisting of New York State domiciled defaulted consumer indebtedness, including but not limited to credit card charge-offs, lines of credit and such other types of defaulted consumer debt (collectively "**Debt**") that periodically become available from banking institutions, merchants and resellers, together with the management and servicing of such Portfolios, the collection of such Debt or the resale of such Portfolios and the provision of all ancillary services in connection therewith;

WHEREAS, the members and principals of Rushmore are the persons listed on Annex 1 hereto;

WHEREAS, the Members desire to enter into this Agreement to establish their respective rights and obligations with respect to the LLC.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and provisions hereinafter contained, the Members hereby agree as follows:

ARTICLE I
DEFINITIONS

SECTION 1.01.   Definitions.   For purposes of this Agreement, the following capitalized terms have the following meanings:

"**Additional Members**" means any additional Members admitted pursuant to this Agreement.

"**Affiliate**" of a Person means a Person that, directly or indirectly through one or more intermediaries, Controls, is Controlled by or is under common Control with the subject Person.

CONFIDENTIAL

"**Agreement**" means this Limited Liability Company Agreement, as it may be amended, restated or supplemented from time to time.

"**Assignee**" has the meaning set forth in Section 12.01 hereof.

"**Attorney**" means Mel S. Harris and Associates, LLC, or any successor selected in accordance with Section 7.01 hereof.

"**Broker**" has the meaning set forth in Section 16.03(b) hereof.

"**Business Day**" means any day except a Saturday, Sunday or a day in which banking institutions in the State of New York are obligated by law, regulation or governmental order to close.

"**Capital Account**" means the account established for each Member on the books of the LLC which shall be (i) increased by (a) the total amount of money and the fair market value of any property contributed pursuant to Article V hereof to the LLC by such Member (net of any liability secured by such property that the LLC is considered to assume or take subject to under Section 752 of the Code) and (b) the amount of income and gain allocated to such Member pursuant to Section 6.04(a) hereof and (ii) decreased by (a) the amount of distributions distributed to such Member pursuant to Section 6.01 and (b) the amount of losses and deductions allocated to such Member pursuant to Section 6.04(a) hereof. Each Member's Capital Account shall be maintained and adjusted in accordance with Treasury Regulation Sections 1.704-1(b) and 1.704-2.

"**Capital Contribution**" means, with respect to any Member, the total amount of money and fair market value, as reasonably determined by LUK, of any property (net of any liability secured by such property that the LLC is considered to assume or take subject to under Section 752 of the Code) contributed in accordance with Article V, on behalf of, or for the account of, such Member, including without limitation the aggregate Investments made by LUK and Rushmore with respect to the Portfolios.

"**Certificate of Cancellation**" has the meaning set forth in Section 14.02 hereof.

"**Certificate of Formation**" means the Certificate of Formation of the LLC to be filed with the Secretary of State of the State of Delaware pursuant to the LLCL in the form of Annex 2 hereto, as amended or restated from time to time.

"**Code**" means the Internal Revenue Code of 1986, as it may be amended from time to time, or any successor statute.

"**Collection Agreement**" has the meaning set forth in Section 7.01 hereof.

"**Combined Portfolio Group**" has the meaning set forth in Section 6.02(a)(iv).

"**Commissions**" and "**Commission Agreement**" each has the meaning set forth in Section 16.03(b) hereof.

297428-9

2

LR_GUZ000092

"**Contract of Sale**" has the meaning set forth in Section 4.03(a)(iii) hereof.

"**Control**," "**Controls**" or "**Controlled**" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a Person or to have investment discretion, whether through the ownership of voting securities, by contract or otherwise.

"**Courier**" has the meaning set forth in Section 16.01 hereof.

"**Damages**" has the meaning set forth in Section 7.04(b) hereof.

"**Debt**" has the meaning set forth in the second recital of this Agreement.

"**de minimus**" has the meaning set forth in Section 4.03(b) hereof.

"**Distributable Proceeds**" shall mean all proceeds received by the LLC upon the collection of the Debt in a Portfolio or upon the disposition of a Portfolio net of (i) any Portfolio Reserves with respect to the Portfolio that gave rise to the Distributable Proceeds and (ii) any taxes, including without limitation unincorporated business taxes, that may become due and payable by the LLC.

"**Distribution**" means any distribution in cash or in kind to a Member pursuant to Article VI or Article XIV hereof.

"**Enhanced Priority Return**" means, with respect to LUK, an amount equal to twenty percent (20%) (twenty five percent (25%) pursuant to Section 8.04) per annum, determined on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days occurring in the period for which the Enhanced Priority Return is being determined, cumulative and compounded annually to the extent not distributed, of the average daily balance of LUK's Unreturned Capital from time to time.

"**Estimated Tax Liability**" has the meaning set forth in Section 6.01(b) hereof.

"**Excess Amount**" has the meaning set forth in Section 6.02(d) hereof.

"**First Portfolio Group**" has the meaning set forth in Section 6.01(a) hereof.

"**Funding Request**" has the meaning set forth in Section 4.03(a)(ii) hereof.

"**Indemnitee**" has the meaning set forth in Section 7.04(b) hereof.

"**Initial Capital**" means, for any Member, the capital contributed by such Member as of the date hereof.

"**Initial Portfolio Closing Date**" means the date of closing of the purchase of the initial Portfolio(s) purchased pursuant hereto.

CONFIDENTIAL                                                                LR_GUZ000093

"**Initial Term**" has the meaning set forth in Section 8.01(a) hereof.

"**Investment**" as to any Portfolio has the meaning set forth in Section 5.03(b) hereof.

"**Liquidator**" has the meaning set forth in Section 14.03(a) hereof.

"**Litigation Costs**" has the meaning set forth in Section 5.03(a) hereof.

"**LLC**" has the meaning set forth in the preamble to this Agreement.

"**LLCL**" has the meaning set forth in the first recital of this Agreement.

"**LLC Year**" has the meaning set forth in Section 10.01 hereof.

"**LUK Enhanced Unreturned Cumulative Capital**" on any date means an amount equal to LUK's aggregate Capital Contributions plus the Enhanced Priority Return reduced, but not below zero, by the aggregate Distributions previously made to LUK pursuant to Section 6.01 hereof.

"**Member**" has the meaning set forth in the preamble to this Agreement. Furthermore, for purposes of Member status, any interest in the LLC acquired by a Subsidiary of LUK shall be considered an interest solely of such Subsidiary, entitling such Subsidiary to be a Member in its own right.

"**Membership Interest**" means a Member's aggregate interests in the LLC.

"**Other Attorneys**" has the meaning set forth in Section 7.01 hereof.

"**Other Expenses**" has the meaning set forth in Section 5.03(a) hereof.

"**Permitted Transferee**" has the meaning set forth in Section 11.01 hereof.

"**Person**" means any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated organization or other entity or organization, including any government or political subdivision or any agency or instrumentality thereof.

"**Portfolio**" has the meaning set forth in the second recital of this Agreement.

"**Portfolio Group**" has the meaning set forth in Section 6.02(a) hereof.

"**Portfolio Manager's Profit Split**" means the Distributions to the Portfolio Manager for each Portfolio as set forth in Section 6.01(c)(iv) and (v) hereof.

"**Portfolio Reserves**" means, with respect to each Portfolio, such amount that LUK determines in good faith is necessary or appropriate to provide for future costs,

CONFIDENTIAL      LR_GUZ000094

expenses, obligations and liabilities which are specifically attributable (as determined by LUK) to such Portfolio or other Portfolios in the Portfolio Group.

