# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

JOSE GUZMAN,

                Plaintiff,

    -against-

MEL S. HARRIS AND ASSOCIATES, LLC
LR CREDIT 13, LLC
MEL S. HARRIS
DAVID WALDMAN
KERRY H. LUTZ
TODD FABACHER
MICHAEL YOUNG
SAMSERV, INC.
JOHN ADINO
WILLIAM MLOTOK

              Defendants.

Case No. 16-cv-03499-GBD-RLE

## DEFENDANT LR CREDIT 13, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND PURSUANT TO FED. R. CIV. P. 15(a)(2)

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

STATEMENT OF FACTS .................................................................................. 3

I.    The Fundamental Allegations Underlying The  FAC Are Plainly Belied By The Evidence ............................................................................................... 3

II.    The FAC Is Based On Information Contained In The Years-Old *Sykes* Litigation And LRC's October 2016 Document Production ........................................ 5

III.    Plaintiff Falsely Represented To This Court  That He Would File This Motion In March ............................................................................................... 7

IV.    LRC Has Diligently Complied With Its Discovery  Obligations Despite Plaintiff's Dilatory Tactics .......................................................................... 8

ARGUMENT ........................................................................................ 10

I.    Plaintiff's Motion Was Made In Bad Faith After Unreasonable Delay, And  The Amendment Of The Complaint Would Unfairly Prejudice LRC .............................. 10

    A.    Plaintiff Deliberately Delayed Filing This Motion In Order To Extend The Discovery Deadline And Postpone Litigating The Merits Of This Action ................................................................................... 10

    B.    The Alleged Justifications For Plaintiff's Delay Are Plainly Pretextual ....... 12

    C.    LRC Would Be Unfairly Prejudiced If The Court  Grants Plaintiff Leave To Amend His Complaint ................................................................ 15

II.    The FAC's Proposed Claims Are Futile ............................................... 17

    A.    Evidence Adduced During Discovery Establishes The FAC's Futility ......... 17

    B.    The FAC Fails To Plead GBL § 349 Claims  Against The Proposed Leucadia Defendants ...................................................................... 19

    C.    Plaintiff Fails To Allege Sufficient Facts  To Support Piercing The Corporate Veil .................................................................................. 21

CONCLUSION ...................................................................................... 23

# TABLE OF AUTHORITIES

CASES

Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.
122 F.3d 130 (2d Cir. 1997)...........................................................................21, 22

Appalachian Enterprises, Inc. v. ePayment Sols., Ltd.,
2004 WL 2813121 (S.D.N.Y. 2004)........................................................................20

Block v. First Blood Associates,
988 F.2d 344 (2d Cir. 1993)...................................................................................15

Bodur v. Palisades Collection, LLC,
829 F. Supp. 2d 246 (S.D.N.Y. 2011)....................................................................18

Clayton's Auto Glass, Inc. v. First Data Corp.,
2013 WL 5460872 (E.D.N.Y. 2013).......................................................................20

Cresswell v. Sullivan & Cromwell,
922 F.2d 60 (2d Cir. 1990)....................................................................................10

Dais v. Lane Bryant, Inc.,
2000 WL 145755 (S.D.N.Y. 2000).........................................................................11

Douyon v. N.Y. Med. Health Care, P.C.,
894 F. Supp. 2d 245 (E.D.N.Y. 2012) ...................................................................18

EED Holdings v. Palmer Johnson Acquisition Corp.,
387 F. Supp. 2d 265 (S.D.N.Y. 2004)....................................................................22

Herzlinger v. Nichter,
2011 WL 1434609 (S.D.N.Y. 2011).......................................................................18

Hutter v. Countrywide Bank, N.A.,
41 F. Supp. 3d 363, 375 (S.D.N.Y. 2014) .............................................................20

In re Aluminum Warehousing Antitrust Litig.,
2016 WL 1629350 (S.D.N.Y. 2016).........................................................11, 12, 13, 21

Kalin v. Xanboo, Inc.,
526 F. Supp. 2d 392 (S.D.N.Y. 2007)....................................................................21

Mayfield v. Asta Funding, Inc.,
95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015) .............................................................19

Merrick Bank Corp. v. Chartis Specialty Ins. Co.,
2015 WL 4126780 (S.D.N.Y. 2015).......................................................................17

*New Amsterdam Capital Partners, LLC v. Wilson,*
    2015 WL 1137576 (S.D.N.Y. 2015) .......................................................................10, 11, 13

*Oscar v. BMW of N. Am. LLC,*
    2011 WL 6399505 (S.D.N.Y. 2011) .......................................................................15

*Soler v. G & Y, Inc.,*
    86 F.R.D. 524 (S.D.N.Y. 1980) .......................................................................10

*State Teachers Retirement Board v. Fluor Corp.,*
    654 F.2d 843 (2d Cir. 1981) .......................................................................10

*Stein v. Guardsmark, LLC,*
    2013 WL 3809463 (S.D.N.Y. 2013) .......................................................................15

*Summit Health. Inc. v. APS Healthcare Bethesda, Inc.,*
    993 F. Supp. 2d 379 (S.D.N.Y.2014) .......................................................................17

*Sykes v. Mel Harris & Assocs., LLC,*
    285 F.R.D. 279 (S.D.N.Y. 2012), *aff'd,* 780 F.3d 70 (2d Cir. 2015) .......................................5

*Triemer v. Bobsan Corp.,*
    70 F. Supp. 2d 375 (S.D.N.Y. 1999) .......................................................................23

*United States v. Bestfoods,*
    524 U.S. 51 (1998) .......................................................................21

*Wooten v. Marshall,*
    153 F. Supp. 759 (S.D.N.Y. 1957) .......................................................................23

**STATUTES AND RULES**

15 U.S.C. § 1692, *et seq*.......................................................................1

Fed.R.Civ.P. 5.2.......................................................................4

Fed.R.Civ.P. 12.......................................................................17

Fed.R.Civ.P. 15.......................................................................1, 10

Fed.R.Civ.P. 21.......................................................................10

**OTHER: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS**

N.Y. Gen. Bus. L. § 349 ....................................................................... passim

Defendant LR Credit 13, LLC ("LRC"), through its undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiff's motion to amend the complaint pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure ("Pl.'s Mem.").

## PRELIMINARY STATEMENT

This is an action brought by an individual plaintiff who opted out of the recovery conferred by settlement of the class action entitled *Sykes v. Mel S. Harris, LLC, et al.*, 1:09-cv-08486 (S.D.N.Y.) ("*Sykes*").  On May 10, 2016, Plaintiff filed a complaint against Mel S. Harris & Associates, LLC ("MSH"), LRC, Samserv, Inc. ("Samserv"), and others, asserting claims based on, *inter alia*, violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA"), and N.Y. Gen. Bus. L. § 349 ("GBL § 349").  Plaintiff alleges that he suffered emotional distress as a result of an underlying debt collection lawsuit brought against him by MSH on behalf of LRC.

