**CITY OF NEW YORK**
**DEPARTMENT OF CONSUMER AFFAIRS**
-------------------------------------------------------------X  **APPEAL DETERMINATION**

**DEPARTMENT OF CONSUMER AFFAIRS,**

                  **Complainant**

     - against -

**NASSER ATRASH,**

                  **Respondent.**

-------------------------------------------------------------X

**Record Nos.:**
**246-2014-APPL**
**LL005307559-ADJC**

**NOH No.: LL005307559**

**License No.: 1295969**

The respondent appeals from the Decision dated January 28, 2014.

After due consideration of the arguments presented in the respondent's appeal, the Department's brief in opposition, and the respondent's sur-reply, the appeal is **denied**

The respondent's counsel argues that this Tribunal lacks jurisdiction to adjudicate the matter because New York Administrative Code ("Code") § 20-106 authorizes criminal penalties. However, this argument is without merit. Code § 20-104(e)(1) grants the Commissioner of the Department of Consumer Affairs the authority, upon due notice and a hearing to impose penalties for violations of any provision of chapter two of Title 20 of the Code, or any regulations and rules promulgated thereunder including the imposition of civil penalties and the suspension or revocation of any license issued by the Department.[1]

The respondent next claims that unreliable hearsay was the only evidence presented by the Department to support the Judge's finding that he violated five counts of Title 6 of the Rules of the City of New York ("6 RCNY") § 2-234 by making false affirmations in an affidavit of service that a Summons and Complaint had been served. The respondent concedes that hearsay is admissible in administrative proceedings and may form the basis for an administrative determination.[2] However the respondent, citing *Matter of Hoch v. New York State Department of Health*, 1 A.D.3d 994, 768 N.Y.S.2d 53 (4th Dept 2003),

---

[1] Code § 20-403 requires any person employed, or performing, the services of a process server be licensed by the Department of Consumer Affairs while Code § 20-408 grants the commissioner the authority to promulgate rules and regulations pertaining to process servers.

[2] 6 RCNY § 6-35(a) states in part, "Relevant evidence shall be admitted without regard to the technical or formal rules or laws of evidence in effect in the courts of the State of New York . . . . Hearsay evidence is admissible."

argues that hearsay evidence, when not supported by corroborating evidence, is not substantial evidence necessary to establish a violation.[3] However, the Court in *Hoch*, citing *Matter of Gray v. Adduci*, 73 N.Y.2d 741, 743 (1988), affirmed that hearsay evidence may alone be the basis of an administrative determination. In this case, the record establishes that the Judge considered all of the testimony, affidavits, and documentary evidence admitted in evidence by both parties and found that the respondent's testimony failed to rebut the Department's credible evidence.

The respondent correctly notes that seriously controverted hearsay evidence may fail to provide substantial evidence necessary to establish a violation. *See Matter of Ridge v. New York Liquor Authority*, 257 A.D.2d 251, 684 N.Y.S.2d 251 (2nd Dept 1999). However, in this case, a review of the entire record establishes that the Department submitted sufficient credible evidence to establish the five violations of 6 RCNY § 2-234. The record also demonstrates that the Judge considered all of the evidence presented, made appropriate rulings on the relevance and admissibility of evidence, and made specific credibility findings. For each of the five counts charged, the Judge found the evidence submitted by the Department was more credible than the respondent's rebuttal evidence. In light of the above, the Judge's determination shall not be disturbed. *See Matter of Mullane v. Brown*, 188 A.D.2d 323, 591 N.Y.S.2d 765 (1st Dept. 1992); *citing Matter of Pell v. Board of Ed. of Union Free School Dist. No. 1 of Towns of Scarsdale and Mamaroneck, Westchester County*, 34 N.Y.2d 222 (1974) (determinations concerning the credibility of witnesses, the weight of the evidence and the choice between conflicting testimony are the province of the Administrative Law Judge).

Respondent's counsel next argues that the hearing did not "meet minimal constitutional standards" since the Department's evidence consisted of affidavits and she was denied the opportunity to cross-examine the affiants.[4] However, the record establishes that respondent's counsel did cross-examine the Department's appearing witness. Furthermore, regarding the non-appearing affiants, it has been held that there is only a limited right to cross-examination of adverse witnesses in administrative proceedings. *See Friendly Convenience, Inc. v. New York City Dept. of Consumer Affairs*, 71 A.D.3d 577 (N.Y. App. Div. 2010), *quoting Matter of Gordon v. Brown*, 84 N.Y.2d 574, 578 (1994).

The respondent next claims that he should not be held accountable for failing to include in his affidavits of service the complete address of the process serving agency from whom he obtained the process of service because the affidavit forms

---

[3] The respondent cites *Fugardi v. Angus*, 216 A.D.2d 85, 628 N.Y.S.2d 77 (1st Dept 1995) for the proposition that if "hearsay evidence is contradicted by actual testimony, it does not meet the requirement of substantial evidence." However, the Court in *Fugardi* makes no such statement but merely found the Petitioner offered no evidence to rebut the prima facie case.
[4] Citing *Hecht v. Monaghan*, 307 N.Y. 461 (1954)

Appeal Record – 246-2014-APPL

do not have fields in which to write that information.[5]  This claim is without merit. 6 RCNY § 2-234 requires strict compliance "with all laws, rules, regulations and requirements ... relating to the conduct of licensees and the service of process in the State of New York." GBL § 89-ff states, in relevant part: "It shall be unlawful for a process server to fail to set forth on any affidavit of service  or  process signed  by him . . .*the name and address of any process serving agency from whom he obtained the process for service if any*" (emphasis added). Although the respondent characterizes the missing information as "record keeping mishaps" that "had no effect on service" it has been held that "any attempt by [a process server] to suggest that his violation of the licensing agency's rules was insignificant or a mere 'technical' infraction must be deemed unpersuasive in light of the clear regulatory mandate [of 6 RCNY § 2-234.]" *Barr v. Dept. of Consumer Affairs*, 70 N.Y.2d 821, 823 (1987).[6] As a review of the affidavits in establish that the process serving agency's street address is omitted, the Judge correctly sustained the violations.[7]

Next, regarding the finding that he violated 15 counts of 6 RCNY § 2-233 (a), the respondent claims the missing information "has no impact on the quality or propriety of service" and that mistakes are made. Whether the missing information had any effect on the "quality or propriety of service" is irrelevant, as the respondent was charged with failing to include required items of information in his GPS records. Further, a review of the record and the Decision establishes that the Judge found the respondent's claim, that mistakes in recording information was the result of GPS failure, was not supported by credible evidence. This finding will not be disturbed on appeal.

