**CITY OF NEW YORK**
**DEPARTMENT OF CONSUMER AFFAIRS**

**JOSEPH MCMAHON**

And

**THE DEPARTMENT OF CONSUMER AFFAIRS,**

Complainants,

-against-

**MICHAEL J. MOSQUERA,**

Licensee.

**Violation No.**
**CD5- 51072**

**License No.**
**848736 (Process Server)**

**Licensee's Address:**
**162 Carroll Street**
**Brooklyn, NY 11231**

**Date of Decision**

AUG 0 8 2000

A **hearing** on the above-captioned matter was held on April 17, 2000 before Administrative Law Judge Bruce Dennis.

**APPEARING:**

**For the Complainant:**
**Joseph McMahon**

**For the Licensee:**
**Louis Sroka, Esq.**
**Michael Mosquera**

The Notice of Hearing charges the Licensee with violating the following sections of law:

**Title 6 of the Rules of the City of New York (6 RCNY):**

1. **Section 2-234** by failing to conform to all laws relating to service of process in New York State and to the preparation, notarization and filing of affidavits of service and other documents;
2. **Section 2-235** by signing or having caused to be notarized an affidavit of service before all factual averments had been set forth; and,

Guzman 2900

Guzman 2901

## New York State Administrative Code:

3. **Section 20-101** by failing to maintain the standards of integrity, honesty and fair dealing among persons and organizations engaging in licensed activities.

## SUMMARY OF THE EVIDENCE:

**MR. McMAHON** brings the instant proceeding, seeking an Order to revoke Licensee Mosquera's process server's license upon the grounds that he fabricated personal service upon him and lied in his affidavit of service. He testified that he is a fireman employed by the NYC Fire Department and a divorced father of one son. On July 28, 1998, he received a call from his son, advising that he was supposed to have been in Brooklyn Family Court earlier that day. Unbeknownst to him, his ex-wife Rosemary Campo had filed a petition seeking a modification of a previous child support order. However, Mr. McMahon claimed that he was never served with any papers and had absolutely no prior knowledge of the said proceeding. As a result of his failure to appear in Court, a warrant for his arrest was issued. He surrendered to the Family Court that same day, and learned at that time that Ms. Campo had presented Licensee Mosquera's affidavit of service to the court. According to the affidavit, Mr. Mosquera swore he personally served "Joseph T. McMahon Sr." at 84-10 120th Street, Queens New York on June 30, 1998 at 5:25 P.M. However, Mr. McMahon maintained that, at the time cited, he was not at 84-10 120th Street where he resides, but was at work at NYC Fire Department Engine Company #6, 49 Beekman Street in Manhattan. He noted further that the affidavit of service was sworn to before Notary Public Aldo E. Alleva on June 6, 1998, 24 days before the alleged service took place. In addition, he noted that the affidavit incorrectly names "Joseph T. McMahon, Sr." as the person served, which is the name of his deceased grandfather. He explained that his name is "Joseph T. McMahon, III." Lastly, he noted that no apartment number was set forth on the affidavit of service. After being apprised of the foregoing, the Court vacated the arrest warrant and scheduled a traverse hearing for October 20, 1998. However, Mr. Mosquera failed to appear on that date, and the traverse hearing was re-scheduled for January 12, 1999. Mr. Mosquera again failed to appear, and the Court dismissed Ms. Campo's petition, without prejudice, based upon defective service.

Mr. McMahon claims he suffered emotional trauma and severe humiliation in having to advise his superiors at work of the outstanding arrest warrant and having to respond to the warrant in Family Court. In addition, he suffered the inconvenience and having to miss work to twice appear for the aforesaid traverse hearings.

Guzman 2902

In support of his testimony, the following were admitted into evidence as Complainant's Exhibits:

Exhibit A:    Mr. Mosquera's affidavit of service, sworn to on June 6, 1998;

Exhibit B:    Notice to Police NOT to arrest Mr. McMahon regarding the arrest warrant of July 28, 1998, issued by Kings County Family Court[1].

Exhibit C:    Mr. McMahon's written request to the NYC Fire Department Legal Division for a certified copy of Engine Company #6 Journal, page 360, dated June 30, 1998 and a copy of said journal page, showing that he signed in for work at 1715 hours on June 30, 1998.[2]

Exhibit D:    A notarized statement from Lt. Henry Porcaro of the NYC Fire Department attesting that Mr. McMahon signed in for work at Engine Company #6 at 1715 hours (5:15 P.M.) on June 30, 1998 and that he was present and under his direct supervision for the next 24 hours.

On cross-examination, Mr. McMahon testified that he resides with his present wife at 84-10 120th Street in Apartment #1L, that there are no other males residing in that apartment and that he has no brothers. He testified further that the Family Court judge instructed Ms. Campo to notify Mr. Mosquera of the scheduled traverse hearings.

**MR. MOSQUERA** testified that he first obtained his process server's license in 1990, which has never been suspended or revoked; nor has he ever been fined. He works for a variety of process service companies on a free-lance basis. Alleva Services, Inc. was the process service company in charge of the process in the underlying Family Court proceeding. He explained that he set forth the name "Joseph T. McMahon, Sr." on the affidavit of service because that is how he was identified on the underlying Family Court Petition. He testified further that he was given a note written by Ms. Campo to John Alleva regarding where Mr. McMahon could be served, setting forth his aforementioned residential address. He claimed that he was never given a physical description of Mr. McMahon prior to attempting service. He claimed further that he made only one attempt to serve him, on June 30, 1998. He described Mr. McMahon's apartment building as being 'big", with approximately 15 apartments per floor and no doorman. He gained entry when someone exited the building. He then went to Apartment #1L and rang the doorbell. A man opened the door slightly. He then asked for Joseph McMahon. The man responded, "May I help you?" or "What do you want?" He then said, "I have some papers for you, sir", at which point the man took the papers and slammed the door.

