# In The Matter Of:

*MONIQUE SYKES, et al., v.*
*MEL S. HARRIS AND ASSOCIATES*

*June 27, 2011*

*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK, NY 10007*
*212 805-0330*

Original File 16rksykc.txt
Min-U-Script® with Word Index

This Page Intentionally Left Blank

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

```
16RKSYKC        Conference                      Page 1
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
 3   MONIQUE SYKES, et al.,
 4                 Plaintiffs,
 5           v.                       09 CV 8486 (DC)
 6   MEL S. HARRIS AND ASSOCIATES
     LLC, et al.,
 7
                   Defendants.
 8
     ------------------------------x
 9                                    New York, N.Y.
                                      June 27, 2011
10                                    4:46 p.m.
11   Before:
12                    HON. DENNY CHIN,
13                                    District Judge
14                      APPEARANCES
15   COUNSEL FOR PLAINTIFFS:
16   CLAUDIA WILNER, NEDAP
     JOSH ZINNER, NEDAP
17   SUSAN SHIN, NEDAP
     MATTHEW D. BRINCKERHOFF, Emery Celli Brinckerhoff & Abady, LLP
18   CAROLYN E. COFFEY, MFY Legal Services Incorporated
19   KAUFMAN DOLOWICH VOLUCK & GONZO LLP
          Attorneys for Mel Harris Defendants
20   BRETT A. SCHER
21   McELROY DEUTSCH MULVANEY & CARPENTER LLP
          Attorneys for Leucadia Defendants
22   LEWIS H. GOLDFARB
23   BABCHIK & YOUNG LLP
          Attorneys for SamSERV Defendants
24   JORDAN SKLAR
25
```

```
16RKSYKC        Conference                      Page 2
 1           (In open court)
 2           THE COURT: Since there are so many of you, just
 3   identify yourself when you speak.
 4           THE DEPUTY CLERK: Sykes versus Harris, civil cause
 5   for conference. If all the parties could state their
 6   experiences and who they represent, please.
 7           MR. BRINCKERHOFF: Matthew Brinckerhoff for the
 8   plaintiffs.
 9           MS. WILNER: Claudia Wilner for the plaintiffs.
10           MS. COFFEY: Carolyn Coffey for the plaintiffs.
11           MS. SHIN: Susan Shin for the plaintiffs.
12           MR. ZINNER: Josh Zinner for the plaintiffs.
13           THE COURT: All right.
14           MR. GOLDFARB: Lou Goldfarb for the Leucadia
15   defendants.
16           MR. SKLAR: Jordan Sklar for the SamSERV defendants.
17           MR. SCHER: And Brett Scher on behalf of the Mel
18   Harris defendants.
19           THE COURT: All right. We had some discovery issues.
20   Who wants to go first?
21           MS. WILNER: I will, your Honor. Thank you.
22           This is Claudia Wilner of NEDAP on behalf of the
23   plaintiffs.
24           THE COURT: Yes.
25           MS. WILNER: And we had sent a letter to the Court
```

```
16RKSYKC        Conference                      Page 3
 1   over several discovery matters items.
 2           THE COURT: Let's just go through them.
 3           MS. WILNER: Sure.
 4           THE COURT: Identify anything that's still outstanding
 5   just one by one. What's the first one?
 6           MS. WILNER: The first one has to do with some
 7   electronic discovery requests that we had made, one to the Mel
 8   Harris defendants and one to the SamSERV defendants. Both sets
 9   of defendants have electronic databases that contain
10   information that's extremely important to our case. It
11   includes information on the people that they sued, the methods
12   of service, their applications for a default judgments, the
13   amounts that they were able to collect, the methods of
14   collection. All of this information is stored in electronic
15   databases. It is easily retrievable and is not burdensome to
16   produce to us, and we really need to information to move
17   forward with our case.
18           THE COURT: OK, what's the objection?
19           MS. WILNER: Well, we haven't --
20           THE COURT: No, no, what's the objection.
21           MR. SCHER: Your Honor, Brett Scher on behalf of the
22   Mel Harris defendants.
23           THE COURT: Yes.
24           MR. SCHER: The first objection we have is with
25   respect to the scope of Rule 23 we talk about the Dziennik
```

```
16RKSYKC        Conference                      Page 4
 1   case, which talks about the scope of what is discoverable
 2   before certification. And the issue here is that plaintiffs
 3   are looking for putative class member identities and documents.
 4           With respect to my clients, what they are talking
 5   about, based on their definition of the class, is 120,000 legal
 6   files, attorney-client files, pertaining to every case that my
 7   clients that my clients have essentially represented Leucadia
 8   in the New York City court system over the last five or six
 9   years. We think this goes well beyond the scope of what's
10   discoverable under Rule 23.
11           THE COURT: I don't remember. Are we just doing class
12   discovery now or are we doing all discovery? Have we addressed
13   that issue?
14           MR. SCHER: Your Honor, at the outset of the case, I
15   believe there was an application made by Mr. Goldfarb to
16   bifurcate, which your Honor denied at that point. So the issue
17   we're dealing with here is that, even I believe even under Rule
18   23, even with the class and merits discovery, we have given
19   them everything in terms of policies and procedures that deal
20   with not just the plaintiffs but everybody, but when you're
21   talking about actually producing 120,000 legal files -- and
22   it's after they've already moved for class certification.
23           THE COURT: It sounds like they're only asking for the
24   electronic files. In other words, you don't have to print out
25   120,000 files; you just give them the data.
```

