```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK
 2

 3     -------------------------------------X
                                           :
 4     JOSE GUZMAN, et al.,                :
                                           :   16-CV-03499 (GBD)
 5                    Plaintiffs,          :
                                           :
 6              v.                         :
                                           :   500 Pearl Street
 7     MEL S. HARRIS AND ASSOCIATES, LLC,  :   New York, New York
       et al.,                            :
 8                                         :
                      Defendants.          :   March 16, 2017
 9     -------------------------------------X

10
             TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
11              BEFORE THE HONORABLE RONALD L. ELLIS
                   UNITED STATES MAGISTRATE JUDGE
12
       APPEARANCES:
13
       For the Plaintiff:        AHMAD KESHAVARZ, ESQ.
14                               Law Offices of Ahmad Keshavarz
                                 16 Court Street, 26th Floor
15                               Brooklyn, New York 11241

16

17     For the Defendants:       JEFFREY S. LICHTMAN, ESQ.
                                 O'Hare Parnigian LLP
18                               82 Wall Street
                                 New York, New York 10005
19
                                 SCOTT BALBER, ESQ.
20                               Herbert Smith Freehills
                                 450 Lexington Avenue
21                               New York, New York 10017

22
       Court Transcriber:        SHARI RIEMER, CET-805
23                               TypeWrite Word Processing Service
                                 211 N. Milton Road
24                               Saratoga Springs, New York 12866

25


       Proceedings recorded by electronic sound recording,
       transcript produced by transcription service
```

2

1          THE CLERK: This is a matter for a status conference,

2    16-CV-3499, <u>Jose Guzman v. Samserv Inc. and parties</u>.

3          Attorneys, please state your name for the record.

4          MR. KESHAVARZ:  Ahmad Keshavarz, the Law Office of

5    Ahmad Keshavarz for plaintiff, Your Honor.  Good morning.

6          THE COURT:  Good morning.

7          MR. LICHTMAN:  Jeffrey Lichtman with O'Hare

8    Parnigian LLP representing defendants Samserv and Mlotok.

9          THE COURT:  Good morning.

10          MR. LICHTMAN:  Good morning, Your Honor.

11          MR. BALBER:  Good morning, Your Honor.  Scott Balber

12    from Herbert Smith Freehills on behalf of LR Credit 13 and

13    with me is my colleague Ben Mills.

14          THE COURT:  Good afternoon -- I mean good morning.

15          Okay.  There are a couple of issues that remain for

16    resolution.  I know the parties sent me a joint letter asking

17    for certain things to happen.  The things that I have listed

18    here include a motion by LRC to compel plaintiff to respond to

19    certain discovery requests.  This has to do with tax returns,

20    bank statements and income in the period 2014 to 2016.  I

21    gather the underpinnings of this is that the plaintiff had put

22    in issue the emotional distress caused by his financial

23    situation.

24          Have the parties had any discussions about that

25    since?  I know that the plaintiff objected to it but on the

3

1    other hand indicated that even if the court were to grant it

2    should be more limited than the request.  What do you have to

3    say?

4              MR. LICHTMAN:  By way of update, Your Honor, no,

5    there have been no further discussions.  We had some extensive

6    discussions I believe back in December which preceded our

7    letter request.  There had been no subsequent discussions.

8    I'm happy to articulate in a little more detail the grounds

9    for our request and why we think we're entitled to this but I

10   realize that wasn't the question Your Honor asked.  So I'm not

11   going to offer it --

12             THE COURT:  Well, why don't you address the question

13   of exactly what it is that the plaintiff has said that

14   triggered the desire to get the information that you want.

15             MR. LICHTMAN:  In terms of on the substance or the

16   response to our discovery request?  I'm just --

17             THE COURT:  Well, you can start with the substance

18   of it.

19             MR. LICHTMAN:  Sure, Your Honor.  In the complaint

20   the plaintiff says pretty plainly that as a result of this

21   alleged debt collection act that he feared he would not be

22   able to pay his rent, that he was concerned about being able

23   to provide for his family, and that he paints a rosy picture

24   of his financial situation prior to receiving this $8,000

25   judgment.

4

1          Now, his sole alleged damages are garden variety

2   emotional distress.  He never actually paid any money towards

3   this debt.  It's purely the emotional distress impact of

4   having this debt judgment served upon him.

5          So here's what we need to know, Your Honor.  First

6   of all, what were the other financial stressors in this man's

7   life because if it is true that this $8,000 debt is one of

8   many, many debts totaling substantial amounts of money he will

9   be hard pressed to go in front of a jury and say well, forget

10  about that other $100,000 in debt I may have accumulated to

11  all these other creditors.  It was this $8,000 debt and only

12  this $8,000 debt that precipitated my emotional distress.

13  That's one kind of bucket of issues, Your Honor.  What are the

14  other debts that he had incurred, what were the other --

15          THE COURT:  Let me just stop you for a moment on

16  that notion because as it turns out we're a nation of debt.

17  So there are lots of people who have actually significant debt

18  and they're coping with it.  But some people will tell you

19  that look, the debt that I know I've managed for it, I planned

20  for it, I get something I have no idea about, that just throws

21  my whole plan off.  I mean I know that I got out of law school

22  and I owed $100,000, okay.  It's a given.  You make your deal

23  with the devil and you live with it and then this bank told me

24  I owed $7,000 I knew nothing about.  I mean --

25          MR. LICHTMAN:  Your Honor, that would be a perfectly

5

1  legitimate response to being asked questions at a deposition

2  or at trial about the other debts but all we're doing here,

3  Your Honor, is for the purposes of discovery to ascertain

4  documents that are reasonably calculated to lead to discovery

5  of admissible evidence.  I'm entitled to ask that question.

6        THE COURT:  How much of this do you need to know and

7  what --  I mean you asked for a whole bunch of things.

8        MR. LICHTMAN:  Let me articulate the second half of

9  it if I can and then I'll come back and try to narrow what

10  we're actually looking for, Your Honor.

11        The second half of it, Your Honor, is the

12  relationship between the amount of the debt and the amount of

13  his income and net worth and assets.  So it's kind of the flip

14  side of what we just talked about.  If it is the case, and I'm

15  not suggesting it is but I think I'm entitled to know, that

16  Mr. Guzman was making $1 million a year and had $5 million

17  sitting in a checking account or a brokerage account I think

18  that would undercut the notion that an $8,000 debt would cause

19  him emotional distress, would cause him to worry about not

20  being able to feed his family, et cetera.  It's the other side

21  of the coin.

22        But let me answer your prior question now, Your

23  Honor.  How can we narrow it.  All I want to know, Judge, it's

24  actually very simple.  What was his income during the relevant

25  time frame, that couple of year period, and what were his

6

1   debts.  I guess I'm not sure where the burden comes on this

2   issue if it is the case that he had very few debts.  I mean I

3   literally need a copy of the credit card statements in the

4   time frame or the loan agreement in the time frame.  I can't

5   imagine why it would be voluminous.  So I'm somewhat had

6   pressed to --

7            THE COURT:  Okay.  Let's take the credit card

8   statements for example.  There's really two kinds of credit

9   card holders, those that pay off everything and those that

10  don't.  Those that don't all you really need is the most

11  recent one because if he's not paying it off it will show you

12  what the accumulated debt is so you don't need to go back to a

13  whole bunch, and if he's paying it off it's -- what the debt

14  shows is actually not indicative of what the problem is.  So

15  what is it that you want from him?

