UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
JOSE GUZMAN,                                    :    No. 16-cv-03499 (GBD)(RLE)
                                                :
                          Plaintiff,            :
                                                :
              - against -                       :
                                                :
MEL S. HARRIS AND ASSOCIATES, LLC, et al.,      :
                                                :
                          Defendants.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANTS SAMSERV, INC. AND WILLIAM MLOTOK'S MEMORANDUM
OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

O'HARE PARNAGIAN LLP
82 Wall Street, Suite 300
New York, NY 10005-3686
(212) 425-1401

*Attorneys for Defendants*
*Samserv, Inc. and William Mlotok*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

STATEMENT OF FACTS .........................................................................................................3

      The Affidavit of Service on Guzman Is Not Evidence of "Sewer Service" .......................4

      Alleged Discrepancies in Service Records (Including Non-Samserv Records) .................5

      Travel Times Between Service Attempts ...........................................................................5

      The Lazarus Declaration ....................................................................................................7

      The Egleson Declaration ....................................................................................................8

ARGUMENT .............................................................................................................................10

GUZMAN IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ..............................10

      A.     Standard of Review ...............................................................................................10

      B.     The Evidence Does Not Support Holding Mlotok
              Liable in His Individual Capacity .........................................................................11

             1.     There Is No Evidence Supporting the Piercing
                    of Samserv's Corporate Veil...................................................................11

             2.     The Notarization of the Affidavit of Service
                    Was Not an FDCPA Violation .................................................................14

      C.     The Samserv Defendants Are Not Liable for the
              Actions of Andino, an Independent Contractor ....................................................16

      D.     There Is No Evidence That the Samserv Defendants
              Fall Under the FDCPA's Definition of Debt Collector .........................................17

      E.     Regardless of Whether the Samserv Defendants are
              Debt Collectors, Guzman Has Not Met His Burden of
               Showing That the Service on Guzman Was "Sewer Service" ...............................22

      F.     Guzman Is Not Entitled to Summary Judgment on His GBL § 349 Claim ...........25

CONCLUSION...........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

Page(s)

### <u>Cases</u>

Allison v. Whitman & Meyers, LLC,
   No. 13-CV-696-JTC, 2015 WL 860757 (W.D.N.Y. Feb. 27, 2015) ................................12

Bowens v. LR Credit 10, LLC,
   No. 07-CV-459S, 2011 WL 6208303 (W.D.N.Y. Dec. 14, 2011) .......................21, 22, 25

Briscoe v. Cohen, McNeile & Pappas, P.C.,
   No. 14-2146-DDC-KGG, 2014 WL 4954600 (D. Kan. Oct. 1, 2014) ............18, 23, 24, 25

Bueno v. LR Credit 18, LLC,
   No. 16 Civ. 4737 (WFK)(VMS), 2017 WL 2712885 (E.D.N.Y. June 6, 2017).........20, 21

Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P.,
   491 B.R. 335 (S.D.N.Y. 2013)...........................................................................................11

Clark v. Capital Credit & Collection Servs., Inc.,
   460 F.3d 1162 (9th Cir. 2006) ...........................................................................................16

Dillon v. Riffel-Kuhlmann,
   574 F. Supp. 2d 1221 (D. Kan. 2008)................................................................................25

E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc.,
   944 N.E.2d 1135 (N.Y. 2011)......................................................................................11, 12

Edwards v. Rockaway Storage, Inc.,
   924 N.Y.S.2d 308 (Table), 2008 WL 8214039 (Sup. Ct. Queens Cnty. Apr. 28, 2008)...14

Garcia v. Fry,
   186 F. Supp. 3d 228 (D. Conn. 2016)................................................................................25

Garcia v. Vill. Red Rest. Corp.,
   No. 15 CIV. 62 92 (JCF), 2017 WL 1906861 (S.D.N.Y. May 8, 2017).....................11, 12

Gartner v. Snyder,
   607 F.2d 582 (2d Cir. 1979)...............................................................................................11

Goldstein v. Hutton, Ingram, Yuzek, Carroll & Bertolotti,
   374 F. 3d 56 (2d Cir. 2004).................................................................................................21

Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty, Ltd.,
   No. CV 06-0356 (FB)(JO), 2006 WL 1720442 (E.D.N.Y. June 22, 2006).......................16

In re Paragon Process Service, Inc.,
       477 N.Y.S.2d 1009 (3d Dep't 1984)............................................................17

Keylard v. Mueller Anderson, P.C.,
       No. 13 C 2468, 2013 WL 4501446 (N.D. Ill. Aug. 22, 2013)..........................................25

Mandelas v. Gordon,
       785 F. Supp. 2d 951 (W.D. Wash. 2011)..........................................................15

NetJets Aviation, Inc. v. LHC Commc'ns, LLC,
       537 F.3d 168 (2d Cir. 2008)..........................................................................12

Ohlson v. Cadle Co.,
       No. 04 CIV. 3418 DRH/ETB, 2006 WL 721505 (E.D.N.Y. Mar. 21, 2006)....................15

Pierce v. Steven T. Rosso, P.A.,
       No. CIV. 01-1244 DSDJMM, 2001 WL 34624006 (D. Minn. Dec. 21, 2001)................25

Piper v. Portnoff Law Assocs.,
       274 F. Supp. 2d 681 (E.D. Pa. 2003)
       aff'd, 396 F.3d 227 (3d Cir. 2005)...................................................................13

Pollice v. Nat'l Tax Funding, L.P.,
       225 F.3d 379 (3d Cir. 2000)...........................................................................13

Proctor & Gamble Co. v. Xetal, Inc.,
       No. 04 CIV 2820 DRH WDW, 2008 WL 361140 (E.D.N.Y. Feb. 8, 2008)....................10

Rothenberg v. Frazier,
       No. 2:13-CV-5729-ODW(JEMx), 2013 WL 4857664 (C.D. Cal. Sept. 11, 2013)...........14

RSL Commc'ns PLC v. Bildirici,
       649 F. Supp. 2d 184 (S.D.N.Y. 2009)
       aff'd, 412 F. App'x 337 (2d Cir. 2011)..............................................................11

Sanchez v. Abderrahman,
       No. 10-CV-3641 CBA LB, 2014 WL 1276570 (E.D.N.Y. Mar. 25, 2014) .....................14

Sanchez v. Abderrahman,
       No. 10 CV 3641 CBA LB, 2014 WL 4919153 (E.D.N.Y. Aug. 12, 2014)
       report and recommendation adopted as modified on other grounds,
       2014 WL 4919258 (E.D.N.Y. Sept. 30, 2014) ....................................................14

Scott v. Kelkris Assocs., Inc.,
       No. CIV. 2:10-1654 WBS, 2012 WL 996578 (E.D. Cal. Mar. 23, 2012) .......................15

Sluys v. Hand,
       831 F. Supp. 321 (S.D.N.Y. 1993) ..................................................................17

Steel v. Watch Hill Mgmt. Corp.,
      No. 08 CV 01698 GBD, 2011 WL 70387 (S.D.N.Y. Jan. 5, 2011)...................................13

Sykes v. Mel Harris & Assocs., LLC,
      757 F. Supp. 2d 413 (S.D.N.Y. 2010)................................................................... 17-18, 19

Sykes v. Mel Harris & Assocs., LLC,
      No. 09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ..........................18

The Mary,
13 U.S. 126 (1815)..................................................................................................................16

Thurow v. Prof'l Fin. Co.,
      No. 16-CV-02000-KLM, 2017 WL 2864936 (D. Colo. July 5, 2017) .......................23, 24

