UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| JOSE GUZMAN, | : No. 16-cv-03499 (GBD)(RLE) |
| | : |
| Plaintiff, | : |
| | : **COUNTER RULE 56.1** |
| - against - | : **STATEMENT** |
| | : **OF DEFENDANTS** |
| MEL S. HARRIS AND ASSOCIATES, LLC, et al., | : **SAMSERV, INC. AND** |
| | : **WILLIAM MLOTOK** |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Pursuant to Local Civil Rule 56.1, Defendants Samserv, Inc. ("Samserv") and William

Mlotok ("Mlotok") (collectively the "Samserv Defendants") submit this Counter Statement of

Material Facts in support of its motion for summary judgment:

In incorporating responses to Plaintiff's Rule 56.1 Statement of Material Facts asserted

by LR Credit 13, LLC into the responses of the Samserv Defendants, the Samserv Defendants

assert each objection by LRC as if asserted by the Samserv Defendants.

1.      Defendant LR Credit 13, LLC ("LRC") is a limited liability corporation

organized  under the laws of the State of New York. *See Keshavarz Decl.* [Exhibit A,

Articles of  Organization of LR Credit 13, LLC; Exhibit B, March 10, 2017 Deposition

Transcript of Rocco  Nittoli, the Corporate Representative of LRC (hereinafter "Nittoli

Trns."), 18:06-17; Exhibit C,  Operating Agreement of LR Credit 13, LLC (hereinafter

"Operating Agreement"), ¶ 3 ("The  Company is formed . . . for the sole purpose of

investing in a portfolio of New York State  Domiciled defaulted consumer indebtedness.")

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

2.          The sole purpose of LRC is to purchase portfolios of charged of consumer debts, and collection lawsuits are filed in the name of LRC to collect on those putative debts. *See  Keshavarz Decl.* [Exhibit A, Articles of Organization of LR Credit 13, LLC; Exhibit B, Nittoli  Trns., 18:06-17; Exhibit C, Operating Agreement, ¶ 3 ("The Company is formed . . . for the sole  purpose of investing in a portfolio of New York State Domiciled defaulted  consumer  indebtedness.")].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

3.          LRC uses instrumentalities of interstate commerce in its business. *See Keshavarz Decl.* [Exhibit D, Military Status Report from Department of Defense Manpower Data Center in  Arlington, VA; Exhibit E, March 15, 2017 Deposition Transcript of William Mlotok ("Mlotok Trns") at 143:03-16 (mailing copy of summons and complaint); June 29,  2015  Information  Subpoena sent by MSH on behalf of LRC ("June 29, 2015 Information Subpoena")].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

4.          Defendant Samserv, Inc. ("Samserv"), a process serving agency, is a domestic business  corporation organized under the laws of the State of New York. *See Keshavarz Decl.* [Exhibit F,  Certificate of Assumed Name of Samserv, Inc.].

**RESPONSE:**          **Admitted.**

5.        Defendant William Mlotok is the owner of Samserv and is the chief executive officer, manager, and decision maker at Samserv. *See Keshavarz Decl.* [Exhibit E, Mlotok Trns, at 23:19-22; *passim*].

**RESPONSE: Admit that William Mlotok is the owner of Samserv, Inc. and is its President. The Samserv Defendants object to the remainder of this paragraph as the sources cited do not evidence that Mr. Mlotok is the "chief executive officer," "manager" or "decision maker," which is an undefined term and not related to any particular decision or set of decisions.**

6.        Samserv uses instrumentalities of interstate commerce in its business. *See Keshavarz Decl.* [Exhibit E, Mlotok Trns.at 143:03-16; Exhibit AA, Affidavit of Service in Guzman collection case (mailing copy of summons and complaint)].

**RESPONSE:          Samserv uses the United States mails in connection with its business of serving process.**

7.        LRC is a wholly owned subsidiary of proposed Defendant LR Credit, LLC ("LR Credit"). *See Keshavarz Decl.* [Exhibit C, Operating Agreement].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

8.        LR Credit was formed in 2003 through a joint venture agreement between proposed Defendants Rushmore Recovery Management, LLC ("Rushmore") and L-Credit, LLC ("L- Credit"). *See Keshavarz Decl.* [Exhibit G, Joint Venture and Limited Liability

Agreement of LR Credit, LLC ("Joint Venture Agreement")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

9.      L-Credit is a subsidiary of Leucadia National Corporation ("Leucadia"). *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 16:17-24; 17:16-20].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

10.     Leucadia, through a wholly owned subsidiary, has a 90% interest in L-Credit. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 16:17-24; 17:16-20].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

11.     LR Credit created a series of wholly owned subsidiaries to hold consumer debts. *See  Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 18:06-22; Exhibit C, Operating Agreement].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

12.     LRC is a subsidiary company created by LR Credit for the sole purpose of holding and collecting on defaulted consumer debts. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 18:06-  22; Exhibit C, Operating Agreement].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

13.      Under the 2003 joint venture agreement between L-Credit and Rushmore, Rushmore is to  identify portfolios of defaulted consumer debts for possible purchase, and bring them to L-Credit  for approval. *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

14.      Should L-Credit agree to invest in a portfolio proposed by Rushmore, L-Credit would  generally provide 95% of the capital to purchase the portfolio, and Rushmore would provide the  remaining 5%.  *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

15.      Leucadia provides the capital to fund L-Credit's share of the purchase price for the  defaulted consumer debt portfolios that LRC purchases. *See Keshavarz Decl.* [Exhibit B, Nittoli  Trns.at 10:21-25].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

16.     Leucadia has assets of $40 billion. *See Keshavarz Decl.* [Exhibit H, LRC's May 31, 2017  Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at p. 23, note 18].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

17.     The Joint Venture Agreement further provides that "Rushmore will provide personnel to  the joint venture to enable the LLC and any Subco to  provide day-to-day management and  servicing of the Portfolios, including the services of David Waldman and Kerry Lutz who have  significant management responsibility over Rushmore." *See Keshavarz Decl.* [Exhibit G, Joint  Venture Agreement at ¶2.02].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

18.     Rushmore's role at LR Credit is to identify portfolios of consumer debts for possible  purchase. *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b)].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

19.     Rushmore's role is also to manage the collection efforts of LRC and its subsidiaries. *See  Keshavarz Decl.* [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

20.      Rushmore is both a member and an agent of LR Credit. *See Keshavarz Decl.* [Exhibit G,  Joint Venture Agreement at ¶ 7.03(b)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

21.      Rushmore is an agent of LRC. *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement  at ¶ 7.03(b)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

22.      LR Credit hired former Defendant Mel S. Harris and Associates, LLC ("MSH") to collect  the defaulted consumer debts through litigation and other means on behalf of LR Credit and its subsidiaries. *See Keshavarz Decl.* [Exhibit I, Agreement for Legal Collection  Service  ("Collection Agreement")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

23.      The principles of Rushmore, including Defendant, are the partners and Executive Director of MSH. *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement at ¶ 7.03(b)]

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

24.    LRC and LR Credit hired MSH at a rate that was lower than the standard industry rate for comparable work. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 62:11-25; Exhibit I, Collection Agreement].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

25.    Rushmore's role in the joint venture was to oversee the day to day collection activities of LR Credit and its subsidiaries, including LRC. *See Keshavarz Decl.* [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b); Exhibit B, Nittoli Trns.at 96:24-97:05].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

26.    LRC and L-Credit had the authority to supervise the collection activities of MSH. *See Keshavarz Decl.* [Exhibit I, Collection Agreement].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

27.    Samserv regularly used a process server named Nasser Atrash to serve summons and complaints. *See Keshavarz Decl.* [Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.]

**RESPONSE:**      **From time to time, including in 2011 (as indicated in Exhibit J), Samserv retained the services of Nasser Atrash to serve process, including summonses and complaints.  The Samserv Defendants object to the term "regularly" as vague and as a legal conclusion.  The Samserv Defendants further object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to a process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.**

28.     On January 28, 2014, an Administrative Law Judge for the Department of Consumer Affairs ("DCA") issued an order revoking Mr. Atrash's process server license and finding that  Mr. Atrash executed false affidavits of service on five occasions. *See Keshavarz Decl.* [Exhibit  K, New York City Department of Consumer Affairs Decision and Order revoking Nasser  Atrash's process server license ("DCA Decision Revoking Atrash license")].

**RESPONSE:**      **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  Further, the Samserv Defendants object on the ground that the subjects of this document have no relationship on its face to the Samserv Defendants and do not relate in any way to any**

**allegation in this complaint.  Moreover, the documents referenced are inadmissible as they lack proper foundation and authentication and are incomplete, among other evidentiary infirmities.**

**Specifically, Exhibit K does not include a January 28, 2014 order and reference to any such order is without foundation and constitutes multiple hearsay.  Rather, Exhibit K only includes limited aspects that apparently concern an appeal of a purported order whose terms are not stated and Exhibit K is not evidence of any such fact as posited here by Plaintiff.**

29.    The DCA further found that Mr. Atrash had repeatedly failed to log service attempts, in violation of DCA rules. *See Keshavarz Decl.* [Exhibit K, DCA Decision Revoking Atrash  license].

**RESPONSE:        See Response and Objections to number 28, which is incorporated by reference as if set forth in full herein.**

30.    The DCA further found that Mr. Atrash repeatedly failed to inform the DCA of traverse  hearings that had been scheduled in cases for which Mr. Atrash allegedly served process. *See  Keshavarz Decl.* [Exhibit K, DCA Decision Revoking Atrash license].

**RESPONSE:        See Response and Objections to number 28, which is incorporated by reference as if set forth in full herein.**

31.    On March 24, 2010, Mr. Atrash swore to having served twenty-two defendants in four  hours and forty-two minutes. *See Keshavarz Decl.* [Exhibit L, September 17, 2010 Affidavit of  Jeffrey A Schwartz, Esq. ("Schwartz Affidavit"), ¶ 7].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an**

10

independent contractor process server other than Mr. Andino and refers to occurrences

apparently taking place after the time period at issue in this matter (July 2007), which

have no relevance or probative value to issues pertaining to role of Samserv in this action

or facts at issue vis-à-vis the Samserv Defendants.  Further, the documents referenced are

inadmissible as they lack proper foundation and authentication and are incomplete and

constitute hearsay and double hearsay, among other evidentiary infirmities.

Specifically, the Samserv Defendants deny this allegation as it is based on a

hearsay affidavit that relies on Google Maps without any foundation for its reliability or

applicability.  The Samserv Defendants object to this paragraph as it lacks foundation

and constitutes hearsay.  Plaintiff provides no foundation for Google Maps determining

any "minimum" travel time.  Moreover, the affiant who authored this exhibit (who is a

stranger to this litigation) apparently consulted Google Maps in 2010.  Thus, because

Google Maps is reputed to calculate traffic conditions that existed at the time it is

consulted, there is no foundation that the Google Map printout that is reflected in this

exhibit bear any relationship to the traffic conditions, speed limits, or roadway conditions

or travel times that existed on the during the actual date and time that the travel was

actually undertaken.  In addition, the times listed in the affidavit of service and the

records of Samserv are approximate.  See Supplemental Declaration of William Mlotok at

¶ 5.

Furthermore, contemporary documentary evidence proves that Mr. Al-Atrash

visited the various locations mentioned in the affidavits.  As stated in the Supplemental

Declaration of William Mlotok, Samserv retained photographic evidence of nearly all of

those services of process, nearly all of which bears a time and date stamp showing when

11

the picture was taken, and many of which are accompanied by information as to the GPS
location at which each photograph was taken. (See Supplemental Declaration of William
Mlotok at ¶ 7 and Exhibit B thereto.).  This corroborates not only that Mr. Al-Atrash
served process at each of those locations but also shows the hollowness of Plaintiff's
conjecture that his one-sided, unreliable hearsay seeks to support. Plaintiff's argument
on "impossible travel times" must fail factually, as here, and legally, as premised on
unreliable and inadmissible evidence.

