**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSE GUZMAN,<br><br>              Plaintiff,<br><br>    -against-<br><br>MEL S. HARRIS AND ASSOCIATES, LLC<br>LR CREDIT 13, LLC<br>MEL S. HARRIS<br>DAVID WALDMAN<br>KERRY H. LUTZ<br>TODD FABACHER<br>MICHAEL YOUNG<br>SAMSERV, INC.<br>JOHN ADINO<br>WILLIAM MLOTOK<br><br>              Defendants. | Case No. 16-cv-03499-GBD-RLE |

**DEFENDANT LR CREDIT 13, LLC'S MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

Page

I.     PLAINTIFF'S SEEKS SUMMARY JUDGMENT ON FDCPA AND GBL § 349 CLAIMS BASED  ON ALLEGED CONDUCT BY SAMSERV AND MSH IN THE UNDERLYING COLLECTION LAWSUIT...................................... 2

II.    THERE IS NO EVIDENCE TO SUPPORT PLAINTIFF'S ALLEGATIONS OF FDCPA AND GBL § 349 VIOLATIONS BY ANY OF THE DEFENDANTS ................................................................................. 4

       A.    The Affidavit Of Merit Was Not False Or Misleading................................... 4

       B.    Other Alleged FDCPA And GBL § 349 Violations ....................................... 5

III.   LRC HAD NO INVOLVEMENT IN, OR KNOWLEDGE OF, MSH'S COLLECTION EFFORTS OR THE UNDERLYING COLLECTION LAWSUIT.................................................................................................. 6

I.     PLAINTIFF'S MOTION RESTS ENTIRELY ON INADMISSIBLE HEARSAY AND UNPROVEN ALLEGATIONS .................................... 7

II.    LRC CANNOT BE HELD LIABLE UNDER THE FDCPA BECAUSE IT IS NOT A DEBT COLLECTOR ................................................................. 10

III.   THE ALLEGED ACTIONS OF MSH AND SAMSERV DO NOT CONSTITUTE FDCPA VIOLATIONS................................................... 13

       A.    The Affidavit Of Service Was Not False ....................................... 13

       B.    The Affidavit Of Merit Was Not False Or Misleading................................. 13

       C.    The Proposed Stipulation Was Not Unconscionable .................................... 16

       D.    MSH's Information Subpoena Was Valid And LRC's Continued Relationship With MSH Did Not Violate The FDCPA................................ 17

       E.    The Reference To Attorneys' Fees In The Collection Lawsuit Was Not Deceptive ............................................................................... 18

IV.    PLAINTIFF IS NOT ENTITLED TO SUMMARY JUDGMENT ON HIS CLAIMS BECAUSE LRC CANNOT BE HELD LIABLE FOR THE CONDUCT OR KNOWLEDGE OF MSH OR SAMSERV .................................... 19

       A.    LRC Is Not Vicariously Liable For MSH'S Conduct Or Knowledge Because There Is No Evidence That LRC Exercised Control Over MSH .... 19

       B.    There Is No Evidence That LRC Is Subject To Ratification Liability .......... 23

V.     EVEN IF A TRIABLE ISSUE OF FACT EXISTS REGARDING LRC'S VICARIOUS OR  RATIFICATION LIABILITY, LRC IS STILL ENTITLED TO SUMMARY JUDGMENT ON  PLAINTIFF'S FDCPA CLAIM BECAUSE ANY FDCPA VIOLATION WAS A BONA FIDE ERROR ............... 24

VI.    PLAINTIFF HAS NOT RAISED A TRIABLE ISSUE OF FACT AS TO HIS GBL § 349 CLAIM.............................................................................. 24

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Argentieri v. Fisher Landscapes, Inc.*
  15 F.Supp.2d 55 (D. Mass. 1998) .................................................................................18, 19

*Bodur v. Palisades Collection, LLC*,
  829 F. Supp.2d 246 (S.D.N.Y. 2011)...................................................................................20

*Cameron v. LR Credit 22, LLC*,
  998 F. Supp. 2d 293 (S.D.N.Y. 2014)............................................................................16, 17

*Chamberlin v. Principi*,
  2005 WL 1963942 (S.D.N.Y. Aug. 16, 2005)........................................................................8

*Chamilia, LLC v. Pandora Jewelry, LLC*,
  2007 WL 2781246 (S.D.N.Y. Sept. 24, 2007)........................................................................9

*Clark v. Capital Credit & Collection Services, Inc.*,
  460 F.3d 1162 (9th Cir. 2006) ............................................................................................20

*Clark v. v. Main St. Acquisition Corp.*,
  2013 WL 2295879 (S.D. Ohio May 24, 2013) .....................................................................16

*Coble v. Cohen & Slamowitz, LLP*,
  824 F. Supp.2d 568 (2011) ...........................................................................................17, 18

*Dina v. Cuda & Assocs.*,
  950 F. Supp. 2d 396 (D. Conn. June 13, 2013).....................................................................17

*Easterling v. Collecto, Inc.*,
  692 F.3d 229 (2d Cir. 2012)................................................................................................16

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974).............................................................................................................10

*Gabriele v. Am. Home Mortg. Servicing, Inc.*,
  503 F. App'x 89 (2d Cir. 2012) ...........................................................................................13

*Gomez v. Resurgent Capital Servs., LP*,
  129 F. Supp. 3d 147 (S.D.N.Y. 2015)...................................................................................21

*Hasbrouck v. Arrow Fin. Servs. LLC*,
  2011 WL 1899250 (N.D.N.Y. May 19, 2011)..................................................................14, 15

*Henson v. Santander Consumer USA, Inc.*,
    137 S.Ct. 1718 (2017) .................................................................................12, 21, 22

*Huebner v. Midland Credit Mgmt., Inc.*,
    85 F. Supp. 3d 672 (E.D.N.Y. 2015) .................................................................22

*In re First Republic Grp. Realty, LLC.*,
    421 B.R. 659 (Bankr. S.D.N.Y. 2009).................................................................23

*Jacobson v. Healthcare Fin. Servs., Inc.*,
    434 F. Supp. 2d 133 (E.D.N.Y. 2006) ...............................................................22

*Janson v. Katharyn B. Davis, LLC*,
    806 F.3d 435 (8th Cir. 2015) .............................................................................15

*Kasalo v. Trident Asset Mgmt., LLC*,
    53 F. Supp. 3d 1072 (N.D. Ill. 2014) .................................................................11

*Manlapz v. Unifund CCR Partners*,
    2009 WL 3015166 (N.D. Il. Sept. 15, 2009) .....................................................15

*Marinaccio v. Barnett Banks, Inc.*,
    176 F.R.D. 104 (S.D.N.Y. 1997) .......................................................................10

*Midland Funding, LLC v. Girald*
    961 N.Y.S.2d 743 (N.Y. Dist. Ct. Mar. 22, 2013) .............................................25

*Okyere v. Palisades Collection, LLC*,
    961 F. Supp. 2d 508 (S.D.N.Y. 2013)...........................................................20, 24

*Polanco v. NCO Portfolio Mgmt., Inc.*,
    132 F. Supp. 3d 567 (S.D.N.Y. 2015).............................................................11, 21

*Qureshi v. OPS 9, LLC*,
    2015 WL 6407883 (D.N.J. Oct. 21, 2015)......................................................14, 16

*Raskin v. Wyatt Co.*,
    125 F.3d 55 (2d Cir. 1997)....................................................................................8

*Roberts v. Ground Handling, Inc.*,
    499 F. Supp. 2d 340 (S.D.N.Y. 2007)..................................................................10

*Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*,
    112 F. Supp. 3d 160 (S.D.N.Y. 2015)...............................................................18, 19

*Santos v. Murdock*,
    243 F.3d 681 (2d Cir. 2001)..................................................................................8

*Shetiwy v. Midland Credit Mgmt.*,
    15 S. Supp.3d 437 (S.D.N.Y. 2014).................................................................15

*Stutman v. Chem. Bank*,
    731 N.E.2d 608 (N.Y. 2000)........................................................................25

