**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSE GUZMAN,

     Plaintiff,

  -against-

MEL S. HARRIS AND ASSOCIATES, LLC
LR CREDIT 13, LLC
MEL S. HARRIS
DAVID WALDMAN
KERRY H. LUTZ
TODD FABACHER
MICHAEL YOUNG
SAMSERV, INC.
JOHN ADINO
WILLIAM MLOTOK

    Defendants.

Case No. 16-cv-03499-GBD-RLE

**DEFENDANT LR CREDIT 13, LLC'S RESPONSE TO**
**PLAINTIFF'S RULE 56.1 STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, Defendant LR Credit 13, LLC ("LRC") respectfully submits the following Statement:

1. Defendant LR Credit 13, LLC ("LRC") is a limited liability corporation organized under the laws of the State of New York. *See* Keshavarz Decl. [Exhibit A, Articles of Organization of LR Credit 13, LLC; Exhibit B, March 10, 2017 Deposition Transcript of Rocco Nittoli, the Corporate Representative of LRC (hereinafter "Nittoli Trns."), 18:06-17; Exhibit C, Operating Agreement of LR Credit 13, LLC (hereinafter "Operating Agreement"), ¶ 3 ("The Company is formed . . . for the sole purpose of investing in a portfolio of New York State Domiciled defaulted consumer indebtedness.")

   *Undisputed that LRC is a limited liability company organized under the laws of the State of New York.*

2. The sole purpose of LRC is to purchase portfolios of charged of consumer debts, and collection lawsuits are filed in the name of LRC to collect on those putative debts. *See* Keshavarz Decl. [Exhibit A, Articles of Organization of LR Credit 13, LLC; Exhibit B, Nittoli Trns., 18:06-17; Exhibit C, Operating Agreement, ¶ 3 ("The Company is formed . . . for the sole purpose of investing in a portfolio of New York State Domiciled defaulted consumer indebtedness.")].

   *Disputed. The cited documents and transcript do not state that collection lawsuits are filed in the name of LRC to collect on debts. However, it is undisputed that the Operating Agreement of LRC (the "Operating Agreement") states that LRC was formed for "the sole purpose of investing in a portfolio of New York State domiciled defaulted*

*consumer indebtedness . . . and engaging in any and all activities necessary or incidental to the foregoing."  (Operating Agreement (Keshavarz Decl. Ex. C) ¶ 3.)*

3.  LRC uses instrumentalities of interstate commerce in its business. *See* Keshavarz Decl. [Exhibit D, Military Status Report from Department of Defense Manpower Data Center in Arlington, VA; Exhibit E, March 15, 2017 Deposition Transcript of William Mlotok ("Mlotok Trns") at 143:03-16 (mailing copy of summons and complaint); June 29, 2015 Information Subpoena sent by MSH on behalf of LRC ("June 29, 2015 Information Subpoena")]

    ***Disputed.***  *Plaintiff has cited to no evidence that LRC used any instrumentality of interstate commerce in the collection of consumer debt.  There is no basis for Plaintiff's claim that the following are evidence of LRC's use of the instrumentalities of interstate commerce in the collection of debts:  (i) a Military Status Report from the Department of Defense that does not mention LRC or its intended recipient, or the means by which it was transmitted (Keshavarz Decl. Ex. D); (ii) deposition testimony of Mlotok in which he does not mention LRC and affirms only that Samserv, Inc. sometimes sends process via mail (though he does not mention whether it did so in the Collection Lawsuit, or ever did so on behalf of LRC) (Keshavarz Decl. Ex. E at Tr. 143:03-16); and (iii) an information subpoena issued by MSH, which makes no mention of LRC nor whether it was served by hand or via mail.  (Keshavarz Decl. Ex. KK.)[1]*

4.  Defendant Samserv, Inc. ("Samserv"), a process serving agency, is a domestic business corporation organized under the laws of the State of New York. *See* Keshavarz Decl. [Exhibit F, Certificate of Assumed Name of Samserv, Inc.].

---

[1]     "Keshavarz Decl." refers to the Declaration of Ahmad Keshavarz in Support of Plaintiff's Motions for Summary Judgment, dated July 19, 2017.  (Dk. No. 192.)

*LRC hereby incorporates by reference the response to this paragraph set forth in the Counter Rule 56.1 Statement of Defendants Samserv, Inc. and William Mlotok, dated August 9, 2017 (the "Samserv Counter Rule 56.1 Statement").*[2]

5. Defendant William Mlotok is the owner of Samserv and is the chief executive officer, manager, and decision maker at Samserv. *See* Keshavarz Decl. [Exhibit E, Mlotok Trns, at 23:19-22; passim].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

6. Samserv uses instrumentalities of interstate commerce in its business. *See* Keshavarz Decl. [Exhibit E, Mlotok Trns.at 143:03-16; Exhibit AA, Affidavit of Service in Guzman collection case (mailing copy of summons and complaint)].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

7. LRC is a wholly owned subsidiary of proposed Defendant LR Credit, LLC ("LR Credit"). *See* Keshavarz Decl. [Exhibit C, Operating Agreement].

   ***Undisputed*** *that LR Credit, LLC ("LR Credit") is the sole member of LRC.*

8. LR Credit was formed in 2003 through a joint venture agreement between proposed Defendants Rushmore Recovery Management, LLC ("Rushmore") and L-Credit, LLC ("L-Credit"). *See* Keshavarz Decl. [Exhibit G, Joint Venture and Limited Liability Agreement of LR Credit, LLC ("Joint Venture Agreement")].

---

[2]   In incorporating responses to Plaintiff's Rule 56.1 Statement of Material Facts asserted by Samserv, Inc. and William Mlotok, LRC asserts each objection by Samserv, Inc. and William Mlotok as if asserted by LRC.

*Undisputed that Rushmore  Management, LLC ("Rushmore") and L-Credit, LLC ("L-Credit") entered into a joint venture agreement on November 12, 2003 (the "Joint Venture Agreement") to form a limited liability company for the purpose of serving as a holding company for investments in portfolios consisting of New York State domiciled defaulted consumer indebtedness.  (Joint Venture Agreement, preamble (Keshavarz Decl. Ex. G).)  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

9.  L-Credit is a subsidiary of Leucadia National Corporation ("Leucadia"). *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 16:17-24; 17:16-20].

*Undisputed that L-Credit is an indirect subsidiary of Leucadia National Corporation ("Leucadia").  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

10.  Leucadia, through a wholly owned subsidiary, has a 90% interest in L-Credit. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 16:17-24; 17:16-20].

*Undisputed that an indirect subsidiary of Leucadia holds a 90% interest in L-Credit. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

11.  LR Credit created a series of wholly owned subsidiaries to hold consumer debts. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 18:06-22; Exhibit C, Operating Agreement].

*Undisputed that LR Credit established several entities that purchased consumer debt. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

12. LRC is a subsidiary company created by LR Credit for the sole purpose of holding and collecting on defaulted consumer debts. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 18:06-22; Exhibit C, Operating Agreement].

   ***Disputed.*** *The cited document does not state that LRC was created to "collect" on defaulted consumer debts. However, it is undisputed that the Operating Agreement states that LRC was formed for "the sole purpose of investing in a portfolio of New York State domiciled defaulted consumer indebtedness . . . and engaging in any and all activities necessary or incidental to the foregoing." (Operating Agreement (Keshavarz Decl. Ex. C) ¶ 3.)*

13. Under the 2003 joint venture agreement between L-Credit and Rushmore, Rushmore is to identify portfolios of defaulted consumer debts for possible purchase, and bring them to L-Credit for approval. *See* Keshavarz Decl. [Exhibit G, Joint Venture Agreement].

   ***Undisputed*** *that the Joint Venture Agreement provides that Rushmore has the primary responsibility of identifying potential portfolios of consumer indebtedness, and will present a funding request to L-Credit that identifies each account in the portfolio. (Joint Venture Agreement (Keshavarz Decl. Ex. G) §§ 2.02, 4.03.) However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

14. Should L-Credit agree to invest in a portfolio proposed by Rushmore, L-Credit would generally provide 95% of the capital to purchase the portfolio, and Rushmore would provide the remaining 5%. *See* Keshavarz Decl. [Exhibit G, Joint Venture Agreement at 5.01-5.02].

*Undisputed that the Joint Venture Agreement provides that after L-Credit approves the purchase of a portfolio of consumer indebtedness, L-Credit would provide 95% of the purchase price to LR Credit, and Rushmore would provide the remaining 5%.  (Joint Venture Agreement (Keshavarz Decl. Ex. G) §§ 5.01-02.)  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

15. Leucadia provides the capital to fund L-Credit's share of the purchase price for the defaulted consumer debt portfolios that LRC purchases. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 10:21-25].

*Disputed.   The deposition transcript excerpt cited by Plaintiff states only that Leucadia made unspecified investments in portfolios of consumer indebtedness between 2003 and 2011.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

16. Leucadia has assets of $40 billion. *See* Keshavarz Decl. [Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at p. 23, note 18].

*Undisputed that LRC's corporate representative stated Leucadia has approximately $40 billion in assets. However, LRC notes that publicly available documents reflect Leucadia's current financial status.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

17. The Joint Venture Agreement further provides that "Rushmore will provide personnel to the joint venture to enable the LLC and any Subco to provide day-to-day management and servicing of the Portfolios, including the services of David Waldman

and Kerry Lutz who have significant management responsibility over Rushmore." *See* Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶2.02].

**_Undisputed._**

18. Rushmore's role at LR Credit is to identify portfolios of consumer debts for possible purchase. *See* Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b)].

   **_Undisputed_** *that the Joint Venture Agreement provides that Rushmore has the primary responsibility for identifying portfolios of consumer indebtedness for potential purchase. (Joint Venture Agreement (Keshavarz Decl. Ex. G) §§ 5.01-02.) However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

19. Rushmore's role is also to manage the collection efforts of LRC and its subsidiaries. See Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b)].

   **_Undisputed_** *that the Joint Venture Agreement states that Rushmore will provide "day-to-day management and servicing of" the debt portfolio held by LRC and "collection of the underlying debt." (Joint Venture Agreement (Keshavarz Decl. Ex. G) § 2.02.) However, LRC disputes that it LRC has any subsidiaries, or that the cited sections of the Joint Venture Agreement support Plaintiff's statement in this paragraph.*

20. Rushmore is both a member and an agent of LR Credit. See Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 7.03(b)].

   **_Disputed._** *The section of the Joint Venture Agreement cited by Plaintiff does not mention LR Credit, or whether Rushmore is a member and agent thereof. That section states in full: "[Leucadia] understands and acknowledges that the members and principals of Rushmore are also members, officers or employees of the Attorney [Mel*

*S. Harris and Associates, LLC ("MSH")]."  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

21. Rushmore is an agent of LRC. *See* Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 7.03(b)].

   ***Disputed.***  *The section of the Joint Venture Agreement cited by Plaintiff does not mention LRC, or whether Rushmore is an agent thereof.  That section states in full: "[Leucadia] understands and acknowledges that the members and principals of Rushmore are also members, officers or employees of the Attorney [MSH]."  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

22. LR Credit hired former Defendant Mel S. Harris and Associates, LLC ("MSH") to collect the defaulted consumer debts through litigation and other means on behalf of LR Credit and its subsidiaries.  *See* Keshavarz Decl. [Exhibit I, Agreement for Legal Collection Service ("Collection Agreement")].

