**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**JOSE GUZMAN**

                                                                         **Case No.:  1:16-cv-03499-GBD-RLE**

                    **Plaintiff,**

     -against-

**MEL S. HARRIS & ASSOCIATES, LLC**
**LR CREDIT 13, LLC**
**SAMSERV, INC**
**JOHN ANDINO**
**WILLIAM MLOTOK**

                    **Defendants.**
-------------------------------------------------------------------X


**PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANT LR CREDIT 13, LLC'S RULE 56.1 STATEMENT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [DE 185]**

1. On June 12, 2007, MSH filed a collection lawsuit against Plaintiff arising from a charged-off credit card debt in the amount of $5, 809.51 from his account number 4225-8117-2023-4690. *See LR Credit 13, LLC v. Jose Guzman*, No. CV-43405/2007 (Civil Court of New York, County of Bronx) (the "Collection Lawsuit"). (Balber Decl. Ex. 3.)

   **RESPONSE: Plaintiff admits the following: LRC, through its collection law firm, filed a collection lawsuit captioned *LR Credit 13, LLC v. Jose Guzman*, No. CV-43405/2007 on or about June 12, 2007.  Plaintiff further admits that the collection lawsuit sought an amount of $8,666.00. The collection lawsuit sought to collect a putative credit card debt allegedly with First USA Bank. Plaintiff disputes that there is evidence to support any of the other allegations. Plaintiff disputes that there is any evidence the number 4225-8117-2023-4690 on the complaint is an account number. The sixteen digit number is not identified as an "account number" on any of the papers filed by LRC in the collection case. The number is not identified as an "account number" on the summons, complaint, affidavit of merit, or default judgment. *See Jul. 19 Keshavarz Decl.* [Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit]. Further, even if 4225-8117-2023-4690 is an account number, there is no evidence that it is "his" i.e. Mr. Guzman's, account number. There is also no evidence that the account number referred to an account with First USA Bank, as alleged in the collections lawsuit. *See Jul. 19 Keshavarz Decl.* [Exhibit OO, summons and complaint in Guzman collection suit].**

2. On July 7, 2007, MSH filed an affidavit of service in the Collection Lawsuit. (Balber Decl. Ex 4).

**RESPONSE**: Plaintiff disputes this statement. The affidavit of service is dated July 23, 2007, and alleges that service was completed on July 9, 2007. The affidavit of service was not filed on July 7, 2007.

3. On or around September 11, 2007, MSH filed an affidavit of merit in the Collection Lawsuit. (Balber Decl. Ex. 5)

**RESPONSE**: Plaintiff disputes that the affidavit of merit was filed on September 11, 2007. Though the affidavit is dated September 11, 2007, there is no indication that it was filed at that time. The affidavit of merit was filed in support of the application for default, which was signed by the clerk on September 21, 2007. The record reflects that the affidavit of merit is false. The Fabacher Affidavit alleges that Mr. Fabacher had personal knowledge that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement". *See Jul. 19 Keshavarz Decl.* [Exhibit TT, Default Application with Affidavit of Merit]. Fabacher swore that he had personal knowledge that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement". See Keshavarz Decl. *Id.* Mr. Fabacher did not have personal knowledge that Mr. Guzman owed the debt as alleged or any other debt. See Keshavarz Decl. [Exhibit PP, J Guzman Trns.at 37:23-38:12; 64:03-16; Exhibit H, LRC's May 31, 2017 Memorandum of Law in Opposition to Plaintiff's Motion to Amend, DE 168 at note 3 (LRC admitting that Jose Guzman does not owe a debt originally incurred with First Bank USA as alleged in the state court collection suit); Exhibit RR, the June 16, 2017 Deposition Transcript of Laura Guzman ("L Guzman Trns") at 22:08-16; 30:08-13; see ¶¶ ]. Mr. Fabacher regularly executed the affidavits of merit for the various LR Credit

