UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
JOSE GUZMAN

            Case No.:  1:16-cv-03499-GBD-RLE

       Plaintiff,

  -against-

MEL S. HARRIS & ASSOCIATES, LLC
LR CREDIT 13, LLC
SAMSERV, INC
JOHN ANDINO
WILLIAM MLOTOK

       Defendants.
-------------------------------------------------------------------X


**PLAINTIFF'S RESPONSES IN OPPOSITION TO DEFENDANT SAMSERV, INC'S RULE 56.1 STATEMENT IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT [DE 180]**

1. Samserv is a process serving agency, established in 1995. Declaration of William Mlotok, executed July 19, 2017 ("Mlotok Decl.") ¶ 1.

   **RESPONSE: No Dispute.**

2. Samserv's business purpose has been service of process and other legal documents in a wide variety of legal proceedings. Id. ¶ 2.

   **RESPONSE:** Disputed in part. The statement makes no reference to a time frame and is therefore vague. Mr. Mlotock testified in deposition that Samserv is now just a shadow of its former self with only one service account. *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 29:08-16]. Plaintiff does not dispute that Samserv is in the business of serving process. Plaintiff disputes that Samserv serves process "in a wide variety of legal proceedings" as that phrase is vague and unintelligible and is supported solely by the July 19, 2017 declaration of Defendant William Mlotok. Plaintiff notes that Samserv has provided affidavits of service in at least 100,000 collection lawsuits on behalf of MSH, rendering the phrase "and other legal documents" misleading.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 137:08-14].**

3. Some years after its founding, Samserv began serving process on behalf of Mel S. Harris and Associates, LLP. Id.

   **RESPONSE: No dispute, although the term "some years" is vague.**

4. William Mlotok is the sole stockholder of Samserv. He is also its sole officer. Id. ¶ 3.

   **RESPONSE: No dispute.**

5. Samserv has no employees now but, in 2007, it had employees who performed certain tasks in its office. One of those tasks was data entry. Id.

   **RESPONSE: No dispute.**

**Samserv's Use of Independent Contractor Process Servers, Including Andino**

6. Samserv retained process servers as independent contractors to effectuate service of process. These individuals would not be employees of Samserv and Samserv exerted no legal control over these individuals in their performance of their service of process. Id. ¶ 4.

    **RESPONSE: Plaintiff disputes this assertion in its entirety. 56.1 Statements are limited to assertions of fact. However, the assertions here are as to legal conclusions. Whether a person is an "independent contractor" is a question of law. The question of whether the process servers "would not be employees" is also a legal question. Further, the assertion that Samserv, a corporation, exerted no "legal control" over the process servers or the work of the process servers is, by definition, a legal question.**

7. For process to be served in the City of New York, Samserv would only retain individuals who were duly licensed by the New York City Department of Consumer Affairs ("DCA"). Id. ¶ 5.

    **RESPONSE: Plaintiff is unable to admit or deny this assertion as Samserv has refused to provide information as to any other process server other than Mr. Andino. Plaintiff admits that Samserv produced what appears to be a DCA process server license of Mr. Andino, however, there is no indication whether the license was suspended or revoked either before, during, or after Mr. Andino's employment with Samserv. Plaintiff admits that process servers are required to be licensed by the DCA, and were required to be licensed by the DCA in 2007. Plaintiff notes that, according to DCA records, Samserv hired a process server after that process server's process license had been revoked. Samserv regularly used a process server named Michael Mosquera to serve summons and complaints. *See Jul. 19 Keshavarz Decl.* [Exhibit J, New York City Department of**

