## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

JOSE GUZMAN

                                               Case No.:  1:16-cv-03499-GBD-RLE

                        Plaintiff,

         -against-

MEL S. HARRIS & ASSOCIATES, LLC
LR CREDIT 13, LLC
SAMSERV, INC
JOHN ANDINO
WILLIAM MLOTOK

                        Defendants.

-------------------------------------------------------------------X

### PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LR CREDIT 13, LLC'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

**I.** Introduction ..............................................................................................................1

**II.** What Defendants Do Not Dispute in Their Memorandums of Law ...................................1

**III.** Additional Undisputed Facts .....................................................................................1

**IV.** Argument As To LRC Liability ..................................................................................5

    **A.** RESPONSE TO LRC ARGUMENT I.: LRC is liable directly, vicariously, and through ratification ......................................................................................5

        1. LRC is directly liable as the party in the collection lawsuit .......................5

        2. LRC is a debt collector ............................................................................6

        3. RESPONSE TO LRC ARGUMENT I. A.: LRC, as a debt collector, is vicariously liable for the actions of its debt collection law firm and agent, Mel S. Harris & Associates .........................................................................8

        4. RESPONSE TO LRC ARGUMENT I. A.: LRC is subject to liability for ratification .......................................................................................12

    **B.** RESPONSE TO LRC ARGUMENT II: LRC is not entitled to a bona fide error defense. .......................................................................................................14

    **C.** RESPONSE TO LRC ARGUMENT III and SAMSERV ARGUMENT III: Plaintiff has stated a claim for all Defendants' violations of GBL 349. ................15

        1. Defendants' conduct was consumer oriented ...........................................15

        2. Defendants' conduct was "deceptive or misleading" ...............................18

        3. Defendants' misconduct inflicted injury on Plaintiff ...............................18

        4. Plaintiff need not show LRC exercised actual control over MSH or Samserv for LRC to be vicariously liable for their GBL 349 violations ...18

**D.** RESPONSE TO LRC ARGUMENT IV AND SAMSERV ARGUMENT:

Plaintiff states a question of fact for the award of emotional distress damages. ...19

**E.** RESPONSE TO LRC FOOTNOTE 12: LRC HAS WITHDRAWN ITS

ARGUMENT FOR SYKES SETTLEMENT PRECLUSION .............................21

**V.** Conclusion ......................................................................................................21

# TABLE OF AUTHORITIES

## **CASES**

*Andre Romanelli, Inc. v Citibank, N.A.*, 60 AD3d 428 [1st Dept 2009]..........................................5

*Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246 (S.D.N.Y. 2011) ...........................9-12

*Calamia v. City of New York*, 879 F.2d 1025 (2d Cir.1989)........................................................14

*Clark v. Capital Credit & Collection Servs., Inc*, 460 F.3d 1162 (9th Cir. 2006)..........................9

*Coble v. Cohen & Slamowitz, LLP,* 824 F. Supp. 2d 568 (S.D.N.Y. 2011) ..................................13

*Ctr. v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 784 (1985)..........................................................5

*Diaz v. Portfolio Recovery Services Assoc. LLC., 10 CV 3920* MKB CLP, 2012 WL 1882976
(E.D.N.Y. May 24, 2012) ........................................................................................................17, 19

*Dina v. Cuda & Assocs.*, 950 F. Supp. 2d 396 (D. Conn. 2013) ...................................................14

*Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245 (E.D.N.Y. 2012)..........................18

*First Interstate Bank *601 of Fort Collins, N.A. v. Soucie, 924 P.2d 1200 (Colo.App. 1996)*......11

*Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507 (9th Cir. 1994) ..................................................8

*Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201 (2001) ..................................................18

*Goldstein v. Hutton, Ingram, Yuzek, Carroll & Bertolotti*, 374 F. 3d 56 (2d Cir. 2004)................6

*Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147 (S.D.N.Y. 2015) .................... 10-12

*Guzman v. Bevona*, 90 F.3d 641 (2d Cir. 1996) ...........................................................................13

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718 (2017).......................................6, 7, 11

*In Matter of New York State Medical Transporters Assoc.,* 160 A.D.2d 710 (2d Dep't 1990) .....12

*In re Bennett Funding Grp., Inc.,* 336 F.3d 94 (2d Cir. 2003).......................................................13

*Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317 (7th Cir. 2016) ..................................8

*Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S. Ct. 1605,
1622, 176 L. Ed. 2d 519 (2010) ....................................................................................................11

*Kirschner v. KPMG LLP*, 15 N.Y.3d 446 (2010) ...........................................................................5

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015)...............................16, 18, 19

*Meyer v. Holley*, 537 U.S. 280 (2003) ...........................................................................................9

*Midland Funding, LLC v. Giraldo,* 39 Misc. 3d 936, 961 N.Y.S.2d 743 (Dist. Ct. 2013)...... 16-18

*Munroe v. Harriman,* 85 F.2d 493 (2d Cir.1936) ......................................................................12

*Okyere v. Palisades Collection, LLC,* 961 F. Supp. 2d 508 (S.D.N.Y. 2013)....................9, 10, 12

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*

85 N.Y.2d 20 (1995) ..................................................................................................................16

*People v. Nationwide Asset Serv., Inc.,* 888 N.Y.S.2d 850 (S. Ct. Erie County 2009) ...............18

*Pipiles v. Credit Bureau of Lockport, Inc.,* 886 F.2d 22 (2d Cir.1989) .........................................11

*Plummer v. Atl. Credit & Fin., Inc*., 66 F. Supp. 3d 484 (S.D.N.Y. 2014) ...................................10

*Polanco v. NCO Portfolio Mgmt., Inc.,* 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) ......................14

