

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

JOSE GUZMAN,

               Plaintiff,

    -against-

MEL S. HARRIS AND ASSOCIATES, LLC, LR
CREDIT 13, LLC, MEL S. HARRIS, DAVID
WALDMAN, KERRY H. LUTZ, TODD FABACHER,
MICHAEL YOUNG, SAMSERV, INC., JOHN
ANDINO, and WILLIAM MLOTOK,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM DECISION**
**AND ORDER**

16 Civ. 3499 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Jose Guzman brings this action against Defendants LR Credit 13, LLC ("LRC"),

Samserv, Inc. and its principal, William Mlotok, and process server John Andino, for violations of

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, and Section 349 of

the New York General Business Law ("GBL § 349").[1] (*See* Compl., ECF No. 1.) Defendants

LRC and Defendants Samserv and Mlotok (the "Samserv Defendants") move for summary

judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, dismissing both of

Plaintiff's claims.[2] (*See* ECF Nos. 180, 185.) Plaintiff cross-moves for summary judgment

holding Defendants liable on those claims. (*See* ECF Nos. 189, 190, 191.)[3] Plaintiff has also filed

an "objection" to a September 29, 2017 Opinion and Order issued by Magistrate Judge Ronald

---

[1] On Plaintiff's consent, all other defendants in this action were dismissed with prejudice. (*See* Stipulation and Order of Dismissal, ECF No. 80.)

[2] Defendant Andino has not appeared in this action.

[3] After filing his original Notice of Motion for Summary Judgment against the Samserv Defendants, (ECF No. 190), Plaintiff subsequently filed a corrected Notice of Motion for Summary Judgment. (*See* ECF No. 191.)

Ellis (the "Order"), which granted LRC's motion for partial judgment on the pleadings and found that Plaintiff's punitive damages under GBL § 349 are capped at $1,000.  (ECF No. 236.)

Since there are triable issues of fact as to the elements of both of Plaintiff's claims, Defendants' motions for summary judgment, and Plaintiff's cross-motions for summary judgment, are DENIED.  Judge Ellis's Order is AFFIRMED and ADOPTED.

## I.   FACTUAL BACKGROUND

The following facts and allegations are undisputed, unless otherwise indicated.  Defendant LRC was formed by its parent company, LR Credit, LLC ("LR Credit") to invest in portfolios of consumer debt.  (LRC 56.1 Stmt., ECF No. 188, ¶ 19.)  Defendant Mel S. Harris & Associates, LLC ("MSH") served as legal counsel for LRC until MSH ceased operations in September 2015. (LRC Ctrstmt. to Pl. 56.1 Stmt., ECF No. 211, ¶ 132; *see also* Decl. of Ahmad Keshavarz in Supp. of Pl. Mot. for Summ. J. ("Keshavarz Decl."), ECF No. 192, Ex. B ("Nittoli Dep. Tr.") at 58:16–59:24.)

Defendant Samserv, a process-serving agency, was hired by MSH.  (Samserv Defs. 56.1 Stmt., ECF No. 184, ¶¶ 1, 3.)  Defendant Mlotok is the sole stockholder and sole officer of Samserv.  (*Id.* ¶ 4.)  Samserv engaged several individuals to serve process on its behalf, including Defendant Andino.  (*Id.* ¶¶ 6, 8.)

In 2009, a class action (the "*Sykes* Action") was brought alleging that LR Credit and several numbered LR Credit entities (including, among others, LR Credit 12, LLC and LR Credit 14, LLC, but not LRC), MSH, Samserv, Mlotok, Andino, and others engaged in a scheme to "purchase debt portfolios, pursue[ ] debt collection litigation *en masse* against the alleged debtors, and sought to collect millions of dollars in fraudulently obtained default judgments" by "engaging in 'sewer service'—the practice of failing to serve a summons and complaint and then filing a fraudulent

affidavit attesting to service." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 417, 419 (S.D.N.Y. 2010); (*see also* Pl. 56.1 Stmt., ECF No. 195, ¶ 129). Plaintiff was a member of the *Sykes* class, but opted out of the subsequent settlement. (Compl. at 2.) Thereafter, Plaintiff brought this action, alleging that Defendants filed a debt collection lawsuit against him (the "Collection Lawsuit"), and fraudulently obtained a default judgment against him using a false Affidavit of Service and false Affidavit of Merit. (Pl. 56.1 Stmt. ¶ 156; Keshavarz Decl., Ex. OO.)

## II.    THE COLLECTION LAWSUIT

The complaint in the Collection Lawsuit alleged that Plaintiff "entered into a Retail Charge Account Agreement, with First USA Bank," that LRC was the "purchaser" of the account held by First USA Bank, and that "[t]here is now due and owing to [LRC] from [Plaintiff] the agreed total sum of $8666.00 with interest on $5809.51 from date of the filing of complaint." (Keshavarz Decl., Ex. OO.)

At some point prior to July 6, 2007, MSH engaged Samserv to serve process on Plaintiff in connection with the Collection Lawsuit. (Samserv Defs. 56.1 Stmt., ECF No. 184, ¶ 20.) MSH provided Samserv with a copy of the summons and complaint, as well as Plaintiff's address for service of process, which was listed as 1304 Boston Road, Bronx, New York 10456 ("1304 Boston Road"). (*Id.*) Plaintiff owned and operated a grocery store at 1304 Boston Road from 2001 through 2004, but was not operating it in 2007. (*Id.* ¶ 21; Pl. 56.1 Stmt. ¶¶ 177–78.) Plaintiff asserts that he never represented that 1304 Boston Road was his address and never received mail there, but acknowledges that he had been responsible for opening mail received at that address. (Pl. 56.1 Stmt. ¶¶ 179–80; Keshavarz Decl., Ex. PP ("J. Guzman Dep. Tr.") at 24:10–17.)

Samserv assigned Andino to serve process on Plaintiff. (Pl. 56.1 Stmt. ¶ 166.) Andino executed an Affidavit of Service stating that, after three failed attempts to serve Plaintiff at 1304

Boston Road on July 6, 7, and 9, 2007, he affixed a copy of the summons and complaint to the door. (Samserv Defs. 56.1 Stmt. ¶¶ 25, 27, 31.) The Affidavit of Service described 1304 Boston Road as a "Private Residence," which had been "verified . . . with Mr. Rivera," and stated that Andino had mailed a copy of the summons and complaint to that same address. (Keshavarz Decl., Ex. AA.) Mlotok notarized the Affidavit of Service. (Pl. 56.1 Stmt. ¶ 168.)

Thereafter, MSH filed an application for a default judgment on LRC's behalf, which stated, among other things, that "service of the summons and complaint ha[d] been made." (*Id.* ¶ 182.) The application for the default judgment was accompanied by an Affidavit of Merit executed by Defendant Todd Fabacher, who described himself as the "designated custodian of records for the plaintiff [LRC]" and stated that he was "fully and personally familiar with, and ha[d] personal knowledge of, the facts and proceedings relating to the within action." (*Id.* ¶¶ 184, 187, 189.) The Affidavit of Merit stated that LRC sought a judgment against Plaintiff "for the sum of $7535.65 together with interest on $5809.51 from 06-12-2007 plus the costs of this action." (Keshavarz Decl., Ex. TT at 2.) The number "4225811720234690" was listed at the bottom of the Affidavit of Merit. (*Id.*)

The Bronx County Civil Court entered a default judgment in LRC's favor and against Plaintiff on September 21, 2007. (*Id.* at 1.) Eight years later, on June 29, 2015, an information subpoena (the "Information Subpoena"), signed by MSH as "Attorneys for Judgment Creditor" LRC, was served on Plaintiff's employer. (Pl. 56.1 Stmt. ¶ 226.) Plaintiff claims that he first learned of the Collection Lawsuit and default judgment when his employer showed him the Information Subpoena. (*Id.* ¶¶ 234–35.)