"**15% Priority Return**" means, with respect to LUK, a sum equal to fifteen percent (15%) (twenty five percent (25%) pursuant to Section 8.04) per annum, determined on the basis of a year of 365 or 366 days, as the case may be, for the actual number of days occurring in the period for which the Priority Return is being determined, cumulative and compounded annually to the extent not distributed, of the average daily balance of the Member's Unreturned Capital from time to time.

"**Projections**" and "**Projected Net Profits**" each has the meaning set forth in Section 4.03(a) hereof.

"**Relevant Portfolio**" has the meaning set forth in Section 6.02(b) hereof.

"**Renewal Term**" has the meaning set forth in Section 8.01(a) hereof.

"**Securities Act**" means the Securities Act of 1933, as amended, and the rules and regulations promulgated thereunder.

"**Subco**" has the meaning set forth in Section 5.02 hereof.

"**Subsidiary**" of a Person means (i) any corporation of which at least a majority of the outstanding shares of stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time directly or indirectly owned or controlled by such Person and/or one or more of the Subsidiaries of such Person, (ii) any partnership of which at least a majority of the partnership or other ownership interests having by the terms thereof ordinary voting power to direct or cause the direction of management or policies of such partnership is at the time directly or indirectly owned by such Person and/or with respect to which such Person has the power, directly or indirectly, to direct or cause the direction of certain or all of the management and policies thereof, or (iii) any trust, association or other business entity of which more than fifty percent (50%) of the total voting power of shares entitled (without regard to the occurrence of any contingency) to vote in the election of directors, managers or trustees thereof is at the time owned or controlled, directly or indirectly, by any such Person or one or more of the Subsidiaries of such Person or a combination thereof.

"**Substitute Member**" has the meaning set forth in Section 12.02 hereof.

"**Tax Matters Partner**" and "**Tax Controversy**" each has the meaning set forth in Section 10.02 hereof.

"**Term**" has the meaning set forth in Section 8.01(a) hereof.

"**Transfer**" means any transfer, sale, assignment, exchange, pledge, hypothecation, gift or other disposition of any kind, voluntary or involuntary.

CONFIDENTIAL                                                                    LR_GUZ000095

"**Treasury Regulations**" means the regulations promulgated by the United States Treasury Department under the Code, as amended from time to time, or any successor regulations.

"**Unreturned Capital**" of any Member on any date shall be equal to the excess, if any of (a) the aggregate Capital Contributions of such Member as of such date over (b) the aggregate Distributions previously made to such Member pursuant to Section 6.01.

"**Unreturned Cumulative Capital**" of LUK on any date shall mean an amount equal to such Member's aggregate Capital Contributions plus the 15% Priority Return reduced, but not below zero, by the aggregate Distributions previously made to such Member pursuant to Section 6.01.

## ARTICLE II
## RELATIONSHIP BETWEEN LUK AND RUSHMORE

SECTION 2.01     General.   LUK and Rushmore agree to the formation of this LLC to acquire, manage and service, or sell Portfolios, collect the underlying Debt or otherwise realize value from the Portfolios.

SECTION 2.02     Rushmore Responsibilities.   Rushmore agrees that in furtherance of the joint venture and the business of the LLC, it will have primary responsibility for identifying potential acquisitions, conducting due diligence reviews with respect to each potential acquisition and providing day-to-day management and servicing of each Portfolio and collection of the underlying Debt. Rushmore will provide personnel to the joint venture to enable the LLC and any Subco to provide the day-to-day management and servicing of the Portfolios, including the services of David Waldman and Kerry Lutz who have significant management responsibility over Rushmore. Rushmore will permit LUK to have a representative employed at Rushmore (at LUK's expense). This representative will have complete and unrestricted access to Rushmore's personnel involved in any activities relating to the LLC and records to the extent that such records relate to the activities of the LLC.

SECTION 2.03     LUK Responsibilities.   LUK agrees that it will provide to the LLC financing, management and oversight in accordance with the terms of this Agreement.

SECTION 2.04     Liquidity.   It is the intention of LUK and Rushmore that the parties will establish policies and procedures for evaluating opportunities to sell all or any part of the LLC's Portfolios and/or the LLC itself in a public or private offering, financing, refinancing, or otherwise with the intention of maximizing the value of the investments made by each of LUK and Rushmore. Any such decision shall be made by LUK after full consideration of the interests of all Members.

## ARTICLE III
## ORGANIZATIONAL AND OTHER MATTERS

297428-9

6

LR_GUZ000096

SECTION 3.01. Formation; Admission. In connection with the execution and delivery of this Agreement, the Members will form the LLC under the provisions of the LLCL by filing the Certificate of Formation with the Secretary of State of the State of Delaware. Each of the Members named in the preamble to this Agreement has been admitted to the LLC as an initial Member. All Members are required to hold an interest in the LLC; any failure to hold such an interest shall result in immediate termination of one's membership in the LLC.

SECTION 3.02. Name. The name of the LLC shall be LR Credit, LLC and the business of the LLC shall be conducted under such name.

SECTION 3.03. Principal Office. The principal office of the LLC shall be at 133 West Main Street, Suite 205, Elmsford, New York 10523, or such other place as may from time to time be determined.

SECTION 3.04. Term. The LLC shall commence on the date of filing of the Certificate of Formation, and the term of the LLC shall continue until the earlier dissolution of the LLC in accordance with the provisions of Article VIII or Article XIV hereof or as otherwise provided by law.

SECTION 3.05. Limited Liability. Except as otherwise provided by the LLCL, the debts, obligations and liabilities of the LLC, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the LLC, and the Members shall not be obligated personally for any of such debts, obligations or liabilities solely by reason of being a Member.

ARTICLE IV
PURPOSE, POWERS AND PROCEDURES

SECTION 4.01. Purpose of the LLC. The LLC may carry on any lawful business, purpose or activity permitted by the LLCL, including but not limited to serving as a holding company for investments in Portfolios.

SECTION 4.02. Powers of the LLC. The LLC shall have the power to do any and all acts reasonably necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purpose and business described herein and for the protection and benefit of the LLC.

SECTION 4.03. Procedures. The procedures and responsibilities in connection with the business of the LLC are as follows:

CONFIDENTIAL                                                    LR_GUZ000097

(a)     Acquisition Procedures.

      (i)     Rushmore will have primary responsibility for identifying potential Portfolios. It will actively search for potential Portfolios and will determine the practical, operational and financial feasibility of each potential Portfolio.

      (ii)     As each potential Portfolio is identified, Rushmore will present a proposal to LUK by facsimile and by e-mail describing such potential Portfolio, setting forth the information specified in subsection (a)(iii) below, and such other information as LUK may reasonably request for each such potential Portfolio (the "**Funding Request**").

      (iii)     The **Funding Request** shall contain at least the following information:

            (1) a computer file spreadsheet identifying each account in the Portfolio;

            (2) a copy of the proposed negotiated contract of sale of the Portfolio to the LLC, if then available, or as soon as it becomes available thereafter, subject to execution and payment of a refundable deposit that is subject to any due diligence period set forth therein, giving the LLC the right to acquire the Portfolio at a specified price ("**Contract of Sale**");

            (3) a summary of the Portfolio and analytical justification for the purchase thereof at the proposed price;

            (4) detailed monthly projections of collections and disbursements with respect to the potential Portfolio (the "**Projections**");

            (5) a calculation of the projected net profit with respect to the potential Portfolio, both before (the "**Projected Net Profit**") and after giving effect to the Priority Returns of the Members and the Portfolio Manager's Profit Split, over the projected life of the potential Portfolio; and

            (6) a reasonably detailed explanation of how the purchase price for the potential Portfolio was derived by the seller thereof, if and to the extent such information is disclosed to Rushmore.