After ten months of discovery, two extensions of the discovery deadline, and numerous dilatory tactics by Plaintiff, the parties are at last poised to litigate this case on its merits.  LRC is prepared to file a summary judgment motion establishing that Plaintiff did in fact owe the debt upon which the underlying collection lawsuit was based, and that there is no basis to hold LRC vicariously liable for the alleged conduct of its debt collection law firm, MSH, of which LRC was unaware.  Faced with the prospect of a summary judgment motion he cannot overcome, Plaintiff again seeks to delay disposition on the merits, this time through an amended complaint that would turn this straightforward case upside down on the eve of the close of discovery.

Plaintiff's first amended complaint (the "FAC") adds GBL § 349 claims against *six* new defendants.  The new defendants are allegedly three of LRC's direct and indirect corporate parents – Leucadia National Corporation, L-Credit, LLC, and LR Credit LLC (together, the "Proposed Leucadia Defendants") – as well as Rushmore Recovery Management, LLC

("Rushmore"), and Rushmore's members. Each of those proposed "new" defendants, and their tangential relevance to this proceeding, have been known to Plaintiff since before the original complaint in this action was filed. Indeed, the Proposed Leucadia Defendants were named defendants in *Sykes.* Furthermore, the specific facts alleged in the FAC have been known to Plaintiff since at least October 2016, when LRC completed its document production. Even by Plaintiff's own admission, he has had all of the facts necessary to file this motion since at least mid-March 2017, when he represented to this Court that he would seek leave to amend "right away." Yet, instead of diligently pursuing his claims and filing this motion months ago as he represented he would, Plaintiff deliberately delayed filing until the eve of the discovery deadline in a transparent effort to extend discovery and delay any resolution of this case on its merits. Such vexatious conduct plainly warrants denial of Plaintiff's motion for leave to amend.

Leave to amend should also be denied because the claims alleged by the FAC are futile. The FAC contains no specific allegations that the new defendants engaged in consumer-oriented conduct or deceptive practices, as required to state a claim under GBL § 349. Nor could it possibly allege such facts, because the Proposed Leucadia Defendants and Rushmore are separate legal entities that did not interact with – let alone deceive – Plaintiff or any other consumers. The FAC does not even attempt to allege facts sufficient to pierce the corporate veil of LRC's various parent companies. To the contrary, the documents attached to and incorporated by the FAC conclusively establish that the Proposed Leucadia Defendants neither exercised total domination of their corporate subsidiaries nor abused the corporate form to perpetrate a fraud.

For the foregoing reasons and those set forth more fully below, Plaintiff's motion for leave to amend the complaint should be denied with prejudice.

## STATEMENT OF FACTS

**I.**    **The Fundamental Allegations Underlying The**
**FAC Are Plainly Belied By The Evidence**

Plaintiff is an individual who opted out of the recovery conferred by settlement of the

*Sykes* class action.  (FAC ¶ 19.)  The gravamen of Plaintiff's claims is that "MSH, LRC and

Samserv [] procur[ed] a default judgment against him in state court using a false affidavit of

service and [a false] affidavit of merit," and that defendants had "a common scheme against

consumers such as Mr. Guzman by allowing false affidavits of service and false affidavits of

merit to be used to systematically enter default judgments against consumers."  (FAC ¶¶ 19,

112.)  Plaintiff alleges that the affidavit of service in the underlying collection lawsuit reflected

improper service by Samserv, and that the affidavit of merit filed by MSH in that suit was false

because Plaintiff did not owe the "putative debt" described therein.  (FAC ¶¶ 19, 51-53, 60-61,

68.)  Plaintiff's damages rest entirely on the emotional distress he allegedly suffered when he was

forced to defend himself against efforts to enforce a judgment "***for a debt he never even owed***."

(FAC ¶ 93 (emphasis added); *see also id. ¶* 92.)[1]

However, the evidence adduced during discovery has revealed that the fundamental

allegations underlying the FAC are blatantly false.  Most significantly, contrary to the FAC's

allegations, ***documentary evidence conclusively establishes that Plaintiff did in fact owe the***

***debt on which the underlying collections lawsuit was based***.  A credit card statement produced

by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a ***$5,809.51***

debt charged off his account number ***4225-8117-2023-4690*** due to non-payment.  (Balber Decl.

---

[1]    The claims in the original complaint are also based on Plaintiff's allegation that the judgment entered against
him was procured by a false affidavit of merit.

Ex. A.)[2]  This is the exact same debt amount, and the exact same account number, identified in the affidavit of merit filed by MSH in the underlying collection lawsuit (*Id.* Ex. B) – the same affidavit of merit that Plaintiff has so vehemently and consistently claimed is false.[3]  It is also the same debt amount and account number identified in the complaint and default judgment from the underlying collection lawsuit.  (*Id.* Exs. C-D.)  Plaintiff obviously knew that he owed the debt that was the subject of the underlying affidavit of merit.  Accordingly, the FAC's allegations regarding "a debt [Plaintiff] never owed" and "a false affidavit of merit" (FAC ¶¶ 19, 93) are knowingly false and should not be permitted.  Similarly, Plaintiff's damages claim – which stems entirely from his alleged distress due to attempts to collect on a purported false debt – is also completely undermined by the documentary evidence.

In a blatantly improper effort to conceal his debt and maintain the viability of his claims, Plaintiff failed to produce any statements concerning this Chase Bank account, and he purposefully redacted the account numbers from all financial statements that he did produce. Plaintiff also refused to answer LRC's interrogatory demanding that Plaintiff identify whether he "incur[red] any consumer debt greater than $5,000 . . . during the period January 1, 2000 to May 1, 2007.  (Balber Decl. Ex. E, Interrogatory No. 19 (objecting that this interrogatory "seeks discovery that is not relevant").)  LRC would not have discovered the evidence showing that Plaintiff actually did owe the debt at issue if it had not subpoenaed non-party Chase Bank.

---

[2]  "Balber Decl." refers to the Declaration of Scott S. Balber dated May 31, 2017, submitted herewith.  LRC has not redacted the financial account number set forth herein because it was previously disclosed in the record of the underlying state court debt collection proceeding.  *See* Fed. R. Civ. P. 5.2(b)(3); Balber Decl. Exs. B-D.  Plaintiff no longer uses this account.

[3]  The affidavit of merit and related documents from the underlying collections lawsuit incorrectly state the name of the original creditor as First USA Bank.  However, Plaintiff surely had only one $5,809.51 debt charged off from an account number 4225-8117-2023-4690 in July 2004, and thus he obviously knew that he in fact owed the debt underlying MSH's collection lawsuit against him.

LRC plans to file a motion for summary judgment on the basis of this evidence – a fact that no doubt precipitated Plaintiff's all out bid to avoid the close of discovery and the filing of dispositive motions.  Plaintiff's improper conduct should not be countenanced.