Next the respondent claims, for the first time on appeal, that the finding that it violated ten counts of 6 RCNY § 2-233 (a)(2)(vi) should be dismissed because the Department has not provided process servers with a specific log book setting forth all the required information and that the cited omissions are ministerial in nature. These claims are also without merit. Although 6 RCNY § 2-233 does not require the use of any particular logbook format, it does require that all of the enumerated information set forth in the rule be clearly included in each service record.

The respondent's next claim, that he "could legitimately believe" that, since the process serving agency reported each of the seven traverse hearings at issue,

---

[5] The respondent's assertion on appeal that "[t]here were no allegations or evidence that any affidavits were false or otherwise questionable" is irrelevant, as the respondent was charged with failing to include required items of information on his affidavits.

[6] Given the holding in *Barr*, the respondent's claim, that the instant matter is distinguishable since *Barr* involved "egregious failures," is unpersuasive.

[7] In light of the fact that the respondent was charged with violating 6 RCNY § 234, the rhetorical question as to whether the Department can enforce New York State General Business Law §89-ff constitutes mere speculation rather than a supported legal argument, and therefore shall not be considered.

Guzman 2698

he did not need to comply with the reporting requirements of 6 RCNY § 2-236 is without merit. 6 RCNY § 2-236 imposes separate reporting requirements on both the process server and the process serving agency. The respondent's further claim that he either faxed or emailed the required reports to the Department was fully considered by the Judge who properly sustained the violations in light of all of the credible testimony and evidence presented by both sides. *See Smith v. New York State Dept. of Health*, 66 A.D.3d 1144, 887 N.Y.S.2d 294 (3d Dept. 2009), *quoting Matter of Kosich v. New York State Dept. of Health*, 49 A.D.3d 980, 854 N.Y.S.2d 551 (3d Dept. 2008)(credibility determinations, as well as the weight to be accorded to evidence presented, are matters solely within the province of the administrative fact finder).

Finally, the respondent claims that the imposed fines are excessive and unconscionably burdensome, citing *Griffith v. Aponte*, 123 A.D.2d 260 (1st Dept. 1986) and *Hecker v. Dept. of Consumer Affairs*, 131 Misc.2d 280 (Sup.Ct., N.Y. City 1986). However, the respondent presented no evidence at the hearing to support a mitigated penalty and the Judge found there was no basis to impose a mitigated penalty. Further, as the Judge found that the respondent violated five counts of 6 RCNY 2-234 for falsely attesting to five services of process, revocation of the respondent's license is appropriate.   In light of the above, the imposed penalty shall not be disturbed on appeal.

Accordingly, the Decision is **affirmed.**

**SO ORDERED**:

Date: July 7, 2014

David L. Wolfe
Appeals Judge

There will be no further agency action in this matter.  Should the respondent wish to pursue the matter, it may attempt to do so pursuant to Article 78 of the Civil Practice Law and Rules. If the respondent decides to proceed, it may find it useful to consult with the Clerk of the New York State Supreme Court or its attorney. The Department of Consumer Affairs cannot render assistance to persons who are contemplating suit against it.

CITY OF NEW YORK
DEPARTMENT OF CONSUMER AFFAIRS
-----------------------------------------------------------------X

| | |
|---|---|
| DEPARTMENT OF CONSUMER AFFAIRS | **DEPARTMENT'S** |
| | **OPPOSITION TO** |
| Complainant, | **RESPONDENT'S APPEAL** |
| -against- | |
| | Violation # LL 5307559 |
| NASSER ATRASH | |
| 1460 OVINGTON AVENUE, 1ST FL. | License # 1295969 |
| BROOKLYN, NY 11219 | |
| Licensee/Respondent. | |
| | (Process Server Individual) |

-----------------------------------------------------------------X

The New York City Department of Consumer Affairs (the "Department") respectfully submits this memorandum in opposition to Respondent's appeal from the Decision and Order issued in the above-referenced action, dated January 28, 2014 (the "Decision"). The undisputed, credible evidence presented at the hearing established the violations charged, the hearing was conducted fairly and Respondent was ably represented by counsel. The arguments raised by Respondent's appeal offer no basis for the Tribunal to revisit the Decision, the amount of the fines or the revocation of Respondent's license.

## PROCEDURAL AND FACTUAL BACKGROUND

Respondent is licensed by the Department as an individual process server under license number 1295969. On August 16, 2013, the Department issued a Fourth Amended Notice of Hearing ("NOH") charging Respondent with multiple violations of the Rules governing process servers. Specifically, the Fourth Amended Notice of Hearing charged

Respondent with violating: (1) 6 RCNY § 2-234 by falsely affirming in affidavits of service filed in New York state courts that documents had been properly served (5 counts); (2) 6 RCNY § 2-234 by failing to include the address of the process serving agency in his affidavits of service (10 counts); (3) 6 RCNY § 2-233(a)(b) by failing to record certain required information in his electronic records (19 counts);[1] (4) 6 RCNY § 2-233(a)(2)(iv) by failing to include the complete address of the location where service was attempted or effected in his logbook entries (10 counts); (5) 6 RCNY § 2-236(a) by failing to report the scheduling of seven traverse hearings within ten days of receiving notice of the hearings (7 counts);[2] (6) 6 RCNY § 2-236(c)(2) by failing to submit, within 100 days after the scheduled date of a traverse hearing, a report to the Department by certified mail or e-mail regarding: (a) the final result of the traverse hearing; or (b) that Respondent made attempts to learn the final result of the traverse hearing but was unable to do so (7 counts); (7) 6 RCNY § 2-236(c)(1) by failing to attempt to learn the results of seven traverse hearings in accordance with the procedures specified in 6 RCNY§ 2-236(c)(1) (7 counts); and (8) New York City Administrative Code ("NYC Code") § 20-101 by failing to maintain the standards of integrity, honesty and fair dealing required of Department licensees.