---

[1] Mr. Sroka objected to its admission into evidence upon the ground that the document did not have an official stamp as to its authenticity. The objection was overruled.

[2] Mr. Sroka objected to its admission into evidence upon the ground that it was not authenticated. Mr. McMahon noted that his Captain signed a statement of authentication on the reverse side. The objection was overruled.

Guzman 2903

After the Fourth of July weekend, he returned to Alleva Services' office at 22-80 MacDonald Avenue, Brooklyn and transposed his log book records regarding this service to a separate sheet of paper. He then gave the sheet to Mr. Alleva's secretary, who typed up the affidavit. Upon completion, he reviewed the affidavit and then signed it before Notary Public Aldo Alleva, Esq., John Alleva's father. Lastly, he explained that Aldo Alleva inadvertently set forth June 6, 1998 as the date when the affidavit was sworn, as opposed to the correct date of July 6, 1998.

In support of his testimony, he presented the following documents, which were admitted into evidence as Licensee's Exhibits:

Exhibit #1:  The Summons & Notice of the aforesaid Family Court Petition, Rosemary Campo, Petitioner v. Joseph T. McMahon, Sr., Docket #F-02426/89B.

Exhibit #2:  The note from Rosemary Campo to John Alleva.

Exhibit #3:  The affirmation of Aldo E. Alleva, Esq., dated September 20, 1999, wherein he attests that the jurat on the affidavit of service erroneously read June 6, 1998 instead of July 6, 1998.[3]

Exhibit #4:  The affidavit of John Alleva, sworn to on April 16, 2000, wherein he states that on June 10, 1998, Rosemary Campo contracted with him to serve Mr. McMahon. He states that she did not know he had hired Mr. Mosquera to effectuate the service, and that therefore she could not notify him directly of the traverse hearings. He attests further that neither he nor anyone in his company ever received notification of the traverse hearings. Lastly, he claims that it is his "knowledge and belief" that Mr. Mosquera did effectuate service upon Mr. McMahon.

On cross-examination, Mr. Mosquera testified that he did not bring his logbook to the instant hearing because he had to take his daughter to school and did not have time to stop by the office and pick it up. He testified further that he was able to determine the height and weight of the man served, even though the door was opened slightly. In addition, he testified that he believed Mr. McMahon's apartment "was off to the right" of the lobby.[4] Lastly, Mr. Mosquera admitted at the hearing that it was possible that he "could or could not have served Mr. McMahon."

MR. SKORA argued on Mr. Mosquera's behalf that he has a clean record, and that he followed Ms. Campo's instructions regarding where Mr. McMahon could be served.

---

[3] It was noted that, in paragraph #3 of his affirmation, Mr. Alleva also attests "that Michael Mosquera did so effect personal service upon the said defendant on June 30th, *1999*" (emphasis added), without explaining the basis of his knowledge.

[4] Mr. McMahon testified that his apartment is off to the left of the lobby.

Guzman 2904

## RECOMMENDED FINDINGS AND ORDER:

In executing the subject affidavit of service, Mr. Mosquera pledged conclusively that he personally served Mr. McMahon at the time and place set forth therein.  Yet, Mr. McMahon's testimony and evidence credibly established that he was at his workplace at 49 Beekman Street, Manhattan as of 5:15 P.M. on June 30, 1998 and therefore could not have been personally served at 84-10 120 Street in Queens at 5:25 P.M.   Mr. Mosquera failed to produce evidence, such as his logbook, or any persuasive testimony in rebuttal. This factor, taken together with the discrepancies in the affidavit and the Alleva affirmation, as well Mr. Mosquera's admission that he  "could or could not have served Mr. McMahon",  warrant the conclusion that he swore to and filed a false affidavit. This is the most serious violation a process server can commit. Mr. Mosquera's action not only injured Mr. McMahon by subjecting him to emotional trauma, embarrassment and inconvenience, it also strikes a serious blow to the fundamentals of due process. The fact that Mr. Mosquera may not have any prior violations on record, or that he followed Ms. Campo's instructions, does not negate the fact that he swore he personally served Mr. McMahon, when in fact he did not.  The New York State Appellate Division has held that "since the truthfulness of the statements in the documents signed by (a process server) is the sine qua non of the faithful performance of his duties, and proper performance of those duties is essential to the integrity of the judicial process, a punishment less severe than license revocation will not suffice." Bialo v. Meyerson, 44 A.D.2nd 796, 355 N.Y.S.2d 130 (1st Dept. 1974).  Accordingly, the Licensee is found **guilty of all charges.  License #848736 is hereby REVOKED and a total fine of $500 for violation of 6 RCNY 2-235 is hereby imposed.**

**This constitutes the recommendation of the Administrative Law Judge.**

Bruce M. Dennis
Administrative Law Judge

Guzman 2905

## FINDING AND ORDER:

The Findings of Fact, Conclusions of Law, and the Order recommended by the Administrative Law Judge are approved.

**This constitutes an Order of the Department.  Failure to comply with this Order within thirty days will result in the suspension of the license.**

Christopher D. Kerr, Esq.
Deputy Director of Adjudication

**TOTAL FINE:  $500
LICENSE #848736 – REVOKED**

cc:  Alba Pico, Director of Licensing