Case 1:09-cv-08486-DCR Document 192 Filed 08/01/17 Page 4 of 9

16RKSYKC    Conference    Page 5

1    MR. SCHER: The problems is those, what they call
2 electronic files, are legal files. My client's law firms, they
3 maintain everything electronically; that has all the
4 communications with clients, it has their internal memorandums,
5 it has everything --
6    THE COURT: It sounds like you're saying there are
7 privileged materials in there, work product materials, and so
8 it's not so easy as pushing a button; you'd have to go through
9 and sort out the privileged materials?
10   MR. SCHER: Exactly correct, your Honor. And we don't
11 know what size class we're dealing with because they've gone
12 well beyond what's alleged in the conspiracy here, between the
13 SamSERV defendants and the sewer servers. They've now asked
14 for my clients' entire files, well beyond using SamSERV, who is
15 the alleged process server that engaged the sewer servers.
16   THE COURT: Ms. Wilner, I'm concerned about ordering
17 the production of things that could be privileged, and I am
18 concerned about reviewing 120,000 files for privilege. Is
19 there some other way of doing this?
20   MS. WILNER: Well, your Honor --
21   THE COURT: I think, first of all, certainly for all
22 the named plaintiffs it should be done.
23   MR. SCHER: That's been done, your Honor.
24   THE COURT: OK. My only other thought is whether you
25 can have discussions about whether there is a way to sort, so

16RKSYKC    Conference    Page 6

1 that you can sort out certain things that would not be
2 privileged. For example, you could sort out things like
3 pleadings, affidavits; I don't know, it seems to me that that
4 is the kind of thing which wouldn't be burdensome if it would
5 not require reviewing 120,000 files. And the other possibility
6 is to depose a person with knowledge on how these things are
7 kept and see what the person says, unless you can work it out
8 informally.
9    MS. WILNER: Your Honor, if I may, we already did have
10 that deposition and what we're seeking is specifically -- most
11 of what we're seeking is data fields that have a specific
12 information in it, such as an amount or an address. I don't
13 think that there is information in those particular data fields
14 that's subject to privilege. We haven't asked for --
15   THE COURT: So you're willing to narrow the request to
16 certain data fields?
17   MS. WILNER: The request has already been narrowed to
18 certain data fields. What they have produced to us for the
19 individual plaintiffs are those fields, and now what we're
20 looking for is that information, not for the individual
21 plaintiffs but for the class members.
22   THE COURT: Mr. Scher, I'm hearing that the plaintiffs
23 think that they can narrow it to certain data fields that would
24 not elicit any privileged or confidential materials. Is that
25 not so?