16           MR. LICHTMAN:  I understand your point, Your Honor.

17  Today may not be relevant because we're well into the

18  litigation but what I would suggest is perhaps the statement,

19  credit card -- all credit card statements for December, end of

20  December of each of the relevant years.  So basically one year

21  end statement per year for whatever credit card debts.

22           THE COURT:  What do you consider relevant years?

23           MR. LICHTMAN:  I think we had asked for 2014 and

24  2015.

25           THE COURT:  When did the -- when did the debt at

7

1   issue come into play?

2          MR. LICHTMAN:  Well, the collection lawsuit was

3   filed in 2007 and I believe the judgment was entered 2014.  Am

4   I right about that?  I'm just going to get the precise date,

5   Your Honor.

6                    [Pause in proceedings.]

7          MR. LICHTMAN:  2007 was the filing of the complaint.

8   I don't have the exact date in front of me.  I apologize, Your

9   Honor.

10          THE COURT:  So 2014 and 2015 so you could see --

11   rather than have him go on -- what's wrong with that?  Let me

12   ask plaintiff's counsel.

13          MR. KESHAVARZ:  There are a few things.  First of

14   all, he didn't ask for a narrow scope.  He asked for a bazooka

15   of information for four years, tax returns for '14 --

16          THE COURT:  I realize that's -- what you just asked

17   for is not what I just asked you.  I asked you what's wrong

18   with that.

19          MR. KESHAVARZ:  So the issue is when he found out

20   about the judgment, that's the issue about his emotional

21   distress damages.  If there's a judgment he didn't know about

22   that obviously is going to contribute to his emotional

23   distress.  The date that he found about the default judgment

24   according to Page 11 of the complaint is on or about June 29,

25   2015.  So that's why I'm saying in the letter if there's

8

1    anything relevant it would be his financial status on June 29,

2    2015.  So to find out your financial status you don't -- I

3    don't know if you need bank statements from '14 -- I don't

4    know if you need any bank statements.  Excuse me.  Tax returns

5    for that period of time particularly three yeas back.

6            Bank statements he might have an issue about the

7    total amount of money in the bank.  He doesn't have a right to

8    checks and what the checks are written for but if there's an

9    issue about cash on hand that's more narrow.  That's not what

10   they ask for.  And if there's an issue about the amount of

11   other debt he has in credit cards that doesn't require going

12   back before June 29, 2015.

13           In terms of other debts, this is a major concern.

14   Debt collectors, typically at trial or in deposition, they

15   beat up consumers in the case law -- in the case law it's

16   called the debt beat argument.  You owe all this money, you

17   shouldn't be protected by the FDCPA.  That's the argument debt

18   collectors make constantly at trial and in depositions to beat

19   up the debt -- the consumer and the footnote in one of my

20   cases -- in my letter I cite the cases that say that's

21   inappropriate for --

22           THE COURT:  I'm sorry but I'm not sure how much

23   beating up or what the case law says.  Remember, we're talking

24   discovery here, not what Judge Daniels allows in the trial.  I

25   mean this might be a motion in limine issue.  I don't know --

9

1   I mean I don't know what they'll find.  I don't know whether

2   it's going to be probative or relevant to a trial issue but

3   the argument is is that at least in the worst case scenario

4   you might be so poor that it's a drop in the bucket or you

5   might be so well off that it doesn't make any difference.  I

6   mean why not -- I don't know the judge would say well, you

7   know, you can -- the judge might in fact say they're entitled

8   to know this much information and no more and he might even

9   tell you let's just stipulate to that, no beating up.  But

10  this is discovery.

11          MR. KESHAVARZ:  Well, then the time period has to be

12  limited.

13          THE COURT:  We'll talk about limitations but that's

14  why I asked you what's -- as I see it defense counsel has said

15  look, we need to know what the situation is and I like most

16  people know that debt is not more [inaudible] in that sense.

17  If you have a large debt in June of 2015 that's probably not

18  going to change between June and July of 2015.  You got me on

19  that.  Anything wrong with that?

20          MR. KESHAVARZ:  I'm not sure I exactly followed,

21  Your Honor.

22          THE COURT:  Well, you said the scope and look, let's

23  take credit card debt for example.  If I owe American Express,

24  let's say I'm one of the people who doesn't pay off

25  everything.  If I owe them $50,000 in my June statement and

10

1   you get my July statement you pretty much have my picture,

2   won't you?  Does anybody -- anybody want to disabuse me of

3   that notion?  Not that you will necessarily be successful but

4   I want you to put it on the record.

5           MR. LICHTMAN:  Yes.  If I may, Your Honor.  I don't

6   disagree with that principally at all.  I think we might need

7   a few more data points than just those two but I would agree I

8   don't need every month of every statement for the entire

9   period.  What we asked for was basically the 18 months before

10  and the 18 months after the plaintiff learned of this

11  judgment.  So I don't think we were overreaching in the first

12  instance.  That said, I'm happy to narrow it.  Your Honor's

13  point is well taken.

14          We might suggest something like year end 2014, June

15  30, 2015 which is when he learned of the debt, year end 2015,

16  something like that so we have three data points.  Again, the

17  goal here is not burden.  The goal here is to really just find

18  out what the picture looked like in the relevant time frame.

19  I'll be quiet now.  Thank you, Your Honor.

20          THE COURT:  Well, we don't seem to have a basic

21  disagreement.  There real question is what does one need to

22  get a picture of the defendant -- the plaintiff, during the

23  relevant time period.  As I understand from the plaintiff, he

24  found out in June of 2015.

25          MR. KESHAVARZ:  Yes.

11

 1          THE COURT:  Okay.

 2          MR. KESHAVARZ:  And I believe the cut off should be

 3   the date that he vacated the judgment.

 4          THE COURT:  Which is when?

 5          MR. KESHAVARZ:  It's in the complaint.  About three

 6   months later.  I can give you an exact date, Your Honor.

 7          MR. LICHTMAN:  Well, that I disagree with, Judge.

 8          THE COURT:  Why?

 9          MR. LICHTMAN:  Because the cutoff should be the date

10   on which the plaintiff is ceasing to claim emotional distress.

11   So if he's claiming a period of emotional distress that went

12   from June -- from the day he learned about it to this moment

13   well, then I'm entitled to ascertain all the stressors in his

14   life that are alternative sources of the emotional distress.

15   If we're going to agree that the emotional distress ended --

16          THE COURT:  Have they been deposed?

17          MR. LICHTMAN:  Not yet, Judge.

18          THE COURT:  Okay.  So when you say it was garden

19   variety you're basing that on the complaint.

20          MR. LICHTMAN:  And plaintiff has acknowledged that.

21   There's no -- there's not going to be any kind of psychiatric

22   records, purely garden variety emotional distress and if I'm

23   wrong I'm sure Mr. Keshavarz will correct me right now.

24          MR. KESHAVARZ:  That's correct, Your Honor.

25          THE COURT:  Okay.  So I'm a bit intrigued about

1   what -- walk me through the -- just on the debt issue what is

2   your theory of -- let us say 2016 or 2017, what's the theory

3   there as to why that would be relevant and how?

4          MR. LICHTMAN:  Your Honor, I'm reading from the

5   plaintiff's second amended Rule --

6          THE COURT:  Tell me why the limitation -- I take it

7   from the way you said it your time limit would be up to the

8   present.

9          MR. LICHTMAN:  Let me explain exactly why, Judge,

10  yes.  In the plaintiff's amended, second amended Rule 26(a)(1)

11  disclosures the plaintiffs identifies the computation of each

12  category of damages and he specifically says, and I'll find it

13  in one second.

14                  [Pause in proceedings.]