Vallecastro v. Tobin, Melien & Marohn,
      No. 3:13-CV-1441 SRU, 2014 WL 7185513 (D. Conn. Dec. 16, 2014)..........................14

Vt. Teddy Bear Co. v. 1–800 Beargram Co.,
      373 F.3d 241 (2d Cir. 2004)...........................................................................................10

Williams v. Prof'l Collection Servs., Inc.,
      No. CV 04-286 JS ARL, 2004 WL 5462235 (E.D.N.Y. Dec. 7, 2004)............................13

Younessi v. Secrist,
      No. SACV13-01281 SJOAJWX, 2013 WL 12131572 (C.D. Cal. Dec. 16, 2013) ...........14

## Statutes and Rules

15 U.S.C. § 1692a .....................................................................................................................17

Fed. R. Civ. P. 26(b)(1)..............................................................................................................19

Fed. R. Civ. P. 56(a) ..................................................................................................................10

N.Y. Gen. Bus. L. § 349 ...................................................................................................1, 11, 25

Defendants Samserv, Inc. ("Samserv") and William Mlotok (collectively, the "Samserv Defendants") respectfully submit this memorandum of law in opposition to the motion for partial summary judgment of plaintiff Jose Guzman.

## PRELIMINARY STATEMENT

This Court accurately assessed this case at its outset when it noted that this "isn't the case of the century."  ECF 81 at 14:4.  Guzman has nonetheless desperately labored to convert his individual claim into the Sykes class action that spawned it, throwing in wholesale the allegations and supposed support for those class-wide allegations, despite the obvious fact that the purported proof does not fit this isolated claim.

Guzman was the subject of a suit that sought to collect a debt.  The creditor hired a law firm that turned to Samserv to serve process.  In turn, Samserv engaged an independent contractor, John Andino, to effect service.  Guzman contests that service and alleges a violation of the Fair Debt Collection Practices Act ("FDCPA") and General Business Law section 349.

Guzman now seeks summary judgment as to liability against Samserv, a corporation, and its shareholder Mlotok.  But his proof falls far short.  Guzman cannot dispute that for years he had worked at the service address, and instead argues that the affidavit of service's reference to the address as a residence proves that a diabolical plot was afoot.  That, however, is not borne out by the facts.  As demonstrated in Mlotok's Supplemental Declaration, the information about the type of structure was a default entry in a computer program, not a specific statement by Andino.  It was Andino's responsibility to check that information in the affidavit before signing. All that transpired here was a clerical error.  While it might have rendered service ineffective, it cannot, as a matter of law, be considered a violation of the FDCPA or GBL § 349.

Moreover, Guzman presents no proof whatsoever that either Samserv or Mlotok knew

what Andino, as an independent contractor, might have seen at this address.  This alone requires that Guzman's motion be denied as to the Samserv Defendants.

Realizing the dearth of proof relating to the service of process on him, Guzman rushes to throw not only the kitchen sink, but the kitchen sink from a different litigation.  In so doing, he dumps into his motion information that both this Court and Magistrate Judge Ellis already ruled was beyond the generous bounds of discovery.  Without following the Federal Rules, Guzman now seeks to anoint three individuals as experts here by submitting their declarations from Sykes, without any indication that they will in fact be willing to testify here.  These declarations from a different action do nothing more than pile up "statistics" relating to independent contractors other than Andino that post-date July 2007 (which is the only possible period at issue here, as Plaintiff makes no allegations against the Samserv Defendants for any conduct after July 2007), and often cite to information having no relation to Samserv.

Guzman thus ignores the common sense requirement that his proof must be tethered to this case.  Supposed proof of what might have happened in a four-year class period, mostly ranging far beyond July 2007, has no place in his individual claim.  Indeed, this Court has already rejected Guzman's contention that discovery from the Sykes class action—including the sweeping and irrelevant set of statistics from an IT consultant—should be used in this opt-out case to prove whether Samserv was a debt collector.  Put another way, even if the undifferentiated hodgepodge of Guzman's inadmissible submission might tend to prove some situation in 2011, it sheds no light whatsoever on the one critical time in this case:  July 2007.

In grasping at straws to prove that Andino somehow was part of a larger scheme to defraud him, Guzman's only somewhat contemporaneous, potential quibble is with a particular service of process by Andino—on someone other than Guzman—on the morning of June 9,

2007.  On that day, Andino approximated that it took him 3 minutes to travel about one mile between two service locations.  Guzman relies here on a 2017 printout from Google Maps to contend that Andino would have needed 8 minutes to travel that distance in 2007.  This "proof" not only cannot justify summary judgment on Guzman's claim, but it is also without foundation and inadmissible, and ignores the uncontroverted notion that service times are approximations.  And, critically, the issue of supposed instances of simultaneous service is totally absent here.

Guzman fares no better in his case against Mlotok individually.  The vanishingly few and weak allegations in the Complaint, and the proof relating to them, are plainly insufficient to warrant piercing Samserv's corporate veil.  Neither Mlotok's status within Samserv nor his acting as a mere notary give rise to any personal liability at all.

For these reasons and others raised below and in response to Guzman's Rule 56.1 statement, Guzman's attempt to revive <u>Sykes</u> in this narrow dispute must fail.  Thus, this Court should deny Guzman's motion and grant summary judgment in favor of Samserv and Mlotok.

## <u>STATEMENT OF FACTS</u>

In their papers in support of their motion for summary judgment, the Samserv Defendants have set forth in detail the facts concerning the identity and organization of Samserv Defendants; the Samserv Defendants' use of independent contractor process servers, including Andino; the service of process upon Guzman at issue here; and the Samserv Defendants' practices and procedures to prevent ineffective service of process that were in effect at the time at issue—July 2007.  For the sake of brevity, the Samserv Defendants will not repeat those facts here.[1]

---

[1] The facts relating to matters raised by Guzman in his motion and not already discussed in the Samserv Defendants' and LRC's motions for summary judgment are set forth in the accompanying Supplemental Declaration of William Mlotok ("Mlotok Supp. Decl."), the Samserv Defendants' Counter Rule 56.1 Statement ("Samserv Counter 56.1"), and LRC's Response to Plaintiff's Rule 56.1 Statement of Material facts, as indicated in the Samserv Counter 56.1. The Court is also respectfully referred to the statement of facts in Defendants Samserv, Inc.'s and William Mlotok's Memorandum of Law in Support of Their Motion for Summary Judgment ("Samserv Mem.") (ECF 182); the *(cont'd)*

**The Affidavit of Service on Guzman Is Not Evidence of "Sewer Service"**

Guzman asserts that the reference to a "private residence" in the affidavit of service upon him in the underlying collection action (the "Affidavit of Service") somehow proves "sewer service" because 1304 Boston Road is a grocery store.  See Memorandum of Law in Support of Plaintiff Jose Guzman's Motion for Summary Judgment Against Defendants Samserv, Inc. and William Mlotok ("Pl. Mem.") at 9.  The evidence, however, does not support the inference Guzman wants the Court to draw, and instead merely suggests a simple error.

Guzman concedes that the address was, indeed, associated with him for several years, from 2001-04.  See id. ("Mr. Guzman worked at a grocery store at 1304 Boston Road from 2001 through 2004.").  Furthermore, while Andino would complete a handwritten form that provided information to Samserv relating to Andino's attempts and completions of service of process, see Mlotok Decl. ¶ 11, process servers do not provide Samserv with information regarding the type of structure at the service address.  Mlotok Supp. Decl. ¶ 6.  Rather, this field in the affidavit of service was filled in by a default function of the program that generated the affidavit of service. Id.  The process server must then review the affidavit of service before signing to confirm that all of its contents are correct.  Id.; see also Mlotok Decl. ¶ 27 ("Samserv has charged each process server, including Andino, with ensuring that the information in each affidavit of service to which they swear was correct prior to signing such affidavit of service.").