32.     In order to serve the twenty-two defendants on March 24, 2010, Mr. Atrash would

have  to have travelled roughly 84.7 miles. *See Keshavarz Decl.* [Exhibit L, Schwartz

Affidavit, ¶ 7].

**RESPONSE:          See Response and Objections to number 31, which is incorporated by**

**reference as if set forth in full herein.**

33.     Mr. Atrash claims that he spoke with individuals at each of the twenty-two residences

he  visited during this time. *See Keshavarz Decl.* [Exhibit L, Schwartz Affidavit, ¶ 7].

**RESPONSE:          The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor a process server other than Mr. Andino and refers to occurrences**

**apparently taking place after the time period at issue in this matter (July 2007), which**

**have no relevance or probative value to issues pertaining to the role of the Samserv**

**Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no**

**foundation laid for the documents that form the basis for this purported fact, which**

**constitutes hearsay and hearsay within hearsay.**

34.     On March 30, 2010, Mr. Atrash claims to have served six defendants in three hours

and  twelve minutes. *See Keshavarz Decl.* [Exhibit L, Schwartz Affidavit, ¶ 7].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  Further, the "fact" requires expert testimony or proper foundation, both of which are lacking.  The affiant who is the source of this statement has not been named as an expert and has submitted no report, and the foundation is totally lacking for the assertion proffered by Plaintiff.    The Samserv Defendants admit that the contents of the affidavits are the content of the affidavits.**

35.        To serve the six individuals on March 30, 2010, Mr. Atrash would have to have travelled roughly 74.4 miles. See Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7]

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.**

        **Specifically, the Samserv Defendants deny this allegation as it is based on a hearsay affidavit that relies on Google Maps without any foundation for its reliability or**

13

applicability.  Plaintiff provides no foundation for Google Maps determining any "minimum" travel time.  Moreover, the affiant who authored this exhibit (who is a stranger to this litigation) apparently consulted Google Maps in 2010.  Thus, because Google Maps is reputed to calculate traffic conditions that existed at the time it is consulted, there is no foundation that the Google Maps printout that is reflected in this exhibit bear any relationship to the traffic conditions, speed limits, roadway conditions or travel times that existed on the during the actual date and time that the travel was actually undertaken.  In addition, the times listed in the affidavit of service and the records of Samserv are approximate.  See Supplemental Declaration of William Mlotok at ¶ 5.

Furthermore, contemporary documentary evidence proves that Mr. Al-Atrash visited the various locations mentioned in the affidavits.  As stated in the Supplemental Declaration of William Mlotok, Samserv retained photographic evidence of nearly all of those services of process, nearly all of which bear a time and date stamp showing when the picture was taken, and many of which is accompanied by information as to the GPS location at which each photograph was taken. (See Supplemental Declaration of William Mlotok at ¶ 7 and Exhibit B thereto.).  This corroborates not only that Mr. Al-Atrash served process at each of those locations but also shows the hollowness of Plaintiff's conjecture that his one-sided, unreliable hearsay seeks to support. Plaintiff's argument on "impossible travel times" must fail factually, as here, and legally, as premised on unreliable and inadmissible evidence.

36.     It was raining on March 30, 2010. *See Keshavarz Decl.* [Exhibit L, Schwartz Affidavit, ¶  7].

14

**RESPONSE:**        **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to a process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  Further, the "fact" requires expert testimony or proper foundation, both of which are lacking.  The affiant who is the source of this statement has not been named as an expert and has submitted no report, and the foundation is totally lacking for the assertion proffered by Plaintiff.**

   **Specifically, this paragraph does not identify the location where it purportedly was raining.  Exhibit L only purports to describe weather conditions in Shirley, NY, but the services of process at issue and effected by Mr. Al-Atrash included many other locations on Long Island that are not in Shirley, such as Smithtown, Coram, and Farmingville.  Plaintiff lays no foundation for the reliability of Google Maps and no foundation that the weather he purports to be relevant to the service of process he takes issue was in fact the weather condition in the locations of service at the time of service.**

37.    In sixty-three of sixty-five affidavits of service analyzed by Mr. Schwartz, Mr. Atrash  claimed that that defendant was not home. *See Keshavarz Decl.* [Exhibit L, Schwartz Affidavit, ¶  7].

**RESPONSE:**        **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which**

**have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.  The Samserv Defendants admit that the contents of the affidavits are the contents of the affidavits.**

38.     Yet, in none of the cases was the home empty, requiring "nail and mail" service. *See  Keshavarz Decl.* [Exhibit L, Schwartz Affidavit, ¶ 7].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to Samserv's role in this action or facts at issue vis-à-vis Samserv.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.**

**Specifically, the Samserv Defendants admit that the contents of the affidavits are the contents of the affidavits.  Further, the Samserv Defendants do not respond to the conclusion of law as to what circumstance would or would not "requir[e] 'nail and mail' service."**

39.     Samserv regularly used a process server named Husam Al-Atrash to serve summons and complaints.  *See Keshavarz Decl.* [Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.]

**RESPONSE:          From time to time, Samserv retained the services of Hussam Al-**

**Atrash to serve process, including summonses and complaints.  The Samserv Defendants object to the term "regularly" as vague and as a legal conclusion.  The Samserv Defendants further object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to a process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  Moreover, Plaintiff's Exhibit J (dated in 2011) does not refer to Husam Al-Atrash.**

40.     On February 3, 2014, Mr. Al-Atrash entered into a consent agreement with the DCA arising from allegations that Mr. Al-Atrash repeatedly failed to log instances of alleged service,  and repeatedly failed to notify the DCA of traverse hearings scheduled in cases for which he  purportedly served process. *See Keshavarz Decl.* [Exhibit M, New York City Department of  Consumer Affairs Notice of Hearing against Husam Al-Atrash; Exhibit N, New  York  City  Department of Consumer Affairs Consent Order with Hasam Al-Atrash].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which**

17

**constitutes hearsay and hearsay within hearsay.  In addition, even if a proper foundation were laid, the consent order does not reflect any finding of wrongdoing and by its terms is a settlement of merely alleged violations.  Moreover, the alleged "violations" are irrelevant to the issues in this case.  Thus, it not relevant, probative or material to any issue in this case.**

41.     Samserv regularly used a process server named Michael Mosquera to serve summons and  complaints. *See Keshavarz Decl.* [Exhibit J, New York City Department of Consumer Affairs  Roster of Process Servers for Samserv, Inc.].

**RESPONSE:          From time to time, Samserv retained the services of Michael Mosquera to serve process, including summonses and complaints.  The Samserv Defendants object to the term "regularly" as vague and as a legal conclusion.  The Samserv Defendants further object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  Moreover, Plaintiff's Exhibit J (dated in 2011) does not refer to Michael Mosquera.**

42.     Mr. Mosquera's process server license was revoked on August 8, 2000 because the DCA  found that Mr. Mosquera lied about serving a summons and complaint on an individual named  Joseph McMahon. *See Keshavarz Decl.* [Exhibit O, New York City Department of Consumer  Affairs decision revoking Michael Mosquera's process server's license].

**RESPONSE:** **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.  The Samserv Defendants admit that the August 8, 2000 decision states what is reflected in Exhibit O.**

43.    Specifically, the DCA Administrative Law Judge found that Mr. Mosquera had committed "the most serious violation a process server can commit," and that "Mr. Mosquera's  action not only injured Mr. McMahon by subjecting him to emotional trauma, embarrassment and inconvenience, it also strikes a serious blow to the fundamentals of due process." *See  Keshavarz Decl.* [Exhibit O, New York City Department of Consumer Affairs decision revoking  Michael Mosquera's process server's license].

**RESPONSE:** **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.  The Samserv Defendants admit that the**

**August 8, 2000 decision states what is reflected in Exhibit O and that the quoted language is part of that decision.**

44.     Although the DCA's decision revoking Mr. Mosquera's process server's license was a matter of public record, Samserv nonetheless chose to use Mr. Mosquera to serve process. *See  Keshavarz Decl.* [Exhibit P, Egleson Affidavit, Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences apparently taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.   There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay. The Department of Consumer Affairs, the agency that licenses process servers in the City of New York, reinstated Mr. Mosquera's license after it was revoked in 2000.   Plaintiff provides no evidence that Samserv engaged Mr. Mosquera when his license was not in force.  Samserv only used Mr. Mosquera as a process server while his license was in force.   See Mlotok Supplement Declaration at ¶ 8.**

45.     In 2009, Ms. Mosquera executed an Assurance of Discontinuance, whereby he settled  allegations of process server misconduct. *See Keshavarz Decl.* [Exhibit Q, Mosquera Assurance   of Discontinuance].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process server other than Mr. Andino and refers to occurrences**

**taking place after the time period at issue in this matter (July 2007), which have no**

**relevance or probative value to issues pertaining to the role of the Samserv Defendants in**

**this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid**

**for the documents that form the basis for this purported fact, which constitutes hearsay**

**and hearsay within hearsay.  In addition, even if a proper foundation were laid, the**

**Assurance of Discontinuance does not reflect any finding of wrongdoing and by its terms**

**is a settlement of merely alleged violations.  Moreover, the alleged "violations" are**

**irrelevant to the issues in this case.  Thus, it not relevant, probative or material to any**

**issue in this case.**

46.     Mr. Mosquera agreed to abide by all rules applicable to process servers and to adhere

to  additional requirements imposed by the DCA. *See Keshavarz Decl.* [Exhibit Q, Mosquera

Assurance of Discontinuance].

**RESPONSE:**        **The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process server other than Mr. Andino and refers to occurrences**

**taking place after the time period at issue in this matter (July 2007), which have no**

**relevance or probative value to issues pertaining to the role of the Samserv Defendants in**

**this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid**

**for the documents that form the basis for this purported fact, which constitutes hearsay**

**and hearsay within hearsay.  In addition, even if a proper foundation were laid, the**

**Assurance of Discontinuance does not reflect any finding of wrongdoing and by its terms**

**is a settlement of merely alleged violations.  Moreover, the alleged "violations" are**

**irrelevant to the issues in this case.  Thus, it not relevant, probative or material to any issue in this case.**

47.      In 2011, the DCA sent a letter informing Mr. Mosquera that it declined to renew his process server license. *See Keshavarz Decl.* [Exhibit R, 2011 DCA Letter Denying Renewal of  Mr. Mosquera's process server license].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.  In addition, even if a proper foundation were laid, the issues raised in the Assurance of Discontinuance are not relevant, probative or material to any issue in this case.  The Samserv Defendants admit that the contents of the letter from the DCA to Mr. Mosquera are the contents of that letter.**

48.      In the letter, the DCA stated that it had determined that Mr. Mosquera had violated the terms of the Assurance of Discontinuance. *See Keshavarz Decl.* [Exhibit R, 2011 DCA Letter  Denying Renewal of Mr. Mosquera's process server license].

**RESPONSE:  See Response and Objection to number 47, which is incorporated by reference as if set forth in full herein.**

49.      Specifically, the DCA found that "[y]our log books remain deficient in that you do not  record the type of service and the full address of the person served. Your also leave blank

spaces  between entries, you frequently fail to describe the door and hallway area when

making conspicuous service, and you do not have a separate entry for previous service

attempts  in  several instances. You also failed to take pictures of many of your conspicuous

place services, as  required under the AOD." *See Keshavarz Decl.* [Exhibit R, 2011 DCA

Letter Denying Renewal  of Mr. Mosquera's process server license].

**RESPONSE:          See the Response and Objections to number 47, which is incorporated
by reference as if set forth in full herein.**

50.      In 2,915 instances between January 2007 and January 2011, Samserv process

servers  claimed to have attempted or completed service before the date that the service was

assigned to  that process server.  *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit ¶ 2, 12].