*Sykes v. Mel Harris & Assocs., LLC*,
    757 F. Supp. 2d 413 (S.D.N.Y. Dec. 29, 2010) ...........................................12

*Toohey v. Portfolio Recovery Associates, LLC*,
    2016 WL 4473 (S.D.N.Y. Aug. 22, 2016)................................................14, 15

*Trikas v. Universal Card Servs. Corp.*,
    351 F. Supp. 2d 37 (E.D.N.Y. 2005) ..........................................................25

**STATUTES**

C.P.L.R. § 5001..................................................................................................4

C.P.L.R. § 5004..................................................................................................4

Fair Debt Credit Practices Act 15 U.S.C. § 1692 .......................................... passim

Fed. R. Civ. P. § 12..........................................................................................12

Fed. R. Civ. P. § 23..........................................................................................10

Fed. R. Civ. P. § 26............................................................................................9

Fed. R. Civ. P. § 56.......................................................................................3, 8

Fed. R. Evid. § 701............................................................................................9

Fed. R. Evid. § 702............................................................................................9

Fed. R. Evid. § 802............................................................................................8

**OTHER AUTHORITIES**

NY CLS Gen. Bus. § 349.............................................................................. passim

N.Y. Professional Disciplinary Rule 1.2(a) .......................................................19

Restat 2d of Agency, § 1 (1958) .......................................................................20

Todd J. Zywicki, *Law and Economics of Consumer Debt Collection and Its Regulation*,
    28 Loy. Consumer L. Rev. 167 (2016) ........................................................22

Defendant LRC,[1] through its undersigned counsel, respectfully submits this memorandum of law in opposition to Plaintiff's motion for summary judgment.

## PRELIMINARY STATEMENT

This is an action brought by an individual plaintiff who opted out of the recovery conferred by settlement of the *Sykes* class action.  On May 10, 2016, Plaintiff filed a Complaint against LRC, MSH, Samserv, and others, asserting FDCPA and GBL § 349 violations.

Plaintiff is unabashed in his ambition to recreate the *Sykes* class action in this proceeding. However, Plaintiff's motion for summary judgment makes abundantly clear that he has failed to adduce any evidence to support the unproven allegations of Defendants' misconduct asserted in the *Sykes* action.  More importantly, Plaintiff 's motion for summary judgment lays bare his failure to adduce any evidence to support even ***his own claims.***  To the contrary, the evidence from discovery clearly establishes that LRC, not Plaintiff, is entitled to summary judgment.

As an initial matter, ***the unrebutted evidence establishes that Plaintiff did in fact owe the debt upon which the underlying collection lawsuit was based***.  Whereas Plaintiff's Complaint falsely claims that "he did not owe the debt alleged," his motion for summary judgment is notably silent on this point.  Instead, Plaintiff now asserts – for the first time – that several technical and legally immaterial issues nevertheless rendered the affidavit of merit in the underlying collection lawsuit misleading.  Those newly concocted arguments are plainly unavailing because the affidavit of merit correctly and clearly set forth the 16-digit account number and amount of Plaintiff's defaulted credit card debt.

LRC is also entitled to summary judgment because Plaintiff has adduced no evidence of improper conduct by the debt collection law firm (MSH) and process service company

---

[1]  Capitalized terms not defined herein shall have the meaning ascribed to them in LRC's Memorandum of Law in Support of its Motion for Summary Judgment, filed July 19, 2017 ("LRC Mem. in Supp. Mot. Summ. J.").  (Dk. No. 186.)

1

(Samserv) in the underlying collection lawsuit.  Indeed, the only "support" for Plaintiff's claims

against them are years-old, inadmissible declarations submitted in other proceedings, and the

wholly unsubstantiated allegations in the *Sykes* complaint.  Yet, even if Plaintiff had adduced any

evidence of FDCPA and GBL § 349 violations by MSH and Samserv, Plaintiff could not sustain

his claims against LRC because there is absolutely no evidence that LRC had knowledge of their

conduct in the underlying collection lawsuit.  Rather, it is uncontroverted that Samserv was hired

directly and solely by MSH, and MSH was managed by a portfolio manager (Rushmore),

without any input or involvement from LRC.

Plaintiff's FDCPA claim against LRC fails for the additional reason that LRC is not a

debt collector under the definition of the Act because Plaintiff has adduced no evidence that LRC

used an instrumentality of commerce in the debt collection business.  LRC also has a defense to

any FDCPA violation because Plaintiff does not even contest that any alleged violation by LRC

was the result of an unintentional bona fide error.  Finally, Plaintiff's GBL § 349 claim cannot

survive summary judgment because Plaintiff has not identified any admissible evidence that

LRC's allegedly improper conduct affected the public at large or injured Plaintiff.

Accordingly, this Court should deny Plaintiff's motion for summary judgment and grant

summary judgment in LRC's favor on all claims.

## **STATEMENT OF FACTS**

### **I.  Plaintiff's Seeks Summary Judgment On FDCPA And GBL § 349 Claims Based On Alleged Conduct By Samserv And MSH In The Underlying Collection Lawsuit**

On June 12, 2007, MSH filed the underlying Collection Lawsuit against Plaintiff arising

from a charged-off credit card debt in the amount of $5,809.51 from his account number 4225-

8117-2023-4690.  (Balber Decl. Ex. 3.)  After filing an affidavit of service and an affidavit of

merit affirming that Plaintiff owed the debt, MSH obtained a default judgment against Plaintiff

on September 7, 2007.  (*See* Balber Decl. Exs. 4-6.)  Plaintiff claims that he learned of the

Collection Lawsuit on June 29, 2015, when an information subpoena was served on his

employer.  (Pl.'s Undisputed Facts ¶ 235.)[2]  Soon thereafter, on October 15, 2015, MSH and

Plaintiff's counsel executed a stipulation that vacated the default judgment and discontinued the

Collection Lawsuit.  (Balber Decl. Ex. 10.)  On May 10, 2016, Plaintiff filed the instant action.

Plaintiff's motion for summary judgment does not point to any evidence that LRC was

involved in, or even had knowledge of, MSH and Samserv's conduct in the Collection Lawsuit.

(*See* Statement of Facts § III, *infra*.)  However, Plaintiff seeks summary judgment against LRC

based on vicarious liability and ratification liability theories arising from the following alleged

misleading means of debt collection employed by Samserv and MSH in the Collection Lawsuit:[3]

- Samserv allegedly failed to serve Plaintiff with the Collection Lawsuit complaint and executed a false affidavit of service, which was filed by MSH to obtain a default judgment.  (Pl.'s LRC Mem. at 13-14, 17-18);

- The affidavit of merit executed and filed by MSH in the Collection Lawsuit was allegedly false and misleading because it misstated the name of the original creditor. (Pl.'s LRC Mem. at 8-10, 17-19);

- A proposed stipulation executed and sent by MSH to Plaintiff on August 18, 2015 allegedly "attempted to dupe Mr. Guzman into releasing his rights against MSH and LRC." (Pl.'s LRC Mem.at 12-13, 24);

- The information subpoena executed and served by MSH on Plaintiff's employer in 2015 was an unconscionable means of debt collection.  (Pl.'s LRC Mem. at 10-11, 23-24); and

- The Collection Lawsuit complaint executed and filed by MSH improperly sought attorneys' fees that were not authorized by the cardholder agreement.  (Pl.'s LRC Mem. at 24-25.)

---

[2]  "Pl.'s Undisputed Facts" refers to the Rule 56.1 Statement of Material Facts in Support of Plaintiff's Motion for Partial Summary Judgment as to All Defendants, dated July 19, 2017.  (Dk. No. 195.)

[3]  "Pl.'s LRC Mem." refers to the Memorandum of Law in Support of Plaintiff Jose Guzman's Motion for Summary Judgment Against Defendant LR Credit 13, LLC, dated July 19, 2017.   (Dk. No. 194.)  "Pl.'s Samserv Mem." refers to Plaintiff's Memorandum of Law in Support of his Motion for Summary Judgment against Samserv and William Mlotok, dated July 19, 2017.  (Dk. No. 196.)