   ***Undisputed*** *that LR Credit and MSH entered into an Agreement for Legal Collection Service (the "Collection Agreement"), under which MSH agreed to "commenc[e] collection action under and in compliance with the [FDCPA] and any other applicable law."  (Collection Agreement (Keshavarz Decl. Ex. I) § I.A.)  The Collection Agreement states further that MSH will represent LR Credit in "all phases of collection and litigation, if any . . . ." (Id. § I.B.)*

23. The principles of Rushmore, including Defendant, are the partners and Executive Director of MSH.  See Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 7.03(b)]

*Undisputed that the cited provision of the Joint Venture Agreement provides that "the members and principals of Rushmore are also members, officers or employees of the Attorney [MSH]."  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

24. LRC and LR Credit hired MSH at a rate that was lower than the standard industry rate for comparable work. See Keshavarz Decl. [Exhibit B, Nittoli Trns.at 62:11-25; Exhibit I, Collection Agreement].

*Disputed.  Plaintiff does not cite any evidence to show that LRC ever "hired" MSH (the Collection Agreement was executed by MSH and LR Credit).  Nor has Plaintiff cited any evidence to show that the rate that MSH charged to LR Credit was lower than the "standard industry rate for comparable work."  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

25. Rushmore's role in the joint venture was to oversee the day to day collection activities of LR Credit and its subsidiaries, including LRC. See Keshavarz Decl. [Exhibit G, Joint Venture Agreement at ¶ 5.01-5.02; 4.03(a-b); Exhibit B, Nittoli Trns.at 96:24-97:05].

*Undisputed that the Joint Venture Agreement states that Rushmore will provide "day-to-day management and servicing of each" of the debt portfolios held by LR Credit and its subsidiaries and "collection of the underlying debt."  (Joint Venture Agreement (Keshavarz Decl. Ex. G) § 2.02.)*

26. LRC and L-Credit had the authority to supervise the collection activities of MSH. *See* Keshavarz Decl. [Exhibit I, Collection Agreement].

*Disputed.*  *The Collection Agreement was executed by LR Credit and MSH.  Neither LRC nor L-Credit is a party to the Collection Agreement, nor does the Collection Agreement grant LRC or L-Credit any supervisory authority over MSH.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

27. Samserv regularly used a process server named Nasser Atrash to serve summons and complaints. *See* Keshavarz Decl. [Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.]

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

28. On January 28, 2014, an Administrative Law Judge for the Department of Consumer Affairs ("DCA") issued an order revoking Mr. Atrash's process server license and finding that Mr. Atrash executed false affidavits of service on five occasions. *See* Keshavarz Decl. [Exhibit K, New York City Department of Consumer Affairs Decision and Order revoking Nasser Atrash's process server license ("DCA Decision Revoking Atrash license")].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

29. The DCA further found that Mr. Atrash had repeatedly failed to log service attempts, in violation of DCA rules. *See* Keshavarz Decl. [Exhibit K, DCA Decision Revoking Atrash license].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

30. The DCA further found that Mr. Atrash repeatedly failed to inform the DCA of traverse hearings that had been scheduled in cases for which Mr. Atrash allegedly served process. *See* Keshavarz Decl. [Exhibit K, DCA Decision Revoking Atrash license].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

31. On March 24, 2010, Mr. Atrash swore to having served twenty-two defendants in four hours and forty-two minutes. *See* Keshavarz Decl. [Exhibit L, September 17, 2010 Affidavit of Jeffrey A Schwartz, Esq. ("Schwartz Affidavit"), ¶ 7].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

32. In order to serve the twenty-two defendants on March 24, 2010, Mr. Atrash would have to have travelled roughly 84.7 miles. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

33. Mr. Atrash claims that he spoke with individuals at each of the twenty-two residences he visited during this time. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

34. On March 30, 2010, Mr. Atrash claims to have served six defendants in three hours and twelve minutes. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

35. To serve the six individuals on March 30, 2010, Mr. Atrash would have to have travelled roughly 74.4 miles. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

36. It was raining on March 30, 2010. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

37. In sixty-three of sixty-five affidavits of service analyzed by Mr. Schwartz, Mr. Atrash claimed that that defendant was not home. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

38. Yet, in none of the cases was the home empty, requiring "nail and mail" service. *See* Keshavarz Decl. [Exhibit L, Schwartz Affidavit, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

39. Samserv regularly used a process server named Husam Al-Atrash to serve summons and complaints. *See* Keshavarz Decl. [Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.]

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

40. On February 3, 2014, Mr. Al-Atrash entered into a consent agreement with the DCA arising from allegations that Mr. Al-Atrash repeatedly failed to log instances of alleged service, and repeatedly failed to notify the DCA of traverse hearings scheduled in cases for which he purportedly served process. *See* Keshavarz Decl. [Exhibit M, New York City Department of Consumer Affairs Notice of Hearing against Husam Al-Atrash;

Exhibit N, New York City Department of Consumer Affairs Consent Order with Hasam Al-Atrash].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

41. Samserv regularly used a process server named Michael Mosquera to serve summons and complaints. *See* Keshavarz Decl. [Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

42. Mr. Mosquera's process server license was revoked on August 8, 2000 because the DCA found that Mr. Mosquera lied about serving a summons and complaint on an individual named Joseph McMahon. *See* Keshavarz Decl. [Exhibit O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's process server's license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

43. Specifically, the DCA Administrative Law Judge found that Mr. Mosquera had committed "the most serious violation a process server can commit," and that "Mr. Mosquera's action not only injured Mr. McMahon by subjecting him to emotional trauma, embarrassment and inconvenience, it also strikes a serious blow to the fundamentals of due process." *See* Keshavarz Decl. [Exhibit O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's process server's license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

44. Although the DCA's decision revoking Mr. Mosquera's process server's license was a matter of public record, Samserv nonetheless chose to use Mr. Mosquera to serve process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit, Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

45. In 2009, Ms. Mosquera executed an Assurance of Discontinuance, whereby he settled allegations of process server misconduct. *See* Keshavarz Decl. [Exhibit Q, Mosquera Assurance of Discontinuance].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

46. Mr. Mosquera agreed to abide by all rules applicable to process servers and to adhere to additional requirements imposed by the DCA. *See* Keshavarz Decl. [Exhibit Q, Mosquera Assurance of Discontinuance].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

47. In 2011, the DCA sent a letter informing Mr. Mosquera that it declined to renew his process server license. *See* Keshavarz Decl. [Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

48. In the letter, the DCA stated that it had determined that Mr. Mosquera had violated the terms of the Assurance of Discontinuance. *See* Keshavarz Decl. [Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

49. Specifically, the DCA found that "[y]our log books remain deficient in that you do not record the type of service and the full address of the person served. Your also leave blank spaces between entries, you frequently fail to describe the door and hallway area when making conspicuous service, and you do not have a separate entry for previous service attempts in several instances. You also failed to take pictures of many of your conspicuous place services, as required under the AOD." *See* Keshavarz Decl. [Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

50. In 2,915 instances between January 2007 and January 2011, Samserv process servers claimed to have attempted or completed service before the date that the service was assigned to that process server. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit ¶ 2, 12].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*

*regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

51. In over 100 instances between January 2007 and January 2011, Samserv process servers reported making more than 40 service attempts in a single day. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit ¶ 25].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

52. Between January 2007 and January 2011, Samserv process servers were paid between $6.50 and $10 for each completed service. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit ¶ 29].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this affidavit set forth in Section I of its memorandum of law in opposition to Plaintiff's motion for summary judgment.*

53. Between 2007 and 2011, Samserv process servers were only paid for completed service. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit ¶ 30; Exhibit E, Mlotok Trns, 148:15-18; 164:04-165:11].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

54. On 124 instances between January 2007 and January 2011, Samserv process server Michael Mosquera reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exhibit A].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

55. On 66 instances between January 2007 and January 2011, Samserv process server Benjamin Lamb reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exhibit A].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

56. In one instance, Mr. Lamb executed an affidavit of service that claimed service had been made on August 19, 2017 for a case that was not filed until August 25, 2005. *See* Keshavarz Decl. [Exhibit S, Ecourts record, stamped Summons, Affidavit of Service and Amended Affidavit of Service in *Rushmore Recoveries X, LLC v. Doris Peralta*, Index No. 39754-05 (Civil Court County of New York)].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

57. In another instance, the Honorable Ruben Franco, of the Civil Court of the City of New York, found Mr. Lamb to be a "totally unbelievable" witness and therefore vacated a

default judgment that had been obtained using an affidavit of service executed by Mr. Lamb. *See* Keshavarz Decl. [Exhibit T, November 7, 2013 Decision in *Palisades Collection, LLC v. Smith*, Index No. CIV 020105/06 (Civil Court of the City of New York, Bronx County)].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

58. Mr. Lamb routinely executes affidavits of service that allege that Mr. Lamb served process at two locations at the same time. *See* Keshavarz Decl. [Exhibit U, November 17, 2011 Deposition Transcript of Benjamin Lamb in *Sykes* ("Lamb Trns"), 165-186].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

59. Mr. Lamb characterizes these incidents as "typos." *See* Keshavarz Decl. [Exhibit U, Lamb Trns, 165-186].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

60. Mr. Lamb claims that he is capable of serving process up to one hundred times per day. *See* Keshavarz Decl. [Exhibit U, Lamb Trns, 166:05-168-07].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

61. On September 13, 2012, Mr. Lamb entered into a Consent Order with the DCA whereby he settled allegations of process server misconduct. *See* Keshavarz Decl. [Exhibit V, DCA Lamb Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

62. The Consent Order compelled Mr. Lamb to pay a $500 fine. *See* Keshavarz Decl. [Exhibit V, DCA Lamb Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

63. The Consent Order compelled Mr. Lamb to follow DCA rules governing process servers. *See* Keshavarz Decl. [Exhibit V, DCA Lamb Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

64. On 410 instances between January 2007 and January 2011, Samserv process server Stevens reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exhibit A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

65. On September 20, 2010, Mr. Stevens entered into an Assurance of Discontinuance with the DCA whereby he settled allegations that he had violated DCA rules governing process server conduct. *See* Keshavarz Decl. [Exhibit W, Stevens Assurance of Discontinuance].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

66. Pursuant to the Assurance of Discontinuance, Mr. Stevens agreed to pay a $300 fine and to comply with DCA rules. *See* Keshavarz Decl. [Exhibit W, Stevens Assurance of Discontinuance].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

67. On April 30, 2013, Mr. Stevens entered into a Consent Order with the DCA whereby he settled allegations of process server misconduct. *See* Keshavarz Decl. [Exhibit X, Stevens Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

68. The Consent Order compelled Mr. Stevens to pay a $3,000 fine. See Keshavarz Decl. [Exhibit X, Stevens Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

69. The Consent Order compelled Mr. Stevens to follow DCA rules governing process servers. *See* Keshavarz Decl. [Exhibit X, Stevens Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

70. Pursuant to the Consent Order, Mr. Stevens process service license was suspended for thirty days. *See* Keshavarz Decl. [Exhibit X, Stevens Consent Order].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

71. On 84 instances between January 2007 and January 2011, Samserv process server
    Rivera reported being at two or more addresses at the same time serving process. *See*
    Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
    *regarding the inadmissibility of this declaration set forth in Section I of the Argument*
    *in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

72. The Honorable Arthur F. Engoron of the Civil Court of the City of New York vacated a
    default judgment for improper service. The default judgment was obtained using an
    affidavit of service executed by Rivera. *See* Keshavarz Decl. [Exhibit Y, November 9,
    2009 Decision in *NCO Portfolio Management v. Carrasco*, Index No. 30036/08 (Civil
    Court of the City of New York Count of New York)].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.*

73. On February 17, 2011, an Administrative Law Judge for the DCA issued an opinion
    and order revoking Mr. Rivera's process server license. *See* Keshavarz Decl. [Exhibit
    Z, New York City Department of Consumer Affairs decision revoking Angelo M.
    Rivera's process server license].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.*

74. The DCA had charged Mr. Rivera with multiple instances of failing to properly log
    instances of completed service. *See* Keshavarz Decl. [Exhibit Z, New York City

Department of Consumer Affairs decision revoking Angelo M. Rivera's process server license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

75. The DCA imposed a $44,000 fine on Mr. Rivera for his violations of DCA rules governing process server conduct. *See* Keshavarz Decl. [Exhibit Z, New York City Department of Consumer Affairs decision revoking Angelo M. Rivera's process server license].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

76. On 327 instances between January 2007 and January 2011, Samserv process server John Andino reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exhibit A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

77. On June 9, 2007, Mr. Andino claims to have attempted to serve process at 2726 Decatur Ave, Bronx, NY. *See* Keshavarz Decl. [Exhibit GGG, Excerpts from Samserv process server database, page 3, line 19].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

78. Three minutes later, on June 9, 2007, Mr. Andino claims to have attempted to serve process at 2342 Ryer Ave, Bronx, NY at 8:13 AM. *See* Keshavarz Decl. [Exhibit GGG, Excerpts from Samserv process server database, page 4, line 11].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

79. Google maps estimates that, depending on method of travel, it takes a minimum of 8 minutes to travel from 2726 Decatur Ave to 2342 Ryer Ave in the Bronx. *See* Keshavarz Decl. [Exhibit HHH, Google Maps pages].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

80. John Andino is the same process server who allegedly served process on Jose Guzman in the state court collection case that gave rise to this federal lawsuit. *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service of Summons and Complaint in Guzman collection case ("Affidavit of Service"].