entities. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 71:06-13]. Mr. Fabacher was not employed by the original creditors for the debts that were the subject of the affidavits of merit. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 205:20-206:03]. Mr. Fabacher executed the Fabacher Affidavit at the direction of MSH. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 208:14-19]. The affidavits of merit that Mr. Fabacher executed during his employment at MSH alleged that Mr. Fabacher was "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 83:15-21]. In the affidavit, Mr. Fabacher averred that he was the "designated custodian of records" for LRC. See Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit]. Mr. Fabacher spent 10% to 50% of his time at MSH executing affidavits of merit. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 71:24-72:06]. Mr. Fabacher's working hours at MSH were 9:00 AM to 5:00 PM. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 56:23-57:02]. While employed by MSH, Mr. Fabacher would execute affidavits of merit in "batches." See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 174:15-175:12]. Each "batch" contains up to 50 affidavits of merit. See Keshavarz Decl. [Exhibit WW, Fabacher Trns. at 175:10-21; 179:14-17]. Mr. Fabacher would execute each "batch" at one time. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 179:14-17]. Mr. Fabacher would sometimes execute multiple "batches" in the same day. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 179:14-17: 181:16-19]. Mr. Fabacher executed 350 affidavits of merit per week while employed at MSH. See Keshavarz Decl. [Exhibit WW, Fabacher Trns.at 175:10-21; 179:04-06]. LRC does not have a chain of title demonstrating that LRC in fact owns the

putative debt alleged to be owed by Mr. Guzman. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)]. LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to First USA Bank. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)]. LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to First USA Bank. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)]. On January 30, 2017, LRC filed a letter seeking a pre-motion conference before Judge Ellis.  See Keshavarz Decl. [Exhibit YY, January 30, 2017 letter from LRC, DE 112]. In the January 30, 2017 letter, LRC argued, for the first time, that the putative debt alleged to be owed by Mr. Guzman was in fact owed to Banco Popular. See Keshavarz Decl. [Exhibit YY, January 30, 2017 letter from LRC, DE 112 ("a validly existing debt owed by Plaintiff to an entity other than First USA Bank could evidence a clerical error in the underlying collections lawsuit")]. LRC reiterated this position during a March 16, 2017 hearing before Judge Ellis. See Keshavarz Decl. [Exhibit ZZ, March 16, 2017 hearing transcript at 38:01-11 (the hearing transcript incorrectly identifies the speaker, Scott Balber, as Jeffrey Lichtman, the attorney for Samserv who was also present at the

hearing. See 15:12-18, where the speaker refers to himself as "Mr. Balber")]. LRC does not have a chain of title demonstrating that LRC owns a putative debt alleged to be owed by Mr. Guzman to Banco Popular. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a chain of title in response to this request, nor did LRC produce a privilege log indicating that it was withholding the chain of title)]. LRC does not have a credit agreement demonstrating that Mr. Guzman owes the putative debt to Banco Popular. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce a credit agreement in response to this request, nor did LRC produce a privilege log indicating that it was withholding the credit agreement)]. LRC does not have putative credit card statements for the putative debt allegedly owed by Mr. Guzman to Banco Popular. See Keshavarz Decl. [Exhibit XX, Plaintiff's First Set of Discovery Requests to all Defendants, ¶ 4 (LRC did not produce putative credit card statements in response to this request, nor did LRC produce a privilege log indicating that it was withholding the putative credit card statements)]. On May 31, 2017, LRC filed a memorandum of law in opposition to Plaintiff's motion to amend. See Keshavarz Decl. [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's motion to amend, DE 168]. In the May 31, 2017 memorandum, LRC argued, for the first time, that the debt was in fact owed to Chase Bank. See Keshavarz Decl. [Exhibit H, LRC's memorandum of law in opposition to Plaintiff's motion to amend, DE 168 at p. 3-5].

4. MSH obtained a default judgment against Plaintiff in the Collection Lawsuit on September 17, 2007. (Balber Decl. Ex. 6.)

**RESPONSE: No dispute.**

5. Plaintiff claims he discovered the Collection Lawsuit had been filed against him in July 2015, when an information subpoena was served on his employer. (Balber Decl. Ex. 7 at 3.)

**RESPONSE: No dispute. The record reflects that Mr. Guzman did not know about the lawsuit, and did not have reason to know about the lawsuit, until after his employer received the information subpoena and told Mr. Guzman that he would have to garnish Mr. Guzman's wages.. *See Jul. 19 Keshavarz Decl.* [Exhibit PP, J Guzman Trns.at 33:14-19; Exhibit RR, L Guzman Trns.at 18:05-16].**

6. In or around early August 2015, Plaintiff moved by order to show cause to vacate the Collection Lawsuit default judgment. (Balber Decl. Ex. 8.)