Consumer Affairs Roster of Process Servers for Samserv, Inc.]. Mr. Mosquera's process server license was revoked on August 8, 2000 because the DCA found that Mr. Mosquera lied about serving a summons and complaint on an individual named Joseph McMahon. *See Jul. 19 Keshavarz Decl.* [Exhibit O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's process server's license]. Specifically, the DCA Administrative Law Judge found that Mr. Mosquera had committed "the most serious violation a process server can commit," and that "Mr. Mosquera's action not only injured Mr. McMahon by subjecting him to emotional trauma, embarrassment and inconvenience, it also strikes a serious blow to the fundamentals of due process." *See Jul. 19 Keshavarz Decl.* [Exhibit O, New York City Department of Consumer Affairs decision revoking Michael Mosquera's process server's license]. Although the DCA's decision revoking Mr. Mosquera's process server's license was a matter of public record, Samserv nonetheless chose to use Mr. Mosquera to serve process. *See Jul. 19 Keshavarz Decl.* [Exhibit P, Egleson Affidavit, Exh. A]. In 2009, Ms. Mosquera executed an Assurance of Discontinuance, whereby he settled allegations of process server misconduct. *See Jul. 19 Keshavarz Decl.* [Exhibit Q, Mosquera Assurance of Discontinuance]. Mr. Mosquera agreed to abide by all rules applicable to process servers and to adhere to additional requirements imposed by the DCA. *See Jul. 19 Keshavarz Decl.* [Exhibit Q, Mosquera Assurance of Discontinuance]. In 2011, the DCA sent a letter informing Mr. Mosquera that it declined to renew his process server license. *See Jul. 19 Keshavarz Decl.* [Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license]. In the letter, the DCA stated that it had determined that Mr. Mosquera had violated the terms of the Assurance of

**Discontinuance.** *See Jul. 19 Keshavarz Decl.* **[Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license]. Specifically, the DCA found that "[y]our log books remain deficient in that you do not record the type of service and the full address of the person served. Your also leave blank spaces between entries, you frequently fail to describe the door and hallway area when making conspicuous service, and you do not have a separate entry for previous service attempts in several instances. You also failed to take pictures of many of your conspicuous place services, as required under the AOD."** *See Jul. 19 Keshavarz Decl.* **[Exhibit R, 2011 DCA Letter Denying Renewal of Mr. Mosquera's process server license].**

8. One such individual was John Andino. Id. ¶ 6.

    **RESPONSE: No dispute. Plaintiff admits that Samserv produced what appears to be a DCA process server license of Mr. Andino, however, there is no indication whether Mr. Andino's process server license was suspended or revoked either before, during, or after Mr. Andino's employment with Samserv.**

9. Mr. Andino obtained his New York City license to serve process after submitting his application to the Department of Consumer Affairs on or about January 31, 2007, which application was approved on February 2, 2007. In that application, Mr. Andino acknowledged, under penalty for falsification, that he had "received a copy of the laws and regulation relating to the license" and promised that he "will comply with the applicable law and the rules of the DCA that are now in force, and those that are enacted in the future." Declaration of Jeffrey S. Lichtman, dated July 19, 2017 ("Lichtman Decl.") Ex. A. at 2.

    **RESPONSE: No dispute.**

10. Sometime thereafter, Mr. Andino began serving process for Samserv. As with all of its independent contractors, Samserv did not instruct Andino on how to serve process other than to require that he comply with all laws and regulations. Andino selected the territory in which he would provide services to Samserv. Mlotok Decl. ¶ 6.

**RESPONSE: No dispute as to the first sentence, but disputes as to the remainder. Rule 56.1 statements are limited to assertions of fact. The question of whether Mr. Andino or any of the process servers are "independent contractors" is a question of law. Plaintiff disputes the assertion that Samserv required Andino to "comply with all laws and regulations." By paying process servers only for completed service, and only paying $6 or $7 for (non-rush) service of collection lawsuits, Samserv and Mlotock are not requiring Andino and other process servers to comply with the law, but to in fact provide false affidavits of service. Mr. Mlotock does not dispute this but instead merely states he "hopes" that the payment structure does not provide such an incentive and that the process server would be truthful.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 164:13 to 165:11; 148:24-149:03]. Serving of summons and complaints are not normally rush jobs.** *Id*. **at 148:19 to 149:02.**

**RESPONSE: No dispute.**

11. As with its other independent contractor process servers, Samserv did not require Andino to work at times prescribed by Samserv. Andino chose the days on which he wanted to work and accepted assignment from Samserv on a schedule that Andino himself chose. Thus, when Andino was interested on any particular day to come to Samserv's office to accept work, Samserv would assign to him documents to be served in the Bronx, Andino's chosen region. Id. ¶ 8.