*Polanco v. NCO Portfolio Mgmt., Inc.,* 132 F. Supp. 3d 567 (S.D.N.Y. 2015) ...........................10

*Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379 (3d Cir. 2000) ............................................. 8-10

*Stutman v. Chem. Bank*, 95 N.Y.2d 24 (2000).......................................................................15, 18

*Sykes v. Mel Harris and Assoc, LLC.*, 757 F.Supp.2d 413 (S.D.N.Y 2010) ........................ *passim*

*Vincent v. The Money Store*, 736 F.3d 88 (2d Cir. 2013) .............................................................11


**STATUTES**

N.Y. C.P.L.R 321(a) ......................................................................................................................1

15 U.S.C.A. § 1692.............................................................................................................. *passim*

N.Y. G.B.L. § 349................................................................................................................ *passim*


**OTHER**

S.Rep. No. 95–382, at 3–4 (1977), *as reprinted in* 1977 U.S.C.C.A.N. 1695...............................10

Restatement [Second] of Agency § 272.................................................................................5, 10

## I.    INTRODUCTION

Plaintiff Jose Guzman serves this Memorandum of Law in In Opposition to Defendant LR Credit 13, LLC's Motion for Summary Judgment [DE 185].

## II.    WHAT DEFENDANTS DO NOT DISPUTE IN THEIR MEMORANDUMS OF LAW.

Tellingly, none of the Defendants dispute that the Fabacher affidavit of merit or the use of that affidavit constitute means or representations that are "false, deceptive, or misleading" or "unconscionable" under the FDCPA, or "materially deceptive" under GBL 349.  Defendants dispute whether the affidavit of service reflected sewer service. However, no Defendant disputes that if the affidavit of service was in fact procured via sewer service that the affidavit and its use in obtaining a default judgment against Mr. Guzman constitute means or representations that are "false, deceptive, or misleading" under the FDCPA, or "materially deceptive" under GBL 349. Rather, Defendants make two primary arguments. First, Defendants argue that they should simply not bear the consequences of the use the false affidavit of merit and affidavit service. Second, Defendants argue that the emotional distress damages Mr. Guzman and his wife testified to have no value.

## III.    ADDITIONAL UNDISPUTED FACTS

Plaintiff's Memorandum of Law In Support of Its Motion for Summary Judgment Against LRC ("Pl. LRC MSJ") [DE 194] pp. 3-13, already contain extensive undisputed facts establishing contains extensive and undisputed evidence that LRC obtained a default judgment against Mr. Guzman using a false affidavit of service and a false affidavit of merit, and that it used that judgment to attempt to garnish Mr. Guzman's wages despite overwhelming evidence that the default judgment had been obtained through fraud. It also contains particularized allegations, supported by citations to the record, that demonstrate that the affidavit of service

1

executed by Samserv and filed by LRC in the state court collection case was false, in that it falsely claims service on a private residence, when the address of the alleged service is, in fact, a commercial residence. Therefore, for brevity, Pl. LRC MSJ pp. 2-13, are incorporated by reference.  Similarly Plaintiff's Rule 56.1 statement ("Pl. 56.1") in support of his motion for summary and its corresponding declaration in support [DE 192, "07/19 Keshavarz Decl."] are incorporated by reference in their entirety.

The following are additional undisputed facts that oppose LRC's MSJ. An analysis of the Samserv process database produced by Samserv in this action reveals that John Andino regularly lied about serving process. On the three days that Andino is alleged to have attempted service on Mr. Guzman, he lied twenty times about having served process. Pl. 56.1 Cntr. ¶¶ 28-72. On those twenty occasions, he reported travelling between separate locations in highly improbable amounts of time. For example, on July 7, 2007, Andino claims to have attempted service at 848 E. 213th St, Apt 2, Bronx, NY at 10:50 AM, and at 1815 Monroe Ave, Apt 5F, Bronx, NY at 11:00 AM. Thus, Andino claims to have travelled from 848 E. 213th St, Apt 2, Bronx, NY to 1815 Monroe Ave, Apt 5F, Bronx, NY in ten minutes. Pl. 56.1 Cntr. ¶ 52. However, Google Maps estimates that, under normal traffic conditions, it would take Mr. Andino a minimum of **twenty three** minutes to make that trip. Pl. 56.1 Cntr. ¶ 53. This estimation doesn't even account for time spent parking, gaining access to an apartment building, climbing stair or using an elevator to get to the desired floor, and serving or attempting to serve process. Incidents like this happened at least twenty times on each of the three days that Mr. Andino alleges to have attempted to serve Mr. Guzman. Samserv did not check to ensure that Samserv process servers were reporting realistic travel times between service locations. Pl. 56.1 Cntr. ¶ 86.

LRC, through its collection law firm, filed a collection lawsuit captioned *LR Credit 13,*

*LLC v. Jose Guzman*, No. CV-43405/2007 on or about June 12, 2007. The collection lawsuit sought an amount of $8,666.00. The collection lawsuit sought to collect a putative credit card debt allegedly with First USA Bank. There is no account number on any of the documents filed by LRC in the state court collection case. Pl. 56.1 Cntr. ¶ 87. The sixteen digit number is not identified as an "account number" on any of the papers filed by LRC in the collection case. The number is not identified as an "account number" on the summons, complaint, affidavit of merit, or default judgment. Pl. 56.1 Cntr. ¶ 87. Further, even if 4225-8117-2023-4690 is an account number, there is no evidence that it is Mr. Guzman's, account number. There is also no evidence that the account number referred to an account with First USA Bank, as alleged in the collections lawsuit. LRC admits that it has no policies or procedures in place to prevent violations of the FDCPA. Pl. 56.1 Cntr. ¶ 73.