On July 31, 2015, Plaintiff filed an order to show cause in the Bronx County Civil Court to vacate the default judgment. (*Id.* ¶ 245.) On August 13, 2015, the court granted Plaintiff's

application to vacate the default judgment pending a traverse hearing,[4] which was set for October 15, 2015. (Pl. 56.1 Stmt. ¶ 252; LRC 56.1 Stmt. ¶ 7.) On August 8, 2015, a letter was sent to Plaintiff, signed by an attorney for MSH, stating "[o]ur office has decided not to go forward with the scheduled traverse hearing" and asking Plaintiff to execute three copies of an attached stipulation (the "August Stipulation"), vacating the default judgment and waiving any claims Plaintiff may have against LRC. (Pl. 56.1 Stmt. ¶¶ 252–58.) Plaintiff brought the August Stipulation to an attorney, (id. ¶ 260), and did not sign it. (LRC 56.1 Stmt. ¶ 10.) On October 2, 2015, MSH sent a second stipulation (the "October Stipulation") to Plaintiff's attorney agreeing to vacatur of the default judgment without Plaintiff having to waive any claims. (Pl. 56.1 Stmt. ¶¶ 263–69.) The October Stipulation was signed by both parties, and the Collection Lawsuit was discontinued with prejudice. (Id. ¶¶ 269–70.)

Plaintiff claims that Defendants violated the FDCPA and GBL § 349 by filing the Collection Lawsuit, engaging in sewer service, and obtaining a default judgment based on the false Affidavit of Service and Affidavit of Merit, by sending the Information Subpoena, and by seeking to "dupe" him into waiving claims he may have against LRC.

### III.   LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is material when "it 'might affect the

---

[4] "Under New York law, a traverse hearing is required when there exists a genuine issue of fact of whether service was properly made." U.S. Flour Corp. v. Certified Bakery, No. 10 Civ. 2522 (JS) (WDW), 2012 WL 728227, at *3 (E.D.N.Y. Mar. 6, 2012) (footnote omitted).

outcome of the suit under the governing law.'" *Gayle*, 313 F.3d at 682 (quoting *Anderson*, 477 U.S. at 248).

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact. To do so, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (quoting *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the non-moving party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, the court must construe the evidence in the light most favorable to the non-moving party and draw all inferences in that party's favor. *See Niagara*, 315 F.3d at 175. The court's task is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Summary judgment is therefore "improper if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party." *Marvel*, 310 F.3d at 286.

## IV.    PLAINTIFF'S FDCPA CLAIM

Because the FDCPA is a "strict liability statute," a "consumer does not need to show intentional conduct on the part of the debt collector." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010).  To establish a violation of the FDCPA, a plaintiff must prove three elements: "(i) the plaintiff must be a 'consumer'; (ii) the defendant must be a 'debt collector'; and (iii) the defendant must have committed some act or omission in violation of the FDCPA." *Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 16 Civ. 6609 (VSB), 2017 WL 4402567, at *3 (S.D.N.Y. Sept. 30, 2017); *see also Ellis*, 591 F.3d at 133–34.

Plaintiff is a "consumer" because he is a "natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).  Though the parties dispute whether Plaintiff *actually* owed a debt, it is undisputed that the Collection Lawsuit *alleged* Plaintiff owed a debt. (Pl. Ctrstmt. to LRC 56.1 Stmt., ECF No. 213, ¶ 17.)

### A.  Defendants' Status as Debt Collectors

The FDCPA defines a "debt collector" as "any person who" either "[1] uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or [2] . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Satisfying either of the two definitions is sufficient to make a person a debt collector for purposes of the statute. *See Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 61 (2d Cir. 2004) (discussing the FDCPA's "two alternative predicates for 'debt collector' status"). LRC, Samserv, and Mlotok each argue, for different reasons, that they are not debt collectors.

### 1. LRC

Defendant LRC acknowledges that it is in the business of collecting debts. (LRC 56.1 Stmt. ¶ 19). LRC argues there is no evidence that it uses interstate commerce or the mails in its business (Mem. in Supp. of LRC Mot. ("LRC Mem. in Supp."), ECF No. 186, at 9 n.6).[5] However, the Affidavit of Service filed in the Collection Lawsuit states that a copy of the complaint filed in the Collection Lawsuit was mailed to 1304 Boston Road. (Keshavarz Decl., Ex. AA; *see also* Samserv Defs. 56.1 Stmt. ¶ 31.) Though LRC asserts that the mailing was done by Andino, not by LRC directly (LRC Mem. in Supp. at 11), the text of the FDCPA does not require that a debt collector's use of the mails be direct. Moreover, even if such a requirement were read into the statutory definition of "debt collector," it would be met here, because LRC's corporate representative testified that he wired money from LRC's bank account to its investors and MSH.[6] (Nittoli Dep. Tr. at 29:17–30:10.) Thus, LRC is a "debt collector."

LRC further argues that, even if it is a "debt collector," it is entitled to summary judgment because the actions related to the debt collection were undertaken by MSH, not by LRC. In

---

[5] LRC also argues that it is not a "debt collector" under the second definition set forth in the FDCPA—one who "regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another," 15 U.S.C. § 1692a(6)—because LRC purchased debts for its own account, citing the Supreme Court's recent decision in *Henson v. Santander Consumer USA, Inc.*, 137 S. Ct. 1718 (2017). (LRC Mem. in Supp. at 9 n.6.) However, the Supreme Court made clear in *Henson* that its opinion dealt only with the second definition set forth in the FDCPA, not the first. *See Henson*, 137 S. Ct. at 1721. Because LRC falls within the first definition, this Court need not address LRC's arguments as to the second.

[6] Additionally, in the *Sykes* Action, the court found, "as a matter of law, that [other numbered LR Credit entities] are 'debt collectors,'" because there were "numerous instances in which the [numbered LR Credit entities] used interstate wires, to prepare non-military affidavits and to freeze plaintiffs' bank accounts, among other acts." *Sykes*, 727 F. Supp. 2d at 423. Though LRC was not a defendant in the *Sykes* Action, LRC has not articulated any basis to draw a distinction between it and other numbered LR Credit entities. Indeed, LRC does not dispute that an affidavit regarding Plaintiff's non-military status was executed in the Collection Lawsuit. (Keshavarz Decl., Ex. D.) LRC notes that the affidavit "does not mention LRC or its intended recipient," but the affidavit is dated September 7, 2007, shortly before the entry of the default judgment against Plaintiff. (*Id.*; LRC Ctrstmt. to Pl. 56.1 Stmt. ¶ 3.) Thus, it is reasonable to infer that the affidavit was obtained for purposes of the Collection Lawsuit.

particular, LRC asserts that MSH filed the Collection Lawsuit, Affidavit of Merit, and application for default judgment, and sent the Information Subpoena. (LRC Ctrstmt. to Pl. 56.1 Stmt. ¶¶ 156, 182–83, 185, 232.) LRC also claims that Plaintiff has failed to "adduce[] any evidence that LRC was involved in, or had knowledge of" MSH's actions. (LRC Mem. in Supp. at 7.) Plaintiff argues that LRC is directly liable as the named plaintiff in the Collection Lawsuit and vicariously liable because MSH was acting at all relevant times as LRC's agent. (Mem. in Supp. of Pl. Mot. for Summ. J. Against LRC ("Pl. LRC Mem."), at 15–17.)