      LUK shall have five (5) Business Days to approve or disapprove the Funding Request. If LUK approves the Funding Request, the Final Proposal will become a Portfolio. If LUK does not approve, the provisions of subsection (c) below will apply.

CONFIDENTIAL                                                            LR_GUZ000098

(b)    Rushmore covenants and agrees at all times during the Term (i) to actively seek potential Portfolios for purchase by the LLC, (ii) to negotiate the purchase of each potential Portfolio at arm's length with the seller, and use all commercially reasonable efforts to obtain the most favorable price and terms then available, (iii)  that neither it nor its members, principals or Affiliates will have any business or personal relationship with the seller of any potential Portfolio, other than (1) arising from a prior purchase or attempted purchase of a Portfolio from such seller, (2) a business relationship with the Attorney in connection with its efforts to collect Debts of a potential Portfolio or other debts of account debtors on behalf of the seller or account creditors, or (3) as disclosed in writing to LUK prior to or together with delivery of the applicable Funding Request, (iv) to present all potential Portfolios identified by Rushmore, its members, principals or Affiliates,  to the LLC for purchase, by means of Funding Requests, and (v) not to purchase or offer to purchase, for its own account or for the account of its members, principals, Affiliates or other third parties,  manage or offer to manage for any other Person, any potential Portfolios, or otherwise represent or act on behalf of any third parties with respect thereto, or permit its members, principals or Affiliates to do so, except (1) where the Portfolio purchase price is less than $150,000 ("de minimus"), or (2) in accordance with subsection (c) below.

(c)    In the event LUK shall have rejected any Funding Request, duly presented by Rushmore in accordance with subsection (a) above, then Rushmore shall have the right to purchase such potential Portfolio(s) described in such Funding Request, for its own account or for the account of its members, Affiliates or other third parties; provided, however, that if the terms of such purchase shall be more favorable to the purchaser of any such potential Portfolio, in any material respect, than those set forth in the Funding Request or the Contract of Sale for such potential Portfolio, then Rushmore shall not exercise such right of purchase without first complying again with the provisions of subsection 4(a) above.

(d)    Upon the closing of each acquisition by the LLC or a Subco of a Portfolio, Rushmore will be paid a set-up fee of  $3,500 by the LLC, as payment or reimbursement to Rushmore of its costs, including legal fees, in connection with its identification and analysis, and the acquisition by the LLC or a Subco, of such Portfolio.  LUK will make a Capital Contribution to fund this payment by LLC.  Such payment will not be treated as a distribution or allocation made pursuant to Article VI.

## ARTICLE V
### MEMBER DEBT AND EQUITY FUNDING CONTRIBUTIONS

SECTION 5.01.   Current Capital Contributions.   The Members have contributed to the LLC the amount of Initial Capital set forth opposite their names below:

LUK:         $950
Rushmore:   $ 50

SECTION 5.02.   Subsequent Capital Contributions.  Each time that an acquisition of a Portfolio is approved by LUK in accordance with Article IV, the LLC will form a new subsidiary or other entity (each such subsidiary or entity, a "Subco"),

CONFIDENTIAL                    LR_GUZ000099

selected at that time taking into account then prevailing tax and other considerations, for the sole purpose of investing in the specific Portfolio. In respect of the LLC's investment in a Subco, LUK will provide ninety-five percent (95%) of the funds to the LLC, and Rushmore will provide five percent (5%) of the funds to the LLC, as additional Capital Contributions, to the extent necessary to capitalize Subco with sufficient funds to make the Investment in the Portfolio to the extent such costs are set forth in the Funding Request, and to pay the Commission to the Broker which may be due in connection with such Investment, as set forth in the Commission Agreement, in the manner and to the extent set forth as follows:

(a) with respect to the first $5,000,000 of Investments in Portfolios, LUK will provide ninety-seven percent (97%) of the funds to the LLC, and Rushmore will provide three percent (3%) of the funds to the LLC;

(b) with respect to the next $5,000,000 of Investments in Portfolios, LUK will provide ninety-three percent (93%) of the funds to the LLC, and Rushmore will provide seven percent (7%) of the funds to the LLC; and

(c) with respect to the amount of all Investments in Portfolios in excess of the first $10,000,000, Rushmore will use its best efforts to provide five percent (5%) of the funds to the LLC and LUK will provide (i) ninety-five percent (95%) of the funds to the LLC, and (ii) all such funds not so provided by Rushmore.

SECTION 5.03.   Additional Funding Obligations.

(a)   The Members hereby acknowledge that from time to time, with respect to each Portfolio, (i) pursuant to the Collection Agreement, the LLC shall be required to pay all litigation costs, including court filing fees, process server fees, sheriff charges and miscellaneous out-of-pocket third party costs (collectively the "**Litigation Costs**"), and (ii) the LLC may in its reasonable discretion incur other out-of-pocket costs in connection with the purchasing, management, servicing and sale of the Portfolio (including legal fees as provided in Section 16.08)(the "**Other Expenses**"), and (iii) the LLC shall be required to pay Commissions to the Broker pursuant to the Commission Agreement. Within three (3) Business Days after the Portfolio Manager has requested payment in writing to LUK (except legal fees as provided in Section 16.08 which shall be payable promptly upon receipt of an invoice therefor) and subject to LUK's agreement with such request, LUK and Rushmore will each advance their respective shares (pursuant to Section 5.02) of such Litigation Costs, Other Expenses and Commissions to the LLC; provided, however, that LUK shall have the right, in its sole discretion, to apply proceeds of Debt previously collected and not then distributed or disbursed for other purposes to the payment of such amounts, in which event the amounts so applied shall be deemed to have been advanced by LUK and Rushmore in their respective shares as aforesaid. Each such payment shall be deemed to constitute an additional Capital Contribution by LUK or Rushmore, as the case may be.

(b)   In no event, without the prior written approval of the Members, shall the aggregate investment required to be made by LUK and Rushmore, in respect of (i) the aggregate purchase price of all Portfolios purchased by the LLC and/or all Subcos, (ii) the aggregate of all Litigation Expenses and Other Expenses payable with respect

CONFIDENTIAL                                                           LR_GUZ000100

thereto, and (iii) the aggregate of all Commissions payable to the Broker pursuant to the Commission Agreement (collectively their "**Investments**" and individually, with respect to each Portfolio, their "**Investment**") exceed the aggregate sum of  (1) $22,800,000 for LUK and $1,200,000 for Rushmore during the Initial Term, and (2) $14,000,000 for LUK and $736,842 for Rushmore during each Renewal Term.

Rushmore will not incur or cause the LLC to incur any expense not identified in a Funding Request approved by LUK without first obtaining LUK's approval.

(c)     Notwithstanding any contrary provision hereof, LUK will arrange for the funding of all costs required to purchase a Portfolio and collect the related Debt, either through Capital Contributions by LUK and Rushmore to the LLC, third party financing that is non-recourse to the Members, excess funds of the LLC or any Subco, or a combination thereof. LUK shall have full discretion as to the form and timing of the funding and the terms thereof, provided LUK complies with the terms of any individual Contract of Sale for a Portfolio agreed to by LUK.

(d)     Rushmore and, by their execution hereof, the members and principals of Rushmore identified in Annex 1, jointly and severally, warrant, covenant and agree that (i) they are the sole members and principals of Rushmore, (ii) without the written approval of LUK, which shall not be unreasonably withheld, there shall be no change in the membership of Rushmore, including but not limited to, the admittance of any new members or principals and (iii) each Capital Contribution required to be made by Rushmore hereunder will be made from funds provided by such members and principals of Rushmore, and not from funds provided by family, friends, Affiliates or other third parties.