## II.    The FAC Is Based On Information Contained In The Years-Old *Sykes* Litigation And LRC's October 2016 Document Production

At the March 16, 2017 status conference (the "March 16, 2017 Conference"), the Court made clear that a motion for leave to amend the complaint would be denied if the proposed amendment were based on information previously known to Plaintiff:

> "[W]e're [] late in the process.  You still have to justify the fact that you're [seeking to amend] at this point . . . [I]f I look at the [FAC] and it would have been obvious to me [the claims could have been made earlier] the defendants probably will win."

(Dk. No. 144 at Tr. 45:23-46:20.)

The FAC is based entirely on information known to Plaintiff before it filed the original complaint or that was included in LRC's October 10, 2016 document production.  Three of the new defendants – the Proposed Leucadia Defendants – are alleged corporate parents of LRC and are in fact named defendants in *Sykes*.  The *Sykes* decisions, which were cited over **twenty** times in Plaintiff's original complaint and read into the record by Plaintiff's counsel during LRC's deposition (Keshavarz Decl. Ex. B at Tr. 63:23-67:14),[4] made public years ago the allegations that the Proposed Leucadia Defendants maintained direct or indirect ownership interests in various entities such as LRC.  *See, e.g., Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 284 (S.D.N.Y. 2012), *aff'd*, 780 F.3d 70 (2d Cir. 2015).   The FAC even cites the *Sykes* class action website as support for its allegation that "MSH, LRC, Rushmore and Samserv engaged in a joint venture [] to obtain default judgments against over 100,000 consumers."  (FAC ¶ 18.)  It

---

[4]  "Keshavarz Decl." refers to the Declaration of Ahmad Keshavarz in Support of Motion to Amend, dated May 17, 2017.  (Dk. No. 157.)

simply defies common sense that Defendant required the deposition of LRC to identify those companies or gain a general understanding of their corporate relationships. (Pl.'s Mem. at 7.)

Assuming *arguendo* that Plaintiff had not been aware of *Sykes*, or felt compelled to obtain documentary evidence verifying the relationships between LRC, the Proposed Leucadia Defendants, Rushmore, and Rushmore's members, it had the opportunity to do so as of October 10, 2016, when LRC completed its document production. Indeed, the facts underlying every one of the FAC's specific allegations concerning the "actual operation and scope of [defendants'] joint venture"[5] (Pl.'s Mem. at 7) are set forth in that production as detailed below:

- *Compare* FAC ¶ 20 (alleging that LRC funds the Joint Venture) *with* LR Credit Joint Venture Agreement § 2.03 (Keshavarz Decl. Ex. C at LR_GUZ000091) ("[L-Credit, LLC] agrees that it will provide to [LR Credit, LLC] financing . . . .");

- *Compare* FAC ¶ 24 (alleging that Rushmore "is to identify portfolios of defaulted consumer debts and bring them to L-Credit for approval. . . .") *with* LR Credit Joint Venture Agreement § 2.02 (Keshavarz Decl. Ex. C at LR_GUZ000091) ("Rushmore agrees that . . . it will have primary responsibility for identifying potential acquisitions [of defaulted consumer debt for LR Credit, LLC].");

- *Compare* FAC ¶ 24 (alleging that "L-Credit would provide 90% of the capital to purchase the portfolio, and Rushmore would provide the remaining 10%") *with* LR Credit Joint Venture Agreement § 5.02 (Keshavarz Decl. Ex. C at LR_GUZ000091) ("In respect of [LR Credit, LLC's] investment in [a subsidiary company used to purchase a portfolio, L-Credit, LLC] will provide 95% of the funds to [LR Credit, LLC] and Rushmore will provide 5% of the funds.");

- *Compare* FAC ¶ 26 (alleging that "Rushmore's role at LR Credit is to identify portfolios of consumer debts for possible purchase, and to manage the collection efforts of LR Credit and its subsidiaries") *with* LR Credit Joint Venture Agreement § 2.02 (Keshavarz Decl. Ex. C at LR_GUZ000091) ("Rushmore . . . will have the primary responsibility of identifying potential acquisitions . . . and providing day-to-day management and servicing of each Portfolio and collection of the underlying Debt.");

---

[5] LRC assumes the "joint venture" referenced in the FAC is intended to refer to the relationship documented in the Joint Venture and Limited Liability Company Agreement of LR Credit LLC, executed November 12, 2003 by L-Credit LLC and Rushmore Recover Management, LLC, (the "LR Credit Joint Venture Agreement"). A copy of the agreement is located at Exhibit C to the Keshavarz Declaration. (Dk. No. 157 at LR_GUZ000091-123.)

- *Compare* FAC ¶ 26 (alleging that "Rushmore hired former Defendant MSH to collect the defaulted consumer debts through litigation and other methods on behalf of LR Credit and its subsidiaries") *with* Agreement for Legal Collection Service ¶ I.A (Keshavarz Decl. Ex. C at LR_GUZ000059) ("[MSH] will undertake legal representation of [LR Credit, LLC] on each Debt placed by [LR Credit, LLC]");

- *Compare* FAC ¶ 27 (alleging that "[t]he principles of Rushmore are the partners and Executive Director of MSH") *with* LR Credit Joint Venture Agreement, Annex 1 (Keshavarz Decl. Ex. C at LR_GUZ000091) (listing the "Members and Principals of Rushmore");

- *Compare* FAC ¶ 27 (alleging that "Rushmore hired MSH at a rate that was lower than the standard industry rate for comparable work") *with* Agreement for Legal Collection Service ¶ II.C (Keshavarz Decl. Ex. C at LR_GUZ000060) ("[MSH] will earn a twenty-five percent (25%) fee" on all debts collected);

- *Compare* FAC ¶ 28 (alleging that "Defendant LR Credit 13, LLC is a wholly owned subsidiary of LR Credit, which in turn is owned by L-Credit and Rushmore") *with* Operating Agreement of LR Credit 13 (Keshavarz Decl. Ex. C at LR_GUZ000059) (reflecting that LR Credit, LLC is the sole member and capital contributor of LR Credit 13, LLC) *and* LR Credit Joint Venture Agreement, Preamble (Keshavarz Decl. Ex. C at LR_GUZ00091) (reflecting that L-Credit and Rushmore are the members of LR Credit, LLC); and

- Compare FAC ¶ 29 (alleging that "[t]he principals of Rushmore—in their roles as the partners and executive director of MSH—exercised control over MSH's conduct in connection with its representation of LR Credit and its subsidiaries") *with* LR Credit Joint Venture Agreement, Annex 1 (Keshavarz Decl. Ex. C at LR_GUZ000122) (reflecting that the "Members and Principals of Rushmore" include Mel S. Harris, David Waldman, and Kerry Lutz, who were partners at MSH, and Michael Young, who was Executive Director of MSH).

This analysis clearly establishes that Plaintiff was aware of each and every "new" factual allegation contained in the FAC in October 2016, over seven months ago. Plaintiff's dilatory tactics cannot be allowed to extend the resolution of this case on the merits.