On October 21, 2013 and January 6, 2014, a hearing was held before Administrative Law Judge ("ALJ") Nancy Tumelty. On the first day of the hearing, Alvin Liu appeared on behalf of the Department and Steven Keats appeared on behalf of

---

[1] Four of the 19 counts were withdrawn at the hearing. *See* Order at 2, n.3.
[2] Traverse hearings are court proceedings to determine whether service of process was proper.

Guzman 2701

Respondent. On the second day of the hearing, Respondent was represented by his new counsel, Myra Sencer.

On January 28, 2014, the ALJ issued the Decision finding that the Department had proven all of the charges by a preponderance of the credible evidence. *See* Decision at 4-7. As a result of the violations, Respondent's license was revoked and he was ordered to pay a total fine of $30,500, or $500 per violation.

## RELEVANT LAWS AND RULES

New York City Administrative Code ("NYC Code") § 20-104(e) empowers the Commissioner "upon due notice and hearing, to suspend, revoke or cancel any license issued by him or her in accordance with the provisions of chapter two and to impose or institute fines or civil penalties for the violation of (i) any of the provisions of chapter two of this title and regulations and rules promulgated under chapter two of this title and (ii) any of the provisions of any other law, rule or regulation, the enforcement of which is within the jurisdiction of the department . . ." NYC Code § 20-104(e)(1). The law provides further that "[e]xcept to the extent that dollar limits are otherwise specifically provided such fines or civil penalties shall not exceed five hundred dollars for each violation with respect to licensing." *Id*. (emphasis added).

The recordkeeping rule, 6 RCNY § 2-233(a), provides:

> (a) Duty of individual licensee to keep records. Each process server shall keep records in compliance with the provisions of 89-cc of the General Business Law ("GBL"), as follows:
>
>               \* \* \*
>
> (2) The record to be maintained shall include the following information, where applicable:
>
>               \* \* \*

Guzman 2702

(iv) the address where service was effected . . . .

The electronic recordkeeping rule, 6 RCNY § 2-23a, provides, in relevant part, that "[p]rocess servers shall maintain electronic records in accordance with the provisions of this subdivision.  A licensed process server may meet the requirement to maintain records in an electronic format . . . by . . . maintaining electronic records in accordance with the provisions set forth in subdivision (b) of this section."  Subsection (b), in turn, provides:

> (2)  The licensee shall use an electronic records management system that:
> (i) ensures the authenticity, reliability and integrity of the electronic records;
> * * *
> (3) The information required to be maintained . . . shall contain such separate fields with parameters as follow[s]:
> * * *
> (vii) the address where service was effected, which shall be entered as three different fields such that one field will be for the street address and any apartment number, the second field will be for the city or borough, and the third field will be for the zip code;
> * * *
> (ix) the court in which the action has been commenced . . .;
> * * *
> (xiv) if service was effected pursuant to subdivision (4) of CPLR §308 or subdivision one of RPAPL §735, a description of the door and the area adjacent.

6 RCNY § 2-234 of the Rules governing process servers provides that a "licensee shall at all times <u>strictly</u> and promptly conform to all laws, rules, regulations and requirements of the <u>federal, state and municipal authorities</u> relating to the conduct of licensees and the service of process in the State of New York and the preparation, notarization and filing of affidavits of service and other documents <u>now in force or</u>

Guzman 2703

hereafter adopted during any license period." (Emphasis added).  The New York State

General Business Law ("GBL") § 89-ff, in turn, provides that "[i]t shall be unlawful for a

process server to fail to set forth on any affidavit of service . . . the name and address of

any process serving agency from whom he obtained the process for service if any."

The rule governing the reporting of traverse hearings, 6 RCNY §2-236, provides:

> (a) Whenever a process server or process serving agency
> receives any type of notice, including an oral
> communication, that a court has scheduled a hearing to
> determine whether service of process made or assigned by
> such licensee was effective, the licensee shall submit a
> report to the Department (attention of Counsel's Office), in
> writing, by certified mail, or by email to an address
> designated by the Department within ten days of receiving
> such notice.
>                      * * *
> (c)(1) The licensee shall attempt to learn the result of such
> hearing . . . . (2) The licensee shall report to the
> Department by certified mail or email (i) within ten days of
> learning the result, or (ii) that it made attempts to learn the
> result and was unable to do so not later than one-hundred
> days after the scheduled date of such hearing.

(Emphasis added).

On October 19, 2011, the Department responded to a question posed by a process

serving agency concerning whether one report from the agency would satisfy the

requirement of 6 RCNY § 2-236 that both licensees report the scheduling and outcome of

a traverse hearing, so long as the report contained the license number of both licensees

("Traverse Interpretation Letter").[3]  The Department responded that, in fact, "each

licensee . . . has an *independent* duty to report to the Department the scheduling of a

_____

[3] *See* http://www.nyc.gov/html/dca/downloads/pdf/Traverse%20Hearing%20Reporting%20Requirements
%20for%20Process%20Server%20Agency%20and%20Process%20Server%20Individuals.pdf

Guzman 2704

traverse hearing and the final disposition of such hearing." *Id.* (emphasis in original). Citing the STATEMENT OF BASIS AND PURPOSE TO AMENDED RULES, the Department went on to explain: "Indeed, 'the amended rule clarifies that both the process serving agency and the individual process server to whom process was assigned or distributed for service have an obligation to notify the Department of the scheduling of a hearing . . . .'" 138 THE CITY RECORD at p. 384 (Feb. 18, 2011). On February 28, 2012, the Traverse Interpretation Letter was posted to the Department's website.