16RKSYKC    Conference    Page 7

1    MR. SCHER: Based on even what's in their letter to
2 the Court, your Honor, I'm most concerned -- on page 2, where
3 they're saying they want every document that we have in these
4 electronic files, including efforts to collect on the
5 unlawfully-obtained judgments, including methods of collection
6 and amounts taken from class members, I think we're getting
7 beyond --
8    THE COURT: That does sound too broad, because it
9 could pick up things that are privileged, communications,
10 et cetera.
11   The parties are directed to meet and confer to see
12 whether there is a way of sorting electronically so that
13 certain data fields could be pulled out without the need to
14 review each file individually for privilege and
15 confidentiality. If there is a factual disagreement, then
16 you'll either have to submit something or you'll have to call,
17 we'll have to have a hearing or something; I don't know, I'll
18 have to resolve the factual dispute if there is one.
19   If it can't be done without the extraordinary effort
20 of somebody going through 120,000 files, then someone will have
21 to pay for that; I would think in the first instance it ought
22 to be the plaintiffs if they really want it. So I think you
23 should meet and confer try to work it out.
24   Yes, sir?
25   MR. BRINCKERHOFF: Judge, if I may, I just want the

16RKSYKC    Conference    Page 8

1 Court to understand that we have gone about this discovery in a
2 very deliberative way. The first thing we did was we did a
3 30(b)(6) deposition of the custodian of all the records at Mel
4 Harris, which is the prime depository. And the request that we
5 made was specific to the database information, not to the paper
6 records that are behind it, but to the database information.
7 And, in fact -- and the reason I'm raising this; I think we can
8 short-circuit this a little bit -- what we got in response,
9 with no privilege log or any assertion of privilege, were the
10 exact pieces of data that we requested for each and every one
11 of the collection efforts made against the individual
12 plaintiffs. There is no indication from that response that
13 they're claiming any privilege with respect to that information
14 that was produced in an Excel spreadsheet that was exported
15 from their database.
16   All we're seeking at this point to evaluate are those
17 same data fields, the same information, the ticks and the
18 little lines of text that were already produced without any
19 claim of privilege. So it's a little hard to understand why
20 they could be claiming that a review or an assertion of
21 privilege is necessary when they have already produced this
22 information with no such assertion.
23   And we've been trying to keep it very --
24   THE COURT: Is there a problem with producing the same
25 information for the others electronically?

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

| 16RKSYKC Conference Page 9 |
|---|

1  MR. SCHER: Yes, your Honor. This deals with
2  financial and private information with respect to plaintiffs,
3  putative plaintiffs, who the plaintiffs' counsel doesn't
4  represent. And I think that goes to the whole issue of the
5  cases that we cited that talk about that the discovery process
6  is not intended to be a mechanism for plaintiffs to go out and
7  seek out new plaintiffs to add to the lawsuit.
8      THE COURT: They are different issues, different
9  objections, I'm hearing: One is burdensomeness; two is, there
10 may be privileged or confidential materials; and three, what
11 you're really saying is relevancy and that they are trying to
12 come up with more plaintiffs. So I'm not quite sure which ones
13 you're really pressing. Are you really pressing a
14 burdensomeness argument if they limit it to the data fields
15 that they have already gotten information on for the named
16 plaintiffs?
17     MR. SCHER: I think it does because one of those
18 fields is what we call the attorney notes field, which we did
19 produce for the four named plaintiffs but not with the
20 anticipation that it would be the same demand as to 120,000
21 people that they didn't even represent. So that is one of the
22 fields that was given to them, but that is --
23     THE COURT: What if we eliminated attorney notes?
24     MR. SCHER: It depends on what they're asking for
25 other than that. That's the main thrust of --

| 16RKSYKC Conference Page 10 |
|---|

1      THE COURT: Did you give me a printout of what you've
2  gotten?
3      MR. BRINCKERHOFF: We could. We could give you the
4  Excel file that our expert --
5      THE COURT: Do this: Try to work it out. If you
6  can't work it out, then submit a copy of what it is that you
7  got already and you're telling me that you want the equivalent
8  of for everyone else, and then you can respond on what the
9  additional objections there would be to this. Try to narrow it
10 as much as you can, and then I'll rule quickly on that issue if
11 you can't work it out.
12     MR. BRINCKERHOFF: I think that we can certainly do
13 that, Judge. Insofar as there is any kind of an objection
14 based on attempting to solicit plaintiffs or anything of the
15 sort, which I don't think there's any basis for, we'd be happy
16 for the Court to order us not to reach out to any witnesses
17 until further notice or anything of that sort, if that's a real
18 concern. I think the only real issue here is whether or not
19 maybe there is something that might be privileged.
20     THE COURT: And why are you looking? Why do you want
21 to say all of this data? And can you really process it?
22     MS. WILNER: Well, yes, we believe we can process it.
23 And what we're really looking for is data in the patterns that
24 we think are there that would prove our case. We've talked
25 about defendants having a pattern and practice of engaging in