15         MR. LICHTMAN:  "Mr. Guzman's damages continued after

16  the dismissal and continued to this day.  From the day he

17  learned of the sewer service judgment until today he still

18  thinks about.  During the -- "

19         THE COURT:  I thought that's what it was something

20  like.  Okay.  Let's be practical on this from both sides.  I'm

21  trying to imagine the questioning here since the only thing

22  that he's going to have in evidence, that either side is going

23  to have in evidence is his financial situation at the time he

24  finds out about the debt.  He's not saying -- he's not going

25  to be able to claim that anything is causing him any stress

13

1   other than the continuation of -- so the jury doesn't have

2   anything to base that on, do they?

3          MR. LICHTMAN:  That's exactly -- you're exactly

4   right, Judge, and here's what my cross-examination would

5   ideally be.

6          THE COURT:  Yes.

7          MR. LICHTMAN:  You are claiming that you were

8   suffering emotional distress from the date you learned of this

9   to today, right, yes.  You can't sleep, you can't eat, you

10  can't play the violin, isn't that right.  That's all right,

11  yes.  But isn't it also true that you owe this guy $100,000

12  and you owe this guy $20,000 and you -- or that guy $40,000

13  and you got fired from your job because you were drunk and you

14  got arrested for -- whatever.  You got arrested for running a

15  red light and you had your car totaled by -- that's all

16  relevant and the jury then says -- maybe it wasn't just this

17  $80,000 debt that caused this gentleman to have trouble

18  sleeping.

19         THE COURT:  I understand all that but what's the

20  damage that they're going to assume at the point that the

21  plaintiff says well -- here's the [inaudible] cross-

22  examination goes and he says after you found out about the

23  debt there wasn't anything more about this situation that

24  caused any more harm to you, is there, because that was over.

25  At that point you knew there was no debt.  So if there's

14

1  anything that occurred after that that caused you stress it

2  wasn't this, was it.

3         MR. LICHTMAN:  Yes, it was.  I think about it every

4  day, Your Honor.  I think about it every day.

5         THE COURT:  And if he says that what is the jury --

6  you understand, all of this seems to be theoretical because if

7  you -- if that's the argument that you're having with him on

8  the stand the jury still has no basis for this because it's

9  all in his mind at this point.

10        MR. LICHTMAN:  Well, but Judge, that should

11 eviscerate the claim in its totality.

12        THE COURT:  How does it eviscerate something that

13 doesn't actually exist?  Because he's basing it on something.

14 It's just his statement.  He's not saying anything that they

15 can objectively look at.  If there's nothing they can

16 objectively look at --

17        MR. LICHTMAN:  But, yes, Your Honor, you're a -- but

18 that means I'm entitled to summary judgment on his claim

19 because all he's going to have, all he's going to be able to

20 say is I was very upset, I'm still very upset, please give me

21 money and I'm entitled to say I --

22        THE COURT:  No, he's going to have the period of

23 time in which he was uncertain.

24        MR. LICHTMAN:  Yes, he's going to say I was very

25 upset in that period and I'm still upset.  I'm still to this

15

1  day upset.  I can't sleep.  I can't eat.  That's what he said

2  in his disclosures, Your Honor.

3          THE COURT:  Okay.  So when you're asking this --

4  look, I understand the lawyers think that everything is some

5  kind of a smoking gun and he says okay, I didn't have any of

6  these other stresses in your life, then how is the argument

7  going to be.

8          MR. LICHTMAN:  He says that he didn't have any?

9          THE COURT:  Right.  Then what are you going to --

10          MR. LICHTMAN:  Then I won't ask the question but

11  we're talking about --

12          THE COURT:  Then what you've just said, how does

13  that -- what's the relevance to the argument that you just

14  made if there are no other stresses in his life?

15          MR. LICHTMAN:  Just like -- let me clarify for one

16  second.  Let's say Your Honor says Mr. Balber, you're right,

17  I'm going to order -- I'm going to compel the production of

18  documents and it turns out there's nothing.

19          THE COURT:  Right.

20          MR. LICHTMAN:  He had no debt, he had a happy go

21  lucky life.

22          THE COURT:  That's right.

23          MR. LICHTMAN:  I'm going to have a much shorter

24  cross-examination at trial.  I get that.  But all we're

25  talking about --

1        THE COURT:  But you just -- I thought you said that

2   you'd have a motion for summary judgment.

3        MR. LICHTMAN:  Well, that's my view.  I think if he

4   can't articulate any tangible basis to claim emotional

5   distress, yes, but I don't know what he's going to say.  I

6   haven't deposed him yet and he hasn't articulated it yet.

7        THE COURT:  Do you want to respond to this?  Well, I

8   think a lot of arguments that I get for discovery are really

9   much ado about nothing but I like to hear people make their

10  arguments.

11       MR. KESHAVARZ:  Well, as to summary judgment I don't

12  know if that's here or there.  You can't have summary judgment

13  based on if you believe he has damages or not.  He testifies

14  as to his emotional distress damages and a jury gets to

15  decide.  I don't know how that goes to summary judgment.  I

16  don't know if that's particularly relevant as to the issue

17  here.

18       If they are entitled to documents this is my

19  suggestion.  They are entitled to what his financial condition

20  was like when he found out about the judgment.  They don't

21  get -- they get the total balance on the bank account.  They

22  get the total balance per month, the total balance due on a

23  debt -- on the credit cards.  They don't get to get all the

24  checks and say well, you --

25       THE COURT:  I think counsel is saying something

17

```
 1    different.  Let's -- it goes without saying that we're talking
 2    about what's a reasonable limit on the financial information
 3    but he's saying when you limit it -- well, let me just be
 4    clear.
 5            The defendant -- you're talking about the limits on
 6    the financial information or limits on all information about
 7    his emotional state?
 8            MR. LICHTMAN:  I'm sorry.  You're asking me, Your
 9    Honor?
10            THE COURT:  Yes.
11            MR. LICHTMAN:  I'm not looking -- I mean limitations
12    in terms of what discovery I'm seeking?
13            THE COURT:  Well, we were talking about financial.
14            MR. LICHTMAN:  Correct.
15            THE COURT:  And we just had a discussion in which
16    you were talking about well, you know, what if his house
17    burned down, certain other things.  Is that a discovery
18    dispute you're having?
19            MR. LICHTMAN:  We do not have that discovery
20    dispute, Judge, no.  The only documents I'm looking for relate
21    to the financial issues.
22            THE COURT:  So how does what you said relate to the
23    limitation on the financial issues?
24            MR. LICHTMAN:  It's relevant because it's -- what
25    I'm articulating to Your Honor is what the alternative
```

18

1  stressors could be.  At his deposition I certainly plan to ask

2  him all those questions but I don't need anything from Your

3  Honor today in that regard.  The thing I need in this regard

4  today is the documents that evidence his financial condition

5  because I can't ask that question openly.  I can certainly ask

6  him did you have --

7          THE COURT:  So the presentation you made about your

8  cross-examination wasn't really about the financial stuff?

9          MR. LICHTMAN:  It was -- in large part it was about

10  the financial stuff, Judge.

11          THE COURT:  So tell me --

12          MR. LICHTMAN:  It's all the other -- let's limit it

13  to financial.  The financial stuff --

14          THE COURT:  Just to be clear, at the time we were

15  talking about the temporal limit of the financial information

16  and that's when you went into why it shouldn't be limited to

17  what the plaintiff said and you told me about your cross-

18  examination --

19          MR. LICHTMAN:  Yes.

20          THE COURT:  So why should you get financial

21  information -- are you saying up to the present point?