Moreover, the images submitted by Guzman himself show that the store at 1304 Boston Road is on the ground floor of a residential apartment building.  See Declaration of Ahmad

---

Declaration of William Mlotok ("Mlotok Decl.") and the exhibits thereto (ECF 181); the Declaration of Jeffrey S. Lichtman and the exhibits thereto (ECF 188); and the Samserv Defendants' Rule 56.1 Statement in support of their motion (ECF 184).  The Samserv Defendants' motion also incorporated the portions of LRC's Rule 56.1 Statement in support of its motion for summary judgment (ECF 183) under the headings "The Collection Lawsuit," "The Affidavit of Merit and Chase Credit Card Debt," and "Plaintiff's Alleged Emotional Distress."

Keshavarz ("Keshavarz Decl.") (ECF 192) Ex. SS.  Thus, at worst, the Affidavit of Service reflects a simple error by Andino.  In addition, Guzman has no proof that Samserv or Mlotok were aware of the status of the address.  This alone requires dismissal of Guzman's FDCPA claim, as a plaintiff must prove that a defendant actually knew that the service address was incorrect to state a violation of the FDCPA based on ineffective service.  See Point E, infra.

**Alleged Discrepancies in Service Records (Including Non-Samserv Records)**

Guzman cannot escape the basic fact that Andino worked independently and without control by Samserv, as did all process servers retained by Samserv.  He seeks to obscure that bedrock truth by filling his submission with data that might have been germane in the sprawling (and settled) Sykes class action that involved multiple years of conduct on the part of numerous process servers who were also co-defendants in that action, but have no place here other than to prejudice any fact finder and distract from this individual set of facts.  Indeed, as discussed, the allegations were not even proven in the Sykes case.

Furthermore, this cluster of data—most of which involves purported incidents years and years after the July 2007 time period at issue here and relates to process servers who have no relationship to this case and who were contractors for several process serving agencies—is riddled with speculation, irrelevance, and simple lack of foundation.

**Travel Times Between Service Attempts**

Guzman attempts to raise an inference of sewer service by pointing to "impossible travel times" between service attempts, often citing Google Maps as a basis to imply that a process server must have been engaged in sewer service because he could not possibly have been at both places in the specified time.

None of the information Guzman points to relates to the service on Guzman.  The uncontroverted evidence shows a suitable interval of time between the attempted or actual

service on Guzman at 1304 Boston Road and the immediately preceding and following services

of process by Andino on all three dates that Andino went to 1304 Boston Road:  13 minutes

before and 15 minutes after on July 6, 2007, 22 minutes before and 20 minutes after on July 7,

and 19 minutes before and 21 minutes after on July 9.  Mlotok Decl. ¶¶ 20-25 & Ex. 2.

 Remarkably, after the close of discovery, Guzman questions only _one_ instance regarding

Andino's individual service records pre-dating his July 2007 service on Guzman.  Based on

Guzman's reading of Google Maps in 2017, he posits that, in June 2007, it would have taken

Andino eight minutes to travel approximately one mile within the same zip code from Decatur

Avenue to Ryer Avenue in the Bronx, instead of the approximately three minutes as recorded.

See Guzman's Rule 56.1 Statement ¶¶ 77-79.  The flimsy nature of this "proof" is evident.  First,

the times entered in the affidavits of service are approximate, as set forth in the form affidavit of

service used in July 2007 by Andino in connection with service on Guzman.  Mlotok Supp. Decl.

¶ 5 & Ex. A.  This is simple common sense—service times need not be stated with atomic clock

precision, but only with reasonable approximations that provide sufficient data for identifying

the facts underlying service.  Thus, a discrepancy of a few minutes—as in the (non-Guzman)

service Guzman points to—is well within any approximation attested to.

 Guzman's reliance on Google Maps also reflects a flaw that infects much of his

submission.  While Google Maps might indicate distance, its time estimations take into account

traffic, speed limit, and road conditions between two points at a certain time and date in 2017,

which bear no demonstrated relationship to the traffic and road conditions on the morning of

June 9, 2007.  This obvious lack of any foundation must render this "fact" concerning Andino

wholly inadmissible, and also dooms much of Guzman's reliance on other "facts."  Guzman

proffers no basis for: (1) the admissibility of the travel time figures divined from Google Maps;

(2) viewing them as definitive, or even as sufficient to preclude any shorter travel time; or (3) allowing this Court to conclude that the 2017 travel times from Google Maps might relate to July 2007.  Furthermore, these flaws also negate the multiple hearsay affirmation of Jonathan Schwartz (Keshavarz Decl. Ex. L), counsel in an unrelated matter who argued that process server Nassar Al-Atrash (who was not involved in service on Guzman) could not possibly have been at 65 different locations in the times reflected in his respective affidavits of service, premised on his non-expert reading of Google Maps.  Id. ¶¶ 6-7.

Samserv's records of this set of services further demonstrate the paucity of this supposed proof.  Specifically, Samserv retained photographic evidence of nearly all of those services of process, which bear a time and date stamp showing when the picture was taken, and most of which are also accompanied by information as to the GPS location at which each photograph was taken.  Mlotok Supp. Decl. ¶ 7 & Ex. B.  This evidence not only confirms that Al-Atrash did, in fact, serve process at these locations but also, more importantly, demonstrates that Guzman cannot meet his burden on this motion by relying on one-sided, unreliable hearsay to support his theory of "impossible travel times."

**The Lazarus Declaration**

Guzman also claims that the number of services per day recorded by process servers somehow proves that process was intentionally not served.  The central pillar of this argument is a declaration submitted in the Sykes class action from Bruce Lazarus, then a competitor of Samserv.  See Keshavarz Decl. Ex. GG.

Lazarus was never named as an expert in this action and has not submitted an expert report.[2]  His methodologies were never subject to any Daubert challenge, and his analysis suffers

---

[2] Likewise, Guzman never named Carolyn Coffey as an expert, although Guzman's initial disclosures advised that
*(cont'd)*

from several fatal flaws.  For example, he fails to account either for differences in service of process in cities versus suburban settings, or for the mode of transportation used by a process server.  Moreover, Lazarus's declaration does not purport to address conditions in 2007 or address the services of process by Andino in July 2007.  Accordingly, Guzman's contentions about the number of services of process that are supposedly too many on any given day are not only incorrect, simplistic and irrelevant, but also lack any support and must be disregarded.

**<u>The Egleson Declaration</u>**

Guzman relies heavily and often on the declaration of Nicholas Egleson, an IT consultant, which was submitted in <u>Sykes</u>.  <u>See</u> Keshavarz Decl. Ex. P.  The Egleson declaration contains a vast array of speculative observations that go well beyond the expertise of an IT consultant, including what he deems "impossible travel times" and "nonsensical backtracking." <u>Id.</u> ¶¶ 13, 16.  Guzman has not named Egleson as an expert and has not submitted an expert report or provided any information demonstrating that Egleson has any knowledge or experience in connection with service of process or with the meaning of the data he purports to analyze, or indeed as to anything beyond IT matters, if that.[3]  Furthermore, Guzman provides no basis for this Court to believe that Egleson is willing and able to testify in this matter.