**RESPONSE:          The Samserv Defendants object to this "fact" as not material or
admissible for numerous reasons, including (but not limited to) that it refers to an
undifferentiated four-year period that overwhelmingly post-dates July 2007, refers to
purported occurrences probably taking place after the time period at issue in this matter
(July 2007).  As such this "fact" has no relevance or probative value to issues pertaining to
role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv
Defendants.**

**          Further, the Samserv Defendants object on the ground that Mr. Egleson, the
source of this "fact," has not been properly named as an expert, has not submitted an
expert report, has not demonstrated any knowledge or experience in connection with
serving of process or the meaning of data he purports to analyze and his methodology has
not been subject to scrutiny under a *Daubert* analysis.  Plaintiff provides no basis to
believe that the IT consultant, who was the affiant of this declaration in a settled class**

23

action matter, is willing and able to testify in this matter or has any background or experience beyond IT matters, if that.  Moreover, the documents referenced are inadmissible as they lack proper foundation and authentication and are incomplete and constitute hearsay, among other evidentiary infirmities.

In addition, Mr. Egleson has not accounted for the well documented occurrence of errors in the course of data entry.  As demonstrated in [the Declaration of William Mlotok, independent contractor process servers would complete handwritten forms describing the particulars of service of process.  A data entry person would then enter the data from that handwritten form into a database for inclusion into an affidavit of service. Thus, two sources of transcription error arise—the first, based on a potential misreading of the handwritten form; the second, upon typing the data for entry into the database. One scholarly article reported, for example, that *650 transcription errors were created for every 10,000 fields (not forms),* when data was entered into a database from a handwritten form, as was done here.  See "Reducing Errors from the Electronic Transcription of Data Collected on Paper Forms:  A Research Data Case Study," J. Am. Med. Inform Assoc., 2008 May-June 15(3) at 2 and n., at

https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2409998/#bib9.  Thus, it is not at all surprising that, in the nearly 60,000 affidavits of service examined by Mr. Egleson that related to services of process on behalf of the Mel Harris firm for cases for Leucadia defendants in the Civil Court of the City of New York, each of which contained fields for date and time of service of process, that approximately 3,900 transcription errors would be made in each of these fields of date and time of service alone.

In addition, Mr. Egleson's declaration and the database he analyzed in the context

24

**of the Sykes class action, was the subject of two separate motions for discovery by**

**Plaintiff.  Magistrate Judge Ellis denied both of Plaintiff's attempts to conduct the broad,**

**class-wide discovery that sprawls over years and into issues with marginal relevance, if**

**any, to Plaintiff's individual claim.  (See Docket Numbers 88 and 170)  Magistrate Judge**

**Ellis denied Plaintiffs recourse to the database on the grounds of disproportionality,**

**which includes a weighing of various aspects of relevance as well as burden.   Fed. R. Civ.**

**P. 26(b)(1).   Furthermore, the Samserv Defendants also hereby refers to and incorporate**

**by reference the arguments regarding the inadmissibility of this declaration set forth in**

**Section I of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's**

**Motion for Summary Judgment.**

51.     In over 100 instances between January 2007 and January 2011, Samserv process servers reported making more than 40 service attempts in a single day. *See Keshavarz Decl.* [Exhibit P,  Egleson Affidavit ¶ 25].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and**

**Objections to paragraph number 50, which is incorporated by reference as if set forth in**

**full herein, with regard to this paragraph as it relates to Egleson and "facts" that**

**purportedly arise from his Declaration in the *Sykes* class action.**

52.     Between January 2007 and January 2011, Samserv process servers were paid between  $6.50 and $10 for each completed service. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit ¶  29].

**RESPONSE:        In 2007, Samserv generally paid independent contractor process**

**servers who served process on behalf of clients of Mel S. Harris & Associates between $6**

**and $10.  [Mlotok Dep. at 146-8.]  The Samserv Defendants refer this Court to their**

**Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action. Mlotok Dep. at 147.**

53.     Between 2007 and 2011, Samserv process servers were only paid for completed service. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit ¶ 30; Exhibit E, Mlotok Trns,

**RESPONSE:   In 2007, Samserv paid independent contractor process servers who served process on behalf of clients of Mel S. Harris & Associates only for completed service of process.  [Mlotok Dep. at __.]  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the Sykes class action.**

54.     On 124 instances between January 2007 and January 2011, Samserv process server Michael Mosquera reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exhibit A].

**RESPONSE:        The Samserv Defendants object to this paragraph as not material or admissible for numerous reasons, including (but not limited to) that it refers to independent contractor process servers other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refer to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections**

26

**to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

55.    On 66 instances between January 2007 and January 2011, Samserv process server Benjamin Lamb reported being at two or more addresses at the same time serving process. *See  Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exhibit A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Mr. Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

56.    In one instance, Mr. Lamb executed an affidavit of service that claimed service had been  made on August 19, 2017 for a case that was not filed until August 25, 2005. *See Keshavarz  Decl.* [Exhibit S, Ecourts record, stamped Summons, Affidavit of Service and Amended  Affidavit of Service in *Rushmore Recoveries X, LLC v. Doris Peralta*, Index No. 39754-05 (Civil  Court County of New York)].

**RESPONSE:        The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process servers other than Mr. Andino) and has no relevance or**

**probative value to issues pertaining to role of the Samserv Defendants in this action or**

**facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants further object**

**on the grounds that the exhibit referred to lacks foundation and constitutes hearsay.  The**

**Samserv Defendants deny that Mr. Lamb's affidavit of service as included as Exhibit S**

**claimed that service of process was made in 2017.  Moreover, even if the process was**

**served before the papers were filed in court, this is not competent evidence that the papers**

**were not served.  Rather, at most, this indicates a simple error of serving papers before**

**filing without any relevance to so-called "sewer service."**

57.     In another instance, the Honorable Ruben Franco, of the Civil Court of the City of

New York, found Mr. Lamb to be a "totally unbelievable" witness and therefore vacated a

default judgment that had been obtained using an affidavit of service executed by Mr.

Lamb. *See  Keshavarz Decl.* [Exhibit T, November 7, 2013 Decision in *Palisades Collection,*

*LLC v. Smith*, Index No. CIV 020105/06 (Civil Court of the City of New York, Bronx

County)].

**RESPONSE:        The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process servers other than Mr. Andino) and has no relevance or**

**probative value to issues pertaining to role of the Samserv Defendants in this action or**

**facts at issue vis-à-vis the Samserv Defendants.  Moreover, the exhibit does not reflect any**

**activity purportedly done on behalf of Samserv.  The Samserv Defendants further object**

**on the grounds that the exhibit has no foundation and constitutes hearsay.  Moreover the**

28

**exhibit referred to was generated in 2013 and was not in existence in July 2007, at the time at issue in this matter.**

58.    Mr. Lamb routinely executes affidavits of service that allege that Mr. Lamb served process at two locations at the same time. *See Keshavarz Decl.* [Exhibit U, November 17, 2011 Deposition Transcript of Benjamin Lamb in *Sykes* ("Lamb Trns"), 165-186].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  This purported fact is without an appropriate evidentiary foundation and constitutes hearsay and on the ground that Mr. Lamb, in the source cited, did not testify as to what he did "routinely."  The Samserv Defendants further object to this paragraph to the extent that it does not provide a time frame and implies the present time, and the exhibit cited seems to refer to events that purportedly took place in December 2007.  The Samserv Defendants further object on the grounds that this paragraph includes what Plaintiff contends occurred "routinely," which is a conclusion that must be based on many data points beyond what is cited by Plaintiff here.**

59.    Mr. Lamb characterizes these incidents as "typos." *See Keshavarz Decl.* [Exhibit U,  Lamb Trns, 165-186].

**RESPONSE:        The Samserv Defendants refer to their Response and Objections to**

**paragraph 58, which are incorporated by reference as if set forth in full herein.  The**

**Samserv Defendants further object on the ground that the paragraph is vague in that it**

**does not specify which incidents are "these incidents."**

60.     Mr. Lamb claims that he is capable of serving process up to one hundred times per

day. *See Keshavarz Decl.* [Exhibit U, Lamb Trns, 166:05-168-07].

**RESPONSE:        The Samserv Defendants refer to their Response and Objections to**

**paragraph 58, which are incorporated by reference as if set forth in full herein.   The**

**Samserv Defendants further object on the gournd that this paragraph reflects a**

**supposition and is not material to any issue in this case.  The Samserv Defendants further**

**state that the testimony of Mr. Lamb in the *Sykes* class action lawsuit merely states that it**

**was possible to serve over one hundred services a day,  depending on what time you start**

**and what time you finish, among other circumstances.  Exhibit U at 166-68.**

61.     On September 13, 2012, Mr. Lamb entered into a Consent Order with the DCA

whereby  he settled allegations of process server misconduct. *See Keshavarz Decl.* [Exhibit V,

DCA Lamb  Consent Order].

**RESPONSE:        The Samserv Defendants refer to their Response and Objections to**

**paragraph 58, which are incorporated by reference as if set forth in full herein.  The**

**Samserv Defendants further object on the ground that there is no foundation laid for the**

**documents that form the basis for this purported fact, which constitutes hearsay and**

**hearsay within hearsay.   In addition, even if a proper foundation were laid, the consent**

**order does not reflect any finding of wrongdoing and by its terms is a settlement of**

**merely alleged violations, nmor does a settlement provide any probative proof of any**

**issue in this case.  Moreover, the alleged "violations" are irrelevant to the issues in this**

**case. Moreover, the exhibit does not reflect any activity purportedly done on behalf of Samserv. Thus, it not relevant, probative or material to any issue in this case.**

62.     The Consent Order compelled Mr. Lamb to pay a $500 fine. *See Keshavarz Decl.* [Exhibit V, DCA Lamb Consent Order].

**RESPONSE:        The Samserv Defendants refer to their Response and Objections to paragraph 58, which are incorporated by reference as if set forth in full herein. The Samserv Defendants further object on the ground that there is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.   In addition, even if a proper foundation were laid, the consent order does not reflect any finding of wrongdoing and by its terms is a settlement of merely alleged violations. Moreover, the alleged "violations" are irrelevant to the issues in this case. Moreover, the exhibit does not reflect any activity purportedly done on behalf of Samserv. Thus, it not relevant, probative or material to any issue in this case.**

63.     The Consent Order compelled Mr. Lamb to follow DCA rules governing process servers. *See Keshavarz Decl.* [Exhibit V, DCA Lamb Consent Order].

**RESPONSE:        The Samserv Defendants refer to their Response and Objections to paragraph 58, which are incorporated by reference as if set forth in full herein. The Samserv Defendants further object on the ground that there is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.   In addition, even if a proper foundation were laid, the consent order does not reflect any finding of wrongdoing and by its terms is a settlement of merely alleged violations. Moreover, the alleged "violations" are irrelevant to the issues in this case.  Moreover, the exhibit does not reflect any activity purportedly done on**

behalf of Samserv.  Thus, it not relevant, probative or material to any issue in this case.

64.      On 410 instances between January 2007 and January 2011, Samserv process server

Stevens reported being at two or more addresses at the same time serving process. *See*

*Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exhibit A].

**RESPONSE:        The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to**

**independent contractor process servers other than Mr. Andino and, by reporting only on**

**data purportedly compiled from a four-year period that overwhelmingly post-dates July**

**2007, refers to occurrences probably taking place after the time period at issue in this**

**matter (July 2007), which have no relevance or probative value to issues pertaining to role**

**of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv**

**Defendants.   The exhibit does not refer to any activity on behalf of Samserv.   The**

**Samserv Defendants refer this Court to their Response and Objection to paragraph**

**number 50, which are incorporated by reference as if set forth in full herein, with regard**

**to this paragraph as it relates to Egleson and "facts" that purportedly arise from his**

**Declaration in the *Sykes* class action.**

65.      On September 20, 2010, Mr. Stevens entered into an Assurance of Discontinuance

with  the DCA whereby he settled allegations that he had violated DCA rules governing

process server  conduct. *See Keshavarz Decl.* [Exhibit W, Stevens Assurance of

Discontinuance].