Plaintiff further asserts that the aforementioned alleged FDCPA violations also constitute violations of GBL § 349 because he has identified "evidence" that Samserv and MSH engaged in similar conduct in thousands of other lawsuits.  (Pl.'s Samserv Mem. at 12-15.)  As demonstrated below, Plaintiff has failed to show any evidence that MSH or Samserv engaged in the above-referenced conduct, let alone that LRC should be held vicariously liable for it.

## II.     There Is No Evidence To Support Plaintiff's Allegations Of FDCPA And GBL § 349 Violations By Any Of The Defendants

### A.  The Affidavit Of Merit Was Not False Or Misleading

Plaintiff argues that the affidavit of merit executed and filed by MSH was false because it identified the name of the original creditor as First USA Bank, instead of Chase Bank – an error that supposedly proves the affidavit of merit was not based on MSH's "personal knowledge." (Pl.'s LRC Mem. 19-20.)  However, the evidence adduced during discovery makes clear that Plaintiff has failed to raise a triable issue of fact as to whether the affidavit of merit was false or misleading because *the unrebutted documentary evidence conclusively establishes that Plaintiff did in fact owe the debt on which the Collection Lawsuit was based*.

A credit card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a *$5,809.51* debt charged off his account number *4225-8117-2023-4690* due to non-payment.  (Balber Decl. Ex. 11.)  This is the identical debt amount, and the exact same account number, identified in the affidavit of merit (as well as in the underlying complaint and default judgment) filed by MSH in the Collection Lawsuit.  (*Id.* Ex. 3, 5-6.)[4] Plaintiff himself has now conceded, as he must, that the exact amount he owed and the account

---

[4]   The affidavit of merit correctly states the original amount charged off Plaintiff's Chase credit card account ($5,809.51), as well as the total amount  owed ($7,535.65), which reflects pre-judgment interest following his default.  *See* N.Y. C.P.L.R. § 5001 (a), (b); N.Y. C.P.L.R. § 5004.  The account number was properly set forth in the Collection Lawsuit documents because Plaintiff's Chase Bank Account became inactive in 2004.

number of his Chase credit card debt was in fact reflected on the summons in the Collection

Lawsuit.  (Jose Guzman Dep.  (Balber Decl. Ex. 15) Tr. 56:13-19, 60:10-12, 63:16-25.)

Plaintiff's Complaint falsely asserted that Plaintiff "did not owe the alleged debt" (Compl.

¶ 64), but when confronted with evidence of the existence of his actual debt at his deposition,

Plaintiff adopted a new defense, advancing for the first time the unbelievable claim that he did

not understand that he owed the debt because the documents filed in the Collection Lawsuit

incorrectly stated the name of the original creditor:

> Q:  "But this 16-digit account number [on the Chase credit card statement in your name]
> is the same as the 16-digit number at the bottom of the summons, correct?"
>
> A:  "You can present all you want to me, but Chase [Bank] is not First [USA Bank].
> Yeah, it's First that's asking me for the money, not Chase.  I never received a file in court
> that says Chase."

(Jose Guzman Dep. (Keshavarz Decl. Ex. PP) Tr. 64:17-24.)  This explanation does not

withstand even a modicum of scrutiny – Plaintiff only had one $5,809.51 debt charged off from

the specific account number 4225-8117-2023-4690 in 2004.  He simply chose to deny it and

falsely claim in his Complaint that he did not owe the underlying debt.[5]

### B.  Other Alleged FDCPA And GBL § 349 Violations

The factual and legal deficiencies of Plaintiff's other FDCPA and GBL § 349 violations

alleged by Plaintiff are addressed in full below.  (*See* Argument §§ III.A, III.C-E, *infra*.)

---

[5]  Plaintiff's newly professed confusion as to the import of court documents bearing his Chase credit card account number is also belied by Plaintiff's repeated efforts to conceal his Chase credit card debt in this lawsuit.  Notably, Plaintiff failed to produce any statements concerning this Chase Bank account, and he deliberately violated this Court's orders by purposefully redacting the account numbers from all financial statements that he did produce.  (*See* June 2, 2017 Order (Dk. No. 170) at 8 ("The Court did not approve the redactions of bank and credit card statements.").)  Plaintiff also refused to answer LRC's interrogatory demanding that Plaintiff identify whether he "incur[red] any consumer debt greater than $5,000 . . . during the period January 1, 2000 to May 1, 2007."  (Balber Decl. Ex. 14, Interrogatory No. 19 (objecting that this interrogatory "seeks discovery that is not relevant").)  This knowing concealment of his debt further evidences that Plaintiff knew that he owed the debt from the underlying Collection Lawsuit.

### III.   LRC Had No Involvement In, Or Knowledge Of, MSH's Collection Efforts Or The Underlying Collection Lawsuit

Plaintiff's motion for summary judgment falsely ascribes MSH's conduct in the Collection Lawsuit to LRC, but there is absolutely no evidence that LRC ever had any knowledge of, or involvement in, the Collection Lawsuit.  In fact, even the evidence identified by Plaintiff on his motion contradicts him on this point:

- *Compare, e.g.,* Pl.'s LRC Mem. at 12 ("LRC sent Mr. Guzman [the proposed stipulation] dated August 18, 2015") *with* Keshavarz Decl. Ex. EEE  (evidencing that the letter enclosing stipulation was sent on MSH letterhead by an MSH attorney);[6] *and*

- *Compare* Pl.'s LRC Mem. at 23 ("LRC violated the FDCPA by continuing to execute on the default judgment") *with* Keshavarz Decl. Ex. KK (evidencing that MSH, not LRC, executed the information subpoena).

Plaintiff also admits that the portfolio manager ***Rushmore***, not LRC, "manage[s] the collection efforts of LRC" and "provide[]s day-to-day management and servicing of [LRC's debt] Portfolios.  (Pl.'s Undisputed Facts ¶¶ 19, 17 (citing Joint Venture Agreement (Balber Decl. Ex. 16) § 2.02).)  It is uncontroverted that Rushmore was also responsible for "supervising the performance of [MSH]," the attorneys hired to collect the debts owned by LRC.  (Joint Venture Agreement (Balber Decl. Ex. 16) § 7.02(a).)

Significantly, representatives of LRC, Samserv, and MSH all confirmed during their depositions that LRC was purely a passive investor with no involvement in, or knowledge of, MSH's collection efforts in the Collection Lawsuit:

- **Question:**  "After seeing the Egleson affirmation [from the *Sykes* lawsuit], why did LR Credit 13 continue to have Mel Harris use Samserv as the process server?"
  **Mr. Nittoli (LRC):**  "I have no knowledge of that.  Rushmore managed the operation of Mel Harris, the day-to-day.  Who they selected [as a process server], I just don't know."  (Nittoli Dep. ( Balber Decl. Ex. 17) Tr. 95:13-21; *see also id*. Tr. 96:12-97:5);

---

[6]  "Keshavarz Decl." refers to the Declaration of Ahmad Keshavarz in Support of Plaintiff's Motions for Summary Judgment, dated July 19, 2017.  (Dk. No. 192.)

- **Question:**  "Is it correct that neither you, nor anybody that worked at Samserv, ever discussed the [Guzman Collection] Lawsuit with anybody at LR Credit 13?
  **Mr. Mlotok (Samserv):**  "Correct."
  (Mlotok Dep. (Balber Decl. Ex. 18) Tr. 206:19-23); and

- **Question:**  "How did you . . . become the custodian of records for [LRC in the Guzman Collection Lawsuit]? . . . Was it a person who asked you?"
  …
  **Mr. Fabacher (MSH):**  "I believe it was Mel Harris."
  …
  **Question:**  "Did you ever speak to anybody who worked for LR Credit 13?"
  **Mr. Fabacher (MSH):**  "Never."
  (Fabacher Dep. (Balber Decl. Ex. 19) Tr. 208:25-:209:9.)

Plaintiff has failed to show any evidence to the contrary, and as such, he has failed to show LRC was involved in, or had knowledge of, the Collection Lawsuit filed by MSH against Plaintiff.