   ***Undisputed*** *that John Andino executed the affidavit of service in* <u>*LR Credit 13, LLC*</u> *v.* <u>*Jose Guzman,*</u> *Index No. 043405-07/BX (Civil Court of the City of New York, County of Bronx) (the "Collection Lawsuit").*

81. John Andino did not retain any of his process server logbooks from the start of the proposed class period in Sykes (2006) through July, 2011. *See* Keshavarz Decl. [Exhibit BB, July 23, 2011 Affidavit of John Andino].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

82. On 122 instances between January 2007 and January 2011, Samserv process server Abdelrahman reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

83. On January 18, 2011, the DCA filed a Notice of Hearing against Mr. Abdelrahman. *See* Keshavarz Decl. [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

84. The notice alleged that Mr. Abdelrahman had violated rules governing process server conduct. *See* Keshavarz Decl. [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

85. Specifically, the notice alleged that Mr. Abdelrahman had failed provide certain process service documents in response to a DCA subpoena. *See* Keshavarz Decl. [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

   *LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

86. The notice further alleged that Mr. Abdelrahman lacks fitness to serve as a process server. *See* Keshavarz Decl. [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

87. The notice instructed Mr. Abdelrahman to appear at a hearing on February 2, 2011 at 8:30 AM. *See* Keshavarz Decl. [Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

88. On March 6, 2011, the DCA filed a Notice of Hearing against Mr. Abdelrahman. *See* Keshavarz Decl. [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

89. The notice alleged that Mr. Abdelrahman had violated rules governing process server conduct. *See* Keshavarz Decl. [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

90. Specifically, the notice alleged that Mr. Abdelrahman had failed provide certain process service documents in response to a DCA subpoena. *See* Keshavarz Decl. [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

91.  The notice further alleged that Mr. Abdelrahman lacks fitness to serve as a process server. *See* Keshavarz Decl. [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

92.  The notice instructed Mr. Abdelrahman to appear at a hearing on March 30, 2011 at 8:30 AM. *See* Keshavarz Decl. [Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

93.  On 11 instances between January 2007 and January 2011, Samserv process server Pinder reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

94.  On 5 instances between January 2007 and January 2011, Samserv process server Lewis reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit _P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the*
*Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
*regarding the inadmissibility of this declaration set forth in Section I of the Argument*
*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

95. On 21 instances between January 2007 and January 2011, Samserv process server
    Wegard reported being at two or more addresses at the same time serving process. *See*
    Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
    *regarding the inadmissibility of this declaration set forth in Section I of the Argument*
    *in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

96. On 204 instances between January 2007 and January 2011, Samserv process server D.
    Mosquera reported being at two or more addresses at the same time serving process.
    *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
    *regarding the inadmissibility of this declaration set forth in Section I of the Argument*
    *in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

97. On 41 instances between January 2007 and January 2011, Samserv process server
    Benitez reported being at two or more addresses at the same time serving process. *See*
    Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

    *LRC hereby incorporates by reference the response to this paragraph set forth in the*
    *Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*

*regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

98. On 42 instances between January 2007 and January 2011, Samserv process server Jacobs reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

99. On 138 instances between January 2007 and January 2011, Samserv process server Dworetsky reported being at two or more addresses at the same time serving process. See Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

100. On 1 instance between January 2007 and January 2011, Samserv process server Degennaro reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

101.  On 5 instances between January 2007 and January 2011, Samserv process server Newman reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

102.  On 107 instances between January 2007 and January 2011, Samserv process server Acevedo reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

103.  On 3 instances between January 2007 and January 2011, Samserv process server Joseph reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

104.  On 2 instances between January 2007 and January 2011, Samserv process server Tanega reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

105.  On 9 instances between January 2007 and January 2011, Samserv process server H. Al-Atrash reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

106.  On 85 instances between January 2007 and January 2011, Samserv process server Miller reported being at two or more addresses at the same time serving process. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

107.  On 34 instances between January 2007 and January 2011, Samserv process server N.
Atrash reported being at two or more addresses at the same time serving process. *See*
Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the*
*Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
*regarding the inadmissibility of this declaration set forth in Section I of the Argument*
*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

108.  On 24 instances between January 2007 and January 2011, Samserv process server
Mathers reported being at two or more addresses at the same time serving process. *See*
Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the*
*Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
*regarding the inadmissibility of this declaration set forth in Section I of the Argument*
*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

109.  On 2 instances between January 2007 and January 2011, Samserv process server
Issam reported being at two or more addresses at the same time serving process. *See*
Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the*
*Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*
*regarding the inadmissibility of this declaration set forth in Section I of the Argument*
*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

110.  Samserv process servers regularly execute false affidavits of merit claiming service
of a summons and complaint when, in fact, service was not made. Keshavarz Decl.

[Exhibit J, New York City Department of Consumer Affairs Roster of Process Servers for Samserv, Inc.; Exhibit K, DCA Decision Revoking Atrash license; Exhibit L, Schwartz Affidavit; Exhibit M, New York City Department of Consumer Affairs Notice of Hearing against Husam Al-Atrash; Exhibit N, New York City Department of Consumer Affairs Consent Order with Hasam Al-Atrash; Exhibit O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's process server's license; Exhibit Q, Mosquera Assurance of Discontinuance; Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license; Exhibit E, Mlotok Trns, 148:15-18; 164:04-165:11; [Exhibit S, Ecourts record, stamped Summons, Affidavit of Service and Amended Affidavit of Service in *Rushmore Recoveries X, LLC v. Doris Peralta*, Index No. 39754-05 (Civil Court County of New York); Exhibit T, November 7, 2013 Decision in *Palisades Collection, LLC v. Smith*, Index No. CIV 020105/06 (Civil Court of the City of New York, Bronx County); Exhibit U, Lamb Trns.165-186; 166:05-168-07; Exhibit V, DCA Lamb Consent Order; Exhibit W, Stevens Assurance of Discontinuance; Exhibit X, Stevens Consent Order; Exhibit Y, November 9, 2009 Decision in *NCO Portfolio Management v. Carrasco*, Index No. 30036/08 (Civil Court of the City of New York Count of New York); Exhibit Z, New York City Department of Consumer Affairs decision revoking Angelo M. Rivera's process server license; Exhibit BB, July 23, 2011 Affidavit of John Andino; Exhibit CC, January 18, 2011 Abdelrahman Hearing Notice; Exhibit DD, March 6, 2011 Abdelrahman Hearing Notice ;Exhibit __, Egleson Affidavit ¶ 2, 12, 25, 29, 30, Exhibit A].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*

*regarding the inadmissibility of the Egleson Declaration set forth in Section I of the*

*Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary*

*Judgment.*

111.  In 2011, the Chief Clerk of the Civil Court of the City of New York responded to a

FOIL request made by Carolyn E. Coffey. *See* Keshavarz Decl. [Exhibit EE, August 1,

2011 Declaration of Carolyn E. Coffey ("Coffey Declaration")].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this*

*declaration set forth in Section I of the Argument in its Memorandum of Law in*

*Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has*

*given no indication that Ms. Coffey is prepared to testify as to the contents of her six*

*year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report*

*outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and*

*(iii) the information described by Ms. Coffey in her declaration will not be*

*authenticated or admitted into evidence in this case.  LRC also objects on the grounds*

*that this statement is irrelevant and immaterial.*

112.  The Chief Clerk provided the total number of filings by LR Credit entities for each

borough from the date the database went into effect in each borough through 2010. *See*

Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 3].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this*

*declaration set forth in Section I of the Argument in its Memorandum of Law in*

*Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has*

*given no indication that Ms. Coffey is prepared to testify as to the contents of her six*

*year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

113.  Kings County Civil Court implemented its database on March 12, 2007. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 5].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

114.  Queens County Civil Court implemented its database on June 4, 2007. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 5].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

115.  Bronx County Civil Court implemented its database on September 24, 2007. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 5].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

116.  Richmond County Civil Court implemented its database on November 13, 2007. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 5].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

117.  New York County Civil Court implemented its database on June 4, 2008. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 5].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

118.  The total number of cases filed by LR Credit entities in each borough from 2007 through 2010 totaled 65,702. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 7].

*Disputed.  LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six*

*year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report*

*outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and*

*(iii) the information described by Ms. Coffey in her declaration will not be*

*authenticated or admitted into evidence in this case.  LRC also objects on the grounds*

*that this statement is irrelevant and immaterial.*

119.  The number of default judgments obtained by LR Credit entities in those cases during

that time totaled 49,114. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 7].

**Disputed.**  *LRC hereby refers to the arguments regarding the inadmissibility of this*

*declaration set forth in Section I of the Argument in its Memorandum of Law in*

*Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has*

*given no indication that Ms. Coffey is prepared to testify as to the contents of her six*

*year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal*

*knowledge regarding the facts of this case) as an expert or provide an expert report*

*outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and*

*(iii) the information described by Ms. Coffey in her declaration will not be*

*authenticated or admitted into evidence in this case.  LRC also objects on the grounds*

*that this statement is irrelevant and immaterial.  In addition, LRC hereby incorporates*

*by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1*

*Statement.*

120.  There was a 75% default rate for cases filed by LR Credit entities in each borough

from 2007 through 2010. *See* Keshavarz Decl. [Exhibit EE, Coffey Declaration, ¶ 7].

**Disputed.**  *LRC hereby refers to the arguments regarding the inadmissibility of this*

*declaration set forth in Section I of the Argument in its Memorandum of Law in*

*Opposition to Plaintiff's Motion for Summary Judgment, including that (i) Plaintiff has given no indication that Ms. Coffey is prepared to testify as to the contents of her six year-old declaration, (ii) Plaintiff did not identify Ms. Coffey (who has no personal knowledge regarding the facts of this case) as an expert or provide an expert report outlining Ms. Coffey's proposed testimony as required by Fed. R. Civ. P. 26(b), and (iii) the information described by Ms. Coffey in her declaration will not be authenticated or admitted into evidence in this case.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

121.  Samserv does not retain copies of log books for process servers serving process on its behalf. *See* Keshavarz Decl. [Exhibit FF, June 27, 2011 Hearing Transcript in Sykes, 12:09-13; 19-23; Exhibit E, July, 2011 Affidavit of William Mlotok].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

122.  Generally, rates of personal service and substituted service are about equal when serving individuals at personal residences. *See* Keshavarz Decl. [Exhibit GG, August 1, 2011 Declaration of Bruce Lazarus, ¶ 5].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

123.  It generally takes a process server thirty minutes to attempt service on individuals at personal residences. *See* Keshavarz Decl. [Exhibit GG, August 1, 2011 Declaration of Bruce Lazarus, ¶ 7].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

124. It is unlikely that a process server could regularly make more than 25 service attempts at personal residences in one day. *See* Keshavarz Decl. [Exhibit GG, August 1, 2011 Declaration of Bruce Lazarus, ¶ 8].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

125. As of 2011, process serving company Legalease, Inc. paid outside process servers a minimum of $25 per service. *See* Keshavarz Decl. [Exhibit GG, August 1, 2011 Declaration of Bruce Lazarus, ¶ 10].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

126. As of 2011, process serving company Legalease, Inc. paid all process servers, regardless of whether process is actually served. *See* Keshavarz Decl. [Exhibit GG August 1, 2011 Declaration of Bruce Lazarus, ¶ 10].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments*

*regarding the inadmissibility of this declaration set forth in Section I of the Argument*

*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

127.  As of 2011, process serving company Legalease, Inc. charged a minimum of $85 to

effect service. *See* Keshavarz Decl. [Exhibit GG, August 1, 2011 Declaration of Bruce

Lazarus, ¶ 11].