**RESPONSE: No dispute.**

7. On August 13, 2015, the Court granted Plaintiff's application to vacate the Collection Lawsuit default judgment pending a traverse hearing. (Balber Decl. Ex. 9.)

**RESPONSE: No dispute.**

8. MSH and Plaintiff's counsel executed a stipulation on October 15, 2015, which vacated the default judgment and discontinued the Collection Lawsuit. (Balber Decl. Ex. 10, ¶¶ 1-2.)

**RESPONSE: Plaintiff disputes that the stipulation was executed on October 15, 2007, as there is no indication that it was executed on that date. Otherwise, no dispute.**

9. Plaintiff and his wife understood that the October 15, 2015 stipulation discontinued the Collection Lawsuit. (Laura Guzman Dep. (Balber Decl. Ex. 2) Tr. 35:25-36:17.)

**RESPONSE: Plaintiff disputes that the stipulation was executed on October 15, 2007, as there is no indication that it was executed on that date. Otherwise, no dispute.**

10. Neither Plaintiff nor his counsel executed any other stipulations discontinuing the Collection Lawsuit. (Laura Guzman Dep. (Balber Decl. Ex. 2) Tr. 126:15-21.)

    **RESPONSE: No dispute.**

11. LRC did not commit or direct any of the aforementioned actions, and prior to the filing of this proceeding against LRC, LRC had no knowledge of any of the aforementioned actions. (*See, e.g.*, Nittoli Dep. (Balber Decl. Ex. 17) Tr. 44:7-16, 95:13-21, 96:12-97:5; Mlotok Dep. (Balber Decl. Ex. 18) Tr. 204:15-206:23; Fabacher Dep. (Balber Decl. Ex. 19) Tr. 209:4-210:9.)

    **RESPONSE: Plaintiff disputes this assertion in its entirety. Plaintiff disputes the assertion that "LRC did not commit or direct any of the aforementioned actions." The record establishes that LR Credit, LLC—the sole member of LRC—entered into a collection agreement with MSH whereby it retained MSH to act as its agent to collect the putative consumer debts purchased by LRC.** *See Jul. 19 Keshavarz Decl.* **[Exhibit C, Operating Agreement; Exhibit I, Collection Agreement]. The record further establishes that Rushmore—itself a member of LR Credit, LLC—worked as an agent and parent of LRC to supervise the collection activities of MSH, which included collection of the putative debt at issue in this case.** *See Jul. 19 Keshavarz Decl.* **[Exhibit G, Joint Venture Agreement; Exhibit B, Nittoli Trns. at 96:24-97:05]. The record further establishes that LRC continued to use MSH to collect putative consumer debts after it learned of numerous allegations of widespread fraud being perpetrated by MSH.** *See Jul. 19*

*Keshavarz Decl.* **[Exhibit B, Nittoli Trns. 59:11-24; 60:16-61:03; 92:07-21; Exhibit KK, Information Subpoena in Guzman Collection case];** *see* **Rule 56.1 Statement in Support of Plaintiff's Motion for Summary Judgment, DE 199. ("Plaintiff's 56.1 Statement") at ¶¶ 132-150. Further, LRC is the party to the collection lawsuit. LRC filed the collection lawsuit through its attorney MSH. It is the lawsuit of LRC, not the lawsuit of MSH, who is acting as the attorney and agent of LRC. Further, as a matter of law, the knowledge of an agent is imputed to the principal.** *Kirschner v. KPMG LLP*, **15 N.Y.3d 446, 465, 938 N.E.2d 941 (2010) ("Of particular importance is a fundamental principle that has informed the law of agency and corporations for centuries; namely, the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals."** *citing to Henry v Allen*, **151 NY 1, 9 [1896]. Therefore, LRC is charged with the knowledge of MSH, and, if necessary, of Rushmore as well.**

### The Affidavit of Service and Service of Process on Plaintiff

12. LRC hereby incorporated by reference the facts set forth in the Rule 56.1 Statement of Defendants Samserv, Inc. and William Mlotok.

    **RESPONSE: Plaintiff hereby incorporates by reference his responses set forth in his Rule 56.1 Counterstatement in Opposition to Defendant Samserv, Inc.'s Motion for Summary Judgment.**

### The Affidavit of Merit and Chase Credit Card Debt

13. LRC executed and filed the affidavit of merit in the Collection Lawsuit on or around September 11, 2007. (Balber Decl. Ex. 5.)