**RESPONSE: Dispute in part. 56.1 Statements are limited to assertions of fact. Whether a person is an "independent contractor" or not is a question of law. Otherwise, undisputed.**

12. In addition, Andino would only serve those documents that he agreed to accept for his service of process. Id.

    **RESPONSE: Objection, vague. By definition if he served he agreed to serve.**

13. Other than legal limitations, Andino could serve process at his convenience, at times and on date as he preferred and chose. Moreover, Andino was free to serve process for process serving agencies other than Samserv. Id.

    **RESPONSE: Dispute in part. Dispute that, "Andino could serve process at his convenience, at times and on date as he preferred and chose." This is disputed given the payment structure and amount of pay established by Samserv and Mr. Mlotock. For service via affixing summons and complaint on door and subsequently mailing ("nail and mail), which was almost exclusively how Andino served process, Andino had to visit the service location three separate times in order to properly serve process.** *See Jul. 19 Keshavarz Decl.* **[Exhibit GGG, Excerpts from Samserv process server database]. Given Andino's pay structure, he would have been paid as little as $2 per service attempt for "nail and mail" cases, and this figure does not include social security tax or expenses, like parking or gas.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 150:16-24];** *see* **¶ 14 below. This pay structure ensured that Andino could not make a living without resorting to "sewer service." No dispute that Andino was able to serve process for process serving companies other than Samserv. However, Plaintiff**

**disputes the use of the qualifier "[o]ther than legal limitations" because this phrase is vague and unintelligible and because it calls for a legal conclusion.**

14. Samserv did not pay Andino according to the time he spent on Samserv projects. Rather, Samserv paid Andino by the "piece," i.e., for each service of process. Samserv paid Andino a flat rate for service of process and no deductions were made for income or social security taxes. Samserv did not compensate Andino for his expenses. Id. ¶ 10.

    **RESPONSE: No dispute. Plaintiff notes that Samserv process servers were generally paid $6 to $7 for completed service for (non-rush) collection lawsuits. Most of the collection lawsuits were non-rush.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 150:16-24].**

15. Andino would complete a form in his own handwriting that provided information to Samserv relating to Andino's attempts and completions of service of process. In 2007, an employee of Samserv would enter the information on the handwritten form into a database maintained by Samserv. After that data entry, an affidavit of service would be generated reflecting attempts and completion of service, to the extent required, for each completed service of process. Id. ¶ 11.

    **RESPONSE: No dispute.**

16. As with all process servers licensed by the DCA, Andino maintained a logbook in which Andino recorded information about his services of process, pursuant to applicable law and rules. That logbook was the property of Andino and not of Samserv. Id. ¶ 12.

    **RESPONSE: Plaintiff disputes this statement. This assertion is based solely on the July 19, 2017 declaration of Defendant William Mlotok, and Mr. Mlotok has not explained how he came to know that Andino did, in fact, maintain log books as required by law.**

**The process Samserv describes in paragraph 16 does not include an independent review of the process server's log book. Samserv did not keep copies of process server logbooks prior to 2011.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 100:08-19]. Samserv did not check or retain its process server's logbooks.** *See Keshavarz Decl* **[Exhibit E, Mlotok Trns. 98:10-99:14].** <u>**Further, Plaintiff disputes the sentence "That logbook was the property of Andino and not of Samserv" suggests that Samserv could not require – as it currently does – for process servers to provide the logbook for copying.**</u> **Mlotock testified that beginning approximately 2011 it digitally scanned the log books of each of its process servers. Mlotock did so because the DCA rules changed in 2011 and required the same. When asked why Samserv did not begin requiring its process servers to scan their logbooks prior to 2011, Mlotock simply testified "I have no reason."** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 100:08-19]. The above demonstrates the Samserv could, if it chose to, require its process servers to allow Samserv to copy the logbooks, but it chose not to. This rebuts any assertion that Samserv "did not have possession, custody, or control of any logbooks of Andino during the duration of this lawsuit." Samserv simply made the decision not to require the logbooks to be copied.** *Id.*

17. Samserv did not have possession, custody, or control of any logbooks of Andino during the duration of this lawsuit. <u>Id.</u>