LRC's sole purpose is to buy defaulted consumer debts and to collect on those debts. LRC indisputably uses postal mail and instrumentalities of interstate commerce to accomplish its purpose. The joint venture agreement that created LR Credit, LLC (of which LRC is a wholly owned subsidiary), provides that certain notices be sent via "certified mail, return receipt requested." Pl. 56.1 Cntr. ¶ 1. LR Credit, LLC is a Delaware limited liability company. Pl. 56.1 Cntr. ¶ 2. LR Credit, LLC maintains a registered office in the state of Delaware. Pl. 56.1 Cntr. ¶ 3. The articles of organization of LR Credit 13, LLC provide that the "Secretary of State of the State of New York is designated as the agent of the Company upon whom process against it may be served. The post office address to which the Secretary of State shall mail a copy of any such process served upon him is . . ." Pl. 56.1 Cntr. ¶ 4.

On November 12, 2003, LR Credit entered into a commission agreement with MetCap Securities, LLC, whereby MetCap Securities, LLC would be entitled to a commission on all

credit portfolios purchased by LR Credit, LLC or its subsidiaries (including LR Credit 13, LLC). The agreement provides that the commissions are to be made by "wire transfer to an account designated by MetCap." Pl. 56.1 Cntr. ¶ 5. The portfolios of debts that LRC owns are purchased from out of state buyers. Pl. 56.1 Cntr. ¶ 6. LRC was formed for the purpose of buying defaulted consumer debt, including debt originating with major banks such as Chase Bank, Banco Popular, and First USA Bank. Pl. 56.1 Cntr. ¶ 7.

Jose Guzman suffered emotional distress as a result of LRC and Samserv's misconduct. Pl. 56.1 Cntr. ¶ 74. Mr. Guzman was frustrated and angry because he was never served with the summons and complaint in the collection lawsuit, and he was therefore denied the opportunity to defend himself in court. Pl. 56.1 Cntr. ¶ 82. Mr. Guzman was distressed because he did not recognize the names of the putative creditor or the putative original creditor in the collection lawsuit. Pl. 56.1 Cntr. ¶ 83. Mr. Guzman felt that LRC had treated him "like garbage." Pl. 56.1 Cntr. ¶ 76. Mr. Guzman was humiliated when a lawyer for LRC treated Mr. Guzman disrespectfully and made fun of Mr. Guzman for his inability to speak English. Pl. 56.1 Cntr. ¶ 77. This compounded the emotional distress Mr. Guzman was already experiencing as a result of Defendants' misconduct. Pl. 56.1 Cntr. ¶ 78. When he first learned about the lawsuit in July, 2015, Mr. Guzman was employed as a truck driver at Siena Marble. Pl. 56.1 Cntr. ¶ 79. After he learned about the collection lawsuit, Mr. Guzman became so distressed that he feared he would get in an accident while driving the truck for work. Mr. Guzman therefore quit his job at Siena Marble in the spring of 2016. Pl. 56.1 Cntr. ¶ 80. Given LRC's history of defrauding Mr. Guzman and other consumers, Mr. Guzman fears that Defendants will continue to attempt to collect the putative debt from him. Pl. 56.1 Cntr. ¶ 75. To this day, the stress and anger causes Mr. Guzman to have trouble sleeping. Pl. 56.1 Cntr. ¶ 81.

## IV.     ARGUMENT AS TO LRC LIABILITY.

### A.     RESPONSE TO LRC ARGUMENT I.: LRC is liable directly, vicariously, and through ratification.

#### 1.     LRC is directly liable as the party in the collection lawsuit.

As an initial matter, LRC is *directly* liable for the acts it took as the named party in the collection lawsuit. As with any corporation, LRC can only act in court proceedings through an attorney. See N.Y. C.P.L.R 321(a) (prohibiting corporations from bringing suit other than through counsel).  Thus the acts taken during the debt collection lawsuit are necessarily the acts of the corporate party. Further, LRC, as the client, necessarily has the right to control its outside law firms. NY Professional Disciplinary Rule 1.2(a) (client's control over his counsel as a matter of right).

Further, LRC, as the principal, is charged with the knowledge of the debt collection misconduct of its agent, MSH, as MSH was acting in the course and scope of its agency. A "fundamental principle that has informed the law of agency… for centuries [is that] the acts of agents, and the knowledge they acquire while acting within the scope of their authority are presumptively imputed to their principals. *Kirschner v. KPMG LLP*, 15 N.Y.3d 446, 465, 938 N.E.2d 941 (2010). The "knowledge acquired by an agent acting within the scope of his agency is imputed to his principal and the latter is bound by such knowledge although the information is never actually communicated to it." *Ctr. v. Hampton Affiliates, Inc*., 66 N.Y.2d 782, 784, 488 N.E.2d 828, 829 (1985) *citing to, inter alia,* Restatement [Second] of Agency § 272, at 591. "The risk of loss from the unauthorized acts of a dishonest agent falls on the principal that selected the agent" *Kirschner* at 465 quoting *Andre Romanelli, Inc. v Citibank, N.A*., 60 AD3d 428, 429 [1st Dept 2009]).

In the case at bar, LRC is charged with the knowledge that MSH employee Todd

Fabacher was executing affidavits of merit as the LRC custodian. Further, LRC is charged with the knowledge that the Fabacher affidavits falsely stated personal knowledge as to all of the essential elements needed to enter a default judgment. Fabacher swore in his affidavit that he was "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action." Pl. 56.1 ¶ 189. Fabacher swore that he had personal knowledge that LRC was the assignee of a debt originally owed to "FIRST USA BANK, flowing from a defaulted "Retail Charge Account Agreement." Pl. 56.1 ¶ 190. Mr. Guzman has never owed money to First USA Bank, a fact LRC admits in this FDCPA action. Pl. 56.1 ¶ 191. The Fabacher Affidavit alleges personal knowledge that Mr. Guzman defaulted on the putative debt to First USA in 2004. Pl. 56.1 ¶ 192. The Fabacher Affidavit is therefore false. Pl. 56.1 ¶¶ 113-152.