"[T]he FDCPA 'applies to the litigating activities of lawyers,'" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 137 (2d Cir. 2017) (quoting *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995)), and "[a]s a general matter, a client-principal is 'bound by the acts of his lawyer-agent.'" *Chevron Corp. v. Donziger*, 833 F.3d 74, 150 (2d Cir. 2016) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 (1962)). However, "District Courts in this Circuit disagree about the appropriate test for determining when a principal may be held vicariously liable for its agent's actions under the FDCPA . . . where that agent is an attorney." *Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567, 585 (S.D.N.Y. 2015). Some have required a showing that the client "exercise[d] control over the conduct or activities" of his attorney, *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 259 (S.D.N.Y. 2011), while others have found that clients are liable "when the [attorney] act[s] 'in the scope of their authority.'" *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (internal citation omitted).

Here, because "the undisputed evidence shows that MSH filed and litigated the [C]ollection[] [L]awsuit in [LRC's] name," LRC "cannot argue in good faith that MSH was not [LRC's] attorney and agent at the time alleged sewer service occurred." *Polanco*, 132 F. Supp. at 586 (*see also* LRC Ctrsmt. to Pl. 56.1 Stmt. ¶ 156). LRC acknowledges that MSH filed the

9

Collection Lawsuit and application for default judgment and sent the Information Subpoena. (LRC Ctrstmt. to Pl. 56.1 Stmt. ¶¶ 156, 182, 226.)    All of those documents identify MSH as the "Attorneys for [LRC]," (*see* Keshavarz Decl., Exs. OO, KK, & TT), and LRC does not argue that MSH was acting beyond the scope of its authority.    Though LRC attempts to argue that it did not exercise control over MSH, (LRC Mem. in Supp. at 10), LRC itself states that "LRC . . . took steps to ensure that MSH would comply with the FDCPA and other applicable laws."    (*Id.* at 10, 17.) Because a reasonable juror could find that MSH was acting within the scope of its authority and that LRC exercised actual control over MSH, regardless of whether actual control is required, there is at least a triable issue of fact as to whether LRC is vicariously liable for MSH's conduct.    Thus, LRC's contention that it is not a "debt collector" does not provide a basis to grant summary judgment in its favor.

### 2. Samserv

Samserv argues that it is not a "debt collector" because the principal purpose of its business is to serve process, and the FDCPA's definition of "debt collector" expressly excludes "any person while serving or attempting to serve legal process on any other person in connection with the judicial enforcement of any debt." (Samserv Defs. Mem. in Supp., ECF No. 182, at 16 (quoting 15 U.S.C. § 1692a(6)(D)).)    In the *Sykes* Action, the court rejected an identical argument made in support of a motion to dismiss filed by these same Samserv Defendants (among others), finding that "[b]ecause the FDCPA protects process servers only 'while' they serve process, the Samserv defendants' alleged failure to serve plaintiffs process and provision of perjured affidavits of service remove them from the exemption." 757 F. Supp. 2d at 423.

Here, there is a triable issue of fact as to whether attempts were actually made to serve Plaintiff with the summons and complaint in the underlying Collection Lawsuit.    Plaintiff asserts

10

that the fact that the Affidavit of Service describes 1304 Boston Road as a "Private Residence" is evidence that Andino did not actually travel to that address, because the building at that location is a grocery store, not a residence.  (Mem. in Supp. of Pl. Mot. for Summ. J. Against Samserv Defs. ("Pl. Samserv Mem. in Supp."), ECF No. 196, at 9–10.)

As further support for his claim that the Affidavit of Service is false, Plaintiff cites a portion of a Microsoft Access database produced by Samserv, which shows summons and complaints assigned to Andino for service during the period from June 1, 2007 to July 9, 2007.[7]  (Pl. Reply Mem. in Supp. of Mot. for Summ. J. Against Samserv Defs. ("Pl. Samserv Reply"), ECF No. 225, at 4–6; Pl. Mem. in Opp'n to Samserv Defs. Mot. ("Pl. Samserv Opp'n"), ECF No. 217, at 5.)[8] Plaintiff notes that the database reflects that on June 6, 2007, Andino claimed to have attempted service of process at two different locations at 6:00 a.m.  (Pl. 56.1 Ctrstmt. ¶ 21.)  Plaintiff asserts that at least one of the claimed attempts at service must be false, because Andino could not have been in both places at once.  (Pl. Samserv Opp'n at 15.)  Plaintiff further asserts that, even if the times at which he claimed to have served process were approximations, Andino's claimed attempts are still incredible because the "Date Assigned" field for both locations is also June 6, 2007, and that this would indicate Andino was assigned both jobs, went to Samserv's office to pick up the

[7] This Court cannot determine at this juncture whether Plaintiff ultimately will be able to provide a basis for the admission of Samserv's database at trial, but notes that the database may be admissible as an admission of a party-opponent pursuant to Fed. R. Evid. Rule 801(d). *See United States v. Qunbar*, 335 F. App'x 133, 135 (2d Cir. 2009) (finding an "electronic 'Quickbooks' database reflecting income and expenses . . . . was properly received as a party or adopted admission pursuant to Fed. R. Evid. 801(d)"), or, with a proper foundation, as a business record of Samserv pursuant to Fed. R. Evid. 803(6).

[8] Though Plaintiff's 56.1 Counterstatement was submitted with his reply, rather than his moving papers, this Court has "broad discretion . . . to consider arguments made for the first time in a reply brief, [and] to rely on evidence submitted with the reply papers." *Compania Del Bajo Caroni (Caromin), C.A. v. Bolivarian Rep. of Venez.*, 341 F. App'x 722, 724 (2d Cir. 2009); *see also Bayway Refining Co. v. Oxygenated Marketing & Trading A.G.*, 215 F.3d 219, 226 (2d Cir. 2000) (finding no abuse of discretion in district court's decision to rely on evidence submitted with movant's reply papers).

11

documents, and attempted to serve process twice, all by 6:00 a.m. (*Id.* at 16.) Plaintiff also identifies twenty-one other instances on the three dates Andino claims to have attempted to serve Plaintiff in which Plaintiff asserts that the interval of time between attempts at service at two different locations reflected in the database is too short—based on the distances between the two locations—to reflect actual attempts at serving process.[9] (*See* Pl. 56.1 Ctrstmt. ¶¶ 29–72.) According to Plaintiff, these entries reflect that Andino had a "habit" of lying about serving process, and it is therefore reasonable to infer that Andino lied in the Affidavit of Service as well. (Pl. Samserv Reply at 7; *see also* Pl. Samserv Opp'n at 5.)