SECTION 5.04.     Loans.  Notwithstanding anything contained herein to the contrary, LUK hereby agrees that if, and to the extent that, the LLC's revenues and funds distributed to the Members under Section 6.01(c)(ii) through Section 6.01(c)(v) are not sufficient to distribute Distributable Proceeds to the Members as required under Section 6.01(b) hereof, then either LUK or one of its Affiliates will loan the required funds to the LLC. All loans made pursuant to this Section 5.04: (i) shall be made only if, and to the extent that, the distributions to the Members pursuant to Sections 6.01(c)(ii) through Section 6.01(c)(v) are less than the distributions required to be made under Section 6.01(b) hereof, (ii) shall be payable from the assets of the LLC with recourse against and a right of contribution from any Member to whom the distributions are made; (iii) shall bear interest at an annual rate equal to fifteen percent (15%) per annum, compounded annually, and (iv) shall mature and be due and payable from Distributable Proceeds distributed pursuant to Section 6.01(c)(i) hereof, or in such amount and at such times as shall otherwise determine, with all payments to be applied, first, to accrued and unpaid interest and, second, to outstanding principal.

SECTION 5.05.   Capital Accounts.  The LLC shall maintain a separate Capital Account for each Member.

297428-9                                  11

SECTION 5.06.   No Interest.  Except as otherwise expressly provided in this Agreement, no interest shall be paid by the LLC on Capital Contributions, balances in Members' Capital Accounts or any other funds contributed to the LLC or distributed or distributable by the LLC under this Agreement.

SECTION 5.07.   No Withdrawal; Return of Contribution.  No Member shall have the right to withdraw any portion of such Member's Capital Account.  Except as required by the LLCL, no Member shall be personally liable to any other Member for the return of any Capital Contributions (or any additions thereto), it being agreed that any return of capital as may be made from time to time shall be made solely from the assets of the LLC and only in accordance with the terms hereof.

## ARTICLE VI
## DISTRIBUTIONS AND ALLOCATIONS

SECTION 6.01.   Distributions.

(a) Other than distributions made pursuant to Article XIV and subsection (b) below, all distributions shall be made at such times and in such amounts as determined in the sole discretion of LUK; provided, however, in determining whether to make a distribution of Distributable Proceeds LUK shall consult with Rushmore and shall reasonably consider whether to make a distribution or have the LLC retain the Distributable Proceeds for investment in other Portfolios to be purchased by the LLC.

(b) Notwithstanding Section 6.01(a), in any event LUK shall distribute Distributable Proceeds for each fiscal year (to the extent available after the payments required under Section 6.01(c)(i)) to each Member in an aggregate amount equal to the product of (a) the net taxable income of the LLC allocated to such Member for such fiscal year, multiplied by (b) thirty-five percent (35%).  Such product for each Member is referred to as the Member's **"Estimated Tax Liability"** for the fiscal year.  Any Distributable Proceeds distributed pursuant to the immediately preceding sentence for any fiscal year shall be distributed to the Members in proportion to their respective Estimated Tax Liabilities for such fiscal year.  Any amounts distributed to a Member pursuant to this Section 6.01(b) shall (i) be distributed only after taking into account all prior distributions of Distributable Proceeds above, and (ii) be applied to reduce the Distributable Proceeds that would otherwise be next distributed to such Member pursuant to Section 6.01(c)(ii) through Section 6.01(c)(v).  With the approval of LUK, distributions pursuant to this Section 6.01(b) may be given priority over any distributions that would otherwise be required pursuant to Section 6.01(c)(i).  To the extent reasonably feasible, distributions described in this Section 6.01(b) shall be made at such times so as to permit the Members and their direct or indirect owners to pay income taxes imposed on their shares of the net taxable income of the LLC on a timely basis, including payments of estimated tax.

(c) Subject to Section 6.02 and Section 8.02, all distributions of funds or other assets available for distribution over the life of the LLC will be distributed as follows, in the following order of priority:

CONFIDENTIAL                                                           LR_GUZ000102

(i)     First, to pay principal and unpaid accrued interest on any loans made to the LLC pursuant to Section 5.04, in proportion to their respective amounts of the outstanding principal and accrued interest of such loans, with each distribution to be applied, first, to any accrued and unpaid interest on such loans and, second, to any outstanding principal;

(ii)    Second, to LUK and Rushmore, *pro rata* to their respective Capital Accounts, until LUK and Rushmore have each received an amount equal to their respective Unreturned Capital.

(iii)   Third, to LUK, until LUK has received an amount equal to its Unreturned Cumulative Capital.

(iv)    Fourth, eighty-five percent (85%) to LUK and fifteen percent (15%) to Rushmore, until LUK has received an amount equal to the LUK Enhanced Unreturned Cumulative Capital.

(v)     Fifth, any remaining funds will be distributed eighty percent (80%) to LUK and twenty percent (20%) to Rushmore.

SECTION 6.02.   Special Rules for Calculating Certain Distributions.

(a) Portfolio Grouping.

(i)     Each Portfolio that the LLC invests in will be allocated to a group of Portfolios (**"Portfolio Group"**). Subject to Section 6.02(c), the Portfolios will be allocated to each Portfolio Group chronologically as the LLC invests in such Portfolios. Portfolios will be allocated to Portfolio Groups solely for purposes of determining how Distributable Proceeds will be distributed to the Members under Section 6.01 in the event that Debt in an individual Portfolio is collected or that an individual Portfolio is sold and LUK determines pursuant to Section 6.01 to distribute such proceeds.

(ii)    The first Portfolio Group (**"First Portfolio Group"**) will consist of all Portfolios purchased during the 180-day period commencing on the Initial Portfolio Closing Date. Each subsequent Portfolio Group will consist of all Portfolio(s) purchased during each consecutive 180-day period following the 180th day after the Initial Portfolio Closing Date.

(iii)   Each Portfolio Group shall be consecutively numbered (i.e., the First Portfolio Group, the Second Portfolio Group, the Third Portfolio Group, the Fourth Portfolio Group) and such nomenclature shall continue for each Portfolio Group formed during the Term of this Agreement.

(iv)    Each three consecutive Portfolio Groups, e.g., the First Portfolio Group, the Second Portfolio Group and the Third Portfolio Group, shall be further included in a **"Combined Portfolio Group"** which in turn shall be consecutively numbered (i.e., the First Combined Portfolio Group, the Second Combined Portfolio Group, the Third Combined Portfolio Group and such nomenclature

CONFIDENTIAL                                                      LR_GUZ000103

shall continue for each Combined Portfolio Group formed during the Term of this Agreement. Each Portfolio Group shall be included in only one Combined Portfolio Group.

(b) Distributable Proceeds.  In the event that LUK determines to make a distribution under Section 6.01(c)(ii) through (v) at a time when the LLC continues to own, directly or indirectly, one or more Portfolios, for purposes of determining each Member's share of Distributable Proceeds attributable to a specific Portfolio (the "**Relevant Portfolio**"), the LLC will be treated as if it owned no Portfolios other than the Portfolios in the Portfolio Group that includes the Relevant Portfolio and that the only Capital Contributions made by the Members to the LLC are those made to the Subcos holding the Portfolios included in such Portfolio Group. In that case, in determining each Member's share of the Distributable Proceeds, all previous distributions attributable to the Portfolio Group made to the Members pursuant to Section 6.01 will be taken into account for purposes of determining each Member's share of the Distributable Proceeds to assure that each Member is receiving distributions on an aggregate basis from the Portfolio Group consistent with the distribution provisions of Section 6.01.

(c) Portfolio Manager's Profit Split.  Notwithstanding any contrary provision of Section 6.02(b):

(i)     If and when the First Portfolio Group, as a whole, shall have achieved its Projected Net Profit, then Rushmore shall have earned the Portfolio Manager's Profit Split with respect to the First Portfolio Group.