## III. Plaintiff Falsely Represented To This Court That He Would File This Motion In March

On March 15, 2017, Plaintiff moved for leave to file under seal a motion for leave to amend the complaint. (Dk. No. 133.) Plaintiff's counsel raised his motion with this Court at the March 16, 2017 Conference, during which he represented that "if we get a ruling on [Plaintiff's

motion to file its motion to amend the complaint under seal] right away, *I can move on the motion to amend right away*." (Dk. No. 144 at Tr. 47:14-15 (emphasis added).) This representation was patently untrue. Although the Court granted Plaintiff's motion to file under seal that very same day, Plaintiff waited over *two* full months before filing his motion for leave to amend on May 17, 2017.

## IV.  LRC Has Diligently Complied With Its Discovery Obligations Despite Plaintiff's Dilatory Tactics

LRC has fully and consistently complied with its discovery obligations, even as it has sought to overcome Plaintiff's unending dilatory tactics. For example, while Plaintiff bemoans the fact that LRC's deposition was postponed on three occasions (Pl.'s Mem at 4-5) – twice due to unanticipated conflicts and once to allow Judge Daniels an opportunity to rule on Plaintiff's own frivolous motion for reconsideration of this Court's discovery order (*see* Dk. No. 99) – he conveniently makes no mention of the fact that Plaintiff has refused to make himself and his wife available for depositions. Nor does Plaintiff explain why the Court should excuse his refusal to complete discovery in the more than two months since LRC's deposition.

Plaintiff also erroneously alleges that LRC delayed its document production (Pl.'s Mem. at 3-4), but LRC promptly completed its production on October 10, 2016 – just two weeks after this Court entered the protective order. (Dk. No. 75.) Plaintiff, on the other hand, continues to produce documents responsive to LRC's August 1, 2016 initial request for documents, including by making supplemental productions on April 7, 2017, and May 18 and 30, 2017. And, as noted above, Plaintiff willfully and improperly withheld the evidence that he actually owed the underlying debt which is the subject of this lawsuit.

Plaintiff's dilatory tactics have already resulted in two extensions of the discovery deadline, and Plaintiff is incredibly currently seeking a third extension. The following are a few

illustrative examples of Plaintiff's obstreperous conduct, which is solely intended to delay the adjudication of this case's merits:

- Plaintiff asked this Court at the March 16, 2017 Conference for a second extension of the discovery deadline so it could pursue non-party discovery. (Dk. No. 144 at Tr. 47:16-23 (PLAINTIFF'S COUNSEL:  "I know [Defendants] said a number of things [at their March 10 and 15 depositions] that I want to follow up on either a subpoena to a third party in addition to a discovery demand.  So I would request that the Court extend discovery [until May 30, 2017].").)  However, Plaintiff took only one non-party deposition the following week and then did virtually nothing to obtain non-party discovery until finally short-serving subpoenas on two non-parties on May 12, 2017;

- After this Court denied one of Plaintiff's *four* motions to compel on November 9, 2016, Plaintiff filed a frivolous partial objection with the District Court and used the pendency of that motion as a basis to delay holding the depositions of defendants (*see* Dk. Nos. 90, 99, 103), a delay Plaintiff now disingenuously blames on Defendants (Pl.'s Mem at 5);

- Plaintiff has refused to comply with this Court's May 4, 2017 order directing Plaintiff to produce financial records from October 2016 through the close of discovery.  (Dk. No. 148.)  Instead, Plaintiff produced a selection of heavily-redacted bank records and intentionally withheld the monthly statement from the period in which Plaintiff's received funds from his settlement with the former defendants in this action (Dk. No. 161);

- Apart from his requests to extend the discovery deadline, Plaintiff has filed four requests for extensions of his time to respond to various filings (Dk. Nos. 98, 110, 113, 162); and

- Plaintiff has engaged in a pattern of deception to avoid the depositions of himself and his wife.  After Plaintiff claimed that he and Mrs. Guzman were unavailable throughout the entire week of May 9, 2017, Defendants proposed conducting their depositions on May 15 and 18, 2017, respectively.  Rather than agreeing to Defendants' proposal or providing any alternative dates, Plaintiff instead subpoenaed non-parties for depositions on those very same dates.  In yet another attempt to schedule these depositions, on May 11, 2017, LRC noticed Plaintiff's deposition for May 22, 2017 and subpoenaed Mrs. Guzman for a deposition on May 24, 2017.  Again, Plaintiff claimed to have conflicts that entire week.  Only after LRC filed a motion to compel these depositions did Plaintiff finally agree to hold his deposition May 23, 2017 and Mrs. Guzman's deposition May 31, 2017.  Yet when LRC repeatedly refused to cave to Plaintiff's threats to cancel his deposition, Plaintiff's counsel came down with a sudden illness on the literal eve of the deposition, which prevented it from going forward.[6]  Incredibly, Plaintiff has now also cancelled Mrs. Guzman's deposition for an unrelated reason.  Plaintiff has offered only June 19 and 22, 2017 as alternative dates for his and Mrs. Guzman's depositions, and has not provided any excuse as to why it will take another month to schedule those depositions.

---

[6]  Disturbingly, Plaintiff's counsel's sudden illness arose only three hours after a meet and confer with Defendants in which he threatened to cancel the deposition for entirely separate reasons.

Plaintiff's actions make clear he seeks only to delay discovery in order to generate attorneys' fees and avoid litigating the actual merits of a case he cannot win.

## ARGUMENT

Generally, courts should freely give leave to amend pleadings "when justice so requires." Fed.R.Civ.P. 15(a). However, "[r]easons for a proper denial of leave to amend include undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party." *State Teachers Retirement Board v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981); *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (courts clearly "ha[ve] discretion ... to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant"). The addition of new parties to an action pursuant to Rule 21 of the Federal Rules of Civil Procedure is governed by the same standard. *See Soler v. G & Y, Inc.,* 86 F.R.D. 524, 528 (S.D.N.Y. 1980).

**I.     Plaintiff's Motion Was Made In Bad Faith After Unreasonable Delay, And The Amendment Of The Complaint Would Unfairly Prejudice LRC**

**A.     Plaintiff Deliberately Delayed Filing This Motion In Order To Extend The Discovery Deadline And Postpone Litigating The Merits Of This Action**

A party seeking to amend should bring its motion "as soon as the necessity for altering the pleading becomes apparent" in order to avoid an allegation of delay. *New Amsterdam Capital Partners, LLC v. Wilson*, No. 11-CV-9716, 2015 WL 1137576, at *3 (S.D.N.Y. Mar. 13, 2015) (Ellis, M.J.) (internal quotation omitted). Plaintiff knew of the Proposed Leucadia Defendants and their relationship to LRC because of *Sykes*, and he thus plainly could have named them as defendants in his original complaint. (*See* Statement of Facts § II, *supra*.) Furthermore, the latest that Plaintiff learned of the factual basis for his proposed amendment was ***at least seven months ago*** when he received LRC's October 10, 2016 document production.