## ARGUMENT

The Tribunal must reject Respondent's arguments on appeal and sustain the determinations of the ALJ finding that he violated multiple subsections of the rules governing process servers, fining him accordingly and revoking his license for lack of fitness. Respondent has been found guilty of no fewer than 61 violations, five of which involved his knowing falsification of affidavits submitted to New York courts, with two of those falsifications resulting in sustained traverse hearings.[4] Moreover, Respondent does not deny his guilt as to the bulk of these charges. Instead, he argues that: (1) the Department does not have "the authority and/or jurisdiction to adjudicate and decide this action"; (2) for various reasons having no basis in the law or rules governing process servers, Respondent should not be held accountable for his logbook and electronic recordkeeping violations; (3) the plain language of 6 RCNY § 2-236, the traverse reporting rule, is ambiguous, he had no way of understanding it, and he was under no mandate to check the Department's website, where he would have discovered the

---

[4] A "sustained traverse hearing" is a ruling by a court after a traverse hearing that service was improper.

Guzman 2705

Traverse Interpretation Letter; and (4) the total fine amount is "excessive and impose[s on him] an unduly harsh and unconscionable burden." Resp. App. Br. at 1-2. Although Respondent does deny the sewer service allegations, he argues only that the substantial evidence submitted by the Department in support of those charges should be ignored in favor of his wholly unsupported denials. *Id.* at 4-7. All of Respondent's arguments must fail.

## I.   THE DEPARTMENT HAS THE AUTHORITY TO ADJUDICATE LICENSE VIOLATIONS

Respondent argues that "enforcement of rules and regulations regulating the conduct of licensed process servers are criminal in nature and beyond the scope of the DCA's authority and jurisdiction." Resp. Br. at 3. In support of this argument, Respondent inexplicably cites NYC Code § 20-106(a), which provides:

> Judicial enforcement. a. Except as otherwise specifically provided in chapter two of this title, or in subdivision b of this section, any person, whether or not he or she holds a license issued under chapter two, who violates any provision of chapter two or any regulation or rule promulgated under it shall, upon conviction thereof, be punished for each violation by a fine of not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment not exceeding fifteen days, or both; and any such person shall be subject also to a civil penalty in the sum of one hundred dollars for each violation, to be recovered in a civil action.

(Emphasis added). According to Respondent, 20-106(a) means that: process servers are subject to criminal proceedings only; (2) no administrative proceeding can take place before a criminal proceeding; and (3) the Department is precluded from issuing a fine larger than $100. Respondent argues further that, to the extent the Department holds a

Guzman 2706

7

different view of 20-106(a), the Department "cannot rely on its own interpretation of its own rules to sanction" what Respondent deems an "abuse of [] section [20-106(a)]" because "DCA's administrative tribunal may not be substituted for the courts." Respondent's arguments evidence both a willful ignorance of section 20-104 and a gross misunderstanding of the purpose of section 20-106(a).

Respondent's arguments completely ignore NYC Code § 20–104(e), which empowers the Commissioner "upon due notice and hearing, to suspend, revoke or cancel any license issued by him or her in accordance with the provisions of chapter two and to impose or institute fines or civil penalties for the violation of (i) any of the provisions of chapter two of this title . . . and (ii) any of the provisions of any other law, rule or regulation, the enforcement of which is within the jurisdiction of the department . . ." NYC Code § 20-104(e)(1). This law clearly and expressly grants the Department authority to enforce laws and rules governing its licensees.

The Department's authority to adjudicate cases and to issue fines for violations of its licensing laws "ha[s also] been routinely upheld" by New York courts. *See, e.g., Aaron's Const. Corp. v. Gould*, 2010 WL 4236930, at *5 (Oct. 7, 2010 Sup. Ct. 2010) (finding that "DCA's awards of fines, penalties and restitution have been routinely upheld in this department"); *see also In re Marin Construction v. Scatliffe, et. al.*, 271 A.D.2d 206 (1st Dept 2000) (the Department "has broad discretion in imposing sanctions to protect the public"), *Gambino v. New York City Dept. of Consumer Affairs*, 2010 WL 519756, at *3 (Sup. Ct. 2010) (the Department "had the authority to hold a hearing and to issue a determination" concerning violations by one of its licensees). Indeed, the New

Guzman 2707

York Court of Appeals has upheld the imposition of fines and license revocation against a process server following a hearing in the Department's Tribunal. *See Barr v. Department of Consumer Affairs of City of New York,* 70 N.Y. 2d 821 (1987).

Section 20-106, the section relied upon by Respondent, provides alternative means of enforcement to an administrative proceeding brought pursuant to section 20-104(e). Section 20-106(a) and (b) authorize criminal prosecutions with the possibility of fines and imprisonment for violations of provisions of Chapter 2 of Title 20 or rules adopted thereunder. Section 20-106(a) also authorizes the City to seek civil penalties in a civil action. Section 20-106(d) authorizes the corporation counsel to commence a civil proceeding to enjoin any violation of Title 20.

While section 20-106 contemplates criminal and civil proceedings in state court, it does not make state court criminal or civil action the exclusive means for enforcement of the provisions of Chapter 2. Nor does it require a criminal proceeding in state court resulting in conviction as a prerequisite to the commencement of an enforcement proceeding under section 20-104(e) before the Tribunal. Contrary to Respondent's argument, nothing about section 20-106 renders the "rules and regulations regulating the conduct of licensed process servers [] criminal in nature," and certainly nothing in that section limits the amount of fines that may be assessed to $100. *See* Resp. Br. at 3.

Respondent's final argument, that the Department "cannot rely on its own interpretation of its own rules," is mistaken for at least two reasons. First, the question whether the Administrative Code authorizes the Department to bring charges in its Administrative Tribunal and impose sanctions for violations of Chapter 2 and the rules

Guzman 2708

adopted thereunder is a question of statutory construction, not an interpretation of the Department's rules.   Second, "[a]s a general matter courts should defer to the interpretation given a statute by the agency charged with its enforcement if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute." *Trump-Equitable Fifth Ave. Co. v. Gliedman*, 57 N.Y.2d 588, 597 (1982).   The Department's conclusion that section 20-104(e) of the Code authorizes it to commence enforcement proceedings in the Tribunal is neither irrational nor inconsistent with the Code.   Indeed, numerous courts have reached the same conclusion.   *Barr,* 70 N.Y. 2d 821; *Gambino*, 2010 WL 519756, at *3.     Respondent's   undeveloped,   unsupported arguments simply cannot stand against this well-settled law.