| 16RKSYKC Conference Page 11 |
|---|

1  these improper collection efforts on a vast scale, for hundreds
2  or a hundred thousand people, and that they do this
3  electronically --
4      THE COURT: Fair enough. I think that's reasonable.
5  Have that same discussion. Plaintiffs would be willing not to
6  approach any of these other unnamed class members, potential
7  class members, without giving the defendants a chance at least
8  to come back to court to object. So that's another condition
9  that you can add to your discussion.
10     What's next? So you'll come back to me on this if you
11 need my help.
12     MS. WILNER: The next issue has to do with the SamSERV
13 defendants. And we had requested copies of logbooks and also
14 records of traverse hearings that were involving the individual
15 process servers. And SamSERV has refused to produce that
16 information. The logbooks are as essentially a paper record
17 that the individual process servers keep, that record all their
18 services. And of course because we have alleged a pattern and
19 practice of sewer service, the information that would address
20 that that's not in the electronic databases is in these
21 logbooks.
22     Similarly, with the traverse hearings, if there are
23 documents pertaining to traverse hearings --
24     THE COURT: For how many individuals?
25     MS. WILNER: Well, we've asked for the logbooks and

| 16RKSYKC Conference Page 12 |
|---|

1  traverse hearings that relate to the individual process server
2  defendants in the case.
3      THE COURT: How many?
4      MS. WILNER: I believe there are four defendants.
5      THE COURT: OK, what's the objection?
6      MR. SKLAR: Well, the objection there, starting off,
7  is it's overbroad because it's not limited to a potential class
8  and that's not limited to Mel Harris; it's all possible
9  clients that these process servers did work for. SamSERV
10 itself, the corporate defendant, doesn't keep the logbooks.
11 That's the responsibility of the individual named process
12 servers, most of whom don't work for SamSERV anymore; and I
13 believe none of them have those logbooks. I can try to clarify
14 that as best I can.
15     As far as the claim there would be information in
16 there that would not be available elsewhere, I respectfully
17 submit that's not correct. All those logbooks record is the
18 data that ultimately --
19     THE COURT: Are you saying the logbooks don't exist?
20     MR. SKLAR: My understanding is the individual process
21 servers don't have these logbooks.
22     THE COURT: And corporate defendants do not have them?
23     MR. SKLAR: No. They're independent contractors.
24 It's their responsibility to hold onto them.
25     THE COURT: I think you should make a written

### 16RKSYKC Conference — Page 13

1 representation --
2     MR. SKLAR: OK.
3     THE COURT: Actually, the representation should come
4 from someone at the client under oath, who will say, if it's
5 true, that the corporate defendants do not have the logbooks,
6 that the logbooks were kept in the possession of the individual
7 process servers; and, if you are representing the individual
8 process servers, confirm with each of them, and they should
9 provide a sworn statement that they do not have any logbooks.
10     MR. SKLAR: Absolutely, your Honor. But as I say, the
11 information that's in there would be the exact same information
12 that is in the electronic database which they have, which is in
13 the affidavit of service.
14     THE COURT: It doesn't matter whether it's
15 duplicative. I think they would be entitled to see them if
16 they exist. If you're saying they do not exist, then let's not
17 fight about it. Make the representations in writing. When the
18 individual process servers are deposed, if the plaintiffs think
19 that they are lying about the existence of these logbooks and
20 they have something to point to, then they can come back to me
21 and I'll take a look at it. But there's no sense fighting over
22 it if their position is that they do not exist. If they say
23 that, then it would be a fair game at deposition to inquire
24 into did they ever exist, if so, what happened to them, when
25 were they destroyed or tossed or whatever; and then I can see.