22          MR. LICHTMAN:  That is where we started this, Your

23  Honor.  I apologize for the securities detour but we started

24  from what the plaintiff said in his Rule 26(a)(1) disclosure,

25  and that was that his emotional distress continues to this

19

1  day.

2          THE COURT:  Yes.

3          MR. LICHTMAN:  And he's attributing that emotional

4  distress to this day to this debt collection action.  So as a

5  result I'm entitled to explore the other financial stressors

6  in his life that exist up to this day.  So I can say well,

7  this debt was vacated in 2015, you're still very upset.  I'm

8  sorry to hear that but isn't it also true that you've incurred

9  another $25,000 in credit card debt and isn't that what's

10 really bothering you, not the $8,000 debt that was vacated two

11 years ago.  To me that seems perfectly permissible.

12         THE COURT:  Now that we have that clarification,

13 what do you have to say to that?

14         MR. KESHAVARZ:  If it goes beyond the date of the

15 vacating of the judgment which is October 2015 then the

16 request would be the dat -- the financial information close as

17 of the date of the settlement with the other defendant because

18 that settlement is confidential.  So I wouldn't want

19 disclosures to go into the amount of the confidential

20 settlement agreement.

21         So the request is from the date he found about the

22 suit to the vacating of the judgment.  If it goes beyond that

23 I understand the argument as to the emotional distress because

24 he's afraid they're going to garnish him again.

25         THE COURT:  When was that?

20

1          MR. KESHAVARZ:  When was what?

2          THE COURT:  Vacation of the judgment.

3          MR. KESHAVARZ:  October 5, 2015.

4          THE COURT:  I think he's making a different

5   argument.  Am I to understand -- well, I'm not quite sure.

6   Your client is saying that he -- the damage he's claiming from

7   the defendant goes from what time to what time?  From --

8          MR. KESHAVARZ:  It's continuing.  He is afraid

9   they're going to do this again because they lied in court

10  pleadings and affidavits.  I believe his testimony is going to

11  be yes, I won in court but they lied to get to this point, I'm

12  afraid they're going to do it again.  That's what he's going

13  to testify to I believe.

14         THE COURT:  What's wrong with the argument of

15  defense counsel that well, although theoretical I admit but

16  again this is discovery.  He says if you're claiming that

17  there is -- there is continuing stress.  If you put that in

18  issue then they have a right to show that there are other

19  things that are stressing your life at that point including

20  financial.  If you want to have it both ways, that is you want

21  to say that -- if you want to have it one way saying that the

22  damage continues then it opens it up to the defendants to look

23  not only at other things that are happening in your life

24  because if the jury buys what you're saying that there is

25  continuing harm I don't know they're going to ascribe that to

1   the period from the time of the -- the accrual to the

2   vacation.  Are they going to ascribe that from the time of the

3   accrual to the time of the trial?  So their argument simply is

4   well, if you want to have it one way you can't limit the

5   discovery the other way.

6         MR. KESHAVARZ:  There's some validity to that

7   argument.  I'd have to stipulate to -- I'd have to --

8         THE COURT:  So you're not willing to say that your

9   pain and suffering or whatever it is was -- is limited to the

10  period of time when they vacated the judgment.

11        MR. KESHAVARZ:  There is some strength to their

12  argument because his emotional distress continues.  Then the

13  issue would be when the date of cutoff would be.  If it's not

14  the date of the vacating I'd want it to be the date of

15  settlement with the other defendant because I don't want to

16  get to the issue of getting into confidential settlement.

17        THE COURT:  Why would they have to get into

18  confidential settlement information?

19        MR. KESHAVARZ:  Well, because his bank statement

20  will go up on the date of the statement -- of the settlement.

21        MR. LICHTMAN:  But that's --

22        MR. KESHAVARZ:  So that would be --

23        MR. LICHTMAN:  That's irrelevant, Judge.

24        THE COURT:  Well, this is a -- why would that -- are

25  you saying that would violate the --

22

1      MR. KESHAVARZ:  The confidentiality.

2      THE COURT:  What does the confidentiality allow you

3  to do?

4      MR. KESHAVARZ:  Can't disclose the amount of the

5  settlement.  So one concern would be --

6      THE COURT:  Who is the settlement with?

7      MR. KESHAVARZ:  Mel Harris.

8      MR. LICHTMAN:  Another defendant in this case who's

9  now not a defendant and we have a protective order.

10      MR. KESHAVARZ:  So I guess the request would be if

11  they continue after the date of the vacating that it be up to

12  -- at least in terms of bank statements -- up to the date of

13  the settlement with Mel Harris which is a few months ago

14  because I don't want them to make an end run around a

15  confidentiality agreement where they can't get to the amount

16  of the settlement by saying they have the bank statement.

17      THE COURT:  Why do you need something beyond -- it

18  was a couple of months ago, right?

19      MR. LICHTMAN:  He's claiming, the plaintiff is

20  claiming emotional distress to this day to today and he's

21  going to continue to claim it through trial.  Now, I have my

22  views about it.  The jury --

23      THE COURT:  Well, wait a minute.  So let's say you

24  get the bank statement and it shows that it went up $50,000,

25  are you going to be able to ask him that in cross?

23

1        MR. LICHTMAN:  I can ask him -- I could certainly

2   ask him at his deposition.  Mr. Guzman, you're claiming that

3   you still wake up at night because you're worried about this

4   $7,000 -- this $8,000 debt.  Yes, I can't sleep any more.  You

5   have $50,000 sitting in cash in your checking account.  Does

6   that help you sleep a little bit.

7        THE COURT:  How does that help you.  If you can't

8   use it at trial, what's the benefit of asking him?

9        MR. LICHTMAN:  Judge, I don't know what I can use at

10  trial.

11       THE COURT:  Well, if you can't convince me you can

12  use it at trial I don't see why it's relevant in discovery.

13       MR. LICHTMAN:  Well,  let me tell you why I think

14  it's relevant in discovery and why I can use it at trial.

15       THE COURT:  We know that he got a settlement and he

16  got money.  So you can ask you didn't you get a settlement and

17  didn't you get a bunch of money.  But the amount the

18  settlement, tell me why that's relevant and why you'd be able

19  to use it at trial.

20       MR. LICHTMAN:  Let me tell you first -- let me

21  answer your question first and then I want to ask a rhetorical

22  question why is there some magic to this settlement agreement

23  that is confidentiality when we have a protective order in the

24  case.  I don't understand even that premise but let me answer

25  your question first, Your Honor.

24

1          He is claiming, and I said it several times so I
2   don't want to repeat myself, but he's claiming emotional
3   distress to today.  The emotional distress is --
4          THE COURT:  I get that.  Again --
5          MR. LICHTMAN:  Based upon --
6          THE COURT:  Why does the specific -- are you going
7   to be able to ask -- if you're not going to be able to ask the
8   specific amount at trial --
9          MR. LICHTMAN:  I can.  Let me do it -- if I may,
10  Your Honor, yes.  I'm going to do it exactly how we do it at
11  trial which is he claims he had emotional distress when he had
12  this $8,000 debt.  His financial condition changes
13  dramatically whether it's by settlement, whether it's by
14  winning a lottery, whether it's by inheriting money from his
15  great aunt.  Okay.  Now his mental condition is affected by
16  that.
17         THE COURT:  I agree so far.
18         MR. LICHTMAN:  I can ask him at trial.  So isn't it
19  true that you were very upset when you had $8,000 debt with no
20  money and it's your testimony you're every bit as upset when
21  you have $1 million in the bank still thinking about the
22  $8,000 debt.  Isn't the jury allowed to have its own view of
23  whether that's credible?
24         THE COURT:  Are you going to be able to tell him
25  it's $1 million?