Based on Guzman's failure to name Egleson as an expert, Egleson's methodology has not been subjected to scrutiny under a <u>Daubert</u> analysis.  For example, he has not accounted for the well-documented occurrence of transcription errors in the course of data entry from handwritten

she was a "potential expert."  Guzman never provided notice of his intention to actually use her as an expert, and she did not provide an expert report on any issue.

[3] Although not named as an expert here, Guzman relies on Egleson to opine that instances when process was served before the date that the process server supposedly received his or her assignment are a "physical impossibility." Keshavarz Decl. Ex. P ¶ 12.  But Egleson provides absolutely no basis for his interpretation of the data to mean that an "assigned date" is only when a process server receives an assignment.  In fact, the field of "assigned date" was a relatively unimportant one and often reflected the date on which the data was entered, which could easily and unremarkably have occurred after service of process.  <u>See</u> Mlotok Supp. Decl. ¶ 3-4.  Thus, Egleson's conclusions on this issue are not only meritless but without any factual basis and inadmissible.

documents.  As explained in Samserv's moving papers, independent contractor process servers would complete handwritten forms describing the particulars of service of process.  A data entry person would then enter the data from that handwritten form into a database for inclusion into an affidavit of service.  Mlotok Decl. ¶ 11.

Thus, two sources of transcription error arise—the first, based on a potential misreading of the handwritten form; the second, upon typing the data for entry into the database.  One scholarly article has reported that, in such settings, 650 transcription errors were created for every 10,000 fields (not forms), when data was entered into a database from a handwritten form, as was done here.  See Monika M. Wahi, et al., Reducing Errors from the Electronic Transcription of Data Collected on Paper Forms:  A Research Data Case Study, 15 J. Am. Med. Inform Assoc. 286, 386 & n.9 (2008).[4]  It would therefore be expected that the database reflecting data entry from handwritten forms relating to data concerning nearly 60,000 services of process purportedly examined by Egleson, each of which contained fields for date and time of service of process, would reflect approximately 3,900 transcription errors in each of these fields of date and time of service alone.

Such transcription errors are sufficient on their own to explain, for example, Egleson's statement that the dates of service in some cases (not Guzman's) precede the dates the service was assigned to the process server or supposed simultaneous service.  Egleson does not even comment on this phenomenon, let alone assess and account for it.  More fundamentally, as an IT consultant not named as an expert here who simply analyzed numbers in a database, Egleson professes and possesses no apparent knowledge of Samserv's operations, and is thus not competent to opine on the meaning that might be attributed to this finding.  Nonetheless, he

---

[4] Available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2409998/#bib9.

opines that instances when process was served before the "assigned date" constitute a "physical impossibility." Keshavarz Decl. Ex. P. ¶ 12. But Egleson provides absolutely no basis for his interpretation of the data to mean that an "assigned date" only records when a process server receives an assignment. In fact, the field of "assigned date" was a relatively unimportant one and often reflected the date on which the data was entered, which could easily and unremarkably have occurred after service of process. This also could result from the service being designated as a "rush" or from a simple clerical error and has no effect whatsoever on the affidavit of service. See Mlotok Supp. Decl. ¶ 4. Thus, Egleson's conclusions on this issue are both meritless and without any factual basis. Accordingly, Egleson's conclusions in this regard are unfounded speculation that would require factual understanding he does not possess.

## ARGUMENT

## GUZMAN IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT

### A.      Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[W]here, as here, a plaintiff is moving for summary judgment on its cause of action, the plaintiff must submit evidence on each material element of the cause of action and that evidence must be sufficient to entitle the plaintiff to relief in its favor as a matter of law." Proctor & Gamble Co. v. Xetal, Inc., No. 04 CIV. 2820 DRH WDW, 2008 WL 361140, at *4 (E.D.N.Y. Feb. 8, 2008) (citing Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented.*" Vt. Teddy Bear Co., 373 F.3d at 244 (emphasis in original; internal quotation marks omitted).

**B.      The Evidence Does Not Support Holding Mlotok Liable in His Individual Capacity**

Guzman claims that Mlotok is "jointly and severally liable for the acts of Samserv because he exercises control over the affairs of Samserv" and that Mlotok is individually liable "because he notarized the false affidavit of service of Andino as to Mr. Guzman, and notarized most of the Samserv affidavits of service from 2004 to 2009, including the allegedly false affidavits of service."  Pl. Mem. at 12 (brackets and internal quotation marks omitted).  He has not, however, adduced evidence entitling him to judgment as a matter of law on either theory.

**1.      There Is No Evidence Supporting the Piercing of Samserv's Corporate Veil**

It is beyond well-established that "New York law . . . allows individuals to incorporate for the very purpose of avoiding personal liability."  Gartner v. Snyder, 607 F.2d 582, 586 (2d Cir. 1979); see also RSL Commc'ns PLC v. Bildirici, 649 F. Supp. 2d 184, 210 (S.D.N.Y. 2009) ("One of the primary and completely legitimate purposes of incorporating is to limit or eliminate the personal liability of corporate principals."), aff'd, 412 F. App'x 337 (2d Cir. 2011).

Thus, because Samserv is a corporation, Mlotok cannot be held liable for Samserv's acts or omissions unless Guzman adduces evidence sufficient to pierce Samserv's corporate veil.  Under both federal common law, which applies to the FDCPA claim, and New York law, which applies to the GBL § 349 claim, the standard for veil piercing is stringent and requires Guzman to meet a heavy burden.  See Samserv Mem. at 12 (citing Capmark Fin. Grp. Inc. v. Goldman Sachs Credit Partners L.P., 491 B.R. 335, 349 (S.D.N.Y. 2013); E. Hampton Union Free Sch. Dist. v. Sandpebble Builders, Inc., 944 N.E.2d 1135, 1136 (N.Y. 2011)).  Because Guzman has not met that burden, he is not entitled to summary judgment.[5]  To the contrary, as set forth in the

---

[5] "Federal courts generally require that veil piercing be sufficiently pled in the complaint or at least raised formally early in an action."  Garcia v. Vill. Red Rest. Corp., No. 15 CIV. 62 92 (JCF), 2017 WL 1906861, at *5 (S.D.N.Y. May 8, 2017) (citing cases).  Guzman has not done so either in the Complaint or on this motion.  The only allegations concerning Mlotok's relationship with Samserv are that he is the owner, and "the chief executive officer, *(cont'd)*

11

Samserv Defendants' motion, Mlotok is entitled to summary judgment on this issue.

Here, even though Guzman took Mlotok's deposition, he has adduced no evidence that Samserv was simply an alter-ego of Mlotok.  For example, there is no evidence that Samserv's corporate formalities were not observed, that Samserv is undercapitalized, that Samserv's and Mlotok's funds were intermingled, or that Samserv's funds were used to pay Mlotok's personal debts.  See Garcia v. Vill. Red Rest. Corp., No. 15 CIV. 62 92 (JCF), 2017 WL 1906861, at *7-8 (S.D.N.Y. May 8, 2017) (setting forth factors used to determine alter-ego liability under both federal and New York law).

Nor has Guzman adduced any evidence that "the individual [Mlotok] used the corporate entity to perpetrate a fraud or injustice."  Id. at *7.  As one of the cases Guzman relies on explained, "[i]t is well established that the claimed fraud or injustice 'must consist of more than merely the tort or breach of contract that is the basis of the plaintiff's lawsuit.'  After all, "[t]o hold otherwise would render the fraud or injustice element meaningless.'"  Allison v. Whitman & Meyers, LLC, No. 13-CV-696-JTC, 2015 WL 860757, at *3 (W.D.N.Y. Feb. 27, 2015) (granting summary judgment to individual defendant in FDCPA case) (quoting NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 183 (2d Cir. 2008)); see also Samserv Mem. at 13 (citing Garcia, 2017 WL 1906861, at *8; E. Hampton Union Free Sch. Dist., 944 N.E.2d at 1136)).  Guzman has not even attempted to meet this burden on his motion.