**RESPONSE:        The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process server other than Mr. Andino and refers to occurrences**

**taking place after the time period at issue in this matter (July 2007), which have no**

**relevance or probative value to issues pertaining to the role of the Samserv Defendants in**

**this action or facts at issue vis-à-vis the Samserv Defendants.  The exhibit does not refer to**

**any activity on behalf of Samserv.  There is no foundation laid for the documents that**

**form the basis for this purported fact, which constitutes hearsay and hearsay within**

**hearsay.  In addition, even if a proper foundation were laid, the Assurance of**

**Discontinuance does not reflect any finding of wrongdoing and by its terms is a settlement**

**of merely alleged violations.  The terms of a settlement are not probative of any issue in**

**this case.  Moreover, the alleged "violations" are irrelevant to the issues in this case.**

**Thus, it not relevant, probative or material to any issue in this case.**

66.     Pursuant to the Assurance of Discontinuance, Mr. Stevens agreed to pay a $300 fine and  to comply with DCA  rules. *See Keshavarz Decl.* [Exhibit W, Stevens Assurance of Discontinuance].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and**

**Objections to paragraph number 65, which are incorporated by reference as if set forth in**

**full herein.**

67.     On April 30, 2013, Mr. Stevens entered into a Consent Order with the DCA whereby he  settled allegations of process server misconduct. *See Keshavarz Decl.* [Exhibit X, Stevens Consent Order].

**RESPONSE:        The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process server other than Mr. Andino and refers to occurrences**

**taking place after the time period at issue in this matter (July 2007), which have no**

relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The exhibit does not refer to any activity on behalf of Samserv.   There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.  In addition, even if a proper foundation were laid, the Consent Order does not reflect any finding of wrongdoing and by its terms is a settlement of merely alleged violations.  The terms of this settlement are not probative of any issue in this case. Moreover, the alleged "violations" are irrelevant to the issues in this case.  Thus, it not relevant, probative or material to any issue in this case.

68.    The Consent Order compelled Mr. Stevens to pay a $3,000 fine. *See Keshavarz Decl.* [Exhibit X, Stevens Consent Order].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 67, which are incorporated by reference as if set forth in full herein.**

69.    The Consent Order compelled Mr. Stevens to follow DCA rules governing process servers. *See Keshavarz Decl.* [Exhibit X, Stevens Consent Order].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 67, which are incorporated by reference as if set forth in full herein.**

70.    Pursuant to the Consent Order, Mr. Stevens process service license was suspended for  thirty days. *See Keshavarz Decl.* [Exhibit X, Stevens Consent Order].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 67, which are incorporated by reference as if set forth in**

**full herein.**

71.     On 84 instances between January 2007 and January 2011, Samserv process server

Rivera  reported being at two or more addresses at the same time serving process. *See*

*Keshavarz Decl.*  [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:         The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to**

**independent contractor process servers other than Mr. Andino and, by reporting only on**

**data purportedly compiled from a four-year period that overwhelmingly post-dates July**

**2007, refers to occurrences probably taking place after the time period at issue in this**

**matter (July 2007), which have no relevance or probative value to issues pertaining to role**

**of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv**

**Defendants.  The Samserv Defendants refer this Court to their Response and Objections**

**to paragraph number 50, which are incorporated by reference as if set forth in full herein,**

**with regard to this paragraph as it relates to Mr. Egleson and "facts" that purportedly**

**arise from his Declaration in the *Sykes* class action.**

72.     The Honorable Arthur F. Engoron of the Civil Court of the City of New York vacated

a default judgment for improper service. The default judgment was obtained using an

affidavit of  service executed by Rivera. *See Keshavarz Decl.* [Exhibit Y, November 9,

2009 Decision in  *NCO Portfolio Management v. Carrasco*, Index No. 30036/08 (Civil

Court of the City of New  York Count of New York)].

**RESPONSE:         The Samserv Defendants object to this request as not material or**

**admissible for numerous reasons, including (but not limited to) that it refers to an**

**independent contractor process server other than Mr. Andino and refers to occurrences**

**taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The exhibit does not refer to any activity on behalf of Samserv.   There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.**

73.    On February 17, 2011, an Administrative Law Judge for the DCA issued an opinion and  order revoking Mr. Rivera's process server license. *See Keshavarz Decl.* [Exhibit Z, New York  City Department of Consumer Affairs decision revoking Angelo M. Rivera's process  server  license].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and refers to occurrences taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The exhibit does not refer to any activity on behalf of Samserv and the decision ostensibly was one reached due to default.   There is no foundation laid for the documents that form the basis for this purported fact, which constitutes hearsay and hearsay within hearsay.**

74.    The DCA had charged Mr. Rivera with multiple instances of failing to properly log instances of completed service. *See Keshavarz Decl.* [Exhibit Z, New York City Department of  Consumer Affairs decision revoking Angelo M. Rivera's process server license].

**RESPONSE:**          **The Samserv Defendants object to this request as not material or**
**admissible for numerous reasons, including (but not limited to) that it refers to an**
**independent contractor process server other than Mr. Andino and refers to occurrences**
**taking place after the time period at issue in this matter (July 2007), which have no**
**relevance or probative value to issues pertaining to the role of the Samserv Defendants in**
**this action or facts at issue vis-à-vis the Samserv Defendants. The exhibit and "charges"**
**referred to therein do not refer to any activity on behalf of Samserv.   There is no**
**foundation laid for the documents that form the basis for this purported fact, which**
**constitutes hearsay and hearsay within hearsay.**

75.     The DCA imposed a $44,000 fine on Mr. Rivera for his violations of DCA rules
governing process server conduct. *See Keshavarz Decl.* [Exhibit Z, New York City
Department   of Consumer Affairs decision revoking Angelo M. Rivera's process server
license].

**RESPONSE:**          **The Samserv Defendants object to this request as not material or**
**admissible for numerous reasons, including (but not limited to) that it refers to an**
**independent contractor process server other than Mr. Andino and refers to occurrences**
**taking place after the time period at issue in this matter (July 2007), which have no**
**relevance or probative value to issues pertaining to the role of the Samserv Defendants in**
**this action or facts at issue vis-à-vis the Samserv Defendants. The exhibit and "charges"**
**referred to therein do not refer to any activity on behalf of Samserv.   There is no**
**foundation laid for the documents that form the basis for this purported fact, which**
**constitutes hearsay and hearsay within hearsay.**

76.     On 327 instances between January 2007 and January 2011, Samserv process server

John Andino reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exhibit A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to independent contractor process servers other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which ar incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

77.    On June 9, 2007, Mr. Andino claims to have attempted to serve process at 2726 Decatur Ave, Bronx, NY. *See Keshavarz Decl.* [Exhibit GGG, Excerpts from Samserv process server database, page 3, line 19].

**RESPONSE:        Samserv admits that records of its database reflect that Mr. Andino recorded service at 2726 Decatur Avenue, Bronx, NY 10458 at approximately 8:10 AM on June 9, 2007. {Exhibit GGG and Supplemental Declaration of William Mlotok at ¶ 5.**

78.    Three minutes later, on June 9, 2007, Mr. Andino claims to have attempted to serve process at 2342 Ryer Ave, Bronx, NY at 8:13 AM. *See Keshavarz Decl.* [Exhibit GGG, Excerpts from Samserv process server database, page 4, line 11].

**RESPONSE:        Samserv admits that records of its database reflect that Mr. Andino**

**recorded service at 2342 Ryer Avenue, Bronx, NY 10458 at approximately 8:13 AM on**

**June 9, 2007, approximately 1 mile away from 2726 Decatur Avenue, Bronx, New York.**

**{Exhibit GGG and Supplemental Declaration of William Mlotok at ¶ 5.**

79.   Google Maps estimates that, depending on method of travel, it takes a minimum of

8  minutes to travel from 2726 Decatur Ave to 2342 Ryer Ave in the Bronx. *See Keshavarz*

*Decl.*  [Exhibit HHH, Google Maps pages].

**RESPONSE:**       **The Samserv Defendants object to this paragraph as it lacks**

**foundation and constitutes hearsay.  Plaintiff provides no foundation for Google Maps**

**determining any "minimum" travel time.  Moreover, Plaintiff apparently consulted**

**Google Maps in 2017, more than ten years after the service on June 9, 2007.  Thus,**

**because Google Maps is known to calculate traffic conditions that existed at the time it is**

**consulted, there is no foundation that the Google Maps printout that is reflected in**

**Exhibit HHH bear any relationship to the traffic conditions, speed limits, roadway**

**conditions or travel times that existed on the morning of June 9, 2007.  In addition, the**

**times listed in the affidavit of service and the records of Samserv are approximate.  See**

**Supplemental Declaration of William Mlotok at ¶ 5.**

80.   John Andino is the same process server who allegedly served process on Jose Guzman

in  the state court collection case that gave rise to this federal lawsuit. *See Keshavarz Decl.*

[Exhibit  AA, Affidavit of Service of Summons and Complaint in Guzman collection case

("Affidavit of  Service"].

**RESPONSE:**       **Samserv admits that John Andino is the process server who served**

**process on Jose Guzman in the state court collection case that gave rise to this federal**

**lawsuit.**

81.     John Andino did not retain any of his process server logbooks from the start of the  proposed class period in *Sykes* (2006) through July, 2011. *See Keshavarz Decl.* [Exhibit BB, July 23, 2011 Affidavit of John Andino].

**RESPONSE:          The Samserv Defendants admit that, in connection with the *Sykes* class action litigation, John Andino signed an affidavit on July 23, 2011, that stated that he had "worked with Samserv, Inc. as an Independent Contractor Process Server including during the start of the proposed class period, 2006;" that "[d}uring that period of time, [he] maintained Logbook(s) detailing the processes [he] served as well as instances of attempted service of process;" and he had "attempted to locate those Logbooks but [has] been unable to locate them at [that] time." [Exhibit BB]**

82.     On 122 instances between January  2007 and January  2011, Samserv process server Abdelrahman reported being at two or more addresses at the same time serving process. *See  Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it is based on hearsay, it refers to independent contractor process servers other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his**

Declaration in the *Sykes* class action.

83.     On January 18, 2011, the DCA filed a Notice of Hearing against Mr. Abdelrahman. *See Keshavarz Decl.* [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

**RESPONSE:   The Samserv Defendants object to this "fact" as not material or admissible for numerous reasons, including (but not limited to) that it is based on hearsay, refers to an independent contractor process server other than Mr. Andino and to purported occurrences taking place after the time period at issue in this matter (July 2007).  As such this "fact" has no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The exhibit referred to herein does not refer to any activity on behalf of Samserv.   See the Response and Objections to number 47, which are incorporated by reference as if set forth in full herein.**

**Further, the Samserv Defendants object on the ground that the Notice of Hearing simply states allegations and are not finding of fact and in no way constitute proof of anything that Mr. Abdelrahman did or did not do.  The Notice of Hearing is no different than a Complaint which, because it contains only a one-sided set of unproven allegations, cannot be admitted for the truth of its content.  Further, even if the statements in the Notice of Hearing were true, they do not in any way relate to any issue in this matter.**

84.     The notice alleged that Mr. Abdelrahman had violated rules governing process server conduct. *See Keshavarz Decl.* [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

**RESPONSE:       The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

85.     Specifically, the notice alleged that Mr. Abdelrahman had failed provide certain process  service documents in response to a DCA subpoena. *See Keshavarz Decl.* [Exhibit CC, January  18, 2011 Abdelrahman Hearing Notice].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

86.     The notice further alleged that Mr. Abdelrahman lacks fitness to serve as a process  server. *See Keshavarz Decl.* [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

87.     The notice instructed Mr. Abdelrahman to appear at a hearing on February 2, 2011 at  8:30 AM. *See Keshavarz Decl.* [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

88.     On March 6, 2011, the DCA filed a Notice of Hearing against Mr. Abdelrahman. *See  Keshavarz Decl.* [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

**89.**     The notice alleged that Mr. Abdelrahman had violated rules governing process server  conduct. *See Keshavarz Decl.* [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

**RESPONSE:**         **The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

90.     Specifically, the notice alleged that Mr. Abdelrahman had failed provide certain process service documents in response to a DCA subpoena. *See Keshavarz Decl.* [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

**RESPONSE:**         **The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

91.     The notice further alleged that Mr. Abdelrahman lacks fitness to serve as a process server. *See Keshavarz Decl.* [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

**RESPONSE:**         **The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

92.     The notice instructed Mr. Abdelrahman to appear at a hearing on March 30, 2011 at 8:30 AM. *See Keshavarz Decl.* [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

**RESPONSE:**         **The Samserv Defendants refer this Court to their Response and Objections to paragraph 83 and incorporates them herein as if set forth in their entirety.**

93.     On 11 instances between January 2007 and January 2011, Samserv process server Pinder reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:**         **The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this**

matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.