## **ARGUMENT**

The applicable legal standard is set forth in LRC's Memorandum of Law in Support of its Motion for Summary Judgment.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 8-9.)

### I.  **Plaintiff's Motion Rests Entirely On Inadmissible Hearsay And Unproven Allegations**

After 11 months of discovery, Plaintiff cannot identify any admissible evidence in support of his claims.  Rather, Plaintiff relies almost entirely on irrelevant, unreliable, and inadmissible "evidence," consisting largely of complaints and filings from unrelated litigations and administrative proceedings, and years-old declarations lifted wholesale from other actions. (*See, e.g.*, Pl.'s Undisputed Facts ¶¶ 31-38, 44, 50-55, 64, 71, 82, 93-120, 122- 129,134-141, 144-147.)  Such "evidence" is obviously inadmissible hearsay, but, most importantly, ***it has no bearing on the facts of this case.***  What's more, none of this "evidence" can or will be authenticated at trial, and none of the declarants have been deposed in this action or submitted expert reports.  LRC has thus been denied the opportunity to challenge the assertions and methodologies therein (all of which are highly suspect as applied to the facts of this proceeding). The Second Circuit has been unequivocal that such hearsay cannot be considered on a motion for

summary judgment.  *See Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997)* ("[O]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.").  Therefore, Plaintiff has failed to raise a triable issue of fact as to any of his claims.

Plaintiff's motion relies primarily on the Declaration of Nicholas Egleson (the "Egleson Declaration"), an IT consultant who executed a declaration in *Sykes* in 2011 based on a Samserv database produced in that proceeding.  (Keshavarz Decl. Ex. P, ¶¶ 1-2.)  Plaintiff argues that the Egleson Declaration is evidence that Samserv engaged in improper service in other cases.  (Pl.'s LRC Mem. at 4-5.)  And, Plaintiff contends that LRC's continued relationship with MSH when MSH served the information subpoena on Plaintiff's employer in 2015 – "three years after LRC knew of the Egleson Affirmation" – violated the FDCPA because the Egleson Declaration put LRC on notice of Samserv's prior misconduct.  (*id.* at 10-11.)  This Court cannot grant summary judgment on any claims premised on this declaration for multiple independent reasons.[7]

The Egleson Declaration has been offered for the truth of the matter asserted therein – that Samserv engaged in improper service in other cases – and would therefore be inadmissible in its present form at trial.  *See* Fed. R. Evid. 802.  For this Court to consider the Egleson Declaration on this motion, Plaintiff must present some indication that Egleson will testify at trial as to the facts set forth in his six-year old declaration.  *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001) ("[A]n implicit or explicit showing that the affiant is prepared to testify in a manner consistent with an affidavit is required to oppose summary judgment.").  Because "[n]one of Plaintiff's papers present any such indication . . . [the Court]  may not consider [the Egleson Declaration] in deciding this motion." *Chamberlin v. Principi*, No. 02-CV-8357, 2005 WL 1963942, at *10 (S.D.N.Y. Aug. 16, 2005), aff'd, 247 F. App'x 251 (2d Cir. 2007).

---

[7]  The other declarations cited by Plaintiff all suffer from the same infirmities set forth herein, as does much of the other "evidence" identified in Plaintiff's Rule 56.1 Statement, which should not be considered on this motion for the reasons set forth in this section and in the Defendants' Counter Rule 56.1 Statements.

Even if Egleson were prepared to testify at trial, his declaration would still be inadmissible because his testimony would be precluded by the Federal Rules of Evidence. Egleson could not provide lay testimony under Fed. R. Evid. 701 because as an IT consultant, he has no personal knowledge regarding Samserv's service of process.  Yet, Egleson is also barred from providing expert testimony in this case under Fed. R. Evid. 702 because he was not properly disclosed as an expert and has not satisfied the requirements for expert testimony such as the submission of an expert report pursuant to Fed. R. Civ. P. 26(b). [8]  Failure to provide a written report will "ordinarily [prevent a party from using] on direct examination any expert testimony not so disclosed."  Fed. R. Civ. P. 26(a)(2)(B) Advisory Committee Notes (1993).

Finally, even if Egleson planned to testify in this case and Plaintiff had satisfied the expert disclosure requirements of Fed. R. Civ. P. 26, the Egleson Declaration would still be inadmissible because the service records database Egleson purported to analyze was not produced during discovery and cannot be admitted into evidence.  (*See* Dk. No. 88 at Tr. 7:20-8:9, Dk. No. 103; Dk. No. 170 at 4-5 (Orders of Magistrate Judge Ellis and Judge Daniels precluding Plaintiff from obtaining Samserv's database in discovery).)[9]  It is "axiomatic that affidavits submitted in support of or in opposition to a summary judgment motion . . . 'shall set

---

[8]   While never actually identifying Egleson as an expert witness, Plaintiff obliquely refers to him in his Rule 26 Disclosures, which identified as a potential person with discoverable information "[p]ersons identified in the complaint and the exhibits thereto, including the expert who made the 'magic process server' report attached to the complaint."  (Balber Decl. Ex. 7 at 1.)  Nor did Plaintiff identify Egleson as an expert in response to LRC's interrogatory requesting that Plaintiff "[i]dentify each witness, including experts, you anticipate testifying in this matter."  (Balber Decl. Ex. 14 (Interrogatory. No. 21).)  Had Plaintiff complied with Fed. R. Civ. P. 26 by properly identifying Egleson as an expert and submitting an expert report, defendants would have disqualified Egleson due to the manifest flaws in his affidavit's methodology, particularly as applied to the facts of this case.  (*See* Samserv Opp. to Pl.'s Mot. for Summ. J. at 8-10.)

[9]   Furthermore, the spreadsheet data attached to the Egleson Declaration, which was purportedly derived from the process service database, is hearsay within hearsay.  It suffers from all of the fatal flaws set forth above, as well as the additional infirmity that it cannot be authenticated and is therefore, also inadmissible on that basis.  *See Chamilia, LLC v. Pandora Jewelry, LLC*, No. 04-CV-6017, 2007 WL 2781246, at *6, n.4 (S.D.N.Y. Sept. 24, 2007) (refusing to consider evidence that could not be authenticated on a motion for summary judgment).

forth such facts as would be admissible in evidence.'" *Roberts v. Ground Handling, Inc.,* 499 F. Supp. 2d 340, 360 (S.D.N.Y. 2007) (quoting Fed. R. Civ. P. 56(e)).

Plaintiff's reliance on the *Sykes* pleadings and orders is equally problematic.  (*See, e.g.,* Pl.'s LRC Mem. at 5 (repeating allegations from the *Sykes* amended complaint); *id.* at 5-6 (arguing the *Sykes* class certification decision "establishes" facts concerning MSH's filing of false affidavits of merit).)  The Supreme Court has unequivocally stated that "nothing in either the language or history of Rule 23 [] gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  Therefore, Plaintiff's attempts to present the *Sykes* class certification decisions as findings of fact should not be credited.  *See Marinaccio v. Barnett Banks, Inc.,* 176 F.R.D. 104, 109 (S.D.N.Y. 1997) (rejecting plaintiff's "calculated attempt to re-cast what is essentially the 'predominance' analysis required by Rule 23, as the 'merits' inquiry prohibited by *Eisen* at the class certification stage," and emphasizing that references to "the plaintiffs' legal and factual allegations . . . should not be misconstrued as findings of fact or conclusions of law").  Accordingly, this Court cannot consider Plaintiff's arguments based on inadmissible declarations and the *Sykes* pleadings and decisions.

## II.    LRC Cannot Be Held Liable Under The FDCPA Because It Is Not A Debt Collector

Plaintiff's motion for summary judgment must be denied, and LRC is entitled to summary judgment on Plaintiff's FDCPA claim, because Plaintiff has failed to adduce any evidence to make the threshold showing that LRC is a "debt collector," which is a prerequisite to establishing liability.  *See* 15 U.S.C. § 1692k(a).  The FDCPA defines "debt collector" as "[(i)] any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [(ii)] who regularly collects or

attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 USC 1692a(6).