*LRC hereby incorporates by reference the response to this paragraph set forth in the*

*Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments*

*regarding the inadmissibility of this declaration set forth in Section I of the Argument*

*in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

128.  The original complaint in Sykes was filed on October 6, 2009. Keshavarz Decl.

[Exhibit HH, Original Complaint in *Sykes v. Mel S. Harris, LLC, et al.*, 1:09-cv-08486-

DC (S.D.N.Y) ("Sykes Original Complaint")].

**Undisputed.**  *However, LRC objects to Plaintiff's reliance on the allegations in* <u>Sykes v.</u>

<u>Mel S. Harris, LLC, et al.</u>*, 1:09-cv-08486-DC (S.D.N.Y) ("*<u>Sykes</u>*") because those*

*allegations were never proven.  LRC also objects on the grounds that this statement is*

*irrelevant and immaterial.  In addition, LRC hereby refers to the arguments regarding*

*Plaintiff's improper characterization of the* <u>Sykes</u> *pleadings and orders – as set forth in*

*Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's*

*Motion for Summary Judgment – which did not constitute evidence or findings of fact*

*and cannot be relied upon on this motion.*

129.  In an amended class action complaint filed on December 28, 2009, the Sykes

Plaintiffs alleged that MSH routinely filed false affidavits of service and false affidavits

of merit in order to obtain default judgements against thousands of NY consumers.

Keshavarz Decl. [Exhibit II, First Amended Complaint in *Sykes v. Mel S. Harris, LLC, et al*., 1:09-cv-08486-DC (S.D.N.Y) ("Sykes First Amended Complaint")].

*Undisputed* that an amended class action complaint was filed in Sykes on December 28, 2009. However, LRC objects to Plaintiff's reliance on the allegations in <u>Sykes</u> because those allegations were never proven. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.

130. LR Credit and MSH were served with the Sykes complaints on January 21, 2010. *See* Keshavarz Decl. [Exhibit JJ, Affidavits of Service from *Sykes v. Mel S. Harris, LLC, et al*., 1:09-cv-08486-DC (S.D.N.Y) [DE 5]].

*Undisputed.*

131. LRC was therefore aware, after January 21, 2010, of the allegations of massive consumer fraud perpetrated by MSH on behalf of LRC. See Keshavarz Decl. [Exhibit JJ, Affidavits of Service from *Sykes v. Mel S. Harris, LLC, et a*l., 1:09-cv-08486-DC (S.D.N.Y) [DE 5]].

*Disputed.* The certificates of service cited by Plaintiff indicate that LR Credit and MSH (and not LRC) were served with the complaint in <u>Sykes</u>. Plaintiff has cited no evidence indicating that LRC was served with the <u>Sykes</u> complaint. LRC also objects on the grounds that this statement is irrelevant and immaterial.

132.  Yet, LRC continued to rely on MSH to obtain default judgments against NY consumers, and to execute on default judgments that had been obtained by MSH. Keshavarz Decl. [Exhibit KK, Information Subpoena in Guzman Collection case; Exhibit B, Nittoli Trns.at 59:11-24; 60:16-61:03; 92:07-21].

*Disputed.  The testimony cited by the Plaintiff in this paragraph does not refer to LRC's reliance on MSH to "obtain default judgments" or "execute on default judgments." Rather, the cited testimony reflects only that MSH collected debts owned by LRC until September 2015.  Furthermore, LRC's corporate representative testified that while MSH did cease collections activities on behalf of LRC, it was necessary to continue relying on MSH to account for any payments received so that they could be accounted for in the Sykes settlement.  (Keshavarz Decl. Ex. B at Tr. 60:5-15, 63:4-7, 73:2-5.)  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

133.  On April 15, 2011, the Sykes Plaintiffs filed a motion for class certification. *See* Keshavarz Decl. [Exhibit LL, Order granting class certification in *Sykes*].

*Disputed.  The exhibit cited by Plaintiff does not reflect the date on which the Sykes plaintiffs filed a motion for class certification.  Moreover, LRC objects to Plaintiff's reliance on the allegations in Sykes because those allegations were never proven.  LRC also objects on the grounds that this statement is irrelevant and immaterial.  In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.*

44

134.  In support of their application, the *Sykes* Plaintiffs attached an affidavit (the "Egleson Affidavit") from an IT consultant, Nicholas Egleson. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

135.  Mr. Egleson analyzed Samserv's "Process Service Management System." *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

136.  The database is a record of all service of process performed by Samserv for cases filed by MSH from January 2007 through January 2011. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

137.  The database includes 59,959 records of service in cases filed by MSH on behalf of LRC and its subsidiaries. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

138.  After analyzing the data in the Samserv database, Mr. Egleson concluded that "[t]he data shows multiple instances of the same process server recording two or more services at different addresses at the same hour and minute—a physical impossibility." *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

139.  Mr. Egleson further concluded that "in 2,915 instances, a process server claimed to have attempted or completed service before the date that the service was assigned to that process server—another physical impossibility." *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at ¶ 12].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.  LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

140.  Mr. Egleson also found multiple instances where process servers reported making "40 to 100 visits in a day in less time than Google Maps estimates is required for the continuous drive time alone." *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

141.  Mr. Egleson further found that "[t]he data also shows instances where process servers report having served papers in an order that required nonsensical backtracking along the route." *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement. LRC also hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

142.  LRC learned of the allegations in the Egleson Affidavit shortly after July 31, 2011. See Keshavarz Decl. [Exhibit B, Nittoli Trns.at 92:25-93:13].

***Disputed.*** *The testimony cited by Plaintiff states only that LRC received "notice" of the Egleson Declaration shortly after July 31, 2011. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding the inadmissibility of this declaration set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

143.  Yet, LRC continued to use MSH to enforce default judgments for cases where Samserv had allegedly served process. See Keshavarz Decl. [Exhibit KK, Information Subpoena in Guzman Collection case; Exhibit B, Nittoli Trns.at 59:11-24; 60:16-61:03; 92:07-21].

***Disputed.***  *The testimony and document cited by the Plaintiff in this paragraph do not refer to LRC's used of MSH to "enforce default judgments."  Rather, the cited document reflects that MSH, not LRC, executed the information subpoena in the Collection Lawsuit, and does not reflect that LRC had any knowledge the information subpoena was executed or served by MSH.  And, the cited testimony reflects only that MSH collected debts owned by LRC until September 2015.  Furthermore, LRC's corporate representative testified that while MSH did cease collections activities on behalf of LRC, it was necessary to continue relying on MSH to account for any payments received so that they could be accounted for in the <u>Sykes</u> settlement.  (Keshavarz Decl. Ex. B at Tr. 60:5-15, 63:4-7, 73:2-5.)  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

144.  The Third Amended Complaint in Sykes alleges that Todd Fabacher signs "approximately 40,000 affidavits per year, or an average of 165 affidavits per work day. In these affidavits, [Fabacher] claims to be fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." *See* Keshavarz Decl. [Exhibit MM, Third Amended Complaint in *Sykes v. Mel S. Harris, LLC, et al.*, 1:09-cv-08486-DC (S.D.N.Y) ("*Sykes* Third Amended Complaint")].

***Undisputed*** *that the quoted language appears in the third amended complaint filed in <u>Sykes</u>.  However, LRC objects to Plaintiff's reliance on the allegations in <u>Sykes</u> because those allegations were never proven.  LRC also objects on the grounds that this statement is irrelevant and immaterial.  In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in*

*Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.*

145.  The Third Amended Complaint goes on to allege that "the affidavits are purposely drafted . . . to give court personnel the impression that Mel Harris and Leucadia Defendants have met the statutory requirements for obtaining a default judgment, when in fact, Defendants have not and cannot meet those requirements." *See* Keshavarz Decl. [Exhibit MM, Sykes Third Amended Complaint].

***Undisputed** that the quoted language appears in the third amended complaint filed in <u>Sykes</u>. However, LRC objects to Plaintiff's reliance on the allegations in <u>Sykes</u> because those allegations were never proven. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.*

146.  On September 4, 2012 the Honorable Denny Chin issued an order granting class certification in *Sykes*. *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 282 (S.D.N.Y. 2012). *See* Keshavarz Decl. [Exhibit LL, Order granting class certification in *Sykes*].

***Undisputed** that an order granting class certification in <u>Sykes</u> was issued on September 4, 2012. However, LRC objects to Plaintiff's reliance on the allegations in <u>Sykes</u> because those allegations were never proven. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and*

*orders – as set forth in Section I of the Argument in its Memorandum of Law in*
*Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute*
*evidence or findings of fact and cannot be relied upon on this motion.*

147.   In his opinion, Judge Chin stated that "[t]he record before the Court establishes that
defendants obtained tens of thousands of default judgments in consumer debt actions,
based on thousands of affidavits attesting to the merits of the action that were generated
*en masse* by sophisticated computer programs and signed by a law firm employee who
did not read the vast majority of them and claimed to, but apparently did not, have
personal knowledge of the facts to which he was attesting." *Sykes v. Mel Harris &*
*Assocs., LLC*, 285 F.R.D. 279, 282 (S.D.N.Y. 2012). *See* Keshavarz Decl. [Exhibit LL,
Order granting class certification in *Sykes*].

***Undisputed*** *that the quoted language appears in the September 4, 2012 order granting*
*class certification in* <u>*Sykes*</u>.  *However, LRC objects to Plaintiff's reliance on the*
*allegations in* <u>*Sykes*</u> *because those allegations were never proven.  LRC also objects on*
*the grounds that this statement is irrelevant and immaterial.  In addition, LRC hereby*
*refers to the arguments regarding Plaintiff's improper characterization of the Sykes*
*pleadings and orders – as set forth in Section I of the Argument in its Memorandum of*
*Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not*
*constitute evidence or findings of fact and cannot be relied upon on this motion.*

148.   In 2012, LRC was aware that the Court had granted class certification, having found
that the "record before the Court establishes" that MSH routinely filed false affidavits
or service and false affidavits of merit in order to obtain default judgment against
vulnerable consumers. See Keshavarz Decl. [Exhibit B, Nittoli Trns.at 73:06-74:06].

*Disputed. The testimony cited by the Plaintiff states only that LRC's corporate representative was aware of the <u>Sykes</u> class certification decision in 2012. Moreover, LRC objects to Plaintiff's reliance on the allegations in Sykes because those allegations were never proven. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.*

149. LRC was aware, in 2012, of repeated allegations that MSH regularly filed false affidavits of merit and false affidavits of service in collection cases for debts owned by LRC and its subsidiaries. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 73:06-74:06; 92:25-93:13].