**RESPONSE**: **Plaintiff disputes that the affidavit of merit was filed on September 11, 2007. Though the affidavit is dated September 11, 2007, there is no indication that it was filed at that time. The affidavit of merit was filed in support of the application for default, which was signed by the clerk on September 21, 2007. Otherwise, no dispute.**

14. The following 16-digit account number was set forth at the bottom of the affidavit of merit: 4225-8117-202-4690. (Balber Decl. Ex. 5.)

    **RESPONSE**: **Plaintiff disputes that there is any evidence the number 4225-8117-2023-4690 on the complaint is an account number. The sixteen digit number is not identified as an "account number" on any of the papers filed by LRC in the collection case. The number is not identified as an "account number" on the summons, complaint, affidavit of merit, or default judgment.** *See Jul. 19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit]. Further, even if 4225-8117-2023-4690 is an account number, there is no evidence that it is "his" i.e. Mr. Guzman's, account number. There is also no evidence that the account number referred to an account with First USA Bank, as alleged in the collections lawsuit.** *See Jul. 19 Keshavarz Decl.* **[Exhibit OO, summons and complaint in Guzman collection suit].**

15. This account number was also set forth at the bottom of the other documents filed by MSH in the Collection Lawsuit, including the summons, complaint, and default judgment. (Balber Decl. Exs. 3, 6); Jose Guzman Dep. (Balber Decl. Ex. 15) Tr. 56:13-19.)

    **RESPONSE**: **Plaintiff disputes that there is any evidence the number 4225-8117-2023-4690 on the complaint is an account number. The sixteen digit number is not identified**

as an "account number" on any of the papers filed by LRC in the collection case. The number is not identified as an "account number" on the summons, complaint, affidavit of merit, or default judgment. *See Jul. 19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit]. Further, even if 4225-8117-2023-4690 is an account number, there is no evidence that it is "his" i.e. Mr. Guzman's, account number. There is also no evidence that the account number referred to an account with First USA Bank, as alleged in the collections lawsuit.** *See Jul. 19 Keshavarz Decl.* **[Exhibit OO, summons and complaint in Guzman collection suit].**

16. The affidavit of merit filed by MSH in the Collection Lawsuit identified a debt owed by Plaintiff pursuant to a retail charge account agreement between Plaintiff and First USA Bank. The affidavit of merit states the unpaid balance of that account is $7,535.65 and seeks pre-judgment interest on $5, 809.51. (Balber Decl. Ex. 5.)

    **RESPONSE: No dispute.**

17. An amount of $5,809.51 is also identified on the summons, complaint, and default judgment. (Balber Decl. Exs. 3, 6); Jose Guzman Dep. (Balber Decl. Ex. 15) Tr. 60:10-12, 63:16-25.)

    **RESPONSE: Plaintiff does not dispute the following: Plaintiff notes that the summons states that "judgment will be taken against you for the sum of $8666.00 with interest on the sum of $5809.51 from the date of the filing of complaint, and the costs of this action;" the complaint states that "there is now due and owing to plaintiff from defendant(s) the agreed total sum of $8666.00 with interest on $5809.51 from the date of the filing of complaint;" and the default judgment contains a ledger that accounts for**

"Interest @ 9% on $5809.51 from 06-12-2007." *See Jul. 19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit].**

18. A credit card statement produced by non-party Chase Bank on May 2, 2017 reflects that in July 2004, Plaintiff had a $5,809.51 debt charged off his account number 4225-8117-202-4690 due to non-payment. (Balber Decl. Ex. 11.) This is the exact same amount, and the exact same account number, identified in the affidavit of merit filed by MSH in the Collection Lawsuit. (Balber Decl. Ex. 5.)

    **RESPONSE: Plaintiff disputes this statement in its entirety. The documents produced by Chase Bank reflect that a putative credit account was taken out by someone named "Jose Guzman Lara." Plaintiff's name is not "Jose Guzman Lara."** *See Jul. 19 Keshavarz Decl.* **[Exhibit PP, J. Guzman Trns. 50:18-51:15];** *Aug. 9 Keshavarz Decl.* **[Exhibit U, Jose Guzman driver's license]. The putative Chase Bank agreement does not contain Mr. Guzman's signature.** *See Jul. 19 Keshavarz Decl.* **[Exhibit PP, J. Guzman Trns. 69:05-11]. The Collection Lawsuit identified the putative original creditor as First USA Bank, not Chase Bank.** *See Jul. 19 Keshavarz Decl.* **[Exhibit OO, summons and complaint in Guzman collection suit]. Plaintiff further disputes this assertion because the record establishes that Mr. Guzman did not open the putative Chase account, did not use the address 1304 Boston Road for personal mail, and did not use a credit card for business purposes in 2004.** *See Jul. 19 Keshavarz Decl.* **[Exhibit PP, deposition transcript of Jose Guzman, 24:13-23; 65:18-20; 66:13-22; 6920-25; 71:06-08; 135:11-15]. Plaintiff notes that the sixteen digit number is not identified as an "account number" on the summons, complaint, affidavit of merit, or default judgment.** *See Jul.*