    **RESPONSE: Disputed. If Samserv means in 2007, the year of the collection lawsuit filed against Mr. Guzman, Plaintiff denies the assertion. Mlotock testified that beginning approximately 2011 it digitally scanned the log books of each of its process servers. Mlotock did so because the DCA rules changed in 2011 and required the same.**

**When asked why Samserv did not begin requiring its process servers to scan their logbooks prior to 2011, Mlotock simply testified "I have no reason."** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 100:08-19]. The above demonstrates the Samserv could, if it chose to, require its process servers to allow Samserv to copy the logbooks, but it chose not to. This rebuts any assertion that Samserv "did not have possession, custody, or control of any logbooks of Andino during the duration of this lawsuit."  Samserv simply made the decision not to require the logbooks to be copied. When asked why Samserv did not begin requiring its process servers to scan their logbooks prior to 2011, Mlotock simply testified "I have no reason."** *Id.*

18. Andino is no longer a contractor for Samserv and has not been during the duration of this lawsuit. Id. ¶ 14.

    **RESPONSE: No dispute, assuming by "this lawsuit" Samserv means during this FDCPA lawsuit**

**Service of Process on Guzman in the Underlying Litigation**

19. At some time before July 6, 2007, Samserv received documents from Mel S. Harris and Associates, LLC ("MSH") to serve on Guzman. MSH provided to Samserv 1304 Boston Road, Bronx, New York 10456 as the address of Guzman for purposes of service of process. Id. ¶ 15.

    **RESPONSE: No dispute.**

20. From 2001 through 2004, Guzman owned and operated a store located at 1304 Boston Road, Bronx, New York and worked there during that period. July 14, 2017 Deposition of Jose Guzman (Lichtman Decl. Ex. B) ("Guzman Tr.") at 133-34, 143.

**RESPONSE: No dispute. The record supports the assertion that Mr. Guzman worked at 1304 Boston Road, a commercial property, from 2001 through 2004.**

21. Samserv provided to Andino the address of 1304 Boston Road, Bronx, New York 10456 as the address of Guzman for purposes of service of process. Mlotok Decl. ¶ 16.

    **RESPONSE: No dispute.**

22. Samserv did not control Andino and did not dictate to him when and how to effectuate service of those papers. Id. ¶ 17.

    **RESPONSE: Plaintiff disputes this assertion. By paying process servers, such as Mr. Andino, only for completed service, and only paying $6 or $7 for (non-rush) service of collection lawsuits, Samserv and Mlotock are not requiring Andino and other process servers to comply with the law, but to in fact provide false affidavits of service. Mr. Mlotock does not dispute this but instead merely states he "hopes" that the payment structure does not provide such an incentive and that the process server would be truthful.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 164:13 to 165:11]. Service of summons and complaints are not normally rush jobs.** *Id*. **148:19 to 149:2.**

23. On July 23, 2007, Andino signed an Affidavit of Service regarding service of those papers. Id. ¶ 18 & Ex. 1.

    **RESPONSE: No dispute if by "those papers" Samserv means the summons and complaint in the collection lawsuit. Otherwise, Plaintiff disputes.**

24. The Affidavit of Service reflects that Andino first attempted to serve process on Guzman at 1304 Boston Road on July 6, 2007 at 9:00 AM. Id. ¶ 19 & Ex. 1.

    **RESPONSE: Plaintiff disputes the substance of this allegation.  There is no dispute that the document says that. However, by defaulting in this FDCPA action, Andino**

**admitted, as alleged in the FDCPA complaint, the allegations in the affidavit of service as to Mr. Guzman are false, including that "Andino first attempted to serve process on Guzman at 1304 Boston Road on July 6, 2007 at 9:00 AM."**

25. Samserv's database reflects that Andino attempted to serve process at 1234 Boston Road, Apartment 5C, Bronx, New York 10456 at 8:47 AM, about 13 minutes earlier. The records further reflect that, 15 minutes after attempting service on Guzman, Andino attempted to serve process at 1051 Kelly Street, Apartment 5, Bronx, New York 10459 at approximately 9:15 AM. Id. ¶¶ 20-21 & Ex. 2.