LRC is also charged with the knowledge that MSH filed a collection lawsuit against Mr. Guzman demanding judgment for attorney's fees. Neither MSH nor LRC had a contract or any other basis to demand attorney's fees. Therefore, that demand violated 1692e, 1692e(2)(b) (prohibiting the false representation of compensation which may lawfully be received), and 1692f(1)

### 2. LRC is a debt collector.

In a lengthy footnote, LRC MSJ p. 9 fn. 6, LRC cites to a recent Supreme Court decision to argue that Plaintiff has no evidence that LRC is a "debt collector" under the FDCPA. LRC MSJ p. 9 fn 6 *citing to Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017). The FDCPA, 15 U.S.C. § 1692a(6), defines two types of businesses that qualify as debt collectors. *See generally Goldstein v. Hutton, Ingram, Yuzek, Carroll & Bertolotti*, 374 F. 3d 56, 61 (2d Cir. 2004) (describing distinction). *Henson* held that an entity that "regularly"

6

purchases defaulted debts to collect for its own account is not a "debt collector" pursuant to the second prong of the definition in 15 U.S.C. § 1692a(6) covering a person who "regularly collects or attempts to collect ... debts owed or due ... another." Plaintiff does not seek to hold LRC liable under this second definition.

However, LRC is liable under the first definition of "debt collector" under 1692a(6), applicable to an entity engaging "in any business the principal purpose of which is the collection of any debts." The Henson decision expressly stated that "we do not attempt to" address this "principal purpose" prong because "the parties haven't much litigated that alternative definition and "in granting certiorari we didn't agree to address it." *Henson* at 1721. Therefore, Henson is irrelevant to the case at bar.

LRC is a debt collector because it "uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts." 1692a(6). The principal (indeed sole) purpose of LRC is to purchase portfolios of charged off consumer debts. Pl. 56.1 ¶ 2 citing to 7/19 Keshavarz Decl. [Exhibit A, Articles of Organization of LR Credit 13, LLC; Exhibit B, Nittoli Trns., 18:06-17; Exhibit C, Operating Agreement, ¶ 3 ("The Company is formed . . . for the sole purpose of investing in a portfolio of New York State Domiciled defaulted consumer indebtedness.")].

LRC "uses any instrumentality of interstate commerce or the mails" in its business. Pl. 56.1 ¶ 3 *citing to*7/19 *Keshavarz Decl.* [Exhibit D, Military Status Report executed in Arlington, VA by D Mary M. Snavely-Dixon, Director of the Department of Defense Manpower Data Center filed in civil court in Bronx, NY in support of default judgment; Exhibit E, March 15, 2017 Deposition Transcript of William Mlotok ("Mlotok Trns") at 143:03-16 (mailing copies of LRC collection lawsuit summons.) Pl. 56.1 ¶ 3. The portfolios of debts that LRC (allegedly)

7

owns are purchased from out of state buyers. Pl. Counter 56.1 ¶ 6. The joint venture agreement that created LR Credit, LLC (of which LRC is a wholly owned subsidiary), provides that certain notices be sent via "certified mail, return receipt requested." Pl. Counter 56.1 ¶ 1. LR Credit, LLC is a Delaware limited liability company. Pl. Counter 56.1 ¶ 2. Purchases of certain debt portfolios are to be made via bank wire transfers. Pl. Counter 56.1 ¶ 5.

### 3. RESPONSE TO LRC ARGUMENT I. A.: LRC, as a debt collector, is vicariously liable for the actions of its debt collection law firm and agent, Mel S. Harris & Associates.

Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment [DE 194] discusses in some detail why LRC, as a debt collector, is vicariously liable for the actions of its debt collection law firm and agent, Mel S. Harris & Associates, and those arguments are incorporated by reference, *See* Pl. MSJ pp. 15-17.  To avoid redundancy that section is incorporated by reference, and this section will focus on addressing LRC's arguments in its Memorandum of Law In Support of LRC Summary Judgment, pp. 10-13.

While the Second Circuit has yet to rule on the issue, the only three circuits who have considered the issue have all held that a debt collector principal is liable for the FDCPA violations committed by its debt collector agent. *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1516 (9th Cir. 1994) ("In order to give reasonable effect to section 1692i [prohibiting filing of distant venue collection lawsuits], we must conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken."); *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) ("We believe this is a fair result because an entity that is itself a "debt collector"—and hence subject to the FDCPA—should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf."); and *Janetos v. Fulton Friedman & Gullace, LLP*, 825 F.3d 317, 325 (7th Cir. 2016) ("A debt collector should

not be able to avoid liability for unlawful debt collection practices simply by contracting with another company to do what the law does not allow it to do itself.")

It is true that some early New York district court opinions, with *Bodur* being the lead case, have required a debt collector who is the principal to exercise control over the debt collector who is the agent in order to be liable for violations of the FDCPA. *See Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 258 (S.D.N.Y. 2011). In turn, *Bodur* relied on *Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162, 1173 (9th Cir. 2006). Citing to Bodur and Clark, LRC accuses Plaintiff of attempting to "jettison the standard precepts of agency law." However, *Bodur* and LRC each misunderstand the *Clark* holding. *Clark v. Capital Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006).

*Clark* dealt with the *reverse* situation as the case at bar. *Clark* dealt with the argument that the agent (the attorney) is liable for the acts of the principal. *Clark*, a Ninth Circuit decision, actually reaffirmed that circuit's holding a decade before in Fox, supra at 1516, "that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken." *Clark* at 1173.