The Samserv Defendants assert that the evidence cited by Plaintiff does not provide a basis to infer that the Affidavit of Service was false. The Samserv Defendants note that there are residential apartments above the grocery store and asserts that, though these apartments have a different street address than the store, Andino could not have discovered this simply by traveling to the 1304 Boston Road location. (Samserv Defs. Reply Mem. at 7.) The Samserv Defendants also suggest that the term "Private Residence" and the reference to "Mr. Rivera" as the person who verified the residence may have been automatically entered by the computer program Samserv used to generate the Affidavit of Service, and not necessarily by Andino. (*Id.* at 6–7.)

---

[9] Plaintiff cites Google Maps webpages that show the distances between locations listed, of which courts may take judicial notice. *See In re Propranolol Antitrust Litig.*, 249 F. Supp. 3d 712, 731 n.27 (S.D.N.Y. 2017) (taking judicial notice of distances on Google Maps, and noting "[c]ourts commonly use internet mapping tools to take judicial notice of distance and geography"); *see also United States v. Magda*, 547 F.2d 756, 764 n.16 (2d Cir. 1976) (taking judicial notice of the distance from a park to an office building). The Samserv Defendants assert that the estimated travel times on the Google Maps webpages are inadmissible hearsay (Samserv Defs. Mem. in Opp'n, ECF No. 208, at 6–7), but Plaintiff may argue to a jury, based on the distances alone, that Andino could not have traveled between two locations in the times reflected in Samserv's database. Though the Samserv Defendants assert that the road conditions in 2017 may differ from those that existed in 2007, (*see* Samserv Defs. Reply Mem., ECF No. 218, at 8), this argument goes to the weight, rather than admissibility, of such evidence.

As to the information in its database, Samserv asserts that the times listed are approximate, and that the intervals of time between which Andino claimed to have traveled between various locations were reasonable. (*Id.* at 3; Samserv Defs. Resps. to Pl. 56.1 Ctrstmt. ¶¶ 29–72.) Samserv also suggests that any errors in its database arose from errors in the transcription of data into the database from the handwritten notes provided by the process servers. (Samserv Defs. Reply Mem. at 9 n.11; Samserv Defs. Sur-Reply Mem., ECF No. 234, at 2.) As to the two attempts on July 6, 2007 at 6:00 a.m., Samserv claims that the "Date Assigned" field sometimes reflects the first date on which data about service of process was entered, rather than the date the papers were actually given to the process server for service. (Samserv Defs. Resps. to Pl. 56.1 Ctrsmt. ¶¶ 22, 24.) (Samserv Defs. Reply Mem. at 7–9.)

A reasonable juror could accept Plaintiff's characterization of the evidence described above and conclude that Plaintiff was never served, or accept the Samserv Defendants' characterization and conclude that Andino did properly attempt to serve process on Plaintiff.[10] Thus, there is a triable issue of fact as to whether Samserv is entitled to the process server exemption.

Samserv also argues that, even if the process server exemption does not apply, it is not a "debt collector" because it does not "regularly collect[] or attempt[] to collect . . . debts owed or due or asserted to be owed or due another." (Samserv Mem. in Supp. at 21.) However, the Samserv Defendants concede that "evidence sufficient to show that Samserv . . . regularly engaged in 'sewer service'" could "show that the Samserv Defendants regularly collected debts." (*Id.*)

---

[10] The Samserv Defendants' argument will undoubtedly be weaker if Andino—who, as noted above, has not appeared in this action—is not available to testify regarding the attempts at serving process described in the Affidavit of Service. However, because there is no reason to believe at this juncture that Andino will appear to testify at trial and, if he does appear, it is unclear what his testimony will be, this Court cannot determine, as a matter of law, that no reasonable juror could find the statements in the Affidavit of Service were not false.

Though the Samserv Defendants assert that Plaintiff has not provided such evidence, (*id.* at 22), Plaintiff has cited sufficient evidence to create a triable issue of fact. Based on the information in Samserv's database described above, a reasonable juror could find there were several occasions on which Andino falsely claimed to have served process, Samserv filed false affidavits of service, and the affidavits of service were used to obtain fraudulent default judgments against consumers.[11] Accordingly, there is a triable issue of fact as to whether Samserv is a "debt collector" for purposes of the FDCPA, and Samserv is not entitled to summary judgment in its favor.

### 3. Mlotok

Mlotok argues that summary judgment should be granted in his favor because Plaintiff has not expressly asserted veil-piercing or alter ego theories of liability and has not pled facts sufficient to support either theory. (Samserv Defs. Mem. in Supp. at 11–12.) Plaintiff argues that Mlotok is individually liable as a "debt collector" under the FDCPA because Mlotok exercised control over the affairs of Samserv and was personally involved in conduct that violated the FDCPA and GBL § 349. (Pl. Samserv Mem. in Supp. at 12.)

Though the Second Circuit has not directly addressed the issue, "courts within this Circuit have routinely found that employees of debt collectors can be held liable where they personally participate in conduct that violates the FDCPA" or GBL, regardless of whether the corporate veil is pierced. *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 702 (S.D.N.Y. 2015) (collecting

---

[11] Plaintiff also cites a variety of other materials pertaining to process servers used by Samserv—including affidavits and deposition transcripts from other federal court proceedings and materials relating to investigations conducted by the New York Department of Consumer Affairs—as evidence that Samserv uses process servers who regularly execute false affidavits of service. (*See* Pl. Samserv Mem. in Supp. at 1–9). The Samserv Defendants argue that these materials are irrelevant and inadmissible hearsay. (Samserv Defs. Mem. in Opp'n at 7–9.) Because, as explained *infra*, Plaintiff has clearly provided enough evidence to raise a triable issue of fact as to whether the Samserv Defendants regularly engaged in sewer service, this Court need not address all of the types of evidence Plaintiff presents or attempt to determine whether Plaintiff will be able to establish some evidentiary basis for their admission at trial.

cases); *see also Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 526 (S.D.N.Y. 2015) ("[A] corporate officer who participates in the commission of a tort may be held individually liable, regardless of whether the officer acted on behalf of the corporation in the course of official duties and regardless of whether the corporate veil is pierced.") (quoting *Peguero v. 601 Realty Corp.*, 873 N.Y.S.2d 17, 21 (App. Div. 1st Dep't 2009)).

Simply alleging an individual "oversees the day-to-day operations" of a debt collector but "alleg[ing] no *specific conduct*" by that individual is insufficient to hold the individual personally liable for debt collection activities. *Allison v. Whitman & Meyers, LLC*, No. 13 Civ. 696 (JTC), 2015 WL 860757, at *2 (W.D.N.Y. Feb. 27, 2015) (emphasis added). However, an individual may be held liable if he "knows about and has adopted, ratified or approved [unlawful] collection tactics." *Musso v. Seiders*, 194 F.R.D 43, 44 (D. Conn. 1999); *see also Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (reversing grant of summary judgment for general partner because "[i]n light of the general partner's role in managing the affairs of the partnership, we see no reason why the general partner should not be responsible for conduct of the partnership which violates the FDCPA").