(ii)     If a Combined Portfolio Group shall fail to meet the aggregate Projected Net Profit for all Portfolio Groups in that Combined Portfolio Group, then no Portfolio Manager's Profit Split shall be deemed to have been earned with respect to that Combined Portfolio Group or any Portfolio Group (other than the First Portfolio Group in the First Combined Portfolio Group, as provided in subsection (i) above) within that Combined Portfolio Group. If a Combined Portfolio Group shall meet the aggregate Projected Net Profit for all Portfolio Groups in that Combined Portfolio Group (determined on a cumulative basis), then the Portfolio Manager's Profit Split shall be deemed to have been earned with respect to that Combined Portfolio Group; provided, however, that notwithstanding the foregoing, the Portfolio Manager's Profit Split shall not be deemed to have been earned with respect to any Combined Portfolio Group unless and until each Portfolio Group in that Combined Portfolio Group shall have generated an amount of Distributable Proceeds at least equal to the amounts needed to make the distributions specified in Section 6.01(c)(i) and (ii) with respect to such Portfolio Group.

(iii)     Except for the First Portfolio Group as provided in subsection (i) above, every Combined Portfolio Group shall stand on its own and not be melded, combined, supplemented, added or in any way considered with any other Combined Portfolio Group, as the case may be, with respect to distributions hereunder and the Portfolio Manager's Profit Split.

CONFIDENTIAL                                                    LR_GUZ000104

(d)     Sale of Remaining Portfolios.  In the event that the LLC sells all of its remaining Portfolios or the Members' interests are sold in whole or in part to a Person other than an Affiliate of either Member, the Portfolio groupings will be disregarded and the amount of distributions or sale proceeds, as applicable, each Member will receive will be adjusted as necessary, such that each Member will receive an amount equal to the amount that such Member would have received if the LLC had been liquidated on the date of such transaction and such Member had received distributions that, on an aggregate basis over the life of the LLC (taking into account distributions made by the LLC), are consistent with the distribution provisions of Section 6.01.  If, as a result of a distribution under Section 6.02(b) or Section 6.02(c), a Member has received Distributable Proceeds in excess of the amount that such Member otherwise would have received had no distribution under Section 6.02(b) or Section 6.02(c) been made (the "**Excess Amount**"), such Member will not be entitled to receive any distributions or sale proceeds until such Excess Amount shall have been reduced to zero as a result of payments out of such sale proceeds or distributions under Section 6.02(d) to each other Member, provided that the Excess Amount shall not include any Portfolio Manager's Profit Split previously earned with respect to any Portfolio, Portfolio Group or Combined Portfolio Group.

(e)     Dissolution.  The final distributions from the LLC will be made in such a manner to assure that all distributions from the LLC over the life of the LLC are made, on an aggregate basis, in a manner consistent with the distribution provisions of Section 6.01 and 6.02.

SECTION 6.03.   Restricted   Distributions.     Notwithstanding   any provision to the contrary contained in this Agreement, the LLC shall not make a distribution to any Member on account of its interest in the LLC if such distribution would violate applicable law.

SECTION 6.04.   Allocations.

(a)     The income, deductions, gains, losses and credits of the LLC for a LLC Year shall be allocated by the Tax Matters Partner among the Members who were Members during such LLC Year in a manner that is equitable, practicable and consistent with the Code and the regulations thereunder and other applicable law, taking into account the Capital Contributions of the Members, the requirements of this Agreement with respect to Distributions, any Distributions made to the Members, and the difference between income for tax purposes and profitability for LLC purposes (for example, unrealized gains and losses being included in the latter but not in the former); provided, however, that no such allocation shall discriminate against any Member or contravene the provisions of this Agreement.

(b)     Except as required by Sections 704(b) and 704(c) of the Code, the allocation among the Members of items of income, deduction, gain, loss and credits of the LLC for income tax purposes shall be determined in accordance with Section 6.04(a) hereof.

(c)     The LLC, in the discretion of the Tax Matters Partner, may make, or not make, "curative" or "remedial" allocations (within the meaning of the Treasury

CONFIDENTIAL                                                                    LR_GUZ000105

Regulations under Section 704(c) of the Code) including, but not limited to (i) "curative" allocations which offset the effect of the "ceiling rule" for a prior taxable year (within the meaning of Treasury Regulation Section § 1.704-3(c)(3)(ii)) and (ii) "curative" allocations from dispositions of contributed property (within the meaning of Treasury Regulation Section § 1.704-3(c)(3)(iii)(B)). The foregoing allocations made pursuant to this Section 6.04(c) shall be determined by the Tax Matters Partner, in accordance with any permissible method under Section 704(c) of the Code and any applicable Treasury Regulations thereunder.

(d)     In the event the fair market value of any LLC asset is to be determined for any purpose under this Agreement, including, but not limited to, any determinations needed to be made in connection with Capital Contributions, Distributions or allocations pursuant to this Agreement, such determination shall be made by the Tax Matters Partner.

ARTICLE VII
MANAGEMENT AND OPERATION OF THE LLC

SECTION 7.01.    Debt Collection. The LLC shall retain the Attorney to use its best efforts to collect all Debt in the Portfolios, for the fees and upon the terms and conditions set forth in an agreement (such agreement, as it may be amended, extended or restated, and any successor agreement, the **"Collection Agreement"**) between the Attorney and the LLC, substantially in the form of Annex 3 hereto. In the event the Collection Agreement shall terminate for any reason, LUK shall act promptly to engage another experienced firm of collection attorneys of comparable skill, experience and capability to collect such Debt. Notwithstanding the foregoing, if at any time following a date one year following the Initial Portfolio Closing Date net proceeds received by the LLC from the sale of all of the Portfolios acquired hereunder and the collection of the Debt thereunder, in the aggregate, are less than ninety percent (90%) of the amounts thereof as set forth in the Projections, LUK shall have the right, in its sole discretion to retain another firm or firms of collection attorneys (the **"Other Attorneys"**) to collect up to twenty percent (20%) of the Debt in each Portfolio purchased by the LLC hereunder. Notwithstanding anything contained herein or elsewhere to the contrary, the Attorney shall continue to collect all accounts in any Portfolio where (i) the Debtor has entered into an installment payment arrangement or (ii) the Attorney has entered a judgment against the Debtor for collection of the Debt in such Portfolio, constituting a lien upon real estate owned by the Debtor.

SECTION 7.02.    Management.

(a)     The management of the business and affairs of the LLC shall be vested exclusively in LUK, which shall have the power to do any and all acts necessary or convenient for the furtherance of the purpose of the LLC described in this Agreement, including all powers, statutory or otherwise, possessed by members of a limited liability company under the LLCL; provided, however, that the Portfolio Manager, subject to LUK's approval of each Funding Request in accordance with Section 4.03(a) and subject to Section 7.02(d), shall be responsible for all aspects relating to the acquisition of a Portfolio including identifying potential acquisitions, making Funding Requests to LUK, conducting due diligence with respect to each acquisition, negotiating the terms and

*Rushmore*

CONFIDENTIAL                                                                         LR_GUZ000106

Contracts of Sale with respect to a potential acquisition and the collection of the Debt with respect to all Portfolios, including without limitation supervising the performance of the Attorney pursuant to, and otherwise enforcing the terms of, the Collection Agreement and supervising the performance of all Other Attorneys, pursuant to, and otherwise enforcing the terms of, their respective collection agreements with the LLC.  Without limiting the generality of the foregoing, but subject to the last sentence of Section 7.03(a), the Portfolio Manager will (i) use its best efforts to insure that each of the members of the Portfolio Manager shall devote as much time as is necessary or advisable to the performance of the responsibilities of the Program Manager under this Agreement, (ii) use its best efforts to insure that each of the Attorney and the Other Attorneys will at all times make such collection efforts, and with such priority, as shall equal the highest standards it employs for any of its respective other clients, and (iii) advise LUK promptly at any time it shall believe that the Attorney, for any reason, is not or may not be able effectively to collect the Debt in accordance with such standards.