(*Id.*) This Court made clear at the March 16, 2017 Conference that it would not grant Plaintiff leave to amend under such circumstances (Dk. No. 144 at Tr. 45:23-46:20), and Courts in this District routinely deny motions for leave to amend on this basis. *See, e.g., New Amsterdam*, No. 11-CV-9716, 2015 WL 1137576, at *3 (denying leave to amend where the "amendment [plaintiff] proposes is based upon information [it] had in its possession for the duration of discovery"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-248, 2016 WL 1629350, at *7–8 (S.D.N.Y. Apr. 25, 2016) (denying leave to amend because the vast majority of the documents upon which the proposed amendment was based were produced *at least three months* before plaintiff's motion for leave to amend was filed).

Plaintiff's delay is particularly egregious because he delayed filing for two months after the Court's admonition concerning undue delay, and he falsely assured the Court at the March 16, 2017 Conference that he would file his motion for leave to amend "right away." (*See* Statement of Facts § III, *supra*.) The true explanation for Plaintiff's delay is not any of the myriad excuses proffered in support of his motion – each of which is laid bare below. Rather, it is clear that Plaintiff intends this motion as yet another vehicle to extend discovery and avoid adjudicating this case on the merits. Tellingly, ***Plaintiff filed this motion on the very same day he filed a parallel motion seeking a 90-day extension of the discovery deadline***. (*See* Dk. No. 158.) It would be patently unfair if Plaintiff was permitted to sit on this motion for two months after he assured the Court that he would file it "right away," only to file two weeks before the close of a twice-extended discovery deadline. *See Dais v. Lane Bryant, Inc.,* No. 97-cv-2011, 2000 WL 145755, at *2 (S.D.N.Y. Feb. 8, 2000) (accepting Magistrate Judge Ellis' recommendation to deny leave to amend because "plaintiff has known the factual basis for his proposed amendment since commencement of the litigation, ***yet never sought to plead such***

*claims until just prior to the close of discovery*") (emphasis added); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-248, 2016 WL 1629350, at *8 (denying leave to amend where plaintiff had long held the information necessary to amend its complaint but "tactically chose not to do so").

### B. The Alleged Justifications For Plaintiff's Delay Are Plainly Pretextual

Plaintiff's various rationales for the delayed filing of this motion are easily refuted. Plaintiff now concedes that LRC's October 10, 2016 document production does in fact provide the factual basis for the FAC's new allegations,[7] but he claims that LRC's March 10, 2017 deposition was needed "to get an understanding of the actual operation and scope of th[e] joint venture" described in LRC's "dense and complex" contracts.  (Pl.'s Mem. at 7.)   This defies logic.  Plaintiff is represented by counsel, who cannot plausibly require eight months to digest 112 pages of documents.  In fact, many of the agreements' provisions are boilerplate ones that are commonly contained in LLC and services agreements.  Furthermore, the vast majority of the FAC's allegations concerning the "joint venture" rest entirely on *one* 32-page document, the LR Credit Joint Venture Agreement.  (*See* Statement of Facts § II, *supra*.)

Plaintiff identifies only two allegations that purportedly rely upon LRC's deposition.  The first allegation – concerning the monetary value of the Proposed Leucadia Defendants' investment in debt collection (Pl.'s Mem. at 7) – is completely unnecessary to plead a GBL § 349 claim against the Proposed Leucadia Defendants.[8]  It is therefore an insufficient basis to justify

---

[7]  In yet another example of Plaintiff's unscrupulous behaviour, he falsely advised the Court at the March 16, 2017 Conference that it was only at LRC's March 10, 2017 deposition where it "finally disclose[d] all these other debt collectors as intermediaries who've been in charge of the fraud against my client."  (Dk. No. 144 at Tr. 43:6-9.)   This is plainly false because the alleged "intermediaries" had been named defendants in *Sykes* and clearly identified in LRC's October 10, 2016 document production.  (*See* Statement of Facts § II, *supra*.)

[8]  Assuming *arguendo* that the Proposed Leucadia Defendants' investment in defaulted debt is relevant – and it is not – it would have been sufficient for Plaintiff to plead the fact of the investment, which was known to

Plaintiff's delay.  *See In re Aluminum Warehousing Antitrust Litig.*, No. 13-MD-248, 2016 WL 1629350, at *8 (denying leave to amend because although "plaintiffs may not have had sufficient information to make [] certain [] allegations at a materially earlier date," those allegations were "unnecessary from a pleading standpoint").  The second allegation attributed to LRC's deposition – that the Proposed Leucadia Defendants relied on MSH and its process servicing company to "enforce[] judgments" despite knowledge of their allegedly improper conduct (Pl.'s Mem. at 7-8) – is actually ***contradicted*** by the testimony of LRC's representative.  LRC's representative explained that the decision of which process server to utilize was made by Rushmore and was not even known by LRC.  (Keshavarz Decl. Ex. B at Tr. 95:13-21.)  LRC's representative stated further that Rushmore was responsible for hiring MSH, and that while MSH did cease collections activities on behalf of LRC, it was necessary to continue relying on MSH to account for any payments received so that they could be accounted for in the *Sykes* settlement. (Keshavarz Decl. Ex. B at Tr. 60:5-15, 63:4-7, 73:2-5.)  Therefore, this also warrants denial of Plaintiff's motion.  *See New Amsterdam*, No. 11-CV-9716, 2015 WL 1137576, at *3 (denying leave to amend where new allegations based on a recent deposition were in fact contradicted by the deposition testimony).

Nor can Plaintiff credibly blame defendants for its delay.  As set forth above, LRC completed its document production eight months ago (whereas Plaintiff's production remains ongoing), and LRC was deposed over two months ago (whereas Plaintiff has yet to be deposed). (*See* Statement of Facts § IV, *supra*.)[9]  Incredibly, Plaintiff claims that it could not conduct non-

---

him in October 2016 based on LRC's production of the LR Credit Joint Venture Agreement.  (*See* § 5.02 (Keshavarz Decl. Ex. C at LR_GUZ000091) (reflecting L-Credit, LLC's investment in defaulted debt).)

[9]  Plaintiff also seeks to excuse his late filing by arguing it took three weeks (until March 31, 2017) for him to obtain a copy of the deposition transcript (Pl.'s Mem. at 10), but this *post hoc* rationale is easily belied.  Had Plaintiff actually felt any urgency with respect to the filing of his motion for leave to amend, he

party depositions because *Defendants* have refused to provide deposition dates (Pl.'s Mem. at 5-6), but as Plaintiff is well aware, Defendants do not control the non-parties' availability. In fact, Defendants' agreement is not required at all in order for Plaintiff to schedule non-party depositions. If Plaintiff has had difficulty scheduling those depositions, it may be because he served the non-parties with overbroad document and deposition subpoenas on May 12, 2017 – one business day before their depositions were to take place. (*See* Balber Decl. Ex. F, General Objection No. 2 and n.1.) Plaintiff's motion is likewise silent as to why Plaintiff would wait to subpoena these non-party witnesses – both of whom were original defendants in this action – until nearly ten months after discovery commenced in this action and two weeks before the discovery deadline.