## II.   THE   HEARING   BEFORE   THE   TRIBUNAL   MET   WITH   ALL   CONSTITUTIONAL STANDARDS FOR DUE PROCESS (Charges 1 - 5)

Respondent argues that because most of the Department's evidence supporting its charges of sewer service "was in the form of affidavits of complainants that could not be cross-examined, [his] hearing fail[ed] to meet minimal constitutional standards." Resp. Br. at 6., *citing Hecht v. Monaghan*, 307 N.Y. 461 (1954). Respondent's argument lacks merit.

In the context of an administrative hearing, it remains true that "no essential element of a fair trial can be dispensed with unless waived, [which] means, among other things, that the party whose rights are being determined must be fully apprised of the claims of the opposing party and of the evidence to be considered, and must be given the opportunity to cross-examine witnesses, to inspect documents and to offer evidence in explanation or rebuttal." *Hecht*, 307 N.Y. at 470.   As evidenced by the hearing

Guzman 2709

transcripts, this is exactly what occurred here. The Department called one witness, and Respondent cross examined that witness. The remainder of the Department's case came in the form of affidavits and documentary evidence of which Respondent had been fully aware for months. Thus here, unlike in *Hecht*, there is simply no question that Respondent was aware of the "conduct [] to be considered in passing upon his purported offense." *See Hecht*, 307 N.Y. at 473.

Respondent's true argument then, is not that he was denied the right to cross-examine a witness called by the Department, or that he was unaware that the Department intended to use the affidavits of witnesses who would not testify in person, as was the case in *Hecht*. Rather, Respondent argues that the Department failed to call witnesses that he might have liked to cross-examine. *See* Resp. Br. at 6. Nothing in New York state law, however, requires the Department to call witnesses where it has sufficient documentary evidence to support its claims. Nor does Respondent cite any law supporting his suggestion that the Department must call certain witnesses because he does "not have the resources" to make use of the power afforded him to subpoena any witnesses he would like to question.

To the extent Respondent's argument constitutes a challenge to the use of hearsay evidence, it is equally without merit. It is well established that "[h]earsay evidence can be the basis of an administrative determination." *Gray v. Adduci*, 73 N.Y.2d 741, 742 (1988); *see also Muldrow v. New York State Dept. of Corrections and Community Supervision*, 110 A.D.3d 425, 426 (1 Dept. 2013) (a "[p]etitioner's due process rights to a fair hearing or cross-examination [a]re not violated by the admission of hearsay

Guzman 2710

11

statements at [an] administrative hearing"); 6 RCNY § 6-35; *Friendly Convenience, Inc. v. New York City Dept. of Consumer Affairs*, 71 A.D.3d 577, 577 (2010) (only "[i]rrelevant, immaterial, unreliable, and unduly repetitious evidence may be excluded by the Hearing Officer").

In *Gray*, the Court of Appeals rejected an argument nearly identical to that raised by Respondent here. There, the petitioner claimed that a Commissioner's determination "was made without cross-examination in violation of the State Administrative Procedure Act § 306(3), and of petitioner's right to due process," because the ALJ introduced the written report of a witness instead of requiring in-person testimony. *Gray*, 73 N.Y.2d at 743. The Court of Appeals rejected the argument as "without merit," finding that "[p]etitioner always had it within his power to subpoena the [missing witness] at any time. Even after the [ALJ] decided to introduce the written report on his own motion and proceed with the hearing, petitioner's sole objection voiced was on hearsay grounds. He never claimed on the record before the [ALJ] who was in the best position to afford him a remedy, that he had been misled, prejudiced or biased by the Judge's actions. Indeed, petitioner could have sought an adjournment to subpoena the [witness]. That he chose not to, was a tactical decision, which is not dispositive of the outcome." *Id.* (emphasis added). So too here.

## III. RESPONDENT IS RESPONSIBLE FOR THE CONTENT OF HIS SWORN AFFIDAVITS OF SERVICE (Charge 6)

Respondent argues that he cannot be held responsible for failing to include the address of the process serving agency in his affidavits because the "agency prepared the forms in terms of content and fields to be entered," while Respondent merely "completed

Guzman 2711

the prepared form with the information relevant to the specific service." Resp. App. Br.
at 6.  Respondent's argument is untenable.

"Service of process is an extremely serious matter in that it is the major notice
that legal proceedings have been commenced and meticulousness is absolutely essential.
Loss of property or indeed one's home may result.  If [a process server is] not aware of
the statutory requirements or departmental regulations, he [i]s under <u>an absolute
obligation to become aware</u> of these regulations." *Hecker v. Department of Consumer
Affairs of City of New York*, 131 Misc.2d 280, 283 (Sup. Ct., N.Y. Cty., 1986).  Stated
differently, process servers are not mere scribes – they are charged with an important
responsibility requiring more than the robotic collection and transcription of information.
*See* 6 RCNY § 2-235 (forbidding process servers to sign an affidavit of service or cause
an affidavit of service to be notarized until all factual averments have been set forth).  No
case cited by Respondent holds to the contrary.

Respondent cites *Griffith v. Aponte*, 123 A.D.2d 260, 261 (1st Dept. 1986), in
support of his argument that he should not be held accountable for what he terms "record
keeping mishaps." Resp. Br. at 6.  *Griffith*, however, did not so hold.  In fact, quite to the
contrary, the *Griffith* court held that the "gravity" of petitioner's logbook errors was
"diluted" because the Department "failed to demonstrate that petitioner was guilty of a
single instance of 'sewer service,' <u>a finding which might have justified the severe penalty
imposed</u>." *Id*. (emphasis added).  Thus, the court did not find, as Respondent urges here,
that recordkeeping sloppiness should be excused.  The court merely held that in
considering a total penalty amount, such errors, while grave, could be "diluted" by other

Guzman 2712

factors—the primary one of which is not present here, since the Department <u>has</u> demonstrated that Respondent was guilty of sewer service.