### 16RKSYKC Conference — Page 14

1 But let's make sure that they do a search and can confirm that
2 they do not have them.
3     MR. SKLAR: Fair enough.
4     Also, as far as the traverse hearing, again, it's not
5 limited to the Mel Harris defendants and --
6     THE COURT: Any objection to limiting it to traverse
7 hearings involving Mel Harris Associates?
8     MS. WILNER: Well, yes, your Honor, because the
9 purpose of requesting the information about the traverse
10 hearings is to gain information about the individual process
11 servers' practices. And their normal practices when they serve
12 process are the same, whether it's Mel Harris or somebody else
13 that they're serving for.
14     THE COURT: Do you have the resources to process all
15 this information?
16     MS. WILNER: Your Honor, we believe there are not very
17 many traverse hearings, because they're rarely held.
18     THE COURT: For what period of time did you go back?
19     MS. WILNER: I believe we went back to 2006, which is
20 the period of the class, the proposed class.
21     THE COURT: Is there a record kept -- do we know what
22 we're talking about -- in terms of volume?
23     MR. SKLAR: I don't know, your Honor. I don't think
24 there's a button, that you can press a "traverse hearing"
25 button and spit it out.

### 16RKSYKC Conference — Page 15

1     THE COURT: Tell me what you are asking for with
2 respect to traverse hearings.
3     MS. WILNER: Well, we had asked for all documents that
4 they have that pertain to them, so that would include
5 information just about whether a traverse hearing was scheduled
6 as well as if they happened to have a transcript of the
7 traverse hearing, which they may be unlikely to have. But even
8 knowing how many hearings were scheduled over a period of time
9 would be helpful to our case.
10     MR. SKLAR: Again, I don't see how that is at all
11 relevant or reasonably calculated to lead to any sort of
12 information about whether, if some other client has a policy of
13 pressing traverse hearings and another client has a policy of
14 pressing for traverse hearings only on Tuesday and Mel Harris
15 has a different policy, how that's at all relevant to this
16 case, the members of the class.
17     MS. WILNER: The traverse hearing --
18     THE COURT: My concern is, unless there's a file kept
19 on traverse hearings, how do you figure out how many traverse
20 hearings there were, when they occurred?
21     MR. SKLAR: If I may, your Honor, why don't we fold
22 that into the meet-and-confer and let me talk to my client and
23 try and get some answers on that subject.
24     THE COURT: Yes, some of this should have been done
25 already.

### 16RKSYKC Conference — Page 16

1     Let me give you some general thoughts:
2     In general, I think the issue of the number of
3 traverse hearings that are conducted is relevant. If many of
4 these cases result in traverse hearings, I think that could be
5 relevant, could lead to relevant evidence. I think I'm a
6 little skeptical about non-Mel Harris. But I think SamSERV
7 needs to provide some information as to how these things are
8 logged, whether there is a reference, whether there is any kind
9 of collection of data relating to traverse hearings. In other
10 words, I don't know that -- you'd have to almost look through
11 every file to see whether there was a traverse hearing -- and
12 I'm sympathetic to that -- but maybe there's a master calendar,
13 there's a calendar kept of when these hearings are scheduled.
14     So I'm inclined to rule that much of this is relevant.
15 I am a little bit sympathetic to whether it would create too
16 much of a burden. It depends on the volume. I think that the
17 SamSERV defendants need to provide some information about
18 recordkeeping for these kinds of things. I don't know if there
19 would be a mechanism for keeping track of this. Expenses
20 maybe? I don't know if there's a record for expenses related
21 to traverse hearings. But if there was a way of doing it, that
22 ought to be done. So hopefully that gives you some guidance.
23     MR. SKLAR: Thank you, your Honor.
24     THE COURT: OK, what's next?
25     MS. WILNER: Your Honor, we requested a copy of an