25

1        MR. LICHTMAN:  I have no idea what it is, Judge.

2   Yes, of -- I'm not going to -- I may not -- what I'm not going

3   to be able to say, Judge, is and you got that money as a

4   result of a settlement with another defendant, didn't you.

5   That I can't do.  But I can say on X date you had $3.00 in

6   your bank account and on Y date you had $1 million in your

7   bank account, right.  Now you have the $1 million, doesn't

8   matter where it's from, doesn't that change your emotional

9   state.  You're telling this jury that you're every bit as

10  upset today with the $1 million in your bank account with the

11  fear of a $8,000 judgment as you were in July 2015 when you --

12        THE COURT:  I guess now what you're telling me is

13  that I need to look at the confidentiality order to see if

14  this -- because look, from my point of view you can't do an

15  end round because you're clever, and that's what that would

16  be.  Look --

17        MR. LICHTMAN:  Thank you for calling me clever,

18  Judge, on the record.

19        THE COURT:  You can't -- you can't -- if you can't

20  disclose it you can't disclose it by saying we can't tell you

21  what the -- we can't tell you how much you got in the

22  settlement but his bank account rose by $150,000.  That

23  just --

24        MR. LICHTMAN:  I now understand Your Honor's

25  concern.  Let me put this on the record.  Okay.  I have no

26

1  intention of ever saying in front of a jury or using for any

2  improper purpose the source of the settlement monies that Mr.

3  Guzman apparently received from the other defendants.  An

4  officer of the court, I'm standing in front of you, it's on

5  the record.  Not my intention at all.  I'm not being clever

6  that way.

7          I am being clever, however, in that there's another

8  source of revenue that this plaintiff received at a time when

9  he's still claiming emotional distress for $8,000 debt.  I

10  don't see why it's different from inheritance or winning the

11  lottery.  It's the same thing.

12          THE COURT:  Well, it's the same thing momentarily

13  but if there's a -- who signed this protective order by the

14  way?

15          MR. LICHTMAN:  We all did.  We all signed it.

16          THE COURT:  I mean was there a judicial signing?

17          MR. LICHTMAN:  Yes, it was so ordered by the court.

18          THE COURT:  Who?

19          MR. LICHTMAN:  I thought it was Your Honor but I

20  could be mistaken.  It was Judge Daniels.  I'm sorry.

21  Standard form SDNY protective order.

22          THE COURT:  Standard form when it gets signed by the

23  court that makes it a little different.  There's a reason why

24  people ask to sign things.

25          MR. LICHTMAN:  Absolutely, Judge.

27

1          THE COURT:  Do you know where the confidentiality,

2    where it talks about --

3          MR. KESHAVARZ:  Your Honor, the confidentiality is

4    not in the protective order.  The confidentiality is in the

5    settlement agreement between the parties.

6          THE COURT:  Was that so ordered by Judge Daniels

7    too?

8          MR. KESHAVARZ:  No.

9          THE COURT:  It's a private settlement?

10         MR. KESHAVARZ:  Yes.

11         THE COURT:  But it's got to have an out for courts.

12         MR. KESHAVARZ:  If they make a motion and it's

13   ordered to be produced obviously it has to be produced but

14   they can file such a motion and I have a lot of case law as to

15   why they can't get it but that's not what we're here for

16   today.

17         MR. LICHTMAN:  We are here for it today.  This is

18   absolutely on the list.

19         THE COURT:  Okay, Counsel.  Counsel --

20         MR. KESHAVARZ:  I mean nothing in the papers today

21   has anything to do with compelling a confidential settlement

22   agreement and I can't make a response to that.  There's a lot

23   of case law that it's not relevant until after a judgment and

24   for the possible issue of an offset but if they want to file a

25   motion on that I'd be glad to respond to that.

28

1          MR. LICHTMAN:  Judge, may I interrupt?  Mr.

2   Keshavarz made a motion to quash on this issue pending before

3   this court right now.

4          THE COURT:  Counsel.

5          MR. KESHAVARZ:  So the concern at this point absent

6   them getting a court order to remove the protective order, to

7   remove the confidentiality is exactly what Your Honor

8   suggested is to get around the fact that there's a

9   confidentiality agreement.  If they want to move for an order

10  to disclose the amount then they can do that and I can respond

11  but I think Your Honor is exactly right as to going around.

12         THE COURT:  Let's hear defendant's argument on this.

13         MR. LICHTMAN:  Let me be clear where we started with

14  this.  Mr. Keshavarz stood up and said I don't want to produce

15  the bank records over the last few months because they're

16  going to reflect the settlement with this party.  Well, that's

17  all we're talking about.  I want the bank records.  If I can

18  divine the amount of money that he settled for, that's not my

19  problem.  I'm not asking at this moment for a copy of the

20  settlement agreement, Judge.

21         THE COURT:  Okay.  Counsel, Counsel, you -- no

22  matter how you slice this it's still -- it's not going to take

23  rocket science to figure out what happens in a circumstance

24  like that and I'm still having difficulty seeing how this

25  doesn't accomplish something that ought to be accomplished a

29

1   different way by just saying -- by just -- this is like the

2   lipstick on a page kind of thing.  You can look at my account

3   and you'd know when I got certain lump sums.  So I fail to see

4   how that doesn't do indirectly what you might not be able to

5   do directly, and if you -- and if there's direct way to do it

6   you ought to be doing it the direct way because the ultimate

7   result will be the same.

8          MR. LICHTMAN:  Let me take a shot at this if I can,

9   Your Honor.  I understand your point fully but let me start

10  with this premise.  What is sacrosanct, and I ask this

11  obviously rhetorically, what is sacrosanct about this

12  settlement agreement with another party in this case.  That's

13  the only basis I'm hearing for me not learning the number that

14  he settled for.

15         But let me start where we started.  This plaintiff

16  has claimed that to this day, this very moment he continues to

17  suffer emotional distress as a result of a judgment for $8,000

18  entered against him in July of 2015.  That's his claim, his

19  damages claim.

20         So as a result my ability to look at all the other

21  pieces of the economics of his life continue until this day.

22  So he has a couple of choices in my view, Your Honor.  He can

23  say I'm actually not claiming that he continues to have

24  emotional distress to today.  I'm going to cut off his

25  emotional distress on the date I settled that case and he got

1  that money.  That's a good response.  Or there's no magic

2  about him having settled the case that should preclude me from

3  knowing that information relative to any other information

4  about sources of funds or money he got.  It's not my choice

5  that he's continuing to suffer emotional distress for a claim

6  up to March 2017 when the judgment was entered almost two

7  years ago.

8          THE COURT:  Well, you rephrased it but I don't think

9  you changed the needle here.  I mean essentially the argument

10 comes down to this.  And you asked a question of what's

11 sacrosanct about the -- any confidentiality agreement.   I

12 mean a normal reservations and that is if a court orders it or

13 you're subpoenaed or otherwise that still puts the court in

14 it.  Once the court is in it then you're dealing with whether

15 or not you're able to demonstrate to the court that there's a

16 reason to disclose the information.

17          Now, you may think that it's simply the same thing

18 disclosing it during -- in his motion to quash or his motion

19 to -- I guess in this case your motion to compel but it seems

20 to me that's an indirect way of getting the court to rule on

21 an issue that the parties haven't really briefed as to what --

22 which is really the question that you asked.  Why is it

23 sacrosanct.