The cases cited by Guzman do not support his position.  In Allison, 2015 WL 860757, at *2, the court granted the individual defendant's motion for summary judgment despite the

---

manager, and decision maker" of Samserv.  Compl. ¶ 13.  Tellingly, the Complaint does not even include Mlotok in its definition of "Samserv" for purposes of the allegations against "Samserv."  See Compl. at 1, Summary of Claims (defining "SAMSERV" as meaning "a process serving company [i.e., Samserv, Inc.] and an individual process server [i.e., Andino]").  Guzman's attempt to hold Mlotok personally liable should be denied on this basis alone. See Garcia, 2017 WL 1906861, at *6 (holding that defendants' veil piercing argument could be rejected solely because "plaintiffs' complaint does not plead alter ego liability, nor does it suggest that the corporate veil should be pierced or allege facts from which it could be inferred that the corporate form has been disregarded").

allegation that he was a "member-manager and/or shareholder" and "oversees the day-to-day operations" of the debt collection agency because "[t]he complaint contains no allegations of specific conduct by [him] in the alleged FDCPA violations."  As set forth below, Mlotok's notarization of the Affidavit of Service does not meet the requisite of alleging an FDCPA violation, distinguishing this case from Williams v. Prof'l Collection Servs., Inc., No. CV 04-286 JS ARL, 2004 WL 5462235 (E.D.N.Y. Dec. 7, 2004), and Piper v. Portnoff Law Assocs., 274 F. Supp. 2d 681 (E.D. Pa. 2003), aff'd, 396 F.3d 227 (3d Cir. 2005), on which Guzman also relies.

In Williams, the court allowed the plaintiff to amend the complaint to add individual defendants when the plaintiff specifically alleged that the individual defendants "left a series of abusive and deceptive phone messages on the plaintiff's answering machine in an attempt to collect a debt."  Williams, 2004 WL 5462235, at *4.  As the court explained, "[a] high-ranking employee, executive, or director of a collection agency may fit within the statutory definition of a debt collector as long as the defendant was personally involved in the collection of the debt." Id. (emphasis added).  Similarly, in Piper, 274 F. Supp. 2d at 689, the "plaintiff has shown that the individual defendants both signed debt collection letters."  Finally, the decision in Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379 (3d Cir. 2000), is inapposite because the court "do[es] not deal with the liability of a shareholder of a 'debt collector' corporation" but rather "with the liability of the general partner where the limited partnership meets the definition of 'debt collector.'"  Id. at 405 n.29.  A general partner of a limited partnership, unlike shareholders of corporations, is "individually and personally liable for all debts and obligations of the partnership acquired during his term as a partner."  Steel v. Watch Hill Mgmt. Corp., No. 08 CV 01698 GBD, 2011 WL 70387, at *7 (S.D.N.Y. Jan. 5, 2011).  Thus, Mlotok cannot be individually liable unless Guzman proves Mlotok's individual acts violated the FDCPA *and* that Samserv was

13

a debt collector and not entitled to the process serving exemption.  He cannot meet these

substantial burdens—and certainly not as a matter of law.

### 2.    The Notarization of the Affidavit of Service Was Not an FDCPA Violation

Guzman's attempt to hold Mlotok liable for notarizing the Affidavit of Service is

unavailing.[6]  First, it is well established that notaries are not debt collectors under the FDCPA.

See Vallecastro v. Tobin, Melien & Marohn, No. 3:13-CV-1441 SRU, 2014 WL 7185513, at *4

(D. Conn. Dec. 16, 2014); Sanchez v. Abderrahman, No. 10 CV 3641 CBA LB, 2014 WL

4919153, at *3 (E.D.N.Y. Aug. 12, 2014), report and recommendation adopted as modified on

other grounds, 2014 WL 4919258 (E.D.N.Y. Sept. 30, 2014); Younessi v. Secrist, No. SACV13-

01281 SJOAJWX, 2013 WL 12131572, at *2 (C.D. Cal. Dec. 16, 2013); Rothenberg v. Frazier,

No. 2:13-CV-5729-ODW(JEMx), 2013 WL 4857664, at *3 (C.D. Cal. Sept. 11, 2013).[7]

Moreover, while Guzman alleges that the information in the Affidavit of Service is

incorrect, he neither argues nor cites authority in support of his apparent position that notaries

have a duty to verify the substantive information in affidavits they notarize.  Nor could he,

because notarization is not an affirmation or attestation by the notary of the truth of the matter set

forth in the affidavit.  Rather, "[n]otarization itself . . . is only evidence that the document was

affirmed and signed before an authorized official."  Edwards v. Rockaway Storage, Inc., 924

N.Y.S.2d 308 (Table), 2008 WL 8214039, at *2 (Sup. Ct. Queens Cnty. Apr. 28, 2008).

Even were Mlotok under some sort of duty to independently investigate the truth of the

---

[6] While Guzman refers to Mlotok notarizing other affidavits of service in other matters, he offers no evidence as to those other notarizations and does not explain why they would be a basis for holding Mlotok liable to Guzman.

[7] The Vallecastro court mistakenly stated that a notary was found liable for an FDCPA violation in Sanchez.  See 2014 WL 7185513, at *4.  The Sanchez opinion cited by the Vallecastro court granted a motion for summary judgment brought by other defendants but did not analyze the claims against the notary.  Sanchez v. Abderrahman, No. 10-CV-3641 CBA LB, 2014 WL 1276570, at *2 (E.D.N.Y. Mar. 25, 2014).  The court also stated that it had found no other instances of notaries being held liable under the FDCPA.  Vallecastro, 2014 WL 7185513, at *4.

Affidavit of Service, Guzman has adduced no evidence that the notarization was improper.  To the contrary, the uncontroverted evidence establishes that Mlotok would have had no basis to doubt its veracity.  For example, the Complaint alleges (with regard to the MSH defendants) that "[t]he affidavit of service should, at the very least, have prompted Harris to look further into the validity of service, by, for example, checking MSH's service database to see the other locations Mr. Andino contended to be on the day(s) of putative service as to Mr. Guzman."  Compl. ¶ 49. Here, such an investigation would not have shown any indication of improper service, but rather would have shown a suitable interval of time between the attempted or actual service on Guzman at 1304 Boston Road and the immediately preceding and following services of process by Andino on all three dates that Andino went to 1304 Boston Road:  13 minutes before and 15 minutes after on July 6, 2007, 22 minutes before and 20 minutes after on July 7, and 19 minutes before and 21 minutes after on July 9.  Mlotok Decl. ¶¶ 20-25 & Ex. 2.[8]

Accordingly, there is no basis to hold Mlotok liable under the FDCPA for relying on the facially valid Affidavit of Service he notarized.  See Samserv Mem. at 11 (citing Scott v. Kelkris Assocs., Inc., No. CIV. 2:10-1654 WBS, 2012 WL 996578, at *6 (E.D. Cal. Mar. 23, 2012) (granting defendant's motion for summary judgment on FDCPA claim); Mandelas v. Gordon, 785 F. Supp. 2d 951, 956 (W.D. Wash. 2011)).[9]

---

[8] The reference to a residence rather than a business in the Affidavit of Service would not have been a basis to question the Affidavit of Service, as it was a default value automatically inserted by the software program used to generate affidavits of service.  It was Andino's responsibility to ensure that the information in the affidavits generated by the software was correct.  See Mlotok Supp. Decl. ¶ 6.  It is also uncontroverted that the 1304 Boston Road address, which Samserv got from MSH, was associated with Guzman.  See Samserv Mem. at 6, 11 n.5.