94.    On 5 instances between January 2007 and January 2011, Samserv process server Lewis  reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.*  [Exhibit _P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

95.    On 21 instances between January 2007 and January 2011, Samserv process server Wegard reported being at two or more addresses at the same time serving process. *See Keshavarz  Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:** The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.

96.     On 204 instances between January 2007 and January 2011, Samserv process server D. Mosquera reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:** The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein,

**with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

97.     On 41 instances between January 2007 and January 2011, Samserv process server Benitez reported being at two or more addresses at the same time serving process. *See Keshavarz  Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

98.     On 42 instances between January 2007 and January 2011, Samserv process server Jacobs  reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.*  [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July**

**2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

99.    On 138 instances between January 2007 and January 2011, Samserv process server Dworetsky reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

100.    On 1 instance between January 2007 and January 2011, Samserv process server Degennaro reported being at two or more addresses at the same time serving process.

*See  Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

101.    On 5 instances between January 2007 and January 2011, Samserv process server Newman reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:          The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections**

48

**to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

102.    On 107 instances between January 2007 and January 2011, Samserv process server Acevedo reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to independent contractor process servers other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which is incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

103.    On 3 instances between January 2007 and January 2011, Samserv process server Joseph reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A]

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on**

**data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

104.   On 2 instances between January 2007 and January 2011, Samserv process server Tanega reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.*  [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants. The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

105.   On 9 instances between January 2007 and January 2011, Samserv process server H.

Al-Atrash reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:       The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to independent contractor process servers other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the Sykes class action**

106.    On 85 instances between January 2007 and January 2011, Samserv process server Miller  reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.*  [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:       The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv**

**Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

107.    On 34 instances between January 2007 and January 2011, Samserv process server N.Atrash reported being at two or more addresses at the same time serving process. *See Keshavarz  Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

108.    On 24 instances between January 2007 and January 2011, Samserv process server Mathers reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an**

independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which is incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.

109.    On 2 instances between January 2007 and January 2011, Samserv process server Issam  reported being at two or more addresses at the same time serving process. *See Keshavarz Decl.*  [Exhibit P, Egleson Affidavit at Exh. A].

**RESPONSE:        The Samserv Defendants object to this request as not material or admissible for numerous reasons, including (but not limited to) that it refers to an independent contractor process server other than Mr. Andino and, by reporting only on data purportedly compiled from a four-year period that overwhelmingly post-dates July 2007, refers to occurrences probably taking place after the time period at issue in this matter (July 2007), which have no relevance or probative value to issues pertaining to role of the Samserv Defendants in this action or facts at issue vis-à-vis the Samserv Defendants.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

110.    Samserv process servers regularly execute false affidavits of merit claiming service of a  summons and complaint when, in fact, service was not made. *Keshavarz Decl.* [Exhibit J, New  York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.; Exhibit  K, DCA Decision Revoking Atrash license; Exhibit L, Schwartz Affidavit; Exhibit M, New York  City Department of Consumer Affairs Notice of Hearing against Husam Al-Atrash; Exhibit N,  New York City Department of Consumer Affairs Consent Order with Hasam Al-Atrash; Exhibit  O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's  process server's license; Exhibit Q, Mosquera Assurance of Discontinuance; Exhibit R, 2011  DCA Letter Denying Renewal of Mr. Mosquera's process server license; Exhibit E, Mlotok  Trns, 148:15-18; 164:04-165:11; [Exhibit S, Ecourts record, stamped Summons, Affidavit of  Service and Amended Affidavit of Service in *Rushmore Recoveries X, LLC v. Doris Peralta*,  Index No. 39754-05 (Civil Court County of New York); Exhibit T, November 7, 2013 Decision  in *Palisades Collection, LLC v. Smith*, Index No. CIV 020105/06 (Civil Court of the City of New  York, Bronx County); Exhibit U, Lamb Trns.165-186; 166:05-168-07; Exhibit V, DCA Lamb  Consent Order; Exhibit W, Stevens Assurance of Discontinuance; Exhibit X, Stevens Consent Order; Exhibit Y, November 9, 2009 Decision in *NCO Portfolio Management v. Carrasco*, Index  No. 30036/08 (Civil Court of the City of New York Count of New York); Exhibit Z, New York  City Department of Consumer Affairs decision revoking Angelo M. Rivera's process server  license; Exhibit BB, July 23, 2011 Affidavit of John Andino; Exhibit CC, January 18, 2011  Abdelrahman Hearing Notice; Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice ;Exhibit__, Egleson Affdavit ¶ 2, 12, 25, 29, 30, Exhibit A].

**RESPONSE:**          **As a threshold matter, the Samserv Defendants deny this paragraph**

**and object on the grounds that Samserv, as a process serving agency, does not execute affidavits of merit, which the Samserv Defendants understand are drafted and executed by counsel.   None of the cited sources assert or provide any admissible evidence that Samserv or its independent contractor process servers execute "affidavits of merit," whether true or false.  Moreover, the Samserv Defendants object to this paragraph as it violates the rules in combining separate allegations of fact in one paragraph.  The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the Sykes class action, as well as to its Response and Objections to paragraphs 27 through and including 49 and paragraphs 51 through and including 109, as if set forth in full herein.**

111.    In 2011, the Chief Clerk of the Civil Court of the City of New York responded to a FOIL  request made by Carolyn E. Coffey. *See Keshavarz Decl.* [Exhibit EE, August 1, 2011 Declaration of Carolyn E. Coffey ("Coffey Declaration")].

**RESPONSE:         The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

112.    The Chief Clerk provided the total number of filings by LR Credit entities for

each borough from the date the database went into effect in each borough through 2010. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 3].

**RESPONSE:** **The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts. In addition, she was never named as an expert here nor has she submitted an expert report. Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

113. Kings County Civil Court implemented its database on March 12, 2007. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 5].

**RESPONSE:** **The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts. In addition, she was never named as an expert here nor has she submitted an expert report. Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

114. Queens County Civil Court implemented its database on June 4, 2007. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 5].

**RESPONSE:** **The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts. In addition, she was never named as an expert here nor has she submitted an expert report. Thus, the statement is without foundation and is**

**supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

115.    Bronx County Civil Court implemented its database on September 24, 2007. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 5].

**RESPONSE:        The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

116.    Richmond County Civil Court implemented its database on November 13, 2007. *See  Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 5].

**RESPONSE:        The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

117.    New York County Civil Court implemented its database on June 4, 2008. *See*

*Keshavarz  Decl.* [Exhibit EE, Coffey Declaration, ¶ 5].

**RESPONSE:        The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

118.    The total number of cases filed by LR Credit entities in each borough from 2007 through 2010 totaled 65,702. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 7].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

119.    The number of default judgments obtained by LR Credit entities in those cases during  that time totaled 49,114. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 7].

**RESPONSE:        The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements. The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

120.     There was a 75% default rate for cases filed by LR Credit entities in each borough from  2007 through 2010. *See Keshavarz Decl.* [Exhibit EE, Coffey Declaration, ¶ 7].

**RESPONSE:         The Samserv Defendants object on the grounds that Ms. Coffey has no personal knowledge of these facts.  In addition, she was never named as an expert here nor has she submitted an expert report.   Thus, the statement is without foundation and is supported only by incompetent, hearsay statements.  Moreover, the Samserv Defendants object on the grounds that this paragraph does not reflect a fact that is probative, as a defendant might choose to default due to numerous considerations, including but not limited to acknowledgement of liability.  The fact of a default is not evidence of lack of valid service of process.  In addition, the Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

121.     Samserv does not retain copies of log books for process servers serving process on its  behalf. *See Keshavarz Decl.* [Exhibit FF, June 27, 2011 Hearing Transcript in *Sykes*, 12:09-13;  19-23; Exhibit E, July, 2011 Affidavit of William Mlotok].

**RESPONSE:         In 2007, Samserv did not retain a copy of log books for the independent contractor process servers serving on Samserv's behalf as the logbooks are the property of the independent contractor process servers.  See Declaration of William Mlotok in Support of Motion for Summary Judgment by Samserv Defendants at paragraph 12 and Supplemental Declaration of William Mlotok at paragraph __.  Samserv Defendants further object to the statement to the extent that it seeks information about Samserv's current practice as it is immaterial to the issues in this lawsuit.**

122.    Generally, rates of personal service and substituted service are about equal when serving  individuals at personal residences. *See Keshavarz Decl.* [Exhibit GG, August 1, 2011 Declaration  of Bruce Lazarus, ¶ 5].

**RESPONSE:        The Samserv Defendants object on the grounds that Mr. Lazarus was never named as an expert here nor has he submitted an expert report.  Moreover, Mr. Lazarus fails to account either for differences in service of process in city and suburban settings or the mode of transportation used by a process server.  His methodologies were never subject to any *Daubert* challenge, nor could they be as he was never named here as an expert. His affidavit might have been suited to the *Sykes* litigation, in which it was filed, but nowhere does that affidavit purport to address conditions in 2007 or address the services of process by Mr Andino in July 2007.  Thus, the statement is without foundation and is supported only by incompetent, hearsay statements.  The Samserv Defendants also hereby refer to and incorporate by reference herein the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.**

123.    It generally takes a process server thirty minutes to attempt service on individuals at  personal residences. *See Keshavarz Decl.* [Exhibit GG, August 1, 2011 Declaration of Bruce  Lazarus, ¶ 7].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 122, which are incorporated by reference as if set forth in full herein.**

124.    It is unlikely that a process server could regularly make more than 25 service attempts at  personal residences in one day. *See Keshavarz Decl.* [Exhibit GG, August 1, 2011

Declaration of  Bruce Lazarus, ¶ 8].

**RESPONSE:**          **The Samserv Defendants refer this Court to their Response and Objections to paragraph number 122, which are incorporated by reference as if set forth in full herein.**

125.    As of 2011, process serving company Legalease, Inc. paid outside process servers a  minimum of $25 per service. *See Keshavarz Decl.* [Exhibit GG, August 1, 2011 Declaration of  Bruce Lazarus, ¶ 10].

**RESPONSE:**          **The Samserv Defendants refer this Court to their Response and Objections to paragraph number 122, which are incorporated by reference as if set forth in full herein.  In addition, the practice of Legalease in 2011, a competitor of Samserv at that time, is irrelevant and not material to any practice that was in place at the time at issue here, i.e., July 2007.**

126.    As of 2011, process serving company Legalease, Inc. paid all process servers, regardless  of whether process is actually served. *See Keshavarz Decl.* [Exhibit GG August 1, 2011  Declaration of Bruce Lazarus, ¶ 10].