Plaintiff has failed to demonstrate that LRC is a "debt collector" under the first definition because he has not adduced any evidence that LRC "uses any instrumentality of interstate commerce or the mails" in the debt collection business.  Indeed, the only factual citations in support of Plaintiff's claim that "LRC uses instrumentalities of interstate commerce" make no mention at all of LRC, let alone evidence LRC's use of an instrumentality of commerce in the collection of debt.  (*See* Pl.'s Undisputed Facts ¶ 3.)[10]  This case thus parallels *Kasalo v. Trident Asset Mgmt., LLC*, in which the court granted summary judgment for defendant on plaintiff's FDCPA claim because:

> "[Plaintiff] has not shown there is a genuine dispute of fact about whether [defendant] 'uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts' . . .  Although [the defendant creditor] purchased [plaintiff's] debt when it was in default, [defendant] has not undertaken any collection activity . . . . It hires others to so do, as evidenced by the fact that all of [plaintiff's] interactions in this case were with [the debt collection firm].  *[Defendant's] name was on the letter [the collection firm] sent to [plaintiff], but [defendant] did not send the letter or any other letters or notices, nor did it make any phone calls to [plaintiff]*. The Court therefore concludes that no reasonable jury could find in favor of [plaintiff] on his FDCPA claims against [defendant]."

53 F. Supp. 3d 1072, 1079 (N.D. Ill. 2014) (emphasis added).[11]

---

[10]  Plaintiff's statement of undisputed facts inexplicably claims that the following are evidence of *LRC's* use of the instrumentalities of interstate commerce in the collection of debts: (i) a Military Status Report from the Department of Defense that does not mention LRC or its intended recipient, or the means by which it was transmitted (Keshavarz Decl. Ex. D); (ii) deposition testimony of Mlotok in which he does not mention LRC and affirms  that only Samserv sometimes sends process via mail (though he does not mention whether it did so in the Collection Lawsuit, or ever did so on behalf of LRC) (Keshavarz Decl. Ex. E at Tr. 143:03-16); and (iii) an information subpoena issued by MSH, which makes no mention of LRC nor whether it was served by hand or actually delivered by mail.  (Keshavarz Decl. Ex. KK.)

[11]  The one court in this district that has distinguished *Kasalo* was not faced with the question presented here – *i.e.,* whether a defendant can be considered a debt collector under the FDCPA **when there is no evidence that it has used an instrumentality of interstate commerce in the business of debt collection.  *See Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 581 (S.D.N.Y. 2015).  *Polanco* also based its holding on its conclusion that all "debt purchasers or assignees are 'debt collectors' for purposes of the FDCPA," a

Nor has Plaintiff raised a triable issue of fact as to the second definition – *i.e.*, whether LRC collects debts "owed or due by another" – because the evidence clearly establishes that LRC purchased debts for its own account.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 7.)  In May 2017, the Supreme Court issued a unanimous decision in which it held that a company may collect debts purchased for its own account without triggering the second statutory definition of "debt collector."  *See Henson*, 137 S.Ct. at 1721 ("the Act defines debt collectors to include those who regularly seek to collect debts 'owed . . . another' [a]nd by its plain terms this language seems to focus our attention on third party collection agents working for a debt owner – not on a debt owner seeking to collect debts for itself").

Plaintiff's reliance on the *Syke*s decision denying defendants' motion to dismiss (Pl.'s Mem. at 14) is misplaced.  In *Sykes*, the plaintiffs asserted allegations (which the court assumed, in the context of a Rule 12(b)(6) motion, were true) that "the Leucadia defendants [themselves] used interstate wires, to prepare non-military affidavits and to freeze plaintiffs' bank accounts." 757 F. Supp. 2d at 423.  Here, after 11 months of discovery and on a motion for summary judgment, there is no evidence that LRC used any instrumentality of interstate commerce in the debt collection business. The other case law cited by Plaintiff in its motion (Pl.'s Mem. at 14) is simply irrelevant.  None of those decisions assessed whether the defendant had used the instrumentalities of commerce in its business (the relevant question here), and several interpreted 15 U.S.C. § 1692k(a) in ways that are no longer good law following the Supreme Court's decision in *Henson*.  Accordingly, LRC is not a debt collector and therefore, cannot be held liable under the FDCPA as a matter of law.

---

position that has since been rejected by the Supreme Court in *Henson v. Santander Consumer USA, Inc.*, 137 S.Ct. 1718 (2017), as set forth more fully below.

**III.     The Alleged Actions Of MSH And Samserv Do Not Constitute FDCPA Violations**

Even if Plaintiff had adduced evidence that LRC had any knowledge of, or involvement in, the Collection Lawsuit (which he has not), Plaintiff cannot establish a triable issue of fact as to LRC's liability since the acts of Samerv and MSH did not, in themselves, violate the FDCPA.

**A.  The Affidavit Of Service Was Not False**

As set forth in the opposition to Plaintiff's motion for summary judgment filed by Defendants Samserv and William Mlotok,[12] there is no evidence to support Plaintiff's allegation that the service of the Collection Lawsuit was so-called "sewer service" or that the affidavit of service was false.  At best, Plaintiff presents evidence that service occurred at an address that was not his then-current address – an act which does not constitute a FDCPA violation.

**B.  The Affidavit Of Merit Was Not False Or Misleading**

Unable to contest the clear evidence that he owed the debt on which the Collection Lawsuit was based (*see* Statement of Facts § II.A, *supra*), Plaintiff now desperately struggles to identify technical defects in the affidavit of merit.  (Pl.'s Mem. at 17-19).   However, the newly raised defects are completely immaterial and do not violate the FDCPA.

 "Section 1692e of the FDCPA proscribes debt collectors from using 'any false, deceptive, or misleading representation or means in connection with the collection of any debt.'" *Gabriele v. Am. Home Mortg. Servicing, Inc*., 503 F. App'x 89, 93 (2d Cir. 2012).  However, there is also "a materiality requirement [to this] prohibition." *Id.* at 94.  Whether a particular practice is "false, deceptive, or misleading" is examined based on the least sophisticated consumer.  *Id.*  The "'unsophisticated consumer' . . .  may be 'uninformed, naïve, [and] trusting,' but she has 'rudimentary knowledge about the financial world' and 'is capable of making basic

---

[12] LRC hereby incorporates the arguments raised therein by reference.

logical deductions and inferences.'"  *Hasbrouck v. Arrow Fin. Servs. LLC*, No. 1:09-CV-748, 2011 WL 1899250, at *3 (N.D.N.Y. May 19, 2011) (internal citation omitted).

      Plaintiff asserts that the affidavit of merit was misleading because its author "falsely swore that he had '***personal knowledge***' of the facts and proceedings relating to this action." (Pl.'s Mem. at 18.)  Yet, Plaintiff cites no evidence to support his claim that the affiant "in fact has no personal knowledge of any of the facts in the affidavit."  (Pl.'s Mem. at 18.)  Rather, it is self-evident from the actual affidavit that the affiant did have knowledge of the facts relating to the action because the affidavit of merit correctly stated the amount of Plaintiff's debt and the account number for Plaintiff's defaulted credit card debt.  (*See* Statement of Facts § II, *supra*.)  Plaintiff also argues that the affidavit of merit is false because the affiant did not review the "retail charge account agreement" or the "contracts showing a chain of title from the putative original creditor."  (Pl.'s LRC Mem. at 9-10, 18.)  However, the affidavit of merit does not affirm that he undertook those actions (Balber Decl. Ex. 5), and there is no legal obligation to assume such review.  *See, e.g.*, *Hasbrouck*, No. 1:09-CV-748, 2011 WL 1899250, at *1, 5-6 (dismissing FDCPA claim despite defendant creditor's admission it did not have "the cardholder agreement [or] copies of monthly statements"); *Qureshi v. OPS 9, LLC*, No. CV 14-1806, 2015 WL 6407883, at *3, 5 (D.N.J. Oct. 21, 2015) (granting judgment on the pleadings with respect to FDCPA claim despite defendant creditor's lacking documentation of the "chain of assignment").