*Disputed. The cited testimony states only that LRC's corporate representative was aware of the Egleson Declaration filed, and the class certification decision entered, in <u>Sykes</u>. LRC was not a defendant in <u>Sykes</u>, and it does not have any subsidiaries. Neither the Egleson Declaration nor the class certification decision discuss debts owned by LRC. LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding Plaintiff's improper characterization of the Sykes pleadings and orders – as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute evidence or findings of fact and cannot be relied upon on this motion.*

150.  Yet, LRC continued to use MSH to collect on default judgment that had been
obtained using affidavits of service from Samserv and affidavits of merit from
Fabacher. *See* Keshavarz Decl. [Exhibit KK, Information Subpoena in Guzman
Collection case; Exhibit B, Nittoli Trns.at 59:11-24; 60:16-61:03; 92:07-21].

*Disputed. The cited document reflects that MSH, not LRC, executed the information
subpoena in the Collection Lawsuit, and does not reflect that LRC had any knowledge
the information subpoena was executed or served by MSH.  And, the cited testimony
reflects only that MSH collected debts owned by LRC until September 2015.
Furthermore, LRC's corporate representative testified that while MSH did cease
collections activities on behalf of LRC, it was necessary to continue relying on MSH to
account for any payments received so that they could be accounted for in the Sykes
settlement.  (Keshavarz Decl. Ex. B at Tr. 60:5-15, 63:4-7, 73:2-5.)  LRC also objects
on the grounds that this statement is irrelevant and immaterial.*

151.  LRC took no steps to investigate whether the allegations against MSH were true. *See*
Keshavarz Decl. [Exhibit B, Nittoli Trns.at 74:15-25].

*Undisputed that LRC's corporate representative stated he was unaware of efforts by
LRC to verify whether the allegations discussed in the Sykes class certification decision
were true.  However, LRC objects to Plaintiff's reliance on the allegations in Sykes
because those allegations were never proven.  LRC also objects on the grounds that
this statement is irrelevant and immaterial.  In addition, LRC hereby refers to the
arguments regarding Plaintiff's improper characterization of the Sykes pleadings and
orders – as set forth in Section I of the Argument in its Memorandum of Law in
Opposition to Plaintiff's Motion for Summary Judgment – which did not constitute
evidence or findings of fact and cannot be relied upon on this motion.*

152.  On January 13, 2015, LR Credit and MSH executed an amendment to the Collection Agreement. *See* Keshavarz Decl. [Exhibit NN, Amendment No. 7 to Agreement for Legal Collection Services ("Amendment No. 7")].

*Undisputed that on January 13, 2015, LR Credit and MSH entered into Amendment No. 7 to the Agreement for Legal Collection Services ("Collection Agreement Amendment No. 7").  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

153.  Pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would not seek to obtain any additional default judgments for debts owned by LR Credit or its subsidiaries. *See* Keshavarz Decl. [Exhibit NN, Amendment No. 7 ¶ 2].

*Undisputed that Collection Agreement Amendment No. 7 provides that, unless specifically instructed by LR Credit, MSH will not seek to obtain any additional default judgments on any portfolios of consumer indebtedness owned by LR Credit.  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

154.  Pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would not institute any other legal proceedings for debts owned by LR Credit or its subsidiaries. *See* Keshavarz Decl. [Exhibit NN, Amendment No. 7 ¶ 2].

*Undisputed that Collection Agreement Amendment No. 7 provides that, unless specifically instructed by LR Credit, MSH will not institute any other legal proceedings other than those expressly authorized by that agreement.  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

155.  However, pursuant to Amendment No. 7, LR Credit and MSH agreed that MSH would continue to execute on default judgments that had already been obtained for

debts owned by LR Credit or its subsidiaries. *See* Keshavarz Decl. [Exhibit NN, Amendment No. 7 ¶ 2].

*Disputed.  Collection Agreement Amendment No. 7 provides that MSH will continue to assist in the collection of consumer debt in cases where the attorney had previously affected legal process to collect consumer indebtedness <u>and</u> money had been received as a result of that legal process.  (Keshavarz Decl. Ex. NN, ¶2(iii).)  Plaintiff had not made any payments to MSH prior to the date Collection Agreement Amendment No. 7 was executed (and, indeed, has never made any payments to anyone in connection with the Collection Lawsuit).  Accordingly, MSH was not authorized to continue in the collection of Plaintiff's debt as of January 15, 2015.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

156.  On or about June 12, 2007, LRC filed a collections lawsuit by and through MSH against Mr. Guzman, titled *LR CREDIT 13, LLC v. Jose Guzman*, Index No. 043405-07/BX (Civil Court of the City of New York, County of Bronx)(the "collections lawsuit"). *See* Keshavarz Decl. [Exhibit OO, Summons and Complaint in Guzman Collection case ("Summons and Complaint")].

*Disputed.  The complaint in the Collection Lawsuit was filed by MSH, not LRC.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.*

157.  The case was filed in the consumer credit part for the Civil Court of the City of New York, County of Bronx. See Keshavarz Decl. [Exhibit OO, Summons and Complaint].

> ***Disputed.*** *There is no "consumer credit part" in the Civil Court of the City of New York, County of Bronx.*

158.  The top of the Summons bears the term "CONSUMER CREDIT TRANSACTION." See Keshavarz Decl. [Exhibit OO, Summons and Complaint].

> ***Undisputed.***

159.  The collections lawsuit sought to collect a putative debt (the "debt" or "account") allegedly owed to "FIRST USA BANK." See Keshavarz Decl. [Exhibit OO, Summons and Complaint].

> ***Undisputed*** *that the Complaint alleges, inter alia, that "[u]pon information and belief that the defendant(s) entered into a Retail Charge Account Agreement, with FIRST USA BANK, wherein defendant agreed to pay FIRST USA BANK all amounts charged to said account by authorized use thereof."*

160.  The collection lawsuit alleged, inter alia, that Mr. Guzman, "having defaulted in payment under the terms of the agreement has incurred thereby agreed upon reasonable attorney's fees of15.00%, to wit: $1130.35." *See* Keshavarz Decl. [Exhibit OO, Summons and Complaint].

> ***Undisputed.***

161.  The debt was allegedly flowing from a defaulted "Retail Charge Account Agreement". *See* Keshavarz Decl. [Exhibit OO, Summons and Complaint].

> ***Undisputed*** *that the Collection Lawsuit complaint includes the allegation quoted in the response to Paragraph 159.*

162.  Mr. Guzman has never had an account with "FIRST USA BANK". *See* Keshavarz Decl. [Exhibit PP, the June 14, 2017 Deposition Transcript of Jose Guzman ("J

Guzman Trns") at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017

Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3

(admitting that Jose Guzman does not owe the debt as alleged in the state court

collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman

("L Guzman Trns") at 22:08-16; 30:08-13; ].

*Disputed.  It is not true that Plaintiff "does not owe the debt as alleged in the state*

*court collection lawsuit."  A credit card statement produced by non-party Chase Bank*

*on May 2, 2017 reflects that in July 2004, Plaintiff had a $5,809.51 debt charged off*

*his account number 4225-8117-2023-4690 due to non-payment.  (Balber Decl. Ex.*

*11.)[3]  This is the identical debt amount, and the exact same account number, identified*

*in the affidavit of merit (as well as in the underlying complaint and default judgment)*

*filed by MSH in the Collection Lawsuit.  (Id. Ex. 3, 5-6.)*

163.  On or about July 23, 2007, LRC through MSH filed an affidavit of service in the

collections lawsuit. *See* Keshavarz Decl. [Exhibit SS, Affidavit of Service executed by

John Andino on behalf of Samserv, Inc. ("Affidavit of Service")].

*Disputed.  The affidavit of service in the Collection Lawsuit was filed by MSH, not*

*LRC.  As set forth more fully in Section III of the Statement of Facts of LRC's*

*Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment,*

*Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the*

*Collection Lawsuit.*

---

[3]  "Balber Decl." refers to the Declaration of Scott S. Balber in Support of LRC's Motion
     for Summary Judgment, dated July 19, 2017.

164. The Affidavit of Service alleges service on Mr. Guzman at the address 1304 Boston Rd., Bronx, NY 10456 ("1304 Boston Road"). See Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

165. Mr. Guzman was never served with the lawsuit. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns, 23:13-15; 24:13-17; 39:13-21; 46:02-09; 178:06-18; Exhibit RR, L Guzman Trns.at 78:23-79:09].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

166. The process server was John Andino from Samserv. *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

167. Mr. Andino executed the affidavit of service on July 23, 2007. *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

168. The affidavit of service was notarized by William Mlotok. *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

169.  Mr. Mlotok notarized most of the Samserv affidavits of service from 2004-2009. *See* Keshavarz Decl. [Exhibit E, Mlotok Trns.at 85:24-86:07].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

170.  LRC caused the affidavit of service to be filed on July 27, 2007. *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*Disputed.  The affidavit of service in the Collection Lawsuit was filed by MSH, not LRC.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.*

171.  The Affidavit of Service alleges that Mr. Guzman was served by affixing a copy of the summons and complaint on the door of 1304 Boston Road. *See* Keshavarz Decl. [Exhibit __, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

172.  The Affidavit of Service describes 1304 Boston Road, Bronx, NY 10456 as a "Private Residence." *See* Keshavarz Decl. [Exhibit AA, Affidavit of Service].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

173.  1304 Boston Road was not and is not a private residence. *See* Keshavarz Decl. [Exhibit SS, NYC Buildings Report for 1304 Boston Road, Bronx, NY 10456 with google street view images ("1304 Boston Road Report")].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

174. Rather, 1304 Boston Road is a commercial property which, in 2007, was a grocery store. *See* Keshavarz Decl. [Exhibit SS, 1304 Boston Road Report].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

175. The residential apartments above the grocery store at 1304 Boston Road have a street address of 757-767 East 169 Street, Bronx, NY 10456. *See* Keshavarz Decl. [Exhibit SS, 1304 Boston Road Report].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

176. Had John Andino visited 1304 Boston Road, he would have found a grocery store— not a private residene [sic]. *See* Keshavarz Decl. [Exhibit SS, 1304 Boston Road Report].

*LRC hereby incorporates by reference the response to this paragraph set forth in the Samserv Counter Rule 56.1 Statement.*

177. Mr. Guzman worked at a grocery store at 1304 Boston Road from 2001 through 2004. *See* Keshavarz Decl. [Exhibit SS, J Guzman Trns.at 133:05-11; 136:14-137:21].#

**Undisputed** *that Plaintiff <u>owned</u> a grocery store at 1304 Boston Road from 2001 through 2004.*

178. Mr. Guzman did not reside or work at 1304 Boston Road in 2007, when service was alleged. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns, 23:13-15; 24:13-17; 133:05-11; 136:14-137:21; Exhibit RR, L Guzman Trns.at 78:23-79:09; 81:09-13; 102:04-15].

*Undisputed that Plaintiff testified he did not reside or work at 1304 Boston Road in 2007.*

179.  Mr. Guzman has never received mail at 1304 Boston Road. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns, 24:10-12].

*Disputed.  The record establishes that Plaintiff did receive mail at 1304 Boston Road. (See, e.g., Balber Decl. Ex. 12; Jose Guzman Dep. (Keshavarz Decl. Ex. PP) Tr. 134:11-24 (Q: "And you would be responsible for going through the mail [at the grocery store you owned at 1304 Boston Road?]"  A:  "Yes.").)*

180.  Mr. Guzman has never represented that 1304 Boston Road was his address. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns, 24:12-17].

*Disputed.  Plaintiff has represented that 1304 Boston Road was his address.  (See Balber Decl. Ex. 12.)*

181.  Throughout 2007, the year when service was alleged at the address 1304 Boston Road, Mr. Guzman resided at the address 735 East 163rd St., Apt 3G, Bronx, NY 10456. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 139:18-140:12; Exhibit RR, L Guzman Trns.at 78:23-79:09].