*19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit]. The Chase documents do not reflect that a $5,809.51 debt was charged off, and LRC provides no evidence as to what happened to the debt after it was allegedly charged off.** *See Jul. 19 Keshavarz Decl.* **[Exhibit V, Chase Documents].**

## LRC Had No Involvement In, Or Knowledge Of, MSH'S Collection Efforts

19. LRC was formed by its parent company, LR Credit, LLC (LR Credit"), to invest in portfolios of consumer debt. (Joint Venture Agreement § 5.02  (Balber Decl. Ex. 16 at LR_GUZ000099-100).)

    **RESPONSE: No dispute.**

20. Rushmore Recovery Management, LLC ("Rushmore") served as the portfolio manager responsible for managing LRC's debt portfolio—*i.e.*, collecting on the underlying debt. (Joint Venture Agreement § 2.02  (Balber Decl. Ex. 16 at LR_GUZ000096).)

    **RESPONSE: No dispute.**

21. As portfolio manager, Rushmore was also responsible for supervising the performance of MSH in its debt collection efforts. (Joint Venture Agreement § 7.02(a) (Balber Decl. Ex. 16 at LR_GUZ0000107-107); *see also* Nittoli Dep. (Balber Decl. Ex. 17) Tr. 96:24-25.)

    **RESPONSE: No dispute.**

22. Rushmore and MSH were solely responsible for selecting the process service company used by MSH to serve legal process on the debtors. (Nittoli Dep. (Balber Decl. Ex. 17) Tr. 95:13-21.)

**RESPONSE: Plaintiff disputes the assertion that Rushmore and MSH were "solely responsible" for selecting the process service company. As explained in Plaintiff's MOL in Opposition to Defendant LR Credit 13, LLC's Motion for Summary Judgment, LRC is legally responsible for the actions taken by its agents in connection with the collection of the putative consumer debts. LRC had the right and the ability to direct its attorney's conduct in connection with the collection of the putative debts. It chose not to exert that authority.**

23. In the Collection Agreement pursuant to which MSH was retained by LR Credit (the "Collection Agreement"), MSH warranted in three seperate provisions that its collection efforts would comply with state and federal law, including the FDCPA. ((Collection Agreement §§ I.A, III.E, III.F (Balber Decl. Ex. 20 at LR_GUZ000059, LR_000061).)

    **RESPONSE: No dispute.**

24. Rushmore was responsible for enforcing the terms of the Collection Agreement. (Joint Venture Agreement § 7.02(a) (Balber Decl. Ex. 20 at LR_GUZ000107).)

    **RESPONSE: No dispute. Plaintiff notes that Rushmore was not *solely* responsible for enforcing the terms of the Collection Agreement.**

25. At all relevant times, LRC was purely a passive investor with no involvement in, or knowledge of, how MSH conducted its collection efforts. (Nittoli Dep. (Balber Decl. Ex. 17) Tr. Tr. 44:7-16, 95:13-21, 96:12-97:5; Mlotok Dep. (Balber Decl. Ex. 18) Tr. 204:15-206:23; Fabacher Dep. (Balber Decl. Ex. 19) Tr. 209:4-210:9.)

**RESPONSE**: **Plaintiff does not dispute that LRC is a passive entity and that it took no steps to monitor the conduct that MSH engaged in on LRC's behalf.** *See Jul. 19 Keshavarz Decl.* **[Exhibit B, Nittoli Trns. 55:03-08; 109:05-08]. Plaintiff disputes the assertion that LRC had "no involvement in" MSH's collection efforts, as the record reflects that MSH represented LRC in the collection suits, filed the suits on LRC's behalf, and remitted monies collected on the putative debts to LRC.** *See Jul. 19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit; Exhibit I, Collection Agreement].**

26. None of the seven individuals deposed in this action testified that LRC was involved in, or had knowledge of, the Collection Lawsuit filed by MSH against Plaintiff. Indeed, no evidence adduced during discovery in this action shows that LRC was involved in, or had knowledge of, the Collection Lawsuit filed by MSH against Plaintiff.