    **RESPONSE: No dispute.**

26. The Affidavit of Service reflects further that, on July 7, 2007, at 3:12 PM, Andino again attempted to serve process on Guzman. Id. ¶ 22 & Ex. 1.

    **RESPONSE: Plaintiff disputes the substance of this allegation. There is no dispute that the affidavit of service says that. However, by defaulting in this FDCPA action, Andino admitted, as alleged in the FDCPA complaint, the allegations in the affidavit of service as to Mr. Guzman are false, including that "on July 7, 2007, at 3:12 PM, Andino again attempted to serve process on Guzman."**

27. Samserv's database reflects that, 22 minutes before that time, Andino attempted to serve process at 1234 Boston Road, Apartment 5C, Bronx, New York at 2:50 PM. Further, Andino attempted to serve process at 105 Kelly Street, Apartment 5 at approximately 3:32 PM, 20 minutes after Andino's second attempt to serve process on Guzman. Id. ¶¶ 22-23 & Ex. 2.

    **RESPONSE: Plaintiff disputes the substance of this allegation as to Mr. Guzman. There is no dispute that the Samserv database reflects the service as stated. However, by defaulting in this FDCPA action, Andino admitted, as alleged in the FDCPA**

**complaint, the allegations in the affidavit of service as to Mr. Guzman are false, including that allegation of the time of attempted service on Mr. Guzman. No dispute as to Samserv records reflecting the attempted service on the consumers other than Guzman.**

28. The Affidavit of Service records that, Andino made his third attempt to serve Guzman at 1304 Boston Road on July 9, 2007 at 8:59 AM. Id. ¶ 24 & Ex. 1.

    **RESPONSE: Plaintiff disputes the substance of this allegation. There is no dispute that the affidavit of service says that. However, by defaulting in this FDCPA action, Andino admitted, as alleged in the FDCPA complaint, the allegations in the affidavit of service as to Mr. Guzman are false, including that "Andino made his third attempt to serve Guzman at 1304 Boston Road on July 9, 2007 at 8:59 AM." No dispute as to Samserv records reflecting the attempted service on the consumers other than Guzman.**

29. Samserv's records reflect that Andino was at 1234 Boston Road, Apartment 5C, Bronx, New York 19 minutes earlier, at 8:40 AM. Those records also show that, 21 minutes after this third attempt at service on Guzman, Andino was at 1051 Kelly Street, Apartment 5, at 9:20 AM. Id. ¶¶ 24-25 & Ex. 2.

    **RESPONSE: Plaintiff disputes the substance of this allegation in relation to service as to Mr. Ansdino. There is no dispute that Samserv's database states as alleged as to Mr. Guzman. However, the Samserv database is based on the representations made by Andino. However, by defaulting in this FDCPA action, Andino admitted, as alleged in the FDCPA complaint, the allegations in the affidavit of service as to Mr. Guzman are false. No dispute as to Samserv records reflecting the attempted service on the consumers other than Guzman.**

30. The Affidavit of Service states that on July 9, 2007, Andino affixed the summons and complaint to the door at 1304 Boston Road, and subsequently mailed the process to Guzman at that address on July 23, 2007.

    **RESPONSE: Plaintiff disputes the substance of this allegation. There is no dispute that the affidavit of service says that. However, by defaulting in this FDCPA action, Andino admitted, as alleged in the FDCPA complaint, the allegations in the affidavit of service as to Mr. Guzman are false, including that "Andino made his third attempt to serve Guzman at 1304 Boston Road on July 9, 2007 at 8:59 AM." No dispute as to Samserv records reflecting the attempted service on the consumers other than Guzman.**

31. Mlotok notarized Andino's signature on the Affidavit of Service on July 23, 2007. Id. ¶ 26 & Ex. 1.

    **RESPONSE: No dispute.**

32. Samserv has charged each process server, including Andino, with ensuring that the information in each affidavit of service to which they swear was correct prior to signing such affidavit of service. Id. ¶ 27.

    **RESPONSE: Not disputed.**

33. Aside from being sued here, the Samserv Defendants had no knowledge of what happened in Guzman's case after Samserv forwarded the affidavit of service to MSH and no ability to make any decisions concerning the litigation against Guzman. Id. ¶ 28.