The *Bodur* misinterpretation of *Clark* was cited as one reason Magistrate Gorenstein rejected the *Bodur* control requirement and adopted *Fox* and *Pollice*. *Okyere v. Palisades Collection, LLC,* 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013). *Okyere* was based on the understanding that common law "ordinarily make[s] principals liable for acts of their agents merely when the agents act 'in the scope of their authority.'" *Okyere I* at 517 (*quoting Meyer v. Holley*, 537 U.S. 280, 285, 123 S.Ct. 824, 154 L.Ed.2d 753 (2003)).

Okyere noted the vicarious liability argument was especially strong in the attorney client context as, by definition, a client always has the right to control his attorney if he chooses to do

so. *Id. Okyere* considered and rejected *Bodur*, instead adopting the Ninth Circuit holding in Fox, and a majority of the district court opinions that a debt collector principal is liable for the acts of its debt collector agent. See *Okyere I* at 515-17 *adopting, inter alia, Fox v. Citicorp Credit Servs., Inc*., 15 F.3d 1507, 1516 (9th Cir.1994) ("[W]e ... conclude that Congress intended the actions of an attorney to be imputed to the client on whose behalf they are taken.").

Since its publication in March 2013, *Okyere I* has been cited *19 times* for its holding on vicarious liability. Among the decisions adopting *Okyere* and rejecting *Bodur* are three thoroughly reasoned SDNY opinions, Polanco, Gomez, and Plummer, noting there are strong public policy reasons for following traditional common law principles and holding the principal liable for the acts of the agent where the agent merely acted within the course and scope of their agency. *See generally* Restatement (Second) of Agency § 219(1) (1957).

Similarly, in *Plummer* Judge Torres rejected *Bodur* as to a requirement of control for vicarious liability as misunderstanding agency principles and instead adopted the reasoning of *Okyere* and *Pollice* that a debt collector principal is liable for the FDCPA violations of its debt collector agent. *Plummer v. Atl. Credit & Fin., Inc*., 66 F. Supp. 3d 484, 493 (S.D.N.Y. 2014). Judge Batts concluded that FDCPA has "broad, pro-debtor objectives," which are best served by imputing a debt collection attorney's actions onto its client and placing on a debt collector the "burden of monitoring the activities of those it enlists to collect debts on its behalf." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 586 (S.D.N.Y. 2015) (holding debt buyer liable for the FDCPA misconduct their Mel. S. Harris) ("*Polanco III*")  (*quoting Pollice, supra,* 404-05). More fundamentally, LRC is liable for the misconduct of its freely chosen attorney. *Polanco III* at 584.

10

LRC suggests that *Henson,* supra, might undermine Judge Batts' the "pro-debtor" interpretation of Second Circuit FDCPA case law. However, *Henson* rejected the policy argument because it sought to re-write the clear text of the definition of debt collector. However, binding Second Circuit authority, as well as another recent Supreme Court decision confirm the broad remedial scope of the FDCPA. "Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive collection practices." *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989). *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 602 (2010) (highlighting the FDCPA's "broadly worded prohibitions on debt collector misconduct").  "Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated. *Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir. 2013) (quotation marks and citation omitted).

In Jerman, the Supreme Court held that the bona fide error affirmative defense did not extend to errors of law.  The dissent objected arguing, inter alia, that it might impede the zealous representation of the of the debt collection attorney. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 600, 130 S. Ct. 1605, 1622, 176 L. Ed. 2d 519 (2010).

 In responding to the dissent, the majority minimized that by noted approvingly, J*erman*, supra at 600-01, that "Some courts have held clients vicariously liable for their lawyers' violations of the FDCPA." citing *Fox*, supra at 1516 and *First Interstate Bank *601 of Fort Collins, N.A. v. Soucie, 924 P.2d 1200, 1202 (Colo.App. 1996)*("Thus, vicarious liability under the FDCPA will be imposed for an attorney's violations of the FDCPA if both the attorney and the client are debt collectors as defined in § 1692a(6).").

In *Gomez*

11

, Judge Sweet rejected *Bodur* and adopted *Okyere*, reasoning, *inter alia*, that "the *Bodur* rule could cut plaintiffs off from recovery altogether if debt collectors are clever enough to avoid direct control in each link of the chain, while leaving consumer-facing entities so undercapitalized as to be judgment-proof." *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 158 fn. 8 (S.D.N.Y. 2015). In the case are bar, Judge Sweet's admonition is especially prescient. LRC would retain 90 percent of the money collected by MSH.  That money is funneled through a complex web of entities up to Leucadia National Corporation.   Leucadia National Corporation has assets of $40 billion. MSH, as small law firm, could not have net worth anywhere approaching that amount. And the Rushmore is essentially is MSH: the principals of Rushmore are the partners of MSH, or a partnership owned by principals of MSH. In short, Leucadia National Corporation and LRC has in fact set up a system where it is attempting to use a chain of entities as a shield of liability for the misconduct MSH takes on their behalf, and for which they take 90 percent of the money collected by MSH.

### 4.  RESPONSE TO LRC ARGUMENT I. A.: LRC is subject to liability for ratification.

Even if the LRC were able to avoid FDCPA and GBL 349 liability the first instance, LRC would be liable by ratification of the false affidavit of merit and the false affidavit of service that allowed LRC to obtain a fraudulent judgment against Mr. Guzman. New York law recognizes the well-established principle of ratification, which imputes an agent's conduct to a principal who "condones those acts and accepts the benefits of them." *In Matter of New York State Medical Transporters Assoc.,* 160 A.D.2d 710, 553 N.Y.S.2d 790, 792 (2d Dep't 1990), *aff'd* 77 N.Y.2d 126, 564 N.Y.S.2d 1007, 566 N.E.2d 134 (1990); *see also Munroe v. Harriman,* 85 F.2d 493, 495 (2d Cir.1936) (acts of agent imputed to principal "if the principal

adopts the unauthorized act of his agent in order to retain a benefit for himself."); and *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 100 (2d Cir. 2003).  A party may also be held liable for the unlawful actions of an independent contractor if it ratifies those actions. *Guzman v. Bevona*, 90 F.3d 641, 649 (2d Cir. 1996).