Here, there is a triable issue of fact as to whether Mlotok was sufficiently personally involved in the conduct at issue to be held liable under the FDCPA and GBL § 349. Mlotok is the sole stockholder and officer of Samserv. (Samserv Defs. 56.1 Stmt. ¶ 4.) Samserv performed service of process for MSH in at least 100,000 cases from approximately 2004 to 2011. (Keshavarz Decl., Ex. E ("Mlotok Dep. Tr.") at 30:15–23, 137:8–14.) Mlotok notarized most of the affidavits of service, which Samserv then filed in court.[12] (*Id. at* 85:24–86:7, 87:13–16.)

---

[12] Though the Samserv Defendants assert that notaries are under no duty to verify the truth of the statements in documents they notarize, (Samserv Defs. Mem. in Opp'n at 14), Plaintiff does not argue that Mlotok should be held liable simply because he notarized affidavits of service executed by Samserv's process servers. Rather Plaintiff argues Mlotok is a "debt collector" under the FDCPA, because he knew or should

15

As the officer of Samserv, Mlotok had access to its database. (*Id.* at 64:10–20, 85:14–23, 92:3–13.)  Indeed, because Mlotok is the "sole owner [of Samserv], his . . . knowledge is its knowledge." *Baker v. Latham Sparrowbush Assocs.*, 72 F.3d 246, 255 (2d Cir. 1995).  As explained above, a reasonable juror could find that the information in the affidavits and database indicates that process servers used by Samserv, including Andino, regularly made false claims that they had served process when they, in fact, had not. Thus, a reasonable juror could find that Mlotok knew or should have known that process servers used by Samserv were executing false affidavits of service, and that MSH would then use those false affidavits of service to obtain default judgments against consumers.  Because there is a triable issue of fact as to whether Mlotok's personal involvement in Samserv's business is sufficient to subject him to liability under the FDCPA, Mlotok is not entitled to summary judgment in his favor.

## B. Violation of the FDCPA

Plaintiff alleges that Defendants committed acts in violation of Sections 1692e and 1692f of the FDCPA. (Pl. Mem. in Supp. of Mot. for Summ. J. Against LRC ("Pl. LRC Mem. in Supp."), ECF No. 194, at 19–25; Pl. Samserv Mem. in Supp. at 10–12; *see also* Compl. ¶ 82.)  "[S]ections 1692e and 1692f are 'broad, potentially overlapping, and are not mutually exclusive.'" *Arias*, 875 F.3d at 136 (quoting *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 536 (6th Cir. 2014)). "Section 1692e . . . provides that '[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt'" and contains "a non-

---

have known the affidavits he notarized were false and would be used to fraudulently obtain default judgments. (*See* Pl. Samserv Opp'n at 7–8.)  By contrast, in the cases cited by the Samserv Defendants in which notaries were found not liable under the FDCPA, there was no evidence that the individuals knew or should have known the affidavits they notarized were false, and the plaintiffs did not allege the individuals were "debt collectors." *See, e.g., Sanchez v. Abderrahman*, No. 10 Civ. 3641 (CBA) (LB), 2014 WL 4919153, at *3 (E.D.N.Y. Aug. 12, 2014), *report and recommendation adopted as modified*, 2014 WL 4919258 (E.D.N.Y. Sept. 30, 2014) (dismissing claims against individual where "the record does not establish that [defendant] is anything more than 'a mere notary'").

exhaustive list of practices that fall within this ban, including the 'false representation of the character, amount, or legal status of any debt.'" *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016). "A representation is 'deceptive' under section 1692e if it is 'open to more than one reasonable interpretation, at least one of which is inaccurate.'" *Arias*, 875 F.3d at 135. The reasonableness of an interpretation is analyzed "from the perspective of the 'least sophisticated consumer,' who . . . lacks the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Id.*

"Section 1692f prohibits debt collectors from using any 'unfair or unconscionable means to collect or attempt to collect any debt.' Like . . . section 1692e, section 1692f contains a non-exhaustive list of unfair practices," *id.*, including, as relevant here, "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

"[S]ewer service practice, followed by obtaining a default judgment, falls squarely within the actions prohibited" by section 1692e. *Polanco*, 930 F. Supp. 2d at 576. Such practices may also violate section 1692f. *See Sykes*, 757 F. Supp. 2d at 424 (finding "the filing of a debt collection action . . . supported by affidavits that contained false or deceptive representations about the status and character of the debt" may violate 1692e, and "could also be deemed 'unfair or unconscionable' in violation of 15 U.S.C. § 1692f"); *Scott v. Greenberg*, No. 15 Civ. 5527 (MKB), 2017 WL 1214441, at *11 (E.D.N.Y. Mar. 31, 2017) ("[S]ewer service allegations [are] sufficient to allege an FDCPA claim under sections 1692d, 1692e, and 1692f."). Here, for the reasons explained above, there is a triable issue of fact as to whether the statements in the Affidavit of Service used to obtain the default judgment against Plaintiff were false and deceptive.

17

"False affidavits of merit . . . provide independent bases for liability for . . . claims" brought under the FDCPA and GBL § 349. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 86 (2d Cir. 2015). In the *Sykes* Action, the plaintiffs alleged that "Fabacher's statement in each one of the affidavits of merit, that he is 'personally familiar with, and [has] personal knowledge of, the facts and proceedings relating to' the default judgment action, is false" because "Fabacher has not reviewed, nor do defendants actually possess, documents relevant to the underlying debt." *Id.* at 85. Though the Second Circuit did not determine whether such statements were false and misleading for purposes of the FDCPA and GBL § 349, it noted that "determining whether Fabacher's statement is indeed false" would "resolve[] the central basis for . . . liability" under both statutes. *Id.*

Here, the Affidavit of Merit filed by Fabacher contains language identical to the affidavits in the *Sykes* Action. (*See* Keshavarz Decl., Ex. TT at 2.) Plaintiff asserts that the Affidavit of Merit was false because he did not owe any debt to First USA Bank, and because Fabacher did not review, and LRC does not possess, the Retail Charge Account Agreement cited in the Affidavit of Merit or a chain of title relating to the underlying debt.[13] (Pl. LRC Mem. in Supp. at 9–10.) LRC argues that the reference to First USA Bank was not misleading because the Affidavit of Merit correctly stated the amount of the debt, and the number "4225811720234690" on the bottom of the Affidavit of Merit was the number of an account that LRC claims was held by Plaintiff at Chase bank.[14] (LRC Mem. in Opp'n, ECF No. 210, at 4–5, 16.) LRC further argues that both of

[13] In a memorandum of law in opposition to Plaintiff's motion to amend his complaint, LRC acknowledged that the "[A]ffidavit of [M]erit and related documents from the underlying [C]ollection[] [L]awsuit incorrectly state the name of the original creditor as First USA Bank." (LRC Mem. in Opp'n. to Pl. Mot. to Amend, ECF No. 168, at 4 n.3.)