(b)      LUK is hereby designated as an authorized person, within the meaning of the LLCL, to execute, deliver and file the Certificate of Formation and any amendments and/or restatements thereof required by law.  LUK shall have absolute and complete responsibility for the management of the business and affairs of the LLC.

(c)      No formal meeting of the Members shall be required where the vote or consent of the Members may be required or permitted by this Agreement. Whenever action of the Members is required or permitted under this Agreement, such action may be taken by means of a conference telephone or similar communications equipment or otherwise in such form as shall be reasonably necessary to take such action; *provided, however*, any proposals, budgets or approvals required by Article IV or V must be in writing.

(d)      Without limiting the generality of the foregoing, LUK shall have exclusive control over (i) the decision regarding whether the LLC will invest in a Portfolio as well as the sale or other disposition of any or all of the Portfolios; (ii) approval of Portfolio acquisitions; (iii) sale of individual Portfolios, the LLC's entire portfolio of Portfolios or any substantial asset of the LLC; (iv) approval of consultants, counsel (other than the initial Attorney) (which may be Meltzer, Lippe & Goldstein, LLP) and auditors and all related procedures; (v) all aspects of financing of the Portfolios; and (vi) salaries and bonuses of key personnel of the LLC or any Subco. Notwithstanding anything to the contrary herein, the Collection Agreement may not be modified, amended, terminated, extended, renewed or replaced, nor any of its provisions waived, including without limitation LUK's exclusive right to control all proceeds of the collection of Debts, without the prior written consent of LUK.

(e)      The Portfolio Manager shall receive an administrative fee of $1,000 each month from the LLC, payable not later than the tenth (10th) day of each month for the month then ended.  To the extent necessary, LUK will make a Capital Contribution to fund this payment by the LLC.  Such payment will not be treated as a distribution or allocation made pursuant to Article VI.

CONFIDENTIAL                                                                        LR_GUZ000107

SECTION 7.03.   Non-Delegation; Exclusivity.

(a)      Rushmore's duties under this Agreement or any other Agreement between Rushmore and the LLC may not be delegated or assigned by Rushmore without the prior written consent of LUK. Subject to Section 8.01 and Section 7.03(b), Rushmore agrees that during the term of the LLC neither it nor its members, principals or Affiliates will invest in, develop or pursue any aspect of the business of purchasing Portfolios for their own account or for the account of third parties, except as and to the extent expressly permitted in this Agreement. Nothing in this Agreement shall restrict (i) LUK or any of its Affiliates from engaging in any business or other activities in addition to those contemplated hereby, or (ii) Rushmore from engaging in the debt collection business with respect to accounts which are not part of the Portfolios acquired by the LLC hereunder, including (1) its existing portfolios, (2) any Portfolios it may purchase after rejection by LUK, or (3) Portfolios deemed de minimus under Section 4.03(b).

(b)      LUK understands and acknowledges that the members and principals of Rushmore are also members, officers or employees of the Attorney.

SECTION 7.04.   Liability of Members; Indemnification.

(a)      No Member shall be liable, in damages or otherwise, to the LLC or any other Member for any act or omission performed or omitted to be performed by it in good faith pursuant to the authority granted to such Member by this Agreement or the LLCL.

(b)      To the fullest extent permitted by the laws of Delaware, the LLC shall indemnify and hold harmless each Member and its respective officers, directors, shareholders, members or partners (each, an "Indemnitee"), from and against any and all losses, claims, demands, costs, damages, liabilities (joint or several), expenses of any nature (including reasonable attorneys' fees and disbursements), judgments, fines, settlements and other amounts ("Damages") arising from any and all claims, demands, actions, suits or proceedings, whether civil, criminal, administrative or investigative, in which an Indemnitee may be involved, or threatened to be involved, as a party or otherwise, arising out of or incidental to the business of the LLC, regardless of whether an Indemnitee continues to be a Member or an officer, director, shareholder, member or partner of such Member at the time any such liability or expense is paid or incurred, except for any Damages based upon, arising from or in connection with any act or omission of an Indemnitee committed without authority granted pursuant to this Agreement or as a criminal act or with gross negligence or otherwise constituting willful misconduct.

(c)      Expenses (including reasonable attorneys' fees and disbursements) incurred in defending any claim, demand, action, suit or proceeding, whether civil, criminal, administrative or investigative, subject to Section 7.04(b) hereof, shall be paid (or caused to be paid) by the LLC in advance of the final disposition of such claim, demand, action, suit or proceeding upon receipt of an undertaking by or on behalf of the Indemnitee to repay such amount if and when it shall ultimately be determined, by a court of competent jurisdiction, that the Indemnitee is not entitled to be indemnified by the LLC as authorized hereunder or is not entitled to such expense reimbursement.

CONFIDENTIAL                                                                    LR_GUZ000108

(d)    The indemnification provided by Section 7.04(b) hereof shall be in addition to any other rights to which an Indemnitee may be entitled under any agreement or vote of the Members, as a matter of law or otherwise, both (i) as to action in the Indemnitee's capacity as a Member or as an officer, director, shareholder, member or partner of a Member, and (ii) as to action in another capacity, and shall continue as to an Indemnitee who has ceased to serve in such capacity and shall inure to the benefit of the heirs, successors, assigns, administrators and personal representatives of the Indemnitee.

(e)    Any indemnification hereunder shall be satisfied only out of the assets of the LLC, and the Members shall not be subject to personal liability by reason of these indemnification provisions.

(f)    An Indemnitee shall not be denied indemnification in whole or in part under Section 7.04(b) hereof because the Indemnitee had an interest in the transaction with respect to which the indemnification applies if the transaction was otherwise not prohibited by the terms of this Agreement.

SECTION 7.05.   Other Matters Concerning the Members.

(a)    Each Member may rely on and shall be protected in acting or refraining from acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, bond, debenture or other paper or document reasonably believed by it to be genuine and to have been signed or presented by the proper Person or Persons.

(b)    For purposes of this Agreement, each Member may consult with legal counsel, accountants, appraisers, management consultants, investment bankers, other consultants and advisers selected by it, any one or more agents or employees of the LLC and any written advice or written opinion of any such Person as to matters which such Member reasonably believes to be within such Person's professional or expert competence, and any act or omission, if done or omitted to be done in good faith reliance upon any such advice or opinion, will be conclusively presumed not to constitute fraud, gross negligence or willful or wanton misconduct.

(c)    Each Member hereby severally represents and warrants to each other Member and to the LLC that it is acquiring its interest in the LLC for its own account for investment and not with a view to the distribution thereof or with any present intention of distributing such interest, in each case in violation of applicable securities laws.

SECTION 7.06.   Costs and Expenses.  Subject to the other provisions of this Agreement, the LLC shall pay (or cause to be paid) all costs and expenses of the LLC incurred in pursuing and maintaining, or otherwise related to, the LLC's business  Such costs and expenses shall include, without limitation, all legal, accounting, selling, filing, registration and other costs.  Subject to the other provisions of this Agreement, the LLC promptly shall reimburse any Member for its out-of-pocket costs incurred in exercising its authority pursuant to this Agreement.