The Court should also disregard Plaintiff's allegation that his filing was delayed because of legal claims he decided not to bring. (Pl.'s Mem. at 8-9.) Plaintiff has had the relevant documents describing the defendants' relationships for eight months – more than enough time to assess RICO or any other potential claims.[10] It is also axiomatic that the *May 12, 2017* dissolution of Rushmore (Pl.'s Mem. at 9) cannot justify Plaintiff's failure to file its motion in March 2017, when it advised the Court it would, or October 2016, when Plaintiff obtained the documents on which its amendment is based.

---

could have asked LRC for a copy of the transcript and received a rough copy the day of the March 10, 2017 deposition.

[10] The RICO "issue" identified by Plaintiff – that personal injury does not confer RICO standing (Pl.'s Mem. at 8) – is completely unrelated to any discovery elicited in this action. Accordingly, it could have been researched by Plaintiff's counsel at any time during the pendency of this proceeding and is yet another red herring.

## C.     LRC Would Be Unfairly Prejudiced If The Court
##        Grants Plaintiff Leave To Amend His Complaint

Prejudice to the opposing party occurs when new allegations would "require the opponent

to spend significant additional resources to conduct discovery and prepare for trial" and

"significantly delay resolution of the dispute."  *Block v. First Blood Associates*, 988 F.2d 344,

350 (2d Cir. 1993).  If Plaintiff's motion for leave to amend is granted – after ten months of

discovery and on the eve of the discovery deadline – LRC will be unfairly prejudiced because it

will be forced to begin discovery anew with respect to the new defendants.  *See Stein v.*

*Guardsmark, LLC,* No. 12-cv-4739, 2013 WL 3809463, at *14 (S.D.N.Y. July 23, 2013)

(denying leave to amend where the "parties have undertaken (and completed) significant

discovery and litigated the case in reliance on Plaintiff's representations about the nature and

scope of her claims").

Plaintiff's claim that "the amendment will not necessitate significant additional

discovery" (Pl.'s Mem. at 9-10) rings hollow.  If Plaintiff requires a year (or more) to complete

discovery of the straightforward matter currently before the Court (*see* Dk. No. 158), LRC

shudders to imagine how much time Plaintiff will need to conduct discovery as to the *six* new

parties given the alleged "enormity of the size and scope of [their] undertaking."  (Pl.'s Mem. at

7; *see also* Statement of Facts § IV, *supra*.)   It is similarly disingenuous for Plaintiff to maintain

that the FAC's new allegations "involve the same factual nexus that forms the basis for Plaintiff's

original complaint" (Pl.'s Mem. at 10), because he simultaneously alleges that he could not have

learned of the facts underlying the FAC until this late stage in the proceeding.  *See Oscar v.*

*BMW of N. Am.*, LLC, No. 09-cv-2011 , 2011 WL 6399505, at *5 n.2 (S.D.N.Y. Dec. 20, 2011)

(plaintiff's contention that defendant "would not suffer from unfair surprise presents [] a double-

edged sword [because it] also reinforces that [plaintiff] could have sought an amendment [] at an earlier stage of the litigation").

Finally, it is simply untrue that "discovery in this case is likely to continue past the current deadline regardless of the proposed amendment."  (Pl.'s Mem. at 10.)  Defendants have nearly completed discovery and have opposed Plaintiff's motion to extend the discovery deadline for yet a third time.  (Dk. No. 160.)   Furthermore, neither of the "unresolved discovery issues" cited by Plaintiff (Pl.'s Mem. at 11) will require any additional discovery.  Plaintiff has a pending motion to compel the production of privileged collection notes (Dk. Nos. 149, 151),[11] but the Court will either order the production of those notes or it will not.  In either scenario, additional time to conduct discovery is not required.  On May 12, 2017, Plaintiff filed a motion to compel discovery from Samserv and William Mlotok (Dk. No. 152), but that motion does not seek any new discovery.  As explained in the opposition to that motion (Dk. No. 159), Plaintiff simply rehashes his prior application for overly broad, irrelevant, and disproportionate discovery from the *Sykes* class action, which this Court already denied over six months ago. (Dk. No. 88 at Tr. 7:12-21.)

The time, money, and resources invested by LRC to address Plaintiff's frivolous motions and bad faith discovery practices long ago outweighed the value of Plaintiff's *de minimis* claim. LRC would be unfairly prejudiced if the Court grants Plaintiff's untimely motion and gives

---

[11] Despite being well aware of the facts, Plaintiff continues to wrongly allege that LRC "withheld" the privileged collection notes prepared by MSH, LRC's former counsel in the underlying collection lawsuit. (Pl.'s Mem. at 11, n.3.)  As Plaintiff full well knows, MSH's collection notes were maintained by Stephen Einstein & Associates, P.C. ("Einstein"), a third party that assumed possession of MSH files after MSH ceased doing business, and not by LRC. (Dk. No. 151 at 1.)  LRC did not possess a copy of the collection notes until Einstein provided it on April 27, 2017.  (*Id.*)  Upon review of the collection notes, LRC promptly asserted that the notes were protected by the attorney work product doctrine.  (*Id.*)  Plaintiff incorrectly argues that LRC was obligated to assert work product protection sooner because "documents in the possession of a party's current or former counsel are deemed to be within that party's possession, custody and control" (Pl.'s Mem. at 11, n. 3), but Einstein is not now, and never was, LRC's counsel.

Plaintiff the opportunity to begin discovery all over again.  It is time to litigate the merits of this action.

## II.    The FAC's Proposed Claims Are Futile

Ordinarily, leave to amend may be denied as futile if the proposed claim would not withstand a Rule 12(b)(6) motion to dismiss.  *Merrick Bank Corp. v. Chartis Specialty Ins. Co.*, No. 12-CV-7315 RJS, 2015 WL 4126780, at *1 (S.D.N.Y. July 7, 2015).  However, "where the motion to amend is made at a late stage and the Court 'has the full evidentiary record at its disposal, a summary judgment standard will be applied.'"  *Id.* (quoting *Summit Health. Inc. v. APS Healthcare Bethesda, Inc.*, 993 F.Supp.2d 379, 404 (S.D.N.Y.2014)).  Accordingly, the amendment may be found futile if the evidence in support of the proposed new claim creates no triable issue of fact.[12]  *Id.*

### A.    Evidence Adduced During Discovery Establishes The FAC's Futility

The FAC's claims against the Proposed Leucadia Defendants are futile because Plaintiff will not be able to sustain its underlying claims against LRC.  The FAC's viability depends upon Plaintiff's ability to show that "MSH, LRC and Samserv[] procur[ed] a default judgment against him in state court using a false affidavit of service and [a false] affidavit of merit." (FAC ¶¶ 121; *see also* Pl.'s Mem. at 7 (arguing that the alleged "systematic use of false affidavits of merit" was the "most important" evidence elicited at LRC's deposition).)  Yet the evidence adduced during discovery now ***conclusively establishes that the affidavit of merit accurately stated that Plaintiff owed the debt on which the underlying collections lawsuit was based***.  (*See* Statement of Facts § I, *supra*.)