Respondent attempts to distinguish cases standing for the proposition that rules and regulations governing process servers are to be strictly enforced because those cases involved "egregious failure to maintain log books and/or preparing and/or filing false affidavits of service." Resp. Br. at 6-7, citing *Barr*, 70 N.Y.2d 821, 823 (1987) and *Masaryk Towers Corp. v. Vance*, 2006 WL 1724046, at *1 (Civ. Ct. 2006). Of course, this case too involves "egregious failure to maintain log books" and "preparing and/or filing false affidavits of service." Respondent's argument then, fails by its own logic.

In any event, the <u>type</u> of charge being levied does nothing to lessen the Court of Appeals' mandate that the laws and rules governing process servers are to be strictly construed. *See Barr*, 70 N.Y.2d at 823. After all, the Court of Appeals did not say that process servers and agencies needed only to conform to <u>some</u> laws. In fact, it stated clearly, and in direct contradiction to the argument being made by Respondent:

> [C]ivil litigants must depend on the accuracy of process servers' records to prove that proper service was or was not made. A process server whose records were <u>illegible, inaccurate and otherwise plainly unreliable</u> lacks credibility. The likely result is that many of the clients of such process servers will be unfairly penalized when they are called upon to prove proper service in traverse hearings. Finally, <u>any attempt by petitioner to suggest that his violation of the licensing agency's rules was insignificant or a mere "technical" infraction must be deemed unpersuasive in light of the clear regulatory mandate that "[t]he licensee shall at all times strictly and promptly conform to all laws, rules, regulations and requirements * * * relating to the conduct of licensees and the service of process in the State of New York"</u> (New York City Department of Consumer Affairs, reg

Guzman 2713

> IV).  Petitioner's inaccurate and evidently false records
> plainly contravened this rule of strict compliance.

*Barr*, 70 N.Y.2d at 823 (internal citation omitted) (emphasis added).

Respondent next argues, "the DCA in its opinion letter, dated October 2, 2013, allows for the use of abbreviations, although the rules do not, illustrating that 'strict enforcement' may be modified." Resp. Br. at 7. This argument is meritless. The Department's Memorandum merely allows, *inter alia*, process servers to use well-defined, sensible abbreviations for oft-repeated information, *i.e.*, the name and license number of the process server agency for which service is being effected, so long as the abbreviations are applied "legibly, accurately and consistently."[5] The Memorandum in no way alters the substance or content of the information required by the rules and laws governing process servers, nor does it lessen or alter the process server's responsibility to provide that <u>exact</u> information.

Respondent objects to the Department's use of the General Business Law ("GBL") for purposes of defining what information must be included in process server affidavits, stating only that "[i]t is doubtful that the Department has the authority to enforce the laws of the State of New York" and "[t]he substance of those statutes are not incorporated into the Department's rules." Resp. Br. at 7. Respondent is wrong on both counts. *See* 6 RCNY § 2-233(a) ("Each process server shall keep records in compliance with the provisions of 89-cc of the General Business Law[.]"); *see also* 6 RCNY § 2-234 (requiring Department "licensee[s to] at all times strictly and promptly conform to all

---

[5] *See* http://www.nyc.gov/html/dca/downloads/pdf/li_AbbreviationsCodesPre-formattedStampsIn Logbooks.pdf

Guzman 2714

laws, rules, regulations and requirements of the federal, state and municipal authorities relating to the conduct of licensees and the service of process in the State of New York and the preparation, notarization and filing of affidavits of service and other documents"); *Bullen v. Center Garage Corp.*, 2003 WL 22038657, 3 (Civ. Ct. 2003) ("The record keeping requirements mandated for process servers by the Department of Consumer Affairs are those specified in the General Business Law").

Respondent's final argument is that, despite having failed to provide a complete address for the process serving agency in his affidavits, the information he did supply is sufficient to constitute a full address for purposes of the law. *See* Resp. Br. at 7. In support of this claim, Respondent's counsel posits that because she "recently received a piece of mail that was only to Myra G. Sencer, P.C., Carle Place, New York 11514" and the post office did not return the mail for "insufficient address," the Department should not have the authority to determine what constitutes a proper address. *Id*. Obviously, what mail Respondent's counsel did or did not receive cannot form the basis of the Department's governance of its licensees, and certainly should not inform any determination by the Tribunal. The Tribunal may, however, be guided by New York law. In *New York Housing Authority v. Fountain*, 172 Misc.2d 784, 786 (Civ. Ct. 1997), the court looked "to the United States Postal Service for guidance on the definition of 'address' as the service alleged involved a mailing utilizing that agency." *Id*. There, the court found:

> As stated by the United States Postal Service ("USPS"): "The delivery address specifies the location to which the USPS is to deliver a mailpiece . . . [T]he mailpiece must have the address of the intended recipient, visible and

Guzman 2715

> legible . . . All mail . . . must bear a delivery address . . .
> that contains at least the following elements in this order:
> a. Intended recipient's name or other identification.
> b. Street and number. (Include the apartment number . . .)
> c. City and state . . .
> d. ZIP [sic] Code . . ..".

*Id.* (*citing* Domestic Mail Manual 47 ("DMM 47"), April 10, 1994, A–1—A–2) (emphasis added). Thus, the United States Postal Service—the organization invoked by Respondent to challenge the Department's interpretation of what constitutes a proper address—disagrees with Respondent's position.

In any event, the fact that "process haphazardly, at best, might [have found] its way to a defendant" does not relieve Respondent of his responsibility to keep appropriate records. *See Bullen*, 2003 WL 22038657, at *1.