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

16RKSYKC   Conference   Page 17

1 Access database that's maintained by the SamSERV defendants
2 that concerns service of process. So all of the records of
3 service that they've done for the Mel Harris defendants are in
4 an Access database. Again, it would be easy for them to make a
5 copy of this database for the relevant time and produce it to
6 us, and they have refused to do that.
7    MR. SKLAR: Again, we're getting into a similar issue
8 that, if I'm not mistaken -- I apologize, I don't know that the
9 request was limited to the Mel Harris defendants; I think it
10 was all process servers, for everybody under the sun, which I
11 think is really wholly improper and overbroad. And, again, all
12 it is --
13   THE COURT: Is that a relevancy objection?
14   MR. SKLAR: Relevance and burdensomeness.
15   THE COURT: If it's just a database, how is that
16 burdensome?
17   MR. SKLAR: Because then I would go with the
18 relevance, your Honor, is that --
19   THE COURT: Is there anything other than relevance?
20   MR. SKLAR: No, your Honor. I believe it is just a
21 database, and it just lists of names and dates.
22   THE COURT: Yes?
23   MS. WILNER: The database would contain names, dates,
24 also the type of service that's alleged and --
25   THE COURT: Why do you need it for others if Mel

16RKSYKC   Conference   Page 18

1 Harris is not involved?
2   MS. WILNER: Actually, the request was for electronic
3 documents concerning service of process for the Mel Harris
4 defendants.
5   THE COURT: OK, for this, you're limiting it to Mel
6 Harris?
7   MS. WILNER: It is limited to Mel Harris already.
8   THE COURT: The objection is overruled. SamSERV shall
9 provide the database in question for all service done on behalf
10 of Mel Harris purported to be done on behalf of Mel Harris.
11   MR. SKLAR: And the time period?
12   THE COURT: For the period of the class. Anything
13 else? Next.
14   MS. WILNER: Yes, your Honor, the Mel Harris
15 defendants have produced a series of documents that have
16 crucial information redacted. So this comes up in, for
17 example, the purchase and sale agreements for the portfolios of
18 the accounts where they have omitted information such as the
19 purchase price for the portfolios, the amount that it would
20 cost them to obtain documentation of the debts if they're even
21 able to obtain documentation of the debts, and information like
22 that.
23    Now, this information is relevant to our claims
24 because we have alleged that they have this scheme to produce
25 these debts cheaply, to not spend very much money. The

16RKSYKC   Conference   Page 19

1 financial aspects are crucial --
2   THE COURT: The purchase and sale agreements are to
3 buy groups of debt?
4   MS. WILNER: Right, and the individual plaintiffs'
5 debt is one debt among many purchases that are happening all at
6 the same time.
7   THE COURT: They're not actually getting the
8 underlying documents; they're just buying --
9   MS. WILNER: A spreadsheet, correct.
10   THE COURT: -- a spreadsheet and the right to pursue
11 those?
12   MS. WILNER: Right.
13   THE COURT: And then these things say that if you want
14 individual documentation, it would cost you X dollars?
15   MS. WILNER: They may say that. Sometimes they say
16 that no further documentation is available, but in particular,
17 what we're talking about is where they say exactly that, that
18 if you want more documentation, you can get this type of
19 documentation --
20   THE COURT: OK, what's the objection?
21   MR. SCHER: Your Honor, the primary objection we have
22 is that with respect to the purchase and sale agreements,
23 they're contracts with third parties and they have
24 confidentiality clauses in which -- that's why they were
25 redacted, because we were told that we can't -- by these third

16RKSYKC   Conference   Page 20

1 parties -- you're not to give up this information. We tried to
2 accommodate the plaintiffs by giving them at least the
3 agreements in the redacted form, but without the court order --
4   THE COURT: All right, the objection is overruled.
5 The Mel Harris defendants are hereby ordered to produce the
6 redacted information from the purchase and sale agreements.
7   Next?
8   MS. WILNER: Your Honor, we have requested from all of
9 the defendants that they produce privilege logs if indeed they
10 are withholding documents on the basis of privilege, and they
11 have not done so.
12   THE COURT: Privilege logs, they should be produced if
13 they're required to be produced.
14   MR. SCHER: With respect to Mel Harris, other than the
15 issue that we've discussed earlier today, I don't think we've
16 claimed privilege as to any documents. I can put that on
17 paper. I'm not sure we asserted it anywhere else.
18   THE COURT: All right.
19   MR. GOLDFARB: On behalf of the Leucadia defendants, I
20 have to go back and check, your Honor. I don't think we
21 claimed privilege but we may have. And we'll certainly provide
22 the logs very promptly.
23   MR. SKLAR: And, again, on behalf of the SamSERV, I
24 don't believe any documents are withheld.
25   THE COURT: If any documents have been withheld by

## Page 21

either side on the basis of privilege, including attorney work product, a privilege log shall be provided forthwith. It should be done.