24          MR. LICHTMAN:  And we did subpoena it, Judge, and

25 Mr. Keshavarz has filed a letter with this court asking to

31

1    quash it.  Now, it's not fully briefed yet but it's not as if

2    this is some big surprise.  He filed it with this court on --

3    it looks like March 6th.  So I mean I understand it's not

4    fully briefed but for Mr. Keshavarz to say oh my goodness, I'm

5    not prepared on this is just a little bit disingenuous.

6              THE COURT:  I'm not concerned about whether or not

7    he says he's prepared.  The question is whether or not the way

8    it's teed up on a motion -- I mean frankly right now I don't

9    have the -- I don't have the arguments on why the

10   confidentiality is even there.  So how do I even determine

11   whether or not it's appropriate to issue an order saying that

12   the information that is inherent in the agreement ought to be

13   disclosed here?

14             MR. LICHTMAN:  Your point is well taken, Your Honor.

15   Respectfully let me suggest something if I can.  Why don't we

16   corner off the issue of the settlement agreement and whatever

17   economic implications there are of the settlement agreement.

18   That's a letter that Mr. Keshavarz filed with the court.

19   We'll put in a response.  When Your Honor wants to hear from

20   us again you'll hear from us again when it's fully briefed.

21   I'd like to with your permission do that.  I understand Your

22   Honor's position perfectly well and it makes good sense.  If

23   we can just get back to everything else other than that piece

24   of the equation of the financial documents we've asked for.

25             THE COURT:  Is a deposition scheduled at all?

32

1          MR. KESHAVARZ:  No.

2          MR. LICHTMAN:  Not yet, Judge.  We're waiting for

3    documents.

4          THE COURT:  Okay.  So we need to expedite this.  So

5    here's where I stand.  It does seem to me that while I'm not

6    sure that in the scheme of the way jurors will process this

7    someone saying that they have continuing emotional stress for

8    something that happened a while back is something that's going

9    to be given a significant weight once the stressor

10   specifically is removed, I mean this -- I don't think you're

11   going to get -- well, okay.

12         So since the plaintiff is offering continuing --

13   asking for continuing recompense for that stress, were it not

14   for the confidentiality agreement then the defendants would be

15   entitled to financial information up to the -- at least up

16   until the end of discovery and so I think limitations before

17   that period of time I think probably the quarters in -- the

18   quarterly statements beginning in the beginning of 2015

19   frankly ought to be sufficient.  So at least that ought to be

20   teed up while we figure out what's going to happen with the

21   settlement agreement.

22         Now, that's just the -- now, that's -- that's bank

23   statements and credit card statements.  So while in theory you

24   might want to go back further given the circumstances here I

25   think since this took place in the middle of the year, the

1   beginning of 2015 seems to be a reasonable starting point

2   given the nature of the claim here.

3           Now, as to the defendant's -- the other issue that

4   was brought up was income.  Exactly what was the plaintiff's

5   position with respect to income?

6           MR. KESHAVARZ:  Income taxes?

7           THE COURT:  Well, income -- I say income because

8   some people will say give us your W-2s, some people will say

9   give us your income tax returns.  Different people show their

10  income in different ways.  On any and all of those what's your

11  position?  What's the defendant's position?  What do you want?

12  You want everything?

13          MR. LICHTMAN:  This could be done simply, Your

14  Honor, I think with the temporal limitation Your Honor imposed

15  which is -- which makes good sense.  I would suggest just the

16  2015 and 2016 tax returns which will encompass any source of

17  income.  So it's literally two documents that we would need to

18  satisfy what we're looking for.

19          THE COURT:  Well, plaintiff's position on this?

20          MR. KESHAVARZ:  Well, tax returns are governed to a

21  higher standard than some of the other financial information.

22          THE COURT:  I understand that.  The Second Circuit

23  has made that clear.  But what's your position?

24          MR. KESHAVARZ:  The second issue would be the income

25  for the period beginning January -- June 2015 as opposed to

34

1    the income during that time.  So those are the two issues.

2    One is -- I think you get a higher burden for tax returns and

3    two, it would be -- it should be limited to income received

4    from January 2015 up until the date of the settlement.  June

5    2015.

6              THE COURT:  Is this also limited to the

7    confidentiality issue?

8              MR. KESHAVARZ:  Well, it would be in terms of trying

9    to get -- if the tax returns that he's going to file raise the

10   issue about --

11             THE COURT:  So wait a minute.  When was the

12   settlement?  That wouldn't be a 2016 tax return; right?

13             MR. LICHTMAN:  It would be 2016 tax return but I

14   would expect that to be a non taxable settlement, Your Honor.

15   I can't imagine how that would be taxable.  I'm not an

16   accountant or a tax lawyer but I've done a lot of this stuff

17   long enough.  So Mr. Keshavarz I would suspect knows ever

18   better than I do.

19             THE COURT:  Well, you are right about income tax

20   returns as a high standard but if I understand correctly the

21   only line we're interested in is taxable income.

22             MR. KESHAVARZ:  I don't know.  He asked for the full

23   return.  I don't know what he's looking for.

24             THE COURT:  Well, he may have said that but that's

25   why lawyers compromise.  You tell him look, if you want to

35

1  know how much taxable income he had which doesn't even impact

2  on the settlement, if it does then -- I'm not a tax lawyer.

3  But that's what redactions are for.  You could certify this is

4  your tax return, here's line 33 which shows my taxable income.

5  I don't think that -- I mean I understand the Second Circuit

6  doesn't want tax returns to be -- they want a higher standard

7  but for some people the W-2 suffices because we know -- if

8  you're working for the government you generally don't have

9  another employer.

10             MR. KESHAVARZ:  And it may well be that he only

11 has -- his only income is from a W-2.  I don't know.  I

12 suspect that's the answer.  I suspect that's true.

13             THE COURT:  But the general principle of the income

14 we've already established given the nature of the claim is

15 going to be relevant for discovery purposes.  Again, I have my

16 concerns about what happens at trial but that's Judge Daniels'

17 worry.

18             All I'm ruling is that they're entitled to

19 information concerning his income, earned income -- not earned

20 income.  Taxable income during those periods of time.  If --

21             MR. KESHAVARZ:  But line on the tax return that says

22 taxable income.

23             THE COURT:  Well, look, from my point of view if

24 your client is willing to swear that he only had income and it

25 was on a W-2 and he shows the W-2s, if people are willing to

36

1  swear I take that very seriously.  I always tell lawyers to

2  tell their clients that if they swear to something this

3  litigation might be the least of their worries.  I've had

4  people -- there are cases where people have sworn to things in

5  a civil case and then found themselves in a criminal case.

6  But I don't know what the answer is.  The idea is that the

7  defendant wants to know about the taxable income.  It might be

8  simpler to do a redaction because that's just -- it eliminates

9  a lot of questions.  It doesn't divulge things about the

10 personal life of the person and what other things might be

11 happening.  It just says what -- how much money are you

12 getting in.  I think that's -- frankly I think that's the

13 simplest way to do it and it eliminates follow ups for me.

14        I like to have -- not that I have so much work to

15 do.  This is actually the only case I have and that's why I

16 get to spend time with you.

17        MR. LICHTMAN:  We feel very privileged, Your Honor.

18 Thank you.

19        THE COURT:  Okay.  But you understand my -- what

20 else did you have for -- do you understand that you -- I guess

21 you owe me a brief on the confidentiality issue.

22        MR. KESHAVARZ:  Your Honor, if I may on that.

23        THE COURT:  Yes.

24        MR. KESHAVARZ:  I think he's getting our two cases

25 mixed up.  There's a motion to quash a subpoena to my client's

37

1  bank that's unopposed.