[9] Guzman's citation to Ohlson v. Cadle Co., No. 04 CIV. 3418 DRH/ETB, 2006 WL 721505, at *3 (E.D.N.Y. Mar. 21, 2006), for the proposition that "officers and employees may be 'jointly and severally liable with the agency where they have affirmatively acted,'" Pl. Mem. at 12, is unavailing because the "affirmative act"—unlike Mlotok's mere notarization—must be actionable under the FDCPA.  Moreover, Ohlson involved a motion for leave to amend, not for summary judgment, and that court merely held that the allegations against the individuals "are not futile on their face."  2006 WL 721505, at *3.  Finally, the court in Ohlson only discussed officers and employees of a "debt collecting agency," id., not a process serving company subject to an exemption of liability under the FDCPA.

**C.    The Samserv Defendants Are Not Liable for the
<u>Actions of Andino, an Independent Contractor</u>**

Guzman's entire case rests on his claim that he was intentionally not served with process in the underlying litigation to allow MSH and LRC to enter a default judgment against him.  That claim, in turn, rests entirely on the purported acts or omissions of Andino, who either served Guzman or did not, and who either swore falsely to the Affidavit of Service or did not.  Without citing any authority or evidence, Guzman states that "Samserv is jointly and severally liable for the acts of its agent, Andino, who acted in the course and scope of his agency in (allegedly) serving process."  Pl. Mem. at 12.  However, Guzman has adduced no evidence that supports holding the Samserv Defendants liable for Andino's acts or omissions.[10]

As set forth in detail in Defendants LR Credit 13's Memorandum of Law in Support of Its Motion for Summary Judgment ("LRC Mem.") (ECF 186), "to be liable for the actions of another, the principal must exercise control over the conduct or activities of the agent."  <u>Clark v. Capital Credit & Collection Servs., Inc.</u>, 460 F.3d 1162, 1173 (9th Cir. 2006) (internal quotation marks omitted).[11]  Here, while the Complaint alleges that Andino "worked for" Samserv, Compl. ¶ 12, the undisputed evidence shows that Andino was nothing more than an independent contractor over whom Samserv did not exercise the requisite degree of control.  <u>See</u> Samserv Mem. at 14-15; Mlotok Decl. ¶¶ 8-9.

---

[10] Guzman asserts that "Andino, by defaulting in this action, has admitted the allegations of sewer service made against him in the complaint."  Pl. Mem. at 12.  Any such admission by Andino is not binding on the Samserv Defendants.  <u>See</u> <u>The Mary</u>, 13 U.S. 126, 143 (1815) ("[A] fact, not controverted by one party, who does not appear, and therefore as to him taken for confessed, ought not, on that implied admission, to be brought to hear upon another who *does* appear, does controvert, and does disprove it . . . . A judgment against one Defendant for the want of a plea, or a decree against one Defendant for want of an answer, does not prevent any other Defendant from contesting, so far as respects himself, the very fact which is admitted by the absent party."); <u>Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty, Ltd.</u>, No. CV 06-0356 (FB)(JO), 2006 WL 1720442, at *4 (E.D.N.Y. June 22, 2006) ("A party cannot use a default judgment issued against one adversary collaterally against another.").

[11] The Samserv Defendants incorporate by reference the authorities cited in Points I and III of the LRC Mem. concerning the law of agency.

These undisputed facts place this case on all fours with In re Paragon Process Service, Inc., 477 N.Y.S.2d 1009 (3d Dep't 1984), in which the Appellate Division determined that there was not even a rational basis for finding that individual process servers were employees of the process serving agency.  See Samserv Mem. at 15.  Accordingly, there is no basis for holding the Samserv Defendants liable for any act or omission of Andino, an independent contractor over whom Samserv exerted no legal control.[12]

**D.     There Is No Evidence That the Samserv Defendants
Fall Under the FDCPA's Definition of Debt Collector**

The FDCPA defines "debt collector" as follows:

The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . .

15 U.S.C. § 1692a(6).  Guzman bears the burden of proving that both Samserv and Mlotok are debt collectors, see Sluys v. Hand, 831 F. Supp. 321, 326 (S.D.N.Y. 1993) (plaintiff bears "burden of showing that defendant regularly collected or attempted to collect debts and hence was a 'debt collector' under the Act's definition"), but has not done so.[13]

The FDCPA also provides that the term "debt collector" does not include, inter alia, "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt."  15 U.S.C. § 1692a(6)(D).  Under this "process server exemption," "process servers whose involvement is merely limited to serving the [debt collection] communication on the consumer—in effect, to being messengers—are exempt" from the definition of debt collector.  Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, 423

---

[12] For these same reasons (and for many other reasons), Samserv cannot be held responsible for the myriad supposed issues raised by Guzman with regard to other independent contractor process servers that Samserv engaged.

[13] Guzman does not claim that the principal purpose of Samserv's business is debt collection.  See Pl. Mem. at 11.

(S.D.N.Y. 2010) (internal quotation marks omitted).  While, under some circumstances, a process server "who goes beyond being merely being a messenger . . . and engages in prohibited abusive or harassing activities to force an individual to repay a debt cannot claim the exemption's protections," id. (internal quotation marks omitted), Guzman has not met his burden of establishing by competent evidence that the Samserv Defendants regularly, at a relevant time, engaged in the activities that would make the process server exemption inapplicable.

Specifically, as he acknowledges in his motion, Guzman must establish that the Samserv Defendants regularly engaged in so-called sewer service, "which is defined as failing to serve a debtor and filing a fraudulent affidavit attesting to service so that when the debtor later fails to appear in court, a default judgment is entered against him."  Briscoe v. Cohen, McNeile & Pappas, P.C., No. 14-2146-DDC-KGG, 2014 WL 4954600, at *4 (D. Kan. Oct. 1, 2014) (internal quotation marks omitted).  While Guzman states that he "need only show that the process servers [Samserv] uses 'regularly' execute false affidavit [sic] of service," Pl. Mem. at 11, he has not adduced competent evidence sufficient to make such a showing.

Guzman's reliance on the allegations of the class action complaint in Sykes is unavailing because, among other things, the Sykes case settled before the truth or falsity of those allegations was adjudicated.  See Sykes v. Mel Harris & Assocs., LLC, No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *6, *13 (S.D.N.Y. May 24, 2016) (stating that nothing in the order approving settlement "shall be deemed to be an admission of any wrongdoing on the part of any of the Defendants" and that "[a] trial on the merits of the claims in this Action would involve significant risks for Lead Plaintiffs (and Class Members) as to both liability and damages").[14]

---

[14] Contrary to Guzman's assertion, the Sykes court did not "[hold] that Samserv was not entitled to the process server exemption."  Pl. Mem. at 10.  Rather, the court merely stated that, at the pleading stage, the Sykes class action complaint stated a claim based on the Samserv Defendants' "alleged failure to serve plaintiffs process and provision
*(cont'd)*

Moreover, none of the "evidence" from <u>Sykes</u> on which Guzman relies is competent or admissible on this motion to prove that any of the discrepancies noted therein actually constituted sewer service. The factual and legal infirmities of this "evidence" are set forth above, in the Mlotok's Supplemental Declaration, in the Samserv Defendants' Counter 56.1 Statement, and in Point I of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("LRC Opp."), which is incorporated by reference.[15]

In addition, this Court has already considered and rejected Guzman's attempt to obtain from the Samserv Defendants the class certification discovery in <u>Sykes</u>, including Egleson's declaration and the database he analyzed. Magistrate Judge Ellis denied both of Guzman's attempts to conduct broad, class-wide discovery sprawling over years and delving into issues with marginal relevance, if any, to Guzman's individual claim. <u>See</u> ECF 88, 170. Magistrate Judge Ellis denied the discovery on the grounds of disproportionality, which includes a weighing of various aspects of relevance as well as burden. <u>See</u> Fed. R. Civ. P. 26(b)(1).