**RESPONSE:**          **The Samserv Defendants refer this Court to their Response and Objections to paragraph number 122, which are incorporated by reference as if set forth in full herein.  In addition, the practice of Legalease in 2011, a competitor of Samserv at that time, is irrelevant and not material to any practice that was in place at the time at issue here, i.e., July 2007.**

127.    As of 2011, process serving company Legalease, Inc. charged a minimum of $85 to effect  service. *See Keshavarz Decl.* [Exhibit GG, August 1, 2011 Declaration of Bruce Lazarus, ¶ 11].

**RESPONSE:**        **The Samserv Defendants refer this Court to their Response and Objections to paragraph number 122, which are incorporated by reference as if set forth in full herein.  In addition, the practice of Legalease in 2011, a competitor of Samserv at that time, is irrelevant and not material to any practice that was in place at the time at issue here, i.e., July 2007.**

128.    The original complaint in *Sykes* was filed on October 6, 2009. *Keshavarz Decl.* [Exhibit HH, Original Complaint in *Sykes v. Mel S. Harris, LLC*, et al., 1:09-cv-08486-DC (S.D.N.Y)  ("*Sykes* Original Complaint")].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

129.    In an amended class action complaint filed on December 28, 2009, the *Sykes* Plaintiffs  alleged that MSH routinely filed false affidavits of service and false affidavits of merit in order  to obtain default judgements against thousands of NY consumers. *Keshavarz Decl.* [Exhibit II,  First Amended Complaint in *Sykes v. Mel S. Harris, LLC*, et al., 1:09-cv-08486-DC (S.D.N.Y)  ("*Sykes* First Amended Complaint")].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

130.    LR Credit and MSH were served with the *Sykes* complaints on January 21, 2010. *See  Keshavarz Decl.* [Exhibit JJ, Affidavits of Service from *Sykes v. Mel S. Harris, LLC*, et al., 1:09-  cv-08486-DC (S.D.N.Y) [DE 5]].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

131.    LRC was therefore aware, after January 21, 2010, of the allegations of massive

consumer fraud perpetrated by MSH on behalf of LRC. *See Keshavarz Decl.* [Exhibit JJ,

Affidavits of  Service from *Sykes v. Mel S. Harris, LLC*, et al., 1:09-cv-08486-DC (S.D.N.Y)

[DE 5]].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

132.    Yet, LRC continued to rely on MSH to obtain default judgments against NY

consumers,  and to execute on default judgments that had been obtained by MSH. *Keshavarz*

*Decl.* [Exhibit  KK, Information Subpoena in Guzman Collection case; Exhibit B, Nittoli

Trns.at  59:11-24;  60:16-61:03; 92:07-21].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

133.    On April 15, 2011, the *Sykes* Plaintiffs filed a motion for class certification. *See*

*Keshavarz Decl.* [Exhibit LL, Order granting class certification in *Sykes*].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

134.    In support of their application, the *Sykes* Plaintiffs attached an affidavit (the

"Egleson Affidavit") from an IT consultant, Nicholas Egleson. *See Keshavarz Decl.* [Exhibit

P, Egleson  Affidavit].

**RESPONSE: The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

135.    Mr. Egleson analyzed Samserv's "Process Service Management System." *See Keshavarz  Decl.* [Exhibit P, Egleson Affidavit].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

136.    The database is a record of all service of process performed by Samserv for cases filed by  MSH from January 2007 through January 2011. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

137.    The database includes 59,959 records of service in cases filed by MSH on behalf of LRC  and its subsidiaries. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Mr. Egleson and "facts" that**

purportedly arise from his Declaration in the *Sykes* class action.

138.    After analyzing the data in the Samserv database, Mr. Egleson concluded that "[t]he data  shows multiple instances of the same process server recording two or more services at different  addresses at the same hour and minute—a physical impossibility." *See Keshavarz Decl.* [Exhibit  P, Egleson Affidavit].

**RESPONSE:       The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.**

139.    Mr. Egleson further concluded that "in 2,915 instances, a process server claimed to have  attempted or completed service *before* the date that the service was assigned to that process  server—another physical impossibility." *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit **at ¶  12].**

**RESPONSE:       The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the Sykes class action.  Moreover, this "fact" duplicates No. 49 in Plaintiff's Statement of Material Fact.**

140.    Mr. Egleson also found multiple instances where process servers reported making "40 to  100 visits in a day in less time than Google Maps estimates is required for the continuous drive  time alone." *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit].

**RESPONSE:       The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in**

full herein, with regard to this paragraph as it relates to Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action.

141.   Mr. Egleson further found that "[t]he data also shows instances where process servers report having served papers in an order that required nonsensical backtracking along the route." *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit].

**RESPONSE:        The Samserv Defendants refer this Court to their Response and Objections to paragraph number 50, which are incorporated by reference as if set forth in full herein, with regard to this paragraph as it relates to Mr. Egleson and "facts" that purportedly arise from his Declaration in the *Sykes* class action. The Samserv Defendants further object on the grounds that Egleson ostensibly considers himself as an expert in appropriate routing for service of process and to possess expertise on what constitutes "nonsensical backtracking," but has not been named as an expert nor does he possess any relevant expertise in such fields.**

142.   LRC learned of the allegations in the Egleson Affidavit shortly after July 31, 2011. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 92:25-93:13].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

143.   Yet, LRC continued to use MSH to enforce default judgments for cases where Samserv had allegedly served process. *See Keshavarz Decl.* [Exhibit KK, Information Subpoena in Guzman Collection case; Exhibit B, Nittoli Trns.at 59:11-24; 60:16-61:03; 92:07-21].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

144.     The Third Amended Complaint in *Sykes* alleges that Todd Fabacher signs "approximately 40,000 affidavits per year, or an average of 165 affidavits per work day. In these affidavits, [Fabacher] claims to be fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." *See Keshavarz Decl.* [Exhibit MM, Third Amended Complaint in *Sykes v. Mel S. Harris, LLC*, et al., 1:09-cv-08486-DC (S.D.N.Y) ("*Sykes* Third Amended Complaint")].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

145.     The Third Amended Complaint goes on to allege that "the affidavits are purposely drafted . . . to give court personnel the impression that Mel Harris and Leucadia Defendants have met the statutory requirements for obtaining a default judgment, when in fact, Defendants have not and cannot meet those requirements." *See Keshavarz Decl.* [Exhibit MM, *Sykes* Third Amended Complaint].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

146.     On September 4, 2012 the Honorable Denny Chin issued an order granting class certification in *Sykes*. Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 282 (S.D.N.Y. 2012). *See Keshavarz Decl.* [Exhibit LL, Order granting class certification in *Sykes*].

**RESPONSE:** The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

147. In his opinion, Judge Chin stated that "[t]he record before the Court establishes that defendants obtained tens of thousands of default judgments in consumer debt actions, based on thousands of affidavits attesting to the merits of the action that were generated *en masse* by sophisticated computer programs and signed by a law firm employee who did not read the vast majority of them and claimed to, but apparently did not, have personal knowledge of the facts to which he was attesting." Sykes v. Mel Harris & Assocs., LLC, 285 F.R.D. 279, 282 (S.D.N.Y. 2012). *See Keshavarz Decl.* [Exhibit LL, Order granting class certification in *Sykes*].

**RESPONSE:** The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

148. In 2012, LRC was aware that the Court had granted class certification, having found that the "record before the Court establishes" that MSH routinely filed false affidavits or service and false affidavits of merit in order to obtain default judgment against vulnerable consumers. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 73:06-74:06].

**RESPONSE:** The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

149. LRC was aware, in 2012, of repeated allegations that MSH regularly filed false

affidavits of merit and false affidavits of service in collection cases for debts owned by LRC and its subsidiaries. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 73:06-74:06; 92:25-93:13].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

150.    Yet, LRC continued to use MSH to collect on default judgment that had been obtained using affidavits of service from Samserv and affidavits of merit from Fabacher. *See Keshavarz Decl.* [Exhibit KK, Information Subpoena in Guzman Collection case; Exhibit B, Nittoli Trns.at  59:11-24; 60:16-61:03; 92:07-21].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

151.    LRC took no steps to investigate whether the allegations against MSH were true. *See  Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 74:15-25].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

152.    On January 13, 2015, LR Credit and MSH executed an amendment to the Collection Agreement. *See  Keshavarz Decl.* [Exhibit NN, Amendment No. 7 to Agreement for Legal Collection Services ("Amendment No. 7")].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

153.    Pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would not seek to obtain any additional default judgments for debts owned by LR Credit or its subsidiaries. *See Keshavarz Decl.* [Exhibit NN, Amendment No. 7 ¶ 2].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

154.    Pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would not institute any other legal proceedings for debts owned by LR Credit or its subsidiaries. *See Keshavarz Decl.* [Exhibit NN, Amendment No. 7 ¶ 2].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

155.    However, pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would continue to execute on default judgments that had already been obtained for debts owned by LR Credit or its subsidiaries. *See Keshavarz Decl.* [Exhibit NN, Amendment No. 7 ¶ 2].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

156.    On or about June 12, 2007, LRC filed a collections lawsuit by and through MSH against Mr. Guzman, titled *LR CREDIT 13, LLC v. Jose Guzman,* Index No. 043405-07/BX

(Civil Court of the City of New York, County of Bronx)(the "collections lawsuit"). *See Keshavarz Decl.* [Exhibit OO, Summons and Complaint in Guzman Collection case ("Summons and Complaint")].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

157.    The case was filed in the consumer credit part for the Civil Court of the City of New York, County of Bronx. *See Keshavarz Decl.* [Exhibit OO, Summons and Complaint].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

158.    The top of the Summons bears the term "CONSUMER CREDIT TRANSACTION." *See Keshavarz Decl.* [Exhibit OO, Summons and Complaint].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

159.    The collections lawsuit sought to collect a putative debt (the "debt" or "account") allegedly owed to "FIRST USA BANK." *See Keshavarz Decl.* [Exhibit OO, Summons and Complaint].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

160.    The collection lawsuit alleged, inter alia, that Mr. Guzman, "having defaulted in payment under the terms of the agreement has incurred thereby agreed upon reasonable attorney's fees of15.00%, to wit: $1130.35." *See Keshavarz Decl.* [Exhibit OO, Summons and Complaint].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

161.   The debt was allegedly flowing from a defaulted "Retail Charge Account Agreement".*See Keshavarz Decl.* [Exhibit OO, Summons and Complaint].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

162.    Mr. Guzman has never had an account with "FIRST USA BANK". *See Keshavarz Decl.* [Exhibit PP, the June 14, 2017 Deposition Transcript of Jose Guzman ("J Guzman Trns") at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (admitting that Jose Guzman does not owe the debt as alleged in the state court collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13; ].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

163.    On or about July 23, 2007, LRC through MSH filed an affidavit of service in the

collections lawsuit. *See Keshavarz Decl.* [Exhibit SS, Affidavit of Service executed by John  Andino on behalf of Samserv, Inc. ("Affidavit of Service")].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

164.    The Affidavit of Service alleges service on Mr. Guzman at the address 1304 Boston Rd.,  Bronx, NY 10456 ("1304 Boston Road"). *See Keshavarz Decl.* [Exhibit AA, Affidavit of Service].

**RESPONSE:**        **The Affidavit of Service states in pertinent part that the summons and complaint to which it referred was served at 1304 Boston Road, Bronx, NY 10456.**

165.    Mr. Guzman was never served with the lawsuit. *See Keshavarz Decl.* [Exhibit PP, J  Guzman Trns, 23:13-15; 24:13-17; 39:13-21; 46:02-09; 178:06-18; Exhibit RR, L  Guzman Trns.at 78:23-79:09].