      This case is therefore clearly distinguishable from *Toohey v. Portfolio Recovery Associates, LLC,* 15-cv-8098, 2016 WL 4473 (S.D.N.Y. Aug. 22, 2016) (cited in Pl.'s Mem. at 18-19).  In *Toohey,* this Court declined to dismiss allegations (which it assumed were true for purposes of a motion to dismiss) that the affidavit of merit falsely stated that the affiant had "review[ed the] Account Assignee's records, including a review of the business records

transferred to Account Asignee from [HSBC]."  (*See* Keshavarz Decl. Ex. VV (*Toohey* affidavit

of merit).)  The affiant in this case professed personal knowledge only as to the "facts and

proceedings relating to this action" (*see* Balber Decl. Ex. 5), but even if he had affirmed that he

had reviewed records similar to those identified by the *Toohey* affiant, Plaintiff identifies no

evidence to contradict him.  This case is thus plainly of a piece with the many decisions in which

an affidavit of merit's assertion of "personal knowledge" concerning a debt was not deemed

materially misleading under the FDCPA.  *See, e.g., Hasbrouck*, No. 1:09-CV-748, 2011 WL

1899250, at *5-6 (dismissing FDCPA claim based on allegations that the debt collector falsely

claimed to have "personal knowledge" of facts relating to the debt  because "plaintiff failed to

provide  competent and admissible evidence to prove that any of the [affidavit's] statements are

false [and] plaintiff also failed to provide any evidence proving that the alleged false statements

would mislead the least sophisticated consumer"); *Shetiwy v. Midland Credit Mgmt*., 15 S.

Supp.3d 437, 447 (S.D.N.Y. 2014) (dismissing FDCPA claims in which plaintiff alleged

defendants "submit[ted] affidavits containing false statements or facts beyond the affiant's

personal knowledge" in part because "[n]othing in the [complaint] suggests plaintiffs were

misled"); *Janson v. Katharyn B. Davis, LLC*, 806 F.3d 435, 437-38 (8th Cir. 2015) (allegation

that a collection law firm swore "to the truth of the allegations in affidavits when in fact [it did]

not know whether the allegations are true or not" was not "misleading" under the FDCPA

because plaintiff failed to "plausibly allege[] that the defendant's practice misled the state court

in any meaningful way"); *Manlapz v. Unifund CCR Partners,* No. 08-cv-6524, 2009 WL

3015166, *5 (N.D. Il. Sept. 15, 2009) (dismissing FDCPA claim because "the falsity of [the

affidavit of merit's] statement that [the affiant] had personal knowledge of facts that she gleaned

from a review of business records is a technicality which would not mislead the unsophisticated

consumer'); *Clark v. v. Main St. Acquisition Corp.*, No. 1:12-CV-408, 2013 WL 2295879, at *5 (S.D. Ohio May 24, 2013), aff'd sub nom., 553 F. App'x 510 (6th Cir. 2014).

Plaintiff also asserts that the affidavit of merit was false because it identified the original creditor as First USA Bank, rather than Chase Bank.  (Pl.'s Mem. at 18-19.)  Yet, this is immaterial and ignores the fact that the affidavit of merit correctly stated the amount of Plaintiff's charged-off credit card debt ***and the 16-digit account number from Plaintiff's Chase credit card account.***  (*See* Statement of Facts § II.A, *supra*.)  Under these circumstances, even the least sophisticated consumer could not misinterpret the existence and character of his debt. *See Qureshi,* No. CV 14-1806, 2015 WL 6407883, at *5 (dismissing FDCPA claim because "Plaintiff [did] not plausibly allege that the debt was unrecognizable"); *see also Easterling v. Collecto, Inc.,* 692 F.3d 229, 234 (2d Cir. 2012) ("courts should apply the standard in a manner that protects debt collectors against liability for unreasonable misinterpretations").

## C.  The Proposed Stipulation Was Not Unconscionable

There is simply no factual or legal basis for Plaintiff's claim that the August 18, 2015 proposed stipulation to discontinue the Collection Lawsuit – sent by MSH (***not LRC***) to Plaintiff – violated the FDCPA because it "attempted to dupe Mr. Guzman into releasing his rights against MSH and LRC."  (Pl.'s LRC Mem. at 24.)  Given that it is now indisputable that Plaintiff did in fact owe the debt on which the Collection Lawsuit was based, the discontinuance of the Collection Lawsuit with prejudice would have actually provided a significant financial benefit to Plaintiff.  The fact that Plaintiff did not sign MSH's initial stipulation and subsequently negotiated a different agreement (Balber Decl. Ex. 10), does not render the initial stipulation "unconscionable" under the FDCPA.

Nor can Plaintiff find support in *Cameron v. LR Credit 22, LLC,* 998 F. Supp. 2d 293, 298-99 (S.D.N.Y. 2014) (cited in Pl.'s LRC Mem. at 24), in which the Court found that a

stipulation with similar language did not preclude claims unknown to the debtor at the time the stipulation was signed. *Cameron* did not hold that the proposal of the stipulation itself constituted an FDCPA violation. LRC is not aware of any decision, and Plaintiff does not cite any case law, in which a proposed stipulation to vacate a judgment was held in and of itself to be a FDCPA violation. Therefore, this alleged FDCPA violation also fails as a matter of law.

### D. MSH's Information Subpoena Was Valid And LRC's Continued Relationship With MSH Did Not Violate The FDCPA

Plaintiff does not dispute that the information subpoena was valid. Rather, he argues that MSH's service of the information subpoena on Plaintiff's employer in 2015 constituted a FDCPA violation by LRC because LRC should have severed its relationship with MSH upon learning of the *Sykes* allegations years earlier. (Pl.'s Mem. at 10-11, 23-24.) Because there is no genuine issue of fact as to whether the information subpoena itself violated the FDCPA, *Dina v. Cuda & Associates* (cited in Pl.'s LRC Mem. at 22, 24) is clearly inapposite. 950 F.Supp.2d 396, 404-6 (2013) (holding a collection firm's execution notices were improperly issued and thus constituted FDCPA violations in their own right).

Nor is it true that LRC's knowledge of the *Sykes* allegations rendered any future efforts by MSH to enforce existing judgments as violations of the FDCPA. Significantly, while LRC may have been aware of the *Sykes **allegations*** in 2015, those allegations were never proven. Contrary to Plaintiff's claims (*see* Pl.'s LRC Mem. at 5), the *Sykes* class certification decisions simply accepted the allegations in the *Sykes* complaint as true and made no inquiry or findings as to their actual merits. (*See* Argument § I, *supra*.) Therefore, this case is easily distinguished from *Coble v. Cohen & Slamowitz, LLP*, 824 F. Supp.2d 568 (2011), the only case cited by Plaintiff in support of his claim that MSH's failure "to investigate the fraudulent practices of its process service company and continuing to enforce those judgments . . . violated the FDCPA."

(Pls. Mem. at 23.)  In *Coble*, the defendant collection law firm failed to investigate its process service company after it became aware of actual *evidence* (not allegations) that its process servers had falsified affidavits of service.  *Coble*, 824 F.Supp. 2d at 569 (noting the collection firm "became aware of a sworn affidavit of a former Midlantic process server . . . stating that Midlantic had falsified thousands of affidavits").  Plaintiff does not and cannot cite any case in which a creditor's continued use of a collection firm was deemed a FDCPA violation simply because the creditor became aware of mere allegations of the collection firm's misconduct.

**E.  The Reference To Attorneys' Fees In The Collection Lawsuit Was Not Deceptive**

Plaintiff's specious claim that MSH violated 15 U.S.C. 1692f(1) by including a clause in the Collection Lawsuit complaint seeking attorneys' fees (Pl.'s LRC Mem. at 24-25) blatantly ignores the factual record.  The default judgment entered in the Collection Lawsuit on September 7, 2007 – just three months after the Complaint was filed – explicitly "waived" any right to collect attorneys' fees and did not enter judgment thereon.  (Balber Decl. Ex. 6.)