*Undisputed that Plaintiff has testified that in 2007 he lived at 735 East 163rd St., Apt 3G, Bronx, NY 10456.*

182.  On or about September 21, 2007, LRC filed an application for default in the collection lawsuit. The application was signed by a MSH attorney named Kerry Lutz. Mr. Lutz affirmed under the penalty of perjury that Mr. Guzman had been properly served. The application sought entry of judgment for $7,821.01. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].'

*Disputed. The default judgment in the Collection Lawsuit was filed by MSH, not LRC. As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.*

183.  LRC also filed an affidavit of merit ("Fabacher Affidavit"), in support of LRC's application for default. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

*Disputed. The affidavit of merit in the Collection Lawsuit was filed by MSH, not LRC. As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.*

184.  Mr. Fabacher executed the affidavit of merit on September 11, 2007. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

*Undisputed.*

185.  LRC caused the affidavit of merit to be filed along with the application for default judgment on or about September 17, 2007, the date the clerk entered the default judgment against Mr. Guzman. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit; Exhibit UU, Ecourts screens merged].

*Disputed. The affidavit of merit and default judgment in the Collection Lawsuit were filed by MSH, not LRC. As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary*

*Judgment, Plaintiff has not adduced any evidence establishing that LRC had any*

*knowledge of the Collection Lawsuit.*

186.  The Fabacher Affidavit was signed by Todd Fabacher. See Keshavarz Decl. [Exhibit

TT, Default Application with Affidavit of Merit].

**Undisputed.**

187.  The Fabacher Affidavit describes Mr. Fabacher as "an authorized and designated

custodian of records for [LRC]." *See* Keshavarz Decl. [Exhibit TT, Default Application

with Affidavit of Merit].

**Undisputed** *that in the affidavit of merit, Mr. Fabacher attests that he is "an authorized*

*and designated custodian of records for the plaintiff [LRC] in the State of NY."*

*However, Mr. Fabacher testified that he was so authorized by MSH, not by LRC.  Mr.*

*Fabacher testified further that he has never had any contact with LRC.  (Fabacher*

*Dep. (Balber Decl. Ex. 19) Tr. 208:25-:209:9.)*

188.  The Fabacher Affidavit alleges that Mr. Fabacher has "personal knowledge of, the

facts and proceedings relating to this action". *See* Keshavarz Decl. [Exhibit TT, Default

Application with Affidavit of Merit].

**Undisputed** *that in the affidavit of merit, Mr. Fabacher attests that he has "personal*

*knowledge of the facts and proceedings relating to the within action."*

189.  Fabacher swore in his affidavit that he was "fully and personally familiar with, and

have personal knowledge of, the facts and proceedings relating to the within action."

*See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

**Undisputed.**

190.  Fabacher swore that he had personal knowledge that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement."  *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

*Undisputed* *that in the affidavit of merit, Mr. Fabacher attests that he has "personal knowledge of, the facts and proceedings relating to the within action."  The affidavit of merit states that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement," but it does not affirm that such statement was made on Mr. Fabacher's "personal knowledge."*

191.  Mr. Guzman has never owed money to First USA Bank. See Keshavarz Decl. [Exhibit PP, the June 14, 2017 Deposition Transcript of Jose Guzman ("J Guzman Trns") at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (admitting that Jose Guzman does not owe the debt as alleged in the state court collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13].

*Disputed.  It is not true that Plaintiff "does not owe the debt as alleged in the state court collection lawsuit."  A credit card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-2023-4690 due to non-payment.  (Balber Decl. Ex. 11.)  This is the identical debt amount, and the exact same account number, identified in the affidavit of merit (as well as in the underlying complaint and default judgment) filed by MSH in the Collection Lawsuit.  (Id. Ex. 3, 5-6.)*

192.  The Fabacher Affidavit alleges that Mr. Guzman defaulted on the putative debt to First USA in 2004. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

*Disputed.  The affidavit of merit does not state the date when Mr. Guzman defaulted on the debt he owed.*

193.  Mr. Fabacher did not have personal knowledge that Mr. Guzman owed the debt as alleged. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (admitting that Jose Guzman does not owe the debt as alleged in the state court collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13; *see* ¶¶ ].

*Disputed.  None of the evidence cited by Plaintiff supports his claim that Mr. Fabacher "did not have personal knowledge of any of the facts in the affidavit." Rather, it is self-evident from the actual affidavit that the Mr. Fabacher did have knowledge of the facts relating to the action because the affidavit of merit correctly stated the amount of Plaintiff's debt and the account number for Plaintiff's defaulted credit card debt. (Balber Decl. Exs. 5, 11.)*

194.  Mr. Fabacher regularly executed the affidavits of merit for the various LR Credit entities. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 71:06-13].

*Disputed.  The transcript excerpt cited by Plaintiff makes no mention of Mr. Fabacher's executing affidavits of merit on behalf of LR Credit or its subsidiaries. LRC also objects on the grounds that this statement is irrelevant and immaterial.*

195.  Mr. Fabacher was not employed by the original creditors for the debts that were the subject of the affidavits of merit. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 205:20-206:03].

***Undisputed*** *that Mr. Fabacher was employed by MSH when he executed the affidavit of merit.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

196.  Mr. Fabacher executed the Fabacher Affidavit at the direction of MSH. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 208:14-19].

***Undisputed*** *that MSH instructed Mr. Fabacher to act as custodian of records for LRC.*

197.  The affidavits of merit that Mr. Fabacher executed during his employment at MSH alleged that Mr. Fabacher was "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 83:15-21].

***Undisputed*** *that in the affidavit of merit filed in the Collection Lawsuit, Mr. Fabacher attests that he is "fully and personally familiar with, and ha[s] personal knowledge of, the facts and proceedings relating to the within action."  However, Plaintiff has not identified any evidence as to the content of any other affidavits of merit executed by Mr. Fabacher.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

198.  In the affidavit, Mr. Fabacher averred that he was the "designated custodian of records" for LRC. *See* Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit].

*Undisputed* *that in the affidavit of merit, Mr. Fabacher attests that he is "an authorized* *and designated custodian of records for the plaintiff [LRC] in the State of NY."* *However, Mr. Fabacher testified that he was so authorized by MSH, not by LRC.  Mr.* *Fabacher testified further that he has never had any contact with LRC.  (Fabacher* *Dep. (Balber Decl. Ex. 19) Tr. 208:25-:209:9.)*

199.  Mr. Fabacher spent 10% to 50% of his time at MSH executing affidavits of merit. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 71:24-72:06].

*Disputed.  The testimony cited by Plaintiff reflects that Mr. Fabacher testified that the* *amount of time that he devoted to executing affidavits of merit "varied."  LRC also* *objects on the grounds that this statement is irrelevant and immaterial.*

200.  Mr. Fabacher's working hours at MSH were 9:00 AM to 5:00 PM. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 56:23-57:02].

*Undisputed.  However, LRC objects on the grounds that this statement is irrelevant* *and immaterial.*

201.  While employed by MSH, Mr. Fabacher would execute affidavits of merit in "batches." *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 174:15-175-12].

*Undisputed* *that while working for MSH, Mr. Fabacher reviewed and executed* *affidavits of merit in batches of no more than 50 at one time.  However, LRC objects on* *the grounds that this statement is irrelevant and immaterial.*

202.  Each "batch" contains up to 50 affidavits of merit. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 175:10-21; 179:14-17].

*Undisputed that while working for MSH, Mr. Fabacher reviewed and executed affidavits of merit in batches of no more than 50 at one time.  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

203.  Mr. Fabacher would execute each "batch" at one time. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 179:14-17].

*Undisputed that Mr. Fabacher testified that he would review and execute the affidavits of merit in batches, and that he only worked with one batch at a time.  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

204.  Mr. Fabacher would sometimes execute multiple "batches" in the same day. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 179:14-17: 181:16-19].

*Undisputed that Mr. Fabacher testified that he could "potentially" review and execute more than one batch of affidavits in a day.  However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

205.  Mr. Fabacher executed 350 affidavits of merit per week while employed at MSH. *See* Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 175:10-21; 179:04-06].

*Disputed.  Mr. Fabacher testified that he executed <u>up to</u> 350 affidavits of merit in a week while employed at MSH.  LRC also objects on the grounds that this statement is irrelevant and immaterial.*

206.  LRC does not have a chain of title demonstrating that LRC in fact owns the putative debt alleged to be owed by Mr. Guzman. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

***Undisputed*** *that LRC is not currently in possession of and did not produce a chain of title demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank. However, LRC objects on the grounds that this statement is irrelevant and immaterial, as set forth in greater detail in Section 3 of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

207.  LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to First USA Bank. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)].

***Undisputed*** *that LRC is not currently in possession of and did not produce a credit agreement demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank (note LRC does not argue in its opposition to Plaintiff's motion for summary judgment that Plaintiff owes a debt to First USA Bank).  However, LRC objects on the grounds that this statement is irrelevant and immaterial, as set forth in greater detail in Section 3 of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

208.  LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to First USA Bank. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)].

*Disputed. LRC has the credit card statements for the debt owed by Plaintiff to Chase Bank. (Balber Decl. Exs. 11, 12.) LRC does not argue in its opposition to Plaintiff's motion for summary judgment that Plaintiff owes a debt to First USA Bank.*

209. On January 30, 2017, LRC filed a letter seeking a pre-motion conference before Judge Ellis. *See* Keshavarz Decl. [Exhibit YY, January 30, 2017 letter from LRC, DE 112].

*Undisputed. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

210. In the January 30, 2017 letter, LRC argued, for the first time, that the putative debt alleged to be owed by Mr. Guzman was in fact owed to Banco Popular. *See* Keshavarz Decl. [Exhibit YY, January 30, 2017 letter from LRC, DE 112 ("a validly existing debt owed by Plaintiff to an entity other than First USA Bank could evidence a clerical error in the underlying collections lawsuit")].

*Disputed. In its January 30, 2017 letter to Judge Ellis, counsel for LRC noted that "a document produced in discovery suggests a possible debt owed by Plaintiff to Banco Popular North America during the relevant time period." LRC also objects on the grounds that this statement is irrelevant and immaterial.*

211. LRC reiterated this position during a March 16, 2017 hearing before Judge Ellis. *See* Keshavarz Decl. [Exhibit ZZ, March 16, 2017 hearing transcript at 38:01-11 (the hearing transcript incorrectly identifies the speaker, Scott Balber, as Jeffrey Lichtman, the attorney for Samserv who was also present at the hearing. See 15:12-18, where the speaker refers to himself as "Mr. Balber")].

***Disputed.*** *LRC's counsel did not argue at the March 16, 2017 status conference that Plaintiff owed a debt to Banco Popular, and the transcript excerpt cited by Plaintiff does not indicate that LRC's counsel did so. LRC also objects on the grounds that this statement is irrelevant and immaterial.*

212. LRC does not have a chain of title demonstrating that LRC owns a putative debt alleged to be owed by Mr. Guzman to Banco Popular. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

***Undisputed*** *that LRC is not currently in possession of and did not produce a chain of title demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank (note LRC does not argue in its opposition to Plaintiff's motion for summary judgment that Plaintiff owes a debt to Banco Popular). However, LRC objects on the grounds that this statement is irrelevant and immaterial, as set forth in greater detail in Section 3 of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

213. LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to Banco Popular. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)].

***Undisputed*** *that LRC is not currently in possession of and did not produce a credit agreement demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank (note LRC does not argue in its opposition to Plaintiff's motion for summary judgment*

*that Plaintiff owes a debt to Banco Popular).  However, LRC objects on the grounds that this statement is irrelevant and immaterial, as set forth in greater detail in Section 3 of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

214.  LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to Banco Popular. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)].