    **RESPONSE**: **Plaintiff disputes this statement. LRC was clearly "involved" in the Collection Lawsuit, as it was the plaintiff in that action. As explained in Plaintiff's MOL in Opposition to Defendant LR Credit 13, LLC's Motion for Summary Judgment, MSH was LRC's agent in connection with the collection of the putative debt. Thus, MSH's "knowledge" regarding the Collection Lawsuit is imputed to LRC.** *See Jul. 19 Keshavarz Decl.* **[Exhibit TT, default application with affidavit of merit; Exhibit OO, summons and complaint in Guzman collection suit; Exhibit I, Collection Agreement].**

**Plaintiff's Alleged Emotional Distress**

27. In July 2016, Plaintiff began working at Foodtown at 3471 Boston Post Road, Bronx, NY 10469. (Jose Guzman Dep. (Balber Decl. Ex. 15) Tr. 7:25-8:10.) Plaintiff worked at this location through at least May 2017. (*Id*. Tr. 8:15-17.)

    **RESPONSE: No dispute.**

28. Eduardo Sanchez and Francisco Caballero where already employed at the Foodtown at 3471 Boston Post Road when Plaintiff began working there in July 2016. (Sanchez Dep. (Balber Decl. Ex. 21) Tr. 6:3-10; Caballero Dep. (Balber Decl. Ex. 22) Tr. 6:10-15.) Neither Eduardo Sanchez nor Francisco Caballero had any contact with Plaintiff between the time Plaintiff allegedly learned of the Collection Lawsuit in June or July 2015, and the time they began working together in July 2016. (Sanchez Dep. (Balber Decl. Ex. 21) Tr. 6:3-10; Caballero Dep. (Balber Decl. Ex. 22) Tr. 9:8-9:22.)

    **RESPONSE: No dispute.**

29. Eduardo Sanchez and Francisco Caballero are the only witnesses other than Laura identified in Plaintiff's second amended Rule 26 disclosures alleged to have knowledge of the "emotional distress, anger, and frustration of Mr. Guzman caused by the wrongful debt collection practices of Defendants." (Balber Decl. Ex. 7 at p. 3.)

    **RESPONSE: Plaintiff does not dispute that his second amended Rule 26 disclosures list Eduardo Sanchez, Francisco Caballero, and Laura Guzman as witnesses with knowledge of Plaintiff's emotional distress damages. Plaintiff notes that Plaintiff's fourth amended Rule 26 disclosures list an additional witness, Saul Quintana, as an individual with knowledge of Plaintiff's emotional distress damages.** *See Aug. 9 Keshavarz Decl. Opposing Summary Judgment* **[Exhibit V, Plaintiff's Fourth Amended**

**Rule 26 Disclosures] (These disclosures were erroneously dated July 20, 2016. They were in fact served on June 14, 2017).**

30. Eduardo Sanchez and Francisco Caballero maintain that Plaintiff was "happy" and "joyful" throughout the time they knew him in 2016, and he did not appear distressed until a dispute over a debt began upsetting him earlier this year (in 2017). (Sanchez Dep. (Balber Decl. Ex. 21) Tr. 8:4-9:12; Caballero Dep. (Balber Decl. Ex. 22) Tr. 9:8-18, 10:12-11:16.)

    **RESPONSE: Plaintiff does not dispute that Plaintiff experienced moments of happiness and joy at various times in 2016.**

31. Plaintiff has not medical records to corroborate his alleged emotional distress. (Jose Guzman Dep. (Balber Decl. Ex. 15) Tr. 93:17-19; Laura Guzman Dep. (Balber Decl. Ex. 2) Tr. 97:19-98:12.) Plaintiff does not recall seeing a doctor since 2014, and his wife cannot recall Plaintiff ever raising his alleged emotional distress with his physician (*Id.*)

    **RESPONSE: No dispute.**

Dated: Brooklyn, New York
         August 9, 2017

Respectfully submitted,
/s/
_____
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809

Email: Ahmad@newyorkconsumerattorney.com