    **RESPONSE: No dispute.**

**Samserv's Practices and Procedures to Prevent Ineffective Service**

34. Samserv exerted bono fide efforts to prevent or minimize the risk of a violation of the law and to minimize the risk of ineffective service of process. Id. ¶ 29.

    **RESPONSE: Plaintiff disputes this statement. The record establishes that the sole methods Samserv used for monitoring process server conduct was to perform random "checks." These checks were performed sporadically and were not documented. Samserv has not indicated whether all of its process servers were subject to these alleged "checks." Samserv does not elaborate as to what the "checks" actually entailed, beyond simply confirming that the information in affidavits of service matched the information entered by the process servers in their logbooks and on worksheets.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 100:24-103:13].**

35. In addition to retaining independent contractors for service within the City of New York who were licensed by the DCA, Samserv also conducted random checks on the services of process performed by its independent contractors. For this task, Samserv relied upon (among other) Marc Mlotok, who held a Degree in Public Administration for New York University. Marc Mlotok would, at random, select a date and compare the information entered in a process server's logbook with the data on the corresponding affidavits of service. This system used randomly selected dates and was not a thorough audit of all data, and served as a means to detect potential errors and irregularities. Marc Mlotok performed this function in June and July of 2007, among other times. Id. ¶¶ 30-31.

    **RESPONSE: Plaintiff disputes the assertion that "Marc Mlotok performed this function in June and July of 2007." This assertion is based solely on the July 19, 2017 declaration of Defendant William Mlotok, and Mr. Mlotok has not explained how he came to know that Marc Mlotok performed random searches in June and July of 2007**

**specifically. This assertion is contradicted by William Mlotok's deposition testimony, where he stated repeatedly that he did not know the dates and times that random checks were performed, that he doesn't know how often the random checks were performed, and that there is no documentation of the alleged random checks.** *See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 100:24-103:13]. Plaintiff notes that this assertion does not specify whether the random checks allegedly performed in June and July 2007 included a check of Andino. Mr. Mlotok testified that he had his brother "help out" because he was always "looking for extra work."**

*See Jul. 19 Keshavarz Decl.* **[Exhibit E, Mlotok Trns. 102:2-102:13].**

36. These random checks in June and July 2007 did not reveal any irregularities with regard to service of process that were the subject of the random checks. Id. ¶ 31.

    **RESPONSE: Plaintiff does not dispute that the information on the affidavits of service matched the information in the process server's own worksheets and logbooks. Plaintiff disputes the assertion that the checks "did not reveal any irregularities" because that phrase is vague and incomprehensible. There is no assertion that there was ever any check of the Microsoft Database to determine whether its process servers were claiming to be attempting serving process at more than one location at the same time. There is no assertion that there was any checking to see if it was possible or not that a process server could have between the locations in the time alleged.**

37. Furthermore, all services of process undertaken by the independent contractors engaged by Samserv were and are subject to the safeguards of the court system. A traverse hearing is one standard method to challenge proper service of process. Samserv is not aware of any traverse

hearing challenging service of process by Andino prior to his service on Guzman in July 2007. Id. ¶¶ 32-33.

**RESPONSE: Plaintiff objects to the assertion as to whether its process servers were "independent contractors" as that is a question of law and Rule 56.1 statements are limited to statements of fact.  Plaintiff objects to the phrase "all services of process … are subject to the safeguards of the court system." There is vague and, more importantly, an argument, not a factual assertion to which Rule 56.1 statements are limited.  Plaintiff objects to the assertion that "Samserv is not aware of any traverse hearing challenging service of process by Andino prior to his service on Guzman in July 2007" to the degree that it suggests that Samserv takes any steps to determine whether orders to show cause were filed in instances whether Samserv's process servers alleged the served process. Plaintiff adds that another critical safeguard to protect against sewer service is through affirmative litigation under consumer protection statutes such as GBL 349 and the FDCPA.**

Dated: Brooklyn, New York
August 9, 2017

Respectfully submitted,
/s/

_____
Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
ATTORNEY FOR PLAINTIFF
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: Ahmad@newyorkconsumerattorney.com