In this case, LRC continued to retain the benefits of the fraudulent affidavits: it maintained the judgment against Mr. Guzman, and continued to execute on the judgment. Therefore, LRC is liable for ratification just as if it had known of the fraudulent nature of the affidavits of merit and affidavit of service at the outset of LRC's collection lawsuit against Mr. Guzman. Similarly, Samserv and Mlotock had reason to know after they received the Egelson Affirmation documenting hundreds of instances of sewer service *based on Samserv's own records*, that they were paid for widespread false affidavits of service. Rather than checking its own records to determine whether the allegations in the Egelson Affirmation were true, Samserv and Mlotock stayed pat and kept all of the money obtained based on the false affidavits of service.

LRC violated the FDCPA by continuing to execute on Mr. Guzman's default judgment despite having reason to know the validity of the judgment was questionable. The continued executions on judgments that the judgment creditor has reason to believe were entered based upon a false affidavit of service violates the FDCPA. *Coble v. Cohen & Slamowitz*, LLP, 824 F. Supp. 2d 568, 572 (S.D.N.Y. 2011) ("[Plaintiffs] have also plausibly alleged that by *failing to investigate* the fraudulent practices of its process service company and *continuing to enforce* those judgments, defendants violated the FDCPA and concealed that violation in the process.") (emphasis added).

Further, as LRC procured the default judgment based on a false affidavit of service, it

cannot lawfully use the default judgment as a basis for executing on the judgment. *Polanco v. NCO Portfolio Mgmt., Inc.*, 23 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) ("*Polanco III*") *citing Calamia v. City of New York*, 879 F.2d 1025, 1031 (2d Cir.1989).  As LRC used false affidavits to obtain the default judgment, LRC "procured the order [the default judgment] by means of an intentional misrepresentation to the issuing authority," the civil court. *Id*. Therefore, LRC has no legal right to execute on the judgment. *Id*. A judgment creditor executing on a sewer service judgment commits conversion as a matter of law, even without the judgment being vacated. *Id*. LRC took the first step in executing on Mr. Guzman's wages by sending an information subpoena to his employer. Therefore, LRC violated the FDCPA in a manner similar to the defendant in Cuda. *Dina v. Cuda & Assocs.*, 950 F. Supp. 2d 396, 406 (D. Conn. 2013).  In taking the first step to execute on Mr. Guzman's wages without legal authority to do so given its fraud in the entry of the default judgment, LRC is like the defendant in Cuda is sent an invalid execution to a bank seeking to collect the consumer's money.  Like the defendant in Cuda, LRC's "conduct is the essence of using a deceptive means to collect a debt."  Dina at 406 (sending invalid execution constitutes deceptive means).

### B.   RESPONSE TO LRC ARGUMENT II: LRC is not entitled to a bona fide error defense.

LRC contends that no reasonable juror could find that it has met its burden to establish, by a preponderance of the evidence, that it is entitled to a bona fide error affirmative defense pursuant to 1692k(c).  In order to establish a bona fide error defense, LRC must establish its conduct was 1) not intentional, 2) it maintained policies and procedure to avoid the violations alleged, *and* 3) that the alleged violations occurred despite the maintenance of the policies and procedures. In fact the evidence establishes the reverse: no reasonable juror could find LRC is

entitled to a bona fide error.

First and foremost, LRC admitted in depositions that it has no policies or procedures of any type to avoid violations of the FDCPA. Pl. 56.1 Cntr. ¶ 73.  Second, LRC contends its violations were unintentional because "LRC had no knowledge of how MSH conducted the Collection Lawsuit, or how Samserv effected service of process." LRC MSJ p. 21. This is the end of  LRC's argument. However, LRC's misconduct was intentional because, as argued above as to LRC's direct liability as a party to the collection lawsuit, LRC, as the principal, is charged with the knowledge MSH, as the LRC agent.

### C. RESPONSE TO LRC ARGUMENT III and SAMSERV ARGUMENT III: Plaintiff has stated a claim for all Defendants' violations of GBL 349.

Plaintiff's affirmative motion for summary judgment, Pl. Samserv MSJ pp. 12-15, already argued in detail why Plaintiff is entitled to summary judgment as to his GBL 349 claim against all Defendants. For brevity, that briefing is incorporated by reference. Also for brevity, this section will respond to the summary judgment opposition of all defendants.

N.Y. G.B.L. § 349 is a broadly protective consumer protection measure, which bars "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service," and provides a cause of action for violations. *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 28 (2000). Therefore, even if Samserv were not held, at summary judgment, to be a debt collector, it would still be a business governed by GBL 349.  A plaintiff under G.B.L. § 349 must prove three elements: that the challenged act or practice was "consumer-oriented," that it was materially misleading, and that it caused actual damages to the plaintiff. *Id.* Plaintiff has met all three of these elements.

### 1. Defendants' conduct was consumer oriented.

15

In order to demonstrate misconduct is consumer oriented, the consumer must demonstrate "that the acts or practices have a broader impact on consumers at large," but the statute does "not require a repetition or pattern of deceptive behavior." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741 (1995). "Plaintiff, thus, need not show that the defendant committed the complained-of acts repeatedly—either to the same plaintiff or to other consumers—but instead must demonstrate that the acts or practices have a broader impact on consumers at large. Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute."  *Id*. The test is whether the actions complained of "***potentially*** affect similarly situated consumers." *Id*. at 26–27, 623 N.Y.S.2d 529, 647 N.E.2d 741 (emphasis added).