[14] LRC further asserts that an account statement for the Chase account reflects that Plaintiff owed the amount sought in the Collection Lawsuit, (LRC Mem. in Supp. at 4 (citing Decl. of Scott S. Balber, ECF No. 187, Ex. 11)), but the account statement does not resolve the question of whether the Affidavit of Merit

these facts also indicate Fabacher had personal knowledge that Plaintiff owed the debt sought in the Collection Lawsuit, and the Affidavit of Merit does not indicate that Fabacher reviewed a chain of title or other underlying debt documents. (*Id.* at 14–15.) Because reasonable jurors could disagree as to whether the Affidavit of Merit was false, there is a triable issue of fact as to whether the Affidavit of Merit could serve as an additional basis for Plaintiff's claims against LRC.[15]

**C. Bona Fide Error Defense**

Under the "bona fide error" defense set forth in 15 U.S.C. § 1692k, a debt collector may avoid FDCPA liability if he "shows by a preponderance of the evidence that [1] the violation was not intentional and [2] resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." *Id.* § 1692k(c). But "the mere existence of generic procedures is not enough; instead, the debt collector must show . . . that it took precautions meant to eliminate the specific error complained of by the plaintiff." *Thomas v. Altschul*, No. 13 Civ. 8320 (RA), 2015 WL 5165334, at *2 (S.D.N.Y. Aug. 21, 2015).

"The Second Circuit has not addressed . . . what procedures might be sufficient to avoid liability for reliance on a client's erroneous information," but "rely[ing] blindly on [a] client's business record" without adopting "any procedures to avoid discoverable errors clearly is insufficient." *Lee v. Kucker & Bruh, LLP*, 958 F. Supp. 2d 524, 531–32 (S.D.N.Y. 2013); *cf. Katz v. Asset Acceptance, LLC*, No. 05 Civ. 2783 (DGT), 2006 WL 3483921, at *1 (E.D.N.Y. Nov. 30,

---

was false. Even assuming the account statement accurately reflects a debt owed by Plaintiff—a fact that Plaintiff disputes—LRC did not possess the account statement until 2017, (Pl. 56.1 Stmt. ¶ 219), and LRC has not cited any evidence that Fabacher reviewed the account statement or any other records reflecting the amount of the alleged debt.

[15] Plaintiff also alleges that LRC violated the FDCPA in other ways, such as by seeking attorneys' fees in the Collection Lawsuit and sending the Information Subpoena. (*See* Pl. LRC Mem. in Supp. at 23–25.) "Since a single violation of the FDCPA is sufficient to impose liability," *Ellis*, 591 F.3d at 133, and Plaintiff has raised triable issues of fact as to whether the acts discussed above violated the FDCPA, this Court need not consider whether additional acts by LRC would also provide bases to establish an FDCPA violation.

2006) (granting summary judgment where defendant provided evidence of "detailed policies and procedures it adopted to avoid venue errors," including "publishe[d] policies" and "FDCPA compliance training" and "reviewed approximately 1700 cases and found no other cases were filed in an improper venue").

Here, Defendants assert that they are entitled to summary judgment based on the bona fide error defense. (*See* LRC Mem. in Supp. at 16–18; Samserv Defs. Mem. in Supp. at 8, 20 n.12.) But even assuming Defendants acted unintentionally, there are triable issues of fact as to whether the procedures identified by Defendants were reasonably designed to eliminate the specific errors complained of by Plaintiff.

LRC asserts that it took precautions to avoid FDCPA violations because (1) LRC "enlisted a law firm with extensive experience in debt collection" and (2) the contractual agreement pursuant to which MSH was retained "explicitly obligated MSH . . . to conduct its collection activities in compliance with state and federal laws, including the FDCPA." (LRC Mem. in Supp. at 17.) But the mere fact that a law firm has experience in debt collection is not evidence that it has adopted procedures to avoid FDCPA violations. Similarly, the contractual provisions identified by LRC state that MSH must be "in compliance with" and "conform with all requirements of" the FDCPA, (*id.* at 8), but do not require MSH to adopt any procedures to ensure such compliance. LRC has not identified *any* procedures or policies adopted by MSH, let alone procedures or policies to prevent the specific errors alleged by Plaintiff. Thus, at a minimum, there is a triable issue of fact as to whether the precautions identified by LRC were "reasonably adapted" to avoid such errors. 15 U.S.C. § 1692k(c).

The Samserv Defendants assert that they took "reasonable precautions" to "minimize the risk of a violation of the law and to minimize the risk of ineffective service of process" by (1)

"retain[ing] independent contractors . . . who were licensed by the DCA" and (2) "random checks . . . compar[ing] the information entered in a process server's logbook with the data on the corresponding affidavit of service."[16] (Samserv Defs. Mem. in Supp. at 8.) But a requirement that a process server be licensed does not, in itself, require the process server to take any measures to ensure that he does not violate the FDCPA or otherwise engage in conduct that would cause him to lose his license. Moreover, while the Samserv Defendants assert that the random checks Samserv conducted "did not reveal any irregularities" in affidavits of service that it filed (*id.*), the Samserv Defendants have not indicated how often those checks were conducted or how many affidavits were reviewed. (*See* Mlotok Dep. Tr. at 101:20–103:13.) In addition, a reasonable juror could find that the checks were not "reasonably adapted" to prevent the specific error at issue here—*i.e.*, the filing of an Affidavit of Service in which a process server falsely claims to have served process—because a process server would likely include the same false information in both his logbook and in the Affidavit of Service. Thus, this Court cannot determine, as a matter of law, that the procedures adopted by the Samserv Defendants were "reasonably adapted" to avoid the error complained of by Plaintiff. 15 U.S.C. § 1692k(c).

## V. ELEMENTS OF PLAINTIFF'S GBL § 349 CLAIM

GBL § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce in the furnishing of any service in this state." N.Y. Gen. Bus. Law § 349(a). A claim

---

[16] Though the Samserv Defendants also note that "services of process undertaken by the independent contractors engaged by Samserv were and are subject to the safeguards of the court system," such as traverse hearings, (Samserv Defs. Mem. in Supp. at 8), those hearings occur only *after* service of process has occurred and the person served challenges its effectiveness. *See U.S. Flour Corp.*, 2012 WL 728227, at *3. Though the Samserv Defendants assert that they were "attentive to traverse hearings relating to those who serve process for Samserv as a potential indicator of a situation that might need to be monitored," (Samserv Defs. Mem. in Supp. at 8 n.3), the Samserv Defendants do not identify any steps they took to ensure that process servers who were subject to such hearings did not file false affidavits of service or otherwise commit FDCPA violations following those hearings.

under GBL §349 has three elements: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 124 (2d Cir. 2017) (quoting *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009) (internal quotation marks omitted)).

## A. Consumer-Oriented Conduct

"The 'consumer-oriented' requirement may be satisfied by showing that the conduct at issue 'potentially affect[s] similarly situated consumers.' Although consumer-oriented conduct does not require a repetition or pattern of deceptive conduct, a plaintiff must 'demonstrate that the acts or practices have a broader impact on consumers at large.'" *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995)). "Numerous courts in the Southern District of New York have held 'that the persistent filing of fraudulent debt collection lawsuits against New York consumers does fall within the scope of Section 349.'" *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (collecting cases). For the reasons explained above with respect to Plaintiff's FDCPA claim, Plaintiff has raised a triable issues of fact as to whether Defendants engaged in "consumer-oriented" conduct by filing false affidavits of service and using those affidavits to obtain default judgments against consumers.