CONFIDENTIAL                                                        LR_GUZ000109

## ARTICLE VIII
## TERM AND TERMINATION

SECTION 8.01.   Term of Agreement.

(a)      This Agreement shall continue for an initial term (the "**Initial Term**") of twenty-four (24) months from the date hereof, unless sooner terminated pursuant to the terms hereof. Notwithstanding the foregoing, provided that the aggregate Capital Contributions made by LUK during (i) the Initial Term shall be not less than $20,000,000, and (ii) any Renewal Term shall be not less than $14,000,000; LUK shall have two (2) options to extend this Agreement, each for an additional period of twelve (12) months (a "**Renewal Term**", and the Initial Term, as so extended, the "**Term**"), exercisable upon written notice to Rushmore given not later than sixty (60) days prior to the end of the Initial Term or Renewal Term, as applicable.

(b)      After the termination of this Agreement for any reason other than a breach of this Agreement by LUK, LUK shall have a right of first refusal ending eighteen (18) months after such termination to match any bona fide offer to provide Rushmore or its Affiliates the same or similar type of financing as LUK has provided hereunder. Rushmore will provide LUK with notice in writing immediately upon receipt of any such proposed financing, setting forth the proposed terms thereof, and LUK shall have ten (10) days from receipt thereof to notify Rushmore in writing of the exercise of such right of first refusal.

SECTION 8.02.   Termination of Agreement by LUK.   LUK shall have the right to terminate this Agreement upon written notice to Rushmore upon the occurrence of one or more of the following events:

(a)      Rushmore is in default in the performance or observance of any material term or provision of this Agreement and such default shall continue uncured for ten (10) days after written notice from LUK or, if said default shall be of such a nature that it cannot be cured within such 10-day period, Rushmore shall not have diligently commenced curing such default within such 10-day period, and shall not thereafter with reasonable diligence and good faith proceed to cure such default;

(b)      There shall be filed against Rushmore in any court pursuant to any statute either of the United States or of any state a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of its property, and within sixty (60) days thereof Rushmore fails to secure a discharge thereof, or if Rushmore shall make an assignment for the benefit of creditors, or file a petition in bankruptcy or insolvency or for reorganization or an arrangement or for the appointment of a receiver or trustee of all or a portion of Rushmore's property;

(c)      Any of the members or principals of Rushmore (including but not limited to those listed on Annex 1) or the principals or members of the Attorney (including but not limited to Mel Harris and Michael Young) shall have been convicted of or pleaded no contest to, or censured for actions constituting, a felony or a misdemeanor involving moral turpitude, including in each case a violation of any laws,

297428-9

20

regulations, ordinances or orders of any court or governmental agency or regulatory authority relating to the collection of debts;

      (d)    The Collection Agreement shall have expired or been terminated, and a replacement or successor agreement acceptable to LUK in all respects shall not be in full force and effect;

      (e)    Kerry Lutz shall cease to be the Managing Member of Rushmore or to be active in the management of its business, whether by reason of death, disability or any other cause; or

      (f)    At any time after the end of the eighteenth (18th) month of the Term or any Renewal Term, if the net proceeds received by the LLC from the sale or collection of all of the Portfolios acquired hereunder and the collection of the Debt thereunder, in the aggregate, are less than eighty percent (80%) of the amounts thereof as set forth in the Projections.

      SECTION 8.03.   <u>Termination of Agreement by Rushmore</u>.  Rushmore shall have the right to terminate this Agreement upon written notice to LUK upon the occurrence of one or more of the following events:

      (a)    LUK is in default in the performance or observance of any material term or provision of this Agreement and such default shall continue uncured for ten (10) days after written notice from Rushmore or, if said default shall be of such a nature that it cannot be cured within such 10-day period, LUK shall not have diligently commenced curing such default within such 10-day period, and shall not thereafter with reasonable diligence and good faith proceed to cure such default;

      (b)    There shall be filed against LUK in any court pursuant to any statute either of the United States or of any state a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of its property, and within sixty (60) days thereof LUK fails to secure a discharge thereof, or if LUK shall make an assignment for the benefit of creditors, or file a petition in bankruptcy or insolvency or for reorganization or an arrangement or for the appointment of a receiver or trustee of all or a portion of LUK's property.

      SECTION 8.04.   <u>Effect of Termination</u>.  Upon termination of this Agreement at the end of the Term or pursuant to Section 8.02 or 8.03, (a) no further Portfolios shall be acquired by the LLC and neither party shall have any further obligation with respect thereto, (b) LUK and, unless otherwise directed by LUK, the Portfolio Manager shall continue to take all steps necessary to maximize the value of each Portfolio and carry out the terms of this Agreement with respect thereto, by collecting the Debts, disposing of the Portfolios to third parties, or otherwise in the sole discretion of LUK, (c) except in the case of a termination pursuant to Section 8.03(a), LUK shall have the right in its sole discretion to engage other parties to perform the obligations of the Portfolio Manager hereunder with respect to the Portfolios and, if the Collection Agreement shall have been terminated, to engage other attorneys as collectors of the Debts, on such terms as it shall determine in its sole discretion, (d) the existence of the LLC shall continue, subject to Article XIV, and (e) the Members shall continue to be

297428-9

21

LR_GUZ000111

entitled to receive Distributions pursuant to Article VI hereof, provided, however, that (i) in the event this Agreement shall have been terminated pursuant to Section 8.02 (a), (b), (c), (d) or (e), Rushmore's right to receive Distributions shall be limited to the aggregate of its Unreturned Capital, and (ii) in the event this Agreement shall have been terminated pursuant to Section 8.02(f), then for purposes of determining LUK's Priority Returns following such termination, LUK's 15% Priority Return shall be deemed to be a "25% Priority Return" and LUK's Enhanced Priority Return shall be an amount equal to twenty five percent (25%) per annum, and the definitions of such terms and the provisions of Section 6.01 shall be modified and adjusted accordingly.

## ARTICLE IX
### BOOKS, RECORDS, ACCOUNTING AND OTHER INFORMATION

SECTION 9.01.   <u>Records and Accounting</u>.  The LLC shall keep or cause to be kept appropriate books and records in accordance with the LLCL with respect to the LLC's business, which books shall at all times be kept at the principal office of the LLC or such other location as determined by LUK.  The books and records of the LLC shall be maintained in such a manner so that the provisions of Section 6.02 can be carried out in the event LLC makes a distribution of Distributable Proceeds.

SECTION 9.02.   <u>Other Information</u>.  For any purpose reasonably related to its Membership Interest, each Member and its representatives shall have free access during normal business hours to discuss the operations and business of the LLC with employees or agents of the LLC, and to inspect, audit or make copies of all books, records and other information relative to the operations and business of the LLC at its own expense; <u>provided</u>, <u>however</u>, that each Member shall preserve the confidentiality of such information.

SECTION 9.03.   <u>Reports and Records of Portfolio Manager</u>.

(a)    Not later than the tenth (10th) day after the end of each calendar month during the Term, the Portfolio Manager will furnish to LUK a detailed report of all Portfolio activity during the month just ended, substantially in the form and containing the information set forth in Annex 4 hereof, and such other information as LUK shall from time to time reasonably request.

(b)    LUK shall have the right, at any time or from time to time, during normal business hours and upon forty-eight (48) hours' prior notice to the Portfolio Manager, to audit the books and records of the Portfolio Manager relating to the Portfolios under this Agreement and the collections of Debt related thereto. The Portfolio Manager shall maintain all such records for a period of three (3) years after the Term at its office at 33 West Main Street, Suite 205, Elmsford, New York 10523 or such other place as shall be the Portfolio Manager's executive office; provided such office shall be located within the metropolitan New York City area.