The evidence also makes clear that Plaintiff cannot maintain claims against LRC on the basis that Plaintiff was improperly served.  To establish that LRC is liable for such conduct,

---

[12]  As set forth below, the FAC's new claims would also fail under the more demanding Rule 12(b)(6) standard.

Plaintiff must not only prove that MSH had knowledge of the alleged improper service by Samserv, but also that LRC is vicariously liable for the conduct or knowledge of MSH, its attorneys in the underlying collection lawsuit.  The unrefuted evidence elicited during discovery establishes that (i) LRC did not direct MSH's conduct, (ii) LRC had no knowledge of MSH's conduct, and (iii) LRC was not involved in any way in MSH's collection efforts.  (*See, e.g.*, Keshavarz Decl. Ex. B at Tr. 44:7-16, 95:13-21, 96:12-97:5 (evidencing that Rushmore managed MSH and the collection of underlying debts without input from LRC or any of the Proposed Leucadia Defendants); Keshavarz Decl. Ex. C at LR_GUZ000096 (LR Credit Joint Venture Agreement § 2.02).)  Plaintiff has therefore failed to establish a triable issue of fact as to all of its claims against LRC.  *See, e.g., Bodur v. Palisades Collection, LLC*, 829 F. Supp.2d 246 (S.D.N.Y. 2011) (finding no vicarious liability where plaintiff "merely claim[ed] that [defendant] hired [a law firm debt collector] to collect the debt, but he has failed to provide any evidence, or even claim, that [defendant] exercised control over [the law firm] or was involved in any of the [firm's] collection attempts"); *Herzlinger v. Nichter*, No. 7:09-CV-00192, 2011 WL 1434609, at *9 (S.D.N.Y. Feb. 9, 2011) ("Under general principals of agency – which form the basis of vicarious liability – the principal must exercise control over the conduct or activities of the agent"); *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 270–72 (E.D.N.Y. 2012), order amended on reconsideration, No. CV 10-3983, 2013 WL 5423800 (E.D.N.Y. Sept. 25, 2013).

Because Plaintiff cannot prove its claims against LRC, the FAC plainly fails to state a claim against the Proposed Leucadia Defendants, which are legally separate entities multiple levels removed from LRC. (*See* Argument § II.C, *infra*.)

**B.      The FAC Fails To Plead GBL § 349 Claims
           Against The Proposed Leucadia Defendants**

Even if the evidence did not irrevocably undermine Plaintiff's claims against LRC (and

by extension, the Proposed Leucadia Defendants), the FAC plainly fails to plead GBL § 349

claims against the Proposed Leucadia Defendants because it does not allege that they engaged in

"consumer-oriented conduct" or committed any "deceptive acts."  *See Mayfield v. Asta Funding,*

*Inc.*, 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015).   Plaintiff maintains that "debt collection

litigation is often 'consumer-oriented conduct'" and that "it is plainly deceptive and misleading to

collect on a[n improperly awarded] judgment."  (Pl.'s Mem. at 13-14.)  However, none of the

Proposed Leucadia Defendants was the plaintiff in the underlying debt collection litigation

against Plaintiff.  (FAC ¶ 48.)  Nor were any of the Proposed Leucadia Defendants alleged to

have engaged directly in "debt collection litigation" or to have "collected a judgment."  Rather,

the FAC's only allegations specific to the Proposed Leucadia Defendants are benign, generic

descriptions of their corporate relationships:

- The only FAC allegations specific to **LR Credit, LLC** are that it serves as a holding company for defaulted consumer debts and purchases the debt held by its subsidiary, LRC (FAC ¶¶ 24, 25, 28);[13]

- The only FAC allegations specific to **L-Credit, LLC** are that it approves the purchase of debt portfolios identified by Rushmore, provides 90% of the capital that LR-Credit, LLC uses to purchase debt, and hires others to collect debts (FAC ¶¶ 6, 24, 25);  and

- The only FAC allegations specific to **Leucadia National Corporation** are that it provides the capital to fund L-Credit's share of the purchase price for the defaulted debt portfolios that LR Credit, LLC purchases.  (FAC ¶ 25.)

These types of activities – *e.g.*, serving as a holding company or providing funding to a

subsidiary – are neither consumer-oriented conduct nor deceptive practices, which are essential

---

[13]  Confusingly, the FAC alleges at various times that each of LRC, LR Credit, LLC, and L-Credit, LLC purchased defaulted debt on behalf of the alleged joint venture.  (FAC ¶¶ 7, 24, 25.)  While these contradictory allegations cannot possibly all be true, it is irrelevant for purposes of the instant motion, because purchasing debt from creditors is neither consumer-oriented behavior nor a deceptive practice.

elements of a claim under GBL § 349.  *See Hutter v. Countrywide Bank, N.A.*, 41 F. Supp. 3d 363, 375 (S.D.N.Y. 2014) (denying leave to add as a defendant the owner of a corporation alleged to have violated GBL § 349, because the plaintiff had not alleged that the owner had any "personal involvement in any deceptive acts directed at consumers which were misleading in a material way").  The case law relied upon by Plaintiff (Pl.'s Mem. at 13-14) is inapposite, because those cases concerned debt collection attorneys and debt collection firms that were directly engaged with consumers and thus had an opportunity to deceive them.

The FAC's allegations against Rushmore and its members – that they identified debt for LR Credit, LLC to purchase and hired MSH to conduct debt collections on LR Credit, LLC's behalf (FAC ¶¶ 26-27, 29) – are similarly devoid of any consumer-oriented or deceptive conduct.  The allegations against Rushmore and its members also fail because the FAC makes clear that Rushmore has dissolved (FAC ¶ 9), and the FAC does not purport to pierce Rushmore's corporate veil.  In fact, Rushmore's members are mentioned only once in the entire FAC.  (*See* FAC ¶¶ 10-12.)

Plaintiff may seek to salvage its claims by pointing to the FAC's conclusory allegations of deceptive conduct committed by the defendants collectively, or by an ill-defined joint venture. (*See* Pl.'s Mem. at 13 (citing FAC ¶¶ 22, 18, 118).)  However, such group pleading is patently insufficient to state a claim.[14]  *See, e.g., Clayton's Auto Glass, Inc. v. First Data Corp.*, 2013 WL 5460872, at *5 (E.D.N.Y. 2013) ("[T]he Complaint refers to both defendants and their unnamed related entities collectively as 'First Data'. . . . Such 'group pleading' fails to give each defendant fair notice of the claims against it . . . and, thus, fails to satisfy . . . the notice pleading requirements of Rule 8.") (internal citation omitted); *Appalachian Enterprises, Inc. v. ePayment*

---

[14] The FAC's practice of using four different definitions for the defined term "LRC" (FAC ¶¶ 17, 41, 43, 91) is problematic for the same reason.