## IV. Respondent Was Required To Comply With Electronic Recordkeeping And Logbook Recording Requirements (Charges 7 - 8)

The gravamen of Respondent's arguments regarding his electronic recordkeeping and logbook recording violations is that "Mistakes happen!"   Resp. Br. at 8-9. Respondent also repeats, *ad nauseum*, that because "mistakes happen" and because, according to him, his repeated mistakes are of the "recordkeeping" variety and did not "result[] in bad service or any other impropriety," the charges against him should be dismissed.   Resp. Br. at 8.   Thus, rather than taking responsibility for his violations, Respondent simply blames others—the process serving agency for not supplying him with pre-filled forms; the Department for not supplying him with a logbook; and the GPS software for allegedly dropping information he claims to have entered. *See* Resp. Br. at 8, Decision at 5-6.

Guzman 2716

Respondent's proclamations of innocence establish only one true fact -- that rather than being "mistakes," Respondent's violations constitute his way of doing business.  Respondent does not care about these "mistakes," because he deems them irrelevant.  Because he deems them irrelevant, he makes no effort to correct them.  The fact that much of Respondent's recordkeeping sloppiness was not identified as the direct cause of bad service is of no moment, especially where, as here, Respondent was also found guilty of engaging in "sewer service."  *See Bullen*, 2003 WL 22038657, at *1 ("process haphazardly, at best, [finding] its way to a defendant" does not relieve Respondent of his responsibility to keep appropriate record).  It bears remembering that the recordkeeping requirements were put in place to assist regulators with the identification and elimination of sewer service.  *Id.*; *see also Barr*, 70 N.Y.2d at 823 ("the Department of Consumer Affairs must depend on the accurate record-keeping practices of its licensees as a means of monitoring the industry and uncovering wrongful practices").  Respondent's sloppy recordkeeping renders the jobs of judges, civil litigants, and the Department incredibly difficult or impossible.  Certainly, Respondent should not be rewarded for this behavior with dismissal of the charges against him.

## V.   RESPONDENT HAS A DUTY TO KNOW THE LAW AND COMPLY WITH THE DEPARTMENTAL REGULATIONS AND STATUTORY REQUIREMENTS GOVERNING HIS CHOSEN PROFESSION (Charges 9 – 11)

Respondent argues that his failure to report the scheduling and the results of traverse hearings should be dismissed because: (1) he "legitimately believed that if the [process serving] agency sent in [] the required reports, that was enough" and (2) he had "no obligation to follow the DCA's interpretation on their website," thus he did not

18

"know that the 'legal interpretation' even existed." Resp. Br. at 9. Thus, according to Respondent, his ignorance of the laws and rules governing process servers is excusable and "[t]he DCA is attempting to punish the process server for having no knowledge of something he had no obligation to know or discover." *Id*. Respondent's arguments must fail.

A process server is not "excuse[d from a] failure to comply with both departmental regulations and statutory requirements concerning service of process" by claims related to age, pay or lack of training. *Hecker*, 131 Misc.2d at 283. As already set forth above, because of the serious nature of the work involved, process servers who are unaware of the laws and regulations governing their chosen profession have "an absolute obligation to become aware." *Id*. (emphasis added). The requirement that process servers "become aware" suggests a *continuing* obligation to stay abreast of the law, including any changes thereto. The obligation places the burden upon Respondent to *seek* the required knowledge – not upon the Department to spoon feed it to him. *See* 6 RCNY § 2-234 ("licensee shall at all times strictly and promptly conform to all laws, rules, regulations and requirements . . . now in force or hereafter adopted during any license period") (emphasis added).

Despite having no express obligation to do so, the Department provides on its website significant and substantial information designed to help its licensees become aware of, understand and comply with new laws and regulations. Notably, the Traverse Interpretation Letter has been posted to the Department's website since February 28, 2012, almost a full year before the scheduled dates of most of the traverse hearings at

Guzman 2718

issue. In any event, in light of the well-settled law placing the burden on Respondent to know the law governing his chosen profession, his arguments to the contrary are unavailing.

Respondent next argues that, in fact, he did send the reports to the Department, either by facsimile or by email. *See* Resp. Br. at 9-11. Of course, Respondent offers no proof, i.e., fax confirmations or fax sheet headers, to counter the Department's denial of receipt of any facsimiles. As to those reports he allegedly emailed, Respondent claims to have "used the incorrect e-mail address for the DCA and just kept using that wrong e-mail address." *Id*. at 11. This despite the fact that the correct email address was printed on the very form Respondent claims to have emailed.

The ALJ listened to Respondent's testimony, but found it to be "not supported by any credible evidence," thus insufficient to "establish a meritorious defense." Decision at 6. Such a determination was well within the ALJ's province, and Respondent offers no reason for the Tribunal to reverse that determination on appeal.

## VI.   THE FINES IMPOSED ON RESPONDENT WERE NOT EXCESSIVE UNDER THE CIRCUMSTANCES

Respondent argues that the $30,500 total fine imposed by the Tribunal should be reduced to $500 because "[t]he fines represent more than one and a half times his annual adjusted gross income" and because he has a family to support. Resp. Br. at 11-12. In further support of his request for a reduction in the fine amount, Respondent also mistakenly asserts that "there are no allegations of sewer service, only record-keeping violations." *Id*. at 12. First, Respondent's gross income is listed as $102,592 on his tax returns. *See* Resp. Br., Ex. C, at 4. Second, there are <u>five</u> allegations of sewer service at

Guzman 2719

issue here.   Even without the sewer service allegations, however, Respondent's arguments are unavailing.

Respondent's guilt as to all of the violations charged was established at the hearing, and Respondent does not seriously dispute his guilt as to the logbook, electronic recordkeeping and traverse reporting charges.   Instead, Respondent disgorges myriad excuses for why his multiple, repeated violations simply should not count against him. As already stated above, however, process serving is a serious business, and the law and rules governing that business are to be strictly construed.   The fine amounts set for violations of those laws and rules should apply with equal force.   Indeed, were the Tribunal to adopt Respondent's parameters for determining fine amounts, the laws and rules governing process servers—especially those involving recordkeeping—would be rendered useless.   Further, Respondent's argument, taken to its logical conclusion, would result in the assessment of the same fine amount for a process server who commits just one violation versus a process server who commits numerous violations.   Clearly, that is not what the legislature intended.