Depending on what happens with the database, talk about it; maybe there's a way to summarize the redactions, if necessary, but you can include that in your discussions.

OK, what's next?

MS. WILNER: Your Honor, there is just one more thing that we wanted to clarify.

THE COURT: Yes.

MS. WILNER: That is that many of the objections that defendants have been making to our discovery requests are objections to providing information that relates to people other than the four named plaintiffs. I know that we've talked about that some today, but we just wanted a ruling or clarification that information that pertains to class members other than the named plaintiffs is relevant and discoverable.

THE COURT: Yes?

MR. GOLDFARB: Yes, your Honor. We object to that. Our view of the law under Rule 23, is that there is no class at this moment in time, and the plaintiffs are not entitled to get detailed information, contact information, regardless of what they're going to use it for, about putative class members. And there's case law in support of that.

THE COURT: Well, I think we've addressed that to some

## Page 22

extent. The plaintiffs would agree not to make any efforts to contact any putative class members without permission from the Court. So I think all that would be left would be either a burdensomeness or a relevancy argument. And I would say I did not bifurcate discovery, so discovery hasn't been bifurcated; on the other hand, I am sensitive to the issue of producing in hard copy, for example, 120,000 files where the case has not yet been certified. And it may be that some of these things we'll have to save until I decide the motion, but I have not blanketly ruled anything off limits because discovery has not been bifurcated. But hopefully, the parties will work with each other and try to use some common sense in dealing with these things.

Have the parties -- I haven't read Wal-Mart, but I assume that's the subject of some discussion?

MR. GOLDFARB: Your Honor, we would request leave to file a very brief, five-page, letter setting forth the implications of the Wal-Mart ruling on the pending class cert.

THE COURT: You filed your briefs when?

MR. GOLDFARB: We filed our opposition briefs the 13th of June.

THE COURT: Would it make sense to let you withdraw those briefs and give you like a week or so to supplement, or do you want to incorporate it? Obviously, I want to hear what the parties think on Wal-Mart, of Wal-Mart, and whether we do

## Page 23

it in separate letters or what --

MR. GOLDFARB: We prefer just a separate letter, a five-page letter, that lays out our arguments as to why basically the standard for commonality has been changed by the Wal-Mart case.

THE COURT: And when are your papers due?

MR. BRINCKERHOFF: I believe it's July 22nd. So we can incorporate it in our reply obviously. And we don't have an objection to -- is it three?

MR. SCHER: Just one combined letter.

MR. BRINCKERHOFF: One combined five-page letter sounds fine. Obviously we have a different view as to the significance of the Wal-Mart decision.

THE COURT: I want to hear both views.

MR. BRINCKERHOFF: And you will hear them both.

THE COURT: The defendants can submit a joint letter addressing the impact, if any, of Wal-Mart on the pending motions. When can you do that?

MR. GOLDFARB: One week, your Honor.

THE COURT: OK. I'll do better than a week: Eight days. A week is the 4th of July, so July 5th. And are you all right with your current date or do you need a few more days now?

MR. BRINCKERHOFF: One more week, Judge.

THE COURT: Is there an objection if I give them

## Page 24

another week since they have to wait for your letter?

MR. SCHER: No, your Honor.

MR. GOLDFARB: No, your Honor.

THE COURT: OK, the plaintiffs can have an additional week for their reply, and it will be teed up. Maybe it will be one of the first decisions applying Wal-Mart or not applying Wal-Mart, we'll see.

OK, any other issues today?

MS. WILNER: Yes, your Honor. I think it would be helpful for the parties to have some deadlines in terms of the actual production of the discovery that you ordered produced, particularly the SamSERV database.

THE COURT: When can you produce the SamSERV database?

MR. SKLAR: I'm not sure what the technological side of that -- what is involved, so I would say three weeks.

THE COURT: All right, three weeks is reasonable. Three weeks. And I think the other things are still under discussion. So meet soon and work out the deadlines as well.