2          THE COURT:  Is that the Banco Popular?  That was

3  going to be my next issue.

4          MR. KESHAVARZ:  That has been -- there's been no

5  opposition filed and the deadline to file an opposition has

6  passed.  He -- I believe present counsel is talking about a

7  different case in the Eastern District with the same attorneys

8  and similar -- and LR Credit and Mel Harris and so forth and

9  that is when they tried to subpoena one of the former

10 defendants, Mr. David Waldman of the Mel Harris firm.  That's

11 not in this case.  So I think -- I suspect he's getting his

12 case --

13         MR. LICHTMAN:  We'll tee it up.  If it's not teed

14 up, Judge, we'll tee it up.

15         THE COURT:  Okay.

16         MR. LICHTMAN:  The issue of Banco Popular --

17         THE COURT:  Understand that if we're talking about

18 anything in this case my idea is that we're all expedited.

19 We're not doing this two weeks kind of stuff.

20         MR. LICHTMAN:  We'll get something into you tomorrow

21 or Friday, Your Honor.  Tomorrow is Friday.  So Friday.

22 You'll get it tomorrow or Friday.  I can guarantee that.

23         THE COURT:  Tomorrow is Friday.

24         MR. LICHTMAN:  I'm joking.

25         THE COURT:  Either one.  Right?

38

1          MR. LICHTMAN:   The Banco Popular issue is I think

2   somewhat subsumed by what we've already talked about.   I think

3   Your Honor has ruled that we're entitled to that information

4   from this third party to the extent it exists.   We are -- our

5   understanding is that Banco Popular with a credit card vendor

6   with whom Mr. Guzman had an account and/or a bank account.   So

7   I can't see any reason for the plaintiff to need to quash that

8   subpoena.

9          THE COURT:   Except that I thought -- I thought this

10  had to do with the possibility that there was a mistake made.

11         MR. LICHTMAN:   It's both issues, Judge.

12         THE COURT:   I certainly analyze that one a little

13  differently because I needed you to convince me that that's

14  not just speculation.   I mean any time -- this could happen in

15  almost any case and somebody can say well, maybe it was just a

16  mistake and this happened and this really was something else.

17         MR. LICHTMAN:   That was really the secondary

18  argument, Your Honor.   The primary argument is the argument

19  that we've been having which is about our entitlement to know

20  of the plaintiff's financial condition and other potential

21  stressors.   So it's -- in my view it's been subsumed by what

22  we've argued already which is that we're entitled to know from

23  a third party whether Mr. Guzman owed it money or had a bank

24  account.

25         THE COURT:   So we're talking about the same temporal

39

1   constraints.

2           MR. LICHTMAN:  Exactly, Your Honor.  We're happy --

3   Banco Popular hasn't objected but I'm happy to limit with

4   Banco Popular to the same time period that Your Honor has

5   ordered vis-a-vis the plaintiff.

6           MR. KESHAVARZ:  If I may say.  They filed on

7   opposition.  The motion was filed on the 6th.  The deadline to

8   file an opposition has passed.  I don't believe they should be

9   able to just get up and stand up and say oh, we should be able

10  to quash at least -- deny their motion to quash --

11          THE COURT:  Well, what they're seeking from Banco

12  Popular is -- aside from this issue whether -- I remember that

13  had to do with 2007 but now we're talking about a different

14  temporal scope which has to do more with the question of the

15  stressors on the plaintiff.

16          MR. KESHAVARZ:  The time period requested in Item 2

17  of their subpoena is January 1, 2005 to December 31, 2010.

18          THE COURT:  Right.

19          THE COURT:  I think inherent in what I've said is

20  obviously that time period is not covered by anything we

21  discussed already.  So if the defendants want something -- I

22  had thought that the distinction part about this particular

23  subpoena was that it had something to do with the notion that

24  there may have been something that happened at Banco Popular

25  which this had been -- the debt here had been confused with.

40

1          To the extent that that was the justification that

2    seemed to me to be overly speculative but to the extent that

3    financial information at Banco Popular fits within the

4    temporal scope of what I've said before about the plaintiff's

5    financial situation in or around the time of the stressors it

6    was covered by what I've already said.

7          MR. LICHTMAN:  If I may, Your Honor, just back to

8    the prior period.  I guess again I go back to the premise of

9    what does the plaintiff care about me subpoenaing a financial

10   institution as to which he may have had an account.  What is

11   the -- what is the objection to that because in Mr.

12   Keshavarz's letter he claimed that we are --

13         THE COURT:  Okay.  The fact of the matter is is that

14   if he has an objection the only question is whether or not he

15   has standing.  Why he has an objection we may never get to

16   unless you oppose it.  So on this score he is right in the

17   sense that if you subpoena his bank and their third party the

18   bank may not care but if I determine that he has standing

19   because it's his bank account, which is the normal way, he has

20   standing to oppose the subpoena because he -- it could be he's

21   saying it's for harassment purposes or -- any number of things

22   that plaintiffs have alleged in those circumstances.  He gets

23   to file a subpoena and then it's a matter of the way the rule

24   operates.  If he moves to quash it and there's no opposition

25   from my point of view there's no opposition.

41

1       MR. LICHTMAN:  That's fine, Your Honor.  I mean

2  there was no opposition because Mr. Keshavarz took the

3  position that it was encompassed by the pending motion to

4  compel.

5       MR. KESHAVARZ:  That's not true.  Your Honor, your

6  ruling is your ruling, Your Honor.  I'm not arguing with you

7  one bit.

8       THE COURT:  Okay.  Well, then I guess our work on

9  that is done.

10      Now, let me just -- the last thing I had on my list

11  is that the parties asked for an extension of the discovery

12  deadline and as you know the rules say that for good cause

13  shown.  Except for the fact that you both agreed sometimes

14  when I have civil litigation I think if the parties agree

15  that's probably good enough cause because it's good for my

16  agita.  But you didn't really articulate what the reasons

17  were.  I know that there -- it seems now that there are

18  certain things that are still percolating but I didn't know

19  that you wouldn't be able to finish by the end of April.

20      MR. LICHTMAN:  I think we can, Your Honor.  I would

21  suggest that we have a defined time frame for the plaintiff to

22  comply with Your Honor's order today and that we then set a

23  date for his deposition and then I think we're done.  So I

24  think April 30th is absolutely doable.

25      THE COURT:  What about compliance?  I mean some of

42

1   this is -- I don't know whether the plaintiff has it on his
2   person or he has to go through the banks or what?
3          MR. KESHAVARZ:  I'll ask him.  If he has it then --
4          THE COURT:  It's immediate.
5          MR. KESHAVARZ:  Yes, but beyond -- if he doesn't
6   have it I mean --
7          THE COURT:  Why don't you -- rather -- look, I'm not
8   in the habit of ordering things without knowing how it's going
9   to work.  What I will direct you to do is this.  Find out if
10  your client has it and if he doesn't have it within the next
11  week contact the organizations or persons who might have it
12  and give me an estimation in writing about when you expect to
13  get it.  I mean, for example, I have online banking.  I could
14  get my statements by just signing in and hitting print.  I
15  don't know what steps it takes.  So rather than ordering
16  something and then having you tell me I'm going to give you a
17  week to tell me what it's going to take.  Sometimes it turns
18  out that it really doesn't take as much as the lawyer takes,
19  thinks it's going to take.
20          So a week from today you'll let me know and then
21  I'll issue an order consistent with what you tell me.  Again,
22  bearing in mind that we're trying to facilitate this without
23  it being unduly burdensome.
24          Is there something that the parties wanted to raise
25  other than those three years?