On December 15, 2016, this Court upheld the first of Magistrate Judge Ellis's denials (Guzman did not challenge the second). <u>See</u> ECF 103. Critically, Guzman argued to this Court that he wanted the class-wide discovery to "demonstrate that Samserv regularly fails to serve process to overcome Samserv's defense that it is entitled to the process server exemption from the definition of 'debt collector.'" Plaintiff's Reply to Defendant's Opposition to Plaintiff's

---

of perjured affidavits of service" and noted that, in a class action context, "[o]n these facts, their conduct <u>would be</u> actionable under the FDCPA" if proven. <u>Sykes</u>, 757 F. Supp. 3d at 423 (emphasis added). Guzman has not proven these facts here, and certainly not as they would apply to his individual claim. Manifestly, while acts taking place between 2007 and 2011 could arguably relate to issues raised in a class action complaint seeking redress for acts spanning the 2007-2011 timeframe, such an analysis is not applicable here because Guzman can only allege a violation by Samserv in July 2007 alone. His proof must conform to that allegation but such proof is lacking.

[15] For example, as set forth above, even if admissible, the Egleson declaration is insufficient to show a regular policy of sewer service as opposed to mere data entry errors, and contemporaneous evidence shows that the process server criticized by non-expert Schwartz was, in fact, where he claimed to have been when he claimed to have been there.

Partial Objection to Magistrate Ruling Denying Motion to Compel (ECF 102) at 5, 7.[16]  This Court nonetheless rejected Guzman's argument, ruling that the material Guzman sought (and which he references in dozens of paragraphs in his 56.1 statement, was of "speculative relevance to Plaintiff's individual claim."  ECF 103 at 1.

Guzman's attempt to get around this Court's ruling by pointing to a discovery ruling by Magistrate Judge Scanlon in Bueno v. LR Credit 18, LLC, No. 16 Civ. 4737 (WFK)(VMS), 2017 WL 2712885 (E.D.N.Y. June 6, 2017), is unavailing.  In Bueno, the court denied the plaintiff's request for broad multi-year discovery, and instead limited the discovery to a one-year period before the service at issue.  See id. at *3.  The Bueno decision thus supports the Samserv Defendants' position—and this Court's prior ruling—concerning the immaterial nature of broad, class-wide information from Sykes relating to a multi-year period after the service on Guzman.

Crucially, the Bueno decision limited even this scope of discovery to events that preceded the date at issue there—i.e., April 2009.  In tailoring the discovery to time before the service of process in that case, the court in Bueno demonstrated that the relevant period of inquiry as to whether a process service agency should remain exempt must be at and before the time of the particular service of process.  This, of course, makes abundant sense, as it defies logic that if a process serving company at one time might be subject to the FDCPA for its activities, that this determination will be applied without limit to any of its past and future activities.  The relevant inquiry must be only at the time in question and some period before that time—and the touchstone here must be July 2007 and beforehand.[17]

---

[16] Guzman did not claim that the Sykes evidence was the only way for him to prove his claim; just that it was the "most efficient."  See ECF 102 at 5.  Guzman did not attempt to take any other discovery in this regard, and thus has no one to blame but himself for his failure to develop evidence of the alleged "regular" "sewer service."

[17]  That is not to say that evidence pre-dating July 2007 would automatically be admissible.  Admissible evidence, at minimum, must reasonably relate to this incident.  However, evidence that post-dates July 2007 is too immaterial (cont'd)

In addition, the <u>Bueno</u> court did not state that "the standard for 'regularly' collecting debts is . . . substantially lower than the 'principle purpose' standard."  Pl. Mem. at 11.  To the contrary, the <u>Bueno</u> court (which considered a discovery dispute, not a motion addressing the substance of Bueno's claim), recognized the analysis is far more complex than Guzman claims:

> The Second Circuit has held that "the absolute number of debt collection communications issued, and/or collection-related litigation matters pursued, over the relevant period(s)" and the "frequency of such communications and/or litigation activity, including whether any patterns of such activity are discernable" are among the most important factors for courts to consider in determining regularity.

<u>Bueno</u>, 2017 WL 2712885, at *2 (quoting <u>Goldstein v. Hutton, Ingram, Yuzek, Carroll & Bertolotti</u>, 374 F. 3d 56, 62 (2d Cir. 2004)).

Guzman's own reliance on <u>Goldstein</u>, <u>see</u> Pl. Mem. at 11, is misplaced, because that case involved a law firm defendant rather than process servers, which are protected by a statutory exemption from FDCPA liability.  Thus, the court in <u>Goldstein</u> need not have examined each of the multiple alleged actions by the defendants to determine whether they collectively caused the defendant to lose the protection of an exemption to the FDCPA.  Moreover, as Guzman notes, the <u>Goldstein</u> court did not hold that the defendant was a debt collector as a matter of law, but rather held that it was an issue of fact.  <u>See Goldstein</u>, 374 F.3d at 62-63; <u>see also</u> Pl. Mem. at 11 (allegations in <u>Goldstein</u> were "sufficient to raise a fact question").

Finally, because the gravamen of Guzman's claims against the Samserv Defendants—repeated as a mantra by Guzman in his Complaint—is that they colluded with LRC and MSH as part of a "policy" carried out by a "joint venture" to "regularly" file false affidavits of service, those claim require a higher degree of proof.  Specifically, as the court held in <u>Bowens v. LR Credit 10, LLC</u>, No. 07-CV-459S, 2011 WL 6208303, at *5 (W.D.N.Y. Dec. 14, 2011),

_____

and unduly prejudicial to be admissible as to any issue in this individual action as to the Samserv Defendants.

collusion is an intentional act, and thus requires proof of intent to collude, even though proof of intent might otherwise not be necessary under the FDCPA.

Here, there is absolutely no evidence of any collusion, "policy," or "joint venture." Rather, with regard to Guzman specifically, there is at most arguable evidence of ineffective service, as set forth below, and with respect to other services of process there is nothing more than alleged discrepancies in process serving records.  Tellingly, the process server who was deposed in <u>Sykes</u> and whose transcript Guzman cites on this motion, Benjamin Lamb, did not testify that he was instructed or otherwise told to engage in sewer service.  To the contrary, he testified that Samserv instructed him to effect service of process correctly.  <u>See</u> Keshavarz Decl. Ex. U at 26-27.  Guzman brings no evidence to meet his burden and his motion for summary judgment must therefore fail.  <u>See</u> <u>Bowens</u>, 2011 WL 6208303, at *6-7 (granting summary judgment to process server based on lack of evidence of collusion).

**E.     Regardless of Whether the Samserv Defendants are Debt Collectors, Guzman Has <u>Not Met His Burden of Showing That the Service on Guzman Was "Sewer Service"</u>**

With or without the Egleson Declaration and its reliance on speculation and unfounded observations, and with or without <u>Sykes</u>, Guzman still bears the burden of proving that he personally was on the receiving end of a specific FDCPA violation by the Samserv Defendants. He cannot prove that he was the victim of "sewer service" by pointing to one, two, ten, or 1,000 other instances of supposed sewer service on others.  He must prove that the service *on him* – the only instance of service at issue in this case – constituted an FDCPA violation.