**RESPONSE:**        **The Samserv Defendants object to this paragraph as it does not state a fact but a legal conclusion as to whether the actions of Mr. Andino constituted effective service of process.**

166.    The process server was John Andino from Samserv. *See Keshavarz Decl.* [Exhibit AA,  Affidavit of Service].

**RESPONSE:  John Andino, an independent contractor engaged by Samserv, Inc., served process on Guzman.**

167.    Mr. Andino executed the affidavit of service on July 23, 2007. *See Keshavarz Decl.* [Exhibit AA, Affidavit of Service].

**RESPONSE:**          **The Affidavit of Service was executed on July 23, 2007.**

168.    The affidavit of service was notarized by William Mlotok. *See Keshavarz Decl.*

[Exhibit  AA, Affidavit of Service].

**RESPONSE:**          **Mr. Mlotok notarized the affidavit of service signed by Mr. Andino**

**with regard to the service of process on Guzman.**

169.    Mr. Mlotok notarized most of the Samserv affidavits of service from 2004-2009.

*See  Keshavarz Decl.* [Exhibit E, Mlotok Trns.at 85:24-86:07].

**RESPONSE:**          **Mr. Mlotok notarized most of the affidavits of service executed by**

**independent contractor process servers engaged by Samserv in 2007.  The Samserv**

**Defendants object to this request as not material or admissible for numerous reasons,**

**including (but not limited to) that it refers to to occurrences taking place after the time**

**period at issue in this matter (July 2007), which have no relevance or probative value to**

**issues pertaining to the role of the Samserv Defendants in this action or facts at issue vis-**

**à-vis the Samserv Defendants.**

170.    LRC caused the affidavit of service to be filed on July 27, 2007. *See Keshavarz Decl.*

[Exhibit AA, Affidavit of Service].

**RESPONSE:**          **The Samserv Defendants hereby incorporate by reference the response**

**to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of**

**Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

171.    The Affidavit of Service alleges that Mr. Guzman was served by affixing a copy of

the  summons and complaint on the door of 1304 Boston Road. *See Keshavarz Decl.*

[Exhibit , Affidavit of Service].

**RESPONSE:        The Affidavit of Service states, among other things, that the subject summons and complaint were affixed "to the door of said premises."**

172.    The Affidavit of Service describes 1304 Boston Road, Bronx, NY 10456 as a "Private Residence." *See Keshavarz Decl.* [Exhibit AA, Affidavit of Service].

**RESPONSE:        The Affidavit of Service includes the words "Private Residence" in connection with 1304 Boston Road, Bronx, NY.**

173.    1304 Boston Road was not and is not a private residence. *See Keshavarz Decl.* [Exhibit SS, NYC Buildings Report for 1304 Boston Road, Bronx, NY 10456 with Google street view images ("1304 Boston Road Report")].

**RESPONSE:        The Samserv Defendants object to this paragraph as the basis for its assertion lacks foundation and is inadmissible evidence.**

174.    Rather, 1304 Boston Road is a commercial property which, in 2007, was a grocery store. *See Keshavarz Decl.* [Exhibit SS, 1304 Boston Road Report].

**RESPONSE:        The Samserv Defendants object to this paragraph as the basis for its assertion lacks foundation and is inadmissible evidence.**

175.    The residential apartments above the grocery store at 1304 Boston Road have a street address of 757-767 East 169 Street, Bronx, NY 10456. *See Keshavarz Decl.* [Exhibit SS, 1304 Boston Road Report].

**RESPONSE:        The Samserv Defendants object to this paragraph as the basis for its assertion lacks foundation and is inadmissible evidence.**

176.    Had John Andino visited 1304 Boston Road, he would have found a grocery store—not a private residene. *See Keshavarz Decl.* [Exhibit SS, 1304 Boston Road Report].

**RESPONSE:**        **The Samserv Defendants object to this paragraph as the basis for its**

**assertion lacks foundation and is inadmissible evidence and consists of speculation.  The**

**Samserv Defendants further respond that residential apartments were part of the**

**structure that included 1304 Boston Road, Bronx, NY 10456.**

177.    Mr. Guzman worked at a grocery store at 1304 Boston Road from 2001 through 2004. *See Keshavarz Decl.* [Exhibit SS, J Guzman Trns.at 133:05-11; 136:14-137:21].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

178.    Mr. Guzman did not reside or work at 1304 Boston Road in 2007, when service was alleged. *See  Keshavarz Decl.* [Exhibit PP, J Guzman Trns, 23:13-15;  24:13-17; 133:05-11;  136:14-137:21; Exhibit RR, L Guzman Trns.at 78:23-79:09; 81:09-13; 102:04-15].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

179.    Mr. Guzman has never received mail at 1304 Boston Road. *See Keshavarz Decl.* [Exhibit  PP, J Guzman Trns, 24:10-12].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

**response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

180.    Mr. Guzman has never represented that 1304 Boston Road was his address. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns, 24:12-17].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the**

response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

181.    Throughout 2007, the year when service was alleged at the address 1304 Boston Road,  Mr. Guzman resided at the address 735 East 163rd St., Apt 3G, Bronx, NY 10456. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 139:18-140:12; Exhibit RR, L Guzman Trns.at  78:23-79:09].

**RESPONSE:           Admit that Mr. Guzman testified that he resided at 735 East 163rd Street, Apt. 3G, Bronx, NY in 2007.**

182.    On or about September 21, 2007, LRC filed an application for default in the collection  lawsuit. The application was signed by a MSH attorney named Kerry Lutz. Mr. Lutz affirmed  under the penalty of perjury that Mr. Guzman had been properly served. The application sought  entry of judgment for $7,821.01. *See Keshavarz Decl.* [Exhibit TT, Default  Application  with  Affidavit of Merit].

**RESPONSE:           The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

183.    LRC also filed an affidavit of merit ("Fabacher Affidavit"), in support of LRC's application for default. *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of  Merit].

**RESPONSE:           The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

184.    Mr. Fabacher executed the affidavit of merit on September 11, 2007. *See*

*Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

185.    LRC caused the affidavit of merit to be filed along with the application for default judgment on or about September 17, 2007, the date the clerk entered the default judgment against Mr. Guzman. *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of  Merit; Exhibit UU, Ecourts screens merged].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

186.    The Fabacher Affidavit was signed by Todd Fabacher. *See Keshavarz Decl.* [Exhibit TT,  Default Application with Affidavit of Merit].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

187.    The Fabacher Affidavit describes Mr. Fabacher as "an authorized and designated custodian of records for [LRC]." *See Keshavarz Decl.* [Exhibit TT, Default Application with  Affidavit of Merit].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

188.    The Fabacher Affidavit alleges that Mr. Fabacher has "personal knowledge of, the

facts and proceedings relating to this action". *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

189.   Fabacher swore in his affidavit that he was "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

190.   Fabacher swore that he had personal knowledge that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement". *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

191.   Mr. Guzman has never owed money to First USA Bank. *See Keshavarz Decl.* [Exhibit PP, the June 14, 2017 Deposition Transcript of Jose Guzman ("J Guzman Trns") at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (admitting that Jose Guzman does not owe the debt as alleged in the state court collection suit); Exhibit RR, the

June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13].

**RESPONSE:**       **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

192.    The Fabacher Affidavit alleges that Mr. Guzman defaulted on the putative debt to First USA in 2004. *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:**       **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

193.    Mr. Fabacher did not have personal knowledge that Mr. Guzman owed the debt as alleged. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (admitting that Jose Guzman does not owe the debt as alleged in the state court collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13; *see* ¶¶ ].

**RESPONSE:**       **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

194.    Mr. Fabacher regularly executed the affidavits of merit for the various LR Credit entities. *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 71:06-13].

**RESPONSE:**          **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

195.    Mr. Fabacher was not employed by the original creditors for the debts that were the  subject of the affidavits of merit. *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 205:20-  206:03].

**RESPONSE:**          **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

196.    Mr. Fabacher executed the Fabacher Affidavit at the direction of MSH. *See Keshavarz  Decl.* [Exhibit WW, Fabacher Trns.at 208:14-19].

**RESPONSE:**          **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

197.    The affidavits of merit that Mr. Fabacher executed during his employment at MSH  alleged that Mr. Fabacher was "fully and personally familiar with, and have personal knowledge  of, the facts and proceedings relating to the within action." *See Keshavarz Decl.* [Exhibit WW,  Fabacher Trns.at 83:15-21].

**RESPONSE:**          **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

198.    In the affidavit, Mr. Fabacher averred that he was the Mr. Fabacher averred that he

was the "designated custodian of records" for LRC. *See Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

199.    Mr. Fabacher spent 10% to 50% of his time at MSH executing affidavits of merit. *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 71:24-72:06].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

200.    Mr. Fabacher's working hours at MSH were 9:00 AM to 5:00 PM. *See Keshavarz Decl*[Exhibit WW, Fabacher Trns.at 56:23-57:02].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

201.    While employed by MSH, Mr. Fabacher would execute affidavits of merit in "batches." *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 174:15-175-12].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

202.    Each "batch" contains up to 50 affidavits of merit. *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 175:10-21; 179:14-17].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the**

response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

203.    Mr. Fabacher would execute each "batch" at one time. *See Keshavarz Decl.* [Exhibit  WW, Fabacher Trns.at 179:14-17].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

204.    Mr. Fabacher would sometimes execute multiple "batches" in the same day. *See Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 179:14-17: 181:16-19].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

205.    Mr. Fabacher executed 350 affidavits of merit per week while employed at MSH. *See  Keshavarz Decl.* [Exhibit WW, Fabacher Trns.at 175:10-21; 179:04-06].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

206.    LRC does not have a chain of title demonstrating that LRC in fact owns the putative debt  alleged to be owed by Mr. Guzman. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of  Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to  this request, nor did LRC produce a privilege log indicating that it was withholding the chain of  title)].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

207.    LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to First USA Bank. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

208.    LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to First USA Bank. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

209.    On January 30, 2017, LRC filed a letter seeking a pre-motion conference before Judge Ellis. *See Keshavarz Decl.* [Exhibit YY, January 30, 2017 letter from LRC, DE 112].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

210.   In the January 30, 2017 letter, LRC argued, for the first time, that the putative debt alleged to be owed by Mr. Guzman was in fact owed to Banco Popular. *See Keshavarz Decl.* [Exhibit YY, January 30, 2017 letter from LRC, DE 112 ("a validly existing debt owed by Plaintiff to an entity other than First USA Bank could evidence a clerical error in the underlying collections lawsuit")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

211.   LRC reiterated this position during a March 16, 2017 hearing before Judge Ellis. *See Keshavarz Decl.* [Exhibit ZZ, March 16, 2017 hearing transcript at 38:01-11 (the hearing transcript incorrectly identifies the speaker, Scott Balber, as Jeffrey Lichtman, the attorney for Samserv who was also present at the hearing. *See* 15:12-18, where the speaker refers to himself as "Mr. Balber")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

212.   LRC does not have a chain of title demonstrating that LRC owns a putative debt alleged to be owed by Mr. Guzman to Banco Popular. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the**

response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

213.    LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to Banco Popular. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

214.    LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to Banco Popular. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

215.    On May 31, 2017, LRC filed a memorandum of law in opposition to Plaintiff's motion to amend. *See Keshavarz Decl.* [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's  motion to amend, DE 168].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

216.    In the May 31, 2017 memorandum, LRC argued, for the first time, that the debt was in fact owed to Chase Bank. *See Keshavarz Decl.* [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's motion to amend, DE 168 at p. 3-5].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

217.    LRC issued a subpoena to Chase Bank on March 28, 2017. *See Keshavarz Decl.* [Exhibit AAA, March 28, 2017 subpoena issued by LRC to Chase Bank].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

218.    On April 29, 2017, Chase Bank responded to the subpoena by providing documents relating to a consumer credit account purportedly opened by a Jose Guzman Lara. *See Keshavarz Decl.* [Exhibit BBB, documents provided by Chase Bank in response to March 28, 2017 subpoena issued by LRC ("Chase Documents")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