There is no evidence that Plaintiff misunderstood that the Collection Lawsuit was seeking attorneys' fees.  Nor could there be, since Plaintiff alleges that he did not become aware of the Collection Lawsuit until June 2015 – eight years after the entry of the Collection Lawsuit default judgment in which MSH *waived* any right to collect attorneys' fees.  (Pl.'s Undisputed Facts ¶ 235.)  This case is readily distinguishable from *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp. 3d 160, 167 (S.D.N.Y. 2015) (cited in Pl.'s LRC Mem. at 25), in which a collection lawsuit complaint's demand for attorneys' fees was never waived and the debt collector actually sought  attorney's fees.  Rather, the facts of this case parallel *Argentieri v. Fisher Landscapes, Inc.* 15 F.Supp.2d 55, 62 (D. Mass. 1998), in which the law firm "had promptly withdrawn the disputed attorneys' fee demand [in its collection lawsuit] when it filed its amended complaint, which was before the FDCPA action was filed [against it]."

18

*Samms*, 112 F. Supp. 3d at 165 (distinguishing *Argentieri* in part on this basis). Therefore, the subsequently-waived demand for attorneys' fees in the Collection Lawsuit complaint did not violate the FDCPA.

**IV.   Plaintiff Is Not Entitled To Summary Judgment On His Claims Because LRC Cannot Be Held Liable For The Conduct Or Knowledge Of MSH Or Samserv**

As set forth above, Plaintiff has failed to raise a triable issue of fact as to the alleged FDCPA and GBL § 349 violations ***by any defendant in this case***. (*See* Argument § III, *supra*.) Even if he had done so, however, Plaintiff's claims cannot be sustained against LRC under theories of vicarious or ratification liability because the unrefuted evidence elicited during discovery establishes that LRC had no knowledge of, or involvement in, MSH's collection efforts. (*See* Statement of Facts § III, *supra*.)

**A.   LRC Is Not Vicariously Liable For MSH'S Conduct Or Knowledge Because There Is No Evidence That LRC Exercised Control Over MSH**

As an initial matter, there is no merit to Plaintiff's conclusory assertion that "LRC is ***directly*** liable for the acts it took as the named party in the collection lawsuit." (Pl.'s LRC Mem. at 15 (emphasis in original).) The only authority cited in support of this novel theory of liability – N.Y. Professional Disciplinary Rule 1.2(a) – simply states that a "lawyer shall abide by a client's decisions concerning the objectives of representation." It does not affirm that a client is liable in cases where, as here, an attorney allegedly engages in improper conduct outside of the scope of the client's knowledge and control. (*See* Statement of Facts, § III, *supra*.)[13] For this reason, every court that has addressed facts similar to the instant case has examined whether the creditor can be held ***vicariously*** liable for a law firm debt collector's conduct.

---

[13] It would be particularly perverse to hold LRC directly liable for MSH's conduct in the instant case because MSH's alleged violations of the FDCPA and GBL § 349 would have breached multiple contractual provisions in the collection agreement pursuant to which MSH was retained. (*See* LRC Mem. in Supp. of Mot. Summ. J. at 8.)

Recognizing the futility of his direct liability argument, Plaintiff desperately argues (Pl.'s LRC Mem. at 15-17) that, in the FDCPA context, New York district courts do not adhere to the well-settled principle of agency that "to be liable for the actions of another, the principal must exercise control over the conduct or activities of the agent." *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (citing Restatement (Second) of Agency § 1 (1958)).  Plaintiff further urges the Court to disregard *Bodur v. Palisades Collection, LLC*, in which Judge Peck held that a creditor could not be held vicariously liable for the conduct of the law firm that it had hired to collect a defaulted consumer debt because the plaintiff "failed to provide any evidence [on the creditor's summary judgment motion] . . . that [the creditor] exercised control over [the law firm] or was involved in any of [the firm's] collection attempts." 829 F. Supp.2d 246, 259 (S.D.N.Y. 2011).

Plaintiff suggests that this Court should abandon the standard precepts of agency law because "the more recent line of cases, beginning with *Okyere*, have held that under basic agency law, there in fact is no requirement of the exercise of control for vicarious liability."  (Pl.'s LRC Mem. at 15-16 (citing *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 515-516 (S.D.N.Y. 2013)).)   This argument is fundamentally flawed and fails for myriad reasons.

As an initial matter, it is simply not true that *Bodur* was an isolated decision that is no longer followed in the wake of *Okyere*.  (Pl.'s LRC Mem. at 15-16.)  New York federal courts have routinely applied standard agency law principle to FDCPA claims – both before and after *Okyere*.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 11-12 (collecting cases).)

It is also untrue that *Okyere* and *Bodur* are inconsistent.  *Okyere* did not vitiate the required element of control in establishing and proving vicarious liability.  Rather, *Okyere* simply held that a plaintiff need not specifically **plead** control in a complaint in order to survive a

motion to dismiss when it has otherwise sufficiently pled allegations of a principal-agent

relationship.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 12.)

Plaintiff urges this Court to rely on decisions that disregard *Bodur* and the standard

precepts of agency law on the basis of their conclusion that the "FDCPA has 'broad, pro-debtor

objectives,' which are best served by imputing a debt collection attorney's actions onto its client,"

regardless of whether the principal exercised control over the agent.  (Pl.'s LRC Mem. at 16

(quoting *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 586 (S.D.N.Y. 2015).)

However, the Supreme Court recently rejected a similar reliance on "pro-debtor" policy

arguments to expand the FDCPA's reach as "quite a lot of speculation."  *See Henson v.

Santander Consumer USA, Inc.*, 137 S.Ct. 1718, 1724 (2017) (refusing to credit policy

arguments because the advent of the defaulted debt market occurred after the FDCPA's passage).

Another flawed policy argument advanced by Plaintiff is that "'the *Bodur* rule could cut

plaintiffs off from recovery altogether if debt collectors are clever enough to avoid direct control

in each link of the chain, while leaving consumer-facing entities so undercapitalized as to be

judgment-proof.'"  (Pl.'s LRC Mem. at 17 (quoting *Gomez v. Resurgent Capital Servs., LP*, 129

F. Supp. 3d 147, 158 n. 8 (S.D.N.Y. 2015).)  Indeed, the instant case proves that this policy

argument is mere speculation because despite having suffered neither monetary damages nor any

emotional distress (*see* LRC Mem. in Supp. Mot. Summ. J. at 20-24), Plaintiff has already

received a substantial settlement payment from the allegedly consumer-facing and supposedly

undercapitalized MSH.  (*See* Laura Guzman Dep. (Balber Decl. Ex. 2) Tr. 46:10-20.)[14]

---

[14] Plaintiff's argument that MSH does not have the same $40 billion net worth as Leucadia National
Corporation is absurd.  (*See* Pl.'s LRC Mem. at 17.)  The net worth of **non-party** Leucadia National
Corporation is obviously irrelevant to this case, and Plaintiff's bemoaning of his inability to pursue claims
against a defendant with similar assets is emblematic of how his delusional assessment of this case's value
has precluded the parties from reaching a settlement.

A far more worrisome policy concern is that imposing judicially-created exceptions to standard agency law principles in the FDCPA context will encourage frivolous lawsuits such as the instant case.  *Cf. Huebner v. Midland Credit Mgmt., Inc.,* 85 F. Supp. 3d 672, 673 (E.D.N.Y. 2015) ("[T]he use of the [FDCPA] has evolved into something quite different than its original purpose would suggest . . . . These cases are often brought for the non-salutary purpose of squeezing a nuisance settlement and a pittance of attorneys' fees out of a collection company, which it will often find cheaper to pay than to litigate.").  Abrogating the standard precepts of agency law to impose vicarious liability on legitimate debt owners would also deter companies like LRC from purchasing non-performing debt or, at a minimum, increase the price at which they were willing to pay for it.  *See* Todd J. Zywicki, *The Law and Economics of Consumer Debt Collection and Its Regulation*, 28 Loy. Consumer L. Rev. 167, 183-84 (2016).