**Disputed.**  *LRC has the credit card statements for the debt owed by Plaintiff to Chase Bank.  (Balber Decl. Exs. 11, 12.)  LRC does not argue in its opposition to Plaintiff's motion for summary judgment that Plaintiff owes a debt to Banco Popular.*

215.  On May 31, 2017, LRC filed a memorandum of law in opposition to Plaintiff's motion to amend. *See* Keshavarz Decl. [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's motion to amend, DE 168].

**Undisputed.**  *However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

216.  In the May 31, 2017 memorandum, LRC argued, for the first time, that the debt was in fact owed to Chase Bank. *See* Keshavarz Decl. [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's motion to amend, DE 168 at p. 3-5].

**Undisputed** *that a credit card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-2023-4690 due to non-payment.  (Balber Decl. Ex. 11.)  This is the*

*identical debt amount, and the exact same account number, identified in the affidavit of merit (as well as in the underlying complaint and default judgment) filed by MSH in the Collection Lawsuit.  (Id. Ex. 3, 5-6.)*

*217.*   LRC issued a subpoena to Chase Bank on March 28, 2017. *See* Keshavarz Decl. [Exhibit AAA, March 28, 2017 subpoena issued by LRC to Chase Bank].

**Undisputed.**

218.   On April 29, 2017, Chase Bank responded to the subpoena by providing documents relating to a consumer credit account purportedly opened by a Jose Guzman Lara. *See* Keshavarz Decl. [Exhibit BBB, documents provided by Chase Bank in response to March 28, 2017 subpoena issued by LRC ("Chase Documents"].

**Undisputed** *that a credit card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-2023-4690 due to non-payment.  (Balber Decl. Ex. 11.)  This is the identical debt amount, and the exact same account number, identified in the affidavit of merit (as well as in the underlying complaint and default judgment) filed by MSH in the Collection Lawsuit.  (Id. Ex. 3, 5-6.)  The undisputed evidence adduced during discovery also establishes that Plaintiff Jose Guzman signed the account application establishing this account with Chase Bank.  (Id. Ex. 13.)  "Lara" is Plaintiff's mother's maiden name.  (Id.)*

219.   LRC did not possess the Chase Documents prior to April 29, 2017. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce any documents relating to a putative Chase Bank account in

response to this request until after it had received the Chase Documents on April 29, 2017)].

**Undisputed** *that LRC did not possess the Chase Bank statements for account number 4225-8117-2023-4690 until May 2, 2017.*

220. LRC does not have a chain of title demonstrating that LRC owns the putative debt alleged to be owed by Mr. Guzman to Chase Bank. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

**Undisputed** *that LRC is not currently in possession of and did not produce a chain of title demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank. However, LRC objects on the grounds that this statement is irrelevant and immaterial, as set forth in greater detail in Section III of the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

221. In 2007, LRC did not possess a chain of title demonstrating that LRC owns a putative debt alleged to be owed by Mr. Guzman. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)].

**Undisputed** *that LRC is not currently in possession of and did not produce a chain of title demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank. However, LRC objects on the grounds that this statement is irrelevant and immaterial,*

*as set forth in greater detail in Section III of the Argument in LRC's Memorandum of*
*Law in Opposition to Plaintiff's Motion for Summary Judgment.*

222.  In 2007, LRC did not possess a credit agreement demonstrating that Mr. Guzman
owes the putative debt. *See* Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of
Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in
response to this request, nor did LRC produce a privilege log indicating that it was
withholding the credit agreement. LRC did not produce any documents relating to a
putative Chase Bank account in response to this request until after it had received the
Chase Documents on April 29, 2017)].

**Undisputed** *that LRC is not currently in possession of and did not produce a credit*
*agreement demonstrating that LRC owns the debt owed by Mr. Guzman to Chase Bank.*
*However, LRC objects on the grounds that this statement is irrelevant and immaterial,*
*as set forth in greater detail in Section III of the Argument in LRC's Memorandum of*
*Law in Opposition to Plaintiff's Motion for Summary Judgment.*

223.  In 2007, LRC did not have putative credit card statements for the putative debt
allegedly owed by Mr. Guzman. *See Keshavarz Decl.* [Exhibit XX, Plaintiff's First Set
of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card
statements in response to this request, nor did LRC produce a privilege log indicating
that it was withholding the putative credit card statements. LRC did not produce any
documents relating to a putative Chase Bank account in response to this request until
after it had received the Chase Documents on April 29, 2017))].

**Undisputed** *that LRC did not possess the Chase Bank statements for account number*
*4225-8117-2023-4690 until May 2, 2017.  However, LRC objects on the grounds that*
*this statement is irrelevant and immaterial, as set forth in greater detail in Section 3 of*

*the Argument in LRC's Memorandum of Law in Opposition to Plaintiff's Motion for*

*Summary Judgment.*

224.  The Fabacher Affidavit is false. *See* ¶¶ 113-152 above.

**Disputed.**  *This statement improperly calls for a legal conclusion.  Moreover, a credit*

*card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July*

*2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-2023-*

*4690 due to non-payment.  (Balber Decl. Ex. 11.)  This is the identical debt amount,*

*and the exact same account number, identified in the affidavit of merit filed by MSH in*

*the Collection Lawsuit.  (<u>Id</u>. Ex. 3, 5-6.)*

225.  The allegations in the Summons and Complaint are false. *See* ¶¶ 113-152 above.

**Disputed.** *This statement improperly calls for a legal conclusion.  Moreover, a credit*

*card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July*

*2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-2023-*

*4690 due to non-payment.  (Balber Decl. Ex. 11.)  This is the identical debt amount,*

*and the exact same account number, identified in the summons and complaint filed by*

*MSH in the Collection Lawsuit.  (<u>Id</u>. Ex. 3, 5-6.)*

226.  On or about June 29, 2015, LRC executed an Information Subpoena and

Questionnaire directed to Mr. Guzman's employer, Siena Marble & Tile. *See*

Keshavarz Decl. [Exhibit KK, Information Subpoena].

**Disputed.**  *The cited document reflects that MSH, not LRC, executed the information*

*subpoena in the Collection Lawsuit.  As set forth more fully in Section III of the*

*Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion*

*for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.*

227.  The Information Subpoena stated that on September 1, 2007, judgment was entered against Mr. Guzman for $7,821.01. *See* Keshavarz Decl. [Exhibit KK, Information Subpoena].

**Disputed.** *The information subpoena states that on September 21, 2007 (not September 1, 2007), a default judgment was entered against Plaintiff in the amount of $7,821.01.*

228.  The Information Subpoena stated that Mr. Guzman owed LRC "$7821.01 together with interest thereon from 9/21/2007." *See* Keshavarz Decl. [Exhibit KK, Information Subpoena].

**Undisputed.**

229.  The Information Subpoena contained a certification that MSH had "a reasonable belief that the party receiving this subpoena has in their possession information about the debtor that will assist the creditor in collecting the judgment." *See* Keshavarz Decl. [Exhibit KK, Information Subpoena].

**Undisputed.**

230.  As a matter of arithmetic, LRC was representing that Mr. Guzman owed it a judgment with a balance of $13,332.57 as of the date of the information subpoena. *See* Keshavarz Decl. [Exhibit KK, Information Subpoena].

**Disputed.** *The Information Subpoena states that judgment was entered against Mr. Guzman in the amount of "$7821.01 together with interest thereon from 9/21/2007."*

231.  The Information Subpoena was sent nearly eight years after LRC obtained the default

judgment against Mr. Guzman. *See* Keshavarz Decl. [Exhibit KK, June 29, 2015

Information Subpoena; Exhibit TT, Default Application with Affidavit of Merit].

***Undisputed*** *that the information subpoena was executed on or around June 29, 2015,*

*and that default judgment in the Collection Lawsuit was entered on September 21,*

*2007.*

232.  When it sent the Information Subpoena, LRC was aware that John Andino had been

accused of reporting being at two or more addresses at the same time serving process

on 327 occasions. *See* Keshavarz Decl. [Exhibit P, Egleson Affidavit at Exh. A;

Exhibit B, Nittoli Trns.at 92:25-93:13].

***Disputed.***  *The information subpoena reflects that it was executed by MSH, not LRC.*

*As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum*

*of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not*

*adduced any evidence establishing that LRC had any knowledge of the Collection*

*Lawsuit.  And, the testimony cited by Plaintiff in this paragraph states only that LRC*

*received "notice" of the Egleson Declaration shortly after July 31, 2011.  In addition,*

*LRC hereby refers to the arguments regarding the inadmissibility of this declaration*

*set forth in Section I of the Argument in its Memorandum of Law in Opposition to*

*Plaintiff's Motion for Summary Judgment.  LRC also objects on the grounds that this*

*statement is irrelevant and immaterial.*

233.  It also knew of serious allegations that Mr. Fabacher routinely executed false

affidavits of merit. *See* Keshavarz Decl. [Exhibit B, Nittoli Trns.at 92:25-93:13;

Exhibit LL, order granting class certification].

***Disputed.*** *The cited evidence reflects only that LRC's corporate representative was aware of the Egleson Declaration filed, and the class certification decision entered, in* <u>Sykes</u>. *LRC also objects on the grounds that this statement is irrelevant and immaterial. In addition, LRC hereby refers to the arguments regarding the inadmissibility of Egleson Declaration, and the irrelevance of the* <u>Sykes</u> *pleadings and orders, as set forth in Section I of the Argument in its Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment.*

234. Mr. Guzman's employer at Siena Marble showed Mr. Guzman the Information Subpoena. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 32:19-33:05; Exhibit RR, L Guzman Trns.at 15:22-16:07].

   ***Undisputed*** *that Plaintiff testified his employer showed him the information subpoena.*

235. Mr. Guzman learned of the collection case for the first time when his employer gave him a copy of the Information Subpoena. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 33:14-19; Exhibit RR, L Guzman Trns.at 18:05-16;

   ***Undisputed*** *that Plaintiff testified he first learned of the Collection Lawsuit when his employer showed him the information subpoena.*

236. Mr. Guzman showed the Information Subpoena to his wife Laura Guzman. *See* Keshavarz Decl. [Exhibit RR, L Guzman Trns.at 17:12-18:04].

   ***Undisputed*** *that Plaintiff's wife testified that Plaintiff showed her the information subpoena. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

237. Mrs. Guzman did an internet search of MSH. *See* Keshavarz Decl. [Exhibit RR, L Guzman Trns.at 20:02-11].

*Undisputed* *that Plaintiff's wife testified she performed an internet search of MSH.*
*However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

238.  Based on the search results, Mr. and Mrs. Guzman believed that they had been the
victims of fraud. *See* Keshavarz Decl. [Exhibit RR, L Guzman Trns.at 20:02-11].

*Disputed.* *The contents of any internet search allegedly performed by Plaintiff and his*
*wife is inadmissible hearsay.  LRC also objects on the grounds that this statement is*
*irrelevant and immaterial.*

239.  Mr. Guzman went to court three or four days after receiving the Information
Subpoena. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 34:06-11].

*Undisputed* *that Plaintiff testified he went to court three or four days after receiving*
*the information subpoena.  However, LRC objects on the grounds that this statement is*
*irrelevant and immaterial.*

240.  Mr. Guzman took a day off of work to go to court. *See* Keshavarz Decl. [Exhibit RR,
L Guzman Trns.at 20:16-18].

*Undisputed* *that Plaintiff testified he took a day off work to go to court.  However, LRC*
*objects on the grounds that this statement is irrelevant and immaterial.*

241.  Mr. Guzman went to court three times before he was able to access the court file for
the collections case. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 34:18-24;
Exhibit RR, L Guzman Trns.at 20:16-22-02].

*Undisputed* *that Plaintiff testified he went to court three times before successfully*
*reviewing the Collection Lawsuit file.  However, LRC objects on the grounds that this*
*statement is irrelevant and immaterial.*

242.  Mr. Guzman almost lost his job as a result of having to repeatedly return to court to
collect the court file. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 34:18-24].