In order to establish a claim for "deceptive acts or practices" under GBL 349, a plaintiff must show that the defendant's conduct is "consumer-oriented." *Mayfield v. Asta Funding, Inc*., 95 F. Supp. 3d 685, 700 (S.D.N.Y. 2015). In *Midland Funding, LLC v. Giraldo*, for example, a consumer defendant adequately stated a GBL 349 counterclaim against a debt collector plaintiff who allegedly filed a collections lawsuit without any evidence that the defendant owed the debt. 39 Misc. 3d 936, 961 N.Y.S.2d 743, 752 (Dist. Ct. 2013). The *Giraldo* court found the conduct consumer-oriented because:

> [T]he conduct complained of," at its heart, involves the "routine filing" of assigned debt lawsuits by plaintiff "despite a lack of crucial, legally admissible information" or "sufficient inquiry" into whether the claims are meritorious. When considered together with defendant's allegation that plaintiff's deceptive acts and practices "affect the consuming public at large" and are "not limited to the defendant," the challenged conduct and practices clearly raise issues beyond any "private contract disputes." Such allegations therefore fall within the broad scope of GBL § 349.

> *Id*. at 752.

The *Giraldo* decision is instructive. As in the case at bar, the *Giraldo* claim arose from

misrepresentations in an individual collections lawsuit. However, as in the case at bar, the *Giraldo* plaintiff alleged that the "deceptive acts and practices affect the consuming public at large and are not limited to the [consumer] defendant." *Midland Funding, LLC v. Giraldo*, at 752 (internal qoutations omitted).

Here, the summary judgment evidence establishes that LRC used Fabacher to execute the affidavits of merit in the thousands of collection lawsuits for which it obtained default judgments. Mr. Fabacher regularly executed the affidavits of merit for the various LR Credit entities.   Pl. 56.1 ¶ 194. The affidavits of merit that Mr. Fabacher executed during his employment at MSH alleged that Mr. Fabacher was "fully and personally familiar with, and have personal knowledge of, the facts and proceedings relating to the within action."  In the affidavit of merit, Mr. Fabacher averred that he was the "designated custodian of records" for LRC. See Keshavarz Decl. [Exhibit TT, Default Application with Affidavit of Merit]. Pl. 56.1 ¶ 198.

The summary judgment evidence establishes that Samserv regularly executes false affidavits of service. The affidavit of service as to Mr. Guzman was false. Therefore, the affidavit of service used as to Mr. Guzman "potentially affects similarly situated consumers" whose affidavits of service were executed by Samserv process servers. Lastly, LRC uses the false affidavits of service to obtain the default judgments against consumers including Mr. Guzman.

Moreover, debt collection litigation misconduct is often "consumer oriented" conduct under the GBL. *See Sykes v. Mel Harris and Assoc, LLC.*, 757 F.Supp.2d 413 (S.D.N.Y 2010) (holding that debt collection attorneys participated in consumer-oriented conduct by submitting false affidavits of service in underlying collection lawsuits)*; Diaz v. Portfolio Recovery Services Assoc. LLC., 10 CV 3920* MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012) (finding that

debt collection attorneys engaged in consumer-oriented conduct by filing time-barred collection lawsuits); *Stutman v.Chemical Bank,* 95 N.Y.2d 24, 28 (ruling that misstatements about mortgage prepayment charges, if proved, could state consumer oriented conduct and a claim under GBL § 349); *People v. Nationwide Asset Serv., Inc.,* 888 N.Y.S.2d 850 (S. Ct. Erie County 2009) (holding that a debt settlement firm's repeated failure to deliver promised results was consumer oriented conduct violating the GBL); and *Gaidon v. Guardian Life Ins. Co. of Am.,* 96 N.Y.2d 201, 209, (2001) (GBL § 349 "encompasses a far greater range of claims that were never legally cognizable before its enactment").

As in *Giraldo*, Plaintiff here established facts which demonstrate that Defendants' practices "affect the consuming public at large and are not limited to the" Plaintiff at hand. *Midland Funding, LLC v. Giraldo*, at 752.

### 2. Defendants' conduct was "deceptive or misleading"

Defendants do not dispute this element. In any event. Defendants' conduct was "deceptive or misleading" conduct for the same reasons it violates the FDCPA.

### 3. Defendants' misconduct inflicted injury on Plaintiff.

Last, the final element of a GBL claim is injury. *Mayfield*, 95 F. Supp. 3d at 700. Although "actual" injury must be proven in order to recover under the statute, it need not be "pecuniary harm." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 612 (2000). Plaintiff was clearly injured by Defendants' actions, which he alleges in the FAC. *See* FAC ¶ 89; and *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 264 (E.D.N.Y. 2012) (order amended on reconsideration, No. CV 10-3983 AKT, 2013 WL 5423800 (E.D.N.Y. 2013) (finding that "emotional harm does satisfy the injury requirement for a claim under N.Y. GBL §

18

349"). The injury inflicted by the misconduct of Defendants is discussed in detail in the below section on emotional distress damages.

**4. Plaintiff need not show LRC exercised actual control over MSH or Samserv to for LRC to be vicariously liable for their GBL 349 violations.**

LRC is liable for the GBL 349 violations of MSH and the Samserv Defendants for the same reason they are liable for the FDCPA violations. Indeed, in the *Diaz, Sykes, Mayfield*, and *Giraldo* decisions cited above all held the consumer stated a claim against the debt buyer for the violations taken through its debt collection law firm without any mention of the need to demonstrate control.