## B. Materially Misleading

A determination of whether an act or omission is "materially misleading" requires consideration of whether it is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Nick's Garage, Inc.*, 875 F.3d at 124 (quoting *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611–12 (N.Y. 2000)). For the reasons stated above with respect to Plaintiff's FDCPA

claim, there are triable issues of fact as to whether the statements in the Affidavit of Service and

Affidavit of Merit were false and would be materially misleading to a reasonable consumer.

## C. Injury

Section 349 requires proof of "some injury," but the injury need not be "necessarily

pecuniary." *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 637 (2d Cir. 1996);

*see also Stutman*, 731 N.E.2d at 612. "Emotional harm . . . satisf[ies] the injury requirement for a

claim under . . . GBL § 349." *Douyon v. N.Y. Med. Health Care, P.C.*, 894 F. Supp. 2d 245, 264

(E.D.N.Y. 2012), *amended on reconsideration*, No. 10 Civ. 3983 (AKT), 2013 WL 5423800

(E.D.N.Y. Sept. 25, 2013); *see also Rozier v. Fin. Recovery Sys., Inc.*, No. 10 Civ. 3273 (DLI),

2011 WL 2295116, at *5 (E.D.N.Y. June 7, 2011).

Plaintiff asserts that he has suffered emotional injuries due to the Collection Lawsuit, and

his deposition testimony as to those injuries was corroborated by his wife. (Pl. Samserv Mem. in

Supp. at 15; *compare* J. Guzman Dep. Tr. at 14:24–15:2, 123:7–12, 164:15, 165:9–10, 165:2–8,

*with* Keshavarz Decl., Ex. RR ("L. Guzman Dep. Tr.") at 15:22–25, 16:4–7, 99:18–101:2, 109:3–

16, 110:6–12 (Plaintiff was "stressed" and "frustrated" by the Collection Lawsuit to the extent that

he left his job as a truck driver because he feared having an accident, and experienced difficulty

sleeping and concentrating). Though Defendants note that Plaintiff has not cited any medical

evidence or provided testimony from a neutral third party, (LRC Mem. in Supp. at 22; Samserv

Defs. Mem. in Supp. at 24), "emotional distress damages can be corroborated by any witness, not

solely in the form of medical evidence or from disinterested third-parties."[17]   *Norwood v.*

---

[17] Defendants also argue that Plaintiff's claims of emotional distress are undermined by the deposition testimony of his co-workers, who testified that they had noticed a change in his behavior in 2017, well after 2015, when he claims he first became aware of the Collection Lawsuit. (LRC Mem. in Supp. at 20–21; Samserv Mem. in Supp. at 24.) But this argument simply "raise[s] questions about the credibility and probative force" of Plaintiff's and Plaintiff's wife's testimony, which are to be "answered by the jury" at

*Salvatore*, No. 3:12 Civ. 1025 (MAD), 2016 WL 1060299, at \*14 (N.D.N.Y. Mar. 15, 2016); *see also Petramale v. Local No. 17 of Laborers' Int'l Union of N. Am.*, 847 F.2d 1009, 1013 (2d Cir. 1988) (permitting plaintiff to recover $100,000 in damages where "there was no medical testimony" and plaintiff did not "seek medical help," but "[plaintiff] and his sons testified that the problems with the union led to his emotional distress, marital problems, and injured reputation").

## VI.   PUNITIVE DAMAGES UNDER GBL § 349

In addition to their dispute over whether there is a triable issue of fact as to the elements of Plaintiff's GBL § 349 claim, the parties also disagree as to whether Plaintiff's punitive damages on such a claim are limited to $1,000.  On December 16, 2016, LRC filed an Amended Motion for Partial Judgment on the Pleadings, (ECF No. 105), which sought dismissal of Plaintiff's claims for punitive damages in excess of $1,000.[18]  (*Id.*)  On September 29, 2017, Magistrate Judge Ellis issued an Opinion and Order finding that Plaintiff's punitive damages on his GBL § 349 claim are "limited to those provided in [the statute], that is, three times the actual damages up to one thousand dollars."  (Order at 8.)  Magistrate Judge Ellis explained, "[p]arties . . . may recover punitive damages in a case which includes a [GBL] § 349 claim" only if "there is a separate viable claim which supports punitive damages," and found that Plaintiff has not asserted such a claim. (*Id.*)  Plaintiff filed a timely Motion of Objection to the Order.[19]  (ECF No. 242.)

---

trial, not by this Court on a motion for summary judgment. *See Donnelly v. Greenburgh Centr. Sch. Dist. No. 7*, 691 F.3d 134, 146 (2d Cir. 2012).

[18] The Amended Motion was an amendment of a prior motion filed by LRC, which was styled as a Motion for Partial Summary Judgment, and sought dismissal of Plaintiff's claims for attorneys' fees and punitive damages in excess of $1,000.  (ECF No. 93.)

[19] In his memorandum of law in support of his objection, Plaintiff requests that this Court apply a *de novo* standard of review, rather than the clearly erroneous standard generally applicable to a magistrate's report and recommendation, *see* Fed. R. Civ. P. 72, because magistrates lack the authority to decide motions for judgment on the pleadings, and because such a motion is a dispositive matter for which Magistrate Judge Ellis was not designated. (Mem. in Supp. of Pl. Objection, ECF No. 243, at 6–9.) Because this Court finds

GBL § 349 provides, in relevant part:

> [A]ny person who has been injured by reason of any violation of this section may bring an action . . . to enjoin such unlawful act or practice, or to recover his actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

N.Y. Gen. Bus. Law § 349(h). Thus, though the statute does not expressly refer to "punitive damages" as such, its plain text suggests that recoverable damages are limited to the amount stated in the statute—"three times the actual damages up to one thousand dollars." *Id.*

Even if the text of the statute were unclear, an examination of other relevant authorities does not suggest a contrary result. "In making [the] determination [of what New York law provides]," the Second Circuit "afford[s] the greatest weight to the decisions of the New York Court of Appeals." *Cty. of Erie v. Colgan Air, Inc.*, 711 F.3d 147, 151 (2d Cir. 2012). In *Karlin v. IVF America, Inc.*, the New York Court of Appeals, citing § 349(h), stated, "[a]mong the remedies available to private plaintiffs are compensatory damages, limited punitive damages and attorneys' fees." 712 N.E.2d 662, 666 (N.Y. 1999). Thus, *Karlin* is properly read to indicate that a plaintiff's punitive damages under § 349(h) are "limited" to the amount set forth in that section. Indeed, Plaintiff himself has recognized as much, noting that the court in *Karlin* was "limiting its discussion to the text of § 349(h)." (Pl. Mem. in Opp'n to LRC Amended Mot., ECF No. 122, at 2.) Other courts within this Circuit have also read GBL § 349 as limiting punitive damages to $1,000. *See, e.g.*, *Alzheimer's Disease Res. Ctr., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 981 F. Supp. 2d 153, 165 (E.D.N.Y. 2013) ("'Section 349 of the New York General

---

the result would be the same under either standard, this Court reviews Magistrate Judge Ellis's determination *de novo*.