CONFIDENTIAL                                                              LR_GUZ000112

ARTICLE X
TAX MATTERS

SECTION 10.01. Preparation of Tax Returns. The Tax Matters Partner shall arrange for the preparation and timely filing of all returns of LLC income, gain, deductions, losses, credits and other items necessary for federal, state, local and foreign income tax purposes and shall use all reasonable efforts to furnish to the Members the tax information reasonably required for federal, state, local and foreign income tax reporting purposes. The taxable year of the LLC shall be the calendar year unless another year is required by the Code (the "LLC Year").

SECTION 10.02. Tax Controversies. LUK shall initially be the "Tax Matters Partner," as such term is defined in Section 6231(a)(7) of the Code. The Tax Matters Partner shall exercise any authority permitted the Tax Matters Partner under the Code and Treasury Regulations, provided (i) that nothing herein shall limit the rights granted Members under the Code and Treasury Regulations (including, without limitation, the right, subject to Section 6222 of the Code, to take inconsistent positions) and (ii) in the event of an income tax audit of any tax return of the LLC, the filing of any amended return or claim for refund in connection with any item of income, gain, loss, deduction or credit reflected on any tax return of the LLC, or any administrative or judicial proceedings arising out of or in connection with any such audit, amended return, claim for refund or denial of such claim (a "Tax Controversy"), the Tax Matters Partner shall consult with the Members prior to taking any material actions. Each Member agrees to indemnify and hold harmless the LLC and all other Members from and against any and all liabilities, obligations, damages, deficiencies and expenses resulting from any breach or violation by such Member of the provisions of this Section 10.02, and from all actions, suits, proceedings, demands, assessments, judgments, costs and expenses, including reasonable attorneys' fees and disbursements, incident to any such liability, breach or violation.

SECTION 10.03. Withholding. The LLC shall comply with withholding requirements under Federal, state and local law and shall remit amounts withheld to and file required forms with the applicable jurisdictions. To the extent the LLC is required to withhold and pay over any amounts to any authority with respect to distributions or allocations to any Member, the amount withheld shall be treated as a distribution in the amount of the withholding to that Member. In the event of any claimed overwithholding, Members shall have no rights against the LLC or any other Member. If the amount of withholding tax paid by the LLC was not withheld from actual distributions, the LLC may, at its option, (i) require the Member to promptly reimburse the LLC for such withholding or (ii) reduce any subsequent distributions by the amount of such withholding. Each Member agrees to furnish the LLC with any representations and forms as shall reasonably be requested by the LLC to assist it in determining the extent of, and in fulfilling, its withholding obligations. Each Member agrees to indemnify and hold harmless the LLC and all other Members from and against any and all liabilities, obligations, damages, deficiencies and expenses (including reasonable legal and accounting fees) resulting from any tax liability incurred by the LLC attributable to the LLC's failure to withhold taxes on distributions or allocations to such Member.

CONFIDENTIAL                                                        LR_GUZ000113

## ARTICLE XI
## TRANSFERS OF MEMBERSHIP INTERESTS

SECTION 11.01.  Transfer Restrictions.  Except as provided in this Article XI, no Transfer of all or any portion of a Membership Interest to any Person shall be permitted without the prior written consent of all Members.  LUK may, without the consent of any other Member, transfer all or a portion of its Membership Interest to any Affiliate of LUK or of Leucadia National Corporation (**"Permitted Transferee"**). Notwithstanding any Transfer permitted by this Article XI, in no event shall all or any portion of a Membership Interest be transferred unless and until the LLC receives from the transferee the information and agreements that the LLC may reasonably require.

SECTION 11.02.  Compliance with this Agreement and Applicable Securities Laws.  Any attempted Transfer of all or any portion of a Membership Interest without compliance with this Article XI shall be null and void ab initio.  Any Transfer of a Membership Interest or portion thereof (or any beneficial interest therein) that is otherwise in accordance with this Article XI must also be in compliance with all applicable federal and state securities laws and, in the case of a Transfer in reliance on an exemption from such laws, may be made only if the LLC receives a written opinion of counsel of the transferor, in form and substance satisfactory to the LLC and delivered to the LLC prior to any such Transfer, to the effect that such an exemption is available and the Transfer is otherwise in compliance with such securities laws.

SECTION 11.03.  Recording of Transfer and Exchange.  The LLC shall cause to be kept a register in which the Membership Interests and the Transfer of such Membership Interests shall be recorded.

## ARTICLE XII
## ADMISSION OF SUBSTITUTE OR ADDITIONAL MEMBERS

SECTION 12.01.  Rights of Assignees.  Except for a transfer to a Permitted Transferee for whom consent shall not be required, with the consent of all Members, any Member may transfer all or a part of its Membership Interest; however, the transferee of such Membership Interest (**"Assignee"**) has no right to participate in the management of the business and affairs of the LLC or to become a Member.  The Assignee is only entitled to receive the Distributions and return of capital, and to be allocated the income, gain, deductions, losses and credits attributable to the transferred Membership Interest.

SECTION 12.02.  Admission of Substitute Members.  An Assignee of a Membership Interest shall be admitted as a substitute member (a "Substitute Member") and admitted to all the rights of the Member who initially assigned the Membership Interest only with the consent of all Members.  A Permitted Transferee of LUK shall be admitted as a Substitute Member when the Membership Interest is transferred to the Permitted Transferee and need not obtain the consent of the other Members to be admitted as a Substitute Member.  A Substitute Member shall have all the rights and powers and shall be subject to all the restrictions and liabilities of the Member originally assigning the Membership Interest.  The admission of a Substitute Member, without

CONFIDENTIAL                                                              LR_GUZ000114

more, shall not release the Member originally assigning the Membership Interest from any liability to the LLC that may have existed prior to the admission.

SECTION 12.03. Admission of Additional Members. The Members may, upon unanimous consent, permit the admission of Additional Members (other than Permitted Transferees of LUK) and shall determine the Capital Contributions of such Additional Members and any other conditions to be met for admission.

ARTICLE XIII
RESIGNATION OF MEMBERS

SECTION 13.01. Resignation of Members. No Member shall have the right to resign or retire from the LLC, except as contemplated in connection with the admission of a Substitute Member in compliance with Articles XI and XII.

ARTICLE XIV
DISSOLUTION AND LIQUIDATION

SECTION 14.01. Events of Dissolution. The LLC shall be dissolved and its affairs shall be wound up on the first to occur of any of the following events:

(a)     the sale of all or substantially all of the assets of the LLC;

(b)     the written consent of LUK; or

(c)     the entry of a decree of judicial dissolution under § 18-802 of the LLCL.

SECTION 14.02. Effect of Dissolution. Upon dissolution, the LLC shall cease carrying on its business but shall not terminate until the winding up of the affairs of the LLC is completed, the assets of the LLC shall have been distributed as provided in Section 14.03 hereof and a Certificate of Cancellation of the LLC under the LLCL (a "**Certificate of Cancellation**") has been filed with the Secretary of State of the State of Delaware.

SECTION 14.03. Liquidation Upon Dissolution.

(a)     Upon the dissolution of the LLC, sole and plenary authority to effectuate the liquidation of the assets of the LLC shall be vested in a liquidator to be appointed by LUK (the "**Liquidator**"). The Liquidator shall act in a reasonable manner giving consideration to the interests of all Members of the LLC. The Liquidator shall have full power and authority to sell, assign and encumber any and all of the LLC's assets and to wind up and liquidate the affairs of the LLC in an orderly and business-like manner.

(b)     The Liquidator shall reasonably determine, in its sole discretion, the fair value of all assets of the LLC as at the date of distribution of such assets.

CONFIDENTIAL     LR_GUZ000115