*Sols., Ltd.*, No. 01-CV-11502, 2004 WL 2813121, at *9 (S.D.N.Y. Dec. 8, 2004) (Daniels, J.) ("The complaint lumps together all of the defendants in each claim without providing any factual allegations to distinguish their conduct, and accordingly dismissal of the complaint in its entirety is warranted.").

Plaintiff's failure to advance factual allegations of "consumer-oriented conduct" or "deceptive practices" against any of the Proposed Leucadia Defendants, Rushmore, or Rushmore's members renders the FAC and its new GBL § 349 claims futile.

### C. Plaintiff Fails To Allege Sufficient Facts To Support Piercing The Corporate Veil

It is axiomatic that "the mere fact that there exists a parent-subsidiary relationship between two corporations" does not "make the one liable for the torts of its affiliate." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998); s*ee also In re Aluminum Warehousing*, 2015 WL 1344429, at *3 (denying motion to amend where the new "claims [] are based solely on corporate proximity" because "defendants are presumed to be legally separate" and "the fact that two separate legal entities may have a corporate affiliation does not alter [Rule 8's] pleading requirement"). "New York courts apply a presumption of separateness to corporations and are hesitant to disregard the corporate form." *Kalin v. Xanboo, Inc*, 526 F. Supp. 2d 392, 403 (S.D.N.Y. 2007). To state a claim against the Proposed Leucadia Defendants, Plaintiff must establish that ***each*** of the Proposed Leucadia Defendants "exercised complete domination" over its subsidiary with respect to the transaction at issue and that "such domination was used to commit a fraud or wrong that injured" Plaintiff. *Am. Fuel Corp. v. Utah Energy Dev. Co., Inc*. 122 F.3d 130, 134 (2d Cir. 1997).[15]

---

[15] The FAC alleges that LRC and the Proposed Leucadia Defendants are organized under the laws of New York and Delaware. (FAC ¶¶ 4-7.) Because courts have found both tests to be substantively similar, we

Notably, the FAC does not purport to seek to pierce the corporate veil of the Proposed

Leucadia Defendants.  (*See* Pl.'s Mem. at 12-14 (arguing the actions of the Proposed Leucadia

Defendants themselves violated GBL § 349).)  Yet, even if the Court were to construe the FAC

as attempting to advance veil piercing claims, it would nevertheless be futile.  The FAC does not

allege that the Proposed Leucadia Defendants "exercised complete domination" over LRC.  To

the contrary, the FAC alleges that Rushmore – a company owned by two individuals with no

alleged connection to the Proposed Leucadia Defendants – had substantial control over both

LRC and LR Credit.  (*See, e.g.,* FAC ¶ 25 ("***Rushmore's role at LR Credit is* . . . *to manage the***

***collection efforts of LR Credit and its subsidiaries***.  Rushmore hired former defendant MSH to

collect the defaulted consumer debts through litigation and other methods on behalf of LR Credit

and its subsidiaries.").)[16]  The FAC is also utterly devoid of allegations addressing the factors

established by the Second Circuit as indicative of "domination," such as allegations of whether

corporate formalities are observed; whether the capitalization is adequate; whether corporate

funds are used for personal rather than corporate purposes; whether the alleged dominator deals

with the dominated corporation at arms-length; whether the dominated corporation is treated as

an independent profit center; whether others pay or guarantee the debts of the dominated

corporation; and whether the dominated corporation had property that was used by the alleged

dominator as if it were its own.  *See Am. Fuel,* 122 F.3d at 134.

---

will examine the FAC's allegations under New York law.  *See, e.g., EED Holdings v. Palmer Johnson
Acquisition Corp.*, 387 F. Supp.2d 265, 273 n.3 (S.D.N.Y. 2004).

[16] The FAC elsewhere alleges that "LRC exercise [sic] and had a right to exercise a great control over
Rushmore," but nothing alleged in the FAC supports that conclusory allegation, and it is flatly contradicted
by the FAC's own attachments.  (*See* Keshavarz Decl. Ex. B at Tr. 44:7-16, 95:13-21, 96:12-97:5
(evidencing that Rushmore carried out its duties without input from LRC or the Proposed Leucadia
Defendants); Keshavarz Decl. Ex. C at LR_GUZ000096 (LR Credit Joint Venture Agreement § 2.02
(Rushmore "will have the primary responsibility of identifying potential acquisitions, conducting due
diligence reviews with respect to each potential acquisition, and ***providing day-to-day management and
service of each Portfolio and the collection of the underlying debt***")  (emphasis added)).)

While the FAC contains several vague and conclusory allegations that the purpose of the ill-defined "joint venture"[17] was to perpetrate a fraud, Plaintiff does not allege a single specific allegation of how any Proposed Leucadia Defendant abused the corporate form to commit such fraud.  Therefore, Plaintiff also fails to satisfy the second prong of the veil piercing analysis. *Triemer v. Bobsan Corp.*, 70 F. Supp. 2d 375, 377 (S.D.N.Y. 1999) (plaintiff failed to pierce the corporate veil because the conclusory allegation that defendants "misused the corporate form for the express purpose of committing and facilitating the fraud" did not "include a single specific allegation of how plaintiff misused the corporate form").

Accordingly, there is no basis to find Plaintiff adequately pled veil piercing claims against LRC's alleged parent, LR Credit, LLC, let alone that Plaintiff successfully pierced the veils of *three* separate companies to establish Leucadia National Corporation's liability for claims against LRC.[18]

## CONCLUSION

For the foregoing reasons, LRC respectfully requests that the Court deny with prejudice Plaintiff's motion for leave to amend the complaint.

---

[17] The FAC defines the "joint venture" as including "MSH, LRC, Rushmore, and Samserv" (FAC ¶ 18), but only L-Credit LLC and Rushmore were parties to the LR Credit Joint Venture Agreement.  (Keshavarz Decl. Ex. C at LR_GUZ000091.)  To the extent Plaintiff argues a joint venture was somehow established involving other defendants, the FAC failed to allege acts or conduct establishing contractual relationship between those defendants as required to form a joint venture under New York law.  *See Wooten v. Marshall,* 153 F. Supp. 759, 763 (S.D.N.Y. 1957).

[18] The notion that Leucadia National Corporation could be the alter ego of LRC is also belied by the fact that Leucadia National Corporation is a company with a diverse array of investments and approximately $40 billion in assets.  (Keshavarz Decl. Ex. B at Tr. 8:2-9:4.)

Dated: New York, New York
       May 31, 2017

Respectfully submitted,

HERBERT SMITH FREEHILLS NEW YORK LLP

By:  ___*/s/ Scott S. Balber*_____
     Scott S. Balber
     450 Lexington Ave, 14th Floor
     New York, New York 10017
     Tel: (917) 542-7600
     Fax: (917) 542-7601
     Scott.Balber@hsf.com
     *Attorneys for Defendant LR Credit 13, LLC*