Respondent relies heavily on both *Griffith*, 123 A.D.2d 260 and *Hecker*, 131 Misc.2d 280 to support his argument that his fine amount should be reduced to a mere $500.   Both cases are distinguishable.

In *Griffith*, 123 A.D.2d 260, the court rejected a Tribunal award which included the revocation of the petitioner's license, as well as a financial penalty "amounting to approximately half of petitioner's annual income as a process server." *Id.* at 261.   The court found that, in light of the petitioner's then desperate financial circumstances, as

21

Guzman 2720

well as the fact that his behavior did not actually result in any damage to the parties to the underlying litigations, a "penalty . . . not to exceed a one-year suspension of license and imposition of a $500 fine" was sufficient. *Id*. The court's conclusion, however, hinged on its finding that the Department "failed to demonstrate that petitioner was guilty of a single instance of 'sewer service'." *Id*. The court went on to hold that a finding of sewer service "might have justified the severe penalty imposed." *Id*.

In *Hecker*, 131 Misc.2d 280, the court found that "in view of petitioner's age, the fact that he had been working part time for less than two years, and the fact that he appears to be in moderate circumstances, the fine of $4,550 added to the severe penalty of license revocation does shock the conscience of the court."

Here, as set forth above, Respondent was found guilty of five instances of sewer service, far more than the "single" instance which would have satisfied the *Griffith* court. Moreover, both *Hecker* and *Griffith* involved considerably fewer than the 61 violations at issue here. Finally, unlike in either *Hecker* or *Griffith*, Respondent is a full-time process server working as an independent contractor for three different agencies with a gross income of $102,592. Respondent submitted no credible evidence of the type of desperate circumstances found compelling by the *Hecker* and *Griffith* courts.[6]

Respondent argues that the number of fines imposed by the Department are "arbitrary and capricious" and apparently administered on a case by case basis." Resp. Br. at 12. This argument makes no sense. First, there is nothing arbitrary and capricious

---

[6] The Department does not concede that the amount stated in Respondent's brief is his actual, total adjusted gross pay. In fact, the Department questions the veracity of the tax return, which shows a gross income of $102,592, then claims an incredible $81,880 in largely unexplained business "expenses." The Department further notes that while petitioner states that he works for three different process serving agencies, only one, Samserv, Inc., appears on his tax return.

Guzman 2721

about the Department's exercise of its prosecutorial discretion to limit to ten the count amount of certain types of violations, which can easily add up to hundreds. That exercise of discretion serves both the process server and the Department—the process server, because he is given an opportunity to satisfy a debt where such satisfaction might otherwise be out of reach; and the Department, because the fines are still significant enough to forestall the potentially devastating consequences of the process server's misconduct. Second, to the extent counts do not exceed ten, it is both obvious and appropriate for the number of counts to vary "case by case," since the number of violations so vary.

Nor can fine amounts be deemed "arbitrary." *See* Resp. Br. at 13. The law provides the Tribunal with a penalty range, with the exact amount of the penalty left to the discretion of the ALJ. *See, e.g.*, NYC Code 20-104(e). Contrary to being arbitrary, the determined fine amount may depend, in turn, on the seriousness and volume of the charges proven, and on the ALJ's evaluation of a Respondent's veracity. As pointed out above, here, Respondent was found guilty of 61 violations, five of which involved the falsification of affidavits. Moreover, Respondent's testimony at hearing was less than credible, with numerous instances of his having been caught in blatant falsities and inconsistencies. *See, e.g.*, Tr. at 207-12 (summarizing testimony).

While Respondent decries the Department's determination to limit the number of counts for certain violations to ten, Respondent also complains that fine amounts are imposed in multiples. *See* Resp. Br. at 13. Per violation fines, however, have been upheld in New York. In this regard, the First Department has found:

Guzman 2722

> The penalty for "each violation" may consist of a fine of
> from $5 to $350. Respondents have made a reasonable
> application of the violation and penalty provisions. Each
> time a licensee accepts a car in excess of its capacity
> limitation, a separate violation occurs which may be
> separately penalized. No temporal space requirement
> between violations exists in the statute. A new violation
> could occur within seconds of the prior one. The
> legislative intent to punish separately for each offense
> manifestly appears and the unit of prohibited conduct is
> properly defined. If the penalties were limited to $350
> maximum on any single day, the fine would simply be a
> cost of doing business . . . .

*Meyers Bros. Parking Systems Inc. v. Sherman*, 87 A.D.2d 562, 563 (1st Dept. 1982)

(emphasis added). The First Department went on to cite the Court of Appeals for the

proposition that, "[w]ith respect to the effect of cumulative penalties . . . the courts have

long sustained a pyramiding of penalties as [a] valid means of control." *Id.*, *citing*

*Oriental Blvd. Co. v. Heller*, 27 N.Y.2d 212, 220 (1970) (emphasis added).

The Tribunal should reject Respondent's attempt to minimize the seriousness of

his recidivist behavior, as well as his attempt to turn the imposition of fines into a mere

"cost of doing business." *Meyers Bros. Parking Systems Inc.*, 87 A.D.2d at 563.

## CONCLUSION

For the above-stated reasons, it is respectfully requested that:

(1) the Decision finding that the Department established all charges be sustained;

(2) The fine amount of $30,500 be sustained and his license revoked;

(3) Respondent's appeal be denied in its entirety; and

(4) The stay of enforcement of the Decision be lifted.

Guzman 2723

Dated: New York, New York
March 25, 2014

                    Respectfully submitted,

                    For:    Alba Pico, First Deputy
                             Commissioner

                    By:     Tamala T. Boyd
                             Associate General Counsel
                             NYC Department of Consumer
                             Affairs
                             42 Broadway, 8th Floor
                             New York, NY 10004
                             (212) 436-0201
                             tboyd@dca.nyc.gov

cc:     Myra G. Sencer, Esq.
         206 Stonehenge Lane
         Carle Place, NY 11514
         sencerlaw@aol.com

         Lester162@hotmail.com

Guzman 2724