What's the outside discovery cutoff in the case? I don't remember.

MR. GOLDFARB: September, second week in September, I believe.

THE COURT: Do you want a little more time?

MR. BRINCKERHOFF: I think we're going to need more time. Our plan, just so the Court understands, was to try to

Case 1:09-cv-08486-DCR Document 100-19 Filed 08/01/17 Page 49 of 9

MONIQUE SYKES, et al., v.
MEL S. HARRIS AND ASSOCIATES

June 27, 2011

16RKSYKC    Conference    Page 25

1  be, as I said, efficient. And if we get these two databases,
2  the Mel Harris database and the SamSERV one, we're hopeful we
3  will need very little past that and we can conduct our
4  depositions and be done, but we can't really know that until we
5  get all the electronic information. So another month or so, I
6  think, is inevitably going to be needed even if things go
7  smoothly.
8          THE COURT: What do the defendants think?
9          MR. GOLDFARB: Your Honor, a lot will be affected by
10  the outcome of the class certification ruling.
11         THE COURT: Well, if I don't get it fully briefed
12  until the end of July, I'll do the best I can, but I don't know
13  that I can get it done by September.
14         MR. GOLDFARB: We're OK adding what plaintiffs are
15  seeking an additional month.
16         THE COURT: Does anyone have the date?
17         I'll issue is a scheduling order, but the idea is,
18  we'll extend discovery by about a month and unless the parties
19  need to see me, what I'll do is, we'll extend the date, which
20  should have been the same day as the discovery cutoff. We'll
21  extend the date of the next pretrial conference. And in part
22  it may depend on what's happening with the motion.
23         But I don't have much of a district court docket left.
24  The Second Circuit doesn't sit during the summer, so if you get
25  it in, I might be able to get to it although I start sitting

16RKSYKC    Conference    Page 26

1  again in late August. So try not to delay the class
2  certification papers, as that will hold things up.
3          OK, anything else today?
4          MR. GOLDFARB: No, your Honor.
5          MR. BRINCKERHOFF: No, Judge.
6          MS. WILNER: No, your Honor.
7          THE COURT: Is there any desire to talk settlement off
8  the record or no?
9          MR. SCHER: Your Honor, before we get into that, I
10  just wanted to confirm with counsel --
11         THE COURT: On the record?
12         MR. SCHER: Yes, still on the record.
13         This is with respect to subpoenas we had served. I
14  think we had an issue outstanding. I think we reached an
15  agreement with respect to the scope of -- they'll provide us
16  with carrier names and numbers, and we'll agree to limit the
17  subpoenas' scope and time frame. So I don't know if counsel
18  wants to put that on the record or --
19         MR. BRINCKERHOFF: Judge, I don't think it's
20  necessary. We're happy to do it if it helps the defendants in
21  some way. We did reach an agreement on that as well as -- the
22  Court may or may not remember -- there were five plaintiffs who
23  accepted Rule 68 offers of judgment and there was attorneys'
24  fees that were associated with that. You had extended, at our
25  joint request, the deadline to make a fee application, and

16RKSYKC    Conference    Page 27

1  we've just now reached an agreement, given all of the privilege
2  issues that are going to arise in producing time records in the
3  middle of the case, to hold any application for fees in
4  abeyance. And we're going to work out the language as to what
5  will trigger that, but we'll be submitting a letter to the
6  Court.
7          THE COURT: All right.
8          MR. SCHER: I don't know if the Court's ready, but we
9  can stipulate right now; I think we've all agreed that we don't
10  object.
11         MR. BRINCKERHOFF: I think our preference would be to
12  put in writing in a letter to the Court, or a writing amongst
13  ourselves so it's clear exactly what is.
14         THE COURT: That's fine. Work it out. It's better if
15  it's in writing, and it can either a stipulation which I can so
16  order, or it can be a letter which I can so order, whatever is
17  easier for all of you.
18         THE WITNESS: Thank you, Judge.
19         THE COURT: Anything else? Is there any desire to see
20  me off the record or no?
21         MR. SCHER: Defendants would have no objection.
22         MR. BRINCKERHOFF: We're happy to meet with the Court
23  at any time but --
24         THE COURT: Let's go off the record.
                    * * *