43

1        MR. KESHAVARZ:  There are a couple of items.  One,

2  I'm going to -- we had finally the deposition of LR Credit

3  last Friday which I've repeatedly noticed since August and

4  there have been --

5        THE COURT:  What's the problem?

6        MR. KESHAVARZ:  So here's the thing.  They finally

7  take their deposition and they finally disclose all these

8  other debt collectors as intermediaries who've been in charge

9  of the fraud against my client.  I want to move to amend to

10  add these people that they're just letting me know about.  So

11  I anticipate moving for a motion to amend and there's a letter

12  admittedly I filed last  night because I was taking the

13  deposition of Samserv finally yesterday.  But the request is

14  going to be to file a motion to amend and to file under seal

15  because it's going to attach a lot of documents that they have

16  initially designated as confidential.

17        Now, I've spoken with opposing counsel.  I don't

18  believe they necessarily should be confidential but in the

19  first instance I'd like to file the motion to amend and get

20  that on the record under seal and then whether it means under

21  seal is a separate issue.

22        THE COURT:  So essentially you want to file a motion

23  to amend.  You want to allege that you didn't find out this

24  information until the deposition.  You had sought the

25  deposition earlier and therefore you would have asked earlier

44

1  if you had found out.

2          MR. KESHAVARZ:  There are a couple of things on

3  that.  One, some of the documents were produced in October.

4  One of the issues is there's no scheduling order as I can look

5  at the docket and the filings and the ECF bounces.  There's no

6  scheduling order as to the date to file a motion to amend.  So

7  it would be under the lower standard rather than the higher

8  standard.

9          Some of the information came out in the deposition.

10  Some of the information came out in October but I was only

11  able to follow up on the documents when I spoke with LR Credit

12  finally the last week.  So one of the issues is adding several

13  new defendants and also based on the testimony there may be

14  additional claims against the existing defendant, frankly LR

15  Credit.

16          THE COURT:  You filed this last night asking -- is

17  there going to be a response from the defendants on this?:

18          MR. LICHTMAN:  I don't even know what Mr. Keshavarz

19  is talking about other than the fact that I saw the ECF prompt

20  at 10:45 last night.  I don't know.  I don't know how to

21  respond.

22          THE COURT:  Okay.  Well --

23          MR. LICHTMAN:  We'll look at it.  We'll respond or

24  we won't respond.

25          THE COURT:  Okay.  Understand that while we try to

45

1  keep on top of things we saw it.  We actually looked at it but

2  filing stuff the day before a conference isn't going to get a

3  definitive response from the court.

4          MR. KESHAVARZ:  I apologize.  The deposition for

5  them was last Friday.  Samserv was yesterday and I was remiss

6  in filing it earlier even though a lot of the information came

7  from LR Credit's deposition on Friday.  I should have right

8  after the deposition filed a letter but --

9          MR. LICHTMAN:  I just want to make sure the record

10 is abundantly clear that Mr. Keshavarz has just said that he

11 learned of these facts --

12         MR. KESHAVARZ:  That's not true.

13         MR. LICHTMAN:  -- at the time of the deposition

14 because the reality is he's known whatever facts --

15         THE COURT:  You can put -- this sounds like you

16 might want to do a response.

17         MR. LICHTMAN:  Yes, I think we will, Judge.  Thank

18 you.

19         THE COURT:  Because you're right that -- well, I

20 don't know that you're right.  I think Judge Daniels doesn't

21 generally put in restrictions on when to amend the complaint

22 and therefore it wouldn't be a scheduling order but still

23 we're still late in the process.  You still have to justify

24 the fact that you're doing it at this point and you obviously

25 anticipate that trying to say that you recently found out

46

1   about it is the way to go but the typical thing I get from

2   people opposing it is well, he says he just found out about it

3   but here are the documents we gave him in 2016 where we lay

4   this all out for him.

5        MR. KESHAVARZ:  I'm not disputing that.  Some of the

6   information was in the documents produced in October but I can

7   only take a deposition to drill down through it last week and

8   I tried to take his deposition since August and I've had like

9   six deposition notices and they object to the deposition

10  notices.

11       THE COURT:  I under --

12       MR. LICHTMAN:  That's just not true.

13       THE COURT:  Counsel, I understand but I just wanted

14  to make it clear that this is not something new.  That is

15  somebody says that I just found this out.  It's also not new

16  the other side says we already produced it to them.  It's

17  going to be a reasonable -- it's going to be a reasonableness

18  determination.  Basically what I tell people is look, if I

19  look at it and it would have been obvious to me that there was

20  something there then the defendants will probably win.  If

21  it's obvious -- if it's totally oblivious to me then the

22  plaintiffs win and use it somewhere in between.

23       So you'll make your arguments.  You'll point things

24  out to me and it's also true about the depositions.  I'm

25  getting the sense that you'll disagree as to whether or not

47

1  the defendants were somehow delayed in making the deposition

2  available and whether or not it was justified in not having

3  the deposition then.  There's a question about whether or not

4  you could have insisted on it, whether -- there -- it's not as

5  simple.  It' snot as difficult as healthcare but it's not

6  simple and I will listen to whatever each of you has to say

7  and we'll determine it but for now we'll do the financial

8  information and you'll tell me in a week what that looks like.

9  You don't have to wait a week.

10        MR. KESHAVARZ:  If I may raise a separate issue.

11        THE COURT:  Yes.

12        MR. KESHAVARZ:  Well, first off, to clarify.  The

13  motion last night is only to file the motion to amend under

14  seal.  That's the only request.  If we get a ruling on that

15  right away I can move on the motion to amend right away.

16        The second thing is the discovery close period.  We

17  had agreed to be pushed up 30 days because I couldn't take the

18  depositions until now.  So to say that we don't need it is

19  untrue.  I had to get the transcript from the depositions

20  which were last Friday and yesterday.  I need to get those

21  transcripts and follow up.  I know they said a number of

22  things that I want to follow up on either a subpoena to a

23  third party in addition to a discovery demand.

24        So I would request that the court extend discovery

25  as per the parties stipulated in their Docket Entry 119,

48

1  discovery close date be pushed to May 31, 2016.

2          THE COURT:  Well, you're fortunate in this case then

3  because I don't think that if -- if in the end the parties

4  need additional time to clean this up it will happen.  I don't

5  think Judge Daniels wants to have a case that's not in shape

6  to go to trial.  So there won't be any messes left before it's

7  referred to him.

8          MR. KESHAVARZ:  Okay.  So as of today though the

9  deadline is as scheduled?

10         THE COURT:  The deadline is as scheduled.

11         MR. KESHAVARZ:  Thank you, Your Honor.  Right now

12 the request was -- right now it's April 28th.  The joint

13 stipulated request it was extended a month to May 31st.

14         THE COURT:  I didn't grant that.

15         MR. KESHAVARZ:  That's right.

16         THE COURT:  It's the 28th but you won't have any

17 trouble getting the 31st.  Frankly, if this conference is any

18 indication the 31st might be optimistic.

19         MR. KESHAVARZ:  Yes.  Particularly if there's a

20 motion to amend that's granted.

21         THE COURT:  If there's nothing else you've put on

22 the record what you wanted to put on.  We'll be adjourned.

23 We'll wait to hear from you.

24         MR. LICHTMAN:  Thank you, Judge.

25         MR. KESHAVARZ:  Thank you, Your Honor.

49

1          THE COURT:  We're adjourned then.

2          MR. BALBER:  Thank you, Your Honor.

3                         * * * * *

50

1        I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5   _____

6                           Shari Riemer, CET-805

7   Dated:  April 7, 2017