Guzman has not and cannot meet that burden on this motion because there is no evidence that the service on him was sewer service.[18]  To the contrary, uncontroverted evidence proves

---

[18] The Complaint alleges that "[i]n the case at bar, Andino stated (falsely) that he exercised due diligence to attempt service on Mr. Guzman at the (incorrect) address 1304 Boston on: '07/06/2007, 9:00 am 07/07/2007 3:12 pm, *(cont'd)*

that the service on Guzman was <u>not</u> sewer service, because the 1304 Boston Road address was associated with Guzman.  <u>See</u> Samserv Mem. at 6, 11 n.5.  And, as set forth above, the reference to "residence" on the Affidavit of Service was a default value by a computer program, which is tantamount to a clerical error by Andino.[19]

At most, therefore, Guzman has established that Andino served him at an address that was not his then-current residence address.  While this might render the service of process ineffective, it does not meet Guzman's burden of proving an FDCPA violation because it is well established that service of process that turns out to be ineffective does not rise to the level of "sewer service," and thus does not constitute an FDCPA violation—even if the ineffective service ultimately results in a default judgment being vacated.  <u>See, e.g.</u>, <u>Thurow v. Prof'l Fin. Co.</u>, No. 16-CV-02000-KLM, 2017 WL 2864936, at *3-4 (D. Colo. July 5, 2017); <u>Briscoe</u>, 2014 WL 4954600, at *4-9.

In <u>Thurow</u>, a case decided just last month, Thurow claimed that he was purportedly served in 2012 at an address at which he has not lived since 2006.  A default judgment entered against him was vacated once he proved that he had not resided there at the time of service.  2017 WL 2864936, at *1-2.  Thurow alleged that the defendant knew or should have known that the address was incorrect because Thurow was included in Colorado's Sex Offender Registry, which listed his current address.  <u>Id.</u> at *2.

The <u>Thurow</u> court held that the ineffective service did not constitute an FDCPA violation absent an allegation that the defendant actually knew that the service address was incorrect:

---

07/09/2007 8:59am and having verified the Private Residence with MR. RIVERA.'  These statements are false.  Mr. Guzman did not reside at 1304 Boston in 2007, and does not know Mr. Rivera."  Compl. ¶ 41 (citation omitted).

[19] There is no allegation or evidence that the Samserv Defendants were involved in the decision not to go forward with the traverse hearing concerning the service on Guzman.  <u>See</u> Compl. ¶¶ 57, 65.  Had such a hearing been held, these facts no doubt would have come to light.

> In this case, Plaintiff conclusorily alleges that Defendant knew *or should have known* that Plaintiff had previously but no longer resided at the service address through internet searches, and that Defendant knew *or should have known* that Plaintiff is included in Colorado's Sex Offender Registry, which contains his current address and physical description.  However, Plaintiff fails to link this allegedly publically available information to knowing actions taken by Defendant, thus failing to allege that Defendant did anything other than make an honest mistake.  <u>No court has held that debt collectors are liable under the FDCPA for honest mistakes</u>.  Pursuant to *Briscoe*, even when there is evidence that the service address is incorrect, the debtor must allege that the debt collector failed to serve the debtor and filed a fraudulent affidavit attesting to service <u>for the purpose of receiving a default judgment against the debtor</u> . . . . [F]ailing to allege that Defendant actually knew that the service address was incorrect is a failure to sufficiently allege a violation of the FDCPA based on ineffective service.

<u>Id.</u> at *4 (emphasis added; citations and footnote omitted; italics in original).

In <u>Briscoe</u>, similarly, the plaintiff alleged that the defendants served him at an address at which he had never lived.  <u>Briscoe</u>, 2014 WL 4954600, at *1.  A default judgment was entered against him and his wages were garnished.  <u>Id.</u> at *2.  The court dismissed an FDCPA claim based on the ineffective service, noting that Briscoe "fail[ed] to provide the Court with any legal authority to support his argument that defendant's failure to serve him at the correct address in a debt collection action is sufficient to state a claim" under the FDCPA.  <u>Id.</u> at *4.

Guzman's case is even weaker than the plaintiffs' claims in <u>Thurow</u> and <u>Briscoe</u>.  Guzman has not adduced any evidence that Samserv or Mlotok (as opposed to Andino) knew, or even should have known, that Guzman did not reside at 1304 Boston Road in July 2007, and neither the Complaint nor the proposed Amended Complaint even allege that they knew or should have known he did not reside there.  Rather, throughout this litigation, Guzman has merely asserted that he did not live there.  While that might have been sufficient to vacate the default judgment against him, it is not enough to prove a violation of the FDCPA:

> The failure to serve plaintiff at the correct address rendered the judgment null. . . . But these allegations do not state claim under the FDCPA for engaging in harassing, oppressive or abusive conduct in violation of 15 U.S.C. § 1692d, using false, deceptive or misleading representations or means in violation of 15 U.S.C. §

1692e, or using unfair or unconscionable means in violation of 15 U.S.C. § 1692f.

Briscoe, 2014 WL 4954600, at *7 (footnote omitted); see also Samserv Mem. at 19-20 (citing

Pierce v. Steven T. Rosso, P.A., No. CIV. 01-1244 DSDJMM, 2001 WL 34624006, at *2 (D.

Minn. Dec. 21, 2001); Garcia v. Fry, 186 F. Supp. 3d 228, 233 (D. Conn. 2016); Keylard v.

Mueller Anderson, P.C., No. 13 C 2468, 2013 WL 4501446, at *3 (N.D. Ill. Aug. 22, 2013);

Bowens, 2011 WL 6208303, at *6; Dillon v. Riffel-Kuhlmann, 574 F. Supp. 2d 1221, 1223 (D.

Kan. 2008)).[20]

**F.   Guzman Is Not Entitled to Summary Judgment on His GBL § 349 Claim**

Guzman is in not entitled to summary judgment on his GBL § 349 claim because, as set

forth in Point III of the LRC Mem. and in Point VI of the LRC Opp. and incorporated by

reference, he has not adduced any evidence of consumer-oriented conduct.

## CONCLUSION

For the forgoing reasons, Guzman's motion should be denied.

Dated:  New York, New York
        August 9, 2017

                                           s/Jeffrey S. Lichtman
                                           Jeffrey S. Lichtman
                                           Andrew C. Levitt
                                           O'HARE PARNAGIAN LLP
                                           82 Wall Street, Suite 300
                                           New York, NY 10005
                                           (212) 425-1401
                                           jlichtman@ohareparnagian.com
                                           alevitt@ohareparnagian.com

                                           *Attorneys for the Samserv Defendants*

---

[20] To the extent that service on Guzman is deemed to have violated the FDCPA, the evidence shows that it resulted from a bona fide error.  See 15 U.S.C. § 1692k(c) ("A debt collector may not be held liable in any action brought under [the FDCPA] if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.").  As noted, the 1304 Boston Road address was associated with Guzman, see Samserv Mem. at 6, 11 n.5, and Samserv has maintained policies and procedures to minimize the potential for improper service.  See Mlotok Decl. ¶¶ 29-31.  The Samserv Defendants respectfully refer the Court to the authorities cited in Point II of the LRC Memorandum, incorporated herein by reference, as to this issue, for a more fulsome recitation of the law concerning the bona fide error defense.