219.    LRC did not possess the Chase Documents prior to April 29, 2017. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce any documents relating to a putative Chase Bank account in response to this request until after it had received the Chase Documents on April 29, 2017)].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

220.    LRC does not have a chain of title demonstrating that LRC owns the putative debt  alleged to be owed by Mr. Guzman to Chase Bank. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's  First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in  response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

221.    In 2007, LRC did not possess a chain of title demonstrating that LRC owns a putative  debt alleged to be owed by Mr. Guzman. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set  of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to  this request, nor did LRC produce a privilege log indicating that it was withholding the chain of  title)].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

222.    In 2007, LRC did not possess a credit agreement demonstrating that Mr. Guzman owes  the putative debt. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests  to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor  did LRC produce a privilege log indicating that it was withholding the credit

agreement. LRC did not produce any documents relating to a putative Chase Bank account in response to this request until after it had received the Chase Documents on April 29, 2017)].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

223.    In 2007, LRC did not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements. LRC did not produce any documents relating to a putative Chase Bank account in response to this request until after it had received the Chase Documents on April 29, 2017))].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

224.    The Fabacher Affidavit is false. *See* ¶¶ 113-152 above.

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

225.    The allegations in the Summons and Complaint are false. *See* ¶¶ 113-152 above.

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

226.    On or about June 29, 2015, LRC executed an Information Subpoena and Questionnaire directed to Mr. Guzman's employer, Siena Marble and Tile. *See Keshavarz Decl.* [Exhibit KK, Information Subpoena].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

227.    The Information Subpoena stated that on September 1, 2007, judgment was entered against Mr. Guzman for $7,821.01. *See Keshavarz Decl.* [Exhibit KK, Information Subpoena].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

228.    The Information Subpoena stated that Mr. Guzman owed LRC "$7821.01 together with interest thereon from 9/21/2007." *See Keshavarz Decl.* [Exhibit KK, Information Subpoena].

**RESPONSE:       The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

229.    The Information Subpoena contained a certification that MSH had "a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment." *See Keshavarz Decl.*

[Exhibit KK,  Information Subpoena].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

230.    As a matter of arithmetic, LRC was representing that Mr. Guzman owed it a judgment  with a balance of $13,332.57 as of the date of the information subpoena. *See Keshavarz Decl.*  [Exhibit KK, Information Subpoena].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

231.    The Information Subpoena was sent nearly eight years after LRC obtained the default judgment against Mr. Guzman. *See Keshavarz Decl.* [Exhibit KK, June 29, 2015 Information  Subpoena; Exhibit TT, Default Application with Affidavit of Merit].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

232.    When it sent the Information Subpoena, LRC was aware that John Andino had been  accused of reporting being at two or more addresses at the same time serving process on 327 occasions. *See Keshavarz Decl.* [Exhibit P, Egleson Affidavit at Exh. A; Exhibit B, Nittoli  Trns.at 92:25-93:13].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

233.     It also knew of serious allegations that Mr. Fabacher routinely executed false affidavits of merit. *See Keshavarz Decl.* [Exhibit B, Nittoli Trns.at 92:25-93:13; Exhibit LL, order granting   class certification].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

234.     Mr. Guzman's employer at Siena Marble showed Mr. Guzman the Information Subpoena. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 32:19-33:05; Exhibit RR, L  Guzman Trns.at 15:22-16:07].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

235.     Mr. Guzman learned of the collection case for the first time when his employer gave him  a copy of the Information Subpoena. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 33:14-  19; Exhibit RR, L Guzman Trns.at 18:05-16;

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

236.     Mr. Guzman showed the Information Subpoena to his wife Laura Guzman. *See Keshavarz Decl.* [Exhibit RR, L Guzman Trns.at 17:12-18:04].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the**

response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

237.    Mrs. Guzman did an internet search of MSH. *See Keshavarz Decl.* [Exhibit RR, L Guzman Trns.at 20:02-11].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

238.    Based on the search results, Mr. and Mrs. Guzman believed that they had been the victims of fraud. *See Keshavarz Decl.* [Exhibit RR, L Guzman Trns.at 20:02-11].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

239.    Mr. Guzman went to court three or four days after receiving the Information Subpoena.*See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 34:06-11].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

240.    Mr. Guzman took a day off of work to go to court. *See Keshavarz Decl.* [Exhibit RR, L Guzman Trns.at 20:16-18].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

241.    Mr. Guzman went to court three times before he was able to access the court file for the collections case. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 34:18-24; Exhibit RR, L  Guzman Trns.at 20:16-22-02].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

242.    Mr. Guzman almost lost his job as a result of having to repeatedly return to court to  collect the court file. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 34:18-24].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

243.    Mr. Guzman reviewed the court file with the help of a CLARO attorney. *See Keshavarz  Decl.* [Exhibit PP, J Guzman Trns.at 36:11-15].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

244.    This was the first time that Mr. Guzman learned of the allegation that he owed a debt to  First USA Bank. *See Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 37:23-38:12; Exhibit RR, L  Guzman Trns.at 22:08-16].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

245.    On or about July 31, 2015, Mr. Guzman filed an Order to Show Cause to vacate the default judgment. *See Keshavarz Decl.* [Exhibit BBB, July 31, 2017 Order to Show Cause ("OSC")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

246.    Mr. Guzman submitted an affidavit in support of the OSC. *See Keshavarz Decl.* [Exhibit  CCC, Affidavit of Jose Guzman in support of OSC].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

247.    In the affidavit in support of the OSC, Mr. Guzman claimed that he had never been served with a summons and complaint in the collection lawsuit. *See Keshavarz Decl.* [Exhibit  CCC, Affidavit of Jose Guzman in support of OSC, p. 2].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

248.    In the affidavit in support of the OSC, Mr. Guzman claimed that he did not owe the  putative debt as alleged in the complaint. *See Keshavarz Decl.* [Exhibit CCC, Affidavit of Jose  Guzman in support of OSC, p. 3].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of**

**Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

249.    Mr. Guzman also filed a proposed answer to the complaint. *See Keshavarz Decl.*
[Exhibit  DDD, Proposed Written Answer ("Proposed Answer")].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the
response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of
Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

250.    In his Proposed Answer, Mr. Guzman claimed the he had never been served with
a  summons and complaint. *See Keshavarz Decl.* [Exhibit DDD, Proposed Answer].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the
response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of
Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

251.    In his Proposed Answer, Mr. Guzman claimed the he did not owe the putative debt
as  alleged in the complaint. *See Keshavarz Decl.* [Exhibit DDD, Proposed Answer].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the
response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of
Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

252.    The matter was set for a traverse hearing to be held on October 15, 2015. *See
Keshavarz  Decl.* [Exhibit BBB, OSC].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the
response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of
Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

253.    LRC sent Mr. Guzman a letter dated August 18, 2015. *See Keshavarz Decl.*

96

[Exhibit  EEE, August 18, 2015 letter with stipulation].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

254.    The letter stated that "[o]ur office has decided not to go forward with the scheduled  traverse hearing." *See Keshavarz Decl.* [Exhibit EEE, August 18, 2015 letter with stipulation].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

255.    Attached to the letter were three copies of a stipulation with the putative signature of  Rosemary Ortiona, an attorney employed by MSH. *See Keshavarz Decl.* [Exhibit EEE, August  18, 2015 letter with stipulation].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

256.    The letter instructed Mr. Guzman to sign and return one of the stipulations. *See Keshavarz Decl.* [Exhibit EEE, August 18, 2015 letter with stipulation].

**RESPONSE:          The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

**257.**  The stipulation provided that the default judgment would be vacated. *See*

*Keshavarz Decl.* [Exhibit EEE, August 18, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

258.    The stipulation further provided that the matter would be discontinued. *See Keshavarz Decl.* [Exhibit EEE, August 18, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

259.    The stipulation further provided that "any claims defendant may have to date against  plaintiff or its counsel related to this matter are hereby waived and released. *See Keshavarz Decl.*  [Exhibit EEE, August 18, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

260.    Mr. Guzman brought the stipulation to a CLARO attorney. *See Keshavarz Decl.* [Exhibit  RR, L Guzman Trns. at 126:15-127:25].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

261.    The CLARO attorney instructed Mr. Guzman not to sign the stipulation. *See Keshavarz  Decl.* [Exhibit RR, L Guzman Trns. at 126:15-127:25].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

262.    In September, 2015, LRC hired Stephen Einstein & Associates, P.C. ("Einstein") to handle the collection case. *See Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

263.    Einstein sent Mr. Guzman's CLARO attorney a letter dated October 2, 2015. *See Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

264.    The letter stated that "[e]nclosed herewith is a fully executed Stipulation to Vacate Judgment and Discontinue Action." *See Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:        The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

265.    Attached to the letter was a stipulation with the putative signature of Rosemary Ortiona, an attorney employed by Einstein. *See Keshavarz Decl.* [Exhibit FFF, October 2,

2015 letter with  stipulation].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

266.    The stipulation provided that the default judgment would be vacated. *See Keshavarz  Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

267.    The stipulation further provided that the case would be discontinued with prejudice. *See  Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

268.    The stipulation did not contain a provision waiving any claims Mr. Guzman might have  against LRC or its counsel. *See Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with  stipulation].

**RESPONSE:** **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

269.    The CLARO attorney—Marcella Silverman—executed the stipulation on behalf of Mr.  Guzman. *See Keshavarz Decl.* [Exhibit FFF, October 2, 2015 letter with stipulation].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

270.    The judgment was therefore vacated, and the case discontinued with prejudice. *See  Keshavarz Decl.* [Exhibit UU, Ecourts screens merged].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

271.    As a result of the *Sykes* settlement, the Attorney General of the State of New York issued  an order directing that all default judgments obtained by Leucadia, L-Credit, LR Credit, and each of the LR Credit subsidiary companies (including LR Credit 13) be vacated. *See Keshavarz Decl.* [Exhibit QQ, May 2, 2017 Attorney General order].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

272.    The affidavit of merit filed by the plaintiff in *Portfolio Recovery Associates, LLC v. Mary E. Toohey*, Index No. 126293 (Supreme Court of the State of New York, County of Monroe) purports to be based upon the affiant's "personal knowledge of Account Assignee's record  keeping system and [affiant's] review of Account Assignee's records, including a review of the  business records transferred to Account Assignee . . ." *See Keshavarz Decl.* [Exhibit VV,  Affidavit of Merit from *Portfolio Recovery Associates, LLC v. Mary E. Toohey*,  Index  No.  126293 (Supreme Court of the State of New York, County of Monroe)].

**RESPONSE:         The Samserv Defendants hereby incorporate by reference the**

response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.

273.    In *Portfolio Recovery Associates, LLC v. Mary E. Toohey*, Index No. 126293 (Supreme  Court of the State of New York, County of Monroe), the purported basis for the representations  regarding the amount of the debt and the interest thereon made in the affidavit of merit was a  review of business records provided to the Plaintiff by the original creditor. *See Keshavarz Decl.*  [Exhibit VV, Affidavit of Merit from *Portfolio Recovery Associates, LLC v. Mary E. Toohey*,  Index No. 126293 (Supreme Court of the State of New York, County of Monroe)].

**RESPONSE:**        **The Samserv Defendants hereby incorporate by reference the response to this paragraph set forth in the Response to Plaintiff's Rule 56.1 Statement of Facts of Defendants LR Credit 13, LLC, dated August 9, 2017, as if set forth fully herein.**

Dated: New York, New York
         August 9, 2017

s/Jeffrey S. Lichtman
Jeffrey S. Lichtman
Andrew C. Levitt
O'HARE PARNAGIAN LLP
82 Wall Street, Suite 300
New York, NY 10005
(212) 425-1401
jlichtman@ohareparnagian.com
alevitt@ohareparnagian.com

*Attorneys for Defendants*
*Samserv, Inc. and William Mlotok*