More fundamentally, however, the Supreme Court's unanimous decision in *Henson* makes clear that this Court need not (and should not) weigh these competing policy rationales:

> "And while it is of course our job to apply faithfully the law Congress has written, it is never our job to rewrite a valid statutory text  . . . . Indeed, it is quite mistaken to assume, as petitioners would have us, that 'whatever'  might appear to 'further[ ] the [FDCPA]'s primary objective must be the law.'  . . .  [We] will not presume with petitioners that any result consistent with their account of the statute's overarching goal must be the law but will presume more modestly instead 'that [the] legislature says . . . what it means and means . . . what it says.'"

*Henson*, 37 S. Ct. at 1725 (internal citations omitted); *see also Jacobson v. Healthcare Fin. Servs., Inc.,* 434 F. Supp. 2d 133, 138 (E.D.N.Y. 2006), aff'd in part, vacated in part, rev'd in part, 516 F.3d 85 (2d Cir. 2008) (warning against deviating from the FDCPA's text to create "judicially developed standards" because doing so "enable[s] a class of professional plaintiffs").  Congress could have drafted the FDCPA to vitiate standard agency law precepts – ***despite the fact that they apply in all other circumstances*** – but it chose not to do so.  This Court should honor that choice and follow the *Bodur* precedent.

**B.  There Is No Evidence That LRC Is Subject To Ratification Liability**

Plaintiff falsely claims that LRC is liable for MSH and Samserv's conduct by ratification because LRC allegedly continued to rely upon their services after LRC became aware of *Sykes'* general allegations in 2009.  (Pl.'s Samserv Mem. at 17.)  This newly-conceived ratification liability argument is wholly without merit.  As a threshold matter, there are ***no allegations*** to support the imposition of ratification liability in the Complaint, and Plaintiff is therefore precluded from asserting that his ratification liability theory provides a basis for summary judgment (or to avoid the entry of summary judgment in LRC's favor).  (*See* LRC Mem. in Supp. Mot. Summ. J. at 14.)  Even if Plaintiff had attempted to plead facts sufficient to impose ratification liability, LRC is still entitled to summary judgment because Plaintiff alleges only that LRC was generally aware of improper service by Samserv and the filing of improper affidavits of merit by MSH in other lawsuits.  (Pl.'s Samserv Mem. at 13-14.)   It is well-settled law that general knowledge of wrongful practices is not sufficient to impose liability, and that LRC must have had full knowledge of the improper conduct alleged ***in this case*** in order to ratify it.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 14-15.)  Plaintiff does not allege such specific facts.

Finally, even assuming that Plaintiff could establish that LRC learned in 2009 that ***Plaintiff*** had been improperly served in 2007 – which he does not and cannot do – his attempt to impose ratification liability on LRC would still fail because there is no evidence that LRC "accepted the benefits of . . .[the] unauthorized act."  *See In re First Republic Grp. Realty, LLC.*, 421 B.R. 659, 682 (Bankr. S.D.N.Y. 2009).  Plaintiff asserts that LRC accepted the benefits of the unauthorized act by "continuing to execute on the [Collection Lawsuit] judgment" (Pl.'s Samserv Mem. at 17), but again, there is no evidence that LRC had any knowledge that MSH served an information subpoena on Plaintiff's employer or had taken any other actions to enforce

the Collection Lawsuit default judgment.  (*See* Statement of Facts § III, *supra*.)  Accordingly,

Plaintiff's ratification liability argument fails on this basis as well.

**V.  Even If A Triable Issue Of Fact Exists Regarding LRC's Vicarious Or Ratification Liability, LRC Is Still Entitled To Summary Judgment On Plaintiff's FDCPA Claim Because Any FDCPA Violation Was A Bona Fide Error**

Regardless of whether a genuine issue of material fact exists as to LRC's liability on

Plaintiff's FDCPA claim, the undisputed evidence establishes LRC's entitlement to summary

judgment because any FDCPA violation by LRC was not intentional and resulted from a bona

fide error.  (*See* LRC Mem. in Supp. Mot. Summ. J. at 8, 16-18 (citing 15 U.S. C. § 1692k).)

**VI.  Plaintiff Has Not Raised A Triable Issue Of Fact As To His GBL § 349 Claim**

Plaintiff fails to point to any admissible evidence or relevant law to support his GBL §

349 claim.  Accordingly, LRC, not Plaintiff, is entitled to summary judgment thereon.

First, the hornbook agency law principle described above – that the principal must

exercise control over the conduct of the agent to be vicariously liable (*see* Argument § IV, *supra*)

– has been uniformly applied in the GBL § 349 context.  (*See* LRC Mem. in Supp. Mot. Summ.

J. at 18 (collecting cases).)  Significantly, ***Plaintiff suggests that this principle is only***

***inapplicable in the FDCPA context.***  (Pl.'s LRC Mem. at 15-17.)  And, indeed, the case law

cited by Plaintiff to advance this argument in the FDCPA context – *i.e., Okyere* – ***has never been***

***applied in the context of a GBL § 349 claim***.  For those reasons, it is undisputed that LRC

cannot be held vicariously liable for any alleged GBL § 349 violation by MSH and Samserv

because there is no evidence that it exercised any control over those entities.

Even if LRC could be held vicariously liable for the conduct of MSH and Samserv, it

would remain entitled to summary judgment on Plaintiff's GBL § 349 claim because Plaintiff has

failed to raise a triable issue of fact as to any of its essential elements:  "first, that the challenged

act or practice was consumer-oriented; second, that it was misleading in a material way; and

third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (N.Y. 2000). Satisfaction of the first element requires that Plaintiff demonstrate that LRC's acts have a broader impact on consumers at large. (*See* LRC Mem. in Supp. Mot. Summ. J. at 19.) However, the alleged "evidence" in support of this charge – the purported execution of similar affidavits of merit and Samserv's purported improper service of process in other cases – rests entirely on inadmissible evidence that cannot be considered on a motion for summary judgment. (*See* Argument § I, *supra*.) The legal authority on which Plaintiff relies, *Midland Funding, LLC v. Girald* (cited in Pl.'s Samserv Mem. at 14), is clearly inapposite because that case concerned a motion to dismiss (in which allegations are assumed to be true) where "***allegations*** [of widespread similar practices] not limited to the defendant" stated a claim of conduct affecting consumers at large. 961 N.Y.S.2d at 752. Because Plaintiff has failed to adduce any evidence that LRC's allegedly improper conduct affected ***anyone*** other than Plaintiff himself, LRC is entitled to summary judgment on Plaintiff's GBL § 349 claim. (*See* Supp. Mot. Summ. J. at 19 (collecting cases).)

Plaintiff attempts to argue that he has satisfied the second element because LRC's conduct was "'deceptive or misleading' for the same reasons it violates the FDCPA." (Pl.'s Samserv Mem. at 15.) But, as set forth above, Plaintiff has failed to raise a triable issue of fact as to whether Samserv or MSH even violated the FDCPA, let alone LRC.

Finally, Plaintiff has failed to demonstrate any injury as a result of LRC's conduct. (*See* LRC Mem. at 20-24 (establishing that Plaintiff alleges no monetary damages and that his unsubstantiated emotional distress claim is contradicted by his own witnesses).) Accordingly, LRC is also entitled to summary judgment on Plaintiff's GBL § 349 claim on this basis as well. *See, e.g., Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005).

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth in support of LRC's motion for summary

judgment, LRC respectfully requests that the Court deny Plaintiff's motion for summary

judgment in its entirety and an enter summary judgment in LRC's favor on all claims.


Dated: New York, New York
        August 9, 2017

                                        Respectfully submitted,

                                        HERBERT SMITH FREEHILLS NEW YORK LLP


                                        By: */s/ Scott S. Balber*
                                            Scott S. Balber
                                            450 Lexington Ave, 14th Floor
                                            New York, New York 10017
                                            Tel:  (917) 542-7600
                                            Fax:  (917) 542-7601
                                            Scott.Balber@hsf.com
                                            *Attorneys for Defendant LR Credit 13, LLC*