*Disputed.  Plaintiff and his wife provided conflicting testimony regarding the stability
of Plaintiff's employment at Sienna Marble & Tile.  That Plaintiff would be fired from
Sienna Marble & Tile for visiting the Bronx County courthouse three times also strains
credulity, as Sienna Marble & Tile was owned by Plaintiff's wife's family.  (Laura
Guzman Dep. (Keshavarz Decl. Ex. RR) Tr. 71:11-25.)*

243.  Mr. Guzman reviewed the court file with the help of a CLARO attorney. *See*
Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 36:11-15].

*Undisputed that Plaintiff testified he reviewed the Collection Lawsuit court file with
the help of a CLARO attorney.  However, LRC objects on the grounds that this
statement is irrelevant and immaterial.*

244.  This was the first time that Mr. Guzman learned of the allegation that he owed a debt
to First USA Bank. *See* Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 37:23-38:12;
Exhibit RR, L Guzman Trns.at 22:08-16].

*Undisputed that Plaintiff testified that he learned of the Collection Lawsuit's
allegations when he reviewed the Collection Lawsuit court file.  However, Plaintiff has
known since July 2004 of his charged-off credit card debt to Chase Bank in the amount
of $5,809.51 from his account number 4225-8117-2023-4690.  (Balber Decl. Ex. 11.)
LRC does not argue in its opposition to Plaintiff's motion for summary judgment that
Plaintiff owes a debt to First USA Bank.*

245.  On or about July 31, 2015, Mr. Guzman filed an Order to Show Cause to vacate the default judgment. *See* Keshavarz Decl. [Exhibit BBB, July 31, 2017 Order to Show Cause ("OSC")].

> ***Undisputed.***

246.  Mr. Guzman submitted an affidavit in support of the OSC. *See* Keshavarz Decl. [Exhibit CCC, Affidavit of Jose Guzman in support of OSC].

> ***Undisputed.***

247.  In the affidavit in support of the OSC, Mr. Guzman claimed that he had never been served with a summons and complaint in the collection lawsuit. *See* Keshavarz Decl. [Exhibit CCC, Affidavit of Jose Guzman in support of OSC, p. 2].

> ***Undisputed.***

248.  In the affidavit in support of the OSC, Mr. Guzman claimed that he did not owe the putative debt as alleged in the complaint. *See* Keshavarz Decl. [Exhibit CCC, Affidavit of Jose Guzman in support of OSC, p. 3].

> ***Undisputed*** *that in Plaintiff's affidavit in support of his Order to Show Cause he falsely stated that he "[did] not owe the money."  Plaintiff also attested in his affidavit that he could assert a meritorious defense of "Payment."*

249.  Mr. Guzman also filed a proposed answer to the complaint. *See* Keshavarz Decl. [Exhibit DDD, Proposed Written Answer ("Proposed Answer")].

> ***Undisputed.***

250.  In his Proposed Answer, Mr. Guzman claimed the he had never been served with a summons and complaint. *See* Keshavarz Decl. [Exhibit DDD, Proposed Answer].

*Undisputed that Plaintiff's proposed answer states that he did not receive a copy of the summons and complaint.*

251.  In his Proposed Answer, Mr. Guzman claimed the he did not owe the putative debt as alleged in the complaint. *See* Keshavarz Decl. [Exhibit DDD, Proposed Answer].

*Undisputed that Plaintiff's proposed answer falsely states that he did not owe the debt on which the Collection Lawsuit was based.  Plaintiff also falsely stated in his proposed answer that he had paid all or a part of this debt.*

252.  The matter was set for a traverse hearing to be held on October 15, 2015. *See* Keshavarz Decl. [Exhibit BBB, OSC].

*Undisputed.*

253.  LRC sent Mr. Guzman a letter dated August 18, 2015. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

*Disputed.  The August 18, 2015 letter referenced in this paragraph is on MSH letterhead and was signed by MSH, evidencing that MSH, not LRC, sent this letter.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.   LRC also objects on the grounds that this statement is irrelevant and immaterial.*

254.  The letter stated that "[o]ur office has decided not to go forward with the scheduled traverse hearing." *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

*Disputed.  The August 18, 2015 letter referenced in this paragraph is on MSH letterhead and was signed by MSH, evidencing that MSH, not LRC, sent this letter.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.  LRC also objects on the grounds that this statement is irrelevant and immaterial. However, LRC does not dispute that this paragraph accurately quotes a portion of the August 18, 2015 letter from MSH.*

255.  Attached to the letter were three copies of a stipulation with the putative signature of Rosemary Ortiona, an attorney employed by MSH. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

*Disputed.  The August 18, 2015 letter referenced in this paragraph is on MSH letterhead and was signed by MSH, evidencing that MSH, not LRC, sent this letter.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit.  LRC also objects on the grounds that this statement is irrelevant and immaterial.  However, LRC does not dispute that this letter enclosed three copies of a stipulation with the signature of Rosemary Ortiona, an MSH attorney.*

256.  The letter instructed Mr. Guzman to sign and return one of the stipulations. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

*Disputed.  The August 18, 2015 letter referenced in this paragraph is on MSH letterhead and was signed by MSH, evidencing that MSH, not LRC, sent this letter.  As set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of*

*Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not adduced any evidence establishing that LRC had any knowledge of the Collection Lawsuit. LRC also objects on the grounds that this statement is irrelevant and immaterial. However, LRC does not dispute that this letter requested that Plaintiff sign and return one copy of the stipulation.*

257.  The stipulation provided that the default judgment would be vacated. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

***Undisputed** that the stipulation enclosed with the August 18, 2015 letter provided that the Collection Lawsuit default judgment would be vacated. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

258.  The stipulation further provided that the matter would be discontinued. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

***Undisputed** that the stipulation enclosed with the August 18, 2015 letter provided that the Collection Lawsuit would be discontinued with prejudice. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

259.  The stipulation further provided that "any claims defendant may have to date against plaintiff or its counsel related to this matter are hereby waived and released. *See* Keshavarz Decl. [Exhibit EEE, August 18, 2015 letter with stipulation].

***Undisputed** that the stipulation enclosed with the August 18, 2015 letter provided that any claims Plaintiff may have to date against LRC or its counsel related to the Collection Lawsuit would be waived and released. However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

260.  Mr. Guzman brought the stipulation to a CLARO attorney. *See* Keshavarz Decl.

[Exhibit RR, L Guzman Trns. at 126:15-127:25].

***Undisputed*** *that Plaintiff testified he brought this stipulation to a CLARO attorney.*

*However, LRC objects on the grounds that this statement is irrelevant and immaterial.*

261.  The CLARO attorney instructed Mr. Guzman not to sign the stipulation. *See*

Keshavarz Decl. [Exhibit RR, L Guzman Trns. at 126:15-127:25].

***Disputed.*** *LRC objects that this testimony is inadmissible hearsay. LRC also objects*

*on the grounds that this statement is irrelevant and immaterial. However, LRC does*

*not dispute that Plaintiff's wife testified that the CLARO attorney advised Mr. Guzman*

*not to sign the stipulation.*

262.  In September, 2015, LRC hired Stephen Einstein & Associates, P.C. ("Einstein") to

handle the collection case. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter

with stipulation]

***Disputed.*** *Plaintiff has cited no evidence to demonstrate that LRC "hired" Stephen*

*Einstein & Associates, P.C. ("Einstein") in connection with the Collection Lawsuit. As*

*set forth more fully in Section III of the Statement of Facts of LRC's Memorandum of*

*Law in Opposition to Plaintiff's Motion for Summary Judgment, Plaintiff has not*

*adduced any evidence establishing that LRC had any knowledge of the Collection*

*Lawsuit. LRC also objects on the grounds that this statement is irrelevant and*

*immaterial. However, LRC does not dispute that Einstein sent a letter on October 5,*

*2015 to Marcella Silverman of Lincoln Square Legal Services regarding the Collection*

*Lawsuit.*

263.  Einstein *sent* Mr. Guzman's CLARO attorney a letter dated October 2, 2015. See Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

264.  The letter stated that "[e]nclosed herewith is a fully executed Stipulation to Vacate Judgment and Discontinue Action." *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

265.  Attached to the letter was a stipulation with the putative signature of Rosemary Ortiona, an attorney employed by Einstein. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

266.  The stipulation provided that the default judgment would be vacated. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

267.  The stipulation further provided that the case would be discontinued with prejudice. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

268.  The stipulation did not contain a provision waiving any claims Mr. Guzman might have against LRC or its counsel. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

269.  The CLARO attorney—Marcella Silverman—executed the stipulation on behalf of Mr. Guzman. *See* Keshavarz Decl. [Exhibit FFF, October 2, 2015 letter with stipulation].

   ***Undisputed.***

270.  The judgment was therefore vacated, and the case discontinued with prejudice. See Keshavarz Decl. [Exhibit UU, Ecourts screens merged].

   ***Undisputed.***

271.  As a result of the Sykes settlement, the Attorney General of the State of New York issued an order directing that all default judgments obtained by Leucadia, L-Credit, LR Credit, and each of the LR Credit subsidiary companies (including LR Credit 13) be vacated. See Keshavarz Decl. [Exhibit QQ, May 2, 2017 Attorney General order].

   ***Disputed.  The document cited by Plaintiff is not an order of the Attorney General. Rather, on its face, it is an order entered by the Hon. Erika M. Edwards.  LRC also objects on the grounds that this statement is irrelevant and immaterial.  However, it is undisputed that one provision of the Sykes settlement provided that all default judgments in favor of LR Credit or any of its subsidiaries would be vacated.***

272.  The affidavit of merit filed by the plaintiff in *Portfolio Recovery Associates, LLC v. Mary E. Toohey*, Index No. 126293 (Supreme Court of the State of New York, County of Monroe) purports to be based upon the affiant's "personal knowledge of Account Assignee's record keeping system and [affiant's] review of Account Assignee's records, including a review of the business records transferred to Account Assignee . . ." *See* Keshavarz Decl. [Exhibit VV, Affidavit of Merit from *Portfolio Recovery Associates,*

*LLC v. Mary E. Toohey*, Index No. 126293 (Supreme Court of the State of New York, County of Monroe)].

**Undisputed** *that the affidavit of merit filed by the plaintiff in the above-referenced matter contained the quoted sentence.*

273.  In *Portfolio Recovery Associates, LLC v. Mary E. Toohey*, Index No. 126293 (Supreme Court of the State of New York, County of Monroe), the purported basis for the representations regarding the amount of the debt and the interest thereon made in the affidavit of merit was a review of business records provided to the Plaintiff by the original creditor. See Keshavarz Decl. [Exhibit VV, Affidavit of Merit from *Portfolio Recovery Associates, LLC v. Mary E. Toohey*, Index No. 126293 (Supreme Court of the State of New York, County of Monroe)].

**Disputed.** *The affidavit of merit in the above-referenced litigation states that it is based upon the affiant's "personal knowledge of Account Assignee's record keeping system and my review of Account Assignee's records, including a review of the business records transferred to Account Assignee from HSBC BANK NEVADA, N.A./ORCHARD BANK ('Account Seller'), which have become a part of and have integrated into the Account Assignee's business records, in the ordinary course of business." LRC also objects on the grounds that this statement is irrelevant and immaterial.*

Dated: New York, New York
       August 9, 2017

Respectfully submitted,

HERBERT SMITH FREEHILLS NEW YORK LLP


By: */s/ Scott S. Balber*
    Scott S. Balber
    450 Lexington Ave, 14th Floor
    New York, New York 10017
    Tel:  (917) 542-7600
    Fax:  (917) 542-7601
    Scott.Balber@hsf.com
    *Attorneys for Defendant LR Credit 13, LLC*