**D. RESPONSE TO LRC ARGUMENT IV AND SAMSERV ARGUMENT: Plaintiff states a question of fact for the award of emotional distress damages.**

Based on the false affidavit of merit and false affidavit of service, LRC was able to enter a default judgment against Mr. Guzman for a debt he indisputably ***did not owe to LRC*** or to the putative original creditor, First USA Bank. With that fraudulent judgment, LRC took the first step in executing on Mr. Guzman's wages by issuing an information subpoena to Mr. Guzman's employer.  Defendants' conduct inflicted substantial garden variety emotional distress damages of inability to sleep and anxiety for many months. Moreover, the FDCPA is designed to protect consumers from false deceptive or misleading conduct even if the consumers owe the putative debt.

Defendants' misconduct inflicted injury and significant garden variety emotional distress damages in Mr. Guzman. Jose Guzman suffered emotional distress as a result of LRC and Samserv's misconduct. Pl. 56.1 Cntr. ¶ 74. Mr. Guzman was frustrated and angry because he was

19

never served with the summons and complaint in the collection lawsuit, and he was therefore denied the opportunity to defend himself in court. Pl. 56.1 Cntr. ¶ 82. Mr. Guzman was distressed because he did not recognize the names of the putative creditor or the putative original creditor in the collection lawsuit. Pl. 56.1 Cntr. ¶ 83. Mr. Guzman felt that LRC had treated him "like garbage." Pl. 56.1 Cntr. ¶ 76. Mr. Guzman was humiliated when a lawyer for LRC treated Mr. Guzman disrespectfully and made fun of Mr. Guzman for his inability to speak English. Pl. 56.1 Cntr. ¶ 77. This compounded the emotional distress Mr. Guzman was already experiencing as a result of Defendants' misconduct. Pl. 56.1 Cntr. ¶ 78. When he first learned about the lawsuit in July, 2015, Mr. Guzman was employed as a truck driver at Siena Marble. Pl. 56.1 Cntr. ¶ 79. After he learned about the collection lawsuit, Mr. Guzman became so distressed that he feared he would get in an accident while driving the truck for work. Mr. Guzman therefore quit his job at Siena Marble in the spring of 2016. Pl. 56.1 Cntr. ¶ 80. Given LRC's history of defrauding Mr. Guzman and other consumers, Mr. Guzman fears that Defendants will continue to attempt to collect the putative debt from him. Pl. 56.1 Cntr. ¶ 75. To this day, the stress and anger causes Mr. Guzman to have trouble sleeping. Pl. 56.1 Cntr. ¶ 81.

Plaintiff need not provide medical records to establish a claim for garden variety emotional distress and may rely solely of the testimony of himself and family members or friends. Indeed, that is the very definition of garden variety emotional distress. In *Abel v. Town Sports Int'l, LLC*, 09 CIV. 10388 DF, 2012 WL 6720919 (S.D.N.Y. Dec. 18, 2012), the court summarized recent Second Circuit case law as to the rather minimal evidence sufficient to justify a "garden variety emotional distress" claim:

> In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such

claims typically lack [ ] extraordinary circumstances and are not supported by any medical corroboration.

*Id*. at 15 (citations omitted).

Further, the court provided a helpful and exhaustive review of garden variety emotional distress awards, noting the recent trend in these decisions to uphold awards between $30,000 and $125,000 for garden variety emotional distress. Id. at 16. Defendants no doubt believe the emotional distress damages they inflicted upon Mr. Guzman has no value. A reasonable juror could disagree, to understate the matter. The deposition excerpts of co-workers of Mr. Guzman taken by Defendants were only for people who knew Mr. Guzman well after Mr. Guzman vacated the default judgment. Therefore they do not have knowledge of long periods of emotional distress damages. In addition, Plaintiff immediately amended his initial disclosures upon learning of an additional witness with knowledge of the emotional distress from the time Mr. Guzman first learned of the sewer service judgment.  Plaintiff offered to allow Defendants to take the deposition of the additional witness, but Defendants declined. Defendants have no knowledge of what this witness will testify to at trial.

### E.   RESPONSE TO LRC FOOTNOTE 12: LRC HAS WITHDRAWN ITS ARGUMENT FOR SYKES SETTLEMENT PRECLUSION

In a footnote on the final page of the brief, LRC raised the issue of the Sykes settlement precluding Plaintiff from being awarded attorney's fees in this action. Indeed it is true that LRC sought such relief, saying they "shall" move to Plaintiff in contempt of Court based on alleged violations of the Sykes order. However, LRC withdrew that claim.  In a footnote they attempt to resurrect a withdrawn motion, which is improper.

### V.   **CONCLUSION**

For all of the above reasons, Plaintiff prays for LRC's motion for summary judgment be denied, and for all other relief he may be justly entitled.

21

Respectfully submitted,
/s/
Ahmad Keshavarz
THE LAW OFFICES OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:     (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day I served the above referenced document to the parties listed below via ECF:

Defendant LR Credit 18, LLC
By and through its attorneys of record:
Scott Sonny Balber
David Wayne Leimbach
Herbert Smith Freehills NY LLP
450 Lexington Ave, 14th Floor
New York, NY 10017
Phone: 917-542-7600
Fax: 917-5427601
Email: scott.balber@hsf.com
Email: david.leimbach@hsf.com

Defendants Samserv, Inc and William Mlotok
By and through their attorney of record:
Jeffrey S. Lichtman
O'Hare Parnagian LLP
82 Wall Street, Suite 300
New York, NY 10005
Phone: 212-425-1401
Fax: 212-425-1425
Email: jlichtman@ohareparnagian.com

Date:  August 10, 2017
       Brooklyn, NY
/s/
Ahmad Keshavarz
Plaintiff's Attorney

22