Business Law expressly allows for the recovery of limited punitive damages in connection with a successful claim' . . . of damages up to one-thousand dollars.") (quoting *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 371 (W.D.N.Y. 2013)).

Though Plaintiff asserts that "the text of 349(h) . . . is not the basis of Plaintiff's claim," (Pl. Mem. in. Opp'n to LRC Amended Mot. at 2–3), Plaintiff cites no other valid basis for the assertion of a GBL § 349 punitive damages claim.[20]  Though Plaintiff suggests that "facts alleging sufficient moral culpability may allow for punitive damages[,]" (Mem. in Supp. of Pl. Obj. at 14), *Walker v. Sheldon*, the case upon which he relies, involved a fraud claim.  179 N.E.2d 497, 497 (N.Y. 1961).  A cause of action for fraud was cognizable at common law, which permitted punitive damages.  *See Big Seven Music Corp. v. Lennon*, 554 F.2d 504, 513 (2d Cir. 1977) (citing *Walker*, 179 N.E.2d at 498).  When, as here, "the Legislature create[s] a new statutory cause of action not previously cognizable at common law, . . . to determine whether punitive damages are legally permissible in a court action," a court must "look to the statute—*not* to whether the nature of the wrong alleged would permit recovery." *Thoreson v. Penthouse Int'l, Ltd.*, 606 N.E.2d 1369, 1371 (N.Y 1992) (emphasis added).  As noted above, the plain text of GBL § 349 does not authorize punitive damages in excess of the $1,000 permitted by the statute.

---

[20] Plaintiff also seeks damages on his FDCPA claim. (*See* Compl. at 21.) However, his damages on that claim are limited to actual damages, costs and attorneys' fees, and "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). Other than the "additional damages" expressly permitted by the statute, "[t]he FDCPA does not allow for the award of punitive damages." *Sibersky v. Borah, Goldstein, Altschuler & Schwartz, P.C.*, 242 F. Supp. 2d 273, 277 n.2 (S.D.N.Y. 2002) (citing *Padilla v. Payco Gen. Am. Credits, Inc.*, 161 F. Supp.2d 264, 277 (S.D.N.Y. 2001)). In other words, the amount of damages a plaintiff may collect in addition to his actual damages is limited by the text of the statute. At least one court has suggested that the FDCPA's "additional damages" are "punitive in nature" and "meant to preclude a separate award of punitive damages." *Wood v. Midland Credit Mgmt., Inc.*, No. 05 Civ. 53881 (FMC) (MANx), 2005 WL 3159639, at *5 (C.D. Cal. July 29, 2005) (emphasis added). The same could be said of the treble damages provision in GBL § 349.

Courts that have found plaintiffs may recover punitive damages in excess of $1,000 for GBL § 349 claims rely on *Wilner v. Allstate Insurance Co.*, (App. Div. 2d Dep't 2010). *See, e.g., Bueno v. LR Credit 18, LLC*, 269 F.3d 16 (E.D.N.Y. 2017). In *Wilner*, the court stated "[u]nder General Business Law § 349, consumers may recover actual damages in any amount, and may recover treble damages under General Business Law § 349(h) up to $1,000. Moreover, the plaintiffs may seek both treble damages and punitive damages." 893 N.Y.S.2d at 218 (internal citations omitted). But the two cases cited by *Wilner* only establish that a plaintiff may *seek* both types of damages, not that the plaintiff can *recover* both.

As the First Department explained in *Volt Systems Development Corp. v. Raytheon Co.*, 547 N.Y.S.2d 280 (App. Div. 1st Dep't 1989), one of the cases cited by *Wilner*, "CPLR §§ 3014 and 3017 . . . permit, and in fact, encourage pleading of claims and remedies in the alternative," and "the election of remedies . . . 'need not be made until all the proof has been presented.'" *Volt Sys. Dev. Corp.*, 547 N.Y.S.2d at 281 (citation omitted); *see also Wood v. Maguire Auto. LLC*, No. 5:09 Civ. 0640 (GTS) (GHL), 2011 WL 4478485, at *4 (N.D.N.Y Sept. 26, 2011) ("Under N.Y. Gen. Bus. Law § 349. . . plaintiffs may seek both treble damages and punitive damages. However, punitive damages may be awarded only where the total award, together with the punitive damages, does not exceed $1,000.") (internal citations omitted). In *Volt*, in addition to asserting claims for deceptive trade practices, the plaintiff also asserted several other claims, including fraud (which, as noted above, is a common law claim that may provide a basis for punitive damages). *Volt Sys. Dev. Corp.*, 547 N.Y.S.2d at 281. Similarly, in *Bianchi v. Hood*, 513 N.Y.S.2d 541 (App. Div. 3d Dep't 1987), the other case cited in *Wilner*, the plaintiff asserted claims for both ejectment and trespass. *Bianchi*, 513 N.Y.S.2d at 542. New York statutory law allows for treble damages for the former, *see* N.Y. Real Prop. Acts Law § 853, and common law permits an award of punitive

damages for the latter. *See Wantanabe Realty Corp. v. City of New York*, No. 01 Civ. 10137 (LAK), 2003 WL 22862646, at *6 (S.D.N.Y. Dec. 3, 2003). To the extent that *Wilner* is relied upon to suggest that a plaintiff may recover punitive damages in excess of those permitted by GBL § 349 when he does not assert an independent claim that provides a basis for such damages, such a position misreads *Volt* and *Bianchi* and is not persuasive.[21] Thus, Plaintiff's punitive damages on his GBL § 349 claim are limited to $1,000. Plaintiff's objections are overruled and the Order is AFFIRMED.

## VII.   CONCLUSION

The Samserv Defendants' motion for summary judgment, (ECF No. 180), is DENIED. Defendant LRC's motion for summary judgment, (ECF No. 185), is also DENIED. Plaintiff's cross-motions for summary judgment, (ECF Nos. 189, 190, 191), are DENIED. Magistrate Judge Ellis's September 29, 2017 Opinion and Order, (ECF No. 236), is AFFIRMED and ADOPTED.

The Clerk of Court is directed to close the motions at ECF Nos. 180, 185, 189, 190, 191, and 236, accordingly.

Dated: March 22, 2018
   New York, New York        MAR 2 2 2018

                                          SO ORDERED.

                                          *George B. Daniels*

                                          GEORGE B. DANIELS
                                          United States District Judge

---

[21] Though Plaintiff identifies a Second Circuit decision, *Barkley v. Olympia Mortgage Co.*, that cites *Wilner*, the language in *Barkley* is not inconsistent with *Karlin*. In *Barkley*, one of the defendants argued that punitive damages are not available under GBL § 349, and the Second Circuit cited *Wilner* for the proposition that "punitive damages may be awarded for a violation of GBL § 349," 557 F. App'x 22, 26 n.1 (2d Cir. 2014), a fact which *Karlin* also recognized. The Second Circuit did not discuss the *amount* of damages that may be awarded. Even if *Barkley* were to be construed as an adoption of the reasoning in *Wilner*, it is a summary order that is not binding on this Court, *see* 2d Cir. Local Rule 32.1 ("Rulings by summary order do not have precedential effect."), and given that the summary order simply cites *Wilner* in a footnote without further analysis, it is not persuasive.